IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN,<br><br>        Plaintiffs,<br><br>        v.<br><br>NCR CORPORATION,<br>APPLETON PAPERS INC.,<br>CITY OF APPLETON,<br>CBC COATING, INC.,<br>GEORGIA-PACIFIC CONSUMER PRODUCTS LP,<br>KIMBERLY-CLARK CORPORATION,<br>MENASHA CORP.,<br>NEENAH-MENASHA SEWERAGE COMMISSION,<br>P.H. GLATFELTER CO.,<br>U.S. PAPER MILLS CORP., and<br>WTM I COMPANY,<br><br>        Defendants. | Civil Action No. 10-C-910 |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT U.S. PAPER MILLS CORP.

Defendant U.S. Paper Mills Corp. ("USP"), answers the United States of America's and

the State of Wisconsin's Amended Complaint ("the Amended Complaint") as follows:

NATURE OF THE ACTION

1.       USP admits that Plaintiffs filed a civil action against Defendants under Sections

106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of

1980 ("CERCLA"), as amended, 42 U.S.C. §§ 9606 and 9607.  USP denies the allegations of

paragraph 1 of the Amended Complaint alleging that USP is liable to either Plaintiff as stated in

the Amended Complaint. USP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 1.

## JURISDICTION AND VENUE

2.      USP admits the allegations in paragraph 2 of the Amended Complaint.

3.      USP admits the allegations in paragraph 3 of the Amended Complaint.

## BACKGROUND ON THE SITE AND THE STATUTE

4.      Responding to paragraph 4 of the Amended Complaint, USP admits that the Site encompasses a nearly 40 mile stretch of the Lower Fox River. USP denies that any facility owned and operated by USP discharged "large amounts" of polychlorinated biphenyls ("PCBs") to the Lower Fox River in connection with either "past production" or "pre-processing" of NCR Paper, as the term "NCR Paper" is defined in the Amended Complaint. USP admits that the PCB contamination remains at the Site, PCBs do not break down readily by natural processes, and PCBs bioaccumulate in the fatty tissue of animals. USP further admits that fish in the area are subject to consumption advisories, and that PCBs are classified as probable human carcinogens. USP is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 4 of the Amended Complaint.

Alleged Response Activities by Plaintiffs

5.      USP admits that as a general matter, CERCLA provides the EPA and the States with the authority, under certain circumstances, to take response actions in the form of both removal and remedial actions.

6.      Responding to paragraph 6 of the Amended Complaint, USP admits that the EPA and the WDNR have taken various response activities at the Site relating to PCB contamination, and that these activities include the activities generally described in the allegations of paragraphs

2

7 through 12 of the Amended Complaint. Specific responses to paragraphs 7 through 12 of the Amended Complaint are below, and the more specific responses in response to paragraphs 7 through 12 are controlling over this response to paragraph 6. USP is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 6.

7. Responding to paragraph 7 of the Amended Complaint, USP admits that in 1999, the WDNR, with assistance and funding from the EPA, prepared and issued a set of draft reports on the Site, including: (i) a draft remedial investigation report on the types, levels, and locations of contaminants at the Site; (ii) a draft risk assessment report evaluating the contamination-related risks posed to people and wildlife; and (iii) a draft feasibility study report assessing possible cleanup methods. USP denies the allegation in paragraph 7 that all of these reports were "scientific," and that they were performed in accordance with the National Contingency Plan ("NCP"). USP is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 7.

8. Responding to paragraph 8, USP admits that in 2001, the EPA and the WDNR issued a Proposed Remedial Action Plan for the Site. USP is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 8.

9. USP admits the allegations in paragraph 9 of the Amended Complaint.

10. USP admits the allegations in paragraph 10 of the Amended Complaint.

11. USP admits the allegations in paragraph 11 of the Amended Complaint.

12. USP admits the allegations in paragraph 12 of the Amended Complaint.

Alleged Response Costs

13. USP admits the allegations in paragraph 13 of the Amended Complaint , but USP denies any inference from those allegations that USP is liable to either plaintiff for any costs

3

incurred and lacks sufficient knowledge and information as to any inference that costs incurred by Plaintiffs were consistent with the NCP.

14.     Responding to paragraph 14 of the Amended Complaint, USP admits that the EPA and the WDNR incurred costs at the Site. USP is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 14, including any inference that those "costs" are recoverable.

15.     USP is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Amended Complaint. Specifically, USP has requested that the Plaintiffs provide documentation for their claimed unreimbursed response costs, but such documentation has not been provided to USP.

16.     USP is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Amended Complaint.

17.     USP is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Amended Complaint.

18.     USP is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Amended Complaint.

19.     USP is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Amended Complaint.

20.     USP is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Amended Complaint.

21.     USP is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Amended Complaint.

22.     USP denies the allegations in paragraph 22 of the Amended Complaint to the extent they may be inconsistent with the statutory language or Court interpretation of that language and further denies any inference that Plaintiffs are entitled to any recovery of costs or prejudgment interest.

23.     Responding to paragraph 23 of the Amended Complaint, USP admits the United States sent a written demand dated January 15, 2009 to the listed companies and that certain costs incurred by Plaintiffs have been reimbursed under certain Consent Decrees and the Unilateral Administrative Order ("UAO").  USP denies that costs "paid" under partial settlements or other arrangements with the PRPs at the Site have been "incurred by the United States [or] the State."  Further responding to paragraph 23, USP affirmatively alleges that the demand did not properly specify or demonstrate that the amount demanded represented unreimbursed response costs incurred by the United States and that in response to the written demand referenced in paragraph 23, certain defendants, including USP, requested documentation of the claimed response costs, but such documentation was not provided to USP.

Alleged Cleanup Requirements

24.     USP denies the allegations in paragraph 24 of the Amended Complaint to the extent they may be inconsistent with the provisions of CERCLA, as interpreted by the Courts.

25.     USP admits the allegations in paragraph 25 of the Amended Complaint.

Alleged Natural Resource Damage Assessment and Restoration Activities

26.     USP denies the allegations in paragraph 26 of the Amended Complaint to the extent they may be inconsistent with the provisions of CERCLA, as interpreted by the Courts, and denies any inference that USP is liable to Plaintiffs.

27.     USP admits the allegations in paragraph 27 of the Amended Complaint.

5

28.     Responding to paragraph 28 of the Amended Complaint, USP admits that hazardous substances in the form of PCBs have been released into the environment at the Site. USP denies the remaining allegations in paragraph 28.

29.     Responding to paragraph 29 of the Amended Complaint, USP admits.

30.     Responding to paragraph 30 of the Amended Complaint, USP admits.

31.     USP denies the allegations in paragraph 31 of the Amended Complaint to the extent they may be inconsistent with the provisions of the NCP or CERCLA, as interpreted by the Courts.

32.     USP denies the allegations in paragraph 32 of the Amended Complaint to the extent they may be inconsistent with the provisions of CERCLA, as interpreted by the Courts.

33.     USP admits to the following as a general matter:  43 C.F.R. Part 11 concerns NRD assessments.  USP is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 33 of the Amended Complaint.

34.     USP denies the allegations in paragraph 34 of the Amended Complaint to the extent they may be inconsistent with the provisions of CERCLA, as interpreted by the Courts.

35.     USP admits, in general, the allegations in paragraph 35 of the Amended Complaint, but USP is without knowledge or information sufficient to form a belief as to whether the NRD activities described in paragraph 35 were performed in accordance with regulations.  Further responding to paragraph 35, USP denies that the Menominee Indian Tribe of Wisconsin is a trustee of any natural resources in or near the Site.

36.     USP denies the allegations in paragraph 36 of the Amended Complaint.

37.     Responding to paragraph 37 of the Amended Complaint, USP admits that the Plaintiffs have obtained partial recoveries on their NRD claims for the Site through partial

6

settlements with some of the Defendants and other PRPs. USP lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations in paragraph 37.

38.     USP denies the allegations in paragraph 38 of the Amended Complaint to the extent they may be inconsistent with the provisions of CERCLA, as interpreted by the Courts as well as any allegation or inference in paragraph 38 of the Amended Complaint that USP is liable for NRDs or prejudgment interest.

## GENERAL ALLEGATIONS
## AND ALLEGATIONS RELATING TO THE DEFENDANTS

General Allegations

39.     USP admits the allegations in paragraph 39 of the Amended Complaint.

40.     USP admits the allegations in paragraph 40 of the Amended Complaint.

41.     USP admits the allegations in paragraph 41 of the Amended Complaint.

42.     USP admits the allegations in paragraph 42 of the Amended Complaint.

43.     USP admits the allegations in paragraph 43 of the Amended Complaint.

44.     USP admits the allegations in paragraph 44 of the Amended Complaint.

Allegations About NCR Corporation and Appleton Papers, Inc.

45.     USP admits the allegations in paragraph 45 of the Amended Complaint.

46.     USP admits the allegations in paragraph 46 of the Amended Complaint.

47.     USP admits the allegations in paragraph 47 of the Amended Complaint.

48.     USP is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 of the Amended Complaint.

49.     USP admits the allegations in paragraph 49 of the Amended Complaint.

7

50.     USP lacks sufficient knowledge and information to form a belief as to the truth of the allegation that NCR reprocessed wastepaper at the Combined Locks Facility, but admits the remaining allegations in paragraph 50 of the Amended Complaint.

51.     USP admits the allegations in paragraph 51 of the Amended Complaint.

52.     With reference to paragraph 52.x.: (a) USP denies that it used any deinking or other processes for the purpose of treating NCR Paper and removing the unwanted PCB-containing coating that came from NCR Paper; and, (b) USP is without knowledge or information sufficient to form a belief as to the truth of the allegation that mills owned by the other Defendants used specialized deinking processes or other processes for the purpose of treating NCR Paper and removing the unwanted PCB-containing coating that came from NCR Paper. USP admits the remaining allegations in paragraph 52 of the Amended Complaint.

53.     USP admits the allegations in paragraph 53 of the Amended Complaint.

54.     USP admits the allegations in paragraph 54 of the Amended Complaint.

Allegations About CBC Coating, Inc.

55-60.  The allegations in paragraphs 55-60 of the Amended Complaint are not directed toward USP, and therefore no response is required from USP.

Allegations About  the City of Appleton

61-64.  The allegations in paragraphs 61-64 of the Amended Complaint are not directed toward USP, and therefore no response is required from USP.

Allegations About Georgia-Pacific Consumer Products LP

65-72.  The allegations in paragraphs 65-72 of the Amended Complaint are not directed toward USP, and therefore no response is required from USP.

Allegations About Kimberly-Clark Corporation

73-79.  The allegations in paragraphs 73-79 of the Amended Complaint are not directed toward USP, and therefore no response is required from USP.

Allegations About Menasha Corporation

80-84.  The allegations in paragraphs 80-84 of the Amended Complaint are not directed toward USP, and therefore no response is required from USP.  Relating to those paragraphs, however, USP states affirmatively that in 1983, USP purchased a paper mill from the Menasha Corporation, which mill is located on Washington Street in Menasha, Wisconsin.  This purchase was an asset purchase only, and since at least 1983, the paper mill has not discharged any wastewater containing detectable amounts of PCBs.

Allegations About New Page Wisconsin Systems, Inc.

85-89.  The allegations in paragraphs 85-89 of the Amended Complaint are not directed toward USP, and therefore no response is required from USP.

Allegations About P.H. Glatfelter Company

90-96.  The allegations in paragraphs 90-96 of the Amended Complaint are not directed toward USP, and therefore no response is required from USP.

Allegations About U.S. Paper Mills Corp.

97.  Responding to paragraph 97 of the Amended Complaint, USP admits that USP (formerly known as Sonoco-U.S. Mills, Inc.) owns and operates a paper production facility on Fort Howard Avenue in De Pere, Wisconsin (the "De Pere Facility").  USP further admits that it purchased a paperboard mill on Washington Street in Menasha, Wisconsin (formerly called the "John Strange Facility") from Menasha Corporation ("Menasha") in 1983 as an asset (not a stock) purchase.  USP denies it expressly assumed relevant liabilities related to the Menasha

9

plant (formerly the John Strange Facility), and affirmatively alleges that its contractual obligations are subject to limits and conditions set forth in a purchase agreement between USP and Menasha. USP denies that it is a successor to the liabilities of the John Strange Paper Company. USP admits that Menasha is a successor to the liabilities of the John Strange Paper Company and that, on information and belief, the John Strange Paper Company was merged into Menasha. USP is without information sufficient to form a belief as to the truth of the remaining allegations in paragraph 97.

98.     Responding to paragraph 98 of the Amended Complaint, USP admits that it recycled wastepaper at the De Pere Facility to make paperboard products. USP admits that a small fraction of the wastepaper it recycled may have included a small amount of PCBs, which was unknown to USP at the time. USP denies any remaining allegations in paragraph 98.

99.     Responding to paragraph 99 of the Amended Complaint, USP admits that it recycled wastepaper at the Menasha plant (formerly the John Strange Facility) to make paperboard products after it purchased the plant from Menasha in 1983. USP denies that the wastepaper it recycled at the Menasha plant included any detectable amounts of PCBs. USP denies any remaining allegations in paragraph 99.

100.    Responding to paragraph 100 of the Amended Complaint, USP admits only that the De Pere Facility connected with the City of De Pere's POTW in 1971, and that the wastewater from the De Pere Facility was thereafter discharged to the POTW. USP, further answering, affirmatively alleges that all existing results from tests performed on the wastewater discharged by the De Pere Facility showed that no PCBs were detected in the discharges to the POTW. USP denies the remaining allegations in paragraph 100, including that it discharged wastewater directly to the Fox River. USP, however, admits that prior to hooking up with the

10

POTW in 1971, the De Pere Facility at various times discharged wastewater to lagoons located at the De Pere Facility designed to settle out solids before water from the lagoons was then intermittently discharged to the Fox River, and that such discharges contained, without the knowledge of USP, small amounts of PCBs.

101. USP denies the allegations in paragraph 101 of the Amended Complaint.

102. Responding to paragraph 102 of the Amended Complaint, USP denies those allegations as they relate to the mill purchased from Menasha in 1983. With respect to the De Pere Facility, USP admits that it inadvertently, unintentionally and unknowingly discharged small amounts of PCBs to the Fox River as a consequence of its recycling of waste paper that settled, except for a de minimis amount, in or about the Phase I area within OU4 where it accumulated with a larger mass of PCB waste from other sources, including from upstream sources, and affirmatively alleges that USP funded the removal of more PCB containing sediments from the Lower Fox River than it contributed. USP denies any remaining allegations in paragraph 102.

103. USP denies the allegations in paragraph 103 and affirmatively alleges that USP funded the cleanup of PCBs in the Phase 1 area of the Lower Fox River in an amount that exceeds any liability it might have had.

Allegations About WTM1 Company

104-109. The allegations in paragraphs 104-109 of the Amended Complaint are not directed toward USP, and therefore no response is required from USP.

Allegations About Neenah-Menasha Sewerage Commission

110-112. The allegations in paragraphs 110-112 of the Amended Complaint are not directed toward USP, and therefore no response is required from USP.

11

<u>Allegations About Brown County</u>

113-116     The allegations in paragraphs 113-116 of the Amended Complaint are not directed toward USP, and therefore no response is required from USP.

<u>Allegations About the City of Green Bay</u>

117-120     The allegations in paragraphs 117-120 of the Amended Complaint are not directed toward USP, and therefore no response is required from USP.

UNITED STATES AND STATE OF WISCONSIN'S CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF<br>
<u>(Cost Recovery by the United States Under CERCLA Section 107, 42 U.S.C. § 9607)</u>

121.     Responding to paragraph 121 of the Amended Complaint, USP incorporates by reference its answers to the allegations contained in paragraphs 1 through 120 of the Amended Complaint as though fully set forth in its answer to paragraph 121.

122.     USP denies the allegations in paragraph 122.

SECOND CLAIM FOR RELIEF<br>
<u>(Declaratory Judgment for Recovery of Further Response Costs by the United States)</u>

123.     Responding to paragraph 123 of the Amended Complaint, USP incorporates by reference its answers to the allegations contained in paragraphs 1 through 122 of the Plaintiff's Amended Complaint as though fully set forth in its answer to paragraph 123.

124.     USP denies the allegations in paragraph 124.

THIRD CLAIM FOR RELIEF<br>
<u>(Cost Recovery by the State Under CERCLA Section 107, 42 U.S.C. § 9607</u>

125.     Responding to paragraph 125 of the Amended Complaint, USP incorporates by reference its answers to the allegations contained in paragraphs 1 through 124 of the Amended Complaint as though fully set forth in its answer to paragraph 125.

126.     USP denies the allegations in paragraph 126.

## FOURTH CLAIM FOR RELIEF
(Declaratory Judgment for Recovery for Further Response Costs by the State

127.    Responding to paragraph 127 of the Amended Complaint, USP incorporates by reference its answers to the allegations contained in paragraphs 1 through 126 of the Amended Complaint as though fully set forth in its answer to paragraph 127.

128.    USP denies the allegations in paragraph 128.

## FIFTH CLAIM FOR RELIEF
(United States' Claim for Relief Under CERCLA Section 106, 42 U.S.C. § 9606)

129.    Responding to paragraph 129 of the Amended Complaint, USP incorporates by reference its answers to the allegations contained in paragraphs 1 through 128 of the Amended Complaint as though fully set forth in its answer to paragraph 129.

130.    Responding to paragraph 130 of the Amended Complaint, USP admits that the UAO at paragraph 36 states that "[t]he release or threatened release of one or more hazardous substances … may be presenting an imminent and substantial endangerment to the public health or welfare or the environment." USP denies the remaining allegations in paragraph 130 of the Amended Complaint.

131.    Responding to paragraph 131 of the Amended Complaint, USP admits that the UAO orders its recipients to take certain actions specified in the UAO. USP is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 131.

132.    Responding to paragraph 132 of the Amended Complaint, USP admits the Plaintiffs seek the type of relief stated in paragraph 132; however, USP denies that Plaintiffs are entitled to such relief.

13

## SIXTH CLAIM FOR RELIEF
(Natural Resource Damages)

133.     Responding to paragraph 133 of the Amended Complaint, USP incorporates by reference its answers to the allegations contained in paragraphs 1 through 132 of the Amended Complaint as though fully set forth in its answer to paragraph 133.

134.     Responding to paragraph 134 of the Amended Complaint, USP admits that PCBs have been released into the environment at the Site. USP is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 134.

135.     USP denies the allegations in paragraph 135 of the Amended Complaint.

136.     USP denies the allegations in paragraph 136 of the Amended Complaint.

### UNITED STATES AND STATE OF WISCONSIN'S PRAYER FOR RELIEF

137.     USP denies Plaintiffs are entitled to the relief requested.

## USP'S AFFIRMATIVE DEFENSES

### FIRST SEPARATE DEFENSE

138.     The Amended Complaint, and each claim for relief contained therein, fails to state a claim upon which relief may be granted.

### SECOND SEPARATE DEFENSE

139.     Plaintiffs have failed to comply with the requirements of the National Contingency Plan, including the failure to choose or to conduct a remedy in a manner consistent with the National Contingency Plan, and therefore cannot be reimbursed for the expenses they may have incurred or may later incur, in whole or in part.

### THIRD SEPARATE DEFENSE

140.     NCR Corporation and Appleton Papers Inc., the U.S. Government and the State of Wisconsin are liable under CERCLA for releases in every Operable Unit of the Site. However,

14

as to USP, any liability cannot be reasonably based on costs or damages associated with portions of the Lower Fox River upstream of USP's facility or other locations where USP's discharges did not come to rest and, therefore, USP is not jointly and severally liable for some or all of the costs and damages for which Plaintiffs seek cost recovery.

## FOURTH SEPARATE DEFENSE

141.    Without admitting any liability, USP asserts that any discharge of hazardous substances, pollutants, or contaminants, or harm resulting from any such release as alleged in the Amended Complaint is the result of superseding, intervening acts or omissions of third parties over whom USP had no control.

## FIFTH SEPARATE DEFENSE

142.    Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

## SIXTH SEPARATE DEFENSE

143.    In the event that USP is held liable to Plaintiffs, all such liability being expressly denied, then liability should be held on a proportional basis taking into account the culpability, contributions and other relevant factors of all other parties, including Plaintiffs, the other named defendants, persons that Plaintiffs have sued and then dismissed by reason of settlement or otherwise, and all other persons and entities in any way responsible for conditions at the Lower Fox River Site.

## SEVENTH SEPARATE DEFENSE

144.    Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands. Additionally, with respect to any such equitable claims, any damages which may be due and owing to Plaintiffs are the sole result of Plaintiffs' negligence or wrongdoing, the negligence or

15

wrongdoing of the other named Defendants, or the negligence or wrongdoing of other persons not parties to this lawsuit.

## EIGHTH SEPARATE DEFENSE

145. Plaintiffs' claims are barred in whole or in part by the doctrine of laches.

## NINTH SEPARATE DEFENSE

146. Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel.

## TENTH SEPARATE DEFENSE

147. Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

## ELEVENTH SEPARATE DEFENSE

148. Plaintiffs' claims are barred against USP because the release or threat of release of a hazardous substance and the damages resulting from that release or threatened release were caused solely by an act of God, or an act or omission of a third party other than an employee or agent of USP, or other than one whose act or omission occurred in connection with a contractual relationship, existing directly or indirectly, with USP, including from parties upstream of USP's De Pere mill. USP exercised due care with respect to its mills and never had a detect of PCBs in its effluent.

## TWELFTH SEPARATE DEFENSE

149. Plaintiffs' claims for natural resource damages are barred against USP because there shall be no recovery under the authority of section 107(a)(4)(C) of CERCLA, 42 U.S.C. § 9607(a)(4)(C), which imposes liability for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release, where such damages and the release of a hazardous substance from which

16

such damages resulted have occurred wholly before December 11, 1980, as set forth in section 107(f)(1) of CERCLA, 42 U.S.C. § 9607(f)(1).

## THIRTEENTH SEPARATE DEFENSE

150.    Plaintiffs' claims are barred in whole or in part by the doctrine of claim preclusion.

## FOURTEENTH SEPARATE DEFENSE

151.    Plaintiffs' claims are barred in whole or in part by the doctrine of issue preclusion.

## FIFTEENTH SEPARATE DEFENSE

152.    This action is barred, in whole or in part, by a prior action pending before this Court which involves the same transactions, issues, parties, and Site that are the subject of the First Amended Complaint.

## SIXTEENTH SEPARATE DEFENSE

153.    USP is not liable for any damages for injury to, destruction of, or loss of natural resources unless those losses were caused by a release of hazardous substances for which USP is responsible.

## SEVENTEENTH SEPARATE DEFENSE

154.    Each Plaintiff is a "covered person" with respect to this Site pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a).  Neither Plaintiff may bring a claim to recover costs pursuant to section 107(a)(1)-(4)(A), *id.* § 9607(a)(1-4)(A), but instead may only pursue a contribution claim pursuant to section 113(f), *id.* § 9613(f).

17

## EIGHTEENTH SEPARATE DEFENSE

155. On information and belief, Plaintiffs failed to use reasonable care and diligence to mitigate or to minimize the injuries or damages alleged.

## NINETEENTH SEPARATE DEFENSE

156. The United States, and specifically EPA, is a party responsible for the Site pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Accordingly, EPA is not permitted to issue a unilateral administrative order for remedial action with respect to this Site because EPA may not unilaterally determine the allocation of liability among responsible parties of which it is one. Further, neither the United States nor the State of Wisconsin may seek enforcement of such a unilateral administrative order.

## TWENTIETH SEPARATE DEFENSE

157. USP reserves the right to use all affirmative defenses pleaded by other defendants unless they conflict with allegations pleaded by USP.

## **COUNTERCLAIMS**

U.S. Paper Mills Corp. ("USP") brings these counterclaims for contribution under CERCLA Sec. 113(f), 42 U.S.C. Sec. 9613(f) and for declaratory relief under CERCLA Sec. 113(g)(2) and Declaratory Judgment Act, 28 U.S.C. Sec. 2201(a), with respect to this Site, against the United States of America ("U.S. Government") and the State of Wisconsin as follows:

## PARTIES

1. USP is a Wisconsin Corporation with its principal place of business in De Pere, Wisconsin. USP is a "person" as defined in CERCLA Sec. 101(21), 42 U.S.C. Sec. 9601(21).

18

2.      The U.S. Government is a "person" as defined in CERCLA Sec. 101(21), 42

U.S.C. Sec. 9601(21).  The U.S. Government acts through its various agencies and departments.

The Department of Interior, EPA, FDA, the General Services Administration, the Government

Printing Office, the U.S. Army, the U.S. Army Corps of Engineers, and the U.S. Fish and

Wildlife Service are among the agencies or departments of the U.S. Government.  It is not

necessary under CERCLA to sue individual agencies or departments of the U.S. Government.

3.      The State of Wisconsin is a "person" as defined in CERCLA Sec. 101(21), 42

U.S.C. Sec. 9601(21).  The State of Wisconsin acts through its various agencies and departments.

For purposes of these counterclaims, the State of Wisconsin includes every agency or department

that sold, directly or indirectly waste carbonless copy paper likely to have contained PCBs to

recycling mills on the Lower Fox River.

VENUE AND JURISDICTION

4.      Subject matter jurisdiction is based on 28 U.S.C. Sec. 1331(controversy arising

under a federal statute), 42 U.S.C. Sec. 9613(b)(exclusive original jurisdiction over all

controversies arising under CERCLA), and 28 U.S.C. Sec. 2201(a)(action for declaratory

judgment).

5.      There is an actual, existing and justiciable controversy between USP, the U.S.

Government and the State of Wisconsin for each and every count alleged in these counterclaims,

and the parties have genuine and opposing interests, which are direct and substantial, relating to

the liability and responsibility of the U.S. Government and the State of Wisconsin for future

response cost necessary to abate the release or threatened release of hazardous substances at or

from the Site.

19

6. The Court has jurisdiction to award declaratory relief pursuant to Sec. 113(g)(2) of CERCLA, 42 U.S.C. Sec. 9613(g)(2) and the Declaratory Judgment Act, 28 U.S.C. Sec. 2201(a).

7. Venue in this action is proper pursuant to 28 U.S.C. Sec 1391(e), and 41 U.S.C. Sec. 9613(b), because a substantial part of the events or omissions giving rise to the claims occurred in this District, the Plaintiffs reside in this District and the Site is located in this District.

## FACTUAL BACKGROUND

8. By at least 1971, the U.S. Government was aware of the persistence of PCBs in the environment and their impact on the health of fish, birds and animals.

9. By August 1971, the U.S. Government had found that some cereal and other food products contained PCBs and traced that contamination to greyboard food packaging.

10. By the end of 1971, the U.S. Government was aware that the primary source of PCBs in greyboard food packaging was recycled carbonless copy paper.

11. The U.S. Government was aware at that time that the recycling of carbonless copy paper resulted in discharges of PCBs.

12. The U.S. Government knew by no later than 1972 that the source of the PCBs in the sediments in the Lower Fox River were the result of the production of carbonless copy paper and the recycling of wastepaper containing carbonless copy paper.

13. The U.S. Government continued to participate in and allow recycling of PCB-containing carbonless copy paper, and the EPA in its 1979 PCB Ban Rule Guidance expressly authorized the use of PCB-containing carbonless copy paper in recycling because amounts were judged to be small and there was no inexpensive way to separate PCB-containing carbonless copy paper from other wastepaper.

20

14.     The U.S. Government, through the U.S. Army Corps of Engineers, has been dredging the Lower Fox River to maintain navigational channels for approximately 150 years.

15.     On information and belief, the U.S. Government also dredged to maintain dams.

16.     On information and belief, the U.S. Army Corps of Engineers' navigational dredging and open water disposal of dredge spoils continued well beyond the point at which the U.S. Government knew that sediments of the Lower Fox River were contaminated with PCBs.

17.     On information and belief, during its dredging operations since 1954, the U.S. Government caused the resuspension and release of PCB-contaminated sediments in the Lower Fox River and bay of Green Bay.

18.     Since the 1970s, the U.S. Government has encouraged recycling of paper and several of the U.S. Government offices participated in a program called the WASTE NOT® program through a contractor, Shade, Inc. of Green Bay, Wisconsin.

19.     The U.S. Government offices disposed of waste office paper through the WASTE NOT® program.

20.     The U.S. Government knew that the wastepaper collected by the WASTE NOT® program would be recycled by one or more paper mills on the Lower Fox River.

21.     By the early 1970s, the U.S. Government was aware that office paper it was disposing of through the WASTE NOT® program contained PCB's.

22.     Even after becoming aware of PCBs in its office waste, the U.S. Government continued to dispose of its waste office paper and old government forms files through the WASTE NOT® program.

23.     In addition, on information and belief, the U.S. Government operated dams along the Lower Fox River in a way that allowed PCB-contaminated sediments to travel downstream

Case 1:10-cv-00910-WCG   Filed 12/16/10   Page 21 of 26   Document 51

which, along with its dredging and disposal of contaminated sediments at the Site, increased the cost of the remedy and the natural resource damages.

24.     The State of Wisconsin also promoted wastepaper recycling and engaged in wastepaper recycling itself.  PCB-contaminated wastepaper from the State of Wisconsin was recycled on the Lower Fox River resulting in the release and/or discharge of PCBs to the Lower Fox River and bay of Green Bay.

25.     USP has incurred response costs with respect to a consent decree relating to the Phase 1 remedial dredging near its facility in an amount over $12 million.

COUNT I – CONTRIBUTION CLAIM UNDER CERCLA SEC. 113(f)

26.     USP incorporates by reference its allegations and paragraphs 1 - 25 above.

27.     The Site is a "facility" under CERCLA Sec. 101(9), 42 U.S.C. Sec. 9601(9).  The dams owned and operated by the U.S. Army Corps of Engineers along the Lower Fox River, as well as the dredging vessels and equipment used by the U.S. Army Corps of Engineers to dredge the Lower Fox River, are also "facilities" or "vessels" under CERCLA Sec. 101(9) or 101(28), 42 U.S.C. Sec. 9601(9) or 9601(28).

28.     The bed of the bay of Green Bay and the bed of Little Lake Butte des Mortes are "facilities" under CERCLA.  See 101(9), 42 U.S.C. 9601(9).  The State of Wisconsin owns the beds of the bay of Green Bay and Little Lake Butte des Mortes.

29.     As a result of the activities described above, the U.S. Government is a "person" who is liable for a "release" pursuant to CERCLA Sec. 107(a)(1)-(4), 42 U.S. C. Sec. 9607(a)(1)-(4).

30.  As a result of its wastepaper recycling and ownership of "facilities," the State of Wisconsin is a "person" who is liable for a "release" pursuant to CERCLA Sec. 107(a)(1)-(4), 42 U.S.C. Sec. 9607(a)(1)-(4).

31.  PCBs are a "hazardous substance" under CERCLA Sec. 101(14), 42 U.S.C. Sec. 9601(14).

32.  CERCLA Sec. 113(f)(1), 42 U.S.C. Sec 9613(f)(1) allows any person to seek contribution from any other person who is liable or potentially liable under CERCLA Sec. 107(a).

33.  Pursuant to CERCLA Sec. 113(f), the U.S. Government is liable under CERCLA for an equitable share of the response costs and natural resource damages at the Site.  The U.S. Government, through various federal administrative agencies and departments, provided PCB containing wastepaper and scrap paper to one or more mills along the Lower Fox River and therefore "arranged" for the transport and disposal or treatment of a hazardous substance under CERCLA, Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3).

34.  The U.S. Government's disposal of PCB containing wastepaper to one or more mills along the Lower Fox River resulted in PCBs being "released" within the meaning of CERCLA Sec. 101(22), 42 U.S.C. Sec. 9601(22), as the mills reprocessed the PCB-containing paper and inadvertently, unknowingly and unintentionally discharged PCBs to publicly-owned treatment works or the Lower Fox River.

35.  The State of Wisconsin, through its various departments, provided PCB-containing wastepaper and scrap paper to one or more mills along the Lower Fox River and, therefore, "arranged" for the transport and disposal or treatment of the hazardous substance under

23

CERCLA Sec. 107(a)(3), 42 U.S.C. Sec. 9607(a)(3), and is liable pursuant to CERCLA Sec. 113(f) for an equitable share of the response costs and natural resource damages at the Site.

36.     The State of Wisconsin's disposal of PCB-containing wastepaper to one or more mills along the Fox River resulted in PCBs being "released," as that term is defined by CERCLA Sec. 101(22), 42 U.S.C. Sec 9601(22), as the mills reprocessed the PCB-containing paper and inadvertently, unknowingly and unintentionally discharged PCB to publicly-owned treatment works or the Lower Fox River.

37.     The U.S. Government, by the U.S. Army Corps of Engineers, excavated, dredged, resuspended and disposed of PCB-contaminated sediments in the Lower Fox River from at least 1954 to the present, resulting in "releases" or threatened "releases" as defined in CERCLA Sec. 101(22), 42 U.S.C. Sec.9601(22) of hazardous substances into the environment.

38.     USP has incurred, and continues to incur, response costs as defined by CERCLA Sec. 101(25), 42 U.S.C. Sec. 9601(25) as a result of the release or threatened release of hazardous substances at the Site.  These costs incurred and to be incurred by USP are and will be consistent with the National Contingency Plan, 40 C.F.R., Part 300, promulgated by the U.S. Government, in its capacity as the E.P.A. under the authority of CERCLA Sec. 105, 42 U.S.C. Sec. 9605.

39.     USP has paid more than its allocable share of the aforementioned response costs and damages and requests that the Court determine the U.S. Government and State of Wisconsin's allocable shares of the necessary costs of response to clean up the Site, as well as their shares of natural resource damages, and to determine that the U.S. Government and State of Wisconsin are liable in contribution to USP under CERCLA Sec. 113(f) for those costs and damages paid by USP which exceeds its allocable share.

## COUNT II – DECLARATORY JUDGMENT UNDER CERCLA SEC. 113(g) AND THE DECLARATORY JUDGMENT ACT

40.     USP incorporates by reference its allegations in paragraphs 1 through 39 above.

41.     USP is entitled to a declaratory judgment under CERCLA Sec. 113(g)(2) and Declaratory Judgment act, 28 U.S.C. Sec 2201(a) against the U.S. Government and State of Wisconsin declaring that the U.S. Government and the State of Wisconsin are liable to USP for all response costs to be incurred by USP in the future which exceeds USP's allocable share.

## PRAYER FOR RELIEF

WHEREFORE, U.S. Paper Mills Corp. requests that this Court enter judgment in its favor against Plaintiffs and Counterclaim-defendants, United States of America and State of Wisconsin, as follows:

A.     Dismissal of Plaintiffs' claims against USP, with prejudice;

B.     An award under its counterclaims, in contribution under CERCLA Sec. 113(f), 42 U.S.C. Sec. 9613(f) for response costs and damages paid by USP in excess of its allocable share, with interest from the date incurred;

C.     For a declaration under its counterclaims that the U.S. Government and State of Wisconsin are liable to USP for response costs and damages incurred and to be incurred in the future by USP at the Site, with such declaratory judgment to be binding in this action and in any future action by or against the U.S. Government or State of Wisconsin under CERCLA Sections 107 or 113 in connection with the Lower Fox River;

D.     Prejudgment interest on all damages awarded at the maximum rate allowed by law;

E.     For such costs and attorneys fees as constitute response costs;

F.     For costs and disbursements in this action; and

G.    For such further relief as the Court deems just and proper.


Dated this 16th day of December, 2010.

                              For U.S. Paper Mills Corp.


                              s/Scott W. Hansen
                              Scott W. Hansen
                              shansen@reinhartlaw.com
                              Steven P. Bogart
                              sbogart@reinhartlaw.com
                              Thomas M.. Phillips
                              tphillips@reinhartlaw.com
                              Reinhart Boerner Van Deuren, s.c.
                              1000 North Water Street, Suite 1700
                              Milwaukee, WI 53202
                              Telephone:  414-298-1000
                              Facsimile:  414-298-8097


                              Thomas R. Gottshall
                              tgottshall@hsblawfirm.com
                              Stephen F. McKinney
                              smckinney@hsblawfirm.com
                              Haynsworth Sinkler Boyd P.A.
                              1201 Main Street, 22nd Floor
                              Columbia, SC  29201-3232
                              Telephone:  803-540-7856
                              Facsimile:  803-765-1243


REINHART\5529415