# UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
# REGION 5

IN THE MATTER OF ) ADMINISTRATIVE ORDER ON
) CONSENT
Lower Fox River and )
Green Bay Site )
Contaminant Delineation ) U.S. EPA Region 5    V-W- 00 C-731
) CERCLA Docket No.
)
)
Respondents: )
) Proceeding Under Sections 104, 106(a), and 107
Fort James Corporation, and ) of the Comprehensive Environmental Response,
Fort James Operating Company ) Compensation, and Liability Act, as amended,
) 42 U.S.C. §§ 9604, 9606(a), and 9607.

## I. JURISDICTION AND GENERAL PROVISIONS

A. This Administrative Order on Consent ("Order") is entered into voluntarily by the United States Environmental Protection Agency ("EPA"), the State of Wisconsin ("State") through the Wisconsin Department of Natural Resources ("WDNR"), Fort James Corporation, and the Fort James Operating Company (collectively "Fort James" or "Respondent"). The mutual objectives of the EPA, WDNR, and Respondent in entering into this Order are to fund or perform a portion of the Lower Fox River and Green Bay Site ("Site") contaminant delineation investigation and to participate collaboratively in such investigation.

B. The Order is issued pursuant to the authority vested in the President of the United States by Sections 104, 106(a), and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9604, 9606(a), 9607, as amended ("CERCLA"). The activities conducted pursuant to this Order are subject to approval by EPA and the State as provided herein, and shall be consistent with CERCLA, the National Contingency Plan, 40 CFR Part 300, and all other applicable laws.

C. This Order provides for funding or performance of certain contaminant delineation investigation activities, which are considered response actions, in connection with the Site. This Order requires Respondent to fund or conduct response actions as described herein to investigate an actual or threatened release of hazardous substances at or from the Site that EPA and the State believe may present an imminent and substantial endangerment to the public health, welfare or the environment.

D. EPA, WDNR, and Respondent recognize that this Order has been negotiated in good faith and that the actions undertaken by Respondent in accordance with this Order do not constitute an admission of any liability. Nothing in this Order is intended by the Parties to be, nor shall it be construed as, an admission of fact or law, an estoppel, or a waiver of defenses or claims by Respondent for any purpose. The Parties agree that the provisions of this Order are not based on any views or assumptions regarding Respondent's appropriate share of liability or costs relating to the Site. Participation in this Order by Respondent is not intended by the Parties to be, and shall not be, an admission of any fact or opinion developed by EPA, the State, or any other person or entity in the course of the

work. Respondent agrees to comply with and be bound by the terms of this Order and further agrees that it will not contest the basis or validity of this Order or its terms.

## II. PARTIES BOUND

This Order applies to and is binding upon and inures to the benefit of EPA, WDNR, Respondent, and their successors and assigns. Any change in ownership or corporate status of Respondent including, but not limited to, any transfer of assets or real or personal property shall not alter Respondent's responsibilities under this Order. Respondent shall ensure that its contractors, subcontractors, and representatives comply with this Order. Respondent shall be responsible for any noncompliance with this Order.

## III. DEFINITIONS

A. Unless otherwise expressly provided herein, terms used in this Order which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Order or in the documents attached to this Order or incorporated by reference into this Order, the following definitions shall apply:

1. "Agencies" shall mean the United States Environmental Protection Agency (EPA) and the Wisconsin Department of Natural Resources (WDNR).

2. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601 et seq.

3. "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Order, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the end of the next business day.

4. "Effective Date" shall mean the effective date of this Order as provided by Section XXIV of this Order (Effective Date).

5. "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

6. "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

7. "National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

8. "Operable Unit 4" or "OU-4" shall mean the portion of the Lower Fox River between the DePere Dam and the river mouth.

9. "Order" shall mean this Administrative Order on Consent and all documents attached hereto. In the event of conflict between this Order and any attachment, this Order shall control.

10. "Paragraph" shall mean a portion of this Order identified by a capital letter and may include one or more subparagraphs.

11. "Parties" shall mean EPA, WDNR, and Respondent.

12. "Respondent" shall mean Fort James Corporation and the Fort James Operating Company.

13. "Section" shall mean a portion of this Order identified by a Roman numeral.

14. "Site" or "Lower Fox River and Green Bay Site," for purposes of this Order, shall mean the Lower Fox River and the bay of Green Bay, or any relevant portion thereof, and all suitable areas in close proximity to such portion(s) necessary for implementation of the response actions called for in this Order.

15. "State" shall mean the State of Wisconsin, including its departments, agencies, and instrumentalities.

16. "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities.

17. "Waste Material" shall mean 1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); 2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); and 3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

18. "WDNR" shall mean the Wisconsin Department of Natural Resources and any successor departments or agencies of the State of Wisconsin.

## IV. FINDINGS OF FACT

Based on available information, including the Administrative Record in this matter, EPA hereby finds that:

A. At certain times in the past, primarily in the 1950's and 1960's, certain paper companies located along the Fox River engaged in the manufacture or recycling of carbonless copy paper. Polychlorinated biphenyls (PCBs), which are hazardous substances, were used in the production of carbonless copy paper and in wastepaper that entered the paper recycling operations.

B. As a result of the paper mills' production or recycling of carbonless copy paper an estimated 690,000 pounds of PCBs were likely released to the Fox River. An estimated 66,000 pounds of these PCBs remain in the lower 39 miles of the Fox River.

C. As a result of this contamination, fish consumption advisories have been in effect on the Fox River since 1976.

Case 1:10-cv-00910-WCG   Filed 01/05/11   Page 3 of 19   Document 76-9

D.  On July 3, 1997, the United States Environmental Protection Agency sent a notice letter under Section 122(e) of CERCLA to, among others, Respondent, identifying it as a potentially responsible party (PRP) with respect to the Fox River.

E.  A Remedial Investigation and Feasibility Study (RI/FS) under the technical lead of WDNR, and a proposed remedial action plan, was issued for public comment on October 5, 2001.

F.  On January 7, 2003, the Agencies made public a Record of Decision for Operable Units 1 and 2 of the Site.

G.  The Agencies are commencing certain contaminant delineation activities in connection with the issuance of Records of Decision for the Site.

## V. CONCLUSIONS OF LAW AND DETERMINATIONS

Based on the Findings of Fact set forth above, and the Administrative Record, EPA has determined that:

A.  The Site is a "facility" as defined by Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

B.  The contamination found at the Site, as identified in the Findings of Fact above, includes "hazardous substances" as defined by Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

C.  Respondent is a "person" as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

D.  Respondent Fort James Operating Company is a responsible party under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), either as the present "owner" or "operator" of a facility from which there was a release of a hazardous substance or as a person who arranged for disposal or transport for disposal of a hazardous substances at a facility from which there was a release of a hazardous substance.

E.  The conditions described in the Findings of Fact above constitute an actual or threatened "release" of a hazardous substance from the facility into the "environment" as defined by Sections 101(8) and (22) of CERCLA, 42 U.S.C. §§ 9601(8) and (22).

F.  The conditions present at the Site may present a threat to public health, welfare, or the environment based upon the factors set forth in Section 300.415(b)(2) of the National Contingency Plan, as amended, 40 CFR § 300.415(b)(2).

G.  The actual or threatened release of hazardous substances from the Site may present an imminent and substantial endangerment to the public health, welfare, or the environment within the meaning of Section 106(a) of CERCLA, 42 U.S.C. § 9606(a).

H.  The response actions required by this Order are necessary to protect the public health, welfare, or the environment and if carried out in compliance with the terms of this Order, shall be deemed consistent with the NCP.

# VI. ORDER

Based upon the foregoing Findings of Fact, Conclusions of Law and Determinations, and the Administrative Record for this Site, it is hereby Ordered and Agreed that Respondent shall comply with all provisions of this Order.

# VII. CONTAMINANT DELINEATION INVESTIGATION FUNDING, WORK, AND PARTICIPATION

A. Contaminant Delineation Investigation Funding

1. Respondent shall provide up to $4 million to the Agencies to support the Agencies' contaminant delineation investigation activities. Such funds shall be payable on demand in increments not to exceed $500,000 with 45 days notice beginning July 1, 2003. Demands will be made only as necessary to satisfy anticipated encumbrances and not more frequently than once every 45 days.

    a. EPA and WDNR shall jointly execute and submit funding requests to Respondent directing that funds be disbursed to WDNR. Payment shall be made payable to the Wisconsin DNR and shall be hand delivered or mailed by certified mail or overnight mail to: Greg Hill, Wisconsin DNR, 101 S. Webster Street, P.O. Box 7921, Madison, WI 53707-7921. Funds received by WDNR under this Order shall be deposited pursuant to Wis. Stats. § 25.46 (21) into the nonlapsible state trust fund designated as the Environmental Fund to be utilized as appropriated in Wis. Stat. § 20.370(2)(du) for the Agencies' contaminant delineation investigation activities.

    b. In the event that any payment by Respondent under this Paragraph is not received when due, Interest shall accrue on the unpaid balance through the date of payment.

    c. In addition to the Interest required to be paid under the preceding Subparagraph, if any amounts to be paid under this Paragraph are not paid by the required date, Respondent shall pay a stipulated penalty in accordance with Section XII (Stipulated Penalties).

2. The United States and the State shall credit Respondent's payments to the Agencies under this Paragraph against any liability to the United States or the State that Respondent may have under federal or state law for response actions or response costs incurred in connection with the Site, above and beyond any credit(s) granted by the United States or the State to Respondent in connection with other expenditures.

B. Contaminant Delineation Investigation Response Actions Performed by Respondent

1. While the Parties do not presently envision Respondent performing the contaminant delineation investigation, Respondent may propose to the Agencies and the Agencies may propose to Respondent that Respondent perform certain portions thereof. Any contaminant delineation investigation project that the Parties agree shall be performed by Respondent will be performed in accordance with Section VIII (Work To Be Performed By Respondent).

2. All of Respondent's reasonable costs under the pre-approved cost ceiling for a project will be deemed allowable costs of the project under this Paragraph. Reasonable costs are those that would otherwise be recoverable under CERCLA Section 107(4)(B), 42 U.S.C. § 9607(4)(B), i.e. necessary costs of response consistent with the NCP. On a semi-annual basis, Respondent shall provide the Agencies with an accurate written summary of the costs paid by Respondent for each project performed by Respondent under this Paragraph. Those costs will be deemed reasonable and allowable unless the Agencies notify Respondent within 3 months of receipt of the summary as to which costs are not reasonable and allowable, and why.

3. The United States and the State will credit Respondent for reasonable and allowable costs incurred by Respondent under this Paragraph against any liability to the United States and the State that Respondent may have under federal and state law for response actions or response costs incurred in connection with the Site, above and beyond any credit(s) granted by the United States and the State to Respondent in connection with other expenditures.

C. Contaminant Delineation Investigation Participation

1. Respondent's authorized representatives and the authorized representatives of the Agencies who are responsible for overseeing preparation and implementation of the work plan for the contaminant delineation investigation shall confer in person or by telephone on a regular basis. The frequency of these consultations will depend on the pace of activity. As appropriate depending on the status of work plan preparation or implementation, the Agencies and Respondent anticipate that their representatives will discuss work plan preparation issues, data collection goals, data collection tasks, data quality objectives, implementation issues, and investigation results. Technical consultants may be involved in these discussions. The goal of all Parties is to have a continuing, cooperative, and constructive dialogue on these and other relevant topics.

2. The Agencies agree to consider any reasonable proposals that Respondent may make regarding investigations and/or evaluations to include in the contaminant delineation investigation. The Parties further agree that a proposed activity may be reasonable even if it relates only to the northern portion of OU-4. However, the Parties recognize that all final decisions on such proposals and all contaminant delineation activities will be made by the Agencies in their sole discretion.

3. The Agencies shall give Respondent a reasonable opportunity to observe and monitor the performance of contaminant delineation activities, including reasonable advance notice of such activities.

4. To the extent that EPA informs Respondent that particular information is confidential, Respondent and its representatives and consultants shall treat and maintain such information as confidential.

D. Designation of Project Coordinators.

1. Within 10 business days after the Effective Date of this Order, Respondent shall designate a Project Coordinator who shall be responsible for administration of all Respondent's response actions required by the Order. Respondent shall submit to

-6-

EPA the designated Project Coordinator's name, address, telephone number, and qualifications. To the greatest extent possible, the Project Coordinator shall be present on Site or readily available during Site work. EPA retains the right to disapprove of any Project Coordinator named by Respondent. If EPA disapproves a selected Project Coordinator, Respondent shall retain a different Project Coordinator within 5 business days following EPA's disapproval and shall notify EPA of that person's name and qualifications within 7 business days of EPA's disapproval. Receipt by Respondent's Project Coordinator of any notice or communication from EPA relating to this Order shall constitute receipt by Respondent.

2. EPA has designated James Hahnenberg (SR-6J) as the EPA Project Coordinator. Except as otherwise provided in this Order, Respondent shall direct all submissions required by this Order to the EPA Project Coordinator at Superfund Division Branch, U.S. Environmental Protection Agency, 77 West Jackson Blvd., Chicago, IL 60604-3590, by certified mail or overnight delivery. Respondent shall also send a copy of all submissions to Roger Grimes, Assistant Regional Counsel, 77 West Jackson Boulevard, C-14J, Chicago, Illinois, 60604-3590. Respondent is encouraged to make its submissions to EPA on recycled paper (which includes significant post-consumer waste paper content where possible) and using two-sided copies.

3. The State designates Gregory Hill as the WDNR Project Coordinator. Except as otherwise provided in this Order, Respondent shall direct all submissions required by this Order to the WDNR Project Coordinator at Wisconsin Department of Natural Resources, 101 S. Webster Street, P.O. Box 7921, Madison, WI 53707-7921, by certified mail or overnight delivery.

4. The Agencies and Respondent shall have the right to change their respective designated Project Coordinator. The Agencies shall notify Respondent, and Respondent shall notify the Agencies, as early as possible before such a change is made, but in no case less than 24 hours before such a change. The initial notification may be made orally, but it shall be promptly followed by a written notice.

## VIII. WORK TO BE PERFORMED BY RESPONDENT

A. While the Parties do not presently envision Respondent performing the contaminant delineation investigation, Respondent may propose to the Agencies and the Agencies may propose to Respondent that Respondent perform certain portions thereof. Any contaminant delineation investigation project that the Parties agree shall be performed by Respondent shall be performed in accordance with the following Paragraphs.

B. Respondent shall commence and implement all work under this Order in connection with a written Statement of Work ("SOW"), jointly approved by EPA and WDNR, describing the work to be performed by the Respondent, and establishing a project budget and an approved cost ceiling for the project. By agreement, the Parties may revise the SOW during the course of the project. The Parties may also agree to have Respondent undertake other approved tasks relating to the Site.

-7-

C. <u>Quality Assurance and Sampling</u>.

1. All sampling and analyses performed by Respondent pursuant to this Order shall conform to EPA (and, if an in-State laboratory is used, WDNR) direction, approval, and guidance regarding sampling, quality assurance/quality control ("QA/QC"), data validation, and chain of custody procedures. Respondent shall ensure that the laboratory used to perform the analyses participates in a QA/QC program that complies with the appropriate EPA (and, if an in-State laboratory is used, WDNR) guidance. Respondent shall follow, as appropriate, "Quality Assurance/Quality Control Guidance for Removal Activities: Sampling QA/QC Plan and Data Validation Procedures" (OSWER Directive No. 9360.4-01, April 1, 1990), as guidance for QA/QC and sampling. Respondent shall only use laboratories that have a documented Quality System that complies with ANSI/ASQC E-4 1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2) (EPA/240/B-01/002, March 2001)," or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements.

2. Upon request by the Agencies, Respondent shall have such a laboratory analyze samples submitted by the Agencies for QA monitoring. Respondent shall provide to the Agencies the QA/QC procedures followed by all sampling teams and laboratories performing data collection and/or analysis.

3. Upon request by the Agencies, Respondent shall allow the Agencies or their authorized representatives to take split and/or duplicate samples. Respondent shall notify the Agencies not less than 3 days in advance of any sample collection activity, unless shorter notice is agreed to by the Agencies. The Agencies shall have the right to take any additional samples they deem necessary.

4. At the request of the Respondent, the Agencies shall provide split or duplicate samples of any samples collected by the Agencies or their contractors during the contaminant delineation investigation. The Agencies shall notify Respondent not less than 3 days in advance of any sample collection activity, unless shorter notice is agreed to by the Respondent.

D. <u>Reporting</u>.

1. Respondent shall submit a written progress report to the Agencies concerning actions undertaken under an approved SOW every 45th day after the date of receipt of the Agencies' approval of the SOW until project completion, unless otherwise directed in writing by the EPA and WDNR Project Coordinators. These reports shall describe all significant developments during the preceding period, including the actions performed and any problems encountered, analytical data received during the reporting period, and the developments anticipated during the next reporting period, including a schedule of actions to be performed, anticipated problems, and planned resolutions of past or anticipated problems.

2. Respondent shall submit to each Agency 3 copies of all plans, reports or other submissions required by this Order and the approved SOW. Upon request by EPA or WDNR, Respondent shall submit such documents in electronic form.

E. Final Report. Within 90 days after completion of any project performed by Respondent under an approved SOW, Respondent shall submit for review and approval by the Agencies a final report summarizing the actions taken under the SOW. The final report shall conform, at a minimum, with the requirements set forth in Section 300.165 of the NCP entitled "OSC Reports." The final report shall include a good faith estimate of total costs or a statement of actual costs incurred in implementing the SOW, a presentation of the analytical results of all sampling and analyses performed, and accompanying appendices containing all relevant documentation generated during the response action (e.g., manifests, invoices, bills, contracts, and permits). The final report shall also include the following certification signed by a person who supervised or directed the preparation of that report:

> "Under penalty of law, I certify that to the best of my knowledge, after appropriate inquiries of all relevant persons involved in the preparation of the report, the information submitted is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

## IX. SITE ACCESS

The Parties to this Order anticipate that, during the contaminant delineation investigation, the Agencies will require access to the so-called "Shell property" owned by Respondent. Notwithstanding any provision of this Order, EPA and the State retain all of their access authorities and rights, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## X. ACCESS TO INFORMATION

A. Respondent shall provide to EPA and the State, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to work performed by Respondent under this Order, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to work performed by Respondent under this Order. Respondent shall also make available to EPA and the State, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the work performed by Respondent under this Order.

B. Respondent may assert business confidentiality claims covering part or all of the documents or information submitted to EPA and the State under this Order to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies documents or information when they are submitted to EPA and the State, or if EPA has notified Respondent that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or

40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Respondent.

C. Respondent may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Respondent asserts such a privilege in lieu of providing documents, it shall provide EPA and the State with the following: 1) the title of the document, record, or information; 2) the date of the document, record, or information; 3) the name and title of the author of the document, record, or information; 4) the name and title of each addressee and recipient; 5) a description of the contents of the document, record, or information; and 6) the privilege asserted by Respondent. However, no documents, reports or other information created or generated pursuant to the requirements of this Order shall be withheld on the grounds that they are privileged.

D. No claim of confidentiality shall be made with respect to any data required to be generated under this Order, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at the Site.

## XI. RECORD RETENTION

A. Until 10 years after completion of the response action required by this Order, Respondent shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the response action, regardless of any corporate retention policy to the contrary. Until 10 years after completion of the response action required by this Order, Respondent shall also instruct its contractors and agents to preserve all documents, records, and information of whatever kind, nature or description relating to performance of the response action.

B. At the conclusion of this document retention period, Respondent shall notify EPA and the State at least 90 days prior to the destruction of any such records or documents, and, upon request by EPA or the State, Respondent shall deliver any such records or documents to EPA or the State. Respondent may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Respondent asserts such a privilege, it shall provide EPA or the State with the following: 1) the title of the document, record, or information; 2) the date of the document, record, or information; 3) the name and title of the author of the document, record, or information; 4) the name and title of each addressee and recipient; 5) a description of the subject of the document, record, or information; and 6) the privilege asserted by Respondent. However, no documents, reports or other information created or generated pursuant to the requirements of this Order shall be withheld on the grounds that they are privileged.

## XII. COMPLIANCE WITH OTHER LAWS

A. Respondent shall perform all actions required pursuant to this Order in accordance with all applicable local, state, and federal laws and regulations except as provided in Section 121(e) of CERCLA, 42 U.S.C. § 6921(e), and 40 C.F.R. §§ 300.400(e) and 300.415(j). In accordance with 40 C.F.R. § 300.415(j), all on-Site actions required pursuant to this Order shall, to the extent practicable, as determined by EPA, considering the exigencies of the

Case 1:10-cv-00910-WCG   Filed 01/05/11   Page 10 of 19   Document 76-9

situation, attain applicable or relevant and appropriate requirements ("ARARs") under federal environmental or state environmental or facility siting laws.

B.  As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no federal, state or local permits shall be required for any portion of the response actions conducted entirely on Site. Where any portion of the response actions that is not on Site requires a federal or state permit or approval, Respondent shall submit timely applications and take all other actions necessary to obtain all such permits or approvals.

C.  Respondent may seek relief under the provisions of Section XVI (Force Majeure) of this Order for any delay in the performance of the response action resulting from a failure to obtain, or a delay in obtaining, any permit required for the response action provided Respondent has made proper, timely and complete permit application(s) and submitted all required information in a timely manner.

## XIII. EMERGENCY RESPONSE AND NOTIFICATION OF RELEASES

A.  In the event of any action or occurrence during performance of response action by Respondent which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Respondent shall immediately take all appropriate action. Respondent shall take these actions in accordance with all applicable provisions of this Order in order to prevent, abate or minimize such release or endangerment caused or threatened by the release. Respondent shall also immediately notify the EPA Project Coordinator or, in the event of his/her unavailability, the Regional Duty Officer, Emergency Response Branch, Region 5 at (312) 353-2318, and the appropriate WDNR representative at 1-800-943-0003 of the incident or Site conditions. In the event that Respondent fails to take appropriate response action as required by this Paragraph, and EPA and/or the State take such action instead, Respondent shall reimburse EPA and the State all costs of the response action not inconsistent with the NCP.

B.  Respondent shall submit a written report to the Agencies within 7 days after each release, setting forth the events that occurred and the measures taken or to be taken to mitigate any release or endangerment caused or threatened by the release and to prevent the reoccurrence of such a release. This reporting requirement is in addition to, and not in lieu of, reporting under Section 103(c) of CERCLA, 42 U.S.C. § 9603(c), and Section 304 of the Emergency Planning and Community Right-To-Know Act of 1986, 42 U.S.C. § 11004, *et seq.*, and Wis. Stats. Sec. 292.11.

## XIV. AUTHORITY OF THE EPA PROJECT COORDINATOR

The EPA Project Coordinator shall be responsible for overseeing the implementation of this Order, in consultation with the WDNR Project Coordinator. The EPA Project Coordinator shall have the same authority as that vested in an On-Scene Coordinator and Remedial Project Manager by the NCP, including the authority to halt, conduct, or direct any response action required by this Order, or to direct any other response action undertaken by EPA or Respondent at the Site. Absence of the EPA Project Coordinator from the Site shall not be cause for stoppage of work unless specifically directed by the EPA Project Coordinator in consultation with the WDNR Project Coordinator.

Case 1:10-cv-00910-WCG    Filed 01/05/11    Page 11 of 19    Document 76-9

## XV. DISPUTE RESOLUTION

A.  The parties to this Order shall attempt to resolve, expeditiously, informally, and in good faith, any disagreements concerning this Order.

B.  If Respondent undertakes a portion of the contaminant delineation investigation pursuant to this Order and Respondent objects to any EPA or State action taken relating to such response action, Respondent shall notify the Agencies in writing of its objection(s) within 14 calendar days of such action, unless the objection(s) has (have) been informally resolved. This written notice shall include a statement of the issues in dispute, the relevant facts upon which the dispute is based, all factual data, analysis or opinion supporting Respondent's position, and all supporting documentation on which Respondent relies. The Agencies shall submit their Statement of Position, including supporting documentation, no later than 14 calendar days after receipt of Respondent's written notice of dispute. Respondent may submit a response to the Agencies' Statement of Position within 5 business days after receipt of the Statement. During the 5 business days following receipt of the Agencies' Statement of Position, the parties shall attempt to negotiate, in good faith, a resolution of their differences. The time periods for exchange of written documents may be extended by agreement of all parties.

C.  An administrative record of any dispute under this Section shall be maintained by EPA and shall contain the notice of objections and accompanying materials, the Statement of Position, any other correspondence between the Agencies and Respondent regarding the dispute, and all supporting documentation. The administrative record shall be available for inspection by all parties. If the Agencies do not concur with the position of Respondent, the Division Director for the Office of Superfund, EPA Region V, in consultation with the Secretary of the WDNR, shall resolve the dispute based upon the administrative record and consistent with the terms and objectives of this Order, and shall provide written notification of such resolution to Respondent.

D.  Respondent's obligations under this Order, other than the obligations affected by the dispute, shall not be tolled by submission of any objection for dispute resolution under this Section. Elements of Work and/or obligations not affected by the dispute shall be completed in accordance with the schedule contained in the Statement of Work. Following resolution of the dispute, as provided by this Section, Respondent shall fulfill the requirement that was the subject of the dispute in accordance with the agreement reached or with EPA's decision, whichever occurs.

## XVI. FORCE MAJEURE

A.  Respondent agrees to perform all requirements under this Order within the time limits established under this Order, unless the performance is delayed by a *force majeure*. For purposes of this Order, a *force majeure* is defined as any event arising from causes beyond the control of Respondent or of any entity controlled by Respondent, including but not limited to its contractors and subcontractors, that delays or prevents performance of any obligation under this Order despite Respondent's best efforts to fulfill the obligation. *Force majeure* does not include financial inability to complete the response actions or increased cost of performance.

B.  If any event occurs or has occurred that may delay the performance of any obligation under this Order, whether or not caused by a *force majeure* event, Respondent shall notify the Agencies orally within 7 business days of when Respondent first knew that the event

-12-

might cause a delay. Within 14 calendar days thereafter, Respondent shall provide to the Agencies in writing an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Respondent's rationale for attributing such delay to a *force majeure* event if it intends to assert such a claim; and a statement as to whether, in Respondent's opinion, such event may cause or contribute to an endangerment to public health, welfare or the environment. Failure to comply with the above requirements shall preclude Respondent from asserting any claim of *force majeure* for that event for the period of time of such failure to comply and for any additional delay caused by such failure.

C. If the Agencies agree that the delay or anticipated delay is attributable to a *force majeure* event, the time for performance of the obligations under this Order that are affected by the *force majeure* event will be extended by the Agencies for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the *force majeure* event shall not, of itself, extend the time for performance of any other obligation. If the Agencies do not agree that the delay or anticipated delay has been or will be caused by a *force majeure* event, the Agencies will notify Respondent in writing of their decision. If the Agencies agree that the delay is attributable to a *force majeure* event, the Agencies will notify Respondent in writing of the length of the extension, if any, for performance of the obligations affected by the *force majeure* event.

D. If either the EPA or the State, but not the other, concludes that a delay or anticipated delay has not been or will not be caused by a *force majeure* event, the EPA and the State will notify Respondent in writing of such disagreement, the provisions of Section XV (Dispute Resolution) shall be deemed to be invoked, and Respondent's time for invoking the provisions of Section XV will be stayed until the EPA and the State have completed the process specified in Section XV.

## XVII. STIPULATED AND STATUTORY PENALTIES

A. Respondent shall be liable for payment into the Hazardous Substances Superfund administered by the EPA of the sums set forth below as stipulated penalties for each week or part thereof that Respondent fails to comply with a work schedule or payment schedule in accordance with the requirements contained in this Order, unless the Agencies determine that such a failure or delay is attributable to force majeure as defined in Section XVI or is otherwise approved by EPA. Such sums shall be due and payable within thirty (30) days of receipt of written notification from EPA specifically identifying the noncompliance and assessing penalties, unless Respondent invokes the procedures of Section XV (Dispute Resolution). These stipulated penalties shall accrue in the amount of $1,000.00 for the first week or part thereof, and $1,500.00 for each week or part thereof thereafter. Stipulated penalties shall begin to accrue on the day that performance is due or a violation occurs and extends through the period of correction.

B. The stipulated penalties set forth herein shall not preclude the Agencies from electing to pursue any other remedy or sanction because of Respondent's failure to comply with any of the terms of this Order, including a suit to enforce the terms of this Order. Said stipulated penalties shall not preclude the EPA from seeking statutory penalties up to the amount authorized by law if Respondent fails to comply with any requirements of this Order. Provided, however, that the United States shall not seek civil penalties pursuant to

-13-

Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of this Order.

C. Upon receipt of written demand from EPA, Respondent shall make payment to EPA within 30 days and interest shall accrue on late payments. Payments shall be made in accordance with instructions provided by EPA in the written demand. If Respondent fails to pay stipulated penalties when due, EPA may institute proceedings to collect the penalties, as well as interest.

D. Even if violations are simultaneous, separate penalties shall accrue for separate violations of this Order. Penalties shall accrue regardless of whether EPA has notified Respondent of a violation or act of noncompliance. The payment of penalties shall not alter in any way Respondent's obligation to complete the performance of any work required under this Order. Stipulated penalties shall accrue, but need not be paid, during any dispute resolution period concerning the particular penalties at issue. If Respondent prevails upon resolution, Respondent shall pay only such penalties as the resolution requires. In its unreviewable discretion, EPA may waive its rights to demand all or a portion of the stipulated penalties due under this Section.

## XVIII. OTHER CLAIMS

A. By issuance of this Order, the United States, the State, and the Agencies assume no liability for injuries or damages to persons or property resulting from any acts or omissions of Respondent. The United States, the State, and the Agencies shall not be a party or be held out as a party to any contract entered into by Respondent or its directors, officers, employees, agents, successors, representatives, assigns, contractors, or consultants in carrying out activities, if any, pursuant to this Order.

B. Nothing in this Order constitutes a satisfaction of or release from any claim or cause of action against Respondent or any person not a party to this Order, for any liability such person may have under CERCLA, other statutes, or the common law, including but not limited to any claims of the United States for costs, damages and interest under Sections 106(a) or 107(a) of CERCLA, 42 U.S.C. §§ 9606(a), 9607(a).

C. This Order does not constitute a preauthorization of funds under Section 111(a)(2) of CERCLA, 42 U.S.C. § 9611(a)(2). The Respondent waives any claim to payment under Sections 106(b), 107, 111, 112, and 113 of CERCLA, 42 U.S.C. §§ 9606(b), 9607, 9611, 9612, and 9613 against the United States or the Hazardous Substance Superfund arising out of any action performed under this Order. No action or decision by EPA pursuant to this Order shall give rise to any right to judicial review except as set forth in Section 113(h) of CERCLA, 42 U.S.C. § 9613(h).

D. Respondent specifically reserves all rights and defenses that it may have, including but not limited to the right to contest any Findings of Fact and Conclusions of Law and Determinations set forth in Sections IV and V of this Order in any proceeding other than an action brought by EPA or the State to enforce this Order.

## XIX. INDEMNIFICATION

A. Respondent shall indemnify, save and hold harmless the United States, the State, and their officials, agents, contractors, subcontractors, employees and representatives from any and all claims or causes of action arising from, or on account of, negligent or other wrongful

-14-

acts or omissions of Respondent, its officers, directors, employees, agents, contractors, or subcontractors, in carrying out actions pursuant to this Order. In addition, Respondent agrees to pay the United States and/or the State all costs incurred by the United States and/or the State, including but not limited to attorneys fees and other expenses of litigation and settlement, arising from or on account of claims made against the United States and/or the State based on negligent or other wrongful acts or omissions of Respondent, its officers, directors, employees, agents, contractors, subcontractors and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Order. Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of Respondent in carrying out activities pursuant to this Order. Neither Respondent nor any such contractor shall be considered an agent of the United States or the State.

B. The United States and/or the State shall give Respondent notice of any claim for which the United States and/or the State plan to seek indemnification pursuant to this Section and shall consult with Respondent prior to settling such claim.

C. Respondent waives all claims against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States and/or the State, arising from or on account of any contract, agreement, or arrangement between Respondent and any person for performance of response actions on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Respondent shall indemnify and hold harmless the United States and the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Respondent and any person for performance of response actions on or relating to the Site, including, but not limited to, claims on account of construction delays. Nothing in this Order, however, requires indemnification by Respondent for any claim or cause of action against the United States or the State based on acts or omissions that occur at the direction of the United States or the State (not including oversight or approval of plans or activities of Respondent).

## XX. NOTICES AND SUBMISSIONS

Whenever, under the terms of this Order, notice is required to be given or a document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Order.

As to the United States:

    Director, Superfund Division
    U.S. Environmental Protection Agency
    Region 5
    77 West Jackson Blvd.
    Chicago, IL 60604

As to the State:

> Greg Hill
> WDNR Project Coordinator
> Wisconsin Department of Natural Resources
>
> P.O. Box 7921                    101 S. Webster St.
> Madison, WI 53707-7921           Madison, WI 53703
> (Regular Mail)                   (Over-Night Mail)

As to the Respondent:

> J. Michael Davis
> Principal Counsel - Environmental
> Georgia-Pacific Corporation
> 133 Peachtree Street, N.E.
> Atlanta, GA 30303
>
> with a copy to
>
> John Hanson
> Beveridge & Diamond, P.C.
> 1350 I Street, N.W. - Suite 700
> Washington, DC 20005

## XXI. MODIFICATIONS

Any requirement of this Order may be modified in writing by mutual agreement of the parties. If Respondent seeks permission to deviate from any approved plan or schedule, Respondent's Project Coordinator shall submit a written request to the Agencies for approval outlining the proposed modification and its basis. No informal advice, guidance, suggestion, or comment by the Agencies regarding reports, plans, specifications, schedules, or any other writing submitted by Respondent shall relieve Respondent of its obligations to obtain such formal approval as may be required by this Order, and to comply with all requirements of this Order unless it is formally modified.

## XXII. NOTICE OF COMPLETION

At the request of Respondent, the Agencies shall promptly determine whether all response actions have been performed in accordance with this Order, except for certain continuing obligations required by this Order (e.g., record retention). Upon such determination, the Agencies will promptly provide written notice to Respondent. Such notice will not be unreasonably withheld. If the Agencies determine that any required response activities have not been completed in accordance with this Order, they will notify Respondent, provide a list of the deficiencies, and require that Respondent correct such deficiencies.

## XXIII. SEVERABILITY

If a court issues an order that invalidates any provision of this Order or finds that Respondent has sufficient cause not to comply with one or more provisions of this Order, Respondent shall remain bound to comply with all provisions of this Order not invalidated by the court's order.

## XXIV. EFFECTIVE DATE

This Order shall become effective upon transmission to Respondent's Project Coordinator, of the signature pages herein for the Director for the Office of Superfund, EPA, Region V, and the Secretary of the WDNR.

## XXV. SIGNATORIES

Each undersigned representative of a signatory to this Administrative Order on Consent certifies that he or she is fully authorized to enter into the terms and conditions of this Order and to bind such signatory to this document.

Case 1:10-cv-00910-WCG   Filed 01/05/11   Page 17 of 19   Document 76-9

IN THE MATTER OF:
Administrative Order by Consent
Lower Fox River, Wisconsin

AGREED AS STATED ABOVE:
FORT JAMES CORPORATION and
FORT JAMES OPERATING COMPANY
BY:

*Kathleen M Bennett* (signature)

Name: Kathleen M. Bennett
Title: Vice President, Resource Stewardship

DATE: January 28, 2003

-18-

IN THE MATTER OF:
Administrative Order by Consent:
Fox River, Wisconsin

IT IS SO ORDERED AND AGREED.

U.S. ENVIRONMENTAL PROTECTION AGENCY
BY:

_____  DATE: 1/29/03
Thomas V. Skinner
Regional Administrator
U.S. Environmental Protection Agency, Region 5


WISCONSIN DEPARTMENT OF NATURAL RESOURCES
BY:

_____  DATE: 1/29/03
Scott Hassett, Secretary