RESPONSE OF U.S. PAPER MILLS CORP.
TO JUNE 10, 1998 INFORMATION
REQUEST FROM
UNITED STATES DEPARTMENT OF
THE INTERIOR
FISH & WILDLIFE SERVICE

A.    U.S. Paper Mills - Menasha, WI

1.    To the extent different from previous responses, identify all persons consulted in
      the preparation of the answers to these information requests.

      OBJECTION: U.S. Paper Mills Corp. ("U.S. Paper") OBJECTS to this
      information request on the whole. U.S. Paper believes that the United States
      Department of the Interior, Fish and Wildlife Service ("DOI-FWS") has no
      authority under relevant statutes or rules to submit a third (or a second)
      information request to U.S. Paper. U.S. Paper believes that being required to
      respond to such a third request in the absence of any clear authority for a third
      request is oppressive, onerous and unduly burdensome. U.S. Paper also
      OBJECTS to this request as invading the attorney-client communication privilege
      and the attorney work product doctrine. Without waiving its objections, U.S.
      Paper responds as follows.

Response:    In the preparation of the answers to these requests, with the exception of
             Dori Heitala, U.S. Paper has not consulted persons different than those identified
             in previous responses. U.S. Paper does produce the deposition transcripts of
             David Austin, Pat Morris, Francis Eparvier and Robert Jochman. In lieu of
             consulting these parties, their sworn deposition testimony transcripts are produced.

2.    Identify all documents consulted, examined, or referred to in the preparation of the
      answers to these requests, and furnish copies of all such documents that have not
      been previously furnished.

Response:    See response to Request No. 2 set forth in the Response of U.S. Paper
             dated May 6, 1996 to the First Information Request of DOI-FWS dated
             February 22, 1996 ("First Request") and Response of U.S. Paper dated August 29,
             1997 to the Second Information Request of DOI-FWS dated July 1, 1997
             ("Second Request"), and all documents produced in conjunction with the First and
             Second Responses, and see documents produced herein and identified as Bates-
             stamped numbers 3073-6280. See also response to Request No. 3 below. U.S.
             Paper incorporates by reference, as if produced in full herein, its production of
             documents in the First and Second Responses, together with all requests for
             confidentiality and OBJECTIONS attendant to said production. In particular, U.S.
             Paper reasserts its claim for/of confidentiality for all confidential documents

US0628 2

NCR-FOX-0251527

produced in its First and Second Responses, and does not, by virtue of its reference to such document numbers herein, waive any claim to confidentiality, such claim being expressly reserved and preserved.

3.      If you have reason to believe that there may be persons able to provide a more detailed or complete response to any information request or who may be able to provide additional responsive documents, identify such persons.

**Response:**      See response to Request No. 3 set forth in the First and Second Responses. Responsive documents may also be available at various offices of the State of Wisconsin Historical Society, Wisconsin Department of Natural Resources ("WDNR"), the Menasha Publicly-Owned Treatment Works ("POTW") and the DOI-FWS "Reading Room" located in Green Bay, Wisconsin. U.S. Paper is not producing these documents because, among other reasons, they are already in the possession of the DOI-FWS, have likely been requested for production from the Menasha POTW, or are public documents readily available for review and inspection by the DOI-FWS.

The Menasha mill was purchased from Menasha Corporation in 1983. U.S. Paper believes its Purchase Agreement with Menasha Corporation imposes liability upon Menasha Corporation for any and all damage allegedly caused by the Menasha mill to the Fox River which is the subject of this information request and the First and Second Requests. U.S. Paper understands Menasha Corporation also previously received information requests from DOI-FWS. U.S. Paper assumes no responsibility to respond to this information request on behalf of Menasha Corporation. Without waiving any rights, defenses or objections, U.S. Paper may produce certain documents in its possession which may be responsive to the information request and pertain to the period of time Menasha Corporation owned and operated the Menasha mill. By producing such documents, U.S. Paper does not admit or concede any liability for the actions or inactions of Menasha Corporation and expressly denies any such liability. The foregoing notwithstanding, U.S. Paper registers an OBJECTION, on a continuing basis for each and every Request herein, to any information request or document production request pertaining to the Menasha mill prior to 1983.

4.      Information previously requested but not provided: Listed below are categories of information and data that were requested but not provided:

a.      **Mill History:** Complete your response to Request Number 5 by providing the following information regarding mill operations:

i.      Date secondary fiber pulping operations commenced: U.S. Paper Mills stated that secondary fiber pulping operations were in place when the mill was purchased in 1983, but that they were not sure when those operations commenced. U.S. Paper Mills suggested

Case 1:10-cv-00910-WCG   Filed 01/05/11   Page 2 of 21   Document 76-18

NCR-FOX-0251528

that Menasha Corporation may be able to provide more specific information. Menasha Corporation stated that all operating information was transferred to U.S. Paper Mills at the time of sale and that they have not maintained any information on the mill and could not provide any specific records.

OBJECTION: U.S. Paper registers an objection to this Request, and all of its subparts, due to the lack of definitions for terms such as "secondary fiber," "pulping operations," etc. The lack of definitions for any terms in this Request and Request No. 5 to the Second Request renders such Requests vague, ambiguous and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms used in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper also objects to this Request, and its relevant time periods, as overly broad, oppressive, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:** To the best of U.S. Paper's information, the mill has utilized secondary fiber since it began operations in the late 1800's. See also documents produced herein and identified as Bates-stamped numbers 3073-3395.

    b.     **Fiber Furnish:** Complete your response to request Number 6 from the July 1997 information request by providing the following information for each month (tons of material **processed** on-site each month):

        i.     Secondary fiber processed on-site (1954 - 1996)

OBJECTION: U.S. Paper registers an objection to this Request, and all of its subparts, due to the lack of definitions for terms such as "fiber furnish," "secondary fiber," etc. The lack of definitions for any terms in this Request and in Request No. 6 to the Second Request renders such Requests vague, ambiguous and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms used in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper also objects to this Request, and its relevant time periods, as overly broad, oppressive, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Case 1:10-cv-00910-WCG Filed 01/05/11 Page 3 of 21 Document 76-18

NCR-FOX-0251529

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:**   See document Bates-stamped as number 6280.

    c.    **Pulp, Paper, and Paperboard Production:**  Complete your response to request Number 7 from the July 1997 information request by providing the following information for each month in terms of tons/month:

        i.    Paperboard production (1954 - 1983) (U.S. Paper Mills did not provide production data prior to their ownership in 1983.  Menasha Corporation stated that all mill records were transferred to U.S. Paper Mills at the time of sale and that they could not provide specific production data.)

OBJECTION:  U.S. Paper registers an objection to this Request, and all of its subparts, due to the lack of definition for terms such as "paperboard."  The lack of definitions for any terms in this Request and in Request No. 7 to the Second Request renders such Requests vague, ambiguous and confusing.  U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request.  U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request.  U.S. Paper also objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:**   As regards Menasha, U.S. Paper believes that Bates-stamped document nos. 2860 and 2861 set forth responsive information.

    d.    **Wastewater Treatment and Sludge Disposal:**  Complete your response to request Number 8 from the July 1997 information request by providing the following information and data:

        i.    · Wastewater flow, Total Suspended Solids concentration, and Total Suspended Solids mass loads (January 1954 - May 1972; January 1977 - December 1981)

Case 1:10-cv-00910-WCG   Filed 01/05/11   Page 4 of 21   Document 76-18

NCR-FOX-0251530

OBJECTION:  U.S. Paper registers an objection to this Request, and all of its subparts, due to the lack of definitions for terms such as "wastewater," "suspended solids," etc.  The lack of definitions for any terms in this Request and in Request No. 8 to the Second Request renders such Request vague, ambiguous and confusing.  U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request.  U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request.  U.S. Paper also objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:**     As regards the Menasha mill, information which may be responsive has been produced in the First Response as Document Nos. 1-211, 521-770, 862-1106, 1139-1494 and 2881-2891.  Responsive information may also be available from the State of Wisconsin Historical Society, WDNR, the Menasha POTW, and in the DOI-FWS documents at the Reading Room in Green Bay, Wisconsin.  Additional information which may be responsive is produced as Bates-stamped document numbers 3396-3465; 3776-3793; 3794-4043; 4057-6179.

      ii.     Quantity and nature of sludge generated (1995 - 1996)

**Response:**     At the Menasha mill, U.S. Paper has only begun recently, in 1995, to generate wastewater sludge, as it understands the meaning of that term.  This sludge was disposed of by Waste Management.  The estimated quantity was 3,110 tons in 1995 and 3,643 tons in 1996.  Not all sludge generated was transported off-site for disposal.  Some sludge was recycled back into the process and some sludge/grit was discharged to the Menasha POTW.

      iii.    Sludge disposal location (1995 - 1996)

**Response:**     At the Menasha mill, U.S. Paper has only begun recently, in 1995, to generate wastewater sludge, as it understands the meaning of that term.  U.S. Paper believes this sludge was disposed of by Waste Management at the Winnebago County Landfill in Oshkosh, Wisconsin, or the Valley Trails Landfill believed to be in Green Lake, Wisconsin.

      iv.    Quantity and disposal location for sludge generated from the operation of the primary clarifiers (installed in the mid-1970's)

Case 1:10-cv-00910-WCG   Filed 01/05/11   Page 5 of 21   Document 76-18

NCR-FOX-0251531

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:** To the best knowledge of U.S. Paper, Waste Management has always disposed of sludge at the Winnebago County Landfill or Valley Trails Landfill, except for a short period of time when waste was disposed of by BFI. See Bates-stamped documents 3578-3585.

    e.    **PCB Data:** Complete your response to request Number 9 from the July 1997 information request by providing the following information and data:

        i.    PCB analysis of fiber or pulp samples

OBJECTION: U.S. Paper registers an objection to this Request, and all of its subparts, due to the lack of any definition for terms such as "fiber," "pulp samples," "service water," "process wastewater," etc. The lack of definitions for any terms in this Request and Request No. 9 of the Second Request renders such Requests vague, ambiguous and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper also objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:** The information in the possession of U.S. Paper which may be responsive as to both the Menasha and DePere mills was produced in the First Response as Document Nos. 434-520; 557-612; 771-798; 1107-1138; 1495-1768; and 2862-2891. Additional information responsive to this and the First and Second Response is enclosed as Bates-stamped document numbers 6180-6279.

        ii.    PCB analysis of untreated or treated process wastewaters

OBJECTION: U.S. Paper registers an objection to this Request, and all of its subparts, due to the lack of any definition for terms such as "treated," "untreated," "process wastewater," etc. The lack of definitions for any terms in this Request and Request No. 9 of the Second Request renders such Requests vague, ambiguous and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in

*US06287*

NCR-FOX-0251532

this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper also objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:** The information in the possession of U.S. Paper which may be responsive as to both the Menasha and DePere mills was produced in the First Response as Document Nos. 434-520; 557-612; 771-798; 1107-1138; 1495-1768; and 2862-2891. See also documents produced herein as Bates-stamped numbers 3586-3587; 6206; and 6198-6200. U.S. Paper is also aware of a document authored by Versar Corporation for U.S. EPA and dated February 25, 1976, which identifies parties allegedly responsible for releasing PCBs to the Fox River. U.S. Paper has not independently verified the truth of any allegation contained in the Versar report, and therefore does not admit the truth of any allegation contained therein. Without producing the entire report, most of which is not relevant, U.S. Paper produced in response to the First Request Bates-stamped document nos. 518-520.

      iii.      PCB analysis of service water

OBJECTION: U.S. Paper registers an objection to this Request, and all of its subparts, due to the lack of any definition for terms such as "service water." The lack of definitions for any terms in this Request renders such Request vague, ambiguous and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper also objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:** It is possible that several laboratory results previously produced by U.S. Paper represent analysis of service water; U.S. Paper does produce a document recently discovered regarding analysis of "river water" as Bates-stamped document number 6189.

US06288

Case 1:10-cv-00910-WCG   Filed 01/05/11   Page 7 of 21   Document 76-18

NCR-FOX-0251533

f.   **Permits:**  Provide copies of all industrial user permits issued by the
municipality or POTW to the mill.  The documents submitted included one
copy of an industrial user pretreatment permit issued to U.S. Paper Mills
for the period 1985 - 1990.  Permits issued to the facility for the period
prior to 1985 and since 1990 could not be located within the documents
submitted.

OBJECTION:  U.S. Paper registers an objection to this Request, and all of
its subparts, due to the lack of any definition for terms such as "fiber,"
"pulp samples," "service water," "process wastewater," etc.  The lack of
definitions for any terms in this Request renders such Request vague,
ambiguous and confusing.  U.S. Paper is, therefore, forced to provide its
own interpretation of terms and provides notice herein that its definition of
the terms in this Request may vary substantially from that of the DOI-FWS,
as well as all other parties receiving this Request.  U.S. Paper reserves the
right to amend its responses when or if it is provided with definitions of the
terms used throughout this Request.  U.S. Paper also objects to this
Request, and its relevant time periods, as overly broad, onerous, unduly
burdensome and not reasonably calculated to lead to the discovery of
admissible evidence.

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all
subparts of this Request) that all requests relating to the operations of the
Menasha mill prior to 1983 should be addressed to Menasha Corporation
or John Strange.

**Response:**   See response to Request No. 6 in the First Response and documents
produced as Bates-stamped numbers 1223-1400.  See also response to Request
No. 3 herein.  Information as to Army Corps of Engineer and Menasha POTW
permits was produced as Bates-stamped document nos. 2772-2858 in response to
the Second Request.  Finally, see documents produced herein as Bates-stamped
document numbers 3466-3577; 3588-3775; and 4044-4045.

5.   For the period 1954 to 1972, provide the amounts by year in pounds or tons of
NCR paper broke (i.e., broke from production of any grade of NCR carbonless
copy paper containing PCB emulsions) used as a raw material at U.S. Paper Mills
that was obtained directly from the NCR/Appleton Papers mill located in
Appleton, WI.  State whether such broke was processed in secondary fiber deink
facilities prior to use in papermaking.

OBJECTION:  U.S. Paper registers an objection to this Request, due to the lack of
definitions for terms such as "broke," "secondary fiber," "deink facilities," etc.
The lack of definitions for these terms in this Request renders the Request vague,
ambiguous, and confusing.  U.S. Paper is, therefore, forced to provide its own

Case 1:10-cv-00910-WCG   Filed 01/05/11   Page 8 of 21   Document 76-18

NCR-FOX-0251534

interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:** It is the understanding of U.S. Paper that production of NCR carbonless copy paper allegedly containing PCBs was discontinued in 1971, at least 12 years before U.S. Paper purchased the Menasha mill. To the knowledge of U.S. Paper, it never obtained "NCR" paper broke (as defined in this Request) directly from the NCR/Appleton Papers Mill located in Appleton, Wisconsin for use in the Menasha mill. See also documents produced herein as Bates-stamped nos. 3073-3395. The Menasha mill does not engage in deinking.

6. For the period 1954 to 1972, the amounts by year in pounds or tons of NCR paper broke (i.e., broke and/or wastepaper from production of any grade of NCR carbonless copy paper containing PCB emulsions) used as a raw material at U.S. Paper Mills that was obtained indirectly from the NCR/Appleton Papers mill located in Appleton, WI through waste paper brokers or any other third party. State whether such broke was processed in secondary fiber deink facilities prior to use in papermaking.

OBJECTION: U.S. Paper registers an objection to this Request, due to the lack of definitions for terms such as "broke," "secondary fiber," "deink facilities," etc. The lack of definitions for these terms in this Request renders the Request vague, ambiguous, and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

Case 1:10-cv-00910-WCG  Filed 01/05/11  Page 9 of 21  Document 76-18

NCR-FOX-0251535

**Response:** It is the understanding of U.S. Paper that production of NCR carbonless copy paper allegedly containing PCBs was discontinued in 1971, at least 12 years before U.S. Paper purchased the Menasha mill. To the knowledge of U.S. Paper, it never obtained "NCR" paper broke (as defined in this Request) indirectly from the NCR/Appleton Papers Mill located in Appleton, Wisconsin for use in the Menasha mill. See also documents produced herein as Bate-stamped nos. 3073-3395. The Menasha mill does not engage in deinking.

7.     For the period 1954 to 1972, provide the amounts by year in pounds or tons of NCR paper broke (i.e., broke and/or wastepaper from production of any grade of NCR carbonless copy paper containing PCB emulsions) used as a raw material at U.S. Paper Mills that was obtained directly or indirectly from any facility producing NCR carbonless paper through waste paper brokers or any other third party. State whether such broke was processed in secondary fiber deink facilities prior to use in papermaking.

OBJECTION: U.S. Paper registers an objection to this Request, due to the lack of definitions for terms such as "broke," "secondary fiber," "deink facilities," etc. The lack of definitions for these terms in this Request renders the Request vague, ambiguous, and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:** It is the understanding of U.S. Paper that production of NCR carbonless copy paper allegedly containing PCBs was discontinued in 1971, at least 12 years before U.S. Paper purchased the Menasha mill. To the knowledge of U.S. Paper, it never obtained NCR paper broke (as defined in this Request) intentionally from or through wastepaper brokers or any other third party for use in the Menasha mill. See also documents produced herein as Bates-stamped nos. 3073-3395. The Menasha mill does not engage in deinking.

8.     Provide the names, last known addresses, and last known telephone numbers of any waste paper brokers or other third parties from which NCR paper broke was purchased or sold. Provide the names of the last known principal contacts at each such firm.

Case 1:10-cv-00910-WCG    Filed 01/05/11    Page 10 of 21    Document 76-18

NCR-FOX-0251536

OBJECTION: U.S. Paper registers an objection to this Request, due to the lack of definitions for terms such as "broke," "secondary fiber," "deink facilities," etc. The lack of definitions for these terms in this Request renders the Request vague, ambiguous, and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:** It is the understanding of U.S. Paper that production of NCR carbonless copy paper allegedly containing PCBs was discontinued in 1971, at least 12 years before U.S. Paper purchased the Menasha mill. To the knowledge of U.S. Paper, it did not purchase NCR paper broke (as defined in this Request) after the acquisition of the Menasha facility in 1983. See also documents produced herein as Bates-stamped nos. 3073-3395.

9. Provide the names, last known addresses, and last known telephone numbers of each current and former employee involved in the purchase, sale, or use of NCR paper broke at U.S. Paper Mills for the period 1954 to 1972.

OBJECTION: U.S. Paper registers an objection to this Request, due to the lack of definitions for terms such as "broke," "secondary fiber," "deink facilities," etc. The lack of definitions for these terms in this Request renders the Request vague, ambiguous, and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:** It is the understanding of U.S. Paper that production of NCR carbonless copy paper allegedly containing PCBs was discontinued in 1971, at least 12 years

Case 1:10-cv-00910-WCG   Filed 01/05/11   Page 11 of 21   Document 76-18

NCR-FOX-0251537

before U.S. Paper purchased the Menasha mill. To the knowledge of U.S. Paper, it did not purchase NCR paper broke (as defined in this Request) after the acquisition of the Menasha facility in 1983. See also documents produced herein as Bates-stamped nos. 3073-3395.

10. For the period 1954 to 1985, provide the amounts by year in pounds or tons of paper broke of any grade or type used as a raw material at U.S. Paper Mills that was obtained directly or indirectly from any of the following facilities (current names used):

- Wisconsin Tissue Mills (Menasha, WI)
- Riverside Papers - Kerwin Division (Appleton, WI)
- Appleton Papers (Combined Locks, WI)
- Green Bay Packaging (Green Bay, WI)
- U.S. Paper Mills (DePere, WI)
- P.H. Glatfelter - Bergstrom Division (Neenah, WI)
- Fort James Green Bay West Mill (Fort Howard) (Green Bay, WI)
- Fort James Green Bay East Mill (James River) (Green Bay, WI)

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:** To the best knowledge of U.S. Paper, it did not purchase paper broke from the above-listed facilities for use at the Menasha facility.

11. For the period 1954 to 1985, provide the amounts by year and destination (i.e., name of end user or disposal facility) in pounds or tons of paper broke of any grade or type transferred off-site from U.S. Paper Mills.

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:** Any broke generated by the operations of U.S. Paper at the Menasha facility was used internally for production and was not transferred off-site.

12. Provide reports of studies, tests, or other measures of PCB distribution among paper products, wastewater treatment sludges, wastewater effluents, and the atmosphere conducted at, or for, U.S. Paper. Include studies based on mill scale operations, bench scale studies, and laboratory scale studies.

OBJECTION: U.S. Paper registers an objection to this Request, and all of its subparts, due to the lack of any definition for terms such as "effluent," "sludge," "bench scale," etc. The lack of definitions for any terms in this Request renders

Case 1:10-cv-00910-WCG   Filed 01/05/11   Page 12 of 21   Document 76-18

NCR-FOX-0251538

such Request vague, ambiguous and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper also objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:**     Assuming this Request does not seek information already produced in response to Request No. 9 of the Second Request, as U.S. Paper understands the terms used in this Request, it has no information responsive to this Request.

13.     Provide reports prepared by, for, or on behalf of, U.S. Paper Mills or its predecessors of estimates of mass PCB transfers among, and from, pulp and paper mills discharging process wastewaters directly, or indirectly through POTWs, to the Fox River, Green Bay, or tributaries thereof. Such mass transfers include, but are not limited to, PCBs contained in NCR paper broke and broke from production of other papers; sale or transfer of NCR PCB-containing emulsions used for production of NCR carbonless copy paper; PCBs contained in waste papers and other raw materials used in pulp and papermaking; PCBs contained in untreated, partially treated or treated process wastewaters discharged to POTWs or to the Fox River or Green Bay; PCBs discharged in municipal sewerage system bypasses and in bypasses of partially treated sewage and treated sewage discharged from POTWs; PCBs contained in wastewater treatment sludges; PCBs transferred to paper products produced from waste papers; and PCBs transferred to the atmosphere during production of paper products.

OBJECTION: U.S. Paper registers an objection to this Request, and all of its subparts, due to the lack of any definition for terms such as "effluent," "sludge," "bench scale," etc. The lack of definitions for any terms in this Request renders such Request vague, ambiguous and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper also objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

US0629#

NCR-FOX-0251539

U.S. Paper repeats its earlier OBJECTION (on a continuing basis for all subparts of this Request) that all requests relating to the operations of the Menasha mill prior to 1983 should be addressed to Menasha Corporation or John Strange.

**Response:** Assuming this Request does not seek information already produced in response to Request No. 9 of the Second Request, as U.S. Paper understands the terms used in this Request, it has no information responsive to this Request.

14. Provide a copy of each document retention policy that has been in existence at your Menasha, Wisconsin facility since 1954. In the event you have no written policy, describe in detail the guidelines you have followed since 1954 to determine when documents are destroyed or otherwise disposed of.

**Response:** Although U.S. Paper believes it adheres to regulations requiring certain records to be retained, U.S. Paper has no formally adopted policy regarding records retention. U.S. Paper does follow a practice of retaining certain financial information (e.g., tax returns) and other documentation such as evidence of insurance. U.S. Paper has no detailed guidelines as to destruction of documents.

**B.** **U.S. Paper Mills - DePere, WI**

1. To the extent different from previous responses, identify all persons consulted in the preparation of the answers to these information requests.

   OBJECTION: U.S. Paper Mills Corp. ("U.S. Paper") OBJECTS to this information request on the whole. U.S. Paper believes that the United States Department of the Interior, Fish and Wildlife Service ("DOI-FWS") has no authority under relevant statutes or rules to submit a third information request to U.S. Paper. U.S. Paper believes that being required to respond to such a third request in the absence of any clear authority for a third request is oppressive; onerous and unduly burdensome. U.S. Paper also OBJECTS to this request as invading the attorney-client communication privilege and the attorney work product doctrine. Without waiving its objections, U.S. Paper responds as follows.

**Response:** In the preparation of the answers to these requests, U.S. Paper has not consulted persons different than those identified in previous responses.

2. Identify all documents consulted, examined, or referred to in the preparation of the answers to these requests, and furnish copies of all such documents that have not been previously furnished.

**Response:** See response to Request No. 2 set forth in the Response of U.S. Paper dated May 6, 1996 to the First Information Request of DOI-FWS dated February 22, 1996 ("First Request") and Response of U.S. Paper dated August 29, 1997 to the Second Information Request of DOI-FWS dated July 1, 1997 ("Second

Request"), and all documents produced in conjunction with the First and Second Responses. See also response to Request No. 3 below. U.S. Paper incorporates by reference, as if produced in full herein, its production of documents in the First and Second Responses, together with all requests for confidentiality and OBJECTIONS attendant to said production. In particular, U.S. Paper reasserts its claim for/of confidentiality for all confidential documents produced in its First and Second Responses, and does not, by virtue of its reference to such document numbers herein, waive any claim to confidentiality, such claim being expressly reserved and preserved.

3.      If you have reason to believe that there may be persons able to provide a more detailed or complete response to any information request or who may be able to provide additional responsive documents, identify such persons.

**Response:**     See response to Request No. 3 set forth in the First Response. Responsive documents may also be available at various offices of the State of Wisconsin Historical Society, Wisconsin Department of Natural Resources ("WDNR"), the DePere Publicly-Owned Treatment Works ("POTW") and the DOI-FWS "Reading Room" located in Green Bay, Wisconsin. U.S. Paper is not producing these documents because, among other reasons, they are already in the possession of the DOI-FWS, have likely been requested for production from the DePere POTW, or are public documents readily available for review and inspection by the DOI-FWS.

U.S. Paper, in its present corporate structure, began operations in DePere in 1971. U.S. Paper's predecessor at the DePere site was an entity last known as U.S.P.M. Corp. U.S.P.M. Corp.'s principal was Harold Schilling, who is deceased. U.S. Paper denies any liability for the actions or inactions of U.S.P.M. Corp. or Mr. Schilling. To the extent this request seeks information on the DePere mill prior to 1971, U.S. Paper believes such questions should be addressed to U.S.P.M. Corp., and U.S. Paper assumes no responsibility to respond on behalf of U.S.P.M. Corp. to this information request. The production of documents by U.S. Paper with regard to the DePere mill for periods prior to 1971 is not to be considered as an admission by U.S. Paper of any liability for the actions or inactions of U.S.P.M. Corp., such liability being expressly denied by U.S. Paper. Regardless of any such production, U.S. Paper registers an OBJECTION, which continues for each and every Request and document production herein, to any information request or document production request seeking information or documents prior to 1971 for the DePere mill.

4.      For the period 1954 to 1972, provide the amounts by year in pounds or tons of NCR paper broke (i.e., broke from production of any grade of NCR carbonless copy paper containing PCB emulsions) used as a raw material at U.S. Paper Mills that was obtained directly from the NCR/Appleton Papers mill located in Appleton, WI. State whether such broke was processed in secondary fiber deink facilities prior to use in papermaking.

Case 1:10-cv-00910-WCG    Filed 01/05/11    Page 15 of 21    Document 76-18

NCR-FOX-0251541

OBJECTION: U.S. Paper registers an objection to this Request, due to the lack of definitions for terms such as "broke," "secondary fiber," "deink facilities," etc. The lack of definitions for these terms in this Request renders the Request vague, ambiguous, and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**Response:** To the knowledge of U.S. Paper, it never obtained NCR paper broke (as those terms are defined in this Request) directly from NCR/Appleton Papers mill located in Appleton, Wisconsin for use in the DePere mill. The DePere mill does not engage in deinking and, therefore, would not have deinked any such broke.

5. For the period 1954 to 1972, provide the amounts by year in pounds or tons of NCR paper broke (i.e., broke and/or wastepaper from production of any grade of NCR carbonless copy paper containing PCB emulsions) used as a raw material at U.S. Paper Mills that was obtained indirectly from the NCR/Appleton Papers mill located in Appleton, WI through waste paper brokers or any other third party. State whether such broke was processed in secondary fiber deink facilities prior to use in papermaking.

OBJECTION: U.S. Paper registers an objection to this Request, due to the lack of definitions for terms such as "broke," "secondary fiber," "deink facilities," etc. The lack of definitions for these terms in this Request renders the Request vague, ambiguous, and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**Response:** To the knowledge of U.S. Paper, it never obtained NCR paper broke (as those terms are defined in this Request) indirectly from NCR/Appleton Papers mill located in Appleton, Wisconsin for use in the DePere mill. The DePere mill does not engage in deinking and, therefore, would not have deinked any such broke.

6. For the period 1954 to 1972, provide the amounts by year in pounds or tons of NCR paper broke (i.e., broke and/or wastepaper from production of any grade of

US06297

NCR-FOX-0251542

NCR carbonless copy paper containing PCB emulsions) used as a raw material at U.S. Paper Mills that was obtained directly or indirectly from any facility producing NCR carbonless paper through waste paper brokers or any other third party. State whether such broke was processed in secondary fiber deink facilities prior to use in papermaking.

OBJECTION: U.S. Paper registers an objection to this Request, due to the lack of definitions for terms such as "broke," "secondary fiber," "deink facilities," etc. The lack of definitions for these terms in this Request renders the Request vague, ambiguous, and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**Response:**     To the knowledge of U.S. Paper, it never obtained NCR paper broke (as those terms are defined in this Request) directly from NCR/Appleton Papers mill located in Appleton, Wisconsin for use in the DePere mill. The DePere mill does not engage in deinking and, therefore, would not have deinked any such broke.

7.     Provide the names, last known addresses, and last known telephone numbers of any waste paper brokers or other third parties from which NCR paper broke was purchased or sold. Provide the names of the last known principal contacts at each such firm.

OBJECTION: U.S. Paper registers an objection to this Request, due to the lack of definitions for terms such as "broke," "secondary fiber," "deink facilities," etc. The lack of definitions for these terms in this Request renders the Request vague, ambiguous, and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**Response:**     To the knowledge of U.S. Paper, it never obtained NCR paper broke (as those terms are defined in this Request) directly from NCR/Appleton Papers mill located in Appleton, Wisconsin for use in the DePere mill.

Case 1:10-cv-00910-WCG   Filed 01/05/11   Page 17 of 21   Document 76-18

NCR-FOX-0251543

8.   Provide the names, last known addresses, and last known telephone numbers of each current and former employee involved in the purchase, sale, or use of NCR paper broke at U.S. Paper Mills for the period 1954 to 1972.

OBJECTION: U.S. Paper registers an objection to this Request, due to the lack of definitions for terms such as "broke," "secondary fiber," "deink facilities," etc. The lack of definitions for these terms in this Request renders the Request vague, ambiguous, and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**Response:**   To the knowledge of U.S. Paper, it never obtained NCR paper broke (as those terms are defined in this Request) directly from NCR/Appleton Papers mill located in Appleton, Wisconsin for use in the DePere mill.

9.   For the period 1954 to 1985, provide the amounts by year in pounds or tons of paper broke of any grade or type used as a raw material at U.S. Paper Mills that was obtained directly or indirectly from any of the following facilities (current names used):

- Wisconsin Tissue Mills (Menasha, WI)
- Riverside Papers - Kerwin Division (Appleton, WI)
- Appleton Papers (Combined Locks, WI)
- Green Bay Packaging (Green Bay, WI)
- U.S. Paper Mills (Menasha, WI)
- P.H. Glatfelter - Bergstrom Division (Neenah, WI)
- Fort James Green Bay West Mill (Fort Howard) (Green Bay, WI)
- Fort James Green Bay East Mill (James River) (Green Bay, WI)

**Response:**   U.S. Paper did purchase small quantities of used cores, returned cores and corrugated material from Fort James Green Bay East Mill. To the knowledge of U.S. Paper, these materials did not include PCB-containing carbonless copy paper. U.S. Paper also purchased small quantities of some baled, unbleachable rejected raw materials from Fort James Green Bay West Mill which would not, to the knowledge of U.S. Paper, have included PCB-containing carbonless copy paper.

10.   For the period 1954 to 1985, provide the amounts by year and destination (i.e., name of end user or disposal facility) in pounds or tons of paper broke of any grade or type transferred off-site from U.S. Paper Mills.

Case 1:10-cv-00910-WCG   Filed 01/05/11   Page 18 of 21   Document 76-18

NCR-FOX-0251544

**Response:**    Any broke generated by the operations of U.S. Paper at the DePere facility was used internally for production and was not transferred off-site.

11.    Provide reports of studies, tests, or other measures of PCB distribution among paper products, wastewater treatment sludges, wastewater effluents, and the atmosphere conducted at, or for, U.S. Paper. Include studies based on mill scale operations, bench scale studies, and laboratory scale studies.

OBJECTION: U.S. Paper registers an objection to this Request, and all of its subparts, due to the lack of any definition for terms such as "effluent," "sludge," "bench scale," etc. The lack of definitions for any terms in this Request renders such Request vague, ambiguous and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request.. U.S. Paper also objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**Response:**    Assuming this Request does not seek information already produced in response to Request No. 9 of the Second Request, as U.S. Paper understands the terms in this Request, it has no information responsive to this Request.

12.    Provide reports prepared by, for, or on behalf of, U.S. Paper Mills or its predecessors of estimates of mass PCB transfers among, and from, pulp and paper mills discharging process wastewaters directly, or indirectly through POTWs, to the Fox River, Green Bay, or tributaries thereof. Such mass transfers include, but are not limited to, PCBs contained in NCR paper broke and broke from production of other papers; sale or transfer of NCR PCB-containing emulsions used for production of NCR carbonless copy paper; PCBs contained in waste papers and other raw materials used in pulp and papermaking; PCBs contained in untreated, partially treated, or treated process wastewaters discharged to POTWs or to the Fox River or Green Bay; PCBs discharged in municipal sewerage system bypasses and in bypasses of partially treated sewage and treated sewage discharged from POTWs; PCBs contained in wastewater treatment sludges; PCBs transferred to paper products produced from waste papers; and PCBs transferred to the atmosphere during production of paper products.

OBJECTION: U.S. Paper registers an objection to this Request, and all of its subparts, due to the lack of any definition for terms such as "effluent," "sludge," "bench scale," etc. The lack of definitions for any terms in this Request renders such Request vague, ambiguous and confusing. U.S. Paper is, therefore, forced to provide its own interpretation of terms and provides notice herein that its definition of the terms in this Request may vary substantially from that of the DOI-FWS, as

Case 1:10-cv-00910-WCG   Filed 01/05/11   Page 19 of 21   Document 76-18

NCR-FOX-0251545

well as all other parties receiving this Request. U.S. Paper reserves the right to amend its responses when or if it is provided with definitions of the terms used throughout this Request. U.S. Paper also objects to this Request, and its relevant time periods, as overly broad, onerous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**Response:**     Assuming this Request does not seek information already produced in response to Request No. 9 of the Second Request, as U.S. Paper understands the terms used in this Request, it has no information responsive to this Request.

13.     Provide a copy of each document retention policy that has been in existence at your DePere, Wisconsin facility since 1954. In the event you have no written policy, describe in detail the guidelines you have followed since 1954 to determine when documents are destroyed or otherwise disposed of.

**Response:**     Although U.S. Paper believes it adheres to regulations requiring certain records to be retained, U.S. Paper has no formally adopted policy regarding records retention. U.S. Paper does follow a practice of retaining certain financial information (e.g., tax returns) and other documentation such as evidence of insurance. U.S. Paper has no detailed guidance regarding destruction of documents.

OBJECTION: U.S. Paper objects to any requirement to submit a notarized affidavit since such a requirement is not authorized by any statute or rule, including 42 U.S.C. § 9604. Subject to the foregoing,

The above answers are true and correct according to the best of my knowledge.

Dated this _27_ day of _August_ 1998.

By: _____

Thomas L. Olson, President
U.S. Paper Mills Corp.

Subscribed and sworn to before
me this _27th_ day of _August_, 1998.

_____
Notary Public, State of Wisconsin
My commission expires: _Oct 31, 1999_

US06 301

NCR-FOX-0251546

As to OBJECTIONS:

John M. Van Lieshout
Attorney for U.S. Paper Mills Corp.

Dated this  28  day of  August , 1998

US06302

Case 1:10-cv-00910-WCG   Filed 01/05/11   Page 21 of 21   Document 76-18

NCR-FOX-0251547