

LEXSEE

**CITY OF WAUKEGAN, ILLINOIS, Plaintiff, vs. NATIONAL GYPSUM CO., et al., Defendants / Third-Party Plaintiffs, vs. WAUKEGAN PORT DISTRICT, et al., Third-Party Defendants.**

**Case No. 07 C 5008**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2009 U.S. Dist. LEXIS 109413*; *71 ERC (BNA) 1272*

**November 20, 2009, Decided
November 20, 2009, Filed**

**PRIOR HISTORY:** *City of Waukegan v. Nat'l Gypsum Co., 2009 U.S. Dist. LEXIS 93333 (N.D. Ill., Sept. 2, 2009)*

**COUNSEL:** [*1] For The City of Waukegan, Illinois, Plaintiff, Counter Defendant: Michael S. Blazer, LEAD ATTORNEY, Derek B Rieman, Jeep & Blazer, L.L.C., Hillside, IL; Lance Erik Franke.

For National Gypsum Company, Defendant, Counter Claimant, ThirdParty Plaintiff: Edward King Poor, LEAD ATTORNEY, Quarles & Brady LLP, Chicago, IL; Vilan Odekar, Quarles and Brady LLP, Milwaukee, WI.

For Bombardier Motor Corporation of America, Defendant, Counter Claimant, ThirdParty Plaintiff, Counter Claimant: Robert Martin Olian, LEAD ATTORNEY, Henry M. Kelln, Joan Radovich, Laura L Leonard, Sidley Austin LLP, Chicago, IL.

For LaFarge North America, Inc., Lafarge Building Materials, Inc., formerly known as Blue Circle, Inc., Defendants: Ethan Allen Hastert, George James Tzanetopoulos, John C. Berghoff, Jr., Richard F Bulger, Mayer Brown LLP, Chicago, IL.

For St. Mary's Cement, Inc., Defendant: Charles S Hegarty, Bodman LLP, Ann Arbor, MI; Cortney E. Goldberg, Diane L. Akers, PRO HAC VICE, Fredrick John Dindoffer, Bodman LLP, Detroit, MI; Thomas Douglas Lupo, Williams Montgomery & John Ltd., Chicago, IL; Valerie Brader, PRO HAC VICE, Bodman LLP, Ann Arbor, MI.

For Waukegan Port District, Third Party Defendant: James [*2] Constantine Vlahakis, Hinshaw & Culbertson, Chicago, IL.

For United States Army Corps of Engineers, United States Coast Guard, Third Party Defendants: David S. Gualtieri, LEAD ATTORNEY, Argonne National Laboratory, Argonne, IL; Kurt N. Lindland, United States Attorney's Office (NDIL), Chicago, IL.

For David Kadinger Marine Service, Inc., Third Party Defendant: Thomas Carter O'Brien, Stateline Legal, LLC, Antioch, IL.

For Edward E. Gillen Co., American Steamship Company, Durocher Marine, a division of Kokosing Construction Co., Inc., American Commercial Lines, LLC., doing business as Peavey Barge Lines, Third Party Defendants: Daniel Charles Murray, LEAD ATTORNEY, Frederick S. Mueller, Johnson & Bell, Ltd., Chicago, IL.

Page 2

2009 U.S. Dist. LEXIS 109413, *2; 71 ERC (BNA) 1272

For Lakes & Rivers Contracting, Inc., Calumet River Fleeting, Hannah Marine Corporation, Third Party Defendants: Christopher Scott Griesmeyer, LEAD ATTORNEY, Levenfeld Pearlstein, Chicago, IL; Elizabeth Buckey Vandesteeg, Levanfeld Pearlstein LLC, Chicago, IL; James D. Brusslan, Levenfield Pearlstein, LLC, Chicago, IL.

For Andrie, Inc., Inland Lakes Management, Inc., Third Party Defendants: John G. Cameron, Jr., LEAD ATTORNEY, Dickinson Wright PLLC, Grand Rapids, MI.

For Busch [*3] Marine, Inc., Third Party Defendant: Brian Joseph Miles, PRO HAC VICE, D'Luge, Miles, Miles & Cameron P.L.C., Mt. Clemens, MI; Dennis Minichello, Warren J. Marwedel, Marwedel, Minichello & Reeb, P.C., Chicago, IL.

For King Co., Inc., Third Party Defendant: Christopher Scott Griesmeyer, LEAD ATTORNEY, Levenfeld Pearlstein, Chicago, IL; Dennis Minichello, Matthew Carl Koch, Warren J. Marwedel, Marwedel, Minichello & Reeb, P.C., Chicago, IL; Elizabeth Buckey Vandesteeg, Levanfeld Pearlstein LLC, Chicago, IL; James D. Brusslan, Levenfield Pearlstein, LLC, Chicago, IL.

For Port City Marine Services, Inc., Port City Tug, Inc., Third Party Defendants: Paul M. Drucker, LEAD ATTORNEY, Barnes & Thornburg LLP, Chicago, IL; Charles M. Denton, PRO HAC VICE, Barnes & Thornburg, LLP, Grand Rapids, MI.

For Reco Transportation LLC, Third Party Defendant: Joshua Robert More, LEAD ATTORNEY, Schiff Hardin LLP, Chicago, IL.

For St. Mary's Cement, Inc., Third Party Defendant: Fredrick John Dindoffer, LEAD ATTORNEY, Bodman LLP, Detroit, MI; Cortney E. Goldberg, PRO HAC VICE, Bodman LLP, Detroit, MI; Thomas Douglas Lupo, Williams Montgomery & John Ltd., Chicago, IL; Valerie Brader, PRO HAC VICE, Bodman LLP, Ann [*4] Arbor, MI.

For Mark C. Curran, Jr., in his official capacity as Sheriff of Lake County, Illinois, Third Party Defendant: Lisle A. Stalter, LEAD ATTORNEY, Lake County State's Attorney's Office, Waukegan, IL.

For Larsen Marine Service, Inc., Movant: Jonathan Edward Strouse, Holland & Knight LLC, Chicago, IL.

For LaFarge North America, Inc., Lafarge Building Materials, Inc., Counter Claimants, ThirdParty Plaintiffs: Ethan Allen Hastert, George James Tzanetopoulos, John C. Berghoff, Jr., Richard F Bulger, Mayer Brown LLP, Chicago, IL.

For National Gypsum Company, Counter Claimant: Edward King Poor, LEAD ATTORNEY, Quarles & Brady LLP, Chicago, IL; David Andrew Strifling, Vilan Odekar, Quarles & Brady LLP, Milwaukee, WI.

**JUDGES:** MATTHEW F. KENNELLY, United States District Judge.

**OPINION BY:** MATTHEW F. KENNELLY

**OPINION**

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The City of Waukegan (Waukegan) has sued various entities pursuant to section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), *42 U.S.C. § 9607(a)*, to recover past and future anticipated costs incurred in connection with remediation of Waukegan Harbor. The defendants have filed third-party complaints [*5] against others for contribution pursuant to section 113(f) of CERCLA, *42 U.S.C. § 9613(f)*. The third-party defendants include the Waukegan Port District (WPD), the United States Army Corps of Engineers, and the United States Coast Guard.

WPD and the federal government defendants moved to dismiss both the third-party complaint and Waukegan's second amended complaint. In an earlier decision, the Court deferred consideration of the motions to dismiss and directed Waukegan to file a third-party complaint describing with greater particularity the past and future costs it seeks to recover in this case. After Waukegan filed its third amended complaint, WPD, the federal defendants, and Waukegan all filed supplemental briefs regarding the motions to dismiss.

For the reasons below, the Court denies defendants' motions to dismiss in part and defers them in part

Page 3

2009 U.S. Dist. LEXIS 109413, *5; 71 ERC (BNA) 1272

pending consideration of a very recent decision by the United States Environmental Protection Agency (EPA). That decision was provided to the Court on November 20, 2009, after the present ruling was completed but before it was entered on the docket.

**Facts**

Waukegan Harbor is contaminated with polychlorinated biphenyls (PCBs) that were discharged [*6] into and around the harbor by the now-defunct Outboard Marine Corp. (OMC). In the 1980's, the EPA put the harbor and some of the surrounding land (to which the Court will refer as "the facility" or "the site") on the National Priorities List (NPL). In 1992, OMC completed a sediment remediation project in the harbor pursuant to a consent decree it entered into with the EPA in 1988. In 2000, OMC permanently closed its manufacturing operations on the Waukegan lakefront and filed for bankruptcy. After OMC abandoned the property, Waukegan came to own portions of the site in and around the harbor through eminent domain and purchase approved by the bankruptcy court.

In 2004 and 2005, in conjunction with its purchase of portions of the site, Waukegan entered into two consent decrees with the EPA and the State of Illinois. These two consent decrees concluded any potential liability Waukegan might have for the vast majority, and possibly the entirety, of the OMC site. *See City of Waukegan v. Nat'l Gypsum Co., No. 07 C 5008, 2009 U.S. Dist. LEXIS 29796, 2009 WL 972608, at *1-2 (N.D. Ill. Apr. 9, 2009).* Collectively, the decrees protect Waukegan against any legal obligation to incur further CERCLA response costs relating to [*7] the OMC site and against contribution claims from other potentially responsible parties.

In this case, Waukegan has sued several entities with business operations adjacent to or near the harbor, alleging that they are liable for response costs relating to PCB contamination at the site as owners and/or operators pursuant to CERCLA section 107(a). Waukegan also seeks a declaratory judgment pursuant to CERCLA section 113(g)(2), *42 U.S.C. § 9613(g)(2)*, that the defendants are liable for any further response costs that Waukegan may incur as a result of releases or threatened releases of PCBs at the site.

As noted earlier, on September 2, 2009, the Court directed Waukegan to file a third amended complaint providing further particulars regarding its past and anticipated future response costs, to enable the Court to determine the viability of any claim for cost recovery or declaratory judgment. The third amended complaint alleges that Waukegan has voluntarily incurred response costs, including for the following:

. Designing a response action in connection with PCB-contaminated sediments in the Harbor, "pursuant to an agreement with USEPA";

. Lowering the City's potable water supply line, which [*8] traverses the Harbor, to allow a response action including dredging of PCB-contaminated sediments;

. Assessing the feasibility of alternative response actions proposed by the EPA and/or the Army Corps of Engineers relating to PCB-contaminated sediments in the harbor;

. Conducting a soil investigation of PCB contamination on land adjacent to the harbor and within the facility; and

. Maintaining the impoundments that store the PCB-contaminated sediment dredged by OMC in its 1992 remediation action.

The third amended complaint also states that Waukegan anticipates incurring additional response costs in the future, including for the following:

. Addressing recently-discovered high levels of PCB contamination located on Operable Unit 4 of the site;

. Costs resulting from the EPA's imposition of liens on city-owned property around the harbor to secure unreimbursed response costs or to allow the EPA to realize any increase in value to the property resulting from its response actions; and

. Maintaining the impoundments that store the PCB-contaminated sediment dredged by OMC in its 1992 remediation action.

Page 4

2009 U.S. Dist. LEXIS 109413, *8; 71 ERC (BNA) 1272

During 2008, after Waukegan filed this lawsuit, the EPA began a new remedial investigation and [*9] feasibility study (RI/FS) for the harbor (Operable Unit 1 of the facility) and issued a plan for public comment. That plan proposes a dredging project to remove sediment containing PCBs. The public comment period closed in January 2009. At the time of the supplemental briefing, the EPA anticipated issuing an amended Record of Decision (ROD) this fall. As noted earlier, the amended ROD was provided to the Court on November 20, 2009, after this decision was completed but before it was entered on the docket. The EPA has publicly stated that it anticipates the costs of the cleanup project will be paid by it and the State of Illinois.

**Discussion**

When considering a motion to dismiss a complaint, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the non-moving party. *See, e.g., Newell Operating Co. v. Int'l Union of United Auto., Aerospace, and Agr. Implement Workers of Am., 532 F.3d 583, 587 (7th Cir. 2008)*.

The Seventh Circuit has emphasized that even after the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*, federal courts still adhere to a notice-pleading standard, and "[a] plaintiff must still provide only [*10] enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests . . . ." *Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008)*. Though *Rule 8(a)(2)* does not require a complaint to include "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly, 550 U.S. at 555* (internal citations omitted). The amount of detail required in pleading depends on the context of the claim. *Tamayo, 526 F.3d at 1083*. In complex litigation, "a fuller set of factual allegations may be necessary . . . . If the discovery is likely to be more than usually costly, the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim." *Id.* (internal citations omitted).

As [*11] directed by the Court, Waukegan filed a third amended complaint, in which it provided additional information about the past and anticipated future response costs that form the basis for its claims. WPD, the federal government defendants, and Waukegan have each filed a supplemental memorandum concerning the pending motions to dismiss.

**A. Defendants' arguments**

WPD and the federal government defendants make several arguments about why this Court cannot or should not hear Waukegan's claims at this point because the EPA is currently engaged in the process of remedy selection that will result in the issuance of an amended ROD. First, they argue that the Court must dismiss Waukegan's claim because section 122(e)(6) of CERCLA, *42 U.S.C. § 9622(e)(6)*, prohibits any potentially responsible party from undertaking remedial action at a site at which the EPA has initiated a RI/FS "unless such remedial action has been authorized by the President." WPD also argues that Waukegan's claims are precluded by the EPA's pending action because section 107(a)(4)(B) of CERCLA, *42 U.S.C. § 9607(a)(4)(B)*, requires actions to be "consistent with the national contingency plan" to be eligible for cost recovery, which [*12] WPD contends Waukegan cannot prove so long as the EPA's decision is still pending. Finally, WPD argues that the Court cannot hear this case at this time because Waukegan claims constitute an impermissible "challenge" to EPA's selection of remedial or removal action before it is complete, depriving this Court of jurisdiction under section 113(h) of CERCLA, *42 U.S.C. § 9613(h)*. [1]

> 1  WPD also urges the Court to defer to the EPA under the doctrine of primary jurisdiction. That doctrine is designed to coordinate administrative and judicial decisionmaking by taking advantage of agency expertise and referring issues of fact not within the conventional experience of judges or cases that require the exercise of administrative discretion. *See United States v. Western Pac. R. Co., 352 U.S. 59, 64, 77 S. Ct. 161, 1 L. Ed. 2d 126, 135 Ct. Cl. 997 (1956)*. EPA's special expertise is not needed to decide a question of law about the remedies legally available under CERCLA. The Court is also unpersuaded by WPD's contention that the mere pendency of this action, even as to recovery of past incurred costs, would interfere with EPA's carrying out of future remediation at the site.

WPD and the federal government defendants also argue that even if Waukegan's [*13] claims are not

Page 5

2009 U.S. Dist. LEXIS 109413, *13; 71 ERC (BNA) 1272

precluded by the pending EPA action, the city cannot recover costs under CERCLA section 107(a). The 2004 and 2005 consent decrees, they contend, fully resolve Waukegan's potential liability for the entire site, and thus any actions the city takes concerning the site should be considered to be within the scope of the consent decrees. The defendants say the consent decrees are "judicially-approved settlements" within the meaning of CERCLA section 113(f), and they argue the city should be limited to a claim for contribution under that section, as opposed to a claim under section 107(a). WPD further argues that even if recovery is available under section 107(a), Waukegan has failed to plead facts indicating that it has incurred any truly voluntary response costs as required by that provision.

**B. Preclusion by pending EPA action**

**1. CERCLA section 122(e)(6)**

The original remediation of Waukegan Harbor, undertaken pursuant to CERCLA, was completed in the early 1990s. Because that initial remediation did not remove all contaminants from the facility, the EPA has maintained supervision of the site and has conducted five-year reviews of the effectiveness of the remedy, as required [*14] by CERCLA and as described in the EPA's original ROD for the site. *See 42 U.S.C. § 9621(c)*. In 2008, the EPA began a new RI/FS for the harbor and issued a plan for public comment. As noted earlier, that plan proposed a dredging project to remove sediment containing PCBs from the harbor. The public comment period closed in January 2009, and as noted earlier, the EPA just today provided the Court with a copy of the amended ROD.

WPD and federal government defendants argue that CERCLA section 122(e)(6) precludes Waukegan from undertaking any response action while the EPA's expected amended ROD is pending. Section 122(e)(6) states:

> When either the President, or a potentially responsible party pursuant to an administrative order or consent decree under this chapter, has initiated a remedial investigation and feasibility study for a particular facility under this chapter, no potentially responsible party may undertake any remedial action at the facility unless such remedial action has been authorized by the President.

*42 U.S.C. § 9622(e)(6)*. The EPA, in its third five-year review of its original ROD, reported that it had "determined that the Waukegan Harbor operable unit (OU # 1) remedial action [*15] currently is not protective of human health and the environment because the 50 ppm PCB cleanup level selected in the 1984 ROD for the harbor sediment is too high." The EPA announced that it would undertake a remedy selection process resulting in the issuance of an amended ROD. WPD's Mot. to Dismiss, Ex. B at 3.

The third amended complaint includes several claims for recovery of remedial costs Waukegan alleges it already incurred, during the period that the original ROD has been in effect. Waukegan incurred these costs, and indeed it filed this lawsuit, well before the EPA announced its intention to issue an amendment to the original ROD and before it began the recent RI/FS. Section 122(e)(6) has nothing to do with, and does not bar, claims for recovery of past costs.

The third amended complaint also identifies anticipated future response costs. As described earlier, these include expenses Waukegan expects to incur in connection with recently-discovered high levels of PCB contamination in Operable Unit 4 of the facility and the ongoing expense of maintaining the PCB impoundments in Operable Unit 3. Defendants argue that Waukegan cannot plead facts sufficient to state a claim for these [*16] future costs because they are too speculative and may never be undertaken if they conflict with the EPA's eventual amended ROD. The EPA's description of the plans for the pending amended ROD, however, mentions only Operable Unit 1, whereas the third amended complaint describes anticipated future costs in Operable Units 3 and 4. Unless the amended ROD, which the Court has not yet reviewed, also covers Operable Units 3 and 4, Waukegan has alleged facts sufficient to state a claim for future response costs as to those Units that is not defeated by section 122(e)(6).

**2. Consistency with the National Contingency Plan**

WPD and the federal government defendants assert that Waukegan's claims for cost recovery are precluded because the city cannot plead facts sufficient to state a claim that it has incurred "necessary" costs that are "consistent with the National Contingency Plan" (NCP) as required by CERCLA section 107(a)(4)(B), *42 U.S.C.*

Page 6

2009 U.S. Dist. LEXIS 109413, *16; 71 ERC (BNA) 1272

§ 9607(a)(4)(B), until the EPA has made clear what is consistent by issuing its amended ROD. The Court deals with the specifics of Waukegan's claimed costs below but notes that the pending amended ROD is not the first EPA action at the site. The response costs [*17] Waukegan alleges it has previously incurred could be, and are alleged by Waukegan to be, consistent with the previous version of the EPA's plans.

Taking Waukegan's factual allegations as true and making reasonable inferences in its favor, it has sufficiently alleged that it incurred response costs that were consistent with the NCP at the time. The EPA's later actions to amend its plans for the Waukegan Harbor do not pose a bar to Waukegan's claims for recovery of those past costs. It would frustrate CERCLA's goal of addressing and remediating hazardous waste contamination to deny cost recovery to a party that acted consistently with an existing EPA plan just because the EPA later changed its approach.

**3. Impermissible challenge to EPA's selected response**

WPD argues that the Court lacks jurisdiction to hear Waukegan's claims due to CERCLA section 113(h), *42 U.S.C. § 9613(h)*. Section 113(h) limits federal jurisdiction over challenges to EPA removal and remedial actions to those cases in which the remedial action is already complete. WPD contends that Waukegan's claims for cost recovery and declaratory judgment are actually an effort by the city to frustrate the EPA's ongoing process for [*18] amending the ROD before that process is complete, because (WPD contends) the city would prefer a different remedy from the one the EPA is expected to select.

An "indirect" challenge, which is what WPD contends the Waukegan is attempting via this case, is prohibited under section 113(h) if it interferes with the implementation of a CERCLA remedy. *See, e.g., Pollack v. U.S. Dept. of Defense, 507 F.3d 522*. The third amended complaint, however, includes several specific claims regarding response costs that Waukegan voluntarily incurred beyond what the 2004 and 2005 consent decrees required. Classifying such claims as a veiled "indirect" challenge to the EPA's remedy selection process, invoked as an "ingenious means to skirt a clear statutory bar to suit," *id.*, would require the Court to make significant inferences in the defendants' favor, which is inappropriate at the pleading stage. Thus section 113(h) does not provide a basis to dismiss the third amended complaint.

**C. Claims for past costs under CERCLA section 107(a)**

**1. The availability of a remedy under section 107(a) vs. section 113(f)**

CERCLA provides for three different ways in which potentially responsible parties (PRPs) may share or [*19] shift response costs. Section 107(a)(4)(B), the basis for Waukegan's claim, provides that PRPs may be held liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." *42 U.S.C. § 9607(a)(4)(B)*. Such "other persons" may include other PRPs. *United States v. Atl. Research Corp., 551 U.S. 128, 135-36, 127 S. Ct. 2331, 168 L. Ed. 2d 28 (2007)*. Section 113(f)(1) gives a person who has incurred response costs a right of contribution from any other PRPs "during or following any civil action under [section 106 or section 107]." *42 U.S.C. § 9613(f)(1)*. Section 113(f)(3)(B) allows a party that has settled with a state or the United States "in an administrative or judicially approved settlement" to seek contribution from "any person who is not party to a settlement." *42 U.S.C. § 9613(f)(3)(B)*.

The Supreme Court has explained how sections 107(a) and 113(f) work together as complementary remedies, providing causes of action "to persons in different procedural circumstances." *Atl. Research, 551 U.S. at 139* (citing *Consol. Edison Co. of N.Y. v. UGI Utils., Inc., 423 F.3d 90, 99 (5th Cir. 2005))*. In *Atlantic Research,* the Supreme Court stated:

> Section 113(f)(1) authorizes [*20] a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a).

*Atl. Research, 551 U.S. at 139*. The defendants argue that

Page 7

2009 U.S. Dist. LEXIS 109413, *20; 71 ERC (BNA) 1272

this settles the matter. They contend that Waukegan resolved its liability to the EPA through the consent decrees and thus any costs the city incurred should be considered to be within the scope of those decrees. As a result, they argue, Waukegan cannot bring a claim under section 107(a).

This argument oversimplifies the issue. In *Atlantic Research,* the Court held that a party that has not been sued and yet incurs response costs may sue to recover those costs under section 107(a) and not under section 113(f). *Atl. Research, 551 U.S. at 139*. The Court also held that a party that incurs costs to satisfy a settlement agreement or a [*21] court judgment does not incur its own response costs but rather reimburses others for their response costs and thus may recover only in an action for contribution under section 113(f). *Id.* The Court did not determine, however, that a party to a consent decree that thereafter incurs additional response costs cannot sue to recover those costs under section 107(a). The Court stated:

> We recognize that a PRP may sustain expenses pursuant to a consent decree following a suit under § 106 and § 107(a). In such a case, the PRP does not incur costs voluntarily but does not reimburse the costs of another party. We do not decide whether these compelled costs of response are recoverable under § 113(f), § 107(a), or both.

*Atl. Research, 551 U.S. at 139 n.6*. In short, though section 107(a) is the only avenue for recovery of response costs incurred voluntarily, that provision "does not specify that only parties who 'voluntarily' remediate a site have a cause of action." *W.R. Grace & Co. -- Conn. v. Zotos Int'l, Inc., 559 F.3d 85, 92 (2d Cir. 2009)* (emphasis added).

Further, the third amended complaint makes specific allegations regarding costs Waukegan incurred beyond what the consent decrees required. [*22] The 2004 consent decree obligates the city to perform operations and management (O&M) work on the soil within Operable Unit 2 of the site. Pl.'s Mem. in Op. to Mot. to Dismiss, Ex. C P 6(a). The 2005 consent decree requires the city to repair and maintain roofs of the PCB containment units, protect them from damage and from precipitation, and keep the storm water collection and discharge system in working order. *Id.,* Ex. D P 12b. The response costs that Waukegan seeks to recover, with the possible exception of the cost of maintaining the containment units, do not appear to fall within those categories.

The defendants argue that because the consent decrees resolved most or all of Waukegan's liability to the EPA, the city is in the "procedural status" of a party that has resolved its liability. As a result, they argue, any claim for recovery, even for actions beyond the scope of the consent decrees, may be brought only under section 113(f). See Fed. Defs.' Mem. in Supp. of Mot. to Dismiss 4. The federal defendants rely on a district court decision holding that "[p]laintiffs would be entitled to recover under § 113(f) . . . whatever payments [plaintiffs] made in excess of their proportionate [*23] share . . . not only payments made pursuant to the consent decree filed in the civil action instituted against them . . . , but also any other payments they made to discharge their common liability under § 107(a) before or after that time." *Appleton Papers, Inc. v. George A. Whiting Paper Co., 572 F. Supp. 2d 1034, 1044 (E.D. Wis. 2008)*.

Defendants correctly note that the 2004 consent decree in particular includes a very broad definition of the OMC site, which this Court concluded in an earlier decision resulted in broad relief for Waukegan from future liability relating to the site. *See City of Waukegan, 2009 U.S. Dist. LEXIS 29796, 2009 WL 972608, at *1-2*. Unlike in *Appleton Papers,* however, Waukegan alleges that the response costs for which it seeks recovery are not payments made pursuant to obligations under the consent decrees but rather are expenses that resulted from actions it took on its own beyond what the decrees required. It also contends that it did not take these actions to "discharge [a] common liability," because its liability was discharged by the decrees. Indeed, both consent decrees state that Waukegan is not required to take any response action beyond that listed in the decrees. *Id.,* Ex. C 6(a); [*24] Ex. D P 53. Moreover, the 2005 decree anticipates that Waukegan might, on its own, undertake response actions beyond the decree's scope:

> Nothing in this Supplemental Consent Decree is intended to limit the right of the United States, the State or the city of Waukegan to undertake further response actions at the Site . . . . Nothing in this Supplemental Consent decree shall in any

Page 8

2009 U.S. Dist. LEXIS 109413, *24; 71 ERC (BNA) 1272

> way restrict or limit the nature or scope of response actions which may be taken or be required by EPA, the State or the City of Waukegan in exercising their authority under federal or State law. The City of Waukegan acknowledges that it is purchasing Property where response actions may be required.

2005 Consent Decree P 45.

Waukegan's third amended complaint includes specific allegations that the city has undertaken additional, voluntary response costs beyond the terms of its obligations under the consent decrees. These include costs it incurred to lower its potable water supply line to permit dredging of PCB-contaminated sediments and conducting soil investigation of PCB contamination located on the beachfront and soil of Operable Unit 4 of the site. These allegations are sufficient to preclude dismissal of [*25] Waukegan's claim under section 107(a). [2]

> [2] Waukegan also identifies response costs that may fall within the scope of the consent decrees or that may not qualify for recovery under section 107(a), including assessing alternative response actions to those proposed by EPA, maintaining the PCB impoundments, and designing a response action "pursuant to an agreement with USEPA." But because at least some of what Waukegan alleges is potentially recoverable under section 107(a), dismissal of the city's claim is inappropriate. The Court need not at this stage determine the precise contours of what Waukegan ultimately may be able to recover.

### 2. Sufficiency of the specific costs alleged

In its supplemental memorandum in response to the third amended complaint, WPD argues that the response costs identified by Waukegan do not give rise to a claim upon which relief can be granted. First, WPD argues that Waukegan's claim for "costs for design of a response action in connection with PCB contaminated sediments in the Harbor, pursuant to an agreement with USEPA" is unduly vague. Waukegan contends that these costs are separate from any obligation under the consent decree, and the terms of the consent decrees [*26] make no reference to any obligation on the part of the city to design a response action in connection with PCB contamination in the harbor. The Court finds Waukegan's allegation sufficiently specific.

WPD next argues that the city's incurring of the cost of lowering the potable water supply line to allow a response action does not support a section 107 claim because the action was not remedial but was undertaken for other reasons - namely, Waukegan's desire to replace an aging piece of its infrastructure. This amounts to an attack on Waukegan's contention, by suing under section 107(a), that its actions were "necessary" and "consistent with the National Contingency Plan." *42 U.S.C. § 9607(a)(4)(B)*. See 3rd Am. Compl. P 93(f) (alleging that the action was undertaken "in order to allow a response action, including dredging of PCB contaminated sediments, to be implemented in the Harbor."). [3]

> [3] It is worth noting that dredging is precisely the EPA-recommended remedy that WPD contends Waukegan is attempting to confound.

To prevail, Waukegan must show that the costs it seeks to recover were incurred in response to a threat to human health or the environment and were necessary to address that [*27] threat. Response costs that go beyond what is necessary to address the environmental hazard or that are undertaken for other reasons are not recoverable. *See, e.g., Regional Airport Authority of Louisville v. LFG, LLC, 460 F.3d 697, 705-06 (6th Cir. 2006)*. At this stage of the case, however, Waukegan need not prove its claims. Accepting its statements of fact as true, as the Court must at this stage, Waukegan has met the applicable standard via the reasons it has alleged for incurring the cost of lowering the water line.

Finally, WPD argues that Waukegan's claim to recover costs incurred to conduct studies to evaluate the feasibility of actions other than those recommended by the EPA and costs the city may have to pay as a result of the imposition of liens cannot be the basis of a claim under section 107. Were these the only response costs cited by Waukegan, the motion to dismiss would be a closer call. In particular, the lien claim is not an appropriate subject of cost recovery under section 107(a). A windfall or recovery lien would allow the EPA to recover unreimbursed response costs or realize the increase in fair market value attributable to its remediation efforts. *42 U.S.C. § 9607(l)(1)* [*28] & *(r)*. According to a letter the EPA wrote to the city announcing its intention to impose a lien, the lien would be satisfied by paying the lesser of EPA's unrecovered

Page 9

2009 U.S. Dist. LEXIS 109413, *28; 71 ERC (BNA) 1272

response costs or the increase in fair market value attributable to EPA's cleanup. 3rd Am. Compl., Ex. GG, at 6. If Waukegan made a payment to the EPA to satisfy a lien of this sort, that payment would constitute a reimbursement to another party for response costs, which would be recoverable only under section 113(f). *Atl. Research, 551 U.S. at 139*. But because Waukegan has alleged sufficient facts to survive a motion to dismiss with regard to other response costs, the nonviability of the claim relating to liens does not defeat the city's claims.

**D. Claim seeking declaratory judgment under section 113(g)(2)**

Waukegan also seeks a declaratory judgment, binding in any subsequent action to recover further response costs relating to the facility, that the defendants are jointly and severally liable for such costs. Under CERCLA, a court considering an initial action for recovery of costs under section 107 "shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action [*29] or actions to recover further response costs or damages." *42 U.S.C. § 9613(g)(2)*.

In response to the Court's instruction that it identify with more particularity the future costs it anticipates incurring, Waukegan offers several examples, including costs it may incur in connection with recently-discovered high levels of PCB contamination on the former OMC Plant 2 site. The OMC Plant 2 site is not a subject of either of the consent decrees entered into by the city. It is thus beyond the parameters of the consent decrees and any limitations on cost recovery that those decrees impose. The same logic that allows the city to proceed with its section 107 claims for voluntarily-incurred past costs beyond the scope of the consent applies to future voluntary costs the city undertakes that are necessary and consistent with the NCP but are outside the scope of the consent decrees. If the Court determines that Waukegan can recover its past costs under section 107(a), these anticipated future costs, and others like them, may well be the appropriate subject of a declaratory judgment. Waukegan has alleged facts sufficient to allow its declaratory judgment claim to proceed.

The Court notes, however, [*30] that Operable Unit 1 of the facility is the subject of the pending amended ROD that the EPA is shortly expected to issue (as indicated earlier, the Court has not examined the amended ROD, which was filed on the date this decision was completed, to determine what it actually states). As a result, what constitutes an action "consistent with" the NCP on Operable Unit 1 may well change. The Court will have to wait to see what the amended ROD says before it can determine whether a claim relating to future costs Waukegan may incur on Operable Unit 1 would be out of bounds. The same may be true of other future anticipated response costs that Waukegan may seek in this case. That, however, will not prevent the case from proceeding, at a minimum, with respect to Waukegan's claims for recovery of already-incurred response costs.

**Conclusion**

For the reasons stated above, the Court denies defendants' motion to dismiss in part [docket nos. 269, 295, 296]. The case is set for a status hearing on December 3, 2009 at 9:30 a.m. to address how the case should proceed. The Court directs the parties to provide, by no later than the close of business on December 2, 2009, proposals in this regard (to be entitled [*31] "Status Report"). Parties with common or similar interests are encouraged to file joint reports or to verbally adopt other parties' reports at the status hearing, to avoid burdening all concerned with duplicative proposals.

/s/ Matthew F. Kennelly

MATTHEW F. KENNELLY

United States District Judge

Date: November 20, 2009