IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

UNITED STATES OF AMERICA and
THE STATE OF WISCONSIN,

    Plaintiffs,

    v.

NCR CORPORATION, *et al.*,

    Defendants.

No. 10-CV-910-WCG

**JOINT MOTION OF NCR CORPORATION AND APPLETON PAPERS INC. FOR LEAVE TO FILE SUR-REPLY BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO ENTER CONSENT DECREE WITH GEORGIA-PACIFIC CONSUMER PRODUCTS LP**

Defendants NCR Corporation ("NCR") and Appleton Papers Inc. ("API"), by their undersigned counsel, pursuant to L.R. 7(i), respectfully move the Court for leave to file a sur-reply to Plaintiffs' Joint Reply Brief in Support of Motion To Enter Consent Decree With Georgia-Pacific Consumer Products LP (Dkt. #102) and Defendant Georgia-Pacific Consumer Products LP's Reply In Support of Plaintiffs' Motion To Enter Consent Decree (Dkt. #103). NCR and API believe that a sur-reply is necessary, appropriate, and in the interest of fairness for the following three reasons:

First, in their reply brief, Plaintiffs United States of America and the State of Wisconsin (collectively, the "Governments") have misrepresented the conclusions expressed by NCR and API's expert, Dr. John Connolly, to make it appear that he supports factual assertions that the Governments make to justify the Consent Decree With Georgia-Pacific Consumer Products LP ("GP"), when in fact Dr. Connolly says no such thing.

Second, the Governments confirmed for the first time in their reply brief that their estimate of GP's PCB discharges is derived from a secret government report.  This new justification for the settlement should be disregarded because it was not offered in the Governments' original motion and because it is based on documents that the Governments are refusing to disclose.

Third, GP filed a reply brief and supporting declaration without leave of court, even though it is not a moving party and never filed an initial brief.  This brief should be stricken because it contains new materials that NCR and API have no opportunity to address.

For these reasons, NCR and API believe that it is important for the Court to have a full presentation of the facts and arguments, and it is in the interest of fairness to allow NCR and API to briefly respond to these issues.  For these reasons, API and NCR respectfully request that the Court grant them leave to file a Sur-Reply Brief in Opposition To Plaintiffs' Motion to Enter Consent Decree With Georgia-Pacific Consumer Products LP.  A copy of the proposed Sur-Reply is attached to this motion.

Respectfully submitted,

/s/ Ronald R. Ragatz  /s/ Kathleen L. Roach

| | |
|---|---|
| HERMES LAW LTD.<br>Michael L. Hermes (WI Bar No. 1019623)<br>Heidi D. Melzer (WI Bar No. 1076125)<br>Brandon J. Evans (WI Bar No. 1063940)<br>333 Main Street, Suite 601<br>Green Bay, Wisconsin 54301<br>(920) 436-9870<br>Fax: (920) 436-9871<br><br>DEWITT ROSS & STEVENS S.C.<br>Ronald R. Ragatz (WI Bar No. 1017501)<br>Dennis P. Birke (WI Bar No. 1018345)<br>Megan A. Senatori (WI Bar No. 1037314)<br>2 E. Mifflin Street, Suite 600<br>Madison, Wisconsin 53703<br>(608) 255-8891<br>Fax: (608) 252-9243<br><br>*Attorneys for Appleton Papers Inc.* | SIDLEY AUSTIN LLP<br>Kathleen L. Roach (IL Bar No. 6191432)<br>Evan B. Westerfield (IL Bar No. 6217037)<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Phone: (312) 853-7000<br>Fax: (312) 853-7036<br><br>CRAVATH, SWAINE & MOORE LLP<br>Evan R. Chesler (NY Bar No. 1475722)<br>Sandra C. Goldstein (NY Bar No. 2198745)<br>Worldwide Plaza<br>825 Eighth Avenue<br>New York, NY 10019<br>Phone: (212) 474-1000<br>Fax: (212) 474-3700<br><br>MARTEN LAW PLLC<br>Bradley M. Marten (WA Bar No. 13582)<br>Linda R. Larson (WA Bar No. 9171)<br>1191 Second Avenue<br>Suite 2200<br>Seattle, WA 98101<br>Phone: (206) 292-2600<br>Fax: (206) 292-2601<br><br>*Attorneys for NCR Corporation* |

Dated: February 22, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

UNITED STATES OF AMERICA and
THE STATE OF WISCONSIN,

        Plaintiffs,

   v.

NCR CORPORATION, *et al*.,

        Defendants.

No. 10-CV-910-WCG

**SUR-REPLY BRIEF OF NCR CORPORATION AND APPLETON PAPERS INC. IN OPPOSITION TO PLAINTIFFS' MOTION TO ENTER CONSENT DECREE WITH GEORGIA-PACIFIC CONSUMER PRODUCTS LP**

Defendants NCR Corporation ("NCR") and Appleton Papers Inc. ("API"), by their undersigned counsel, respectfully submit this Sur-Reply Brief in Opposition to Plaintiffs' Motion to Enter Consent Decree With Georgia-Pacific Consumer Products LP.

**INTRODUCTION**

In their reply brief, Plaintiffs United States of America and the State of Wisconsin (collectively, the "Governments") have (1) grossly mischaracterized an expert report submitted by NCR and API, and (2) acknowledged for the first time that the volume of PCBs attributed to GP is based upon documents and reports that the Governments are refusing to disclose. In addition, Defendant Georgia-Pacific Consumer Products LP. ("GP") has filed a "reply" brief and declaration, without leave of court, in violation of local rules that limit that right to the moving party, which GP is not. In the interest of fairness, NCR and API respectfully request that the Court consider this sur-reply brief to address these newly raised matters.

# ARGUMENT

## I. THE GOVERNMENTS HAVE MISCHARACTERIZED THE CONCLUSIONS EXPRESSED IN THE CONNOLLY REPORT.

The Governments erroneously assert that opinions expressed by NCR and API's expert, Dr. John Connolly, support their proposal to relieve GP of any responsibility for contamination in so-called Upper OU-4 and their attribution of 16% of total PCB discharges to the river to GP. According to the Governments, Dr. Connolly opined that "Georgia-Pacific made a 0% contribution to the contamination in [Upper OU-4]," (Dkt. #102 at 1), and that Dr. Connolly's report "quantifies Georgia-Pacific's relative contribution in [Upper OU-4] at *0%* (versus a 100% contribution from upstream sources." *Id.* at 4 (italics in original).[1]

Dr. Connolly expressed no such opinions. To the contrary, Dr. Connolly stated unambiguously in his report that he could not and did *not* draw the conclusions the Governments attribute to him:

> These estimates are qualified as preliminary, because there is some evidence in the sediment samples of upstream movement of PCBs from OU4B sources into 4A. This is not unexpected given **the well-documented "seiche" effect in OU4 that produces flow reversals in this area of the river. We have not completed our analysis of the contribution of OU4B sources into OU4A, and therefore in this regard our estimates are preliminary, approximate only, and will likely be further revised as our work progresses**.

Dkt. #76-1 at 66 of 150 (emphasis added). The Governments' repeated unqualified assertions that Dr. Connolly attributed a 0% share to GP in Upper OU-4 is a gross mischaracterization of his report.

---

[1] The Governments rely on this mischaracterization of the Connolly report at several places in their reply brief. *See, e.g.*, Dkt. #102 at 10, 11.

The Governments were clearly aware of the limiting language in Dr. Connolly's report, having specifically referred to it in their opening brief. Dkt. #77 at 22. However, the Governments' reply brief consistently ignores this express limitation on the scope of Dr. Connolly's opinion. The Governments' characterization of Dr. Connolly's opinion, which is the centerpiece of their reply argument, is therefore simply wrong. It does not support either the Governments' division of Upper OU-4 from Lower OU-4 or the claim that GP is only responsible for 16% of overall PCB discharges.[2]

## II. FOR THE FIRST TIME IN THEIR REPLY BRIEF, THE GOVERNMENTS ACKNOWLEDGE RELIANCE UPON THE MODIFIED AMENDOLA REPORT – WHICH THEY REFUSE TO PRODUCE.

In their opening brief, the Governments justified their attribution of a 16% share to GP by citing Judge Adelman's 2004 decision that referenced the Governments' estimate that GP "discharged 15-20 percent of the total PCB mass." Dkt. #77 at 23, *quoting United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 909 (E.D. Wis. 2004). In their reply brief, the Governments have now offered the Court additional justifications for their estimate of GP's overall volumetric share. Dkt. #102 at 8-10. Such new justifications, presented for the first time in a reply brief, are improper, as

---

[2] This is not the only report the Governments mischaracterize in their reply brief. They also mischaracterize a 2000 Report by RMT by conflating the report's conclusions about emulsion loss *rate* with the report's conclusions about the *volume* of emulsion lost in a single year. Dkt. #102 at 8, n.11. In its report, RMT concluded, based upon then-available information, that "the emulsion loss *rate* in 1970 was, at most, 1.4 percent." Dkt. #100-5 at 5 of 7 (emphasis added). RMT stated that "it is valid to apply the same *rate* for the entire period of concern (1954 through 1971)." *Id.* (emphasis added). RMT also calculated a *volume* of emulsion lost for 1970, which it explained was the peak year of production of carbonless copy paper. *Id.* However, the Governments claim that RMT estimated that same *volume* of loss "each year between 1954 and 1971." Dkt. #102 at 8, n.11. That is a gross mischaracterization that greatly exaggerates the volume of loss, since RMT's volume calculation was expressly for the highest *volume* year, 1970, not the entire period of production.

- 3 -

neither the parties nor the public have an opportunity to respond to such new evidence. Therefore, these justifications should not be considered by the Court.

Moreover, these new justifications should be disregarded for the additional reason that they rely on evidence and documents that the Governments refuse to make available for public review. For example, the Governments acknowledge for the first time that "[s]everal adjustments were made to the United States' mass balance analysis after the 2000 Preliminary [Amendola] Estimates," Dkt. #102 at 9, and that these adjustments support the 16% estimate. But, the Governments have refused to produce any documentation relating to these "adjustments."[3] A rationale that is not supported by any actual evidence in the record cannot form the basis for approval of a consent decree. *See United States v. Montrose Chem. Corp.*, 50 F.3d 741, 748 (9th Cir. 1995) (district court's approval of consent decree reversed because a "critical aspect of the settlement evaluation" was lacking); *United States v. AlliedSignal, Inc.*, 62 F. Supp. 2d 713, 721 (N.D.N.Y. 1999) (consent decree rejected because United States "provided no detailed explanation for how [it] derived" the estimates supporting the settlement terms).

### III. THE GOVERNMENTS' OPPOSITION TO FURTHER INVESTIGATION INTO THE PROPOSED CONSENT DECREE AND AN EVIDENTIARY HEARING IS GROUNDLESS.

The Governments claim that there is no need for discovery or an evidentiary hearing on the proposed settlement "because the Plaintiffs have proceeded with extreme transparency here." Dkt. #102 at 13. Nothing is further from the truth. As noted above and in API's and NCR's response brief, the Governments have placed certain analyses

---

[3] API made a FOIA request for the report the Governments now rely upon over a year ago, but the Governments have refused to provide it. NCR and API have sought the document in this litigation (Dkt. #89), but the Governments are resisting production and the Court has not yet ruled on the pending Motion to Compel.

- 4 -

and documentation at the very center of their decision making, and then withheld that evidence. It is therefore disingenuous for the Governments to claim that there has been "extreme transparency here" so long as the key document relied upon by the Governments as the basis for their estimate of GP's contribution of PCBs to the river remains shielded from public scrutiny. The Governments' actions here are a quintessential example of why Congress mandated that courts must carefully review any consent decree prior to approval.[4]

## IV. THE COURT SHOULD STRIKE GP'S REPLY BRIEF.

Without seeking leave, GP has filed a reply brief even though it is not a "moving party." This violates L.R. 7(c) and therefore, the Court should strike the brief.

Even if the Court does not strike the brief, the Court should ignore GP's unsolicited views as to how the Court should resolve both the *Whiting* action and the Governments' new enforcement action. Dkt. #103 at 3. The ultimate disposition of these cases has nothing to do with the Governments' motion to enter the GP consent decree.[5]

The extent of GP's true reply argument consists of two paragraphs. *Id*. at 8. In the first, GP provides a misleading and self-serving confirmation of LTI's work, without disclosing any model assumptions or underlying data. In the second, GP simply creates a fact issue as to whether its data set is correct. In neither paragraph does GP put any

---

[4] Thus, it is clear that the Governments have failed to provide the evidentiary basis on which they rely to support approval of the consent decree. Attempting to shift the burden, the Governments argue that NCR and API have provided no basis to deny the consent decree. Dkt. #192 at 1. However, the burden is neither NCR's nor API's. It is the Governments who must put forth the evidence to justify approval of the consent decree. This they have not done.

[5] Moreover, the Court should not lose sight of GP's utter hypocrisy in urging the Court to "subject [NCR and API] to significant penalties should they fail to perform the work [required by the 106 Order]" (*id*.) – relief that the Governments have not requested in the enforcement action – when GP itself has repeatedly refused to perform the required work.

- 5 -

evidence in the record to justify approval of the consent decree.  Rather, GP and the Governments continue to hide the evidence on which they rely to justify a consent decree that all public information says is grossly inadequate.

## CONCLUSION

NCR and API respectfully request that the Court (1) reject the Governments' mischaracterization of the Connolly report, (2) disregard the new justifications for the settlement offered for the first time in the Governments' reply brief; (3) conduct an evidentiary hearing after discovery, and (4) strike GP's unauthorized brief.

Respectfully submitted,

| | |
|---|---|
| /s/ Ronald R. Ragatz | /s/ Kathleen L. Roach |
| HERMES LAW LTD.<br>Michael L. Hermes (WI Bar No. 1019623)<br>Heidi D. Melzer (WI Bar No. 1076125)<br>Brandon J. Evans (WI Bar No. 1063940)<br>333 Main Street, Suite 601<br>Green Bay, Wisconsin 54301<br>(920) 436-9870<br>Fax: (920) 436-9871 | SIDLEY AUSTIN LLP<br>Kathleen L. Roach (IL Bar No. 6191432)<br>Evan B. Westerfield (IL Bar No. 6217037)<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Phone: (312) 853-7000<br>Fax: (312) 853-7036 |
| DEWITT ROSS & STEVENS S.C.<br>Ronald R. Ragatz (WI Bar No. 1017501)<br>Dennis P. Birke (WI Bar No. 1018345)<br>Megan A. Senatori (WI Bar No. 1037314)<br>2 E. Mifflin Street, Suite 600<br>Madison, Wisconsin 53703<br>(608) 255-8891<br>Fax: (608) 252-9243 | CRAVATH, SWAINE & MOORE LLP<br>Evan R. Chesler (NY Bar No. 1475722)<br>Sandra C. Goldstein (NY Bar No. 2198745)<br>Worldwide Plaza<br>825 Eighth Avenue<br>New York, NY 10019<br>Phone: (212) 474-1000 |
| *Attorneys for Appleton Papers Inc.*<br><br>Dated: February 22, 2011 | MARTEN LAW PLLC<br>Bradley M. Marten (WA Bar No. 13582)<br>Linda R. Larson (WA Bar No. 9171)<br>1191 Second Avenue, Suite 2200<br>Seattle, WA 98101<br>Phone: (206) 292-2600<br><br>*Attorneys for NCR Corporation* |