IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 10-CV-00910-WCG |
| NCR CORPORATION, et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT GEORGIA-PACIFIC CONSUMER PRODUCTS LP'S CONSOLIDATED REPLY IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANT APPLETON PAPERS INC.'S CROSS-CLAIM IN ITS ANSWER TO THE FIRST AMENDED COMPLAINT AND DEFENDANT NCR CORPORATION'S CROSS-CLAIM IN ITS AMENDED ANSWER TO THE FIRST AMENDED COMPLAINT**

Karl S. Lytz
CA Bar No. 110895
Patrick J. Ferguson
CA Bar No. 252778
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Karl.Lytz@lw.com
Patrick.Ferguson@lw.com

Mary Rose Alexander
IL Bar No. 6205313
CA Bar No. 143899
LATHAM & WATKINS LLP
233 S. Wacker Drive, Suite 5800
Chicago, IL 60606
Telephone: (312) 872-7700
Facsimile: (312) 993-9767
Mary.Rose.Alexander@lw.com

Dated: February 24, 2011

**TABLE OF CONTENTS**

|      |      |      | Page |
|------|------|------|------|
| I.   | INTRODUCTION AND SUMMARY | | 1 |
| II.  | ARGUMENT | | 3 |
|      | A. | NCR/API's "Divisibility Theory" Is Wrong | 3 |
|      |    | 1. NCR/API's "Divisibility Theory" Is Nonsensical | 3 |
|      |    | 2. NCR/API's "Divisibility Theory" Is Contrary To The Law | 5 |
|      | B. | The Court Has Already Correctly Decided That NCR/API's Exclusive Remedy Against GP Or Any Other Party Is A Contribution Claim Under 113(f) | 6 |
|      |    | 1. The Court Correctly Decided the 107/113 Issue on Two Prior Occasions in *Whiting* | 6 |
|      |    | 2. The Law Has Not Changed Since The Court's Rulings In *Whiting* | 8 |
|      |    | 3. NCR/API Had Valid 113(f) Claims – The Facts Have Not Changed | 10 |
|      |    | 4. The Procedural Posture Of This Case Does Not Change NCR/API's Legal Rights | 12 |
|      | C. | The NCR/API Cross-claims Are Barred by *Res Judicata* | 14 |
| III. | CONCLUSION | | 15 |

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page(s)

*Akzo Coatings, Inc. v. Aigner Corp.*,
   30 F.3d 761 (7th Cir. 1994) ..........................................................................................7, 8

*Alexander v. Chicago Park District*,
   73 F.2d 850 (7th Cir. 1985) ...............................................................................................15

*Appleton Papers Inc. v. George A. Whiting Paper Co.*,
   No. 08-C-16, 2009 WL. 5064049 (E.D. Wis. Dec. 16, 2009) ...........................................3

*Appleton Papers Inc. v. George A. Whiting Paper Co.*,
   572 F. Supp. 2d 1034 (E.D. Wis. 2008)....................................................................1, 6, 7

*Appleton Papers Inc. v. George A. Whiting Paper Co.*,
   No. 08-C-16, 2009 U.S. Dist. LEXIS 111648 (E.D. Wis. Nov. 18, 2009)...................7, 9

*Ashland v. Gar Electroforming*,
   729 F. Supp. 2d 526 (D.R.I. July 22, 2010) ......................................................................9

*Baker Group, L.C. v. Burlington Northern and Santa Fe Railway Co.*,
   228 F.3d 883 (8th Cir. 2000) .............................................................................................15

*Burgos v. Hopkins*,
   14 F.3d 787 (2d Cir. 1994)................................................................................................15

*Burlington Northern & Santa Fe Railway Co. v. United States*,
   129 S. Ct. 1870 (2009).........................................................................................................5

*Campbell v. Illinois Department of Corrections*,
   907 F. Supp. 276 (N.D. Ill. 1995) ....................................................................................15

*Centerior Service Co. v. Acme Scrap Iron & Metal Corp.*,
   153 F.3d 344 (6th Cir. 1998) ..............................................................................................5

*City of Waukegan v. National Gypsum Co.*,
   2009 U.S. Dist. LEXIS 109413 (N.D. Ill. Nov. 20, 2009).........................................9, 10

*Cooper Indus. v. Aviall Svcs., Inc.*,
   543 U.S. 157, 160-61 (2004) .............................................................................................7

*Davidson v. Capuano*,
   792 F.2d 275 (2d Cir. 1986)..............................................................................................15

*Fayumi v. City of Hickory Hills*,
 18 F. Supp. 2d 909 (N.D. Ill. 1998) ...............................................................................15

*Ford Motor Co. v. Michigan Consolidated Gas. Co.*,
 2009 U.S. Dist. LEXIS 89885 (E.D. Mich. Sept. 29, 2009).........................................9

*Henan Machinery & Electric Import & Export Co., Ltd. V. WDF Intern Trading
 Co., LLC*, 2007 WL. 5601486 (W.D. Wisc. May 29, 2007).........................................13

*ITT Industries, Inc. v. BorgWarner, Inc.*,
 506 F.3d 452 (6th Cir. 2007) .........................................................................................9

*Lawlor v. National Screen Serv. Corp.*,
 349 U.S. 322 (1955).....................................................................................................15

*Metro. Water Reclamation Dist. of Greater Chi. v. N. Am. Galvanizing &
 Coatings, Inc.*,
 473 F.3d 824 (7th Cir. 2007) ................................................................................ 8, 12

*Morrison Enterprise, LLC v. Dravo Corp.*,
 2009 U.S. Dist. LEXIS 110414 (D. Neb. Nov. 24, 2009) ............................................9

*Schaut & Sons, Inc. v. Mountain Log Homes, Inc.*,
 2004 WL. 1468538 (E.D. Wisc. May 12, 2004)...........................................................11

*Serlin v. Arthur Anderson & Co.*,
 3 F.3d 221 (7th Cir. 1993) ...........................................................................................13

*Solutia, Inc. v. McWane, Inc.*,
 726 F. Supp. 2d 1316 (N.D. Ala. 2010).........................................................................9

*Spiegel v. Continental Illinois National Bank*,
 790 F.2d 638 (7th Cir. 1986) .......................................................................................14

*United States v. Atlantic Research Corp.*,
 551 U.S. 128 (2007)...............................................................................................4, 7, 8, 12

*United States v. Hook*,
 195 F.3d 299 (7th Cir. 1999) .......................................................................................11

*W.R. Grace & Co.-Conn. v. Zotos International, Inc.*,
 559 F.3d 85 (2d Cir. 2009)............................................................................................9

## DOCKETED CASES

*Appleton Papers Inc. v. George A. Whiting Paper Co.*,
 Case No. 08-C-16 (E.D. Wis.) ............................................................................... *passim*

*United States and the State of Wisconsin v. Appleton Papers Inc. and NCR Corp.*,
 Case No. 01-c-0816 (E.D. Wis.) .................................................................................11

*United States and the State of Wisconsin v. NCR Corp. and Sonoco-U.S. Mills,
 Inc.*, Case No. 06-0484 (E.D. Wis.) ............................................................................11

## FEDERAL STATUTES

42 U.S.C. § 1983 ....................................................................................................................4

42 U.S.C. § 9607 ............................................................................................................ *passim*

42 U.S.C. § 9613 ............................................................................................................ *passim*

## I. INTRODUCTION AND SUMMARY

In opposing Georgia-Pacific Consumer Product LP's ("GP") Motion to Dismiss their CERCLA Section 107(a) cross-claims, NCR Corporation and Appleton Papers Inc. ("NCR/API") raise the same legal and policy arguments that this Court rejected in *Whiting*. After careful consideration, the Court decided that: "In cases where a claim for contribution can be asserted under § 113(f), § 107(a) cannot be used." *Appleton Papers Inc. v. George A. Whiting Paper Co.*, 572 F. Supp. 2d 1034, 1043 (E.D. Wis. 2008). Though it lost on summary judgment in *Whiting*, NCR/API brought CERCLA Section 113(f) contribution claims there, so CERCLA Section 107(a) is not available to them. The reasoning of the Court's decision on this issue in *Whiting* applies with equal force in this case.

More recent judicial decisions confirm – and in no way call into question – the correctness of the Court's prior rejections of NCR/API's 107 claims against GP and others. As before, NCR (as successor to the liabilities of ACPC, which owned and operated the Appleton Plant at the time it released PCBs into the Lower Fox River ("LFR")) and API (as current owner of the Appleton Plant from which hazardous substances were released in the past, among other reasons) are clearly liable parties under CERCLA Section 107(a) that have been subject to numerous prior governmental enforcement actions under CERCLA Sections 106 and 107. Given that procedural posture, NCR/API have (or rather had) the ability to initiate Section 113(f) claims, and therefore could not assert Section 107(a) claims in *Whiting*. Nor can they do so here.

In fact, the entire premise of the NCR/API argument is faulty. Nothing in CERCLA or in fairness requires that they be able to assert 107 claims here simply because they are now able to raise a divisibility defense to the Governments' pending joint and several liability claims. If they prove divisibility, they can only be responsible for their allocated share of *future* costs, and therefore would have no need of a cost recovery vehicle with respect to such costs. If there is

1

divisibility and NCR/API have overpaid their fair share of *past* costs, they have (or rather had) a classic contribution claim for reimbursement under 113(f). If, on the other hand, the Court rejects NCR/API's divisibility defenses in this case and finds them jointly and severally liable, even NCR/API concede that the only remedy is a 113(f) claim. NCR/API had the right to initiate their 113(f) claims before this enforcement action, they elected to do so, they lost, and they are not entitled to re-litigate the same claims here under the guise of 107(a) actions.

The purported legal underpinnings of NCR/API's argument are equally faulty. First, this Court hardly need give credence to any present claim by NCR/API that they are completely innocent parties. The Court is fully entitled to consider the facts, admissions and arguments NCR/API advanced when prosecuting their 113(f) claims in *Whiting* when evaluating NCR/API's claimed entitlement to 107(a) counter-claims in this case.

Second, NCR/API are wrong in their contention that the availability of a divisibility defense to the Governments' joint and several liability allegation in this case means that they have no "common liability" for the purposes of 113(f), and therefore no claim under 113(f). That contention is belied by the fact that they have already claimed the right to 113(f) claims in this Court, and moreover, have already prosecuted and lost those claims. Divisibility is only a defense to "joint and several liability," not to liability per se. All that is required for 113(f) is a common liability arising from the Governments' assertion of response costs claims against NCR/API, which has occurred. NCR/API's own undeniable status as 107(a) PRPs for the LFR precludes any contention now that they do not share common liability.

GP has spent $115 million on the LFR. Through settlements, GP has resolved all of its natural resource damage and response cost liability for the LFR with the Governments (assuming the Court approves the pending response cost consent decree). NCR/API already litigated and

2

Case 1:10-cv-00910-WCG    Filed 02/24/11    Page 7 of 20    Document 110

lost their purported 107(a) and 113(f) claims against GP in the *Whiting* action, which they chose to litigate in advance of this suit. There is simply no practical, equitable or legal reason why NCR/API should be able to re-assert their dismissed 107(a) claims now simply because this case was filed after their prior losses. GP respectfully requests that its motion be granted, and the Governments agree.[1]

## II. ARGUMENT

### A. NCR/API's "Divisibility Theory" Is Wrong

Because NCR/API already lost their 113(f) claims in *Whiting,* they have revived their previously rejected "divisibility theory" to try to resuscitate their 107(a) claims against GP and others. According to NCR/API, because they could not raise "divisibility defenses" in *Whiting* against governmental claims of joint and several liability, they might now be held responsible for costs for which they are not in fact liable, and therefore must in fairness be able to recover such costs from GP or others by way of 107(a). This NCR/API "divisibility theory" is fundamentally flawed, makes no sense at all, and it is contrary to the law.

#### 1. NCR/API's "Divisibility Theory" Is Nonsensical

NCR/API have pled their divisibility defenses against the Governments' claims in this case, which the Court will grant or deny according to proof. Under either scenario, no 107(a) claim is created for NCR/API against GP or the other PRPs, and there is certainly no equitable reason to extend a new form of recovery to NCR/API in the present circumstances. Specifically:

---

[1] As stated in Plaintiffs' Joint Motion to Strike or Dismiss all Counterclaims and Cross-Claims: "Unlike API's counterclaims against the Plaintiffs, API's and NCR's cross-claims against Georgia-Pacific under § 107 include no alternative plea for relief under § 113 (Dkt. 65 at 53-58), probably because API and NCR already filed (and lost) those claims in the *Whiting* Case. *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-C-16, 2009 WL 5064049 (E.D.Wis. Dec. 16, 2009). Thus, ***those cross-claims should be dismissed outright, without leave to refile them, as sought by a separate motion filed by Georgia-Pacific*** (Dkt. 83)." Dkt. #107 at 11, n.13 (emphasis added).

3

***Divisibility Defense Rejected:*** If the Court were to reject NCR/API's divisibility defenses and find them jointly and severally liable, even NCR/API would concede that their only remedy of recovery from other PRPs would be through a 113(f) claim.

***Divisibility Defense Granted:*** If the Court grants NCR/API's divisibility defense, they could not be held liable for any future costs in excess of their divisible shares, and therefore would have no need for cost recovery as to such costs. Moreover, if based on the Court's divisibility allocation NCR/API thought they had incurred ***past*** costs in excess of their proportionate share, they would have a classic 113(f) contribution claim that they could bring before, during or after this case. *See* 42 U.S.C. § 9613(f)(1); *United States v. Atlantic Research Corp.*, 551 U.S. 128, 138-39 ("*Atlantic Research*") ("The statute authorizes a PRP to seek contribution 'during or following' a suit under CERCLA § 106 or § 107(a). Thus, [Section 113(f)(1)] permits suit before or after the establishment of common liability.") (citation and footnote omitted). Obviously, NCR/API have already brought and lost their 113(f) claims.

But even if NCR/API had disproportionately paid divisible past costs that could be pursued through a 107(a) claim (and they cannot), such costs would still be subject to equitable allocation. As the United States Supreme Court observed in *Atlantic Research*, a PRP defendant in a 107(a) suit brought by another PRP would file a 113(f) counterclaim, and the court would inevitably decide the issue on equitable principles. 551 U.S. at 140.

Thus, NCR/API have no practical need to be able to assert 107(a) claims in this case. There would be no need for such a claim to the degree NCR/API prevail on their divisibility claims as to future costs, and the resolution of any alleged past cost overpayments would be resolved on the basis of equitable factors, regardless of whether the case for reimbursement was brought pursuant to 107(a) or 113(f). In *Whiting*, NCR/API had their day in court seeking cost

4

recovery from GP (and the other PRPs) based on equitable factors. NCR/API elected the timing of that case, they lost, and they are not entitled to a second bite at equitable recovery from GP or anybody else simply because the Governments have now sued them.[2]

### 2. NCR/API's "Divisibility Theory" Is Contrary To The Law

NCR/API's "divisibility theory" is also premised on the flawed assumption that divisibility is a defense to liability. It is not. As clearly established in *Burlington Northern & Santa Fe Railway Co. v. United States* ("*Burlington Northern*"), "divisibility" is a defense to ***joint and several liability***, and not a defense to liability per se. 129 S. Ct. 1870, 1881-82 (2009). Even if NCR/API could prove a valid basis for apportioning liability, they are still liable parties – albeit only for their apportioned share. But "apportioned liability" or "divisible liability" still constitutes "common liability" for the LFR, and all that is required for a CERCLA contribution action is that a PRP have a "common liability" with other PRPs. *Atlantic Research*, 551 U.S. at 139 ("Section 113(f)(1) authorizes a contribution action to [PRPs] with common liability stemming from an action instituted under §§ 106 or 107(a)") (citations omitted).[3]

Contribution under 113(f) is available to any party that has been compelled to pay for cleanup of a site, as NCR/API have in this case. The language of 113(f) does not limit contribution to parties who caused "indivisible" harms; it authorizes contribution "from ***any other person who is liable or potentially liable*** under section 107(a)." 42 U.S.C. § 9613(f)

---

[2] API's papers are misleading as to its ultimate liability. Under indemnification agreements, API will be indemnified for the first $75 million of Fox River Liabilities and for those in excess of $100 million, leaving them responsible only for the $25 million of liabilities between $75 million and $100 million. *See* Declaration of Patrick Ferguson in Support of GP's Reply ("Ferguson Decl."), filed concurrently herewith, Exh. 1 [Appleton Papers Inc. 2002 10-K], at 15.

[3] Indeed, Section 113(f) is available to a party whose liability has not been judicially established at all. *See Centerior Service Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 351-52 (6th Cir. 1998) (concluding that a 106 order requiring cleanup in the face of penalties or fines is enough for a party to show an obligation to an injured party when he or she discharged the payment) (abrogated on other grounds by *Atlantic Research*, 551 U.S. 128).

5

(emphasis added).  *Burlington Northern* did not change the availability of contribution under 113(f) or the relationship between 107(a) and 113(f).

As detailed below, NCR/API have admitted their "common liability" with GP and the other PRPs and they are subject to several government enforcement actions.  Thus, while they may have a divisibility defense for this Court to consider when determining whether they have joint and several liability for response costs at the LFR, the divisibility defense (even if meritorious) is not a magic bullet that erases their common liability for the LFR.

> **B. The Court Has Already Correctly Decided That NCR/API's Exclusive Remedy Against GP Or Any Other Party Is A Contribution Claim Under 113(f)**

NCR/API revived their concocted "divisibility theory" because:  (a) this Court has already decided that their exclusive remedy lies in 113(f); and (b) they lost those 113(f) claims.  The Court's prior rulings were correct.  The law has not changed, the facts have not changed.  And, the procedural posture of this new case does not give rise to a new right for NCR/API to bring CERCLA Section 107(a) claims.

> **1. The Court Correctly Decided the 107/113 Issue on Two Prior Occasions in *Whiting***

In *Whiting*, this Court ruled twice that NCR/API – as parties with common liability subject to multiple government enforcement actions – have an exclusive remedy under 113(f).  In its first ruling on the issue, the Court held:

> In cases where a claim for contribution can be asserted under § 113(f), § 107 cannot be used. . . . By its plain terms, § 113(f)(1) authorizes a contribution claim "during or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f)(2). [API and NCR] were first sued by the EPA in August of 2001, and so they have been free to assert such a claim since at least that time. . . . Thus, they have no need to resort to § 107(a).  Whatever amounts they are entitled to recover must be recovered under § 113(f).

*Appleton Papers Inc. v. George A. Whiting Paper Co.*, 572 F. Supp. 2d 1034, 1043-44 (E.D.

6

Wis. 2008).[4]  Then, in its second decision on the issue, the Court again explained:

> In my decision dismissing the § 107 claims, I found that because Plaintiffs Appleton Papers Inc. ("API") and NCR Corp. were able to sue other parties for contribution under CERCLA § 113(f), they were barred from bringing a claim under § 107. . . . The controlling principle comes from the Supreme Court's holding that "the remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action 'to persons in different procedural circumstances.'" *United States v. Atlantic Research Corp.*, 551 U.S. 128, 139, 127 S. Ct. 2331, 168 L.Ed.2d 28 (2007) (citation omitted). The relevant "procedural circumstances" are whether a party's incurred costs resulted from a government action under § 106 or 107.  If they did, the party must use § 113.

*Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-C-16, 2009 U.S. Dist. LEXIS 111648, at *7-8, 19 (E.D. Wis. Nov. 18, 2009).  Moreover, in this second ruling, the Court also rejected the same "divisibility theory" NCR/API trumps up now.  In addressing NCR/API's "divisibility theory", this Court stated:

> There are several problems with Plaintiffs' approach.  First, the question of divisibility and apportionment existed long before *Burlington Northern* was ever decided.  If that question were really so fundamental to a § 113 or § 107 claim, Plaintiffs could have raised it earlier, and in fact it is surprising that it has never been discussed in any of the countless § 113 and § 107 cases cited to this Court. (The exception being *Akzo,* where the Seventh Circuit was unimpressed).

*Id.* at *10-11 (footnote omitted).

This Court was right in both of its prior decisions.  In *Cooper Indus. v. Aviall Svcs., Inc.* the Supreme Court held that a private party who had not been the subject of a government-ordered cleanup action may not maintain a 113(f) contribution claim against other liable parties, leaving open the question of whether such a party has a right of action under 107(a).  543 U.S.

---

[4] The Court also rejected NCR/API's claim that some costs can only be recovered under Section 107(a):  "It thus follows that the question whether Plaintiffs have a claim under § 107(a) depends on whether any of the payments they seek to recover are recoverable under § 113(f).  If all of the payments they now seek to recover are recoverable under § 113(f), their § 107(a) claim should be dismissed.  If, on the other hand, some of their payments can not be recovered under § 113(f), then their § 107(a) claim survives.  Applying that principle here, ***I conclude that whatever payments made by Plaintiffs that exceeded their responsibility either are, or were, recoverable under § 113(f)***. Accordingly, their § 107(a) claim will be dismissed."  *Id.* at 1043 (emphasis added).

7

157, 160-61 (2004). In *Metro. Water Reclamation Dist. of Greater Chi. v. N. Am. Galvanizing & Coatings, Inc.* ("*Metropolitan Water*") the Seventh Circuit answered that question by concluding that a party that had not been the subject of any government order could seek recovery of voluntarily incurred cleanup costs under 107(a). 473 F.3d 824, 834-36 (7th Cir. 2007). However, in *Metropolitan Water*, the Seventh Circuit did not overturn its decision in *Akzo Coatings, Inc. v. Aigner Corp.*, where it found 113(f) to be the exclusive recovery remedy for parties who had incurred costs as a result of government enforcement actions under 106 or 107. 30 F.3d 761, 764 (7th Cir. 1994). Accordingly, the result in the Seventh Circuit – consistent with the overwhelming weight of authority – is that parties with 113(f) claims must proceed under 113(f) and may not assert 107(a) claims. The Supreme Court summarized this state of affairs in *Atlantic Research*: "For our purposes, it suffices to demonstrate that costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f)." 551 U.S. at 139, n.6.[5] This Court's *Whiting* decisions were correct and should, of course, be followed here. Given the breadth of NCR/API's prior settlements and the scope of this enforcement action – implementation of all remaining remedial actions in OUs 2-5 – there can be no question that all costs at issue are the subject of CERCLA 106 and 107 enforcement actions.

### 2. The Law Has Not Changed Since The Court's Rulings In *Whiting*

The law has not changed since this Court correctly found that NCR/API have an exclusive 113(f) remedy against other PRPs, like GP. Indeed, in every case cited by NCR/API – many of which have been recently decided – the courts are unanimous that a party that has been

---

[5] While in *Atlantic Research,* the Supreme Court suggested, without deciding the issue, that there might be some circumstance in which a party has both a 107(a) and a 113(f) claim, this case falls squarely within the jurisprudence and does not present different circumstances.

8

Case 1:10-cv-00910-WCG   Filed 02/24/11   Page 13 of 20   Document 110

the subject of a governmental enforcement action under CERCLA that gives rise to a 113(f) claim must proceed under 113(f). NCR/API's suggestion otherwise is disingenuous.

*Solutia, Inc. v. McWane, Inc*., 726 F. Supp. 2d 1316 (N.D. Ala. 2010) is illustrative. API Opp. at 17-18. API quotes at length from dicta that it claims "supports" its argument; however, the court's contrary holding is crystal clear:

> Upon reconsideration in light of the above authorities and a re-examination of the statutory language of 113, this court concludes that Congress intended § 113(f) contribution to serve as the exclusive remedy for a party to recoup its own costs incurred in performing a cleanup pursuant to a judgment, consent decree, or settlement that gives rise to contribution rights under § 113(f).

*Id*. at 1342. In fact, the *Solutia* Court examines ten cases that contradict API's assertion – including this Court's 2008 *Whiting* Decision – as well as several of the other cases cited in API's opposition. *See, e.g., Morrison Enter., LLC v. Dravo Corp.*, 2009 U.S. Dist. LEXIS 110414, *8 (D. Neb. Nov. 24, 2009) (unpublished) ("…a PRP can bring a claim under § 107(a) if it is foreclosed from bringing a claim under § 113(f), *but that, conversely, a PRP must proceed under § 113(f) if § 113(f) is available to it*.") (emphasis added); *ITT Industries, Inc. v. BorgWarner, Inc.,* 506 F.3d 452, 458 (6th Cir. 2007) ("To maintain the vitality of § 113(f), however, PRPs who have been subject to a civil action pursuant to §§ 106 or 107 or who have entered into a judicially or administratively approved settlement must seek contribution under § 113(f)").[6]

---

[6] NCR/API also cite several cases in which parties were allowed to proceed under 107(a) because – unlike NCR/API – the parties' costs had been incurred as a result of state administrative orders or voluntary cleanup actions that did not give rise to 113(f) claims. *See W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 90-91 (2d Cir. 2009) (plaintiff could bring § 107(a) claims based upon cleanup costs incurred pursuant to administrative settlement with state environmental agency that did not give rise to contribution rights under 113(f)(3)(B) because such agreement settled liability only under state law, not under CERCLA); *Ford Motor Co. v. Michigan Consol. Gas Co.,* 2009 U.S. Dist. LEXIS 89885, 2009 WL 3190418, at *6-8 (E.D. Mich. Sept. 29, 2009) (unpublished) (holding that state administrative order did not give rise to contribution rights under 113(f)(3)(B)); *Ashland v. Gar Electroforming*, 729 F. Supp. 2d 526, 543 (D.R.I. July 22, 2010) ("Since the Government did not sue Ashland (or any of the other

### 3. NCR/API Had Valid 113(f) Claims – The Facts Have Not Changed

The facts have also not changed since this Court's prior rulings. NCR/API clearly have common liability for the LFR PCB contamination and, as a result, had valid 113(f) claims. They have admitted as much by their actions and admissions in *Whiting*, and they have been subject to numerous government enforcement actions relating to their liability for the Site.

For example, in *Whiting* NCR/API made the following admissions of CERCLA liability:

- NCR/API admit that NCR owned and operated the Appleton Facility and the Combined Locks Facility until June 30, 1978. NCR/API further admit that API has owned and operated the Appleton Facility from approximately 1978 to the present, and the Combined Locks Facility from approximately 1978 to January 1, 2000. *See* No. 2:08-cv-00016, Dkt. #348, [Plaintiffs Appleton Papers Inc. And NCR Corporation's Answer To Defendants Georgia-Pacific Consumer Products LP, Fort James Corporation, And Georgia-Pacific, LLC's Counterclaim], 2, ¶ 6.

- NCR/API admit that the Appleton Facility discharged PCB-containing wastewater to the City of Appleton POTW, which discharged to the LFR. *See id.*, 4, ¶ 16.

- Therefore, API admits that it is the current owner of the Appleton Facility, from which there were historic PCB releases, and as such is a liable party pursuant to 107(a)(1) (current owner).

Importantly NCR/API could not have brought their 113(f) claims for contribution had they not had common liability with the *Whiting* defendants. It is not surprising then that in the *Whiting* pleadings NCR/API repeatedly characterized themselves as one of many responsible parties sharing a common liability and having an "allocable share." Examples include:

- ". . . API and NCR have been the leaders ***among the responsible parties***...." No. 2:08-CV-00016, Dkt. #265 [Seventh Amended Complaint], 2-3 (emphasis added).

---

defendants in this case) directly, Ashland faced no liability under Sections 106 or 107 and is, therefore, precluded from bringing a contribution claim under Section 113(f)"); *City of Waukegan v. Nat'l Gypsum Co.*, 2009 U.S. Dist. LEXIS 109413, at *23 (N.D. Ill. Nov. 20, 2009) (specifically distinguishing this court's ruling in *Whiting*, the court stated that: "[u]nlike in *Appleton Papers,* however, Waukegan alleges that the response costs for which it seeks recovery are not payments made pursuant to obligations under the consent decrees but rather are expenses that resulted from actions it took on its own beyond what the decrees required"). NCR/API did have 113(f) claims, which they asserted and lost in *Whiting*. Therefore, none of these cases are applicable here.

- "API and NCR have . . . worked with *yet another responsible party*…." *Id*. (emphasis added).

- "API and NCR have reimbursed the United States and the State of Wisconsin *for amounts greater than API/NCR's allocable share* of the Lower Fox River Costs and damages . . . have made other payments relating to Lower Fox River Costs and damages that are greater than *API/NCR's allocable share*…. Defendants are liable for those Lower Fox River Costs and damages paid by each of API and NCR that are in excess of *API/NCR's allocable share* and that are properly attributable to Defendants." *Id.* at 28. (emphasis added).

NCR/API cannot now, after their 113(f) claims failed, reverse themselves and argue that they do not have common liability for PCB contamination of the LFR.[7]

Moreover, NCR/API's exclusive 113(f) claim is supported by the fact that they have been subject to numerous CERCLA government actions regarding the LFR. In fact, the present judicial enforcement action is the *fourth* government action brought against NCR/API under 106 and/or 107. Prior actions asserting NCR/API's liability include:

- In August 2001, the United States and the State of Wisconsin filed suit against NCR/API under 106 and 107 and simultaneously lodged a Consent Decree containing the terms of a proposed partial settlement with the two companies. *United States and the State of Wisconsin v. Appleton Papers Inc. and NCR Corp.*, Case No. 01-c-0816 (E.D. Wis.) (Dkt. Nos. 1 (Complaint), 2 (Proposed Consent Decree), and 13 (Consent Decree, as entered by the Court on December 10, 2001)). Pursuant to that decree, NCR/API agreed to pay up to $41.5 million over a four-year period for restoration efforts. *Id.*, Dkt. #2.

- In April 2006, the United States and the State of Wisconsin filed an action against NCR and U.S. Paper Mills. Those PRPs entered into a Consent Decree with the Governments to undertake sediment removal work in an area of elevated PCBs below the DePere Dam. *United States and the State of Wisconsin v. NCR Corp. and Sonoco-U.S. Mills, Inc.*, 06-0484 (E.D. Wis.) (Dkt. Nos. 1 (Complaint), 2 (Proposed Consent Decree), 8 (Decision

---

[7] NCR/API should be estopped from arguing that they do not have common liability. *See United States v. Hook,* 195 F.3d 299, 306 (7th Cir. 1999) ("Although the doctrine [of estoppel] has no precise bounds, there are essentially three requirements for its application: (1) 'the later position must be clearly inconsistent with the earlier position;' (2) 'the facts at issue should be the same in both cases;' and (3) 'the party to be estopped must have convinced the first court to adopt its position.'") (citations omitted); *see also Schaut & Sons, Inc. v. Mountain Log Homes, Inc.,* 2004 WL 1468538, at *6 (E.D. Wisc. May 12, 2004) (Greisbach, J.) (estopping plaintiff's attempted "sleight of hand" in taking inconsistent positions in prior litigation.").

11

and Order Approving Consent Decree)); *See also* Ferguson Decl., Ex 2 [2007 NCR 10-K] at 76.

- In November 2007, the EPA issued a unilateral administrative order under 106 directing NCR/API and six other PRPs to begin implementing the remedial work in OUs 2-5. *See* Administrative Order for Remedial Action, U.S. EPA Docket No. V-W-'08-C-885, available at: http://www.epa.gov/Region5/sites/foxriver/pdf/fox-river-uao-20071113.pdf.

The law is clear that parties – like NCR/API – who have been subject to a prior governmental enforcement action under 106 or 107 are entitled exclusively to a 113(f) contribution claim. Indeed, in *Metropolitan Water* the procedural circumstance the Seventh Circuit used to distinguish *Akzo* was that the plaintiff in *Akzo* had been the subject of a 106 order, and was therefore entitled to contribution under 113(f). In contrast, there had been no EPA order against the plaintiff in *Metropolitan Water*, and the plaintiff was therefore entitled to cost recovery under 107(a). *Metropolitan Water*, 473 F.3d at 836. In *Atlantic Research* the Supreme Court made a similar distinction, quoting the Eighth Circuit's holding that PRPs that "have been subject to §§ 106 or 107 enforcement actions are still required to use § 113." 551 U.S. at 134. The Court stated that:

> the remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action to persons in different procedural circumstances. Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a).

551 U.S. at 139 (citations and quotations omitted). Clearly, it is the availability of a claim under 113(f) that determines whether a PRP can seek relief under 107(a). NCR/API had such a claim and are therefore unable to assert a 107(a) claim now.

### 4. The Procedural Posture Of This Case Does Not Change NCR/API's Legal Rights

The underlying premise of NCR/API's opposition is that because they are a defendant in this case – and able to assert defenses including the divisibility defense – they are somehow entitled to another bite at a 107(a) claim. NCR/API are wrong. First, as set forth above, their

12

"divisibility theory" is fundamentally flawed. Second, the new lawsuit does not wipe out this Court's prior correct decisions. There are no "special factors" (as API contends) warranting their duplicative claim to proceed. API Opp. at 26; *Serlin v. Arthur Anderson & Co.*, 3 F.3d 221 (7th Cir. 1993).[8]

Whether as plaintiffs in *Whiting* or defendants here, NCR/API have an exclusive 113(f) claim because:

- This is the same river.
- This is the same clean-up.
- These are the same clean-up actions.
- These are the same response costs.
- NCR/API have admitted to common liability.
- NCR/API have sued other PRPs on the premise of common liability.
- NCR/API have been subject to numerous CERCLA enforcement actions.

The procedural posture that counts is whether NCR/API, as liable parties, have been subject to prior Governmental enforcement actions under CERCLA. That condition existed before *Whiting* and it certainly continues to exist with the filing of this case.

The bottom line is that the procedural posture of this case makes no difference to the fate of NCR/API's 107(a) claims.[9] As a result, as detailed in GP's Motion to Dismiss, this

---

[8] NCR argues that the Court should only dismiss its claim if it is found to be "frivolous," citing *Henan Machinery & Elec. Import & Export Co., Ltd. V. WDF Intern Trading Co*., LLC, 2007 WL 5601486 (W.D. Wisc. May 29, 2007). In *Henan*, the court decided not to transfer a case involving claims that were similar to (but not the same as) claims being litigated between the parties in another venue because resolution of the other case appeared to be stalled. *Henan* is not on point.

[9] NCR/API cannot support their argument with a single case holding that the filing of a 107(a) enforcement action gives automatic rise to a 107(a) cross- or counter-claim by the defendants in that action. NCR/API's incorrect legal argument is flatly contradicted by existing law. Indeed, even if NCR/API had not *already* been subject to governmental enforcement actions and had not previously asserted (and lost) their own 113(f) claims, the very filing of this action would give rise to 113(f) claims on their part and thus preclude the filing of a 107(a) cross-claim against GP.

Court can and should exercise its inherent power to dismiss NCR/API's 107(a) claims because they are duplicative of claims that NCR/API asserted and lost in *Whiting*. *See* GP Mot. at 6-8 (citing case law on the Court's inherent powers). NCR/API twice asserted – and lost – their 107(a) claims in *Whiting*, which is a pending action in this Court involving the same claim and the same parties. There is no reason to re-litigate that issue here.

### C. The NCR/API Cross-claims Are Barred by *Res Judicata*

NCR/API's 107(a) cross-claims are barred by *res judicata* because they involve the same parties (NCR, API and GP), the same claims (Section 107), and the Court's 2009 decision in *Whiting* can be considered final for the purposes of this Motion. *See* GP Mot. at 8-9. NCR/API have not offered any valid reason why *res judicata* should not apply.

NCR/API argue that there is no "identity of the causes of action" because of "critical procedural differences" between this case and *Whiting*. NCR Opp. at 13; API Opp. at 23-24. However, there need only be a "common core of operative facts" for the court to find that two causes of action are identical. *Spiegel v. Continental Illinois Nat'l Bank*, 790 F.2d 638, 645 (7th Cir. 1986) ("If the same facts are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between the allegedly different causes of action asserted, and res judicata bars the later") (citation omitted). Here, the facts are identical.

NCR/API argue that *res judicata* cannot extinguish claims that could not have been asserted in the previous case, either because there was a procedural bar against asserting those claims or the Court did not have the power to consider them. NCR Opp. at 13; API Opp. at 23-24. Yet, NCR/API *did* have the opportunity to assert their 107 claims (twice) in *Whiting*, and they did so on the exact same bases of liability and divisibility. *See* GP Mot. at 3-4. Moreover, in all of the cases cited by NCR/API, courts held that subsequent claims were not barred because

14

either new facts had arisen since the first case or unique procedural rules relating to a specific proceeding acted to preserve subsequent claims.[10]  None of these cases are applicable here.

Lastly, NCR/API argue that the Court's 2009 *Whiting* Decision was not a final judgment on the merits and courts strictly construe this finality requirement where a party would be prejudiced.  NCR Opp. at 14; API Opp. at 24-25.  As explained in *Alexander v. Chicago Park District*, 773 F.2d 850, 855 (7th Cir. 1985), the important factors to consider with regards to finality are the nature of the decision, the adequacy of the hearing, and the opportunity for review – all of which favor application of *res judicata* here.  *See* GP Mot. at 8-9, fn. 6.  NCR/API have themselves argued that the Court's 2009 *Whiting* Decision should be considered final, GP Mot. at 8-9, and would not be prejudiced by the Court's application of *res judicata* here.

## III. CONCLUSION

For all of these reasons, GP respectfully requests that the Court grant its motion and dismiss NCR/API's 107(a) cross-claims with prejudice.

Dated:  February 24, 2011                                    Respectfully submitted,

                                                             GEORGIA-PACIFIC
                                                              CONSUMER PRODUCTS LP

                                                             By    */s/ Karl S. Lytz*
                                                                    Karl S. Lytz

---

[10]  *See, e.g., Baker Group, L.C. v. Burlington Northern and Santa Fe Railway Co.*, 228 F.3d 883, 885 (8th Cir. 2000) ("claim preclusion does not bar breach-of-contract claims that arose after the first action was filed"); *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) (the "conduct presently complained of was all subsequent to the [earlier] judgment" and "new antitrust violations" had arisen since the earlier claim); *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986) (federal civil rights claim not barred by earlier, unique New York state law proceeding); *Campbell v. Illinois Dept. of Corrections*, 907 F. Supp. 276, 278 (N.D. Ill. 1995) (plaintiff's suit under 42 U.S.C. § 1983 not barred despite earlier habeas corpus action); *Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994) (plaintiff's claims under the federal civil rights statute not barred because he could not have recovered specific damages in an earlier state habeas corpus proceeding); *Fayumi v. City of Hickory Hills*, 18 F. Supp.2d 909, 918 (N.D. Ill. 1998) (concerning specific restrictive rules of evidence in forcible entry and detainer proceedings).