IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF WISCONSIN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 1:10-cv-00910-WCG ) |
| NCR CORPORATION, *et al.*, | ) ) ) |
| Defendants. | ) |

# MEMORANDUM OF CERTAIN RESPONDING DEFENDANTS IN OPPOSITION TO PLAINTIFFS' JOINT MOTION TO STRIKE OR DISMISS ALL COUNTERCLAIMS AND CROSS-CLAIMS

Responding Defendants,[1] among other defendants, filed compulsory[2] counterclaims in this action. Plaintiffs United States of America (the "United States") and State of Wisconsin (the "State") have filed a Joint Motion to Dismiss or to Strike All Counterclaims and Cross-Claims (the "Motion"), suggesting the court allow leave to refile those counterclaims in *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 2:08-cv-16-WCG (E.D. Wis.) ("*Whiting*"). Plaintiffs' Motion fails for several reasons. First and foremost, there is no basis in Federal Rule of Civil Procedure 12 to dismiss Responding Defendants' counterclaims, and, other than citing the Rule, the United States and the State do not really assert any bases.[3] Therefore, among other things, Plaintiffs are not relieved of the obligation to answer these counterclaims under Rule 12(a)(4).

Second, Plaintiffs' Motion suggests that certain claims brought properly in this case might be more efficiently addressed in *Whiting*. That is a case management question under Rule 42, not a basis to strike or dismiss Responding Defendants' claims. *See* Fed. R. Civ. P. 42. Additionally, Plaintiffs are not correct; Responding Defendants' counterclaims are most efficiently addressed in this case, as explained below. Furthermore, Plaintiffs have made this suggestion prematurely. The parties have not had an opportunity to confer under Rule 26(f), and,

---

[1] This brief is filed on behalf of the following defendants: CBC Coating, Inc., Neenah-Menasha Sewerage Commission, P.H. Glatfelter Company ("Glatfelter"), U.S. Paper Mills Corporation, and WTM I Company ("Responding Defendants").

[2] CBC takes no position on whether these counterclaims are permissive or compulsory.

[3] Plaintiffs do assert a proper motion to dismiss for failure to state a claim upon which relief may be granted in response to the counterclaims asserted by some defendants under section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607 (2010). *U.S. v. NCR,* Dkt. No. 106 at 3-4. Responding Defendants did not file such a claim. *U.S. v. NCR,* Dkt. Nos. 57, 58, 60, 51, 62. Only NCR Corporation ("NCR") and Appleton Papers Inc. ("Appleton Papers") did. *U.S. v. NCR,* Dkt. No. 65 at 45-48, Dkt. No. 82 at 56-60.

in preparing to do so, Responding Defendants have been deprived of the benefit of the United States' and the State's answers to the counterclaims.

In addition, Plaintiffs' Motion also suggests that counterclaims might be barred because the United States has at least provisionally settled with itself. *U.S. v. NCR,* Dkt. Nos. 31 and 31-1 (proposed consent decree, lodged Dec. 1, 2010). Again, Plaintiffs' Motion is premature. The United States has not moved to enter that proposed consent decree. Responding Defendants, and to their knowledge every other defendant, have submitted adverse comments to the Department of Justice on the terms of that consent decree. Should the Department of Justice persist in pursuing a settlement with itself, its motion for approval of that self-settlement is likely to be contested, and cannot form the basis for a ruling on this motion. In addition, the failure of either Plaintiff to answer the counterclaims has impaired Responding Defendants' ability to comment upon the proposed settlement and would unfairly handicap Responding Defendants' ability to respond to a motion to enter the self-settlement, should the United States ever make that motion, which it should not.

As explained more completely below, for these reasons, Plaintiffs' Motion should be denied without prejudice. Plaintiffs should be permitted to reassert any issues of coordinated management of this case and *Whiting* in connection with a case management conference pursuant to Rule 16 or in a separate motion under Rule 42. However, because Plaintiffs have sought to obtain unfair tactical advantage by improperly failing to answer Responding Defendants' counterclaims, Plaintiffs should not be permitted to make any motions to sever or to consolidate until they have answered those counterclaims. Moreover, the United States should

not be permitted to move to enter its proposed settlement with itself until it has (a) answered Responding Defendants' counterclaims and (b) provided a reasonable time for Responding Defendants and others to submit supplemental comments on the proposed consent decree.

1. **Background**

Glatfelter discharged wastewater from the 1950s until the early 1970s to the upstream end of Little Lake Butte des Morts ("LLBdM" or "Operable Unit 1" "OU1") from a recycling paper mill in Neenah, Wisconsin. During that timeframe, WTM I Company ("WTM") operated a recycling paper mill in Menasha, Wisconsin that discharged its wastewater to the Neenah-Menasha Sewerage Commission's system, which in turn discharged into OU1. Under a consent decree, Glatfelter and WTM have cleaned up OU1 with some contribution from others. *See United States v. P.H. Glatfelter Co.*, No. 2:03-cv-949-LA (E.D. Wis.). U.S. Paper Mills Corporation operated a recycling paper mill downstream of the DePere Dam and has contributed to the funding of the cleanup of a portion of Operable Unit 4 under a consent decree. CBC's predecessor, Riverside Paper, operated a paper production facility on the Fox River in Appleton, Wisconsin. Neenah-Menasha Sewerage Commission operated its POTW from the 1930's through the present, and received discharges from some defendants in this case and in *Whiting*.

In 2008, NCR and Appleton Papers filed a lawsuit against Responding Defendants – the *Whiting* litigation – claiming that Responding Defendants ought to contribute to cleaning up the river downstream of LLBdM ("Operable Units 2 through 5" or "OU2-5"). This Court held in 2009 in *Whiting* that neither NCR nor Appleton Papers could recover any

amounts from Responding Defendants for cleaning up the river. *Whiting,* Dkt. No. 795 (Dec. 16, 2009). In 2011, this Court held in *Whiting* that Responding Defendants are entitled to 100 percent contribution from NCR and Appleton Papers for any response costs that they may become obligated to pay for OU2-5. *Whiting*, Dkt. No. 1080 (Mar. 1, 2011).

Nonetheless, in this case, the United States and the State sued Responding Defendants for costs and natural resource damages ("NRDs") incurred and to be incurred in OU2-5, as well as for a declaration that Responding Defendants are responsible to implement a unilateral administrative order ("UAO") issued in November 2007 for the clean up in OU2-5. Responding Defendants filed counterclaims against the United States and the State; Responding Defendants allege in its counterclaims that various state and federal agencies are responsible parties for this site, and seeking an allocation to the United States and the State of any costs or damages for which other parties might become obligated to pay. *U.S. v. NCR*, Dkt. Nos. 51, 57, 58, 60, 62.

All of these claims and counterclaims are somewhat academic. This Court has already ruled that as between Responding Defendants on the one hand and NCR and Appleton Papers on the other, NCR and Appleton Papers are responsible for 100 percent of the future costs associated with OU2-5 that any Responding Defendants are required to incur. *Whiting*, Dkt. No. 1080 (Mar. 1, 2011). Nevertheless, if the United States and the State believe that they have current claims against Responding Defendants, then Responding Defendants have current counterclaims against the United States and the State. Indeed, Federal Rule of Civil Procedure 13(a), the compulsory counterclaim rule, *requires* that Responding Defendants' claims be

asserted now. Accordingly, Responding Defendants have filed claims against Plaintiffs and deserve a proper response to those claims.

### 2. Rule 12 Provides No Basis For Dismissing Responding Defendants' Counterclaims.

#### a. Plaintiffs do not make a proper motion under Rule 12(b).

Federal Rule of Civil Procedure 12(b) provides seven specific grounds to dismiss a claim: (1) lack of subject matter jurisdiction, (2) lack of personal jurisdiction, (3) improper venue, (4) insufficient process, (5) insufficient service of process, (6) failure to state a claim upon which relief may be granted, and (7) failure to join an indispensible party. Responding Defendants have asserted compulsory counterclaims. *U.S. v. NCR,* Dkt. No. Nos. 51, 57, 58, 60, 62. Accordingly, there can be no lack of subject matter or personal jurisdiction, improper venue, insufficient process, or insufficient service under Rule 12. Plaintiffs do not suggest that Responding Defendants have failed to join an indispensible party, so Rule 12(b)(7) is not asserted.

That leaves failure to state a claim under Rule 12(b)(6), and it is not possible that Plaintiffs are suggesting Responding Defendants' counterclaims fail to state a claim upon which relief may be granted because Plaintiffs suggest in the Motion that Responding Defendants should be granted leave to refile those very claims in *Whiting*. If Responding Defendants had failed to state a claim, refiling the counterclaims would be futile, and Plaintiffs would surely say so. Plaintiffs cannot be asserting Rule 12(b)(6). Thus, no part of Rule 12 bears on Plaintiffs' Motion.

- 5 -
PHI 316,543,308v11
Case 1:10-cv-00910-WCG   Filed 03/14/11   Page 6 of 17   Document 114

Even if Plaintiffs had a ground for moving to dismiss Responding Defendants' counterclaims under Rule 12(b)(6), they have waived it for purposes of this Motion by failing to explain those grounds. Plaintiffs are qualified to make a conventional Rule 12(b)(6) motion; they make one with respect to the claims for cost recovery under section 107 of CERCLA, 42 U.S.C. § 9607, asserted by NCR and Appleton Papers in the very Motion Responding Defendants oppose here.[4] *U.S. v. NCR,* Dkt. No. 106 at 3-4. Plaintiffs do not explain any basis for a Rule 12(b)(6) motion against Responding Defendants' counterclaims. *U.S. v. NCR,* Dkt. Nos. 106 and 107.

Plaintiffs' sole argument in their motion appears to be that allocation counterclaims would be more conveniently or efficiently managed in *Whiting*. That argument is not a ground for dismissing the claims under Rule 12(b). It may be a ground for an order under Rule 42, but that order could not involve dismissal, and it is not timely or properly presented here. Therefore, Plaintiffs' motion should be denied and Plaintiffs should be required to answer Responding Defendants' counterclaims.

### b. Rule 12(f) does not apply here.

Plaintiffs also cite Rule 12(f), which permits the Court to "strike from any pleading an insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter . . . ." Fed. R. Civ. P. 12(f). Counterclaims are not defenses, and therefore Rule 12(f) does not permit counterclaims to be stricken for insufficiency; the proper rule for that purpose is Rule 12(b)(6), and not Rule 12(f). *See* 5 CHARLES ALAN WRIGHT & ARTHUR MILLER, FED. PRAC. &

---

[4] Responding Defendants do not assert a section 107 claim in their counterclaims. *U.S. v. NCR,* Dkt. Nos. 57, 58, 60, 51, 62.

PROC. CIV. § 1380 (3d ed.). Plaintiffs point to nothing in Responding Defendants' pleadings that is redundant, immaterial, impertinent, or scandalous. Moreover, if an allegation were redundant, immaterial, impertinent, or scandalous, Rule 12(f) merely authorizes the Court to strike that allegation, not to dismiss the claim. *See* Fed. R. Civ. P. 12(f). Accordingly, Plaintiffs seem to have simply cited Rule 12(f) in error.

### 3. Rule 8(c) Does Not Apply.

In addition to citing Rule 12(b) and Rule 12(f), Plaintiffs cite toRule 8(c). Rule 8(c) has two parts. First, Rule 8(c)(1) requires affirmative pleading of affirmative defenses. *See* Fed. R. Civ. P. 8(c)(1). Plaintiffs have directed their motion to Responding Defendants' counterclaims and not their affirmative defenses. Therefore, Rule 8(c)(1) does not apply.

Next, Rule 8(c)(2) allows the Court to treat affirmative defenses as counterclaims and counterclaims as affirmative defenses if they have been pleaded incorrectly. *See* Fed. R. Civ. P. 8(c)(2). This rule intends to relieve defendants of a harsh result if they designate a defense or a counterclaim incorrectly. *See* 5 WRIGHT & MILLER at § 1275. Rule 8(c)(2) offers no basis to *dismiss* a counterclaim. At most, the rule offers authority to convert a counterclaim into an affirmative defense. However, again, Plaintiffs do not offer any clue as to which of Responding Defendants' counterclaims ought properly be treated as an affirmative defense and not a counterclaim.

Finally, the Court should note that even had Plaintiffs filed a proper motion under Rule 8(c), which they have not, that motion would not excuse them from answering the

counterclaims. Only a Rule 12 motion extends the time to answer. *See* Fed. R. Civ. P. 12(a)(4). Accordingly, the Court and Responding Defendants ought properly have not only an explanation of which counterclaims the Plaintiffs contend to have been mischaracterized under Rule 8(c), but they ought to have the benefit of an answer to those counterclaims in evaluating any Rule 8(c) motion. Since Plaintiffs have not met their obligations under Rule 8(c), the Motion should be denied.

### 4. Invocation Of Rules 21 And 42 Is Not Proper At This Time.

The United States and the State argue that Rule 21 and Rule 42 authorize the relief they seek. Plaintiffs are incorrect. Rule 21 permits the Court to "sever any claim against a party." Fed. R. Civ. P. 21. Severing is not "dismissing," and so Rule 21 does not authorize the relief that the Plaintiffs seek.

Rule 42 permits the Court to consolidate civil actions for hearing or trial and to order separate hearings or trials of issues within a single action. *See* Fed. R. Civ. P. 42. Plaintiffs seem to suggest that *Whiting* and the current action both address "common question[s] of law or fact" within the meaning of Rule 42(a), and the Court and the parties should manage the two cases together. Responding Defendants agree. Anything different would deny the obvious and create absurd inefficiencies.

Plaintiffs also seem to suggest that some claims, defenses, or issues in this case should be addressed separately from others. Moreover, some may turn out to overlap claims,

- 8 -

defenses, or issues in *Whiting*, and should be prepared or tried together. Responding Defendants agree, and this Court's case management orders in *Whiting* have adopted that view.

While those propositions are not disputed, at least by Responding Defendants, they do not support dismissal of Responding Defendants' counterclaims. If Responding Defendants has asserted counterclaims presenting issues best tried in conjunction with remaining issues in *Whiting*, then the issues should be tried together. But that does not mean that any claims in either case should be *dismissed*. The management of the two cases should simply be taken up jointly in the ordinary course.

Moreover, the grounds asserted by Plaintiffs for deflecting Responding Defendants' counterclaims into *Whiting* are not correct. Responding Defendants' counterclaims parallel their defenses in *US v. NCR,* not their claims in *Whiting*. The only claims Responding Defendants assert in *Whiting* are against NCR and Appleton Papers. *Whiting*, Dkt. No. 244, 283, 293, 298, 327. The remaining issues to be resolved in *Whiting* involve whether NCR and Appleton Papers "arranged" for disposal of their broke by recycling at paper mills discharging to LLBdM and how insurance recoveries ought to be taken into account as an equitable factor. *Whiting*, Dkt. No. 1080 (March 1, 2011). Perhaps some issues of "arranging" overlap with the claims against NCR and Appleton Papers and the claims against the United States and the State, but the entities and individuals whose intentions and knowledge matter are entirely different. On the other hand, in this case, by way of example:

- Glatfelter contends that the United States may not enforce the Environmental Protection Agency's UAO because the United States Environmental Protection

- 9 -

PHI 316,543,308v11

Case 1:10-cv-00910-WCG    Filed 03/14/11    Page 10 of 17    Document 114

Agency ("EPA") is itself a responsible party for this site and may not use the administrative process under section 106(a) of CERCLA, 42 U.S.C. § 9606(a), to assign allocable shares to *other* responsible parties without judicial supervision; it is being a judge in one's own case. *U.S. v. NCR*, Dkt. No. 60 at 21-25. That defense heavily overlaps a counterclaim against the United States.

- Plaintiffs contend that PCBs released in LLBdM render Glatfelter responsible for OU2-5. *U.S. v. NCR*, Dkt. No. 30 at 22-23. Glatfelter denies that allegation. *U.S. v. NCR*, Dkt. No. 60 at 9-10. The United States Army Corps of Engineers (the "Corps") transmitted all of the PCBs that left LLBdM by operating the dams at Appleton. *U.S. v. NCR*, Dkt. No. 60 at 21-25. Thus, Glatfelter's counterclaim exactly overlaps Plaintiffs' affirmative claim and Glatfelter's defense.

- Similarly, substantially all of the PCBs released in LLBdM settled on the bed of LLBdM prior to moving down stream. *Id.* at 25-26. The State is the owner of the bed of LLBdM. *Id.* at 24. Therefore, Glatfelter's counterclaim heavily overlaps Plaintiffs' claim and Glatfelter's defense.

- Plaintiffs contend that discharges of PCBs by defendants are responsible for the remedy being implemented. *U.S. v. NCR*, Dkt. No. 30 at 22-23. Glatfelter contends that dredging activities by the Corps in OU4 caused the distribution of PCBs in OU4 and many of the costs of the remedy. *U.S. v. NCR*, Dkt. No. 60 at 21-25. Moreover, the movement of PCBs by the Corps from OU4 to Green Bay caused the natural

resource damages that Plaintiffs' seek. *Id.* Therefore, Plaintiffs' affirmative claims heavily overlap Glatfelter's counterclaims and defenses.

Plaintiffs claim an interference of the counterclaims with their "enforcement action." *U.S. v. NCR*, Dkt. No. 107. Plaintiffs have not sought an order requiring Responding Defendants' to ***do*** anything, other than to pay money. *U.S. v. NCR*, Dkt. No. 30. There is no claim in this case for a mandatory injunction to implement any portion of the remedy at this site. *Id.* For so long as ***either*** NCR or Appleton Papers has assets, the governments' claims against Responding Defendants just seek to use Responding Defendants as a collection agent. The United States' Fifth Claim for Relief in its Complaint does seek a declaratory judgment of liability to implement the UAO, but that is all – a declaration.[5] *Id.* at 30. This is not a conventional enforcement case. To the extent the United States' "enforcement" claims ought properly be considered on a different track, Rule 42 provides the vehicle to achieve that end, not Rule 12.

The "pending consent decree" in this action also fails to provide a basis for this motion. There is no consent decree "pending." No one has moved to enter a consent decree. The United States and two municipalities together decided what "share" to assign themselves of the costs and damages at this site on account of the Corps' dredging activity. *U.S. v. NCR*, Dkt. No. 31-1. They then engaged in a negotiation among themselves as to how to divide that share.

---

[5] The State may not sue under section 106 of CERCLA. *See Colorado v. Idarado Mining*, 916 F.2d 1486 (1991), *cert. denied*, 499 U.S. 960 (1990).

The total share assigned for clean up (as opposed to natural resource damages) is ***zero*,**[6] so that was not a particularly heated negotiation, one suspects. The three parties and the State then reduced this agreement to writing and lodged it in this action. *U.S. v. NCR*, Dkt. No. 31. The Department of Justice has taken comments on it. Responding Defendants are aware of adverse comments on that proposed consent decree by most of the defendants. There is no pending motion to enter that consent decree, nor should there ever be. If there were such a motion, and if the Court were to grant it – which it should not – then and only then would a motion to dismiss Responding Defendants' counterclaims be appropriate. That motion is premature.

The State's Motion on this ground is baffling. The State has not negotiated a settlement, not even with itself. It has not lodged a proposed consent decree. The United States' self-settlement has nothing to do with the State, and the State therefore has no basis to move on those grounds.

### 5. Plaintiffs Should Answer.

Federal Rules of Civil Procedure 26(f) and 16 afford the appropriate opportunity for parties, and then the Court, to address Plaintiffs' case management suggestions. Similarly, a motion to enter the self-settlement consent decree affords the appropriate juncture to address the implications of a settlement on other claims. In either case, an answer to the counterclaims

---

[6] The consent decree lodged in this action would call upon the Settling Federal Agencies -- that is, the United States -- to deposit $3,755,000 into a fund for natural resource damage and assessment recoveries and to pay $745,000 to the Wisconsin Department of Natural Resources. *US v. NCR,* Dkt No. 31-1, ¶ 7. None of the recovery from the United States would be paid toward the cleanup in OU2-5. The two municipalities would, together, pay $700,000, of which $105,000 would be deposited in an EPA fund to cover oversight and other costs of the United States and $595,000 would go to the natural resource damage and assessment recovery account. *Id.* ¶¶ 5, 6. None of the recovery from the municipalities would go toward the ongoing cleanup.

would greatly facilitate the process. The parties and the Court should know whether the United States and the State contest the factual allegations of the counterclaims, or merely their implications. The parties and the Court should know which issues the parties believe will require discovery and trial before the Court makes any case management rulings.

Similarly, the Department of Justice should have the benefit of its clients' positions on the allegations of the counterclaims before deciding whether it can proceed on its self-settlement. In making that evaluation, it should review any supplemented comments by interested persons. The Court is entitled to an answer to the counterclaims, the supplemental comments, and the governments' response to those comments before ruling on any motion for entry of the consent decree.

The United States and the State should not benefit from their failure to answer Responding Defendants' counterclaims. Before complicated case management and scheduling issues are attempted under Rule 26(f) and Rule 16, the Court and the parties are entitled to an answer. The failure to answer provides the governments with an unfair advantage. They brought this case. They decided to sue Responding Defendants, not just NCR and Appleton Papers. They should be obligated to abide by the rules and, as such, their motion should be denied.

### 6. Conclusion

For the foregoing reasons and in the separate memoranda of the City of Appleton and Menasha Corporation, Responding Defendants respectfully submit that Plaintiffs' Joint

Motion to Dismiss or to Strike All Counterclaims should be denied as to Responding Defendants' counterclaims. Plaintiffs should be directed to answer Responding Defendants' counterclaims within fourteen days of the Court's order. *See* Fed. R. Civ. P. 12(a)(4). Until Plaintiffs have both answered, they should be barred from making any further contested motion under Rules 21 or 42. Upon answering, the United States should afford interested persons a reasonable opportunity to submit supplemental comments on the United States' proposed settlement with itself, and should not be permitted to move for entry of that proposed consent decree until the Department of Justice has received and responded to those comments.

Dated: March 14, 2011

Respectfully submitted,

| | |
|---|---|
| s/ William H. Harbeck | s/ David G. Mandelbaum |
| William H. Harbeck (Wis. Bar No. 1007004) | Marc E. Davies |
| Peter C. Karegeannes (Wis. Bar No. 1015025) | Monique M. Mooney |
| Nancy K. Peterson (Wis. Bar No. 1000197) | Sabrina Mizrachi |
| Quarles & Brady LLP | Caleb J. Holmes |
| 411 E. Wisconsin Avenue | GREENBERG TAURIG, LLP |
| Milwaukee, WI 53202 | Two Commerce Square, Suite 2700 |
| Telephone: 414-277-5000 | 2001 Market Street |
| whh@quarles.com | Philadelphia, PA 19103 |
| | 215.988.7800 |
| **Attorneys for Defendant WTM I Company** | mandelbaumd@gtlaw.com |
| | **Attorneys for Defendant P.H. Glatfelter Company** |

s/ Susan E. Lovern
Susan E. Lovern (#1025632)
Michael P. Carlton (#1016037)
Thomas Armstrong (#1016529)
Kelly J. Noyes (#1064809)
von Briesen & Roper, s.c.
411 East Wisconsin Avenue, Suite 700
Milwaukee, WI 53202
Telephone: (414) 276-1122
Fax: (414) 276-6281
slovern@vonbriesen.com
mcarlton@vonbriesen.com
tarmstro@vonbriesen.com
knoyes@vonbriesen.com

**Attorneys for Defendant CBC Coating, Inc.**

s/ Scott W. Hansen
Scott W. Hansen
Steven P. Bogart
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
P.O. Box. 2965
Milwaukee, WI 53202
Telephone: 414-298-1000
Facsimile: 414-298-8097
sbogart@reinhartlaw.com
shansen@reinhartlaw.com

Thomas R. Gottshall
Stephen F. McKinney
Haynsworth Sinkler Boyd PA
1201 Main Street, Suite 2200
P.O. Box 11889
Columbia, SC 29211-1889
Telephone: 803-779-3080
Facsimile: 803-765-1243
tgottshall@hsblawfirm.com
smckinney@hsblawfirm.com

**Attorneys for Defendant U.S. Paper Mills Corp.**

s/William J. Mulligan
William J. Mulligan (WI Bar No. 1008465)
Kevin J. Lyons (WI Bar No. 1013826)
Elizabeth K. Miles (WI Bar No. 1064284)
Davis & Kuelthau, s.c.
111 E. Kilbourn Avenue, Suite 1400
Milwaukee, WI 53202
Telephone: (414) 276-0200
Facsimile: (414) 276-9369
Email: wmulligan@dkattorneys.com
klyons@dkattorneys.com
emiles@dkattorneys.com

**Attorneys for Defendant Neenah Menasha Sewerage Commission**

- 15 -

*PHI 316,543,308v11*

Case 1:10-cv-00910-WCG   Filed 03/14/11   Page 16 of 17   Document 114

# CERTIFICATE OF SERVICE

I hereby certify that, on this 14th day of March 2011, a true and correct copy of the foregoing was filed electronically via the Electronic Court Filing system and is available for viewing and downloading. In addition, a true and correct copy was served via first-class mail upon the following:

>Cynthia R Hirsch
>Wisconsin Department of Justice
>Office of the Attorney General
>17 W Main St
>PO Box 7857
>Madison, WI 53707-7857
>
>Randall M. Stone
>U.S. Department of Justice
>Environment & Natural Resources Division
>P.O. Box 7611
>Washington, DC  20044

>/s/ David G. Mandelbaum
>David G. Mandelbaum
>
>Greenberg Traurig LLP
>2700 Two Commerce Square
>2001 Market Street
>Philadelphia, PA 19103
>Telephone: (215) 988-7800
>Facsimile: (215) 988-7801
>mandelbaumd@gtlaw.com