IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

UNITED STATES OF AMERICA and
THE STATE OF WISCONSIN,

        Plaintiffs,

    v.                                          No. 10-CV-910-WCG

NCR CORPORATION, *et al.*,

        Defendants.

---

**MEMORANDUM OF DEFENDANT APPLETON PAPERS INC. IN OPPOSITION TO PLAINTIFFS' JOINT MOTION TO STRIKE OR DISMISS COUNTERCLAIMS AND CROSSCLAIMS**

---

Defendant Appleton Papers Inc. ("API"), by its undersigned attorneys, respectfully submits this Memorandum in opposition to the Plaintiffs' Joint Motion to Strike or Dismiss Counterclaims and Crossclaims ("Joint Motion").

**INTRODUCTION AND SUMMARY OF ARGUMENT**

In their Joint Motion, the United States of America ("United States") and the State of Wisconsin ("State") (collectively, "Plaintiffs") ask the Court to dismiss and/or strike all of the counterclaims asserted against them in this action. The Joint Motion should be denied because Plaintiffs are not entitled to the requested relief.

First, Plaintiffs' contention that API's counterclaims and crossclaims under CERCLA § 107 are barred by rulings the Court rendered in the *Whiting* action is simply wrong. Plaintiffs make the same argument that Defendant Georgia Pacific Consumer Products LP ("GP") has advanced in support of its pending motion to dismiss the § 107 crossclaim that API has asserted against it.[1] However, for the reasons stated in API's

---

[1] *NCR*, Dkt. #83, 84. For ease of reference, citations in this brief to "*NCR*, Dkt. #__" refer to filings in the above-captioned action (Case No. 10-C-910). "*Whiting*, Dkt. #__" refers to filings in *Appleton Papers Inc. v. George A Whiting Paper Co.*, Case No. 08-C-16 ("*Whiting*").

- 1 -

Memorandum in opposition to GP's motion (*NCR*, Dkt. #96) ("API's GP Brief"), and incorporated herein by reference, that argument is without merit.  The Court declined to allow assertion of § 107 claims in *Whiting* because it ruled that:

>   (1)   EPA's issuance of the 106 Order provided a basis for common liability sufficient to support a § 113(f) contribution claim, and that the availability of that claim made assertion of a § 107 claim unnecessary; and
>
>   (2)   Issues regarding API's actual liability to the United States and whether any such liability was divisible were not properly before the Court in that contribution action.

The procedural posture of this enforcement action is materially different, because here API's actual liability to the Government under CERCLA and whether any liability is divisible are directly at issue.  A ruling in API's favor on either issue will eliminate common liability and thereby preclude recovery under § 113(f).  As this Court noted in *Whiting*, a non-liable party who has been compelled to incur response costs that cannot be recovered under § 113(f) must be permitted to sue under § 107 to avoid injustice. Plaintiffs' motion to dismiss API's § 107 counterclaims and crossclaims ignores both this Court's express ruling in *Whiting* and the material change in procedural posture Plaintiffs wrought by filing this case.

Second, Plaintiffs have not offered any proper grounds for dismissal of the § 113(f) contribution claims API and other defendants have asserted against them in this action.  Plaintiffs do not contend that the factual allegations in API's counterclaim fail to state grounds for contribution.  Instead, Plaintiffs seek dismissal solely on the ground that they would prefer to see contribution claims litigated in *Whiting*.  However, API's § 113(f) claims against Plaintiffs are not duplicative of claims pending in *Whiting* — the

- 2 -

Case 1:10-cv-00910-WCG   Filed 03/21/11   Page 2 of 14   Document 119

State is not (and cannot be made) a party in *Whiting* and API did not assert a § 113(f) claim against the United States in that action. Nor will assertion of these claims here impede Plaintiffs' prosecution of their claims.

Finally, the Court should deny Plaintiffs' motion to dismiss API's claims seeking declarations on the issues of divisibility and API's non-liability. Both of these issues are in dispute and, therefore, API is entitled to seek declaratory relief pursuant to the Declaratory Judgment Act. Definitive declarations by the Court on these issues may be of assistance to API in both the *Whiting* action and in future administrative proceedings pursuant to CERCLA § 106(b)(2)(A).

For all of these reasons, Plaintiffs' Joint Motion should be denied.

## STATEMENT OF FACTS

The background facts set forth in the Statement of Facts in API's GP Brief are equally germane here, and are incorporated by reference.

## ARGUMENT

I. **API IS ENTITLED TO ASSERT § 107(a) CLAIMS AGAINST THE UNITED STATES AND THE STATE.**

   A. **The Court's Refusal To Allow A § 107 Claim In *Whiting* Is Not Applicable In This Action Because This Case Presents A Materially Different Procedural Posture.**

In its Counterclaims against the United States and the State, API has alleged detailed facts demonstrating that:

- API is a "person" that has incurred response costs (*NCR*, Dkt. #65, Counterclaim ¶¶ 17, 21, 32);

- API has no liability under CERCLA (*id*., ¶¶ 35-45);

- In the alternative, that any liability API may have is several because the harm is divisible and that API has already paid more that its divisible share. (*id*., ¶¶ 70-79); and

- The United States and the State are persons who are liable under CERCLA. (*Id.*, ¶¶ 12-15, 23-27, 48, 52-59).

These allegations must be treated as true for purposes of Plaintiffs' motion to dismiss. *Versatile Plastics, Inc. v. Sknowbest! Inc.*, 247 F. Supp. 2d 1098, 1103 (E.D. Wis. 2003). Further, these allegations state a *prima facie* case for cost recovery under § 107(a). *See United States v. Atlantic Research Corp.*, 551 U.S. 128, 139 (2007).

In the Joint Motion, Plaintiffs do *not* challenge the sufficiency of these allegations to state a claim under § 107(a). Instead, Plaintiffs repeat GP's argument that prior rulings by the Court in *Whiting* bar API from asserting § 107 claims in this enforcement action. *NCR*, Dkt. #107 at 10-12 of 19.

API's GP Brief demonstrates the fallacy of this argument. To avoid redundancy, API will not repeat in full that argument here and, instead, incorporates by reference the arguments and authorities in that brief. In summary, however, the Court's § 107 rulings in *Whiting* are not applicable here because this enforcement action involves defenses that were not before the Court in *Whiting*, and the Court's disposition of these defenses in this action may entitle API to recovery under § 107(a).

First, here, unlike *Whiting*, API's CERCLA liability is directly at issue. In *Whiting*, 42 U.S.C. § 9613(h) barred API from challenging the Government's assertion in the 106 Order that API was liable under CERCLA. Further, this Court ruled in *Whiting* that API's actual liability under the 106 Order was irrelevant in any event because, according to the Court, the unproven allegations in the 106 Order were "enough" to "trigger[] their right under § 113 to bring a contribution action," making assertion of a § 107 claim unnecessary. *Whiting*, Dkt. #751 at 5-6.

Second, here, unlike *Whiting*, divisibility of the harm is an issue that can be pursued. The Court ruled in *Whiting* that the question of the divisibility of the harm

- 4 -

could not be litigated in a § 107 claim in that action for the purpose of deciding whether there was common liability to support a contribution claim under § 113(f). The Court ruled that divisibility was properly raised only as defense to an enforcement action brought by the government. *Id*. at 8.

Now that Plaintiffs have filed such an enforcement action, API is able to litigate both its liability under CERCLA and divisibility of the harm. There is no question that the Government, by (among other things) seeking a court order compelling compliance with the 106 Order, has put API's liability at issue and has the burden of proving it. Likewise, there is no question that the issue of divisibility of harm is properly before the Court as a defense to the Government's assertion of joint and several liability. *See NCR*, Dkt. #30 (First Amended Complaint) ¶¶ 122, 126 (". . . each of the Defendants is jointly and severally liable to the United States [or the State] for all unreimbursed response costs . . .").[2] If the Government fails to prove that API is liable under CERCLA, and/or if API proves that the harm is divisible, API will have no common liability as required for contribution, and, under this Court's rulings in *Whiting*, API will be entitled to recover its response costs in a claim under § 107:

> [P]arties who do not have access to § 113(a) [sic] . . . because they are completely innocent and do not share common liability with any PRPs . . . must be allowed to recover under § 107(a) if injustice is to be avoided.

*Appleton Papers Inc. v. George A. Whiting Paper Co.*, 572 F. Supp. 2d 1034, 1043 (E.D. Wis. 2008). Thus, because the procedural posture of this case is materially

---

[2] Joint and several liability also is at issue in the Government's Fifth Claim For Relief, which seeks a court order compelling compliance with the terms of the 106 Order. *NCR*, Dkt. #30, ¶¶ 130-132. In the 106 Order, EPA asserts that "each Respondent is jointly and severally responsible for carrying out all activities required by this Order." *Id*., Dkt. #30-1 at 3 of 69, ¶ 2.

different from that in *Whiting*, the Court's rulings that disallowed § 107 claims in *Whiting* are neither binding nor applicable in this case.

### B. Claims That The Posture Of The Case Has Not Materially Changed Are Without Merit.

Since Plaintiffs' arguments for dismissing API's § 107 counterclaims are identical to those GP raised in its motion to dismiss API's § 107 crossclaim, it is fair to assume that Plaintiffs will, in their reply brief, raise arguments similar to those advanced by GP in its reply brief (*NCR*, Dkt. #110). These arguments are without merit.

*First*, API has not "admitted [its] 'common liability'" (*id*., at 11 of 20) by asserting contribution claims in *Whiting*. A party need not concede CERCLA liability in order to sue under § 113(f). This Court expressly ruled in *Whiting* that the unproven allegations of liability in the 106 Order were enough to trigger the right to sue under § 113(f), making it unnecessary for API to first either obtain an adjudication of its liability or concede such liability. *Whiting*, Dkt. #751 at 5 ("[§113(f)] is available to someone whose liability may not have been firmly established at all. It is enough that the party be subject to some compulsion to pay – here, the government's 106 order.").[3] *See also Atlantic Research*, 551 U.S. at 138-39 ("§ 113(f)(1) permits suit *before* . . . the establishment of common liability.") (emphasis added).[4]

---

[3] The assertion that "NCR/API could not have brought their 113(f) claims for contribution had they not had common liability with the *Whiting* defendants" (*NCR,* Dkt. #110 at 15 of 20) is contrary to the Court's ruling in *Whiting*. The Court ruled that an adjudication of API's common liability was not a necessary prerequisite to assertion of a § 113 claim and that the Government's mere *allegation* of liability was enough to trigger the right to sue under § 113. *Whiting*, Dkt. #751 at 5-6.

[4] In its March 1, 2011 Decision and Order in *Whiting*, the Court ruled that proof of CERCLA liability is necessary to render a *defendant* in a § 113(f) action liable for contribution, but that it was unnecessary – and, indeed, improper – to address the liability of contribution by a plaintiff – such as API – in a § 113(f) action:

(footnote continued on next page)

*Second*, API has not conceded common liability by its "actions and admissions in *Whiting*." *NCR*, Dkt. #110 at 15 of 20. To the contrary, in *Whiting*, API has consistently disputed any liability under CERCLA. For example, in its answer to a defendant's counterclaim, API denied that it was liable or potentially liable under CERCLA. *Whiting*, Dkt. #334, ¶ 34. When *Whiting* defendants asserted that API was liable under CERCLA in summary judgment motions on their contribution claims, API vigorously disputed the allegations. *See id.*, Dkt. #966 at 15 (disputing that API was the successor to ACPC or Combined Paper Mills Inc.); Dkt. #1004, ¶ 27 (disputing assertion that API assumed the liabilities of NCR's Appleton Papers Division).[5]

*Third*, there is no basis for contending that API has CERCLA liability as a current owner under § 107(a)(1). *NCR*, Dkt. #110 at 15 of 20. A party has liability as a current owner and operator of a facility only if hazardous substances were disposed of on-site at that facility and the facility site is the focus of the cleanup efforts:

> CERCLA defines the term "facility" in part as "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." CERCLA § 101(9)(B), 42 U.S.C. § 9601(9)(B); . . . The term "facility" should be construed very broadly to include "virtually any place at which hazardous wastes have been dumped, or otherwise disposed of." . . . **In the present case, however, the place where the hazardous**

---

(footnote continued from prior page)

> [T]he Defendants argue that this § 113 proceeding is not the proper forum to address Plaintiffs' liability, and that appeared to be true with respect to *Plaintiffs'* own contribution action against the Defendants. But now that the Defendants are seeking contribution from the Plaintiffs, they have not provided any authority upon which I could base a contribution award when none of the § 107 types of liability apply."

*Whiting*, Dkt. #1080 at 11-12 (italics original).

[5] The Court's assertion in its March 1, 2011 Decision and Order in *Whiting* that API's CERCLA liability is "not contested" in the OU2-5 portions of the river (*Whiting*, Dkt. #1080 at 14) is mistaken. API has consistently disputed its CERCLA liability in all portions of the river and the evidence in the record before the Court in *Whiting* demonstrates, at a minimum, that there is a disputed issue of material fact as to API's liability under CERCLA. API intends to file a motion for reconsideration as to this aspect of the Court's March 1, 2011 decision.

- 7 -

> **substances were disposed of and where the government has concentrated its cleanup efforts is the Denney farm site, not the NEPACCO plant. The Denney farm site is the "facility." Because NEPACCO, Lee and Michaels did not own or operate the Denney farm site, they cannot be held liable as the "owners or operators" of a "facility" where hazardous substances are located under CERCLA § 107(a)(1), 42 U.S.C. § 9607(a)(1).**

*United States v. Northeastern Pharm. & Chem. Co.,* 810 F.2d 726, 743 (8th Cir. 1986) (citations omitted) (emphases added). *See also ACC Chem. Co. v. Halliburton Co.*, 932 F. Supp. 233, 238 (S.D. Iowa 1995) ("The facility is 'the place where the hazardous substances were disposed of and where the Government has concentrated its clean-up efforts.'").

In this case, the site where the hazardous substances are located and where the Government has exclusively concentrated its cleanup efforts is the Lower Fox River and Green Bay, not any facility currently owned by API. Accordingly, the property that API currently owns is not a basis for CERCLA liability.

*Finally*, the notion that API is forever barred from asserting a § 107 claim because it has been the subject of prior government enforcement actions is nonsensical and not supported by case law. *NCR*, Dkt. #110 at 17 of 20. There is no dispute that the Government's prior administrative enforcement actions triggered API's right to sue under § 113(f). *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157 (2004). Further, under this Court's reasoning in *Whiting*, a party with a remedy under § 113(f) has no right to sue under § 107.[6] But what happens when a party (such as API) who initially exercises its right to sue under § 113(f) (because it has incurred costs in response to an administrative order) is later sued by the Government in a separate enforcement action (as Plaintiffs have done here) and, in that enforcement action, the court finds that the

---

[6] API continues to believe that it was entitled to assert a § 107 claim in *Whiting*. Nothing herein should be construed to waive or relinquish any of the arguments API advanced in *Whiting*.

party (API) is not liable under CERCLA and should have never been named in the Government's administrative order? Can such a party recover the response costs it was wrongfully compelled to incur under the strict liability standards in § 107(a), or is its right to recovery subject to equitable allocation under § 113(f)? This is *not* the situation the Court confronted when it rendered its rulings in *Whiting*, but that is precisely the situation that is now before the Court based upon the allegations in API's counterclaims and crossclaims (which this Court must accept as true for purposes of the pending motion to dismiss).

Plaintiffs may argue (as GP has) that API should be left to pursue a claim under § 113(f), contending that since it "had" a claim under § 113(f), it is "unable to assert a § 107(a) claim now." *NCR*, Dkt. #110 at 17 of 20. No reported decision says that,[7] but, more important, this argument ignores both the Supreme Court's holding in *Atlantic Research* that relief under § 113(f) is "contingent" upon "common liability among liable parties," 551 U.S. at 139, and the express language of § 113(f)(1), which authorizes the allocation of response costs "among liable parties." If a party is formally adjudicated to have no CERCLA liability, § 113(f) by its express terms is inapplicable.

In contrast, the language of § 107(a) presents no textual impediment to allowing a claim by a party like API which was wrongfully compelled to incur response costs in response to an unfounded CERCLA administrative order. Indeed, such a party is akin to

---

[7] We have located no case in which this issue has been addressed. Contrary to GP's assertion (*NCR*, Dkt. #110 at 12), *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761 (7th Cir. 1994) does not address this situation. In that case, Akzo sought contribution under § 113(f) for costs it incurred responding to a 106 order. *Id*. at 762-63. Hence, the posture of the case was similar to the circumstances before this Court at the time it rendered its rulings in *Whiting*. The case did not involve a situation – like the one now before this Court – where the actual liability of a recipient of a 106 order is the subject of a government action to enforce the order.

someone who voluntarily incurs response costs. Since such a volunteer can recover response costs under § 107,[8] so should a victim of an improper administrative order. As the Second Circuit has observed: "[S]ection 107(a) does not specify that only parties who 'voluntarily' remediate a site have a cause of action." *W.R. Grace & Co. – Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 92 (2nd Cir. 2009).

## II. PLAINTIFFS HAVE NOT OFFERED PROPER GROUNDS FOR STRIKING OR DISMISSING API'S § 113(f) CLAIMS.

Plaintiffs' request that the Court dismiss and/or strike the § 113(f) counterclaims asserted by various defendants, including API, should likewise be rejected.

Plaintiffs do not seek dismissal on the ground that the claims fail to state a claim for which relief can be granted, or any of the other grounds for dismissal under Rule 12(b). Instead, Plaintiffs seek to have the claims dismissed and/or stricken solely on the grounds that:

> . . . [T]he contribution counterclaims here parallel and overlap with those asserted in the *Whiting* Case, and . . . efficiency will be served if the government enforcement claims proceed here while the contribution claims are handled together in the *Whiting* Case.

*NCR*, Dkt. #107 at 8 of 19.

Neither assertion is true. API's § 113(f) counterclaims against the United States and State are not duplicative of claims pending in *Whiting*. API did not assert any claims against the United States in *Whiting*, and the State is not a party in that action. Further, Plaintiffs ignore the fact that the State's sovereign immunity under the Eleventh Amendment prevents API (and other parties) from asserting CERCLA claims against it in that action. *See Burnette v. Carothers*, 192 F.3d 52, 57 (2nd Cir. 1999); *Ninth Ave.*

---

[8] *Atlantic Research*, 551 U.S. at 141; *Metro. Water Reclamation Dist. of Greater Chicago v. N. Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824, 834-36 (7th Cir. 2007).

- 10 -

*Remedial Group v. Allis-Chalmers Corp.*, 962 F. Supp. 131, 136 (N.D. Ind. 1997).  API is able to assert claims against the State in this action only because the State waived its Eleventh Amendment immunity by bringing this action in federal court.  *See Louisville Public Warehouse Co. v. Indiana Dep't of Transp.*, No. 01-140-C, 2001 WL 980583 at *3 (S.D. Ind. Aug. 24, 2001).  Therefore, asserting § 113(f) claims against the State in *Whiting* simply is not feasible.

Nor will requiring assertion of all § 113(f) claims in *Whiting* promote "efficiency."  The *Whiting* action has been pending for three years, was phased per court order, and has resulted in numerous substantive rulings.  Adding a bevy of new claims (and, perhaps new parties) at this late date will present significant case management problems and prejudice the rights of API (and NCR).  API and NCR have been waiting for more than a year to appeal various rulings the Court has rendered in that action, either by means of Rule 54(b) certification or following entry of a final judgment.  More than a year ago, the Court denied API and NCR's Rule 54(b) motion on the ground that it believed a final judgment could be entered within a year.  That has not occurred, and the addition of a raft of new claims will inevitably further delay entry of a final judgment in that case.  In short, not only will inefficiency result by requiring assertion of all § 113(f) claims in *Whiting*, but doing so will prejudice the rights of API and NCR.

Finally, Plaintiffs have not demonstrated how assertion of non-duplicative § 113(f) claims in this action will impede prosecution of their claims.  In the case of API, for example, API has asserted § 113(f) claims against Plaintiffs only as alternative "backup" claims to its primary claims under CERCLA § 107.  In each claim for relief under § 107, API has included a single paragraph requesting alternative relief under § 113(f):

> In the alternative, if the Court finds that API is not entitled to relief under CERCLA § 107, 42 U.S.C. §9607, then API is entitled to contribution from the United States [or the State] pursuant to CERCLA 113, 42 U.S.C. § 9613.

*NCR*, Dkt. #65 at 47, ¶ 50 & 48, ¶ 61.  Thus, when the Court denies the various motions to dismiss API's § 107 claims in this action, as API believes it will, API's § 113(f) counterclaims will not have to be reached.

### III. API'S DECLARATORY JUDGMENT CLAIMS SHOULD NOT BE DISMISSED.

In its Third Claim, API seeks a declaration that it is not liable under CERCLA and that it has no obligation to comply with the UAO.[9]  *NCR*, Dkt. #65 at 49, ¶ 67.  In its Fourth Claim, API seeks a judgment declaring (i) that there is a reasonable basis for divisibility of the harm arising from the PCB contamination in the Fox River, (ii) what the share of the harm attributable to Appleton Coated Paper Company ("ACPC") is, (iii) that NCR and API have incurred costs in excess of the divisible share of ACPC, and (iv) that API has no obligation to make further payment in connection with the 106 Order.  *Id*., at 51, ¶ 80.

Plaintiffs' assertion that this requested declaratory relief "parrot[s] their affirmative defenses" and would "serve no useful purpose" is wrong.  *NCR,* Dkt. #107 at 13-14 of 19.  Under the Declaratory Judgment Act, 28 U.S.C. § 2201, declaratory relief is appropriate to resolve an actual controversy among parties.  Here, there is no question

---

[9] As pleaded, API's Third Claim also included a request for a declaration that API is entitled to reimbursement from the Superfund for all response costs and damages it incurred. *NCR*, Dkt. #65 at 49, ¶ 68.  As Plaintiffs correctly note (*NCR*, Dkt. #107 at 12-13 of 19), CERCLA § 106(b)(2)(A) requires a party to file a petition with the EPA seeking reimbursement "within 60 days after completion of the required action."  API included a request for declaratory relief on this issue in order to avoid any future dispute with the United States as to whether such a claim for reimbursement was a mandatory claim that had to be asserted in this enforcement action.  In view of Plaintiffs' acknowledgement that assertion of such a claim in this action is not necessary, API does not intend to seek such a declaration in this action, and is prepared to file an amended pleading omitting this requested relief or enter into a stipulation that addresses this issue.

that there are disputes between the parties regarding API's CERCLA liability and divisibility of the harm. Declarations addressing these disputed issues will serve useful purposes. For example, at the appropriate time in the future, API intends to petition the EPA for reimbursement of the costs it incurred to implement the 106 Order pursuant to CERCLA § 106(b)(2)(A).[10] If the Court determines in this action that API has no CERCLA liability and/or that the harm is divisible (rendering API's liability several only), such rulings will have direct bearing upon API's right to reimbursement. However, such a petition can be filed only after "completion of the required action" specified in the 106 Order, which is likely to be many years from now – long after this case has been closed. Therefore, it is essential that API secure definitive judicial declarations in this action on the questions of API's CERCLA liability and divisibility of the harm so that there can be no questions as to the Court's rulings in future administrative proceedings before the EPA.

Thus, contrary to the Government's claims, the requested declaratory relief will serve useful purposes. Under such circumstances, dismissal of these claims at the pleadings stage is improper. *See LeMaster v. USAA Life Ins. Co.*, No. 95-1124-CIV, 1995 WL 708656 (M.D. Fla. 1995); *England v. Deere & Co.*, 158 F. Supp. 904 (S.D. Ill. 1958). *See also* 6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1406 at 35 (2010) ("Thus, the safer course for the court to follow is to deny a request to dismiss a

---

[10] Section 106(b)(2)(A) provides:

Any person who receives and complies with the terms of any order issued under subsection (a) of this section may, within 60 days after completion of the required action, petition the President for reimbursement from the Fund for the reasonable costs of such action, plus interest. . . .

counterclaim for declaratory relief unless there is no doubt that it will be rendered moot by the adjudication of the main action.").

## CONCLUSION

For the reasons set forth above, API respectfully requests that the Court deny the Plaintiffs' Joint Motion to Strike or Dismiss All Counterclaims and Crossclaims.

Dated this 21st day of March, 2011.

> Respectfully submitted,
>
> APPLETON PAPERS INC.
>
> /s/ Ronald R. Ragatz
>
> Michael L. Hermes
> HERMES LAW LTD.
> 333 Main Street, Suite 601
> Green Bay, Wisconsin 54301
> (920) 436-9870
> Fax: (920) 436-9871
>
> Ronald R. Ragatz
> DEWITT ROSS & STEVENS S.C.
> 2 E. Mifflin Street, Suite 600
> Madison, Wisconsin 53703
> (608) 255-8891
> Fax: (608) 252-9243
>
> **COUNSEL FOR APPLETON PAPERS INC.**