IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 10-C-910 ) |
| NCR CORPORATION, APPLETON PAPERS INC., BROWN COUNTY, CITY OF APPLETON, CITY OF GREEN BAY, CBC COATING, INC., GEORGIA-PACIFIC CONSUMER PRODUCTS LP, KIMBERLY-CLARK CORPORATION, MENASHA CORP., NEENAH-MENASHA SEWERAGE COMMISSION, NEWPAGE WISCONSIN SYSTEMS, INC., P.H. GLATFELTER CO., U.S. PAPER MILLS CORP., and WTM I COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**DEFENDANT NCR CORPORATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' JOINT MOTION TO STRIKE OR DISMISS ALL COUNTERCLAIMS AND CROSS-CLAIMS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................3

    I.     NCR HAS STATED VALID CLAIMS FOR RELIEF UNDER THE DECLARATORY JUDGMENT ACT. ............................................................3

    II.    NCR HAS STATED A VALID CLAIM FOR COST RECOVERY UNDER CERCLA § 107. .............................................................................................5

          A.    NCR Has Properly Alleged A Claim Under § 107(a) in This Action Given NCR's Allegations That The Harm At The Site Is Capable of Apportionment, And That NCR Has Incurred Costs In Excess Of Its Divisible Share. .........................................................................................5

          B.    This Court's Prior Decisions in *Whiting* Do Not Bar NCR's § 107 Counterclaims. ...................................................................................................7

    III.   IT WOULD BE INAPPROPRIATE, IMPRACTICAL AND PREJUDICIAL TO CONSOLIDATE COUNTERCLAIMS FROM THIS ACTION INTO THE *WHITING* ACTION. .............................................................................9

CONCLUSION .............................................................................................................................12

# **TABLE OF AUTHORITIES**

Page(s)

CASES

*Burlington Northern v. United States*,
    129 S.Ct. 1870 (2009)......................................................................................................6

*Burnette v. Carothers*,
    192 F.3d 52 (2d Cir. 1999)...............................................................................................9

*Dugan v. City of W. Chi.*,
    2008 U.S. Dist. LEXIS 104549 (N.D. Ill. Dec. 29, 2008) .........................................1, 5

*E. Edelmann & Co. v. Triple-A Specialty Co.*,
    88 F.2d 852 (7th Cir. 1937) .............................................................................................4

*Environmental Transp. Sys., Inc. v. Ensco, Inc.*,
    969 F.2d 503 (7th Cir. 1992) ...........................................................................................7

*GNB Battery Technologies v. Gould, Inc.*,
    65 F.3d 615 (7th Cir. 1995) .............................................................................................3

*Henderson v. National R.R. Passenger Corp.*,
    118 F.R.D. 440 (N.D. Ill. 1987)....................................................................................11

*J & J Sports Productions, Inc. v. Live Oak County Post No. 6119 Veterans of Foreign Wars*,
    2009 WL 1857986 (S.D. Tex. June 25, 2009).............................................................11

*Medical Assur. Co. v. Hellman*,
    610 F.3d 371 (7th Cir. 2010) ...........................................................................................4

*Ninth Ave. Remedial Group v. Allis-Chalmers Corp.*,
    962 F. Supp. 131 (N.D. Ind. 1997) .................................................................................9

*Serlin v. Arthur Andersen & Co.*,
    3 F.3d 221 (7th Cir. 1993) .............................................................................................10

*Sommerfield v. City of Chicago*,
    2009 U.S. Dist. LEXIS 15405 (N.D. Ill. Feb. 26, 2009) ........................................2, 11

*Star Ins. Co. v. Risk Mktg. Group Inc.*,
    561 F.3d 656 (7th Cir. 2009) ...........................................................................................2

*United States v. Alcan Aluminum Corp.*,
    964 F.2d 252 (3d Cir. 1992)............................................................................................6

*United States v. ASARCO*,
   814 F. Supp. 951 (N.D. Colo. 1993) ............................................................................. 7, 8

*United States v. Atlantic Research*,
   551 U.S. 128 (2007) ............................................................................................................ 7

*Vallero v. Burlington N. R. Co.*,
   749 F. Supp. 908 (C.D. Ill. 1990) ................................................................................. 2, 11

STATUTES

28 U.S.C. § 2201(a) ........................................................................................................................ 3

42 U.S.C. §§ 9607(a), 9613(f)(1) ................................................................................................... 5

42 U.S.C. § 9613(f)(1) .................................................................................................................... 7

OTHER AUTHORITIES

10B Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2751
   (3d ed. 1998) ................................................................................................................. 1, 4

United States Constitution, Eleventh Amendment ......................................................................... 9

Federal Rule of Civil Procedure 54(b) ......................................................................................... 11

Defendant NCR Corporation ("NCR"), by and through its undersigned counsel, hereby files its Memorandum in Opposition to Plaintiffs' Motion to Strike or Dismiss All Counterclaims and Cross-Claims (the "Motion"). For the reasons set forth herein, the Motion should be denied.

## INTRODUCTION

In a scattershot motion that is more a case management proposal than a motion to dismiss, Plaintiffs have asked this Court to dismiss NCR's well-pled counterclaims and also to sever and consolidate the other defendants' compulsory counterclaims into *Appleton Papers Inc., et al. v. George A. Whiting Paper Co., et al.*, Case No. 2:08-CV-0016-WCG (E.D. Wis.) ("*Whiting*"). There is no basis for any of this requested relief.

First, NCR's claims for declaratory relief are not duplicative, as Plaintiffs claim, but instead serve a distinct, useful purpose separate and apart from NCR's affirmative defenses. These claims will permit NCR to obtain a timely adjudication of its obligations with respect to the remaining cleanup work, in a way that also allows NCR to continue to fund the ongoing work and comply the Unilateral Administrative Order ("UAO"). Because they obviate potential "violations of law," these claims are entirely consistent with the purposes of the Declaratory Judgment Act. *See e.g.*, *Dugan v. City of W. Chi.*, 2008 U.S. Dist. LEXIS 104549, at *5 (N.D. Ill. Dec. 29, 2008); 10B Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2751 (3d ed. 1998) ("The remedy made available by the Declaratory Judgment Act . . . permits actual controversies to be settled before they ripen into violations of law . . . .").

Second, NCR has stated a valid claim for cost-recovery against the Army Corps of Engineers. If NCR's allegations are taken as true (which they must be for the purpose of this Motion), then the harm at the site is capable of apportionment and NCR has incurred costs in

1

excess of its divisible share. Such excess costs, for which by definition there is no "common liability," can only be recovered through an action under § 107. This Court's prior decisions in *Whiting* do not alter this conclusion. Those decisions were premised on the fact that NCR was a *plaintiff* and that, given this procedural circumstance, NCR could not obtain the prerequisite declaration concerning whether the harm at the site was capable of apportionment. This enforcement case, by contrast, provides the precise procedural context for the divisibility determination that is the predicate for NCR's § 107 claim.

Finally, it would be inappropriate to sever the other Defendants' counterclaims for consolidation into the *Whiting* case. Plaintiffs ignore the fact that (i) several of the parties to the counterclaims here are not and cannot be made parties to *Whiting*; (ii) the claims in *Whiting* and the claims asserted here are at vastly different stages of litigation; (iii) the issues relating to these counterclaims must necessarily be addressed anyway in this case in the context of Plaintiffs' proposed settlement with itself; and (iv) consolidation would unnecessarily and improperly prejudice NCR's ability to obtain a timely appellate review in the *Whiting* case. Such facts dictate that the consolidation requested by Plaintiffs should not be granted. *See e.g., Star Ins. Co. v. Risk Mktg. Group Inc.*, 561 F.3d 656, 661 (7th Cir. 2009) (upholding district court decision not to consolidate actions because "[a]lthough there are similarities between the actions, … the two proceedings seek different things and seeking to consolidate them into one proceeding is improper"); *Sommerfield v. City of Chicago*, 2009 U.S. Dist. LEXIS 15405 (N.D. Ill. Feb. 26, 2009) (denying motion to consolidate where the cases were "in very different procedural postures"); *Vallero v. Burlington N. R. Co.*, 749 F. Supp. 908, 913 (C.D. Ill. 1990) ("[C]ourt should not order consolidation where the interests of any party would be prejudiced thereby").

2

## ARGUMENT

**I. NCR HAS STATED VALID CLAIMS FOR RELIEF UNDER THE DECLARATORY JUDGMENT ACT.**

A claim brought under the Declaratory Judgment Act is proper if it involves (1) a case of actual controversy, (2) that is within the jurisdiction of the Court, and (3) filed in an appropriate pleading. *See* 28 U.S.C. § 2201(a). NCR's declaratory judgment counterclaims against the United States and the State of Wisconsin satisfy each of these necessary elements. NCR has plainly alleged the existence of an "actual controversy":

> Even though the harm at the Lower Fox River site is thus capable of reasonable apportionment, the Counter-Defendants assert that NCR must continue to perform all of the work required by the UAO, and further pay all of the Counter-Defendants' past costs. *As a result, an actual, substantial, and legal controversy has arisen and now exists between NCR, on the one hand, and the Counter-Defendants, on the other, with regard to the scope of NCR's liability at the site.* This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

NCR's Amended Answer, Affirmative Defenses, Counterclaims, and Cross-Claim (Dkt. # 82) ("NCR's Counterclaim"), p. 56, ¶ 48 (emphasis added).[1] There is also no dispute that NCR's declaratory judgment counterclaims fall within the subject matter jurisdiction of this Court, and that they have been asserted in an appropriate pleading. Thus, NCR's declaratory judgment counterclaims are proper and should not be dismissed. *See GNB Battery Technologies v. Gould, Inc.*, 65 F.3d 615 (7th Cir. 1995) (affirming district court's decision to "entertain[] the facially appropriate request for declaratory relief with respect to the plaintiff's liability under CERCLA.").

---

[1] Citations to (Dkt. # ___) refer to docket entries in this case. Citations to (*Whiting* Dkt. # ___) refer to docket entries in *Appleton Papers Inc., et al. v. George A. Whiting Paper Co., et al.*, Case No. 2:08-CV-0016-WCG (E.D. Wis.).

Moreover, these counterclaims are not duplicative, as Plaintiffs claim, because they serve a distinct, useful purpose. As the Seventh Circuit has explained, the purpose of the Declaratory Judgment Act is "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued." *E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852, 854 (7th Cir. 1937); *see also Medical Assur. Co. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010). Similarly, one commentator has noted:

> The remedy made available by the Declaratory Judgment Act . . . relieves potential defendants from the Damoclean threat of impending litigation which [an] adversary might brandish, while initiating suit at his leisure—or never. It permits actual controversies to be settled before they ripen into violations of law . . . and it helps avoid a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligations of litigants.

10B Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2751 (3d ed. 1998) (internal quotation marks and footnotes omitted).

NCR's declaratory judgment counterclaims seek precisely this relief. NCR is being forced to perform the remedial work required by the UAO under threat of incurring massive penalties and punitive damages, even though there is a reasonable basis for apportioning the harm at the site and NCR has already paid more than its divisible share. *See* NCR's Counterclaim, pp. 55-56.[2] NCR's declaratory judgment counterclaims will allow an "early adjudication" of whether NCR must in fact continue to perform this work, in a manner that avoids potential "violations of law" or forcing NCR to stop work and await "the threat of

---

[2] Furthermore, although NCR contends that its divisibility defense is applicable to each of the five Counts of the Complaint, it is not clear that Plaintiffs agree with this position, and it therefore is uncertain whether litigation of Plaintiffs' claims will fully resolve the question of divisibility and NCR's obligations at the Site.

4

impending litigation" by the United States to recover penalties or punitive damages.  As such, NCR's declaratory judgment counterclaims serve a useful purpose distinct from the defenses NCR has asserted to Plaintiffs' claims, and therefore should not be dismissed.  *See, e.g., Dugan v. City of W. Chi.*, 2008 U.S. Dist. LEXIS 104549, at *5 (N.D. Ill. Dec. 29, 2008) (district court denied motion to dismiss counterclaim because it "will serve a useful purpose in this case").

## II. NCR HAS STATED A VALID CLAIM FOR COST RECOVERY UNDER CERCLA § 107.

Plaintiffs' argument for dismissal of NCR's cost recovery counterclaim under § 107 relies entirely – and mistakenly – on this Court's decisions in the *Whiting* action.  Those decisions do not in fact preclude NCR's claim here.  Rather, this action involves the precise procedural circumstances that the Court stated in *Whiting* were appropriate for a claim for cost recovery under § 107.

### A. NCR Has Properly Alleged A Claim Under § 107(a) in This Action Given NCR's Allegations That The Harm At The Site Is Capable of Apportionment, And That NCR Has Incurred Costs In Excess Of Its Divisible Share.

CERCLA provides only two mechanisms by which a party may recover costs it has spent in responding to releases of hazardous substances: contribution under § 113(f) and cost recovery under § 107(a).  *See* 42 U.S.C. §§ 9607(a), 9613(f)(1).  A claim for contribution under § 113(f) is available when the parties share a "common liability," while a claim for cost recovery under § 107(a) is available when there is no such "common liability."  *See* August 20, 2008 Decision and Order (*Whiting* Dkt. # 227) ("August 2008 Order), p. 12 ("[Where] parties [] do not

5

have access to § 113(a) . . . and *do not share common liability* with any PRPs, . . . *[they] must be allowed to recover under § 107(a) if injustice is to be avoided*") (emphasis added).[3]

Plaintiffs themselves have characterized this case as an "enforcement action," and seek to hold NCR jointly and severally liable for all their past and future oversight costs; for alleged natural resource damages; and for compliance with all aspects of the UAO. *See* Plaintiffs' First Amended Complaint (Dkt. # 30), pp. 29-30, ¶¶ 122, 126, 136; pp. 31-32, ¶¶ 1, 3. NCR has specifically denied that it is liable for the relief the Governments seek, and denied in particular that there is joint and several liability – *i.e.,* "common liability" – at the Lower Fox River site. *See* NCR's Counterclaim, p. 41, ¶ 2. Such a "divisibility defense" to §§ 106 and 107 claims is well-established. *See Burlington Northern v. United States*, 129 S.Ct. 1870, 1881 n.9 (2009) ("CERCLA defendants [can] avoid joint and several liability [if they] bear the burden of proving that a reasonable basis for apportionment exists").

Based on this "divisibility defense," NCR's § 107 counterclaim alleges derivatively that it bears no liability for the costs it has incurred or will incur in excess of its divisible share of liability. *See* NCR's Counterclaim, p. 59, ¶ 63. If these allegations are taken as true, as they must be for purposes of deciding this Motion, then NCR is entitled to recover from other PRPs, such as the United States, those costs for which it is not liable. *See United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 270 n.29 (3d Cir. 1992) ("Thus, if the defendant can prove that the harm was divisible and that it only caused some portion of the injury, it should only be held liable for that amount."). Moreover, if the harm is divisible, NCR cannot recover those costs in a contribution action under § 113(f), as numerous authorities recognize. *See*

---

[3] NCR continues to believe that a claim under § 107 is also available to recover costs incurred voluntarily by NCR. *See* Plaintiffs' Consolidated Response to Defendants P.H. Glatfelter's and Menasha Corporation's Motions to Dismiss (*Whiting* Dkt. # 92); Plaintiffs' Response to Defendant WTM I Corporation's Motion to Dismiss (*Whiting* Dkt # 220); Plaintiffs' Response to the United States' *Amicus Curiae* Brief (*Whiting* Dkt. # 162).

6

*generally* 42 U.S.C. § 9613(f)(1) ("[i]n resolving contribution claims, the court may allocate response costs *among liable parties* using such equitable factors as the court determines are appropriate.") (emphasis added); *United States v. Atlantic Research*, 551 U.S. 128, 139 (2007) ("a PRP's right to contribution under § 113(f)(1) is contingent upon an inequitable distribution of *common liability* among *liable parties*.") (emphases added); *Environmental Transp. Sys., Inc. v. Ensco, Inc.*, 969 F.2d 503, 508 (7th Cir. 1992) ("There can be no right to contribution unless there is joint and several liability."); *United States v. ASARCO*, 814 F. Supp. 951, 956 n.4 (N.D. Colo. 1993) (If two parties are not jointly and severally liable because the harm is divisible, . . . there is no common liability and therefore, no right of contribution.").

Accordingly, under both the statutory language of CERCLA and the well-established case law, NCR has properly asserted a § 107 counterclaim to recover from the United States the costs it has incurred in excess of its divisible share of liability.

### B. This Court's Prior Decisions in *Whiting* Do Not Bar NCR's § 107 Counterclaims.

Plaintiffs' focus on decisions in *Whiting* is misplaced. Those decisions did not hold that NCR could *never* bring a § 107 claim as a matter of law. In *Whiting*, the principal objection raised was that NCR should not be allowed to assert a § 107 claim because the threshold issue – whether liability at the site is divisible – was one that NCR *could not properly raise* given the "procedural circumstances" in *Whiting*, where NCR was a "contribution plaintiff." November 18, 2009 Decision and Order (*Whiting* Dkt. # 751) ("November 2009 Decision"), p. 6.[4] This Court specifically adopted these arguments in denying NCR's Motion to

---

[4] *See e.g.*, Certain Defendants' Response to Motion for Leave to Amend (*Whiting* Dkt. # 618), pp. 6-9; *Whiting*, Transcript of November 10, 2009 Hearing, 33:12-15 and 48:1-5.

7

Amend.[5] The Court found that "[t]here is simply no precedent for a *plaintiff* instituting an action whose first order of business is to obtain a ruling on divisibility before going forward." November 2009 Decision, p. 7 (emphasis in original). The Court further found that "there [are no] § 113 cases in which a court determined the divisibility question before finding that § 113 was available. Instead, the cases uniformly talk about a *defendant* being able to avoid joint and several liability by proving divisibility. It is called a 'divisibility defense.'" *Id.* (emphasis in original); *see also id.* at p. 8 ("Divisibility is primarily a *defense* to liability vis-à-vis the government itself.") (emphasis added).[6]

No such impediments exist here.[7] This case presents the precise procedural posture that this Court stated was necessary for NCR to bring a §107 cross-claim to recover costs it has incurred, but for which it is not liable. As discussed above, NCR *is a defendant* subject to a § 107 claim by Plaintiffs, and has properly asserted a divisibility defense. Given the "procedural and factual context" of *this* case, NCR has clearly pled a viable claim to recover

---

[5] NCR continues to believe that (1) the issue of liability, including whether or not liability at the site is divisible, could have been (and should have been) addressed by the Court in *Whiting*, (2) NCR should have been granted leave to assert a § 107 claim to recover those costs for which it has no liability, and (3) NCR should have been permitted to take full and fair discovery in *Whiting* on divisibility and other issues.

[6] The Court's additional concern – "that allowing [NCR and API] to pursue a divisibility case at this stage would upset the government's right to proceed as it sees fit against Plaintiffs and other PRPs" – is similarly not applicable to *this* case, in which the governments have chosen to bring their claims. November 2009 Decision, p. 8.

[7] This Court's August 20, 2008 Decision and Order (*Whiting* Dkt. # 227) (the "August 2008 Decision) similarly does not foreclose NCR from bringing a § 107 claim in *this* case given its different procedural posture. The only issue addressed by the Court in that decision was whether NCR and API could assert a § 107 claim to recover "voluntary" costs concurrently with a § 113 claim to recover "involuntary" costs that had been incurred beyond their fair share of the "common liability" for the site. The Court explained that, "[d]espite the courts' use of the terms 'voluntary' and 'involuntary' to distinguish payments recoverable under § 107(a) and those recoverable under § 113(f), the operative principle appears to be that § 107(a) is available to recover payments *only in cases where § 113(f) is not*." August 2008 Decision, p. 11 (emphasis added). Because NCR and API had "clearly alleged a claim for contribution" under § 113(f), the Court concluded that NCR and API could recover "whatever payments they made in excess of their proportionate share" under § 113(f), "includ[ing] not only payments made pursuant to the consent decree . . . but also any other ["voluntary"] payments they made to discharge their *common liability* under § 107(a) before or after that time." *Id.* at p. 14 (emphasis added). The Court did not hold, as Plaintiffs argue, that the availability of a § 113 contribution claim extinguishes a party's right to recover under § 107 costs for which it has *no* "common liability," as NCR is seeking to do in this case.

8

costs that exceed its divisible share of liability under § 107, and nothing in the Court's prior decisions in *Whiting* compels a different conclusion.[8]

## III. IT WOULD BE INAPPROPRIATE, IMPRACTICAL AND PREJUDICIAL TO CONSOLIDATE COUNTERCLAIMS FROM THIS ACTION INTO THE *WHITING* ACTION.

Finally, Plaintiffs make the extraordinary request that counterclaims properly asserted in this action should be ordered stricken and consolidated into an entirely different action. This is a case management proposal, not the subject of a motion to dismiss. As such, this request should be disregarded. However, even if it were to be considered, this request should be denied for at least the following five reasons.

*First*, these counterclaims cannot simply be re-filed in *Whiting* because there is not an identity of parties. Kimberly-Clark (one of the counter-plaintiffs) was previously dismissed from *Whiting* and strenuously objected to any effort to force their re-joinder simply for the governments' convenience. (*See* Dkt. # 115.) In addition, the State (a counter-defendant to most of the counterclaims) is not a defendant in *Whiting*, nor can it be made one. *Burnette v. Carothers*, 192 F.3d 52 (2d Cir. 1999) (affirming dismissal of CERCLA cost recovery claims against the State of Connecticut on grounds of sovereign immunity under the Eleventh Amendment); *Ninth Ave. Remedial Group v. Allis-Chalmers Corp.*, 962 F. Supp. 131 (N.D. Ind. 1997) (holding that CERCLA claims against the State of Indiana were barred by sovereign immunity). Thus, whereas the State can be sued here because it waived its sovereign immunity

---

[8] Any attempt to interpret this Court's *Whiting* decisions more broadly must be rejected. If NCR is forever limited exclusively to a § 113 action, and if this Court is correct that NCR is barred from recovering under § 113 based on equitable factors, it would mean that NCR could never recover any costs from other PRPs *even if after trial in this case it is determined that NCR has no liability for those costs,* as must be assumed for the purposes of this Motion. This cannot be what the Court intended. Whether or not equitable factors can preclude NCR from recovering costs to clean up contamination caused by it and others together (*i.e.*, costs for which NCR and others share a "common liability"), NCR must still be afforded an opportunity to recover costs for cleaning contamination it had no part in causing. To hold otherwise would be inconsistent with CERCLA's public policy principles.

9

by affirmatively bringing this enforcement action, it cannot be similarly sued in *Whiting*. There are thus significant legal impediments to Plaintiffs' request for severance and consolidation.[9]

*Second*, even if these counterclaims could be re-filed in *Whiting,* doing so would be impractical and inefficient. As Plaintiffs acknowledge, the disposition of these counterclaims will turn on the Court's evaluation of a proposed consent decree to be entered *in this case*. Given that *this* action will determine whether the United States is subject to claims for contribution, it is only efficient and rational for claims seeking such contribution to be adjudicated in this action as well.[10]

*Third*, there is no merit to Plaintiffs' protestations that allowing these counterclaims to be litigated in this case would somehow "delay and impede the government's enforcement efforts." Motion, p. 6. The asserted counterclaims merely seek *costs and damages* from Plaintiffs, and therefore should not impact in any way the handling of the cleanup work by the governments' *enforcement* officials. Moreover, to the extent such concerns have any validity, the Court can easily mitigate them by sequencing the resolution of these claims in the exercise of what Plaintiffs themselves characterize as the Court's "inherent case management authority."

*Fourth*, consolidating these counterclaims into *Whiting* would improperly prejudice NCR. For over a year, NCR has been waiting for an opportunity to seek appellate

---

[9] Plaintiffs also mischaracterize these counterclaims, claiming that they are duplicative of the claims asserted in *Whiting*. This is not true. The only claims asserted by most of the other Defendants in *Whiting* are counterclaims for contribution against NCR and API. The counterclaims in this case are for contribution against Plaintiffs the United States and/or the State of Wisconsin. As they are different and distinct claims, there is no basis to Plaintiffs' claim of duplication and the cases cited by Plaintiffs are therefore inapposite. *See, e.g., Serlin v. Arthur Andersen & Co*., 3 F.3d 221, 223 (7th Cir. 1993) (dismissing claim because it was "*identical in all material respects*" to claim asserted in separate case) (emphasis added).

[10] In fact, the far more practical approach would be to sever Menasha's stayed third-party claim against the United States in *Whiting* and consolidate it into *this* case, as the disposition of that claim also will depend on the outcome of the proposed consent decree.

10

review of this Court's decisions in *Whiting*. *See, e.g.,* Plaintiffs' Motion for Partial Final Judgment Under Rule 54(b) (*Whiting* Dkt. #803). This Court stated that immediate review was not necessary because the remaining claims could "be resolved relatively swiftly (i.e., this year [2010]) . . . ." February 10, 2010 Order (*Whiting* Dkt. # 826), p. 3. Adding even more claims, at this late stage, could potentially prolong further NCR's ability to obtain appellate review. Such prejudice is compelling grounds for denying the consolidation requested by Plaintiffs. *See Vallero v. Burlington N. R. Co.*, 749 F. Supp. 908, 913 ("court should not order consolidation where the interests of any party would be prejudiced thereby.").

> *Fifth*, consolidation of these counterclaims with the existing claims in *Whiting* would not be appropriate because these two sets of claims are at vastly different stages of litigation. The counterclaims in this action have only just been asserted, and no discovery has been conducted. The claims in *Whiting,* on the other hand, have progressed through summary judgment and are ripe for appeal. Under such circumstances, consolidating claims is strongly disfavored. *See, e.g., Sommerfield v. City of Chicago*, 2009 U.S. Dist. LEXIS 15405 (N.D. Ill. Feb. 26, 2009) (denying motion to consolidate where the cases were "in very different procedural postures"); *Henderson v. National R.R. Passenger Corp.*, 118 F.R.D. 440, 441 (N.D. Ill. 1987) (consolidation inappropriate where one case "has almost completed discovery . . . [while] discovery is just beginning" in the other); *J & J Sports Productions, Inc. v. Live Oak County Post No. 6119 Veterans of Foreign Wars*, 2009 WL 1857986 (S.D. Tex. June 25, 2009) (denying motion to consolidate because one case had proceeded further in the discovery process than the other).

11

## CONCLUSION

For the foregoing reasons, there is no basis for Plaintiffs' request that the counterclaims asserted in this action be stricken, dismissed, and/or consolidated into the *Whiting* action. Accordingly, the Court should deny Plaintiffs' Motion in its entirety.

Respectfully submitted,

/s/ Kathleen L. Roach


SIDLEY AUSTIN LLP
Kathleen L. Roach (IL Bar No. 6191432)
Evan B. Westerfield (IL Bar No. 6217037)
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036
kroach@sidley.com

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (NY Bar No. 1475722)
Sandra C. Goldstein (NY Bar No. 2198745)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Phone: (212) 474-1000
Fax: (212) 474-3700

MARTEN LAW PLLC
Linda R. Larson (WA Bar No. 9171)
Bradley M. Marten (WA Bar No. 13582)
1191 Second Avenue
Suite 2200
Seattle, WA 98101
Phone: (206) 292-2600
Fax: (206) 292-2601

*Attorneys for NCR Corporation*


Dated: March 21, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 10-C-910 ) |
| NCR CORPORATION, APPLETON PAPERS INC., BROWN COUNTY, CITY OF APPLETON, CITY OF GREEN BAY, CBC COATING, INC., GEORGIA-PACIFIC CONSUMER PRODUCTS LP, KIMBERLY-CLARK CORPORATION, MENASHA CORP., NEENAH-MENASHA SEWERAGE COMMISSION, NEWPAGE WISCONSIN SYSTEMS, INC., P.H. GLATFELTER CO., U.S. PAPER MILLS CORP., and WTM I COMPANY, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that, on this 21st day of March 2011, a true and correct copy of the foregoing Memorandum in Opposition to Plaintiffs' Motion to Strike or Dismiss All Counterclaims and Cross-Claims was filed electronically via the Electronic Court Filing system and is available for viewing and downloading. In addition, a true and correct copy was served via first-class mail upon the following:

Peter C Karegeannes
Quarles & Brady LLP
411 E Wisconsin Avenue, Suite 2040
Milwaukee, WI 53202-4497

NCR CORPORATION

/s/ Kathleen L. Roach
One of Its Attorneys

13