UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>THE STATE OF WISCONSIN<br><br>　　　　　　　Plaintiffs<br><br>　　　　v.<br><br>NCR CORPORATION<br>APPLETON PAPERS INC.<br>BROWN COUNTY<br>CITY OF APPLETON<br>CITY OF GREEN BAY<br>CBC COATING, INC.<br>GEORGIA-PACIFIC CONSUMER PRODUCTS LP<br>KIMBERLY-CLARK CORPORATION<br>MENASHA CORP.<br>NEENAH-MENASHA SEWERAGE COMMISSION<br>NEWPAGE WISCONSIN SYSTEMS, INC.<br>P.H. GLATFELTER CO.<br>U.S. PAPER MILLS CORP.<br>WTM I COMPANY<br><br>　　　　　　　Defendants | Civil Action No. 10-C-910 |

**DEFENDANT NEWPAGE WISCONSIN SYSTEMS, INC.'s RESPONSE TO
USA's MOTION TO STRIKE OR DISMISS NEWPAGE's COUNTERCLAIM**

　　Defendant NewPage Wisconsin Systems, Inc. ("NewPage") files this Response to "Plaintiff's Joint Motion to Strike or Dismiss All Counterclaims and Cross Claims." Docs. 106, 107.

　　Defendant NewPage Wisconsin Systems, Inc.'s position in this litigation while not identical, is most akin to Co-Defendant Kimberly-Clark Corporation (K-C). Like K-C, NewPage's predecessor, Consolidated Papers Inc. (CPI) at its Appleton Mill, did not produce any carbonless copy paper (CCP), was not involved in any recycling of "broke," and did not engage in any de-inking of CCP. Rather, CPI operated a single lapping machine in the production of pulp. So lacking is the evidence of

any manufacturing process at the CPI facility either using PCBs, or generating PCB waste, that NewPage and NCR/API were imminently preparing to stipulate with a condition not pertinent here that the private party plaintiffs would not seek to introduce evidence against NewPage at the trial subsequently mooted by the Court's Decision and Order reported at *Appleton Papers, Inc. v. Geo. Whiting Paper Co.*, 2009 U.S. Dist. Lexis 117112 (E.D. Wisc. Dec. 16, 2009) (Appleton I).

The evidence upon which the USA bases its claim against NewPage utterly fails to show that NewPage **"share[s] any of the culpability that gave rise to this CERCLA action."** *Appleton Papers v. Geo. Whiting*, 2011 U.S. Dist. Lexis 20717 at *35 (E.D. Wisc. March 1, 2011) (Appleton II). Rather, the USA's evidence consists of two barely detectable hits of PCB (.22 ppb and .31 ppb) ("ppb," as in "parts per BILLION") both with Aroclor 1242, leading to the inescapable conclusion that this event was due to upstream manufacturing activities of others (the CPI Appleton facility was downstream from OU-1), with resultant PCB-contaminated River water entering the CPI facility. This infinitesimal PCB detection was in 1975, some four years after 98% of the damage to the Fox River had occurred. Appleton I at *75; Appleton II at *36.

There were a half-dozen or more PCB sampling events at the CPI facility throughout 1976, all but one of which proved non-detect. The exception was a 7.0 ug/l (milligrams per liter) grab sample from the facility effluent, with 1254 noted, an Aroclor that is commonly associated with hydraulic and cutting oils, not PCBs. This specific finding was described in a WDNR report as "negligible," so much so that WDNR did not even attempt to quantify CPI's or anyone's discharges of Aroclor 1254. CPI's subsequent sampling for PCBs conducted in 1980 and 1981, after River water previously used as non-contact cooling water was replaced with City Water, showed the facility effluent devoid of PCP contamination.

2

As the Court has noted, ***"the decision to hold defendants jointly and severally liable to the government in CERCLA actions has been and continues to be made on a case-by-case basis."*** Appleton II at *32 (citation omitted). Here, CPI (NewPage) benefitted exactly zero percent (0%) from others' manufacturing and recycling of PCB-containing CCP. Similarly, CPI's trivial-in-the-extreme contribution to the Fox River sediment PCB contamination, if any at all could even be calculated, adds zero dollars ($0) to the cost of cleanup. Indeed, WDNR found the contribution so negligible, it did not even attempt to calculate it. This is the sort of "inconsequential" contribution that adds nothing to the cost of cleanup. Cf. *PMC, Inc. v. Sherwin-William*, 151 F.3d 610, 616 (7th Cir. 1998) (although liability is strict, one whose polluting does not appreciably affect the cleanup cost, may, in the court's equitable discretion, pay nothing). Appleton I at *81-82.

The existing record fairly shows that as between USEPA and CPI, USEPA itself may be said to have been a greater contributor to the clean-up cost than CPI. While justifying its acts as "practical," the fact is USEPA allowed the continued use of PCB – laden pre-1971 carbonless copy paper. Appleton I at *76-77. But, isn't every disposal "practical" for someone? How is USEPA's practical solution materially different than other solutions which result in arranger liability, considering they have the same effect of releases of hazardous substances to the environment, with consequential cleanup costs? USEPA in the Federal Register announcing its decision proclaims its control over the disposition of CCP, and its intent to rid the nation of it by continuing to use it, with the attendant disposal and virtual guaranteed release of PCB contamination to the environment. If liability is strict, then should it be any less so for the USEPA? Simply put, if the faint evidence that is offered against NewPage can constitute a CERCLA-type transgression worthy of this Court's attention, it can be no less so for USEPA.

NewPage joins in and adopts the arguments of its Co-Defendants in their filings opposing the USA's motion to strike everyone's counterclaims. See Co-Defendants' filings: Doc. Nos. 113 (City of Appleton); 114 (CBC Coating, Inc. et al.); 115 (Kimberly-Clark Corporation); 116 (Menasha Corporation, et al.); 119 (Appleton Papers, Inc.), and 120 (NCR Corporation). NewPage adopts the arguments on the correct application of the Federal Rule of Civil Procedure. Further, the suggestion that NewPage re-plead in the private party action is to what end? NewPage was dismissed from that action (No. 08 C 16, Doc. 856) and to-date has no costs to recover, inasmuch as USEPA never viewed NewPage as a polluter deserving of a Unilateral Administrative Order (UAO), which makes it all the more curious why the USA seems intent on lumping NewPage with UAO-recipients and other like contributors to the mess, when USEPA early-on recognized the evidence even at its very best shows quite clearly NewPage's unequivocal *de minimis* status.

Finally, NewPage respectfully submits that USA's complaining of the sufficiency of the counterclaim allegations (Doc. 95 at p. 38-39) is belied by the fact that enough notice is apparently served to permit the USA to bring its motion, without any expressions of doubt or possible misunderstanding as to what the counterclaim is about. Should the Court find any merit to the USA's contention, NewPage requests 7 days to replead.

    Respectfully submitted this 24th day of March 2011

    NEWPAGE WISCONSIN SYSTEMS INC.

    By: */s/ Daniel C. Murray*

Daniel C. Murray
JOHNSON & BELL, LTD.
33 West Monroe St. Suite 2700
Chicago, Illinois 60603-5404
Tel. 312 984 0226
murrayd@jbltd.com

4

Certificate of Service

      I hereby certify that on March 24, 2011 I electronically filed the attached ***DEFENDANT NEWPAGE WISCONSIN SYSTEMS INC.'s RESPONSE TO USA's MOTION TO STRIKE OR DISMISS NEWPAGE's COUNTERCLAIM*** with the Clerk of the Court using the CM/ECF system, thereby sending notification of such filing to all Registered Users.

                                                                       */s/ Letitia M. Reyes*

JOHNSON & BELL, LTD.
Suite 2700
33 West Monroe Street
Chicago, IL 60603-5404
2678285

5