IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA and <br> THE STATE OF WISCONSIN, <br><br> Plaintiffs, <br><br> v. <br><br> NCR CORPORATION, *et al.* <br><br> Defendants. | Civil Action No. 10-C-910 <br><br> Hon. William C. Griesbach |

**PLAINTIFFS' JOINT AND CONSOLIDATED REPLY TO CERTAIN OBJECTING PARTIES' BRIEFS OPPOSING THE MOTION TO STRIKE OR DISMISS ALL COUNTERCLAIMS AND CROSS-CLAIMS[1]**

**Introduction**

The Objecting Parties raise a host of arguments that all, ultimately, miss the point. The United States and the State seek to dismiss or strike counterclaims and cross-claims in this case because: (1) those claims present legal issues that are distinct from the issues presented in the government's enforcement action, and closely aligned to claims being litigated in a related case; and (2) it will be more efficient to litigate these distinct legal issues separately. Our motion and proposed order specify – on a claim-by-claim basis – which claims should be dismissed with prejudice and which should be dismissed without prejudice to refile in a separate action. The

---

[1] This Reply Brief responds to arguments made in opposing briefs by the following "Objecting Parties": Menasha Corporation, CBC Coating, Inc., Neenah-Menasha Sewerage Commission, U.S. Paper Mills Corporation, WTM I Company, P.H. Glatfelter Company, City of Appleton, New Page Wisconsin Systems, Inc., and Kimberly-Clark Corporation. *See* Dkt. 113, 114, 115, 116, and 121. With Plaintiffs' consent, the Court extended the response deadline for NCR Corporation ("NCR") and Appleton Papers Inc. ("API"), and the Plaintiffs will file a separate reply on unique issues raised by those parties by April 7, 2011.

relief we seek would not grant the United States or the State any "immunity from defendants' counterclaims," as argued by Kimberly-Clark (Dkt. 115 at 4). Instead, we seek to have all potentially-viable *contribution* claims litigated together in the previously filed *contribution* case. If our Motion is denied it could yield a patently absurd result, with similar contribution cases concerning potential equitable shares for government dredging and government paper recycling being litigated separately in two different cases.

As the Seventh Circuit has recognized, "Rule 12(a)(4)(A) allows a party that files a motion to strike a pleading to delay filing his responsive pleading." *Sellers v. Henman*, 41 F.3d 1100, 1101 (7th Cir. 1994). It is clear on the face of Rule 12(a)(4)(A) that an answer is not due until after a Court denies a motion to dismiss pursuant to Rule 12. The Plaintiffs have filed a motion pursuant to Rule 12. Accordingly, the Plaintiffs have no present obligation under the Rules to answer the pending counterclaim. Defendants, collectively, focus on arguments that the United States' motion does not arise under one of the defenses specified in Rule 12(b). Not only is this argument incorrect - it is of no import. Defendants do not contest this Court's *authority* to dismiss or strike Defendants' claims for the reasons set out in our motion, *see* Dkt. 107 at 8-9 (citing cases for this Court's authority to dismiss or strike); instead they argue, essentially, that they would prefer that the Court not exercise its authority. Defendants' preference notwithstanding, the interests of judicial economy and efficient case management warrant granting of the Plaintiffs' motion.

### **Argument**

Given the current procedural posture of both this case and the related case, *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-C-16 and consolidated case (E.D. Wis.) (the "*Whiting* Case"), it would be inefficient and a waste of judicial resources to require the

United States and the State to litigate similar or identical claims in two separate cases. It would be similarly inefficient to require the United States to file answers to the counterclaims in this action where both a settlement agreement has been lodged and where, as Glatfelter candidly concedes, the "counterclaims are somewhat academic" in light of this Court's March 1, 2011 ruling in the *Whiting* Case. Dkt. 114 at 5. Given this concession, it is illogical to expend the Courts' resources on resolving those "somewhat academic" claims in the context of this enforcement case, when the Court should properly be focused on resolving issues that can help to advance, and ultimately resolve, this litigation and expedite the cleanup of the Lower Fox River and Green Bay Superfund Site.[2]

**1.    The Court's Recent Summary Judgment Order Highlights the Efficiency of Litigating the Enforcement Action Separately.**

On March 1, 2011, after the instant motion was filed, this Court granted summary judgment in favor of most of the Objecting Parties and some other defendants, holding that NCR and API, collectively, were required to reimburse each of them fully. *See Appleton Papers Inc. v. George A. Whiting Paper Co.*, No 08-C-16, 2011 WL 806411, at *14 (E.D. Wis. Mar. 1, 2011). Specifically, the Court found that those defendants (who are 8 of the 10 counterclaim

---

[2] It is largely beside the point for present purposes, but Glatfelter is wrong in saying that "Plaintiffs have not sought an order requiring Responding Defendants' [sic] to **do** anything, other than pay money" and that "[t]here is no claim in this case for a mandatory injunction to implement any portion of the remedy at this site." Dkt. 114 at 12. The United States' Fifth Claim for Relief invokes the Court's "jurisdiction to grant such relief as the public interest and the equities of the case may require" under CERCLA § 106, 42 U.S.C. § 9606, and it seeks an order compelling compliance with EPA's Unilateral Administrative Order – i.e., "a judgment in favor of the United States and against each of the UAO Recipients, that each Recipient is required to comply with all provisions of the UAO applicable to such UAO Recipient." Dkt. 30 at 30, 32.

Menasha is right that the statutory limitations on pre-enforcement judicial review of the selected cleanup remedy and the UAO for performance of that remedy in OUs 2-5 do not apply now that the Plaintiffs have instituted this enforcement action. Dkt. 116 at 11. Issues concerning the remedy and the UAO will be subject to judicial review in this case using the scope and standard of review specified by CERCLA – i.e., the review "shall be limited to the administrative record" and the agency decisions must be upheld "unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law." 42 U.S.C. § 9613(j)(1), (2). But that has no bearing whatsoever on whether duplicative contribution counterclaims belong in this case.

3

plaintiffs here) "are entitled to full contribution, however, for all of their appropriate costs incurred in cleaning up OU2-OU5, as well as any future costs they may be deemed liable for in those sections of river." *Id.* at *1. Summary judgment was also granted against NCR on its claims against the United States, making it clear that NCR and API cannot seek contribution from the United States for their cleanup costs. *Id.* at *16-*17. This leaves a situation where NCR and API cannot recover in contribution, and the other Objecting Parties are entitled to full contribution from NCR and API. Thus, there is no basis for collecting contribution from other parties like the United States and the State. As the Court emphasized in its March 1 Order, "contribution is an exercise in allotting responsibility for actual expenses sustained by PRPs, not expenses that have already been covered." *Id.* at *14.

With respect to OU1, that cleanup was performed and funded by WTM I Company and Glatfelter, with additional funding coming from Menasha Corporation. *See* Consent Decree in *United States v. P.H. Glatfelter Co. and WTM I Co.*, Case No. 03-C-949 (E.D. Wis. Entered April 12, 2004) ("2004 Consent Decree"), Dkt. Nos. 1, 4, 22, 23, 24, & 26. Each of these parties covenanted not to sue and agreed not to assert claims against the United States and the State with respect to their work or payments on that portion of the Site. *See* 2004 Consent Decree Dkt. 4 ¶¶ 92, 93, 98; Dkt. 26 ¶ 8. Although the OU1 defendants may argue that they have OU1 costs for which they have not released their claim against Plaintiffs, and they may argue that the Court has not yet entered summary judgment on their counterclaims against NCR and API with respect to OU1, this outstanding issue is quite small relative to the Plaintiffs' enforcement case and is best addressed, with any other contribution issues, in the *Whiting* case. The Court's March 1st decision leaves a setting where NCR and API are prohibited from bringing contribution claims against the United States and would likely be prohibited from bringing similar claims against the

4

State. Just as the Objecting Parties cannot recover in contribution for costs that have been or will be reimbursed by their insurers, *Whiting*, 2011 WL 806411, at * 14, they cannot recover in contribution for costs that will be reimbursed by NCR and API. Contribution claims under Section 113 can only be used for costs parties are required to bear that are "more than their fair share." *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-C-16, 2009 WL 32931036, at *3 (E.D. Wis. Nov. 18, 2009). In short – it is unclear that there are any tangible costs that Defendants actually seek to recover from the United States or the State – their counterclaims are merely protective. While that alone does not form a sufficient basis for dismissal with prejudice, Plaintiffs do not seek dismissal with prejudice on those grounds. What Plaintiffs seek is the ability to litigate enforcement issues in an efficient manner, while allowing the contribution claims to be managed, as appropriate, in a separate action.

**2. This Court Has Authority to Order Dismissal, or to Strike All Counter- and Cross-claims.**

Plaintiffs' opening brief cites to a series of cases that recognize the Court's authority to dismiss or strike claims here. Dkt. 107 at 7-9. That authority remains uncontested. The Seventh Circuit has recognized that "[a]s a general rule, a federal suit may be dismissed 'for reasons of wise judicial administration . . . wherever it is duplicative of a parallel action already pending in another federal court.'" *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (citing references omitted). District courts are accorded great discretion in determining whether an action is duplicative. *Id.* Similarly, the Court clearly has authority to sever these claims pursuant to Rule 21 of the Federal Rules of Civil Procedure, and the Court's broad discretion to sever claims under Rule 21 has likewise been recognized by the Seventh Circuit. *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). It is appropriate for the Court to exercise those powers here, either by dismissing the pending counterclaims and crossclaims with leave to

5

refile in the *Whiting* Case, or by severing those claims and consolidating the resulting separate action with the *Whiting* Case.

**3.      The Plaintiffs Seek Dismissal Based on Defenses Outlined in Rule 12(b).**

As we argued in our opening brief, certain counterclaims fall woefully short of the pleading requirements set out in Rule 8 of the federal rules of civil procedure, and by both *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Dkt. 107 at 7, n.11. It is entirely proper to test the legal sufficiency of the pleadings in a Rule 12(b) motion. *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (C.A.9 (Cal.),2003) ("Rule 12(b)(6), which tests the legal sufficiency of the claims asserted in the complaint, must be read in conjunction with Rule 8"). Kimberly-Clark and NewPage fail to satisfy the pleading requirement set by *Iqbal* and *Twombly*, and the United States and the State seek dismissal of Kimberly-Clark's and NewPage's claims, without prejudice, pursuant to Rule 12(b)(6). Dkt. 107 at 7 and 7 n.11. The bare-bones allegations by Kimberly-Clark and NewPage do not satisfy minimal pleading requirements. The other defendants allege liability based on dredging alone; based on both dredging and recycling; and based on theories derived from state law. Kimberly-Clark and NewPage only allege that "Counter-defendants are liable for response costs or damages incurred, or to be incurred, for PCB contamination of the Lower Fox River Site." Dkt. 50 at 53; Dkt. 95 at 38. They do not mention dredging. They do not mention recycling. Indeed, they do not allege any conduct by the United States or the State that could give rise to liability for the Site. Thus, their counterclaims should be dismissed without prejudice and re-filed (if at all) in the *Whiting* Case. The Plaintiffs' motion as to Kimberly Clark and NewPage clearly invokes the relevant pleading standard and is properly brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The United States also seeks dismissal of CERCLA § 107 claims filed by NCR and API. In the *Whiting* Case, this Court ruled on two separate occasions that a claim under CERCLA § 107 is not available to these parties. Such claims are still unavailable. This aspect of Plaintiffs' motion is also clearly based on NCR's and API's failure to state a claim under CERCLA § 107, and thus also properly invokes Rule 12(b)(6).

API also fails to state a claim in its "third claim" for reimbursement from the Hazardous Substance Superfund, given that Superfund reimbursement is only permitted after the completion of a cleanup action. *See* 42 U.S.C. § 9606(b)(2)(A); Dkt. 107 at 11. API essentially concedes that in its response brief. Dkt. 119 at 12 n. 9. Also, both API and NCR fail to state cognizable claims in their "declaratory judgment counterclaims" that parallel their affirmative defenses. Such a failures are actionable under Rule 12(b)(6) or Rule 12(f).

In sum, Plaintiffs have asserted a number of arguments pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Plaintiffs also assert that dismissal, severance, or striking of other counterclaims is appropriate based on separate authorities, and the Seventh Circuit has recognized that similar motions postpone a party's obligation to answer. *Sellers*, 41 F.3d at 1101. If this Court determines that Plaintiffs are not entitled to the relief they seek, we will respond in due course.[3] The clever procedural banter regarding the timing of this motion to dismiss, however, does nothing to alter the fact that this Court has the power to order the relief requested, or the fact that such relief is appropriate here.

---

[3] If the Court denies our motion to either dismiss, or sever and consolidate into the Whiting case, such that the counterclaims remain pending, we intend to further move the Court to stay or postpone our obligation to respond to the contribution counterclaims in light of the lodged proposed consent decree which, if entered by the Court, would completely resolve the contribution counterclaims against the United States.

7

**4. The "Compulsory Counterclaims" Doctrine Does Not Require Counterclaims to be Litigated in This Action.**

We do not argue, in this motion, that the Objecting Parties lack potentially viable contribution claims. We argue, however, that those claims should be litigated in the context of a separate action. Several Objecting Parties argue, in slightly different ways, that they are "*required* by Rule 13(a) to bring [their] CERCLA section 113(f) counterclaims against the U.S. Government and Wisconsin in this enforcement case *now*." Menasha Opposition at 8 (Dkt. 116) (emphasis in original). This statement raises several concerns. First, with respect to Menasha in particular, the exception set out in Rule 13(a)(2)(A) applies. That exception exempts a pleader from alleging an otherwise compulsory counterclaim if "when the action was commenced, the claim was the subject of another pending action." That is the case with respect to Menasha's claims against the United States, given that Menasha plead substantially the same claims in the *Whiting* Case.

Additionally, though the Objecting Parties may have needed to preserve any claims by asserting them now, Rule 13(a) does not require that those claims be *litigated* in this case. This is especially true where, as here, there is a related, previously filed contribution action. The Seventh Circuit has emphasized that the "compulsory counterclaim" doctrine merely reflects the fact that a party may face a claim preclusion defense if it waits and tries to assert a related claim in a subsequent action. *See Publicis Communication v. True North Communications Inc.*, 132 F.3d 363, 365-66 (7th Cir. 1997). But that principle has no relevance here, where the question is whether the contribution counterclaims that have just been asserted in this case (assuming they are not extinguished) should be litigated in another earlier-filed case, with the counter-defendants' full consent. *Cf. id.* at 366 ("If *A* promises *B* not to assert preclusion against some

8

claim if adjudication is postponed, then *B* safely may omit that claim from pending litigation, even if it meets the standards of Rule 13(a).").[4]

Menasha pleads that it "must be permitted to bring these claims against the U.S. Government" so that the Court can "equitably allocat[e] the response costs among the responsible parties" (Dkt. 116 at 20) and "blunt any inequitable distribution of costs" from the possible imposition of joint and several liability. (Dkt. 116 at 17 (quoting *Atlantic Research Corporation v. United States*, 551 U.S. 128 (2007)). But Menasha has already asserted and started litigating such claims in the *Whiting* Case, including its request for: (1) "the United States Government to pay to Menasha its equitable shares of response costs incurred by Menasha" for the Site as a whole; and (2) a "declaratory judgment to be binding in [that] action and in any future action by or against the United States Government" (*Whiting* Dkt. 392 at 10-11). In short, in the *Whiting* Case, Menasha has claimed the right to do the exact thing that it seeks to do here, a second time. It is unnecessary, and inefficient, to equitably allocate the same costs twice.[5]

---

[4]  Kimberly Clark and the City of Appleton are concerned that, in order to prosecute their claims in the *Whiting* Case, the State would need to agree to become a party. Kimberly Clark Opposition at 5; Appleton Opposition at 5. This is true, and the State has represented in its motion to this Court that "contribution counterclaims against the State should be dismissed with unqualified leave to re-file them in the *Whiting* Case." Dkt. 107 at 4. In short, the State has already agreed to become a party to the *Whiting* Case. In addition, the proposed order submitted by the Plaintiffs explicitly allows the re-filing of the claims against the State in the *Whiting* Case. Dkt. 106-1. The State's explicit consent to join the *Whiting* Case eliminates state sovereign immunity issues conjured up by some of the Defendants. *See* Dkt. 119 at 10-11; Dkt. 120 at 3.

[5]  We do not understand Menasha's suggestion that it should be allowed to pursue one contribution claim in the *Whiting* Case that "is derivative of the UAO issued by the U.S. EPA under CERCLA section 106" (Dkt. 116 at 14) and another set of contribution claims in this case that "are derivative of the Plaintiffs' . . . CERCLA section 107 joint and several liability claims" (Dkt. 116 at 25). Menasha's claim against the United States in the *Whiting* Case is all-encompassing , as shown by the above-quoted portions of its *Whiting* case complaint.

9

## 5. The Basic Facts Underlying the Counterclaims Are Well Established – Answering Counterclaims Would Serve No Immediate Purpose.

This is not a typical case. The Plaintiffs' enforcement action was filed almost three years after the *Whiting* case, after 12 parties had settled, and after two of those settlements had been appealed to the Seventh Circuit. The parties have been engaged in negotiations for more than a decade. The United States has already answered allegations similar to those it faces here *twice before*, both in response to Menasha's claims (concerning both dredging and recycling) and NCR's claims (concerning only dredging) in the *Whiting* Case. *Whiting* Dkt. 415, 416. Menasha's own duplicative counterclaim in this case cites or attaches, among other things: (1) the United States' answer in the *Whiting* Case; (2) the United States' discovery responses and expert's report in the *Whiting* Case; (3) deposition testimony and documents from other parties to the *Whiting* Case; (4) an array of materials downloaded from government websites; and (5) other materials that the defendants obtained from the United States and the State under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Wisconsin Public Records Act, Wis. Stat. § 19.31-19.39. Dkt. 48 at 23-83, 48-1, 48-2, 48-3, 48-4. Moreover, since the counterclaims were filed in December 2010, the Defendants submitted additional FOIA requests and the U.S. Department of Justice provided them more than 48,000 pages of documents concerning Army Corps activities at the Site and paper recycling by agencies of the Federal Government.

Similarly, the recycling claim against the State mimics the recycling claim against the United States in the *Whiting* Case. Menasha and the other defendants allege that both governments participated in the same recycling program run by the same wastepaper broker. *See, e.g.,* Dkt. 48 at 38 (Menasha's allegations concerning "Participation in Shade, Inc.'s WASTE NOT® Wastepaper Recycling Program by the U.S. Government and the State"); Dkt. 60

at 23-25 (Glatfelter's allegations that the United States and the State both participated in the Shade WASTE NOT® recycling program).

The basic facts underlying the Objecting Parties' claims are well known. The United States, for well more than 100 years, has conducted navigational dredging in the Lower Fox River and Green Bay. That dredging removed a large volume of PCB contaminated sediments, but also may have suspended and moved some remaining PCB-contaminated sediments in the riverbed and in Green Bay. The Court described those basic facts in its March 1 decision. *See Whiting*, 2011 WL 806411, at *16-17. The United States and the State also participated in a recycling program, and the scope of the United States' participation is discussed extensively in United States' Proposed Findings of Fact that were exchanged with all of the Objecting Parties during the course of the *Whiting* Case. No purpose is satisfied by an immediate answer here. What is clear, however, is that these contribution issues, issues that have already been litigated over the course of several years, are most efficiently litigated in one discrete procedural setting, and both the Federal Rules of Civil Procedure and Seventh Circuit caselaw, as discussed above, recognize this Court's authority to manage its docket efficiently. *See generally* Fed. R. Civ. P. 1 (providing that the Federal Rules of Civil Procedure "be construed and administered to secure the just, speedy and inexpensive determination of every action and proceeding"). The Court therefore should allow the litigation of duplicative contribution claims in just one case, rather than two.

**6.     The Potential Settlement Resolving United States' Liability, and the Potential of Appeal in the *Whiting* Case, Weighs In Favor of Dismissal and/or Severance of Counterclaims Here**

A Consent Decree has been lodged that, if entered, would bar Objecting Parties' claims against the United States. Through this Consent Decree the United States and two other parties

11

would pay a total of $5.2 million dollars, and thereby reduce other parties' liability as provided by CERCLA. *See* 42 U.S.C. § 9613(f)(2) (a CERCLA settlement "does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement"). Although the United States would have no obligation to pay anything in contribution under the decisions in the *Whiting* Case, NCR and API have made clear that they plan to appeal and a judicially-approved settlement may afford a more certain and final resolution of the United States' own alleged liability for the Site. Before the Plaintiffs can request entry of the Consent Decree, however, they must evaluate public comments, a process which is currently ongoing.[6] The Plaintiffs hope to complete that review in April. At this relatively early stage of the enforcement action, it makes little sense to expend both judicial resources and the parties' resources by pushing forward with the litigation of Defendants counterclaims against Plaintiffs.

Also, a host of major issues in the *Whiting* Case have been resolved through a series of decisions by this Court, including the Court's August 20, 2008 decision dismissing NCR's and API's CERCLA § 107 contribution claims (*Whiting* Dkt. 227); the Court's November 18, 2009 decision reiterating that NCR and API cannot pursue § 107 claims (*Whiting* Dkt. 751); the Court's December 16, 2009, decision denying NCR's right to contribution (*Whiting* Dkt. 795), and the Court's March 1, 2011, decision discussed above (*Whiting* Dkt. 1080). Litigation of the remaining issues in the *Whiting* contribution action may well be defined by which, if any, of those prior decisions will be appealed. The issues likely to be reviewed at some point on appeal are integrally tied to other parties' ability to assert counterclaims against the Plaintiffs, and the

---

[6] We received seven different sets of comments in opposition to the proposed Consent Decree from: (1) NCR and API; (2) Menasha; (3) Glatfelter; (4) CBC Coating; (5) WTM I; (6) NMSC; and (7) U.S. Paper. Taken together, the comments and the accompanying attachments comprise roughly 7,800 pages.

12

Seventh's Circuit's decision on those issues will define the scope of Objecting Parties' claims against the United States and the State. In short, the next steps to be taken in the *Whiting* Case will inform the appropriate progression of the counterclaims that the Objecting Parties' filed here. Accordingly, joining all of those contribution actions into a single action makes sense as a case management tool.

## Conclusion

For the foregoing reasons, the Court should strike or dismiss all counterclaims and cross-claim assert in this case, granting leave and conditional leave to re-file some of those claims in the *Whiting* Case, as described above and in our opening brief.

Respectfully submitted,

For the United States of America

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

Dated: March 31, 2011         s/ *Randall M. Stone*
RANDALL M. STONE, Senior Attorney
JEFFREY A. SPECTOR, Trial Attorney
IVA ZIZA, Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Telephone:   202-514-1308
Facsimile:    202-616-6584
E-Mail:        randall.stone@usdoj.gov

Dated: March 31, 2011         s/ *Matthew R. Oakes*
JOSHUA M. LEVIN
MATTHEW R. OAKES
PERRY M. ROSEN
Environmental Defense Section

13

U.S. Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3986
Telephone: 202-514-4198
joshua.levin@usdoj.gov


GREGORY J. HAANSTAD
Attorney for the United States, Acting
Under Authority Conferred by 28 U.S.C. § 515

SUSAN M. KNEPEL
Assistant United States Attorney
Office of the United States Attorney
517 E. Wisconsin Avenue, Room 530
Milwaukee, WI 53202


For the State of Wisconsin

| | |
|---|---|
| Dated: March 31, 2011 | s/ *Matthew R. Oakes for Cynthia R. Hirsch* |

CYNTHIA R. HIRSCH
LORRAINE C. STOLTZFUS
Assistant Attorneys General
Wisconsin Department of Justice
17 West Main Street
P.O. Box 7857
Madison, Wisconsin 53707-7857

14

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this day, the foregoing Brief was filed electronically with the Clerk of the Court using the Court's Electronic Court Filing System, which sent notification of such filing to the following counsel:

**Mary Rose Alexander**
Latham & Watkins LLP
mary.rose.alexander@lw.com

**Thomas Armstrong**
von Briesen & Roper SC
tarmstro@vonbriesen.com

**Paul Bargren**
Foley & Lardner LLP
pbargren@foley.com

**Linda E. Benfield**
Foley & Lardner LLP
lbenfield@foley.com

**Dennis P. Birke**
DeWitt Ross & Stevens SC
db@dewittross.com

**Steven P. Bogart**
Reinhart Boerner Van Deuren SC
sbogart@reinhartlaw.com

**Michael P. Carlton**
von Briesen & Roper SC
mcarlton@vonbriesen.com

**Evan R. Chesler**
Cravath Swaine & Moore LLP
echesler@cravath.com

**Marc E. Davies**
Greenberg Traurig LLP
daviesm@gtlaw.com

**Brandon J. Evans**
Hermes Law Ltd.
bje@hermeslawltd.com

**Sandra C. Goldstein**
Cravath Swaine & Moore LLP
sgoldstein@cravath.com

**Thomas R. Gottshall**
Haynsworth Sinkler Boyd PA
lgantt@hsblawfirm.com

**Eric W. Ha**
Sidley Austin LLP
eha@sidley.com

**Scott W. Hansen**
Reinhart Boerner Van Deuren SC
shansen@reinhartlaw.com

**William H. Harbeck**
Quarles & Brady LLP
william.harbeck@quarles.com

**Michael L. Hermes**
Hermes Law Ltd.
mlh@hermeslawltd.com

**Cynthia R. Hirsch**
Wisconsin Department of Justice
hirschcr@doj.state.wi.us

**Caleb J. Holmes**
Greenberg Traurig LLP
holmesc@gtlaw.com

**Philip C. Hunsucker**
Hunsucker Goodstein & Nelson PC
phunsucker@hgnlaw.com

**Paul G. Kent**
Stafford Rosenbaum LLP
pkent@staffordlaw.com

**Ericka L Krumrie**
Hermes Law Ltd
elk@hermeslawltd.com

**Linda R Larson**
Marten Law PLLC
llarson@martenlaw.com

**Susan E. Lovern**
von Briesen & Roper SC
slovern@vonbriesen.com

**Kevin J. Lyons**
Davis & Kuelthau SC
klyons@dkattorneys.com

**Karl S. Lytz**
Latham & Watkins LLP
karl.lytz@lw.com

| | |
|---|---|
| **David G. Mandelbaum**<br>Greenberg Traurig LLP<br>mandelbaumd@gtlaw.com | **Thomas M. Phillips**<br>Reinhart Boerner Van Deuren SC<br>tphillip@reinhartlaw.com |
| **Bradley M Marten**<br>Marten Law PLLC<br>bmarten@martenlaw.com | **Joan Radovich**<br>Sidley Austin LLP<br>jradovich@sidley.com |
| **Tara M. Mathison**<br>Davis & Kuelthau SC<br>tmathison@dkattorneys.com | **Ronald R. Ragatz**<br>DeWitt Ross & Stevens SC<br>rrr@dewittross.com |
| **Meline G MacCurdy**<br>Marten Law PLLC<br>mmaccurdy@martenlaw.com | **Alexandra Reeve Givens**<br>Cravath Swaine & Moore LLP<br>agivens@cravath.com |
| **Stephen F. McKinney**<br>Haynsworth Sinkler Boyd PA<br>smckinney@hsblawfirm.com | **Kathleen L. Roach**<br>Sidley Austin LLP<br>kroach@sidley.com |
| **Heidi D. Melzer**<br>Hermes Law Ltd.<br>hdm@hermeslawltd.com | **Megan A. Senatori**<br>DeWitt Ross & Stevens SC<br>ms@dewittross.com |
| **Elizabeth K. Miles**<br>Davis & Kuelthau SC<br>emiles@dkattorneys.com | **Sarah A. Slack**<br>Foley & Lardner LLP<br>sslack@foley.com |
| **Sabrina Mizrachi**<br>Greenberg Traurig LLP<br>mizrachis@gtlaw.com | **Margaret R. Sobota**<br>Sidley Austin LLP<br>msobota@sidley.com |
| **Monique M. Mooney**<br>Greenberg Traurig LLP<br>mooneym@gtlaw.com | **James P. Walsh**<br>Appleton City Attorney<br>jim.walsh@appleton.org |
| **William J. Mulligan**<br>Davis & Kuelthau SC<br>wmulligan@dkattorneys.com | **Ted Waskowski**<br>Stafford Rosenbaum LLP<br>twaskowski@staffordlaw.com |
| **Kelly J. Noyes**<br>von Briesen & Roper SC<br>knoyes@vonbriesen.com | **Evan B. Westerfield**<br>Sidley Austin LLP<br>evanwesterfield@sidley.com |
| **Nancy K. Peterson**<br>Quarles & Brady LLP<br>nancy.peterson@quarles.com | **Richard C. Yde**<br>Stafford Rosenbaum LLP<br>ryde@staffordlaw.com |
| Dated:   March 31, 2011 | s/   Matthew R. Oakes |