IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 10-C-910 |
| v. | ) ) | Hon. William C. Griesbach |
| NCR CORPORATION, *et al.* | ) ) ) ) | |
| Defendants. | ) ) | |

**JOINT REPLY TO BRIEFS BY NCR CORPORATION AND APPLETON PAPERS INC. IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS**

The CERCLA § 107 counterclaims asserted by NCR Corporation ("NCR") and Appleton Papers Inc. ("API") fail to state a claim upon which relief can be granted, and they should be dismissed with prejudice. Parties like NCR and API cannot manufacture a right to assert § 107 claims just by pleading divisibility (as claimed by both NCR and API) or non-liability (as claimed by API). In any event, API's non-liability arguments are legally flawed, as shown below. Finally, NCR's and API's declaratory judgment counterclaims should be dismissed because, viewed most charitably, they merely duplicate defenses and denials in their answers and, at worst, they seek to pre-litigate Superfund reimbursement claims that are not yet ripe for consideration under the plain language of the statute.[1]

---

[1] All facts in this brief are taken from NCR's and API's answers and counterclaims and from public records such as court orders. The Court may take judicial notice of matters of public record without converting a motion to dismiss to a motion for summary judgment. *Bernegger v. Wash. Mut., F.A.*, Nos. 07-C-1028, 08-C-0335, 2008 WL 4722392, at *1 n.3 (E.D. Wis. Oct. 24, 2008) (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)). *Accord United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

**1. NCR and API Cannot Assert Claims Under CERCLA § 107(a).**

In its two prior decisions on the issue in the *Whiting* Case, this Court ruled that NCR and API must assert any claims against others under § 113(f) – rather than under §107(a) – due to the "relevant 'procedural circumstances.'" *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-C-16, 2009 WL 3931036, at *1, *5 (E.D. Wis. Nov. 18, 2009) (quoting *United States v. Atl. Research Corp.,* 551 U.S. 128, 139 (2007)). The statute itself spells out those procedural circumstances. A party may sue for contribution under §113(f): (1) "during or following any civil action under [CERCLA § 106 or § 107(a)];" or (2) after the party "has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement." 42 U.S.C. § 9613(f)(1), (f)(3)(B). Even before this new case was filed, both of those conditions applied to NCR and API; they had been sued under § 106 and § 107(a) and they had entered into a set of administrative and judicially approved partial settlements that are referenced in their answers and counterclaims. Dkt. 65 at 35; Dkt. 82 at 51-52.[2] Thus, this Court held that "[w]hatever amounts they are entitled to recover must be recovered under § 113(f)." *Appleton Papers Inc. v. George A. Whiting Paper Co.*, 572 F. Supp. 2d 1034, 1043-44 (E.D. Wis. 2008).[3]

---

[2] *See United States and the State of Wisconsin v. Appleton Papers Inc. and NCR Corp.*, No. 01-c-0816 (E.D. Wis.) (Dkt. 1 (Complaint), Dkt. 2 (Proposed Consent Decree), and Dkt. 13 (Consent Decree, as entered by the Court on December 10, 2001)); *United States and the State of Wisconsin v. NCR Corp. and Sonoco-U.S. Mills, Inc.*, No. 06-0484 (E.D. Wis.) (Dkt. 1 (Complaint), Dkt. 2 (Proposed Consent Decree), Dkt. 8 (Decision and Order Approving Consent Decree)).

[3] Other courts have adopted the same view, including the Eighth Circuit in a decision issued earlier this week. *See Morrison Enters., LLC v. Dravo Corp.*, Nos. 10-1468, 10-1469, 2011 WL 1237526, at *5-6 (8th Cir. April 5, 2011) (holding that a PRP that had been sued under § 107(a) and entered into administrative and judicially approved settlements with the United States "could not maintain a cost recovery action under § 107(a).").

NCR's and API's only answer to that is their contention that this lawsuit creates a new and different "procedural circumstance" that gives them a right to sue under § 107(a). Dkt. 119 at 3-6; Dkt. 120 at 9-13. That argument turns the language of the statute on its head. This is an action against NCR and API under § 106 and § 107(a), and CERCLA § 113(f) expressly authorizes parties like NCR and API to "seek *contribution* from any other person who is liable or potentially liable . . . *during or following any [such] civil action*." 42 U.S.C. § 9613(f)(1) (emphasis added). There simply is no textual or logical support for their theory that a defendant in a governmental enforcement action like this somehow acquires a new right to sue under § 107(a) to recover response costs.

As the Supreme Court emphasized in *Atlantic Research*, a claimant's ability to sue under § 107(a) depends on procedural circumstances and it is not necessarily limited to whether the claimant is or is not a responsible party. 551 U.S. 128. Under the view espoused by NCR and API, the actual procedural circumstances never matter; all that matters is whether the claimant *pleads* innocence and/or a reasonable basis for apportionment.[4] That would afford claimants a tactical choice between § 107(a) and § 113(f), and parties like NCR and API who "would prefer

---

[4] It is important to note that pleas of "non-liability," "divisibility," and "no common liability" are legal conclusions that a court need not accept in considering a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). In addition, the Eighth Circuit's recent decision emphasizes that the "common liability" discussion in *Atlantic Research* should not be read as placing undue limits on the right to seek contribution under § 113(f), as explained in this portion of the court's opinion:

> Morrison, the City and Dravo share liability for contaminating the City's ground water. They also share liability for operating Well-D to remove those contaminants. This shared liability is sufficient to support a § 113(f) contribution claim. Many of the factors appellants have raised with respect to common liability may be relevant to the proper allocation of liability and response costs among the parties but do not prevent appellants from seeking contribution from Dravo, subject to any limitations CERCLA places on that ability.

*Morrison Enters.*, 2011 WL 1237526, at *9.

3

an apportionment scheme" could then "avoid reliance on the sorts of equitable considerations that are inherent in a contribution claim." *Appleton Papers*, 2009 WL 3931036, at *1. But "[t]hat choice of remedies simply does not exist." *Atlantic Research*, 551 U.S. at 140. NCR's and API's third stab at § 107(a) claims fails just like their two earlier tries.[5]

**2. Although they are Largely Irrelevant for Present Purposes, API's Non-Liability Arguments are Legally Baseless.**

**a. API's View of CERCLA Owner Liability is Flat Wrong.**

CERCLA imposes liability on current owners and past owners of a "facility . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance . . . ." 42 U.S.C. § 9607(a).[6] The term "facility" is defined to include not only "any site or area where a hazardous substance has been deposited . . . or otherwise come to be located," *id.* at § 9601(9)(B), but also "any building, structure, installation, equipment, pipe or pipeline, . . . landfill, storage container, motor vehicle, rolling stock, or aircraft," *id.* at § 9601(9)(A). In its answer and counterclaims, API admits that: (1) its Appleton Facility and the Combined Locks Facility each qualify as a "facility" within the meaning of CERCLA §§ 101(9) and 107(a); and (2) "the Site consists of one or more facilities within the meaning of the cited sections." Dkt. 65 at 12-13.

---

[5] Although they have no viable contribution claims of their own after the Court's rulings in the *Whiting* Case, NCR and API argue against having other parties' contribution claims against the United States and the State re-filed in that contribution case. Dkt. 119 at 10-12; Dkt. 120 at 9-11. Those arguments fail for the reasons detailed in our opening brief, and for at least two additional reasons. First, the State has consented to be a defendant in the *Whiting* Case, and reiterates its consent here, so there is no state sovereign immunity problem as theorized by API. Second, there is no bar to adding parties like Kimberly-Clark and NewPage to that action if they wish to pursue contribution claims against the United States and the State.

[6] The phrase "from which there is a release . . ." modifies subparagraphs (1) through (4) in § 107(a), although it is tacked on to the end of § 107(a)(4) in the codified version of the statute. That formatting quirk was "simply a printer's error." *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043 n.16 (2d Cir. 1985). *Accord Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 934 n.7 (8th Cir. 1995).

Yet API goes astray in arguing that CERCLA "owner" liability only extends to the owner of the realty that "is the focus of the cleanup efforts." Dkt. 119 at 7. Under the plain language of the statute, an owner of one "facility" (like a building, a pipe, or a motor vehicle) can be liable for releases from his facility that contaminate another "facility" that he does not own (like the area where those hazardous substances have "come to be located"). That is quite clear from the case law in this circuit and other circuits. *See Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 750-751 (7th Cir. 1993) ("Each of the tanker trucks owned by Detrex . . . constituted prima facie a 'facility' within the meaning of the Superfund law" and "Detrex was liable under the Superfund statute for the spillage from its own Trucks" at Plaintiff's plant); *Uniroyal Chem. Co., Inc. v. Deltech Corp.*, 160 F.3d 238, 253 (5th Cir. 1999) (Defendant's tanker truck was a "facility" from which there was a release when it ruptured at Plaintiff's trucking terminal, which was another "facility"); *Westfarm Assocs. Ltd. P'ship v. Wash. Suburban Sanitary Comm'n*, 66 F.3d 669, 680 (4th Cir. 1995) (defendant's sewer pipes were a "facility" and defendant was liable for contamination of plaintiff's property due to releases of hazardous substances from those pipes).[7] As shown by those cases, CERCLA owner liability is not limited to the owner of the contaminated site.

---

[7] One of the two cases cited by API cannot be squared with the Seventh Circuit's decision in *Amcast*, so it is not good law in this circuit. *See ACC Chem. Co. v. Halliburton Co.*, 932 F. Supp. 233, 238 (S.D. Iowa 1995) (finding no owner liability because "the truck is not the facility in question in this case"). In the other case cited by API, the real problem with the owner liability theory was that "releases" from the defendant's industrial facility had not caused the incurrence of response costs at the contaminated site. *United States v. Ne. Pharm. & Chem. Co., Inc.*, 810 F.2d 726 (8th Cir. 1986) ("NEPACCO"). NEPACCO had a contractor transport its waste seven miles to the Denny Farm Site and dump it there, *id.* at 730, so NEPACCO did not contest its liability as a party that "arranged for disposal . . . of hazardous substances" at the Denny Farm Site under 42 U.S.C. § 9607(a)(3). *See* Brief of Appellant, *United States v. Ne. Pharm. & Chem. Co., Inc.*, No. 84-1837-WM, 1984 WL 566408 (8th Cir. Oct. 4, 1984) ("NEPACCO does not disagree with the District Court's opinion that it falls within the liability expressed in Section 107(a)(3).").

### b.     API and NCR Share Joint Liability for this Site.

A court-confirmed arbitration award conclusively establishes API's and NCR's joint liability for this Site. As explained in API's answer and counterclaims: "API purchased certain assets from NCR Corporation ('NCR') on June 30, 1978, including a paper coating plant located in Appleton, Wisconsin ('Appleton Plant') that had been previously owned by Appleton Coated Paper Company and a paper mill located in Combined Locks, Wisconsin ('Combined Locks Mill') that had been previously owned by Combined Paper Mills, Inc." Dkt. 65 at 45-46. NCR and API disagreed about their retention and assumption of liabilities for this Site and sued each other over that in an action filed in the U.S. District Court for the Southern District of New York in 1995.[8] Those issues were resolved by a 1998 Settlement Agreement and a subsequent arbitration award that the U.S. District Court for the Southern District of New York confirmed and entered as a final judgment in 2007. As a result API and NCR now share a joint liability for this Site, with API paying 60% and NCR paying 40% of their collective expenditures. Dkt. 124-2 at 6-11.[9]

---

[8]  *See AT&T Global Info. Solutions Co. v. Appleton Papers Inc.*, No. 95-cv-04620-KTD (S.D.N.Y.). NCR formerly was known as AT&T Global Information Solutions Company.

[9]  As noted in prior filings, API filed the arbitration award and judgment as part of the appeal record in an insurance coverage case before the Wisconsin Court of Appeals. The resulting decision in that case discusses the events that led up to entry of that confirmed arbitration award and judgment, as follows :

> [I]n June 1995, NCR sued API in federal court, seeking indemnification for its potential liabilities based on the 1978 Sale Agreement (hereafter '1995 NCR Litigation'). API denied assuming liability for PCB contamination under the 1978 Sale Agreement and filed a cross-claim. Each company claimed that under the 1978 Sale Agreement, the other party was required to indemnify all costs of pollution remediation. . . . Pursuant to the 1998 Settlement Agreement, they agreed as follows: 'If any costs or damages were incurred in the future with respect to [PCB contamination of the Lower Fox River], API and NCR would split the first $75,000,000 of [remediation] costs, with API paying 55% and NCR paying 45%.' The 1998 Settlement Agreement also bound the parties to arbitration 'before a panel of three lawyers with expertise in environmental law'

6

Collateral estoppel principles "foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against the same or a different party." *United States v. Mendoza* 464 U.S. 154, 159 n.4 (1984)). When it has been judicially-confirmed, "[a]n arbitration award counts as a final judgment for collateral estoppel purposes." *Manion v. Nagin*, 394 F.3d 1062, 1066-67 (8th Cir. 2005). *Accord Coffey v. Dean Witter Reynolds Inc.*, 961 F.2d 922, 927-28 (10th Cir. 1992). Thus, due to the court-confirmed arbitration award and judgment between NCR and API, API is estopped from denying that NCR and API share joint responsibility for any CERCLA liabilities associated with this Site.

**3. The Court Should Strike or Dismiss NCR's and API's Declaratory Judgment Counterclaims.**

NCR and API do not discuss or distinguish the cases we cite in our main brief, which demonstrate that the "'Declaratory Judgment Act . . . is not . . . a vehicle for bringing counterclaims to a suit that has already been filed when those counterclaims mirror defenses already raised'" in a CERCLA case. Dkt. 107 at 15 (quoting *United States v. Saporito*, 684 F. Supp. 2d 1043, 1064 (N.D. Ill. 2010)). And the authorities that NCR and API cite to try to save such counterclaims are unpersuasive or entirely off-point, as shown below.

First, the main authorities cited by NCR endorse use of Declaratory Judgment Act claims to afford a first-party plaintiff "an early adjudication *without waiting until his adversary should see fit to begin suit*"[10] and to relieve a "Damoclean *threat of impending litigation* which [an]

---

to determine 'the parties' respective shares' if more than $75 million in costs were incurred. . . . After a contested two-day arbitration hearing, the arbitrators allocated responsibility for costs in excess of the $75 million threshold as sixty percent to API and forty percent to NCR. On February 26, 2007, judgment in the 1995 NCR Litigation was entered accordingly.

*Westport Ins. Corp. v. Appleton Papers Inc.*, 327 Wis. 2d 120, 135-39 (Wis. App. 2010).

[10] Dkt. 120 at 8 (quoting *E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852, 854 (7th Cir. 1937) (emphasis added).

adversary might brandish, *while initiating suit at his leisure—or never*."[11] Those principles have no relevance here; our motion targets declaratory judgment counterclaims that mirror denials and defenses to claims that Plaintiffs have already filed against NCR and API.[12]

Second, in most of the declaratory judgment counterclaim cases cited by NCR and API, the claims did not duplicate the counterclaimants' defenses and the counterclaimants actually sought additional findings and affirmative relief against the counter-defendants.[13] That is not true of NCR's and API's claims for a "Declaratory Judgment Regarding Non-Liability" (Dkt. 65 at 48) and API's and NCR's divisibility-based counterclaims, which merely react to "Plaintiffs' claim that liability at the Site is joint and several" (Dkt. 65 at 49) and the allegation that "NCR is jointly and severally liable for all of the [Plaintiffs'] response costs at the Lower Fox River site." (Dkt. 82 at

---

[11] Dkt. 120 at 8 (quoting 10B Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2751 (3d ed. 1998)) (emphasis added).

[12] We do not doubt that private parties with an entwined corporate history may be allowed to litigate real disagreements about their contractual allocation of CERCLA liabilities through Declaratory Judgment Act claims, as in one case cited by NCR. Dkt. 120 at 7 (citing *GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615 (7th Cir. 1995)). Those are exactly the sort of claims that were resolved by the above-described arbitration award and final judgment between NCR and API. That does not mean that Declaratory Judgment Act claims concerning CERCLA liability always are proper, especially where, as here, they take the form of counterclaims that merely duplicate defendants' denials and defenses to the main claims in the case.

[13] *See LeMaster v. USAA Life Ins. Co.*, No. 95-1124-CIV, 1995 WL 708656, at *3 (M.D. Fla. Nov. 27, 1995) (noting that "USAA's Counterclaim sufficiently differs from USAA's affirmative defenses and from Plaintiff's Complaint as to factual and legal questions" and "USAA's Counterclaim seeks affirmative relief of costs and equitable remedies as opposed to mere affirmative defenses which are used to negate liability"); *Dugan v. City of W. Chicago*, No. 08-C-2223, 2008 WL 5423565, at *1 (N.D. Ill. Dec. 29, 2008) (noting that the City's counterclaim sought "a finding it wishes to use not only to defend against the [plaintiff], but also to head off any future litigation by [an associated counter-defendant]"). One older district court case cited by API is difficult to square with more recent Seventh Circuit law cited in our main brief. *Compare England v. Deere & Co.*, 158 F. Supp. 904, 905 (S.D. Ill. 1958) (declining to dismiss declaratory judgment claims that mirrored plaintiff's claims for patent validity and infringement) *with Tempco Elect. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987) (affirming dismissal of a claim for a declaration of trademark non-infringement that mirrored a pending infringement claim).

8

54). The denials and defenses asserted by NCR and API advance exactly the same arguments. Dkt. 65 at 34 ("API Not Liable Under CERCLA" and "Harm Divisible – No Joint and Several Liability"); Dkt. 82 at 41 ("NCR is not jointly or severally liable for Plaintiffs' response costs at the Lower Fox River site because the harm giving rise to those response costs is divisible . . ."). Just as in the *Saporito* case, the declaratory judgment counterclaims add nothing to this CERCLA case, so they should be stricken or dismissed.

Finally, while API concedes that it cannot litigate its right to reimbursement from the Superfund in this case (*see* Dkt. 119 at 12 n.9), API cites that improper purpose as its only reason for pursuing declaratory judgment counterclaims, including its demand for some sort of stand-alone divisibility and apportionment determination. In essence, API and NCR seek to pre-litigate Superfund reimbursement issues to circumvent separate and distinct administrative process and claim timing requirements established by CERCLA, as shown by this excerpt from API's brief:

> Declarations addressing these disputed issues will serve useful purposes. For example, at the appropriate time in the future, API intends to petition the EPA for reimbursement of the costs it incurred to implement the 106 Order pursuant to CERCLA § 106(b)(2)(A). If the Court determines in this action that API has no CERCLA liability and/or that the harm is divisible (rendering API's liability several only), such rulings will have direct bearing upon API's right to reimbursement. However, such a petition can be filed only after "completion of the required action" specified in the 106 Order, which is likely to be many years from now – long after this case has been closed. Therefore, it is essential that API secure definitive judicial declarations in this action on the questions of API's CERCLA liability and divisibility of the harm so that there can be no questions as to the Court's rulings in future administrative proceedings before the EPA.

Dkt. 119 at 13. As explained in our main brief (Dkt. 107 at 12-13), PRPs cannot litigate their Superfund reimbursement rights "until they have exhausted the administrative remedies set forth in the statute." *United States v. Dico*, 136 F.3d 572, 576 (8th Cir. 1998). And it is well-settled that declaratory judgment claims cannot be employed to circumvent statutory and regulatory administrative exhaustion requirements. *See, e.g., Heckler v. Ringer*, 466 U.S. 602, 621 (1984); *Green v. Meese*, 875 F.2d 639, 642 (7th Cir. 1989); *Bradford School Bus Transit, inc. v. Chi.*

9

*Transit Auth.*, 537 F.2d 943, 948-49 (7th Cir. 1976); *see also* Fed. R. Civ. P. 57 advisory committee's note ("A declaration may not be rendered if a special statutory proceeding has been provided for the adjudication of some special type of case . . . ."). For that added reason, the Court should dismiss the improper declaratory relief claims asserted by API and NCR.

**Conclusion**

For the reasons detailed above and in the Plaintiffs' principal brief in support of their motion, the Court should: (1) dismiss the counterclaims that NCR and API have asserted under NCR's CERCLA § 107, with prejudice; (2) dismiss API's counterclaim for Superfund reimbursement, without prejudice; and (3) strike or dismiss NCR's and API's declaratory judgment counterclaims, without prejudice.

Respectfully submitted,

For the United States of America

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

Dated: April 7, 2011          s/ *Randall M. Stone*
RANDALL M. STONE, Senior Attorney
JEFFREY A. SPECTOR, Trial Attorney
IVA ZIZA, Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC   20044-7611
Telephone:     202-514-1308
Facsimile:     202-616-6584
E-Mail:        randall.stone@usdoj.gov


Dated: April 7, 2011          s/ *Matthew R. Oakes*
JOSHUA M. LEVIN
MATTHEW R. OAKES
PERRY M. ROSEN
Environmental Defense Section
U.S. Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3986
Telephone:  202-514-4198
joshua.levin@usdoj.gov


GREGORY J. HAANSTAD
Attorney for the United States, Acting
Under Authority Conferred by 28 U.S.C. § 515

SUSAN M. KNEPEL
Assistant United States Attorney
Office of the United States Attorney
517 E. Wisconsin Avenue, Room 530
Milwaukee, WI  53202

                    For the State of Wisconsin

Dated: April 7, 2011                    s/ *Cynthia R. Hirsch*
                                                CYNTHIA R. HIRSCH
                                                Assistant Attorneys General
                                                Wisconsin Department of Justice
                                                17 West Main Street
                                                P.O. Box 7857
                                                Madison, WI 53707-7857

CERTIFICATE OF SERVICE

      The undersigned hereby certifies that, on this day, the foregoing Brief was filed electronically with the Clerk of the Court using the Court's Electronic Court Filing System, which sent notification of such filing to the following counsel:

| | |
|---|---|
| **Mary Rose Alexander**<br>Latham & Watkins LLP<br>mary.rose.alexander@lw.com | **Scott W. Hansen**<br>Reinhart Boerner Van Deuren SC<br>shansen@reinhartlaw.com |
| **Thomas Armstrong**<br>von Briesen & Roper SC<br>tarmstro@vonbriesen.com | **William H. Harbeck**<br>Quarles & Brady LLP<br>william.harbeck@quarles.com |
| **Paul Bargren**<br>Foley & Lardner LLP<br>pbargren@foley.com | **Michael L. Hermes**<br>Hermes Law Ltd.<br>mlh@hermeslawltd.com |
| **Linda E. Benfield**<br>Foley & Lardner LLP<br>lbenfield@foley.com | **Cynthia R. Hirsch**<br>Wisconsin Department of Justice<br>hirschcr@doj.state.wi.us |
| **Dennis P. Birke**<br>DeWitt Ross & Stevens SC<br>db@dewittross.com | **Caleb J. Holmes**<br>Greenberg Traurig LLP<br>holmesc@gtlaw.com |
| **Steven P. Bogart**<br>Reinhart Boerner Van Deuren SC<br>sbogart@reinhartlaw.com | **Philip C. Hunsucker**<br>Hunsucker Goodstein & Nelson PC<br>phunsucker@hgnlaw.com |
| **Michael P. Carlton**<br>von Briesen & Roper SC<br>mcarlton@vonbriesen.com | **Paul G. Kent**<br>Stafford Rosenbaum LLP<br>pkent@staffordlaw.com |
| **Evan R. Chesler**<br>Cravath Swaine & Moore LLP<br>echesler@cravath.com | **Susan E. Lovern**<br>von Briesen & Roper SC<br>slovern@vonbriesen.com |
| **Marc E. Davies**<br>Greenberg Traurig LLP<br>daviesm@gtlaw.com | **Kevin J. Lyons**<br>Davis & Kuelthau SC<br>klyons@dkattorneys.com |
| **Brandon J. Evans**<br>Hermes Law Ltd.<br>bje@hermeslawltd.com | **Karl S. Lytz**<br>Latham & Watkins LLP<br>karl.lytz@lw.com |
| **Sandra C. Goldstein**<br>Cravath Swaine & Moore LLP<br>sgoldstein@cravath.com | **David G. Mandelbaum**<br>Greenberg Traurig LLP<br>mandelbaumd@gtlaw.com |
| **Thomas R. Gottshall**<br>Haynsworth Sinkler Boyd PA<br>lgantt@hsblawfirm.com | **Tara M. Mathison**<br>Davis & Kuelthau SC<br>tmathison@dkattorneys.com |
| **Eric W. Ha**<br>Sidley Austin LLP<br>eha@sidley.com | **Stephen F. McKinney**<br>Haynsworth Sinkler Boyd PA<br>smckinney@hsblawfirm.com |

**Heidi D. Melzer**
Hermes Law Ltd.
hdm@hermeslawltd.com

**Elizabeth K. Miles**
Davis & Kuelthau SC
emiles@dkattorneys.com

**Sabrina Mizrachi**
Greenberg Traurig LLP
mizrachis@gtlaw.com

**Monique M. Mooney**
Greenberg Traurig LLP
mooneym@gtlaw.com

**William J. Mulligan**
Davis & Kuelthau SC
wmulligan@dkattorneys.com

**Daniel C. Murray**
Johnson & Bell Ltd.
murrayd@jbltd.com

**Kelly J. Noyes**
von Briesen & Roper SC
knoyes@vonbriesen.com

**Nancy K. Peterson**
Quarles & Brady LLP
nancy.peterson@quarles.com

**Thomas M. Phillips**
Reinhart Boerner Van Deuren SC
tphillip@reinhartlaw.com

**Joan Radovich**
Sidley Austin LLP
jradovich@sidley.com

**Ronald R. Ragatz**
DeWitt Ross & Stevens SC
rrr@dewittross.com

**Alexandra Reeve Givens**
Cravath Swaine & Moore LLP
agivens@cravath.com

**Kathleen L. Roach**
Sidley Austin LLP
kroach@sidley.com

**Megan A. Senatori**
DeWitt Ross & Stevens SC
ms@dewittross.com

**Sarah A. Slack**
Foley & Lardner LLP
sslack@foley.com

**Margaret R. Sobota**
Sidley Austin LLP
msobota@sidley.com

**James P. Walsh**
Appleton City Attorney
jim.walsh@appleton.org

**Ted Waskowski**
Stafford Rosenbaum LLP
twaskowski@staffordlaw.com

**Evan B. Westerfield**
Sidley Austin LLP
evanwesterfield@sidley.com

**Richard C. Yde**
Stafford Rosenbaum LLP
ryde@staffordlaw.com

**Patrick J. Ferguson**
Latham & Watkins LLP
patrick.ferguson@lw.com

**Linda R. Larson**
Marten Law
llarson@martenlaw.com

**Bradley M. Marten**
Marten Law
bmarten@martenlaw.com

**Meline G. MacCurdy**
Marten Law
mmaccurdy@martenlaw.com

Dated: April 7, 2011         s/ *Randall M. Stone*