IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN,<br>Plaintiffs,<br>v.<br>NCR CORPORATION, *et al.*<br>Defendants. | ) | Civil Action No. 10-C-910<br>Hon. William C. Griesbach |

**SECOND DECLARATION OF GEORGE A. BERKEN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

I, George A. Berken, declare as follows:

1. I am employed as an Engineering Project Manager with The Boldt Company ("Boldt"). Boldt personnel have served as members of the Federal and State Governments' Agency/Oversight Team ("A/OT") since 2004 for the Lower Fox River and Green Bay Site ("Site"), under a contract between Boldt and the Wisconsin Department of Natural Resources ("WDNR"). I have been personally involved in overseeing remedial design and remedial action work targeting polychlorinated biphenyls ("PCBs") contamination at the Site as an A/OT member since 2006.

2. As a Boldt employee, I typically devote more than 1900 hours per year to A/OT activities for the Site. I spend most of that time coordinating the A/OT's review of remedial design plans and remedial action work plans, and to a minor extent, overseeing the adequacy of the work being implemented in Operable Units 2-5 ("OUs 2-5") by Tetra Tech EC, Inc. ("Tetra

Tech") and other contractors and subcontractors working on behalf of the Lower Fox River Remediation LLC (the "LLC") and its primary members, NCR Corporation and Appleton Papers Inc.

3. As described in an earlier declaration, I am familiar with the LLC's proposed remediation plans for 2011 and the remediation work that would be required under EPA's Modified Work Plan for 2011.

4. The Modified Work Plan requires Final Dredging in two areas near the De Pere Dam that contain some TSCA-regulated material and some non-TSCA material. The following table presents volume estimates for those areas, based on the available information:

| Dredge area | Approx. TSCA volume to be dredged (in-situ) | Approx. Non-TSCA volume to be dredged (in-situ) | Approx. total in-situ volume to Final Dredge |
|---|---|---|---|
| D23 | 27,320 cy | 162,370 cy | 189,690 cy |
| D26A | 290 cy | 1,630 cy | 1,920 cy |
| Totals | 27,610 cy | 164,000 cy | 191,610 cy |
| Total by Adding 10% and Rounding to nearest thousand. | 30,000 cy | 180,000 cy | 211,000 cy |

5. Final Dredging at the Site should generally be done in an upstream to downstream pattern to minimize the risk that completed areas may be re-contaminated by natural re-suspension and re-deposition of un-remediated upstream sediment. If the LLC does not complete Final TSCA Dredging in areas D23 and D26A early this construction season (prior to mid-July), it may not be possible to Final Dredge almost all areas between the De Pere Dam and State Highway 172 Bridge. If the TSCA material being discussed is left to the end of this season or not dredged until 2012, there will be additional expenses due to redundant bathymetric surveys, PCB sediment sampling/analysis and possible future "cleanup" dredging in those same downstream areas once all final upstream remedial action has been completed.

6. I understand that the LLC (or some of its members) have proposed to submit a "2011 Infill Sampling Plan" for the following dredging areas south of the State Highway 172 Bridge: Phase 1, D23, D24, D25, D25A, D25C, D26A, D26B, D26C, D27A, D27B, D27C, D27D, D27E, D27F, D28, D29, D30A, D61, and D91. Infill sampling in those areas has already been completed. To my knowledge, no other infill sampling in those areas is expected or necessary. The LLC is collecting approximately eighteen (18) additional sediment samples in two of those areas this month (in areas D23 and D26A), but that is not being done as true infill sampling. The LLC elected to take those additional samples for the purpose of trying to better delineate the sediment in those areas that would need to be disposed of as TSCA-regulated material.

7. I understand that the proposed 2011 Infill Sampling Plan also would target the following dredging areas north of the State Highway 172 Bridge: D31, D32, and D35A. Infill sampling has not been completed in those areas and it should be done promptly, but Production Dredging can be done in those areas under the Modified Work Plan even before all infill sampling and final dredge design work is completed.

8. Over the last three years, infill sampling and final dredge design work has been delayed and routinely late. After infill samples have been collected, the LLC and its contractors typically have taken an inordinately long period of time (often 16+ weeks) to submit revised dredge plans incorporating the infill sampling results. The A/OT has expressed concern about that to representatives of the LLC and its contractors/consultants on numerous occasions. Infill sampling and final dredge design work for particular areas should be completed in one year so that Final Dredging can be done in those areas the next year. For that reason, infill samples should be collected and analyzed in 2011 for all remedial action areas between State Highway

172 Bridge and the Canadian National Railroad Bridge, because a number of those areas should be Final Dredged in the 2012 construction season.

9. As proposed, I understand that the 2011 Infill Sampling Plan would not be submitted until at least 45 days from any court ruling on the government's motion. A 2011 Infill Sampling Plan should not be complicated or difficult to prepare. It could easily be prepared and submitted within one week. Once it is submitted to the A/OT, all or nearly all technical issues should be resolvable in a one day face to face meeting with LLC contractor representatives, assuming all participants work together in a collaborative fashion.

10. Along with other members of the A/OT, I am aware of concerns expressed by the LLC and its members that Production Dredging in certain areas resulted in unnecessary removal of "clean" sediment. Without knowing the exact data this claim of dredging "clean" sediment is based on, the A/OT cannot directly support nor directly refute the claim but can give some perspective to the issue. The LLC representatives seem to be concerned that Production Dredging went deeper than required because infill sample results were not evaluated until after the Production Dredging had been completed and/or because the 12" Dredge was unable to control the depth of dredging. The A/OT believes that LLC representatives could be misinterpreting the infill sampling results since the LLC did not correct for sediment core samples being compressed during sample collection. Therefore, the contaminated sediment in the river would actually be at greater depths than the compressed sample cores would suggest. If the appropriate core compression correction factors are made, the A/OT believes Production Dredging in prior years will show that "clean" sediment was not removed in any great quantities. Regarding the inability of the 12" dredge to control dredge elevation, this has not been demonstrated in the past. To control dredge elevation, the 12" dredge and the 8" dredge are

mechanically comparable. If the operator of the 12" dredge was dredging below the authorized dredge line plus overdredge (typically 6 inches of overdredge is allowed) this should have been identified in less than one month's time when the contract bathymetry surveys were conducted at the end of each month for invoicing and payment purposes. Furthermore, the contractor(s) per their contract(s) would not be compensated for sediment dredged below the overdredge line. Also, in daily practice, if the 12" dredge did dredge below the overdredge line, the daily Quality Control surveys would have identified the issue and corrected the problem the next day. Regardless of the above points, it is important to remember that infill sampling is not confirmation sampling. The methods and means for confirmation sampling is significantly different than infill sampling and any final judgment regarding whether an area is "clean" or not "clean" cannot be determined from any data collected in 2010 for the Production Dredge areas. With appropriate guidelines (which were defined and agreed upon by the LLC), Production Dredging is a viable and efficient utilization of the project's production capabilities.

11. In addition to being a member of the A/OT for the work in OUs 2-5, I was heavily involved in overseeing the remediation work in Little Lake Butte des Morts (OU 1), so I am able to compare those two parts of the Fox River cleanup project.

12. Among other things, the river's depth, width, flow, and sediment deposition and sediment erosion characteristics in different areas have had a substantial effect on the pattern of residual PCB contamination for the overall Site.

13. Generally speaking, OU 1 is shallower than OUs 2-5. The water flow rates in OU 1 are generally lower than in OUs 2-3. The contaminated sediment deposits in OU 1 tended to be thinner in a vertical sense and larger in a horizontal reach than the thick sediment deposits in many of the narrower downstream portions of the river, especially in OU 4.

14. Although the same contractor has performed dredging work in both OU 1 and OUs 2-5, the water depth and sediment bed characteristics in different segments of the river have influenced the selection and efficiency of the dredging and dewatering equipment. The contractor could not efficiently use its larger, more productive 12" dredge in OU 1 due to water depth limitations and higher pump flow rates to the dewatering site, but the 12" dredge has been performing the largest volume of sediment removal in OU 4. The contractor's 8" dredges were used in OU 1 and they are also being used in OUs 2-5, but their hourly production rates have been higher when dredging the thicker sediment deposits in OUs 2-5. The dredges are more efficient when they can work to remove a larger volume from a smaller area, rather than needing to move to different areas to dredge contaminated sediment that is more widespread.

15. The total volume of sediment needing remediation in OU 1 (less than 800,000 cubic yards) was much less than in OUs 2-5 (more than 7.7 million cubic yards). The larger remediation volume in OUs 2-5 yielded economies of scale in the selection of the equipment and the sizing of the Sediment Processing Facility for OUs 2-5 work. Construction and use of an equally large Sediment Processing Facility in OU 1 would not have been cost-effective. A completely different sediment dewatering technique was used in OU 1.

Second Declaration of George A. Berken in *United States and the State of Wisconsin v. NCR Corp., et al.*, Case No. 10-C-910 (E.D. Wis.)

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: April 17, 2011

George A. Berken

CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this day, the foregoing Declaration was filed electronically with the Clerk of the Court using the Court's Electronic Court Filing System, which sent notification of such filing to the following counsel:

**Mary Rose Alexander**
Latham & Watkins LLP
mary.rose.alexander@lw.com

**Thomas Armstrong**
von Briesen & Roper SC
tarmstro@vonbriesen.com

**Paul Bargren**
Foley & Lardner LLP
pbargren@foley.com

**Linda E. Benfield**
Foley & Lardner LLP
lbenfield@foley.com

**Dennis P. Birke**
DeWitt Ross & Stevens SC
db@dewittross.com

**Steven P. Bogart**
Reinhart Boerner Van Deuren SC
sbogart@reinhartlaw.com

**Michael P. Carlton**
von Briesen & Roper SC
mcarlton@vonbriesen.com

**Evan R. Chesler**
Cravath Swaine & Moore LLP
echesler@cravath.com

**Marc E. Davies**
Greenberg Traurig LLP
daviesm@gtlaw.com

**Brandon J. Evans**
Hermes Law Ltd.
bje@hermeslawltd.com

**Sandra C. Goldstein**
Cravath Swaine & Moore LLP
sgoldstein@cravath.com

**Thomas R. Gottshall**
Haynsworth Sinkler Boyd PA
lgantt@hsblawfirm.com

**Eric W. Ha**
Sidley Austin LLP
eha@sidley.com

**Scott W. Hansen**
Reinhart Boerner Van Deuren SC
shansen@reinhartlaw.com

**William H. Harbeck**
Quarles & Brady LLP
william.harbeck@quarles.com

**Michael L. Hermes**
Hermes Law Ltd.
mlh@hermeslawltd.com

**Cynthia R. Hirsch**
Wisconsin Department of Justice
hirschcr@doj.state.wi.us

**Caleb J. Holmes**
Greenberg Traurig LLP
holmesc@gtlaw.com

**Philip C. Hunsucker**
Hunsucker Goodstein & Nelson PC
phunsucker@hgnlaw.com

**Paul G. Kent**
Stafford Rosenbaum LLP
pkent@staffordlaw.com

**Susan E. Lovern**
von Briesen & Roper SC
slovern@vonbriesen.com

**Kevin J. Lyons**
Davis & Kuelthau SC
klyons@dkattorneys.com

**Karl S. Lytz**
Latham & Watkins LLP
karl.lytz@lw.com

**David G. Mandelbaum**
Greenberg Traurig LLP
mandelbaumd@gtlaw.com

**Tara M. Mathison**
Davis & Kuelthau SC
tmathison@dkattorneys.com

**Stephen F. McKinney**
Haynsworth Sinkler Boyd PA
smckinney@hsblawfirm.com

**Heidi D. Melzer**
Hermes Law Ltd.
hdm@hermeslawltd.com

**Elizabeth K. Miles**
Davis & Kuelthau SC
emiles@dkattorneys.com

**Sabrina Mizrachi**
Greenberg Traurig LLP
mizrachis@gtlaw.com

**Monique M. Mooney**
Greenberg Traurig LLP
mooneym@gtlaw.com

**William J. Mulligan**
Davis & Kuelthau SC
wmulligan@dkattorneys.com

**Daniel C. Murray**
Johnson & Bell Ltd.
murrayd@jbltd.com

**Kelly J. Noyes**
von Briesen & Roper SC
knoyes@vonbriesen.com

**Nancy K. Peterson**
Quarles & Brady LLP
nancy.peterson@quarles.com

**Thomas M. Phillips**
Reinhart Boerner Van Deuren SC
tphillip@reinhartlaw.com

**Joan Radovich**
Sidley Austin LLP
jradovich@sidley.com

**Ronald R. Ragatz**
DeWitt Ross & Stevens SC
rrr@dewittross.com

**Alexandra Reeve Givens**
Cravath Swaine & Moore LLP
agivens@cravath.com

**Kathleen L. Roach**
Sidley Austin LLP
kroach@sidley.com

**Megan A. Senatori**
DeWitt Ross & Stevens SC
ms@dewittross.com

**Sarah A. Slack**
Foley & Lardner LLP
sslack@foley.com

**Margaret R. Sobota**
Sidley Austin LLP
msobota@sidley.com

**James P. Walsh**
Appleton City Attorney
jim.walsh@appleton.org

**Ted Waskowski**
Stafford Rosenbaum LLP
twaskowski@staffordlaw.com

**Evan B. Westerfield**
Sidley Austin LLP
evanwesterfield@sidley.com

**Richard C. Yde**
Stafford Rosenbaum LLP
ryde@staffordlaw.com

**Patrick J. Ferguson**
Latham & Watkins LLP
patrick.ferguson@lw.com

**Linda R. Larson**
Marten Law
llarson@martenlaw.com

**Bradley M. Marten**
Marten Law
bmarten@martenlaw.com

**Meline G. MacCurdy**
Marten Law
mmaccurdy@martenlaw.com

Dated: April 18, 2011

s/ *Jeffrey A. Spector*