IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

UNITED STATES OF AMERICA and
THE STATE OF WISCONSIN,

        Plaintiffs,

  v.

NCR CORPORATION, *et al.*,

        Defendants.

No. 10-CV-910-WCG

---

**MEMORANDUM OF APPLETON PAPERS INC. IN OPPOSITION TO
NCR CORPORATION'S MOTION FOR REGISTRATION OF JUDGMENT
FOR ENFORCEMENT PURSUANT TO 28 U.S.C. § 1963**

---

Defendant Appleton Papers Inc. ("API"), by its undersigned attorneys, respectfully submits this Memorandum in opposition to the Motion of Defendant NCR Corporation ("NCR") for registration of a judgment pursuant to 28 U.S.C. § 1963. Dkt. #145.

**INTRODUCTION**

NCR's Motion seeks to invoke an inapplicable procedure to address matters that are not before the Court. In so doing, NCR is circumventing a dispute resolution process the parties expressly chose. NCR does this to address a dispute that has not arisen and which its motion would not resolve in any event.

The statute invoked by NCR, 28 U.S.C. § 1963, is designed to allow the holder of a money judgment (or the functional equivalent) to execute upon the assets of the judgment debtor in another district without filing a new lawsuit. The statute is intended to facilitate collection of a fixed amount that the rendering court has adjudged to be due and owing. There is no such judgment here. The judgment that NCR seeks to register ("SDNY Judgment") confirmed an arbitration award that did nothing more than declare a

percentage split of future costs between NCR and API (and B.A.T Industries plc ("BAT")) under their private 1998 Settlement Agreement. Neither the arbitration decision nor the SDNY Judgment determined that a fixed amount was due to either party.

In this enforcement action, the issues before the Court are limited to the obligations of the parties under CERCLA. Neither the 1998 Settlement Agreement nor the rights and obligations of the parties to that agreement are before the Court.

Further, if a dispute existed between NCR and API, under the 1998 Settlement Agreement, it is to be addressed under the dispute resolution process embodied in that agreement. That process is mandatory. It requires arbitration and precludes litigation.

NCR claims that the SDNY Judgment must be registered in order to assure NCR's compliance with any preliminary injunction issued by the Court. NCR suggests there is a link between the judgment and the structure and operation of the Lower Fox River Remediation LLC ("LLC") that has been performing the remediation. However, the SDNY Judgment did not address the structure or operation of the LLC, which did not exist when the SDNY Judgment was entered.

The motion for preliminary injunction before the Court is based upon the parties' alleged obligations under CERCLA — not the 1998 Settlement Agreement among NCR, API and BAT. API has explained that it is not liable under CERCLA and also that it is not seeking to collaterally attack the 1998 Settlement Agreement, the 2005 arbitration decision or the SDNY Judgment. Dkt. #138-1, #143. Thus, the task before the Court is to determine under CERCLA whether a preliminary injunction should issue (API believes it should not) and, if so, to whom. If a dispute arises between NCR and API as to payment of costs, that dispute must be resolved according to the claims payment and/or dispute resolution processes under their 1998 Settlement Agreement.

Accordingly, API respectfully requests that NCR's motion be denied.

**LAW AND ARGUMENT**

**I. NCR'S MOTION SHOULD BE DENIED BECAUSE 28 U.S.C. § 1963 DOES NOT APPLY TO THE SDNY JUDGMENT.**

NCR is seeking a court order directing the clerk, pursuant to 28 U.S.C. § 1963, to register a judgment rendered by the United States District Court for the Southern District of New York ("SDNY Judgment"). Section 1963 provides in pertinent part as follows:

> A judgment **in an action for the recovery of money or property** entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. . . . A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

28 U.S.C. § 1963 (emphasis added).

Section 1963 authorizes registration of a judgment "in an action for the recovery of money or property." Thus, where a judgment determines the amount of money owed by a judgment debtor or specifies property to be recovered, § 1963 facilitates the collection of the money or recovery of the property in the district where the judgment debtor's assets or property are located, without starting a new action:

> . . . [T]he purposes of § 1963 were to simplify and facilitate the enforcement of federal judgments, **at least those for money**, to eliminate the necessity and expense of a second lawsuit, and to avoid the impediments, such as diversity of citizenship, which new and distinct federal litigation might otherwise encounter.

*Stanford v. Utley*, 341 F.2d 265, 270 (8th Cir. 1965) (emphasis added). The Second Circuit further explained:

> In the absence of a statute providing for the registration or summary enforcement of foreign judgment . . . it is usually necessary to bring an action of debt **on a foreign money judgment** and to obtain a new judgment of the forum before execution will issue. This procedure created particular difficulties for claimants who had originally grounded federal jurisdiction on the existence of a federal question; for a suit on a judgment does not involve a federal question, however important federal questions may have been to the resolution of the original controversy. Section 1963 . . . eliminates this jurisdictional problem, as well as

providing a speedier and more efficient mechanism for the enforcement of federal judgments.

*Stiller v. Hardman,* 324 F.2d 626, 628 (2nd Cir. 1963) (citations omitted; emphasis added).[1]

This is well-illustrated by the Seventh Circuit decision that NCR cites. *Pacific Reinsurance Mgmt. Corp. v. Fabe*, 929 F.2d 1215 (7th Cir. 1991). In that case, a district court in California ordered Ohio Reinsurance to pay a specified sum of money into escrow pending final resolution of the case. Ohio Reinsurance refused. Plaintiff Pacific Reinsurance then registered the judgment in Illinois where Ohio Reinsurance had assets. Ohio Reinsurance characterized the California district court's order as an injunction, not a money judgment, and argued that Pacific Reinsurance's collection proceeding was improper. *Id.* at 1218. The Seventh Circuit agreed that injunctions generally are "not registrable under § 1963." *Id.* However, the Seventh Circuit viewed the district court's order as a money judgment:

> Judge Hatter, who entered this order, **treated it as a money judgment**, calling for a supersedeas bond as the price of non-enforcement and leaving enforcement in private hands.

*Id.* (emphasis added).

---

[1] Registration of a judgment under § 1963 is a ministerial process accomplished by filing the judgment with the clerk in the registering court, without any court order or judicial involvement:

> The term 'registered' is not defined; but, as applicable here, it seems to connote a filing with the clerk and an entering upon the records in that office, in substantially the same manner as a judgment rendered by this court.

*Arenas v. Sternecker*, 109 F. Supp. 1, 2 (D. Kan. 1953). The process is akin to the procedure in state court for docketing a judgment rendered in one county in another county where the judgment debtor's assets are located. *See, e.g.*, Wis. Stat. § 806.14. Therefore, if NCR believed the SDNY was registrable in this district, neither its motion nor action by the Court would be necessary.

- 4 -

Unlike the judgment in *Pacific Reinsurance*, the SDNY Judgment does not order payment of a specified sum of money or adjudicate any party's rights to certain property or assets. Indeed, there is nothing in the judgment that makes any reference to any party owing any money to any other party for which collection in another jurisdiction where the debtor's assets were located could be pursued. Nor does NCR claim that API owes it any money for which it could execute a judgment. Since NCR has no money judgment and is not claiming that API owes it any money, the process established in § 1963 to facilitate collection of a money judgment obtained in another district court is not applicable here.

Further, § 1963 does not permit NCR to inject a non-money judgment from another district into an action in which NCR is not seeking any monies from API. This is an action to determine the obligations of the parties under CERCLA. It is not an action to determine the rights and obligations of NCR and API (or BAT) pursuant to the 1998 Settlement Agreement or resolve future disputes under that settlement.

Section 1963 is a mechanism for facilitating collection of a liquidated, fixed amount of money adjudicated in another district court as owed by the judgment debtor. It is not applicable to determine whether any monies are in fact owed, especially where no monies are even claimed to be owed. Thus, NCR's Motion must be denied.

**II. ANY DISPUTE REGARDING OBLIGATIONS UNDER THE 1998 SETTLEMENT AGREEMENT ARE TO BE RESOLVED ACCORDING TO SPECIFIED DISPUTE RESOLUTION PROCEDURES, INCLUDING ARBITRATION.**

As part of their settlement, NCR, API and BAT agreed to a specific process for resolving any disputes among them regarding their rights and obligations under the

- 5 -

Case 1:10-cv-00910-WCG   Filed 04/18/11   Page 5 of 9   Document 151

1998 Settlement Agreement.[2]  They mutually covenanted not to sue one another, Dkt. #124-1, 1998 Settlement Agreement, ¶ 6, and agreed to a specific mechanism for the payment of costs covered by the Agreement. *Id.*  They also agreed to a dispute resolution process that first requires consultation and mediation.  *Id.*, ¶ 10a.  If those procedures do not resolve the dispute, the parties agreed that the dispute would be submitted to arbitration:

> b. <u>Funding Disputes</u>:  In the event that the inter-company dispute escalation procedures and the non-binding mediation are not effective, NCR and API/BAT agree that any and all disputes over payment of any Damages or Group Defense costs allocated to or assessed upon NCR or API/BAT shall be submitted to arbitration in New York, New York administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules.  Judgment on the award entered by the Arbitrator shall be entered in any court having jurisdiction thereof.

*Id.*, ¶ 10b. Thus, the parties agreed to arbitrate, rather than litigate, future disputes related to their settlement, expressly including funding disputes.

Arbitration provisions are favored by the courts.   *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983) (The Federal Arbitration Act embodies a "liberal federal policy favoring arbitration agreements."); *see also Morrie Mages and Shirlee Mages Found. v. Thrifty Corp.,* 916 F.2d 402, 405 (7th Cir. 1998) (noting the "strong federal policy favoring arbitration,") *abrogated on other grounds, IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 530 (7th Cir. 1996). When parties have agreed to arbitrate their disputes, a court's jurisdiction is limited to enforcing the agreement to arbitrate.   *See Merit Ins. Co. v. Leatherby Ins. Co.,* 581 F.2d 137, 142 (7th Cir. 1978) ("If the agreement to arbitrate is valid the Court has no further power or discretion to address

---

[2] The 1998 Settlement Agreement is located in the record at Dkt. #124-1.  The 2005 Arbitration Decision is located in the record at Dkt. #124-2.  The Subsequent Arbitration Allocation Agreement is located in the record at Dkt. #139-12.

the issues raised in the complaint but must order arbitration . . ."). Accordingly, issues regarding the rights and obligations of API, NCR and/or BAT pursuant to their settlement are to be resolved pursuant to the dispute resolution provisions they agreed upon.

### III. NCR'S COMPLIANCE WITH A PRELIMINARY INJUNCTION DOES NOT DEPEND ON THE SDNY JUDGMENT.

NCR suggests that registration of the SDNY Judgment is somehow linked to NCR's ability to comply with the proposed preliminary injunction. NCR states that "it is literally impossible for NCR to comply with the Preliminary Injunction ("PI") that the Government is seeking unless Appleton Papers Inc. ("API") also complies, because NCR lacks a controlling vote in the LLC that holds the contracts for the remediation work." Dkt. #145, Motion, p. 2. However, NCR does not explain how that purported concern relates to the SDNY Judgment. The 2005 arbitration decision and the resulting SDNY Judgment were rendered before the 106 Order was issued and before the LLC was created. As such, the SDNY Judgment did not address the structure or operation of the LLC.

NCR conflates potential CERCLA obligations with obligations under the 1998 Settlement Agreement. The Government has moved for a preliminary injunction under CERCLA, not under the 1998 Settlement Agreement or the subsequent arbitration decision. The Government's ability to obtain a preliminary injunction depends, among other things, on whether NCR and API are liable under CERCLA and whether any such liability is joint and several, not on their rights or obligations to one another (and/or BAT) under the 1998 Settlement Agreement. As API explained in its brief in opposition to the preliminary injunction, it is not liable under CERCLA. Dkt. #143, pp. 16-24.

If the Court were to determine that NCR is liable under CERCLA but API is not liable, and if the Court enjoined NCR as sought by the Government despite the reasons

- 7 -

expressed by NCR and API why such an injunction should not be entered, NCR could, in fact, comply with the injunction. The LLC's operating agreement includes an express provision that if a member's obligations under CERCLA for performance of the 106 Order are modified by a court order, the shares of the membership must be reallocated. Declaration of Jeffrey Thomas Lawson, filed April 18, 2011 ("Lawson Dec."), Exhibit 1, ¶ 3.4. Through that provision, NCR would become the LLC's sole and controlling member. Lawson Dec., ¶¶ 6-8. Any concern about NCR's ability to comply with a preliminary injunction would thus be eliminated.

The settlement among NCR, API and BAT would remain in place. API has clearly stated in its opposition to the preliminary injunction that it is not seeking to collaterally attack the 1998 Settlement Agreement. Dkt. #142, p. 21, n.5. To the extent issues arise between NCR and API (and/or BAT), those issues must be addressed according to the dispute resolution mechanisms expressly agreed by the parties.

## CONCLUSION

The issues before this Court involve the rights and obligations of the parties under CERCLA. The Government's motion for a preliminary injunction must be decided under CERCLA.

The rights and obligations of NCR, API and BAT under the 1998 Settlement Agreement are not, and cannot, be a part of this litigation. Any disputes regarding that settlement must be resolved according to the dispute resolution process under the 1998 Settlement Agreement.

Accordingly, API respectfully requests that NCR's Motion be denied.

Dated this 18th day of April, 2011.

                Respectfully submitted,

                APPLETON PAPERS INC.

                /s/ Ronald R. Ragatz

                Counsel for Appleton Papers Inc.:

                Michael L. Hermes (#1019623)
                Heidi D. Melzer (#1076125)
                Brandon J. Evans (#1063940)
                Ericka L. Krumrie (#1066383)
                HERMES LAW LTD.
                333 Main Street, Suite 601
                Green Bay, Wisconsin 54301
                (920) 436-9870
                Fax: (920) 436-9871

                Ronald R. Ragatz (#1017501)
                Dennis P. Birke (#1018345)
                Megan A. Senatori (#1037314)
                DEWITT ROSS & STEVENS S.C.
                2 E. Mifflin Street, Suite 600
                Madison, Wisconsin 53703
                (608) 255-8891
                Fax: (608) 252-9243

                **COUNSEL FOR APPLETON PAPERS INC.**