IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 10-C-910 |
| v. | ) ) ) | Hon. William C. Griesbach |
| NCR CORPORATION, *et al.*, | ) ) | |
| Defendants. | ) ) | |

**BRIEF IN SUPPORT OF UNITED STATES' EXPEDITED MOTION
FOR ENTRY OF REVISED PROPOSED TERMS OF AN INJUNCTION**

In a July 5, 2011 Decision and Order in this case, the Court expressed hope that NCR Corporation ("NCR") and Appleton Papers Inc. ("API") would "find it in their interest to comply with the proposed injunction" sought by the United States. *United States v. NCR Corp.*, No. 10-910, 2011 WL 2634262, at *13 (E.D. Wis. July 5, 2011). That has not occurred. Yesterday they issued a press release entitled "*Fox River Cleanup Project Dredging Concluding for 2011 Season*." Dkt. 178 at 5. At this point, the dredging at the Lower Fox River and Green Bay Superfund Site has been suspended, the dredges and the sediment processing facility have been idled, and dozens of workers have been laid off for the time being. Only about 230,000 cubic yards of PCB-contaminated sediment have been dredged so far this year and a limited amount of planned residual dredging in a few previously dredged areas might bring that annual total to no more than 250,000 cubic yards. EPA's Modified Work Plan for 2011 calls for removal of at least 605,000 cubic yards of contaminated sediment this year. That can still be achieved if full scale dredging resumes by the first week of August. Dkt. 178 at 2-3.

The Court has indicated that its prior findings "support injunctive relief of some kind against NCR" such as "appropriate relief to compel NCR to undertake or continue the clean-up." *U.S. v. NCR*, 2011 WL 2634262, at *13 n.3. The United States' Motion for Entry of Revised Proposed Terms of an Injunction therefore seeks appropriate relief against NCR, including a preliminary injunction ordering NCR alone to comply with the substantive requirements of the United States' previously proposed Terms of Injunction. To afford timely and meaningful relief in light of the existing agreements and arrangements between NCR and API, minor and ancillary injunctive requirements can also be directed at API, including a mandate that API grant NCR a proxy to adjust the voting rights in the limited liability company (the "LLC") that has the agreements with the environmental contractors at the Site. As shown below, the Court can and should grant such relief consistent with established Supreme Court precedent even if API is assumed to have no direct liability to the United States under CERCLA.[1]

### 1. The Modified Request for Relief Against NCR is Well-Justified.

The revised proposed Terms of Injunction that are attached to the motion (Dkt. 177-1) mirror the substantive requirement of the Terms of Injunction previously proposed by the United States (Dkt. 150-1 at 59-65), although the cleanup requirements would only apply to NCR. Rather than rehashing the arguments and evidence supporting those specific injunctive relief requirements, as detailed in the United States' prior briefs and submissions (Dkts. 123, 124, 125, 126, 148, 149, 150), we merely incorporate those points by reference here and we rely on the Court's subsequent findings, including its conclusion that "the United States has established . . .

---

[1] The United States respectfully disagrees with the Court's preliminary determination that API is unlikely to have direct liability to the United States under CERCLA. *See, e.g., Caldwell Trucking PRP v. Rexon Tech. Corp.*, 421 F.3d 234, 240-46 (3d Cir. 2005); *Clean Harbors, Inc. v. Arkema, Inc. (In re Safety-Kleen Corp.)*, 380 B.R. 716, 735-40 (Bankr. D. Del. 2008). But the United States accepts and does not challenge that determination for the purpose of this motion.

a sound basis supporting preliminary injunctive relief against NCR." *U.S. v. NCR*, 2011 WL 2634262, at *13.

## 2. The Court Can Order Ancillary Injunctive Relief Against API.

In a trio of cases discussed below, the Supreme Court has made clear that a federal court can grant an injunction that includes minor and ancillary relief against a party to the case that is not the main target of the injunction even if that party has no direct liability to the plaintiff that sought the injunctive relief. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 342-43, 356 (1977); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982); *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 399 (1982).[2]

The issue arose first in *International Brotherhood of Teamsters v. United States*, where the Court found that the government had proven actionable racial and ethnic discrimination by a particular employer, but also found that the government had no viable claims against the union that had collective-bargaining agreements with the employer. 431 U.S. at 342-43, 356. In remanding the case for formulation of an appropriate remedial injunction that would include grants of "retroactive seniority" to individual discrimination victims, the Court nonetheless directed that "[t]he union will properly remain in this litigation as a defendant so that full relief may be awarded the victims of the employer's . . . discrimination." *Id.* at 356 & n.43 (citing Fed. R. Civ. P. 19(a)). The Court foresaw that the union would need to be bound by the remedial injunction because any judicial grant of retroactive seniority would create an exception or adjustment to the seniority system established by the union's collective bargaining agreement. *Id.* at 355-57.

---

[2] *See also Bridgeport Guardians, Inc. v. Delmonte*, 248 F.3d 66, 74-75 (2d Cir. 2001); *City of New York v. Local 28, Sheet Metal Workers' Int'l Ass'n*, 170 F.3d 279, 285 (2d Cir. 1999); *United States v. Visa U.S.A. Inc.*, 183 F. Supp. 2d 613, 617 (S.D.N.Y. 2001); *Balt. Neighborhoods, Inc. v. LOB Inc.*, 92 F. Supp. 2d 456, 472-73 (D. Md. 2000).

3

The Supreme Court applied the same rule several years later in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385. In that gender discrimination case, the Court affirmed an award of injunctive relief that included retroactive seniority requirements that were contrary to the flight attendants' union's collective-bargaining agreement with the airline. *Id.* at 399-401. The Court rejected the objections raised by the union, which had intervened in the case, noting that the *Teamsters* decision "makes it clear that once there has been a finding of discrimination by the employer, an award of retroactive seniority is appropriate even if there is no finding that the union has also illegally discriminated." *Id.* at 400.

The circumstances differed somewhat in *General Building Contractors Association v. Pennsylvania*, where trade associations and their members were contractually bound to hire employees using a "hiring hall" system established by a union. 458 U.S. 375. The union operated the hiring hall in a discriminatory manner, but there was no proof of independent race discrimination by the employers. *Id.* at 378-89. The Supreme Court indicated that the non-liable employers could still "be retained in the lawsuit and even subjected to such minor and ancillary provisions of an injunctive order as the District Court might find necessary to grant complete relief to [the aggrieved persons] from the discrimination they suffered at the hands of the Union." *Id.* at 399. As an example, the Court pointed out that it would be "entirely appropriate" for the district court to require "any adjustment in the collective-bargaining contract between [the employers] and the Union" and "to have that remedy run against [the employers] and the Union." *Id.* at 400. But the Court remanded the case because the district court's original injunction had saddled the employers with much more burdensome obligations that went far beyond such "minor and ancillary relief." *Id.* at 400-03. That included a requirement to pay a share of the costs of enforcing the remedial injunction and stand-alone mandates for minority recruiting,

hiring, and training by the employers that would need to be satisfied with or without the union's involvement. *Id.* at 400.

In its current motion, the United States seeks no relief from API other than a specific adjustment to its existing arrangements with NCR – much like the collective-bargaining contract adjustments endorsed in the *Teamsters*, *Zipes*, and *General Building Contractors* cases – and that adjustment qualifies as "minor and ancillary relief," as shown below.[3]

### 3. The Requested Relief Against API is Minor and Ancillary.

The newly proposed Terms of Injunction would readjust the voting rights in the LLC and give NCR practical control of the LLC and its contractors for the near term through the following requirement aimed at API:

> Within one business day after issuance of this Order, API shall: (1) revoke any existing proxy to vote API's shares in the LLC that API has granted to Arjo Wiggins Appleton (Bermuda) Limited; and (2) execute and file a new written proxy granting NCR a right to vote all of API's LLC shares for a period of at least nine months in accordance with Section 3.8(h) of the LLC's Amended and Restated Operating Agreement.

Dkt. 177-1 at 6.[4] As suggested by proposed language of the injunction, and as confirmed by a declaration executed by the LLC Resident Manager, API has already ceded its LLC voting rights to another party through a proxy granted to its own indemnitor, Arjo Wiggins Appleton (Bermuda) Limited ("AWAB"). Dkt. 137 at 3. Thus, there would be little or no real change to API's nominal role in the LLC if the Court enjoined API to revoke the voting proxy it has

---

[3] The limitation to "minor and ancillary relief" against a party with no direct liability arguably does not even apply where, as here, the particular defendant voluntarily assumed potential responsibility for a co-defendant's liability-creating conduct. *See Golden State Bottling Co., Inc v. N.L.R.B.*, 414 U.S. 168 (1973) (holding that the current owner of a business could be ordered to provide backpay and reinstatement because it knowingly assumed potential liability for unfair labor practices committed by a prior owner of the business).

[4] A nine month proxy would afford NCR time to make longer-term cleanup arrangements for 2012 and beyond, such as working out a permanent change in the LLC voting scheme or negotiating NCR's own agreement with a cleanup contractor, as suggested by the Court's recent ruling. *U.S. v. NCR*, 2011 WL 2634262, at *13 n.3.

5

granted to AWAB and grant a substitute proxy to NCR.[5] And a readjustment of voting rights in the LLC by a proxy grant to NCR would be fully consistent with this Court's recent ruling and the agreements and arrangements between NCR and API.

First, the LLC Operating Agreement specifies that LLC voting rights must be exercised as "required by law" (Dkt. 152 at 18) and a readjustment of LLC voting rights by proxy would use a mechanism established by that Agreement, with no material change to the Agreement. Section 3.8(h) of the Agreement – which is entitled "Proxy Voting" – provides that:

> A Member entitled to vote at a meeting or to express consent or dissent to any action in writing without a meeting may authorize another party to act for him, her or it by proxy executed in writing by such member. All proxies shall be filed with the Company before voting and shall be effective for no more than six (6) months, unless expressly provided otherwise in any such proxy. No proxy purporting to be executed by or on behalf of a member shall be deemed invalid unless challenged at or prior to its exercise, and the burden of proving invalidity shall rest on the challenger.

Dkt. 152 at 20.

Second, an adjustment of LLC voting rights is well-justified because API claims to be nothing more than NCR's indemnitor. In that role, API "cannot continue to control the means of cleanup," as emphasized by the Court's recent ruling. *U.S. v. NCR*, 2011 WL 2634262, at *13.[6]

Third, even if NCR is granted effective control of the LLC, NCR will still be obliged to deal with API in good faith. NCR and API have agreed to act in a unified fashion and cooperate with each other in matters relating to the Site. For example, in the 1998 Settlement Agreement

---

[5] Courts have clear authority to enjoin the exercise of corporate voting and proxy rights to ensure complete relief in a case. *See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1150 (D. Kan. 2001); *AHI Metnall, L.P. v. J.C. Nichols Co.*, 891 F. Supp 1352, 1361 (W.D. Mo. 1995); *Morrison Knudsen Corp. v. Heil*, 705 F. Supp. 497, 504 (D. Id. 1988); *SEC v. American Real Estate Inv. Trust*, 529 F. Supp. 1300, 1307 (C.D. Cal. 1982); *Elco Corp. v. Microdot Inc.*, 360 F. Supp. 741, 756 (D. Del. 1973)

[6] The same is true of API's own indemnitor, AWAB.

that established their cost-sharing and joint defense arrangements, NCR and API – and one of API's former corporate parents, British American Tobacco ("BAT") – committed as follows:

> NCR and API/BAT agree to continue to cooperate, coordinate, and assist one another in the defense of the Sovereigns' and potential third-party claims relating to the Fox River sites . . . and further agree to implement a coordinated and efficient joint defense effort among themselves . . . . It is the goal of the parties to work together as closely as possible as if the parties are one entity and to manage effectively and efficiently the joint defense effort.

Dkt. 124-1 at 21. By the same token, API has no right to interfere with NCR's response to EPA's Unilateral Adminstrative Order ("UAO"), as it is doing now.[7]

Fourth, a readjustment of LLC voting rights to ensure NCR's compliance with the UAO would promote the LLC's fundamental purpose. NCR and API formed the LLC for the express purpose of complying with the UAO and a related Administrative Order on Consent signed by NCR.[8]

Finally, the newly proposed Terms of Injunction would not alter the current cost-sharing arrangement between API and NCR, which is fixed by the arbitration award that has been registered as an enforceable judgment. Dkt. 144-2; *U.S. v. NCR*, 2011 WL 2634262, at *13.

---

[7] Indemnification contracts and other agreements impose a "mutual duty of cooperativeness" that bars "interference with or failure to cooperate in the other party's performance." *Chi. Title Ins. v. Runkel Abstract & Title Co.*, 610 F. Supp. 2d 973, 977 (W.D. Wis. 2009) (internal citation omitted) (discussing the implied covenant of good faith and fair dealing recognized under Wisconsin law). *Accord Market St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 592-94 (7th Cir. 1991) (applying Wisconsin law); *Chem. Bank v. Stahl*, 712 N.Y.S.2d 452, 462 (N.Y. App. Div. 2000) (applying New York law); *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 440-45 (Del. 2005) (applying Delaware law).

[8] As explained in a declaration by the LLC Resident Manager:

> Section 2.4 of the LLC Operating Agreement states that the purpose of the LLC is "undertaking to perform the Members' legal obligations under the Orders."
> \* \* \*
> The word "Work" is defined in the LLC Operating Agreement as "the specified tasks approved by the governmental parties identified in the Orders." "Orders" is defined as "the Administrative Order for Remedial Action, EPA Docket No. V-W-'08-C-885 ("UAO") and the Amended Administrative Settlement Agreement and Order on Consent, CERCLA Docket No.V-W-'04-C-781 ("AOC")."

Dkt. 152 at 2.

## Conclusion

For the foregoing reasons, the relief requested against API is minor under the circumstances and ancillary to the primary injunctive relief sought against NCR. The Court has clear authority to grant all such relief and should do so without delay.

Respectfully submitted,

For the United States of America

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

Dated: July 13, 2011

s/ *Randall M. Stone*
RANDALL M. STONE
JEFFREY A. SPECTOR
IVA ZIZA
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone: 202-514-1308
Facsimile: 202-616-6584
E-Mail: randall.stone@usdoj.gov

GREGORY J. HAANSTAD
Attorney for the United States, Acting
Under Authority Conferred by 28 U.S.C. § 515

SUSAN M. KNEPEL
Assistant United States Attorney
Office of the United States Attorney
517 E. Wisconsin Avenue, Room 530
Milwaukee, WI 53202

CERTIFICATE OF SERVICE

      The undersigned hereby certifies that, on this day, the foregoing Brief was filed electronically with the Clerk of the Court using the Court's Electronic Court Filing System, which sent notification of such filing to the following counsel:

| | |
|---|---|
| **Mary Rose Alexander**<br>Latham & Watkins LLP<br>mary.rose.alexander@lw.com | **Scott W. Hansen**<br>Reinhart Boerner Van Deuren SC<br>shansen@reinhartlaw.com |
| **Thomas Armstrong**<br>von Briesen & Roper SC<br>tarmstro@vonbriesen.com | **William H. Harbeck**<br>Quarles & Brady LLP<br>william.harbeck@quarles.com |
| **Paul Bargren**<br>Foley & Lardner LLP<br>pbargren@foley.com | **Michael L. Hermes**<br>Hermes Law Ltd.<br>mlh@hermeslawltd.com |
| **Linda E. Benfield**<br>Foley & Lardner LLP<br>lbenfield@foley.com | **Cynthia R. Hirsch**<br>Wisconsin Department of Justice<br>hirschcr@doj.state.wi.us |
| **Dennis P. Birke**<br>DeWitt Ross & Stevens SC<br>db@dewittross.com | **Caleb J. Holmes**<br>Greenberg Traurig LLP<br>holmesc@gtlaw.com |
| **Steven P. Bogart**<br>Reinhart Boerner Van Deuren SC<br>sbogart@reinhartlaw.com | **Philip C. Hunsucker**<br>Hunsucker Goodstein & Nelson PC<br>phunsucker@hgnlaw.com |
| **Michael P. Carlton**<br>von Briesen & Roper SC<br>mcarlton@vonbriesen.com | **Paul G. Kent**<br>Stafford Rosenbaum LLP<br>pkent@staffordlaw.com |
| **Evan R. Chesler**<br>Cravath Swaine & Moore LLP<br>echesler@cravath.com | **Susan E. Lovern**<br>von Briesen & Roper SC<br>slovern@vonbriesen.com |
| **Marc E. Davies**<br>Greenberg Traurig LLP<br>daviesm@gtlaw.com | **Kevin J. Lyons**<br>Davis & Kuelthau SC<br>klyons@dkattorneys.com |
| **Brandon J. Evans**<br>Hermes Law Ltd.<br>bje@hermeslawltd.com | **Karl S. Lytz**<br>Latham & Watkins LLP<br>karl.lytz@lw.com |
| **Sandra C. Goldstein**<br>Cravath Swaine & Moore LLP<br>sgoldstein@cravath.com | **David G. Mandelbaum**<br>Greenberg Traurig LLP<br>mandelbaumd@gtlaw.com |
| **Thomas R. Gottshall**<br>Haynsworth Sinkler Boyd PA<br>lgantt@hsblawfirm.com | **Tara M. Mathison**<br>Davis & Kuelthau SC<br>tmathison@dkattorneys.com |
| **Eric W. Ha**<br>Sidley Austin LLP<br>eha@sidley.com | **Stephen F. McKinney**<br>Haynsworth Sinkler Boyd PA<br>smckinney@hsblawfirm.com |

| | |
|---|---|
| **Heidi D. Melzer**<br>Hermes Law Ltd.<br>hdm@hermeslawltd.com | **Kathleen L. Roach**<br>Sidley Austin LLP<br>kroach@sidley.com |
| **Elizabeth K. Miles**<br>Davis & Kuelthau SC<br>emiles@dkattorneys.com | **Megan A. Senatori**<br>DeWitt Ross & Stevens SC<br>ms@dewittross.com |
| **Sabrina Mizrachi**<br>Greenberg Traurig LLP<br>mizrachis@gtlaw.com | **Sarah A. Slack**<br>Foley & Lardner LLP<br>sslack@foley.com |
| **Monique M. Mooney**<br>Greenberg Traurig LLP<br>mooneym@gtlaw.com | **Margaret R. Sobota**<br>Sidley Austin LLP<br>msobota@sidley.com |
| **William J. Mulligan**<br>Davis & Kuelthau SC<br>wmulligan@dkattorneys.com | **James P. Walsh**<br>Appleton City Attorney<br>jim.walsh@appleton.org |
| **Daniel C. Murray**<br>Johnson & Bell Ltd.<br>murrayd@jbltd.com | **Ted Waskowski**<br>Stafford Rosenbaum LLP<br>twaskowski@staffordlaw.com |
| **Kelly J. Noyes**<br>von Briesen & Roper SC<br>knoyes@vonbriesen.com | **Evan B. Westerfield**<br>Sidley Austin LLP<br>evanwesterfield@sidley.com |
| **Nancy K. Peterson**<br>Quarles & Brady LLP<br>nancy.peterson@quarles.com | **Richard C. Yde**<br>Stafford Rosenbaum LLP<br>ryde@staffordlaw.com |
| **Thomas M. Phillips**<br>Reinhart Boerner Van Deuren SC<br>tphillip@reinhartlaw.com | **Patrick J. Ferguson**<br>Latham & Watkins LLP<br>patrick.ferguson@lw.com |
| **Joan Radovich**<br>Sidley Austin LLP<br>jradovich@sidley.com | **Linda R. Larson**<br>Marten Law<br>llarson@martenlaw.com |
| **Ronald R. Ragatz**<br>DeWitt Ross & Stevens SC<br>rrr@dewittross.com | **Bradley M. Marten**<br>Marten Law<br>bmarten@martenlaw.com |
| **Alexandra Reeve Givens**<br>Cravath Swaine & Moore LLP<br>agivens@cravath.com | **Meline G. MacCurdy**<br>Marten Law<br>mmaccurdy@martenlaw.com |

Dated: July 13, 2011         s/ *Randall M. Stone*