IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

UNITED STATES OF AMERICA and
THE STATE OF WISCONSIN,

        Plaintiffs,

  v.

NCR CORPORATION, *et al.*,

        Defendants.

No. 10-CV-910-WCG

**MEMORANDUM OF DEFENDANT APPLETON PAPERS INC. IN
OPPOSITION TO THE UNITED STATES' MOTION FOR
ENTRY OF REVISED PROPOSED TERMS OF AN INJUNCTION**

Defendant Appleton Papers Inc. ("API"), by its undersigned attorneys, respectfully submits this Memorandum in Opposition to the United States' Motion For Entry of Revised Proposed Terms of an Injunction.

**INTRODUCTION**

In its July 5, 2011 decision, the Court ruled that the United States is unlikely to prove that API is liable under CERCLA and that there is no "authority for issuing an injunction to a party when that party is not liable under the law that is the basis for the injunction motion." Dkt. 172 at 21. The Court further concluded that entering the requested injunction against NCR alone would be "pointless" because API holds a controlling interest in the limited liability company that NCR and API created to perform the Fox River cleanup ("the LLC"), and the LLC holds the contracts with the various contractors actually performing the remediation. *Id*. at 23.

The United States' latest motion attempts to circumvent these rulings by seeking a mandatory injunction requiring API to turn over control of the LLC to NCR, yet remain a

- 1 -

member of the LLC and subject to all obligations it incurs. The United States seeks to do through the back door what it could not do through the front door, *i.e.*, force API to comply with its proposed injunction, the very act that the Court said would be improper in its July 5 decision.

The injunction the Government seeks is inappropriate for other reasons as well. API has contractual obligations to its indemnitor, Arjo Wiggins Appleton Ltd. ("AWA").[1] As part of those obligations, API gave a proxy to AWA's indirect subsidiary, Arjo Wiggins Appleton (Bermuda) Limited ("AWAB"), to vote API's shares in the LLC. The United States does not claim, and has no basis for claiming, that giving the proxy to AWAB was unlawful or improper. Nevertheless, the United States is asking the Court to impair API's contractual arrangements with AWA and AWAB by ordering API to revoke the lawful proxy it gave to AWAB and to give its proxy to NCR.

To justify these extraordinary actions, the United States makes the remarkably disingenuous claim that such relief is only "minor and ancillary." Minor and ancillary? The injunction would force API, a non-liable party, to revoke the proxy it lawfully gave to AWAB, an entity not before the Court, pursuant to its contractual obligations to AWA, another entity not before the Court. The United States has cited no legal grounds that permit this Court to compel API, a non-liable party, to violate its lawful contractual obligations under an indemnity agreement that is intended to the extent of its terms to provide a financial safeguard to API, an employee-owned company. To the United States this may be minor and ancillary. To the 1,900 employees of API, this is major, direct and quite personal.

---

[1] AWA is now known as Windward Prospects Ltd. Declaration of Tami Van Straten (filed herewith) ("Van Straten Dec.") ¶ 3.

If the United States wants to put NCR in control of the LLC, it can do so by recognizing the Court's holding and stipulating to dismiss the Government's claims against API with prejudice. The LLC's operating agreement includes an express provision that would transfer API's interests in the LLC to NCR upon entry of such an order. Such a transfer of API's interests in the LLC will not affect API's independent indemnification obligations to NCR under the 1998 settlement, but it would relieve API of any interest in, and ongoing obligations to, the LLC.

API expands below on each of these reasons why the Court should deny the United States' motion.

## ARGUMENT

### I. THE REQUESTED INJUNCTIVE RELIEF IS NEITHER MINOR NOR ANCILLARY.

The "new" form of injunction sought by the United States suffers from the same fatal defect as the original: it subjects API, a party without CERCLA liability, to intrusive injunctive relief. The Court has already flatly rejected such an injunction: "I am not aware of any authority for issuing an injunction to a party when that party is not liable under the law that is the basis for the injunction motion." Dkt. 172 at 21. Undeterred, the United States, effectively acknowledging API's non-liability, is now claiming that it merely seeks "minor and ancillary" relief against API. Dkt. 179 at 5.

The principal case upon which the United States relies provides compelling *support* for this Court's *refusal* to enter injunctive relief against API. In *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375 (1982), the issue before the Court was whether certain parties (the petitioners), who were found not to have violated the federal statute in question, could nevertheless be required to pay a portion of the costs to implement an injunction to remedy statutory violations by other parties with whom the

- 3 -

petitioners were affiliated. The Supreme Court held that the petitioners could *not* be subjected to such injunctive relief. Citing a "controlling principle governing the permissible scope of federal judicial power," *id*. at 399 (quoting *Hills v. Gautreaux*, 425 U.S. 284, 294 n.11 (1976)), the Court held that the equitable authority of district courts "could be exercised only on the basis of a violation of the law and could extend no farther than required by the nature and extent of that violation." *Id*. The Court then stated:

> We think that the principle enunciated in these cases, transposed to the instant factual situation, offers **no support for the imposition of the injunctive relief against a party found not to have violated any substantive right of respondents.** This is not to say that defendants in the position of petitioners might not, **upon an appropriate evidentiary showing, be retained in the lawsuit and even subjected to such minor and ancillary provisions of an injunctive order** as the District Court might find necessary to grant complete relief to respondents from the discrimination they suffered at the hands of the Union.

*Id*. (emphasis added).

The Court concluded, however, that the injunctive relief to which the petitioners were subjected "cannot be regarded as 'minor' or 'ancillary' in any proper sense of those terms," citing the "considerable burdens" imposed by the injunction. *Id*. The Court held:

> . . . [T]he the injunctive decree entered by the District Court as presently drawn treats petitioners as if they had been properly found liable for the Union's discrimination. A decree containing such provisions, we hold, is beyond the traditional equitable limitations upon the authority of a federal court to formulate such decrees.

*Id*. at 400-401.[2]

---

[2] The United States also cites *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977) and *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), but neither decision is pertinent to the issues now before this Court. In *International Brotherhood*, the Court stated that, although it had concluded that the union had not violated Title VII, "[t]he union will properly remain in this litigation as a defendant so that full relief may be awarded the victims of the employer's post-Act discrimination." 431 U.S. at 356, n.43. The decision does not discuss in what form, or even whether, injunctive relief may be entered against a party that was found not to have violated the statute that is the basis for the requested injunction. In *Zipes*, a union had intervened in the litigation to object to a proposed injunction that gave retroactive seniority to certain union members who had been victims of unlawful discrimination. The union objected to the injunction on the ground that the employer, and not the union, had violated Title VII. *Id*. at 399-400. The court dismissed the objection, noting that under the holding in *International*

(footnote continued on next page)

Here, as in *General Building Contractors,* the injunctive relief in question cannot be regarded as minor or ancillary. By forcing API to turn its proxy over to NCR while remaining a party to the LLC, the United States effectively asks that API be enjoined to do the work the United States wants done this year, but be bound and gagged while decisions regarding that work are made, likely in violation of Delaware law.[3] API would in every respect be "compelled" under the Court's injunction, the very thing the Court's July 5th decision said could not happen.[4]

Moreover, the revised form of injunction will interfere with — indeed, in the case of the proxy, nullify — lawful contractual arrangements between API, a party the Court has found not likely liable under CERCLA, and AWA and AWAB, entities that are not before the Court. API gave the proxy to AWAB in August 2009 (long before the dispute arose that led to the filing of the United States' motion for preliminary injunction) at the

---

(footnote continued from prior page)

*Brotherhood*, it was proper for the union to remain a party so that complete relief could be granted. *Id*. at 400. The Court in *Zipes* had no occasion to address the issues before this Court.

[3] The LLC is organized under Delaware law, which provides that a proxy must be voted in the best interests of the owners of the shares *Hauth v. Giant Portland Cement Co.*, 96 A.2d 233, 235 (1953) ("A person designated in a proxy has a fiduciary obligation to carry out the wishes of the stockholders to the best of his ability."). *See also Rice & Hutchins v. Triplex Shoe Co.*, 147 A. 317, 322 (1929), *aff'd*, 152 A. 342 (Del. 1930):

> A person acting as proxy for another is but the latter's agent and owes to the latter the duty of acting in strict accord with those requirements of a fiduciary relationship which inhere in the conception of agency. If directors who are the agents of the stockholders are invested with a fiduciary character which inhibits them from passing judgment where their own peculiarly personal interests are involved, as was held in the Lofland Case, I am unable to see why on principle the same sort of inhibition is not imposed on those who act as proxies for a stockholder.

Thus, ordering API to give NCR a proxy that it will vote against API's interests would violate API rights.

[4] In fact, the "new" proposed injunction goes even farther. The proposed transfer of API's proxy would extend for at least nine months, and thus would cover the period of planning for the 2012 construction season. However, since the Government's original motion and supporting papers addressed only the 2011 season, it has made no showing of any elements necessary for an injunction for the 2012 construction season.

- 5 -

direction of AWA. Van Straten Dec. ¶¶ 5-6. AWA had the contractual right to request that API give the proxy to AWAB under the terms of a 2001 indemnity agreement, called the "Fox River AWA Environmental Indemnity Agreement" ("AWA Indemnity Agreement"),[5] under which AWA, subject to various terms and conditions, agreed to indemnify API for liabilities it may have arising from the Fox River. *Id.* ¶ 3.

Specifically, API agreed that "AWA shall have the exclusive right . . . to carry out or direct, in the name and on behalf of [API], the defense of all claims and proceedings, whether presently existing or hereafter arising, that could potentially give rise to a claim for indemnification by API . . ." *Id.*, Ex. A at § 5.2.2. The indemnity agreement further provides:

> Accordingly, (i) as between AWA and [API], AWA shall have the exclusive right to select counsel to conduct the defense of all such Claims . . . , (ii) **[API] shall cooperate fully with AWA or its designee and its counsel**, including by granting all necessary powers of attorney, (iii) **AWA shall have the right to require [API] to do any of the foregoing in accordance with AWA's instructions**, and (iv) **[API] shall not take any action . . . regarding Claims or Recoveries unless directed to do so by AWA**, or otherwise as consistent with strategies and policies previously approved by AWA.

*Id.* (emphasis added). API also is obligated to "cause each of its Affiliates, officers, employees, consultants and agents to, provide reasonable cooperation with AWA in the defense of all Claims . . ." *Id.*, § 5.2.4.

An injunction requiring API to revoke the proxy it gave to AWAB impairs the parties' exercise of their contractual rights and obligations under the AWA Indemnity Agreement. Such a result raises constitutional questions of due process and contract impairment that are neither minor nor ancillary. Moreover, AWA has not consented to revocation of the proxy. *Id.* ¶ 7. API's unilateral revocation of the proxy without

---
[5] *See* Van Straten Dec., Ex. A.

AWA's consent may constitute a breach of the AWA Indemnity Agreement that could put at risk API's right to indemnity. That right is highly valuable to API, an employee-owned company,[6] because it provides a source of funding for API's Fox River liabilities, including API's obligations to NCR. The disruption of this arrangement could have economic consequences that are direct, major, and personal for API's 1,900 employees.[7]

## II. THE UNITED STATES HAS NOT CITED ANY GROUNDS ALLOWING THE COURT TO USE ITS EQUITABLE POWERS TO NULLIFY THE PROXY TO AWAB.

The United States has not provided the Court with any basis to exercise its equitable powers with respect to the proxy. API's decision to give the proxy to AWAB in 2009 was legal. The United States does not contend otherwise. Indeed, it was because of the United States' issuance of a unilateral order claiming that API had CERCLA liability that the contractual arrangements came into being. That the United States now asks the Court to impair these arrangements on the ground that API is somehow "interfering" with NCR's compliance is as ironic as it is disingenuous.

The proxy serves a legitimate business purpose (to satisfy API's obligations to AWA under the indemnity agreement) and API received valuable consideration in exchange for the proxy (AWA's ongoing indemnity for API's Fox River liabilities). Nor is there anything improper about AWA's request that API give the proxy to AWAB. In exchange for agreeing to indemnify API for its Fox River liabilities, AWA obtained the contractual right to manage all matters related to its indemnification obligations. Having

---

[6] Van Straten Dec., ¶¶ 2-3.

[7] *See EEOC v. Local 638*, 81 F.3d 1162, 1180 (2d Cir. 1996) (reversing trial court ruling that injunctive relief against non-liable party was "minor and ancillary," stating: "What the district court ordered here, however, is not an 'adjustment'; rather it is a major alteration in the relationship between Local 28 and the Contractors.")

API give its proxy to AWAB allows AWA to better manage the expenses of the LLC for which AWA is liable under the AWA Indemnity Agreement. The law permits indemnitors to protect their interests.

There is not one whit of evidence before the Court that API's proxy to AWAB is anything other than a *bona fide* transaction that was both lawful and commercially reasonable. Under these circumstances, this Court has no grounds for divesting AWAB (and, indirectly, AWA) — entities that are not even before the Court — of a valuable property right. Nor does the Court have grounds for ordering API to revoke the proxy. As *General Building Contractors* – the principal case upon which the United States relies — makes clear, the equitable powers of courts "[can] be exercised only on the basis of a violation of the law and [can] extend no farther than required by the nature and extent of that violation." 458 U.S. at 399. Here, because there has been no violation of law, the Court has no basis for ordering revocation of the proxy.

The United States has not cited any decision where a court has ordered revocation of a lawful proxy. It asserts that courts have authority "to enjoin the exercise of corporate voting and proxy rights," Dkt. 179 at 6 n.5, but in each of the cases it cites the court granted injunctive relief on the basis of a violation, or a likely violation, of law. For example, in *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1151-52 (D. Kan. 2001) the district court found that "defendant's Proxy Statements contain material misrepresentations," and that the "plaintiff has 'compellingly' established its likelihood of success on the merits of its section 14a claim." Likewise in *SEC v. American Real Estate Investment Trust*, 529 F. Supp. 1300, 1305 (C.D. Cal. 1982) the district court found that "defendant AREIT has violated, is violating and unless restrained

- 8 -

Case 1:10-cv-00910-WCG   Filed 07/22/11   Page 8 of 13   Document 187

and enjoined, will continue to violate Section 14(a) of the Exchange Act." None of the cited cases comes close to presenting facts similar to those here.

The United States also points to language in the LLC's operating agreement that qualifies the voting rights provisions in the agreement with the words "[e]xcept as otherwise expressly provided herein or required by law." Dkt. 179 at 6, quoting Dkt. 152 at 18 of 41. That language provides no basis for entering the requested injunction. This language means that if a court had grounds for issuing an injunction affecting voting rights, such an injunction would supersede the language of the agreement. In the absence of such grounds against a non-liable party, as is the case here, there is no basis for injunctive relief against API.

Finally, the United States' assertion that "an adjustment of LLC voting rights is well-justified because API claims to be nothing more than NCR's indemnitor" (*id.*) is frivolous. The LLC's current voting structure is the result of the United States' allegation in its 1996 PRP letters and the 2007 106 Order that API had direct CERCLA liability, and reflects the LLC obligations that API undertook on the basis of this allegation. The Court has no basis for modifying the LLC's voting arrangements unless and until API's obligations with respect to the LLC are modified to reflect its status as NCR's partial indemnitor.[8]

---

[8] The United States' reliance on *Golden State Bottling Co. v. National Labor Relations Board,* 414 U.S. 168 (1973) is misplaced. There, the National Labor Relations Board awarded injunctive relief relating to unfair labor practices against a party the Board had specifically found was a "successor" for purposes of the National Labor Relations Act. Here, in contrast, the Court has found that the United States failed to show any reasonable likelihood of success that API is a successor under CERCLA.

- 9 -

Case 1:10-cv-00910-WCG   Filed 07/22/11   Page 9 of 13   Document 187

### III. THE REQUESTED INJUNCTIVE RELIEF SHOULD BE DENIED BECAUSE THE UNITED STATES CAN GET THE RELIEF IT SEEKS WITHOUT AN INJUNCTION.

Under the express terms of the LLC's Operating Agreement, entry of a court order dismissing the Government's CERCLA claims against API with prejudice will trigger adjustment of the parties' voting rights and put NCR in control of the LLC:

> In the event of any of (each, a "Reallocation Event") (i) a final settlement among the Class A Members that alters the allocation of responsibility for the Work, (ii) **the issuance of an order of any court of competent jurisdiction that alters the allocation of the responsibility for the Work among the Class A Members** (an "Allocation Order"), or (iii) a modification of an Allocation Order by subsequent judicial decision(s), **the Company shall promptly issue Class A Common Units to each Class A Member such that, immediately following such issuance, the ratio of Class A Common Units held by each Class A Member is equivalent to the ratio of the relative percentages of the Class A Members' shares as established by the Reallocation Event**, as determined by the Tax Matters Partner.

Dkt. 152 at 17-18 of 41, § 3.4. (emphasis added). The Operating Agreement defines the term "Work" to mean "the specified tasks approved by the governmental parties identified in the Orders." *Id*. at 15 of 41. The latter term includes the 106 Order. *Id*. at 13 of 41. The term "Class A Members" includes API and NCR. *Id*. at 3, 40 of 41.

Thus, under subparagraph (ii), upon the issuance of a court order that "alters the allocation of the responsibility for the Work among the Class A Members" (*i.e.,* API and NCR), the LLC is required to issue Class A Common Units such that, "*immediately* following such issuance" (emphasis added), the voting rights of the LLC's members "is equivalent to the ratio of the relative percentage of the Class A Members share as established by the Reallocation Event." *Id*. at 17-18 of 41, § 3.4. Thus, after the Court enters an order that dismisses the Government's CERCLA claims against API with prejudice, API will have no further responsibility for the work mandated by the 106 Order, while NCR will remain a party to the 106 Order. Therefore, the Court's order will "alter[] the responsibility" for the work required by the 106 Order as between API and

- 10 -

Case 1:10-cv-00910-WCG   Filed 07/22/11   Page 10 of 13   Document 187

NCR. As a result, the members' ownership interests in the LLC (and thus the members' respective voting rights) will be altered to leave NCR with 100% and API with 0%. NCR would then control the LLC while API would have no further LLC membership.[9]

This provision was specifically designed to remove a member from the LLC upon a determination that it has no liability to perform work under the 106 Order. Here, such removal will allow API to continue the role of NCR's partial indemnitor upon entry of a court order that discharges API from further direct responsibility for the work mandated by the 106 Order.

The United States has the power to cause this outcome by filing a motion to dismiss the claims against API with prejudice.[10] Indeed, in view of the Court's finding that the Government "will have little success in attempting to demonstrate that Appleton Papers Inc. is liable as a successor under CERCLA," Dkt. 172 at 21, such a motion would appear to be warranted.[11]

Instead, the United States has decided to take another shot at trying to convince this Court to grant injunctive relief by repackaging its arguments without eliminating any of the deficiencies that prompted the Court to reject them in the first instance. The Court should not reward this gamesmanship. It should deny the United States' new motion.

---

[9] The foregoing changes with respect to ownership and control of the LLC will not affect API's indemnity obligations to NCR, which are governed by wholly separate agreements. Those separate agreements have their own substantive terms and specified procedures (including the selection of a forum) that govern the parties' ongoing relations. API's indemnification rights and obligations are defined by those separate agreements and have not been modified or superseded by the LLC Operating Agreement.

[10] This alternative to the relief requested in the pending motion should come as no surprise to the Government, since API laid it out in its memorandum opposing the preliminary injunction motion. Dkt. 151 at 7-8; Dkt. 156-1 at 12.

[11] Anticipating that the United States will not voluntarily dismiss its claims against API with prejudice, API shortly will file a motion for summary judgment in this action addressing its liability under CERCLA.

- 11 -

## IV. THE COURT CANNOT GRANT THE REQUESTED INJUNCTIVE RELIEF WITHOUT ADDRESSING SEVERAL UNRESOLVED ISSUES.

For all the reasons discussed above, the Court should deny the United States' motion. However, API brings to the Court's attention several additional grounds for denying injunctive relief that were raised by API and NCR in opposition to the motion for preliminary injunction and were not addressed in the Court's July 5 decision. These issues would have to be addressed before considering the extraordinary relief sought by the Government. API and NCR had objected to the following specific requirements of the Government's proposed preliminary injunction:

•  The disposal of sediments regulated under the Toxic Substances Control Act by shipping them out of state at three times the cost of in-state disposal that could be accomplished with a permit. Dkt. 137 at ¶¶ 22, 30, 40; Dkt. 140 at 14, 33; Dkt. 141 at ¶36.

•  The dredging of sediments prior to the completion of a final design – which could significantly increase the cost of dredging by forcing the LLC to dredge clean sediments. Dkt. 137 at ¶¶ 35-38; Dkt. 140 at 14, 33; Dkt. 141 at ¶¶34-35.

In addition, an injunction requiring the dredging of 605,000 cubic yards during the 2011 construction season is unlikely to be feasible. The LLC's Resident Manager, who is intimately familiar with all aspect of the remedial plan and the capabilities of the dredges and their crews, estimates that no more than approximately 539,000 cubic yards can be dredged:

> If dredging continued to proceed 5 days a week, 24 hours a day from August 1 through the remainder of the construction season, the LLC's contractor team will be unable to dredge 605,000 cubic yards this season. Taking into account the 2011 weekly production rate, along with the production rate for the removal of TSCA-designated sediments, the LLC's contractor team would be able to dredge an estimated 538,987 cubic yards this season.

Declaration of Jeffrey Thomas Lawson (filed herewith), ¶ 9.

Finally, the United States ignores that under Federal Rule of Civil Procedure 52(a)(2), the Court must issue findings of fact prior to granting injunctive relief. As the Court may recall, the United States, as the movant, did not submit any proposed findings of fact at all until it filed its reply brief. Dkt. 150-1. As a result, API was deprived of any opportunity to respond to the Government's proposed findings of fact, which are filled with disputed issues and misstatements that API has a right to challenge. API filed a motion to strike these findings of fact and, in the alternative, asked for leave to respond to them. Dkts. 154, 155, 156. The Court did not address API's request, because it declined to issue a preliminary injunction. Were the Court to change course, as the Government has now requested, API's due process rights would be violated if it were not allowed to respond to the Government's proposed findings of fact.

## CONCLUSION

For the reasons set forth above, API respectfully requests that the Court deny the United States' Motion for Entry of Revised Proposed Terms of an Injunction.

Dated this 22nd day of July, 2011.

>APPLETON PAPERS INC.
>
>By     /s/ Ronald R. Ragatz
>           One of Its Attorneys

Counsel for Appleton Papers Inc.:

| | |
|---|---|
| Michael L. Hermes (#1019623) | Ronald R. Ragatz (#1017501) |
| Heidi D. Melzer (#1076125) | Dennis P. Birke (#1018345) |
| Brandon J. Evans (#1063940) | Megan A. Senatori (#1037314) |
| Ericka L. Krumrie (#1066383) | DeWitt Ross & Stevens S.C. |
| Hermes Law, Ltd. | Two East Mifflin Street |
| 333 Main Street, Suite 601 | Madison, WI 53703 |
| Green Bay, WI 54301 | (608) 255-8891 |
| (920) 436-9870 | |