IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN, Plaintiffs, v. NCR CORPORATION, *et al.*, Defendants. | No. 10-CV-910-WCG |

**RESPONSE OF DEFENDANT APPLETON PAPERS INC. TO DEFENDANT NCR CORPORATION'S FILING REGARDING THE UNITED STATES' MOTION FOR ENTRY OF REVISED PROPOSED TERMS OF AN INJUNCTION**

Defendant Appleton Papers Inc. ("API"), by its undersigned attorneys, respectfully submits this response to Defendant NCR Corporation's filing regarding the United States' Motion For Entry of Revised Proposed Terms of an Injunction.

**DISCUSSION AND ARGUMENT**

In its response to the United States' Motion for Entry of Revised Proposed Terms of an Injunction (Dkt. 190), NCR requests that the Court include the following additional paragraph in the injunction if it grants the Government's pending motion:

> NCR and API shall each comply with the final judgment entered pursuant to the February 26, 2007 Consent Order, which the Court ordered to be registered on July 5, 2011. Such compliance includes but is not limited to payment of cash calls made by or on behalf of the LLC consistent with the Consent Order.

Dkt. 190-1, ¶ 3.[1]

---

[1] NCR's request for additional relief is in effect a motion, and consequently API is filing this response pursuant to Civil L.R. 7(b).

The Court need not read further if it is going to deny the United States' motion, as API has separately argued is the correct result here. (Dkt. 187). However, if the Court is inclined to grant the United States' motion, the Court should decline to grant the additional relief requested by NCR for each of the following reasons.

*First*, there is not a shred of evidence before the Court that indicates that API has breached, or is threatening to breach, its indemnification obligations arising from the 1998 Settlement Agreement (Dkt. 124-1) to which NCR, API and B.A.T Industries p.l.c. ("BAT") are parties. (The February 26, 2007 Consent Order (Dkt. 144-3) and the underlying Arbitration Award (Dkt. 144-2) (collectively, the "SDNY Judgment") arise from the 1998 Settlement Agreement.) Nor is there any evidence that API has breached, or is threatening to breach, its obligations under the LLC Operating Agreement, including timely payment of cash calls by the LLC. There is no basis whatsoever for an injunction requiring compliance with contracts that are being fully and completely performed in every respect.[2]

Federal injunctive relief is not available to address speculative claims about possible future violations of legal rights:

> In keeping with the general reluctance of federal courts to exercise their equitable discretion and award injunctions in the absence of a compelling need for that form of relief, plaintiff must demonstrate that there is a real danger that the act complained of actually will take place. There must be more than a mere possibility or fear that the injury will occur. As stated by one court: **"[T]o warrant the granting of an injunction on ground that irreparable injury is threatened, the injury contemplated must be real, not fancied; actual, not prospective; and, threatened, not imagined."**

---

[2] Further, as discussed below, NCR's request for relief involves a contract (*i.e.*, the 1998 Settlement Agreement) that is not properly before this Court and directly affects the rights of a party (BAT) that is not before the Court.

11A Wright, Miller & Kane, *Federal Practice and Procedure: Civil* § 2942 at 45-47 (2nd ed. 1995) (emphasis added). Likewise, the Seventh Circuit has held:

> [Parties] who are acting in good faith and endeavoring to comply with the law should not be harassed by the processes of a court of equity coercing them to do what they are willing to do and are trying to do voluntarily. Equity will promptly respond to meet a violation or a threatened violation, and it will as emphatically refuse its aid where none is made to appear.

*Walling v. T. Buettner & Co.*, 133 F.2d 306, 308 (7th Cir. 1943). *See also Michael C. v. Gresbach*, 479 F. Supp. 2d 914, 926 (E.D. Wis. 2007), *aff'd*, 526 F.3d 1008 (7th Cir. 2008) (party seeking injunctive relief "must establish that they face a threat of future injury that is both real and immediate."). NCR's desire to "underscore" its arrangements with API (Dkt. 190 at 5) based on some sort of unarticulated fear provides no basis for injunctive relief:

> "Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur." [Quoting *Wis. Gas. Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (emphasis original)] Thus, . . . the movant must prove either "that the harm has occurred in the past and is likely to occur again" or that the harm is "certain to occur in the near future." *Id*. " 'Injunctions ... will not issue to prevent injuries neither extant nor presently threatened, but only merely "feared." ' " *Comm. in Solidarity With People of El Sal. (CISPES) v. Sessions*, 929 F.2d 742, 745-46 (D.C. Cir. 1991) (alteration in original) (citation omitted).

*Beattie v. Barnhart*, 663 F. Supp. 2d 5, 9 (D.D.C. 2009).

***Second***, if a dispute were to arise in the future regarding the payment obligations of the parties to the 1998 Settlement Agreement, NCR, API and BAT have agreed upon a specific process for resolving such disputes. They mutually covenanted not to sue one another, Dkt. 124-1, ¶ 6, and agreed to a specific mechanism for the payment of costs covered by the Agreement. *Id.* They also agreed — "in consideration of the payments to be made" (*id.*) — to a dispute resolution process that first requires consultation and mediation. *Id.*, ¶ 10.a. If those procedures do not resolve the dispute, the parties agreed

that the dispute would be submitted to an arbitration different from the 2005 arbitration that established their 60/40 allocation of costs:

> b. <u>Funding Disputes</u>: In the event that the inter-company dispute escalation procedures and the non-binding mediation are not effective, NCR and API/BAT agree that any and all disputes over payment of any Damages or Group Defense costs allocated to or assessed upon NCR or API/BAT shall be submitted to arbitration in New York, New York administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules. Judgment on the award entered by the Arbitrator shall be entered in any court having jurisdiction thereof.

*Id.*, ¶ 10.b.[3] Thus, the parties agreed to arbitrate, rather than litigate, future payment disputes related to their settlement.[4]

Arbitration provisions are favored by the courts. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983) (The Federal Arbitration Act embodies a "liberal federal policy favoring arbitration agreements."); *see also Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.,* 916 F.2d 402, 405 (7th Cir. 1990) (noting the "strong federal policy favoring arbitration") *abrogated on other grounds, IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 530 (7th Cir. 1996). When parties have agreed to arbitrate their disputes, a court's jurisdiction is limited to enforcing the agreement to arbitrate. *See Merit Ins. Co. v. Leatherby Ins. Co.,* 581 F.2d 137, 142 (7th Cir. 1978) ("If

---

[3] The arbitration that established the 60/40 allocation of costs was undertaken pursuant to Section 4.a. of the 1998 Settlement Agreement:

> Pursuant to the terms of the Subsequent Allocation Arbitration Agreement . . . , NCR and API/BAT agree to participate in discovery and a compulsory binding arbitration to allocate as between them all Claims, Damages, or Group Defense Costs relating to the Fox River sites . . . in excess of $75 million (the "Subsequent Allocation").

Dkt. 124-1 at 14. The arbitration provided for in Section 10.b. is separate and distinct from the arbitration under Section 4.a. that established the 60/40 allocation of costs.

[4] API incorporates by reference the arguments set forth and authorities cited in the Memorandum of Appleton Papers Inc. in Opposition to NCR Corporation's Motion for Registration of Judgment for Enforcement Pursuant to 28 U.S.C. § 1963 (Dkt. 151).

- 4 -

the agreement to arbitrate is valid the Court has no further power or discretion to address the issues raised in the complaint but must order arbitration . . .").

Accordingly, issues regarding the rights and obligations of NCR, BAT and/or API under their Settlement Agreement are to be resolved pursuant to the dispute resolution provisions they agreed upon. If disputes regarding the settlement were to arise in the future, NCR, having agreed to arbitration "in consideration of the payments to be made," has no legal right to seek relief — including the relief it now requests — from this Court.

NCR's assertion that it is not challenging any "rights and obligations" under the 1998 Settlement Agreement (Dkt. 190 at 5 n.2) is disingenuous. As NCR well knows, Sections 3 and 4 of the 1998 Agreement deal with *allocation* of costs, and it is the parties' arbitration award of this allocation, specifically contemplated by Section 4, that was reduced to a judgment in the Southern District of New York. *Payment* of costs, however, and disputes arising from payment of such costs, are dealt with in Sections 5 and 10 of the Agreement. NCR claims to be seeking to enforce the 60/40 allocation, but Section 10 of the agreement it signed requires expressly that disputes as to payment that arise subject to the 60/40 allocation must follow an agreed dispute resolution process, including mandatory binding arbitration. NCR's current request for relief is inconsistent with NCR's covenant not to sue and its agreement to arbitrate disputes arising under the Agreement, including funding disputes. The Court should not interfere with the parties' rights and obligations under an agreement not before the Court or give NCR "cover" for a request that API believes represents a failure to comply with that Agreement.

***Third***, NCR is not entitled to an order providing that "compliance" with the SDNY Judgment "includes but is not limited to payment of cash calls made by or on

- 5 -

behalf of the LLC consistent with the Consent Order." Dkt. 190-1, ¶ 3. This is a transparent and unjustifiable attempt to envelop obligations arising under the LLC Agreement into the SDNY Judgment.

Pursuant to the terms of the LLC Operating Agreement, the LLC periodically issues "cash calls" to its members, requiring payment in advance of the LLC's estimated expenses during the upcoming three months. The duty to pay such cash calls, and the procedures and timing for making of such payments, arise under the LLC Operating Agreement, while the parties' indemnification obligations to each other arise under the separate 1998 Settlement Agreement. The 2009 LLC Operating Agreement makes no reference to the 1998 Settlement Agreement. Nor does the SDNY Judgment (entered in 2007) make any reference to the LLC Operating Agreement. Therefore, while the amounts NCR pays in response to a cash call may fall within the scope of API's indemnification obligations under the 1998 Settlement Agreement, nothing in that Agreement or the SDNY Judgment requires API to indemnify NCR in accordance with the LLC's timeline for paying cash calls. (API is obligated to comply with the LLC's timeline for payment of cash calls by virtue of its membership in the LLC.) Consequently, NCR has no legal or contractual basis for attempting to intertwine API's indemnification obligations with the procedures for paying LLC cash calls. This Court cannot re-write the SDNY Judgment to include obligations under contracts that did not exist when the Judgment was entered.

Further, an order that makes payment of an LLC cash call in accordance with the LLC's procedures a requirement for complying with the 1998 Settlement Agreement directly affects the rights and interest of BAT, an entity that is not a party in this action.

- 6 -

Case 1:10-cv-00910-WCG   Filed 07/25/11   Page 6 of 8   Document 192

BAT is a party to both the 1998 Settlement Agreement and the SDNY Judgment. Therefore, an order of the Court that makes payment of LLC cash calls in accordance with the LLC's procedures a condition for complying with the SDNY Judgment directly affects the rights and interests of both API and BAT. The Court should not enter a mandatory injunction that affects BAT's rights and obligations when it is not before the Court.

* * *

Another matter raised in NCR's response warrants brief comment. NCR notes that it has been "actively investigating" how to comply with the proposed injunction to the extent feasible, as the Court requested, including "reaching out to the Government immediately following the Court's ruling." Dkt. 190 at 3. However, neither NCR nor the Government have communicated with API regarding the option of quickly removing API from the LLC through the process provided for in Section 3.4 of the LLC's Operating Agreement. (API described this readily available alternative in its response to the United States' pending motion. Dkt. 187 at 10-11.)

NCR's attempt to block use of this alternative by claiming that Section 3.4 "does not apply as between NCR and API" (Dkt. 190 at 7) cannot be taken seriously. NCR and API are the only parties to the Operating Agreement — there is no one else to whom it *could* apply. Further, the claim is refuted by the express language of the Agreement. Section 3.4 applies to "Class A Members." Schedule A to the Operating Agreement identifies the LLC's Class A Members, and they include, of course, API and NCR. There is no language in the Agreement indicating that Section 3.4 was to apply only to *other*

Class A Members. Therefore, the Court should dismiss NCR's claim that Section 3.4 "does not apply."

## CONCLUSION

API respectfully requests that the Court deny the United States' Motion for Entry of Revised Proposed Terms of an Injunction. However, if the Court grants the Motion, the Court should decline to grant the additional relief requested by NCR for the reasons set forth above.

Dated this 25th day of July, 2011.

APPLETON PAPERS INC.

By  /s/ Ronald R. Ragatz
    One of Its Attorneys

Counsel for Appleton Papers Inc.:

| | |
|---|---|
| Michael L. Hermes (#1019623) | Ronald R. Ragatz (#1017501) |
| Heidi D. Melzer (#1076125) | Dennis P. Birke (#1018345) |
| Brandon J. Evans (#1063940) | Megan A. Senatori (#1037314) |
| Ericka L. Krumrie (#1066383) | DeWitt Ross & Stevens S.C. |
| Hermes Law, Ltd. | Two East Mifflin Street |
| 333 Main Street, Suite 601 | Madison, WI 53703 |
| Green Bay, WI 54301 | (608) 255-8891 |
| (920) 436-9870 | |