determination. The House Ways and Means Committee observed that,

> [T]he time limit provided in the bill for an ITC preliminary determination, although longer than that under present law, is still quite brief. It is therefore intended that the ITC will investigate the allegations in the petition in as thorough a manner as possible using the information available within that time period * * *[43]

The Senate Finance Committee stated that,

> While the committee recognizes that the ITC cannot conduct a full-scale investigation in 45 days, it expects the Commission to make every effort to conduct a thorough inquiry during that period. The nature of the inquiry may vary from case to case depending on the nature of the information available and the complexity of the issues.[44]

This case is just such an instance in which the shortness of time has limited our ability to conduct as complete an investigation as we would like. In turn, such a limited investigation in this case creates some difficulty in undertaking an appropriate application of Section 771(4)(D).

While section 773(a) requires that preliminary determinations be made with regard to an industry, section 771(4)(D) requires that "the effect of subsidized or dumped imports shall be assessed in relation to the production of a like product" or "the narrowest group or range of products, which includes a like product * * *"[45] Read together, the provisions seem to require that the measure of whether an industry is materially injured, either as a preliminary or final matter, is the effect of the LTFV imports on domestic "like products" or "the narrowest group" of domestic products including the like product.

In applying such a reading to this case, a problem exists as to sufficiency of data relating to the identification of production process and producer's profits under section 771(4)(D). The discussion in the Commission Report of injury to the domestic industry is based on responses to questionnaires by domestic producers of pressure and mechanical steel pipe and tube, accounting for an estimated 90 percent of domestic boiler tube and process pipe shipments. The responses provided data regarding capacity, production, capacity utilization, employment, and profit and loss experience of these domestic producers. In responding to the questionnaire, the petitioner, Babcock and Wilcox, was able to submit data based on the separate consideration of four distinct categories of steel pipe and tube. That the petitioner was able to supply data on four separate products implies the possibility of four distinct product lines against which the Commission must apply section 771(4)(D). In the time available, however, none of the other domestic producers was able to provide similar disaggregated data. This inability of the other domestic producers to provide similar disaggregated data results in confusion as to the precise character of the industry.

As an additional matter, petitioner has testified at Conference[46] that the facilities used in production of the products in question can also be used for other purposes. However, the ease with which production is, in fact, interchangeable, remains a question. Thus, where the fact of interchangeability is established on the Record, evidence is limited going to the practical extent to which it is actually interchangeable.

Thus, not only is it difficult to identify the appropriate product against which to apply section 771(4)(D), it is also difficult to evaluate production process and producer's profits in this regard. So, because of the particular problem of incomplete and confusing information on the record thus far established in this case, taking into account the Senate view that the petitioner bears the burden of proof in section 773(a) cases,[47] and considering that a negative determination will close to the petitioner an opportunity for a more detailed inquiry as well as an opportunity for relief, the most prudent application of the relevant provisions is to undertake a best case analysis to reach a finding on reasonable indication of material injury to a domestic industry. In such an approach, we should apply the information on the record to find a reasonable division of appropriate product lines, then apply the relevant information as prescribed under section 771(4)(D).

My colleagues Chairman Bedell and Commissioner Moore as well as Vice Chairman Alberger have undertaken just such an analysis.[48] I differ from my colleague's findings, however, in one important respect. Their conclusions as to a reasonable indication of material injury to the industry are limited to the products they have isolated. My view is that where the data is as confusing and as incomplete as it is in this case, I prefer to take an affirmative finding, based upon the analysis described above, as a reasonable indication of material injury to an industry without regard to specific products.

The upshot of such an approach is to permit a full investigation to go forward with regard to all products where the affirmative section 771(4)(D) assessment was only with respect to one product. While this is not a desirable procedure in most cases, where the brevity of the preliminary investigation particularly ill-affords sufficient evidence to apply section 771(4)(D)[49] with adequate precision, and where there is a reasonable indication of material injury the public interest seems better served by going forward with fact finding on all matters. Such procedure reserves findings on the close questions of product lines and impact on specific products for a complete development of the facts.

Consequently, while I am not able, at this time, to reach a finding on the basis of specific TSUSA items, I do, for the reasons stated by my colleagues, the Chairman, Commissioner Moore, and the Vice Chairman, find that there is a reasonable indication of material injury to the domestic industry.

Issued: April 14, 1980.

By Order of the Commission.

Kenneth R. Mason,

*Secretary.*

[FR Doc. 80-12481 Filed 4-22-80; 8:45 am]

BILLING CODE 7020-02-M

---

[43] *Trade Agreements Act of 1979: Report of the Committee on Ways and Means* . . ., H. Rept. No. 96-317 (96th Cong. 1st Sess.) 1979, p. 61 [Hereinafter House Report].

[44] *Trade Agreements Act of 1979: Report of the Committee on Finance* . . ., S. Rept. No. 96-249 (96th Cong. 1st Sess.) 1979, p. 66 [Hereinafter Senate Report].

[45] 19 U.S.C. § 1677 (1979).

[46] Conference Transcript, pp. 33-34.

[47] Senate Report, *supra*, p. 66.

[48] The way in which my colleagues, including Commissioner Stern, differ on findings regarding the products in question is evidence of the insufficiency of the record and permits reasonable minds to significantly differ as to the appropriate application of section 771(4)(D).

[49] 19 U.S.C. § 1677 (1979).

## DEPARTMENT OF JUSTICE

### Proposed Consent Decree in Action To Enjoin Violations of an NPDES Permit by Appleton Papers, Inc., at its Paper Mill in Roaring Springs, Pa.

In accordance with Departmental policy, 28 CFR 50.7, 38 FR 19029, notice is hereby given that on April 9, 1980, a proposed consent decree in *United States* v. *NCR Corporation, Appleton Papers, Inc., and Appleton Papers Inc.* (W.D. Pa. No. 77-1408), was lodged with the United States District Court for the Western District of Pennsylvania. The proposed consent decree covers a paper mill in Roaring Springs, Pennsylvania, and it requires the corporation to bring its paper mill into compliance with its

permit and the requirements of the Clean Water Act by improvement of its waste water treatment plant and other pollution control measures, and provides for payment of a civil penalty to the United States in the amount of $150,000.

The proposed consent decree may be examined at the Clerk's office, 8th Floor, U.S. Post Office and Courthouse, Grant Street, Pittsburgh, Pennsylvania 15219 and at the Pollution Control Section, Land and Natural Resources Division of the Department of Justice, Room 2644, Ninth and Pennsylvania Avenue, NW., Washington, D.C. 20530. A copy of the proposed decree may be obtained in person or by mail from the Pollution Control Section, Land and Natural Resources Division, Department of Justice.

The Department of Justice will receive written comments relating to the proposed consent decree for a period of thirty (30) days from the date of this notice. Comments should be addressed to the Deputy Assistant Attorney General, Land and Natural Resources Division, Department of Justice, Washington, D.C. 20530, and should refer to *United States* v. *NCR Corporation, Appleton Papers, Inc., and Appleton Papers Inc.* (W.D. Pa. No. 77-1408), D.J. Ref. 90-5-1-1-858.

**Angus Macbeth,**

*Deputy Assistant Attorney General, Land and Natural Resources Division.*

[FR Doc. 80-12437 Filed 4-22-80; 8:45 am]

**BILLING CODE 4410-01-M**

## Office of Justice Assistance, Research and Statistics

## Law Enforcement Assistance Administration

## Bureau of Justice Statistics

## National Priority Program and Discretionary Progam Announcements; Change

In FR Doc. 80-5007 appearing on page 10713 in the issue of Friday, February 15, 1980, in the third column, under *Number and Dollar Range of Grants,* change lines eight (8), nine (9) and ten (10) "* * * the National Institute of Victimology, Victim/Witness Resource Center." to "* * * a qualified organization to provide technical assistance."

Dated: April 17, 1980.

**Henry S. Dogin,**

*Acting Director, OJARS Acting Director, NIJ.*

Dated: April 17, 1980.

**J. Price Foster,**

*Acting Administrator, LEAA Acting Director, BJS.*

[FR Doc. 80-12393 Filed 4-22-80; 8:45 am]

**BILLING CODE 4410-18-M**

## LIBRARY OF CONGRESS

## Copyright Office

**[Docket LPR 80-3]**

## Report of the Register of Coyprights on the Rights of Creators and the Needs of Users of Works Reproduced by Certain Libraries and Archives; Public Hearing

**AGENCY:** Library of Congress, Copyright Office.

**ACTION:** Notice of public hearing.

**SUMMARY:** The Copyright Office of the Library of Congress is preparing a report for Congress in accordance with 17 U.S.C. 108(i). The subject of the report is the extent to which 17 U.S.C. 108 has achieved the intended balance between the rights of creators and the needs of users of copyrighted works which are reproduced by certain libraries and archives. This notice announces and invites participation in the second of a series of regional public hearings designed to elicit views, comments, and information from all interested persons, including copyright proprietors, librarians, and users of all types of libraries. The Copyright Office actively seeks the participation not only of organizational representatives, but also of any individual whose informed opinion may contribute to the preparation of the report and the possible recommendation of changes in the copyright law.

**DATES:** The hearings will be held on June 11, 1980 and June 20, 1980 at the Washington Hilton Hotel, 1919 Connecticut Avenue, NW, Washington, DC, beginning at 9:30 a.m. The June 11, 1980 hearing will take place in the Conservatory of the Hilton during the same week as the annual meeting of the Special Libraries Association. The June 20, 1980 hearing will take place in the Georgetown Ballroom, West of the Hilton at the end of the annual meeting of the Medical Libraries Association.

Anyone desiring to testify should submit a written request to present testimony by June 4, 1980, to the address set forth below. Ten copies of written statements must be received by the Copyright Office by 4:00 p.m. on June 4, 1980.

Supplemental statements will be entered into the record until July 20, 1980. Ten copies of such statements should be submitted.

**ADDRESSES:** Written requests to present testimony and ten copies of written statements or of supplementary statements should be submitted as follows:

If sent by mail: Office of the General Counsel, U.S. Copyright Office, Library of Congress, Caller No. 2999, Arlington, Virginia 22202

If delivered by hand, the copies should be brought to: Office of the General Counsel, Room 519, Crystal Mall, Building No. 2, 1921 Jefferson Davis Highway, Arlington, Virginia

All requests to testify should clearly identify the individual or group desiring to testify and the amount of time desired. The Copyright Office will try to contact all witnesses to confirm the times of their appearances.

**FOR FURTHER INFORMATION CONTACT:** Dorothy Schrader, General Counsel, Copyright Office, Library of Congress, Washington, D.C. 20559. Telephone: (703) 557-8731.

**SUPPLEMENTAL INFORMATION:**

### 1. Background and Purpose of the Report.

The Copyright Act of 1976, 17 U.S.C. 101 et seq., was a product of many years of intense effort by Congress to replace what many felt was a copyright law which was ill-suited to such technological developments of the twentieth century as cable television, computers, and photocopying machines. One of the most difficult problems to resolve concerned the photomechanical reproduction, in whole or in part, of copyrighted works by libraries and archives. In addition to codifying the doctrine of fair use for the first time (17 U.S.C. 107), the Copyright Act of 1976 contains provisions authorizing certain acts of reproduction and distribution by qualifying libraries (17 U.S.C. 108).

These provisions represent a rather delicate balance between the positions forcefully advocated by the proprietor and user communities in testimony before Congress during the legislative effort that resulted in the current Act. Because of the uncertainty about their effect, at present and in the future, Congress provided that the Register of Copyrights should prepare at five-year intervals, reports concerning the effectiveness of the balance created by the Copyright Act. The first such report, the subject of the hearing here announced, is due January 1, 1983. An advisory committee composed of ten