IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

UNITED STATES OF AMERICA and
THE STATE OF WISCONSIN,

    Plaintiffs,

  v.

NCR CORPORATION, *et al.*,

    Defendants.

No. 10-CV-910-WCG

**REPLY MEMORANDUM IN SUPPORT OF APPLETON PAPERS INC.'S
MOTION FOR SUMMARY JUDGMENT**

Michael L. Hermes (#1019623)
Heidi D. Melzer (#1076125)
Brandon J. Evans (#1063940)
Ericka L. Krumrie (#1066383)
Hermes Law, Ltd.
333 Main Street, Suite 601
Green Bay, WI 54301
(920) 436-9870
Fax: (920)436-9871

Ronald R. Ragatz (#1017501)
Dennis P. Birke (#1018345)
Megan A. Senatori (#1037314)
DeWitt Ross & Stevens S.C.
Two East Mifflin Street
Madison, WI 53703
(608) 255-8891
Fax: (608) 252-9243

Counsel for Appleton Papers Inc.

Defendant Appleton Papers Inc. ("API"), by its undersigned counsel, submits this Reply Memorandum in support of its Motion for Summary Judgment.

## INTRODUCTION

The Government has confirmed that there are no disputed material facts. Its claims against API are predicated entirely on successor liability and its successor liability theory is based entirely upon its contention that API assumed the Fox River liability of NCR Corporation ("NCR"). There are two independent issues: (a) whether API assumed this Fox River liability in the 1978 Purchase and Sale Agreement ("1978 Agreement"); and (b) whether it is equitable to impose successor liability on API. The Government cannot show either. The response filed by Certain Defendants adds nothing to the Government's arguments.

This Memorandum will address the second issue first because the Court has already spoken on this topic in its July 5, 2011, Decision and Order ("July 5 Decision"). The Court there explained that "successor liability is an equitable doctrine designed to prevent injustice or fraud, not to create a wholly new suable entity with duplicate liability to the government." Dkt. 172 at 18. Because NCR remains viable, equity is not available to impose successor liability on API.

The Government ignores this fundamental principle. It treats successor liability as automatic and mechanical, relying on cases where either the predecessor was defunct or the "successor's" liability arose from a transaction in the nature of a corporate reorganization, in contrast with the facts here: an arm's length transaction where the seller remains viable. The successor liability doctrine is not available here; API is entitled to summary judgment on this basis alone.

The Government also cannot establish that API expressly assumed NCR's Fox River liability. The Government reprises the same arguments it unsuccessfully made in its two preliminary injunction memoranda. Repeating them for a third time does not improve them. Similarly, Certain Defendants repeat arguments they made in unsuccessfully opposing API's motion for reconsideration in the *Whiting* action. The Government and Certain Defendants have not and cannot articulate any coherent theory of how NCR's Fox River liability could come within the scope of the limited liabilities API assumed in the 1978 Agreement. In any event, this is a settled matter as between NCR and API who, as the Court itself has already recognized, sits as a partial indemnitor to NCR. Dkt. 172 at 19.

Accordingly, API requests that the Court grant its motion for summary judgment dismissing all of the Government's claims against API with prejudice.

## ARGUMENT

### I. API HAS NO SUCCESSOR LIABILITY BECAUSE NCR IS VIABLE.

API has no direct CERCLA liability because it was never one of the four categories of persons liable under CERCLA § 107, *i.e.*, owner, operator, arranger or transporter. Under the 1978 Agreement, API bought the assets of a division of NCR earlier created after two entities that did qualify for direct CERCLA liability, Appleton Coated Paper Company ("ACPC") and Combined Paper Mills, Inc. ("CPM"), merged into NCR. By virtue of the merger, NCR acquired responsibility for any CERCLA liability of ACPC and CPM. The question presented is whether by virtue of the 1978 asset purchase API is equitably liable under CERCLA as NCR's successor.

The Government and Certain Defendants mistakenly argue that API expressly assumed NCR's CERCLA liability. There was no express assumption. As explained

below, the Government and Certain Defendants are wrong in their interpretation of the 1978 Agreement.

However, even if there had been an express assumption, API would not succeed to NCR's CERCLA liability because it is the non-viability of the asset seller that animates the equitable doctrine of successor liability. If the asset seller remains viable, successor liability cannot exist. The Government concedes that NCR is viable and the Court need look no further to grant summary judgment.

### A. Successor Liability Is An Equitable Doctrine.

Successor liability under CERCLA is an equitable doctrine, not an "inflexible command." *N. Shore Gas Co. v. Salomon Inc.,* 152 F.3d 642, 650 (7th Cir. 1998), *overruled on other grounds, Envision Healthcare, Inc. v. Preferred One Ins. Co.,* 604 F.3d 983 (7th Cir. 2010) (citation omitted). The Court explained:

> We therefore reach the same result as the other circuits that have considered this issue – that Congress intended the equitable doctrine of successor liability to apply under CERCLA. We note, however, that while CERCLA permits successor liability, it does not require it "unless justified by the facts of each case." *Carolina Transformer*, 978 F.2d at 837.

*Id.* at 650.[1] See also *Ninth Ave. Remedial Group v. Allis-Chalmers Corp.*, 195 B.R. 716, 727 (N.D. Ind. 1996) ("The successor doctrine is derived from equitable principles . . ."); *Muniz v. Rexnord Corp.*, No. 04-C-2405, 2006 WL 3210463, *3 (N.D. Ill. Nov. 2, 2006) (emphasis added):

> These exceptions, commonly referred to as **successor liability, are based on an equitable theory** applied at the discretion of the court to serve the purpose of identifying transactions **where equity demands** that the purchaser be held responsible for the seller's liabilities. *See North Shore*, 152 F.3d at 651, 657-58.

---

[1] The Seventh Circuit has also recognized the equitable underpinnings of successor liability in non-CERCLA cases. *See, e.g., Chicago Truck Drivers v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995); *Musikiwamba v. ESSI, Inc.*, 760 F. 2d 740, 750 (7th Cir. 1985) ("successor doctrine is derived from equitable principles . . ."). Other courts have likewise recognized the equitable nature of successor liability. *See, e.g., Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d 252, 267 (1st Cir. 1997) ("successor liability is an equitable doctrine, both in origin and nature").

The same principles apply to successor liability under other federal environmental statutes. *United States v. Midwest Generation, LLC*, No. 09-CV-5277, 2011 WL 1003916, *10 (N.D. Ill. Mar. 16, 2011) (noting that the "theory of successor liability is an equitable doctrine" in a Clean Air Act case where the Government's sole alleged basis for successor liability was express assumption).

### B. Where The Asset Seller Remains Viable, There Is No Basis To Entertain A Claim Of Successor Liability.

In its July 5 Decision, the Court correctly determined that "[i]f the predecessor is still a functioning corporation which can compensate Plaintiffs, there is no equitable reason for holding [the alleged successor] liable." Dkt. 172 at 20, *quoting Ninth Ave. Remedial Group*, 195 B.R. at 728. This principle is well-established under CERCLA. For instance, in *United States v. Mexico Feed & Seed Co.,* 980 F.2d 478, 490 (8th Cir. 1992), the court refused to impose CERCLA liability on an asset purchaser where the asset seller continued to be a viable entity because:

> . . . the very concern animating the doctrine of corporate successor liability – that the corporate veil thwart plaintiffs in actions against corporations which have sold their assets and distributed the proceeds – is not present.

*See also Durham Mfg. Co. v. Merriam Mfg. Co.*, 294 F. Supp. 2d 251, 273-74 (D. Conn. 2003) (the court refused to impose CERCLA successor liability where the seller continued as a viable entity); *United States v. Davis,* No. 90-0484T, 1998 WL 166222 (D.R.I. Feb. 26, 1998) (the court similarly declined to apply successor liability where the asset seller remained viable).[2]

---

[2] Further, denying successor liability where the alleged predecessor remains viable is consistent with the basic purpose of CERCLA to "shift the costs of cleanup to parties responsible for the contamination" rather than on a party (such as API) that had no involvement in causing the contamination. *Metro. Water Reclamation Dist. v. N. Am. Galvanizing & Coatings, Inc.,* 473 F.3d 824, 827 (7th Cir. 2007). Indeed, in CERCLA cases, successor liability comes into play only when there is a choice "between the taxpayers or a successor corporation" bearing the cost. *Members of Beede Site Group v. Fed. Home Loan Mortgage Corp.,* No. 09-370, 2011 WL 1033708, *2 (D.N.H. Mar. 21, 2011), *quoting In Re Acushnet River & New*
(footnote continued on next page)

The cases cited by the Government and Certain Defendants involve situations where the originally liable party was no longer viable or the transaction was a reorganization rather than an arm's length asset sale. In *United States v. Iron Mountain Mines*, *Inc.*, 987 F. Supp. 1233, 1235 (E.D. Cal. 1997), the original liable party, Mountain Copper, "was dissolved some 30 years ago." In *United States v. Lang*, 864 F. Supp. 610, 612 n.2 (E.D. Tex. 1994), the court explained that the originally liable party, Oxirane, "is no longer in existence." In *United States v. Chrysler Corp.*, Nos. 88-341 & 88-534, 1990 WL 127160 (D. Del. Aug. 28, 1990), the successor was formed as part of a reorganization and spin off of a family business.[3] In *Caldwell Trucking PRP v. Rexon Technology Corp.*, 421 F.3d 234, 245 (3rd Cir. 2005), the originally liable party, Rexon, was dissolved and liquidated. In *In re Safety-Kleen Corp.,* 380 B.R. 716 (Bankr. D. Del. 2008), the originally liable party was bankrupt, the assets were sold in the bankruptcy, and the purchaser was only liable because "the Sale Order expressly conferred third-party beneficiary rights on . . . creditors of Safety-Kleen." *Id*. at 740. None of these cases involved an arm's length asset purchase where the asset seller received the fair market

---

(footnote continued from prior page)

*Bedford Harbor: Proceedings Re Alleged PCB Pollution,* 712 F. Supp. 1010, 1013-14 (D. Mass. 1989). Where the predecessor remains viable, there is no such choice.

[3] In *Chrysler,* the hazardous substances were disposed of by a corporation owned by two families. The successor was one of the two corporations resulting from the reorganization of the original corporation when the families split the business. There was commonality of ownership between the asset seller and asset buyer.

value for the assets, and continued, quite viably, in business.[4] Thus, these cases have no application to the facts of this case.[5]

Unable to muster any support among the cases it does cite, the Government's attack on Judge Stadtmueller's analysis in *A-C Reorganization Trust v. E.I. DuPont de Nemours & Co.,* No. 94-C-574, 1997 WL 381962, *7 (E.D. Wis. Mar. 10, 1997) is equally unavailing. Judge Stadtmueller concluded that CERCLA § 107(e) prevents an asset seller from transferring CERCLA liability to the buyer, citing *Harley-Davidson, Inc. v. Minstar, Inc.,* 41 F.3d 341, 343 (7th Cir. 1994) (emphasis added), where the Seventh Circuit stated:

> The first sentence [of CERCLA sec. 107(e)] speaks of "transfer[ring] . . . liability," that is, of **shifting liability from one person to another**. Indemnification does not do that. The indemnified party remains fully liable to whomever he has wronged; he just has someone to share the expense with. The **second sentence clearly permits sharing, just as the first forbids shifting**.

In *A-C Reorganization*, the parties allegedly liable under CERCLA, the Tenneco Defendants, were viable. Judge Stadtmueller held that the asset purchaser, Reichhold, could not have liability as successor to the Tenneco Defendants, but that the Tenneco Defendants could pursue an indemnity claim against Reichhold under the Acquisition and

---

[4] In *Northwestern Mut. Life Ins. Co. v. Atlantic Research Corp.,* 847 F. Supp. 389 (E.D. Va. 1994), the originally liable party defaulted in the litigation, suggesting that it was no longer viable. Further, the court's discussion regarding successor liability is *dicta* since the court had already found that the defendant "was an operator of the facility for the purposes of CERCLA and qualifies as a liable party under the statute." *Id.* at 398.

[5] The same is true for the non-CERCLA cases cited by the Government. In *Glasscock v. Armstrong Cork Co.,* 946 F.2d 1085 (5th Cir. 1991), Celotex was held liable "both for its own actions beginning in 1972, and for the actions of Philip Carey [Manufacturing Company]". *Id.* at 1094. The latter corporation had been merged into Briggs Manufacturing Company, and Celotex in 1972 "purchased all of the stock" – not the assets – of "the surviving corporation of the merger between Philip Carey and Briggs." *Id.* Likewise, in *Beck v. Roper Whitney, Inc.,* 190 F. Supp. 2d 524 (W.D. N.Y. 2001), the court discussed successor liability after noting that the plaintiff was injured by a product manufactured by Roper Whitney, Inc., "whose separate corporate existence ceased when it was merged into [another defendant corporation]." Similarly, in *Emrich v. Kroner,* 434 N.Y.S.2d 491 (N.Y. App. Div. 1980), the manufacturer of the injury-producing product "was dissolved after being acquired by Remington." *Id.* at 492. In each of the foregoing cases, the originally liable party was no longer available to provide a remedy.

Assumption Agreements. This conclusion was fully consistent with *Harley-Davidson* because the asset seller remained liable to the government, but could separately pursue the purchaser for a share of the financial burden.

The facts here are similar. NCR remains liable and viable, thus foreclosing any claim that API has succeeded to NCR's CERCLA liability. As the Court explained in its July 5 Order, "Because NCR was liable and remains so, there is no liability for Appleton Papers to 'succeed' to. There cannot be a 'successor' without a succession." Dkt. 172 at 18. NCR pursued its contractual claim against API and B.A.T Industries, p.l.c. ("BAT"), resulting in the 1998 Settlement Agreement and a sharing of the financial burden among NCR, API, and BAT. Dkt. 124-1.

### C. There Is No Reason In Equity To Impose Successor Liability On API.

The Court has already concluded that "none of the equitable considerations that would otherwise support imposition of successor liability are in play here." Dkt. 172 at 18. The Court also has concluded that since NCR is viable, there is no equitable reason for holding API liable as successor. *Id.* at 20.

The Government argues that the equities favor its position because granting summary judgment and thereby limiting API's exposure to 60% would be a "gamble for which the government and the other defendants bear all the risk." Dkt. 205 at 28 of 33. The Government either misconstrues the doctrine of successor liability or has chosen to ignore its underpinnings. Where an innocent victim could go uncompensated for an injury caused by a defunct asset seller, in appropriate circumstances, equity might be called upon to require the asset purchaser to pay the asset seller's liability by denominating that purchaser a "successor." That is not the case here. NCR is alive and financially healthy, as the Government has enthusiastically argued to this Court.

- 8 -

Case 1:10-cv-00910-WCG   Filed 09/15/11   Page 8 of 19   Document 212

Dkt. 126 at 15 of 35 n.7; Dkt. 124-4, 124-5. Certain Defendants likewise argued in *Whiting* that NCR is able to pay all Fox River costs. *Whiting,* Dkt. 915 at 16-18 of 37. As noted earlier, the Court has already explained that "successor liability is an equitable doctrine designed to prevent injustice or fraud, not to create a wholly new suable entity with duplicate liability to the government." Dkt. 172 at 18.

The Government's argument that the equities favor the imposition of successor liability because API has frustrated the Government's desire for further dredging this construction season, has nothing to do with the merits of API's motion. We are not here rearguing the preliminary injunction motion. And even if the Court wished to consider the Government's argument for what would now be the third time, the Government is asking the Court to find that API is a successor as a matter of equity when the Court already determined in its two July Orders that the equitable doctrine of successor liability cannot be considered where NCR is viable.

API does not mean to take up the Court's time on an issue that is not relevant to the disposition of API's motion. But should the Court wish to address this argument, API would note that it offered a solution that would have accommodated the Government's professed desire for further remediation in 2011 through the existing contracts and the LLC:

> Appleton Papers also notes that the ball is in the government's court at this point. If the government stipulates to a judgment of no liability is its favor, that would trigger a clause in its LLC agreement requiring it to cede control to NCR. NCR could then be ordered to begin dredging itself.

Dkt. 193 at 4. The Government could have availed itself of that opportunity promptly after receiving the July 28 Order but chose not to do so. The Court offered the Government another approach:

> Assuming the government will not so stipulate, Appleton Papers also states that a summary judgment motion on non-liability is imminent. It is conceivable that there is a

- 9 -

way for the government to concede to an expedited entry of judgment on the question even while maintaining its objection and right to appeal. For example, the government could concede that there are no remaining issues of material fact (the matter having been explored at some length already). This Court could then grant the motion for summary judgment for the reasons already given in its July 5 order.

*Id.* API filed its motion for summary judgment later the same day, July 28. The Government had the opportunity to pursue this route at the August 1 status conference. It declined to do so. Thus, the Government had multiple clear paths to allow further work in 2011 but chose not to take any of them.

### D. There Is No Dispute Of Fact Regarding NCR's Viability

The Government concedes that there is no dispute that NCR is viable:

> **NCR's current status as a viable corporate defendant in this case is undisputed**, as noted in Plaintiffs' Joint Response to API's Statement of Proposed Material Facts under Civil L.R. 56(b)(2)(B). Dkt. 204 at 12. Thus, **the Plaintiffs cannot establish their claims against API under CERCLA if the Court concludes, as a matter of law, that NCR's viability precludes API's successor liability**.

Dkt. 205 at 30 of 33 (emphasis added). Thus, there is no dispute of the material fact[6] and API is entitled to summary judgment.

## II. API DID NOT ASSUME NCR'S FOX RIVER LIABILITY IN THE 1978 AGREEMENT.

The fact that NCR remains viable means that successor liability is not possible. Since the Government has acknowledged that its claim against API is based entirely on successor liability, this fact is dispositive and entitles API to summary judgment.

---

[6] Certain Defendants suggest in a footnote that, "NCR's financial ability to complete the remediation is disputed." Dkt. 206 at 18 n.7. They claim to be uncertain about the language in the "AWA indemnity agreement" (an apparent reference to a 2001 agreement under which AWA agreed to indemnify API) and therefore profess to be uncertain whether summary judgment would affect that indemnity and impact NCR's ability to pay. However, the AWA indemnity has been public since 2002 at http://www.sec.gov/Archives/edgar/data/1144326/000095013102001538/dex106.txt, and has been filed in this action. Dkt. 188-1. If Certain Defendants had some genuine uncertainty about what this document said, all they had to do was read it. Further, API stated in its opening Memorandum that: "A ruling by this Court that API did not assume NCR's Fox River liabilities will not affect API's indemnification obligations to NCR." Dkt. 197 at 16 n.6. Finally, Certain Defendants adamantly contended that NCR was able to pay all Fox River liabilities when they were seeking summary judgment on their counterclaims. *Whiting,* Dkt. 915, at 16-18 of 37. Their unsupported protestations to the contrary now do not create a genuine issue of material fact.

- 10 -

Accordingly, the Court need not address whether API assumed ACPC's Fox River liability in the 1978 Agreement. However, the Fox River liability did not come within the scope of the limited assumption contained in the 1978 Agreement (or the associated Assumption Agreement), which is a second and independent reason why the Government's claims must be dismissed.

### A. API Has Not Conceded CERCLA Liability.

In the Introduction to its Brief, the Government falsely states that API sought insurance coverage based on its successor liability exposure but, after settling with its insurers, API (and its indemnitor) "changed their tune and began denying that API has successor liability." Dkt. 205 at 6 of 33. In fact, API *never* conceded CERCLA liability in the coverage action. Rather, API consistently asserted that *the Government claimed* that API was liable under CERCLA and that API had no ability to challenge that contention without risking severe penalties.[7] The Government's contention is disturbingly misleading.[8]

---

[7] For instance, in its brief to the Wisconsin Court of Appeals in the coverage action, API stated the "106 Order asserts that API has successor liability under CERCLA" and then explained:

> The government has imposed a legal obligation on API in the 106 Order and stated its reasons for doing so. Under CERCLA, API is stuck with the legal obligation whether the government's conclusion was correct or not. API has no opportunity to challenge the 106 Order in court until all of the work is completed decades from now. *Employers Ins. of Wausau v. Browner,* 52 F.3d 656, 667 (7th Cir. 1995). The Insurers cannot escape their obligation to indemnify API by second-guessing the government's conclusions, where API itself has no ability to contest the 106 Order.

*See* Appleton Papers Inc.'s Response Brief filed August 31, 2009 in 2009AP286 at 20, 22-23, available at. https://acefiling.wicourts.gov/documents/show_any_doc?appId=wscca&docSource=EFile&p%5bcaseNo%5d=2009AP000286&p%5bdocId%5d=40353&p%5beventSeqNo%5d=53&p%5bsectionNo%5d=1. API's ability to challenge the Government's contention in court arose after the commencement of this enforcement action.

[8] The Government makes a similarly misleading statement that the 1998 Settlement Agreement was "secret" and "first came to light" in API's insurance coverage trial. Dkt. 205 at 6 of 33. The material terms of that Agreement were discussed in detail in API's and NCR's SEC filings going back to at least 2002. *See, e.g.,* http://www.sec.gov/Archives/edgar/data/1144326/000095013103001437/d10k.htm, http://www.sec.gov/Archives/edgar/data/1144326/000119312504056117/d10k.htm.

The Government also quotes a statement from the Wisconsin Court of Appeals' Decision in the coverage action that "the 1978 Sale Agreement makes it clear that API agreed to assume a variety of NCR liabilities . . . ." Dkt. 205 at 12 and 19 of 33, quoting *Westport Ins. Co. v. Appleton Papers Inc.,* 2010 WI App 86, ¶ 11 n.10, 327 Wis. 2d 120, 787 N.W.2d 894. Is the Government trying to suggest that the Wisconsin Court of Appeals ruled that the Fox River liability was among the "variety of NCR liabilities" assumed? The Court of Appeals had no occasion to address this issue and the Government's duty of candor to the Court surely requires acknowledgement of that fact. Substantively, the exact opposite proposition is true: API assumed certain defined liabilities of NCR in the 1978 Agreement, but API did *not* assume the only liability that makes any difference in this action, *i.e.*, the Fox River CERCLA liability.

**B. The Fox River Liability Does Not Fall Within Any Of The Assumption Provisions In The 1978 Agreement.**

The Government has quoted provisions in the 1978 Agreement by which API agreed to assume certain liabilities, Dkt. 205 at 15-16 of 33, including ¶¶ 1.4.3, 1.4.4, 1.4.5 and 1.4.9 of the 1978 Agreement. Dkt. 139-3 at 17, 19, 20, 21. Certain Defendants rely on three of the same provisions. Dkt. 206 at 19-20. The Government contends that the language is "unambiguous," Dkt. 205 at 19 of 33, and Certain Defendants make the same assertion. Dkt. 206 at 14.

Under New York law (which governs the 1978 Agreement), the 1978 Agreement must be "strictly construed; a court cannot find a duty to indemnify absent manifestation of a 'clear and unmistakable intent to indemnify.'" *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 15 (2nd Cir. 1993) (citation omitted). *See also* 15 William Meade Fletcher, *Fletcher Cyclopedia Corporations* § 7114, p. 180 (rev. 2008 ed.) (An agreement to assume liabilities "must be clear and unambiguous in order for it to amount to an

- 12 -

assumption."). Moreover, in order to cover CERCLA liability, the provision must either specifically include CERCLA or be "general enough to include any and all environmental liability." *Beazer East, Inc. v. Mead Corp.,* 34 F.3d 206, 211 (3rd Cir. 1994); *see also Am. Nat'l Bank & Trust Co. v. Harcros Chem., Inc.,* No. 95-C-3750, 1997 WL 281295, *16 (N.D. Ill. May 20, 1997) ("If there is limiting language, the clause does not cover CERCLA.").

Neither the Government nor Certain Defendants have articulated any coherent basis upon which the Fox River CERCLA liability could fall within the Agreement's provisions. Under ¶ 1.4.9, API agreed to assume liabilities of NCR "with respect to compliance of the Property or the products or operations of APD with all applicable, federal, state and local and other governmental environmental and pollution control laws, ordinances, regulations, rules and standards." Dkt. 206 at 20; Dkt. 139-3 at 21. Similarly, under ¶ 1.4.3, API agreed to assume liabilities of NCR "with respect to the compliance of the assets, properties, products or operations of APD with all governmental laws." Dkt. 206 at 19; Dkt. 139-3 at 19. The abbreviation "APD" refers to the Appleton Papers Division of NCR, which was formed in 1973 and operated until the sale of assets to API in June 1978. Dkt. 172 at 16-17. Any assumption under ¶ 1.4.3 or ¶ 1.4.9 of the 1978 Agreement was thus expressly limited to liabilities arising from the failure of APD's Property, products or operations to comply with applicable governmental environmental and pollution control laws. The contention of Certain Defendants that the 1978 Agreement "has no language limiting the type or nature of API's assumed environmental liabilities," Dkt. 206 at 21, is, under the plain language, incorrect. The express limitations in these sections preclude them from being considered an express assumption of CERCLA liability per the holdings in *Beazer East* and *Harcos*.

Further, the Fox River CERCLA liability did not result from the failure of the assets acquired in 1978, or the products or operations of the Appleton Papers Division, to comply with applicable governmental environmental and pollution control laws. Neither the Government nor Certain Defendants have suggested otherwise. They have not identified any environmental law with which the property or products or operations of the Appleton Papers Division failed to comply.

Both the Government and the Certain Defendants also identify ¶ 1.4.5 of the 1978 Agreement, under which API agreed to assume "all of Seller's obligations and liabilities . . . which arise out of or in respect of any . . . proceeding set forth on Schedules A or M." Dkt. 205 at 15-16 of 33, Dkt. 206 at 19-20; Dkt. 139-3 at 20.[9] Both the Government and Certain Defendants then quote an excerpt from Schedule A stating that "facilities of Appleton Papers Division located in Pennsylvania and Wisconsin may be operating in violation of applicable federal, state, local and other governmental environmental pollution and control laws." *Id*. This language was not related to CERCLA, since CERCLA was not adopted until 1980. Nor has the Government or Certain Defendants produced any evidence that the violation that "may be" occurring in 1978 had anything to do with a later-asserted Fox River CERCLA liability. Instead, the Government submitted a 1980 Consent Decree resolving certain environmental liabilities with respect to an API-owned plant in Pennsylvania, Dkt. 203-2, but provided no explanation as to how that Consent Decree is relevant to its contention that API expressly assumed NCR's Fox River CERCLA liability. Thus, the Government's own declaration

---

[9] The Government also partially quotes ¶ 1.4.4, which is also keyed to Schedule A. Dkt. 205 at 15 of 33.

supports the conclusion that ¶ 1.4.5 had nothing to do with the Fox River CERCLA liability in question here.

In summary, the Government and Certain Defendants have failed to articulate any basis for their contention that the Fox River CERCLA liability comes within the limited scope of the contractual assumption provisions that both the Government and Certain Defendants contend are unambiguous.

### C. API Is Not Estopped From Denying That It Assumed NCR's Fox River Liability.

Both the Government and Certain Defendants argue that API is estopped from denying that it assumed NCR's Fox River liability, Dkt. 205 at 18 of 33, Dkt. 206 at 2-8, rehashing arguments made by the Government in connection with the preliminary injunction motion, and by Certain Defendants in *Whiting* in opposition to API's motion for reconsideration. *Whiting,* 08-CV-16, Dkt. 1111 at 7 n.6. Their arguments were rejected by the Court then and have no more merit now.

The 1998 Settlement Agreement among NCR, API and BAT was a compromise settlement of a hotly disputed issue as to whether API assumed NCR's Fox River liability. The Agreement expressly provides that it is made without any admission of liability.[10]

NCR, API and BAT agreed to a subsequent arbitration which gave the arbitrators broad authority to allocate costs in excess of $75 million between NCR and API/BAT. The Subsequent Allocation Arbitration Agreement did not require the arbitrators to

---

[10] The Government argues that that provision was confined to avoiding any admission that NCR had Fox River liability in the first instance. Dkt. 205 at 17 n.12 of 33. This is not what the language says. Further, a central issue that NCR, API and BAT had been litigating and settled in the 1998 Settlement Agreement in lieu of litigating to judgment was whether API had assumed NCR's Fox River liability. By settling the litigation expressly with "no admission of liability," API was clearly not admitting that it had assumed NCR's Fox River liability. Dkt. 172 at 20.

decide whether API had assumed NCR's Fox River liability in the 1978 Agreement. Rather, the express direction to the arbitrators was to select within a specified range "any allocation that they deem appropriate:"

> Neither party may be allocated more than 75% or less than 25% of the liability for amounts to be expended beyond $75 million. Within that range, **the arbitrators may select any allocation that they deem appropriate**.

Dkt. 139-13 at 20 of 24 (emphasis added).

The arbitration decision followed that direction. Dkt. 124-2 at 6-7. The decision contains no finding that API assumed any CERCLA liability or that it has successor liability. Rather, the arbitrators exercised their broad discretion, stating: "the Arbitrators deem appropriate the following allocation:" API/BAT 60% and NCR 40%, *Id*., at 7 of 11, explaining that "the allocation set forth above represents the Panel's weighing of all of its findings and its collective judgment on the appropriate allocation under the terms of the Allocation Agreement." *Id*., at 8 of 11. The arbitrators were given the authority and discretion to resolve the allocation. That authority came from the compromise settlement of the parties, not from CERCLA.

The suggestion of the Government and Certain Defendants that API is bound by issue preclusion (collateral estoppel) principles from relitigating its CERCLA liability is groundless. A party invoking collateral estoppel must show, among other elements, that the issues are identical. *O'Neill v. Merrill Lynch, Pierce, Fenner & Smith*, 654 F. Supp. 347, 351 (N.D. Ill. 1987). *See also Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307 (7th Cir. 1995) (For the doctrine of collateral estoppel to apply, the issue has to have been "actually litigated and decided in the initial action."). Here, the issues are not identical because the arbitrators were acting on the broad discretion granted

by the Subsequent Allocation Arbitration Agreement, rather than the strict and demanding standard for finding an express assumption.

Certain Defendants argue that the arbitrators could not have arrived at the 60/40 allocation "without finding that NCR remained liable as the polluting predecessor and that API had agreed to assume those same liabilities as part of the consideration it paid to purchase the assets that NCR used to create the pollution." Dkt. 206 at 7. This is pure theorizing, however, as there is no support for this argument in the arbitration decision. The argument also makes no sense. The arbitration allocated the financial burden of NCR's Fox River liability between NCR and API/BAT. As between those parties, the question of whether API assumed the liability was an all or nothing proposition. There is no provision in the 1978 Agreement for a partial assumption. NCR, API and BAT agreed to limit the percentage that could be allocated to either side to a floor of 25% and a ceiling of 75%. Thus, if the arbitrators had been deciding the issue of whether API had assumed NCR's Fox River liability in the 1978 Agreement, the result would have been a 75/25 allocation, one way or the other.

The fact that the arbitrators decided on a 60/40 split establishes that they were deciding the allocation on a broader set of considerations that the arbitrators detailed in ¶ 3 of the arbitration award. Those considerations are far different than the grounds for CERCLA liability. Accordingly, the arbitration award does not collaterally estop API from denying that it assumed liability under the 1978 Agreement.

### D. There Are No Disputed Issues Of Material Fact.

The Government acknowledges that there are no factually disputed issues with respect to its claims. Dkt. 205 at 30-31 of 33.

- 17 -

Case 1:10-cv-00910-WCG   Filed 09/15/11   Page 17 of 19   Document 212

Certain Defendants complain that there has not been adequate discovery in *Whiting*, claiming that "API blocked" efforts at discovery.[11] Dkt. 206 at 24. That is a remarkable assertion. API sought full discovery in *Whiting*. Certain Defendants opposed full discovery, instead arguing for limited discovery and a phased approach, which, over API's objection, the Court adopted. *Whiting,* Dkt. 252 at 3-4 of 14. In the spring of 2010, API again asked for discovery regarding Defendants' counterclaims, and Certain Defendants again opposed discovery. *Whiting,* Dkt. 836. Certain Defendants cannot now be heard to complain of restricted discovery in *Whiting*.

## CONCLUSION

For the foregoing reasons, API respectfully requests that the Court grant its motion for summary judgment and dismiss with prejudice Plaintiffs' claims against API.

Dated this 15th day of September, 2011.

Respectfully Submitted,

APPLETON PAPERS INC.

By  /s/ Ronald R. Ragatz
    One of Its Attorneys

---

[11] Certain Defendants also claim that there are disputed issues of fact with respect to the 1978 Agreement despite their assertion that the contract language is unambiguous. Dkt. 206 at 24. Likewise, in a Rule 56(d) Declaration, Certain Defendants outline various discovery relating to the 1978 Agreement they purport to need. Dkt. 208. If the 1978 Agreement is unambiguous as Certain Defendants have argued, discovery to attempt to fit NCR's Fox River liability within the express provisions of the 1978 Agreement is both inappropriate and unnecessary. Discovery of depositions in connection with the arbitration, which did not decide the question of assumption of liability, would be equally irrelevant. Such discovery is also irrelevant if the Court confirms its prior ruling that successor liability is inapplicable here due to NCR's viability. Certain Defendants' request for discovery is a groundless attempt to delay resolution of API's summary judgment motion. To its credit, not even the Government tried this ploy.

Counsel for Appleton Papers Inc.:

| | |
|---|---|
| Michael L. Hermes (#1019623) | Ronald R. Ragatz (#1017501) |
| Heidi D. Melzer (#1076125) | Dennis P. Birke (#1018345) |
| Brandon J. Evans (#1063940) | Megan A. Senatori (#1037314) |
| Ericka L. Krumrie (#1066383) | DeWitt Ross & Stevens S.C. |
| Hermes Law, Ltd. | Two East Mifflin Street |
| 333 Main Street, Suite 601 | Madison, WI 53703 |
| Green Bay, WI 54301 | (608) 255-8891 |
| (920) 436-9870 | Fax: (608) 252-9243 |
| Fax: (920)436-9871 | |