# Exhibit A



In re: THE FAIRCHILD CORPORATION, et al., Debtors.

Chapter 11, Case No. 09-10899 (CSS) Jointly Administered, Re Docket No. 394

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

2009 Bankr. LEXIS 3815; 52 Bankr. Ct. Dec. 142

December 1, 2009, Decided

**COUNSEL:** [*1] For Debtors And Debtors-in-Possession: Steven J. Reisman, Timothy A. Barnes, Veronique A. Hodeau, Curtis Mallet-Prevost, Colt & Mosle LLP, New York, New York; Mark D. Collins, Michael Merchant, Jason M. Madron, Richards, Layton & Finger, P.A., Wilmington, DE.

For Orange County Water District: Michael Busenkell, Womble Carlyle Sandridge & Rice, PLLC, Wilmington, DE; Lawrence Block, Stinson Morrison Hecker LLP, Washington, D.C.

**JUDGES:** Christopher S. Sontchi, Judge.

**OPINION BY:** Christopher S. Sontchi

**OPINION**

**OPINION**[1]

---
1 This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to *Federal Rule of Bankruptcy Procedure 7052*.

**INTRODUCTION**

Before this Court is a motion seeking determination that the automatic stay does not apply to the Orange County Water District ("OCWD") as a governmental unit enforcing its regulatory or police powers, pursuant to *section 362(b)(4)*, in an environmental state court action pending against one of the debtors in California. In the alternative, OCWD seeks relief from the automatic stay for cause to pursue the state court action. The motion further seeks declaratory relief for determination that the automatic stay does not apply to actions against non-debtor defendants [*2] in the California action.

OCWD is a governmental unit. The California action, however, is not in furtherance of the OCWD's regulatory or police powers, which, if so, would except the California action from the automatic stay. Furthermore, OCWD has not established cause, at this time, to modify the automatic stay. Lastly, OCWD's request for declaratory relief regarding the non-debtor defendants in the California action is not properly before the Court and, thus, it will be denied.[2]

---
2 In response to the motion,

Page 2

2009 Bankr. LEXIS 3815, *2; 52 Bankr. Ct. Dec. 142

the Debtor seeks declaratory relief for determination that the automatic stay extends to all parties in the California action. Although, this matter is not properly brought before the Court, in the interest of equity and to prevent undue prejudice to the Debtor, the Court will grant, in part, the Debtor's request.

**JURISDICTION**

This Court has jurisdiction over this matter pursuant to *28 U.S.C. §§ 157* and *1334*. Venue is proper in this district pursuant to *28 U.S.C. §§ 1408* and *1409*. This is a core proceeding pursuant to *28 U.S.C. § 157(b)(2)(G)*. The statutory predicates for the Motion are *§§ 362(b)(4)* and *362(d)(1) of the Bankruptcy Code*.

**STATEMENT OF FACTS**

*I. Bankruptcy Proceedings*

The **[*3]** Fairchild Corporation and sixty (60) of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code on March 18, 2009 (the "Petition Date"). The Motion concerns only one of the Debtors, The Fairchild Corporation (the "Debtor"). In August, 2009, the Debtors sold substantially all their assets and they are now pursuing a liquidating plan of reorganization.

*II. The Orange County Water District*

The State of California as well as the United States Environmental Protection Agency promulgate drinking water standards by issuing "maximum containment levels" for drinking water. Pursuant to California state legislation, OCWD was created to maintain, to protect, to replenish and to manage groundwater resources in Orange County, California. [3] OCWD's duty is to conduct investigations of the quality of groundwater within the Orange County groundwater basin to determine whether the water is contaminated or polluted. If so, OCWD is to perform any necessary investigation, cleanup, abatement, or remedial work to prevent, to abate, or to contain any threatened or existing contamination or pollution of the service or groundwater **[*4]** of Orange County, as well as to recover the costs of any such activities from the persons responsible for the contamination or threatened contamination. [4] OCWD maintains monitoring wells throughout Orange County to alert OCWD to contaminants in the groundwater. Groundwater moves and flows, changing over time; as a result, groundwater is continually monitored for changes in contamination levels.

> 3   Cal. Uncod. Water, Act 740, § 2 (Deering 2009).
> 4   *Id.*

OCWD is governed by a ten-member Board of Directors. The OCWD board oversees OCWD and approves all proposed plans and contracts related to monitoring and remediation of groundwater contamination. OCWD prepares a report for the OCWD board indicating the proposed remediation for a particular site and the OCWD board approves the related plans and budgets. Finally, the OCWD board continues to authorize remedial work throughout each project.

OCWD does not have the regulatory power to issue an administrative order to parties to implement remediation of any contaminated site. [5] Furthermore, OCWD has no power to seek abatement from any party. [6]

> 5   OCWD does not have authority to "go on an individual site and require them to do investigation and cleanup."
> 6   The **[*5]** California Regional Water Quality Control Board, formed under the California Environmental Protection Act, is the California State agency that

Page 3

2009 Bankr. LEXIS 3815, *5; 52 Bankr. Ct. Dec. 142

has the authority to require a party to investigate and remediate contamination.

### III. The California Action

#### a. Allegations in the California Action

OCWD commenced the California Action in late 2004. In April, 2005, OCWD filed an Amended Complaint seeking:

> to *recover compensatory and all other damages, including all necessary funds to investigate, monitor, remediate, abate, or contain contamination of groundwater within the District from volatile organic chemicals (VOCs), to protect the quality of the public water resources of the District; to prevent pollution or contamination of water supplied; and to assure that the responsible parties – and not the District or the public – bear the expense of remediating the contamination caused by defendant's [alleged] activities.*

All of the claims asserted by OCWD are pursuant to California state law. The Debtor has been appearing in the California action since July, 2005. Currently, there are a total of fourteen defendants, including the Debtor, in the California action.

OCWD alleges that the Debtor used degreasing **[*6]** solvents at two locations and that those solvents were released into the soil and groundwater causing contamination. [7] One of the Debtor's co-defendants, Alcoa Global Fasteners ("Alcoa") is the subsequent owner/operator of one of the Debtor's facilities. OCWD alleges that Alcoa also used degreasing solvents at the Debtor's former location. OCWD asserts that it is in the *public's best interest* to have the entities responsible for contamination pay for remediation.

> [7] The site is approximately two (2) miles by three (3) miles and is located in Orange County, California.

In connection with the site at issue in the California action, the OCWD board has approved the North Basin Groundwater Protection Project (the "Project") and a related budget. Construction of the Project has already commenced. [8]

> [8] As of June 16, 2009, four of the Project's six extraction wells have been installed. *Id.* Furthermore, sixty percent (60%) of Project's pipelines have been designed. OCWD is conducting further tests to ensure that the Project's treatment plant is designed appropriately for the contaminants at the Project's site. The OCWD estimates that the Project will cost approximately $ 40 million to construct **[*7]** and approximately $ 5 million per year for continual operation of the Project.

#### b. Stage of California Action

OCWD filed the California action through private contingency-fee counsel against the defendants collectively, possibly creating "joint" liability among all the defendants. Although the parties had commenced the discovery process, at the time the automatic stay went into effect, there were approximately 170 witnesses not yet deposed. Furthermore, no expert discovery had been scheduled nor commenced. In March 2008, OCWD's motion to bifurcate the California action into four phases, was granted.

**LEGAL DISCUSSION**

### I. In the California Action, OCWD, a Governmental Unit, is Not Exercising its Police and Regulatory Power Within the Meaning of 11 U.S.C. § 362(b)(4).

*Bankruptcy Code Section 362(a)* provides that the filing of a Chapter 11 voluntary petition "operates as a stay, applicable to all entities, of (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceeding against the debtor . . . ." 9 The automatic stay provides the debtor with a "breathing spell" and "is intended to replace an unfair race to the [*8] courthouse with an orderly liquidation procedure designed to treat all creditors equally." 10

  9  11 U.S.C. § 362(a).
  10  *United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir. 1988).

*Section 362(b)* sets forth exceptions to the automatic stay. 11 The filing of a bankruptcy petition does not operate as a stay

> under paragraph (1) . . . of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power. 12

  11  11 U.S.C. § 362(b). The Third Circuit has stated that the § 362(b) exception is "[t]o combat the risk that the bankruptcy court would become a sanctuary for environmental wrongdoers, among others . . . " *Nicolet*, 857 F.2d at 207.
  12  11 U.S.C. § 362(b)(4).

"Governmental unit" is defined in the Bankruptcy Code as "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the [*9] United States . . . a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 13 Both OCWD and the Debtor agree (as does the Court) that OCWD is a "governmental unit". 14 The OCWD is a department and/or agency created by the State of California and empowered for the purposes of managing, replenishing, regulating, and protecting Orange County's groundwater basin. 15

  13  11 U.S.C. § 101(27).
  14  *See* Motion at P 18; and Objection at p. 5.
  15  Cal. Uncod. Water, Act 740, § 2(6) (Deering 2009).

The question under *section 362(b)(4)*, however, is whether OCWD is enforcing its "police or regulatory power." 16 OCWD argues that the California legislature has given OCWD a broad mandate, and commensurate powers, to protect the groundwater within the OCWD's service area, effectively making the OCWD the "trustee" for the groundwater and the inhabitants who rely on the groundwater. OCWD asserts that the California action exemplifies Congress' intent when it enacted § 362(d)(4) by stopping violations of various environmental protection laws, and to fix damages for violations of these laws.

  16  11 U.S.C. § 362(b)(4).

The Debtor asserts two counter

Page 5

2009 Bankr. LEXIS 3815, *10; 52 Bankr. Ct. Dec. 142

[*10] arguments: (i) based on OCWD's bifurcation motion, the only action that OCWD is currently pursuing is a tort action, which is not within OCWD's police and regulatory power; [17] and (ii) OCWD's statutorily granted powers are not commensurate to agencies such as the Environmental Protection Agency, or even the California Regional Water Quality Control Boards, which both have the power to enforce environmental laws and oversee the remediation of environmental hazards. The Debtor asserts that the California action is a private action to collect damages, which is exemplified by OCWD's use of private counsel via a contingency fee arrangement, rather than government attorneys.

> 17 As discussed *supra*, the California action has been bifurcated into four phases. As such, the only issue currently before the California court is whether the defendants are liable for negligence, nuisance and trespass. Once this phase of the action is complete, the California court will proceed to the next phase, if necessary. *See Cal. Civ. Proc. Code § 598* (Deering 2009).

OCWD interprets the exemption set forth in § 362(d)(4) broadly. The Court disagrees with such a broad reading of the stay exemption set forth in § 362(d)(4). [*11] The legislative history of § 362(d)(4) states that this exception is narrow:

> This section is intended to be given a *narrow* construction in order to permit governmental units to pursue actions to protect the public health and safety and *not to apply to actions by governmental unit to protect a pecuniary interest* in property of the debtor or property of the estate. [18]

In interpreting of this exception, the Third Circuit has cited to the Senate and House Committee Reports in its analysis of the application of § 362(b)(4), [19] which this Court also finds persuasive:

> "where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay." [20]

> 18 Legislative History (124 Cong. Rec. H 11089, reprinted in 1978 U.S. Code Cong. & Admin. News 6436, 6444-445) (emphasis added). *See also In re Nextwave Personal Commc'ns Inc.*, 244 B.R. 253, 274 (Bankr. S.D.N.Y. 2000); *Board of County Comm'rs v. Fairfield Communities, Inc..*, 122 B.R. 128, 130 (D. Colo. Dec. 12, 1990); [*12] *In re Chateaugay Corp.*, 115 B.R. 28, 32 (Bankr. S.D.N.Y. 1988) (finding that claims by the government under the False Claims Act were not within the government's enforcement of police and regulatory powers); *In re Commonwealth Cos. Inc.*, 80 B.R. 162, 164 (Bankr.D.Neb. 1987) (finding that "the type of governmental action Congress anticipated to be excepted from the stay is a circumstance which requires injunctive relief, and the type of damages intended to be permitted are those accompanying or following an injunctive action."); *United States v. Johns-Manville Sales Corp.*, 1982 U.S. Dist. LEXIS 18415, at *10 (D. N.H. Nov. 15, 1982). But see *Penn Terra Ltd. v. Dept. of Envtl. Res.*, 733 F.2d

267, 273 (3d Cir. 1984) (finding that the "police and regulatory powers" exception should be construed broadly whereas the "enforcement of money judgment" limitation should be construed narrowly).

19  In 1998, section 362(b) was amended incorporating the language of § 362(b)(5) into § 362(b)(4). Cases prior to the 1998 amendments which base their rulings on former § 362(b)(4) and (5) are applicable and persuasive to the Court's analysis of these issues. See Pub. L. No. 105-277, § 603, 112 Stat. 2681.

20  Nicolet, 857 F.2d at 208, [*13] citing S. Rep. No. 989, at 52, 1978 U.S. Code Cong. & Admin. News at 5838; H.R. Rep. No. 595 at 343, 1978 U.S. Code Cong. & Admin. News at 6299. See also Penn Terra Ltd., 733 F.2d at 272.

Clearly, the exception set forth in § 362(b)(4) is narrow. [21] Moreover, the structure of the automatic stay provisions generally supports a narrow interpretation of all exceptions to the automatic stay. [22] If there is an unfair or inequitable application of the automatic stay the Court can remedy the situation by modifying or terminating the automatic stay for cause. There is, in effect, a safety valve. [23] The same is not true if the Court were to read the provision broadly. The debtor would be required to devote time, resources and energy in seeking an injunction. The shifting of this burden to the debtor is contrary to the entire purpose of the automatic stay.

21  See also In re Sampson, 17 B.R. 528, 530 (Bankr. D. CN 1982).

22  General Motors Acceptance Corp. v. Whisnant, 387 F.2d 774, 778 (5th Cir. 1968) ("[E]very part of a statute must be viewed in connection with the whole so as to harmonize all parts, if practicable, and give sensible and intelligent effect to each, for it is not to be presumed that [*14] the legislature intended any part of a statute to be without a meaning."). "Statutory construction is a holistic endeavor." Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 60, 125 S.Ct. 460, 160 L.Ed.2d 389 (2004) (internal quotations and citations omitted). "[W]e do not read words or strings of them in isolation. We read them in context. We try to make them and their near and far kin make sense together, have them singing on the same note, as harmoniously as possible." Wachovia Bank, N.A. v. United States, 455 F.3d 1261, 1268 (11th Cir. 2006). See also In re Goody's Family Clothing Inc., 401 B.R. 131, 135 n. 22 (Bankr. D. Del. 2009).

23  See Bd. of Supervisors v. Royal (In re Royal), 137 Fed. Appx. 537, 540 (4th Cir. 2005) ("Once, however the bankruptcy court applies the Section 362(b)(4) exception to the automatic stay, there are no equivalent 'safety value' provisions that allow parties in interest to request a hearing or otherwise review that decision of the bankruptcy court. . . . The statutory context therefore indicates that we should read Section 362(b)(4) narrowly because the bankruptcy court can quickly and easily correct issues . . .").

Courts have developed two objective [*15] tests in factoring into the Court's analysis regarding the § 362(b)(4) exception: (i) the pecuniary interest test, [24] and (ii) the public policy analysis. [25] The pecuniary purpose test "asks whether the governmental proceeding relates principally to the protection of the government's pecuniary interest in the debtor's property, rather than to its public policy interest in the general safety and welfare. In the former

situation, the action is not exempt from the stay." [26] The "public policy test" determines "whether the government seeks to 'effectuate public policy' or 'adjudicate private rights.'" [27] These are objective inquiries. [28] In application of these tests, courts have held an order compelling the debtor to clean up an environmental hazard is not stayed; [29] whereas a governmental unit's suit for breach of contract is stayed. [30]

It is well established that the governmental unit exception of § 362(b)(4) permits the entry of a money judgment against a debtor *so long as* the proceeding in which such a judgment is entered is one to enforce the governmental unit's police or regulatory power. [31]

Furthermore, courts have held that:

The term "police or regulatory power" contained in 11 U.S.C. § 362(b)(4) [*16] has reference to the enforcement of laws "affecting health, welfare, morals, and safety, but not to regulatory laws that directly conflict with the control of the res or property of the bankruptcy court." [32]

---

24   Some Courts are also turning to a "pecuniary advantage test" where the "relevant inquiry is not whether the governmental unit seeks property of the debtor's estate, but rather whether the specific acts that the government wishes to carry out would create a pecuniary advantage for the government vis-a-vis other creditors." *United States ex rel. Fullington v. Parkway Hosp., Inc*., 351 B.R. 280, 283 (E.D. N.Y. 2006) (citing *United States v. Commonwealth Cos. (In re Commonwealth Cos.)*, 913 F.2d 518, 523 (8th Cir. 1990) and *United States ex rel. Jane Doe 1 v. X, Inc.*, 246 B.R. 817, 820 (E.D. Va. 2000)). "The statutory language lacks any textual basis for the pecuniary interest test because it contains no broader exclusion on efforts by the government to pursue lawsuits that concern money damages generally. . . .[I]t [*17] does not exclude efforts by the government to fix damages for violation of a statute, provided that such effort is an enforcement of the governmental unit's police and regulatory power." *Id.* at 286-87.
25   *Nicolet*, 857 F.2d at 209, citing *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6th Cir. 1986). See also *In re Nextwave Personal Commc'ns Inc.*, 244 B.R. at 274 ("The public policy test . . . examines whether the governmental action is in furtherance of matters of public policy or merely the adjudication of private rights as between the government and the debtors."); *In re Sampson*, 17 B.R. at 530 ("[I]f the focus of the police or regulatory power is directed at the debtor's financial obligations rather than the State's health and safety concerns, Code Section 362(b)(4) is inapplicable.").
26   *Nicolet*, 857 F.2d at 209, citing *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6th Cir. 1986). See also *California v. Atl. Richfield Co. (In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.)*, 488 F.3d 112, 133 (2d Cir. 2007) (describing the pecuniary purpose test as determining "whether the governmental action relates primarily to the government's pecuniary interest in the debtor's property, in which case

Page 8

2009 Bankr. LEXIS 3815, *17; 52 Bankr. Ct. Dec. 142

the automatic stay [*18] applies, or to matters of safety and welfare, in which case the suit may proceed.").
27   In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 488 F.3d at 133 (citations omitted). See also New Jersey v. W.R. Grace & Co. (In re W.R. Grace & Co., 412 B.R. 657, 2009 U.S. Dist. LEXIS 21018, at *10 (D. Del. Mar. 12, 1990); In re Commonwealth Companies, Inc., 913 F.2d at 523, n. 6.
28   United States ex rel. Anthony Fullington v. Parkway Hosp., Inc ., 351 B.R. 280, 283 (E.D.N.Y. 2006) ("[A] court must examine the purpose sought to be achieved by the law generally, rather than the government's intent in enforcing the particular law in that case."). See also Universal Life Church v. United States (In re Universal Life Church), 128 F.3d 1294, 1297 (9th Cir. 1997).
29   See Penn Terra, Ltd. v. Department of Environmental Resources, 733 F.2d 267 (3d Cir. 1984). See also City of New York v. Exxon Corp., 932 F.2d 1020 (2d Cir. 1991) (holding that a governmental action under CERCLA to recover costs expended in response to completed environmental violations are not stayed by the violator's filing for bankruptcy).
30   See Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora, 805 F.2d 440 (1st Cir. 1986).
31   In re SEC v. Brennan, 230 F.3d 65, 71 (2d Cir. 2000) (emphasis [*19] added). See also Penn Terra, Ltd., 733 F.2d at 272.
32   Johns-Manville Sales Corp., 1982 U.S. Dist. LEXIS 18415, at *17 (citing Missouri v. U.S. Bankruptcy Court for E.D., 647 F.2d 768, 776 (8th Cir. 1981), cert. denied, 454 U.S. 1162, 102 S. Ct. 1035, 71 L. Ed. 2d 318 (1982)) (state grain warehouse laws, although regulatory in nature, held to primarily relate to the protection of the pecuniary interest in the debtor's property and not to matters of public health and safety). See also Thomassen v. Div. of Med. Quality Assurance (In re Thomassen), 15 Bankr. 907 (9th Cir. B.A.P. 1981) ("State and local governmental units cannot, by an exercise of their police or regulatory powers, subvert the relief afforded by the federal bankruptcy laws. When they seek to do so for pecuniary purpose, they are automatically stayed, notwithstanding the exception found at 11 U.S.C. § 362(b)(4).").

In United States v. Johns-Manville Sales Corp., [33] the United States and other defendants sought vacation of the automatic stay to pursue litigation concerning the disposal of certain asbestos wastes. The court held that the governmental units were stayed as the suit was against the former owner (subsequent debtor) of the allegedly contaminated property. [*20] [34] The Court held that nothing was preventing the governmental unit plaintiffs from cleaning-up the hazard and seeking reimbursement from the debtor's estate. [35] The Court held that the suit would divert substantial assets from the debtors' estate from the claims of numerous creditors. [36]

33   1982 U.S. Dist. LEXIS 18415 (D. N.H. Nov. 15, 1982). This Court notes that the plaintiffs did not include the present owners of the property in the lawsuit. In opposite, it is alleged that OCWD did include all former and present owners of the Property.
34   Johns-Manville Sales Corp., 1982 U.S. Dist. LEXIS 18415, at *14-15. The Johns-Manville Court held the following:

2009 Bankr. LEXIS 3815, *20; 52 Bankr. Ct. Dec. 142

Page 9

The circumstances herein depict federal and state governments which are either unable or unwilling to take the necessary financial steps to protect the public from what are long extant but apparently recently discovered dump sites containing hazardous wastes, and the same plaintiffs are similarly unwilling to proceed against the current owners who are in possession of such sites. Clearly the relief sought is directed against Manville alone and will require it to divert substantial of its assets now held in the jurisdiction of a bankruptcy [*21] court from the claims of numerous creditors, many of whom allege that they are themselves suffering serious physical debilitation as a result of the inhalation of asbestos fibers. Cast in this light, it is clear to this Court that the exception from stay detailed in 11 U.S.C. § 362(b)(4) is not here applicable.

1982 U.S. Dist. LEXIS 18415 at *14-15.
35   1982 U.S. Dist. LEXIS 18415 at *17.
36   Johns-Manville Sales Corp., 1982 U.S. Dist. LEXIS 18415, at *15. See also In re Royal, 137 Fed. Appx. at 540 (deciding that the plain meaning of § 362(b)(4) is a two-part analysis where the government unit must demonstrate that it is "(1) enforcing (2) its police and regulatory power").

This Court finds that the California action is to recover money damages to *fund* OCWD. OCWD is charged with protecting Orange County's water and is in the process of remediating the contamination. Regardless of the posture of the California action, OCWD will continue to fund the remediation and, if needed, can seek other sources of funding. [37] As OCWD endeavors to ensure that *water is safe for consumption*, it functions through water quality testing as well as remediation, when necessary. Whereas, the purpose of the California action is to make the potable water *affordable* [*22] *to the rate payers*. The California action is akin to a private action [38] by OCWD to collect money damages. [39] The California action does not meet the exception under the pecuniary purpose test as the California action relates to OCWD's interest in the Debtor's ability to reimburse OCWD for its expenditures related to the Project. Nor does the California action meet the exception under the public policy test, as the California action seeks to adjudicate OCWD's private rights in reimbursing OCWD for its costs of remediating the contamination. The Court finds that neither safety nor welfare are affected or advanced by the California action. In sum, this Court finds that the California action does not fall within the exception to the automatic stay.

37   See In re Dunbar, 235 B.R. 465, 471 (9th Cir. BAP 1999) ("Where the agency's action affects only the parties immediately involved in the proceedings, it is exercising a judicial function and the debtor is entitled to the same protection from the automatic stay . . . ..").
38   The Court is also persuaded by the Debtor's argument regarding the contingency fee

Case 1:10-cv-00910-WCG   Filed 11/02/11   Page 10 of 14   Document 240-2

2009 Bankr. LEXIS 3815, *22; 52 Bankr. Ct. Dec. 142

Page 10

arrangement with counsel pursuing the California action. The California Supreme Court has [*23] held that when a private attorney is engaged to pursue an action within the state's police and regulatory actions, "[a]ny financial arrangement that would temp the government attorney to tip the scale cannot be tolerated. . . . [and] the contingent fee arrangement . . . is antithetical to the standard of neutrality that an attorney representing the government must meet. . . ." *The People ex rel. James J. Clancy v. The Superior Court of Riverside County*, 39 Cal. 3d 740, 218 Cal. Rptr. 24, 705 P.2d 347, 352-53 (Cal. 1985).

39 This is further exemplified by the Complaint which states that the California action is to "*recover compensatory and all other damages, including all necessary funds* to investigate, monitor, remediate, abate, or contain contamination of groundwater . . . *and to assure that the responsible parties – and not the District or the public – bear the expense of remediating the contamination caused by defendant's [alleged] activities.*" Complaint at P2.

**II. The Automatic Stay is Modified, in Part, for Cause.**

As the automatic stay is applicable, the Court must determine whether it should be terminated or modified for cause. *Section 362(d)(1) of the Bankruptcy Code* provides that a "court shall grant relief from [*24] the stay . . . for cause." [40] "'Cause' is not defined in the Code . . . ." [41] The Court of Appeals for the Third Circuit held that the courts must determine "what constitutes cause based on the totality of the circumstances in each particular case." [42] In so doing, the courts "consider the policies underlying the automatic stay [43] in addition to the competing interests of the debtor and the movant." [44] "In balancing the competing interests of the debtor and the movant, Courts consider three factors: (1) the prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if the stay is lifted." [45]

40  11 U.S.C. § 362(d)(1).
41  *In re Rexene Products Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (quoting *IBM v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 735 (7th Cir. 1991)); accord *In re The SCO Group, Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007).
42  *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997) (citing *Trident Assocs. v. Metropolitan Life Ins. Co. (In re Trident Assocs.)*, 52 F.3d 127, 131 (6th Cir. 1995)).
43  When deciding [*25] whether to grant a motion for relief from the automatic stay, the Court should consider the general policies underlying the automatic stay, including:

> 1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the debtor as a fiduciary; 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the debtor's insurer has assumed full responsibility for defending it; 6)

Case 1:10-cv-00910-WCG   Filed 11/02/11   Page 11 of 14   Document 240-2

whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the parties are ready for trial in the other proceeding; and 12) impact of the stay on the parties and the balance of the harms.

SCO Group, 395 B.R. at 857 (citing [*26] Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1287 (2d Cir. 1990)).
44  American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 152 B.R. 420, 424 (D. Del. 1993).
45  American Airlines, Inc., 152 B.R. at 424 (citing Fernstrom, 938 F.2d at 734-37).

### a. Prejudice Suffered if the Stay Were to Be Lifted

OCWD asserts that without modification of the automatic stay there would be a waste of judicial resources in the California action as the continuation of the stay will cause re-litigation of certain issues in the California action. The Debtor responds by asserting that modification of the automatic stay would severely impact the Debtor's limited resources.

The Debtors have completed the sale of certain of the estates' assets. [46] At this time it would be distracting for the Debtors' management and professionals to be entangled in the California action. The expert reports and depositions have not yet occurred. The California action is not on the verge of trial and many hours by the Debtor and its professionals would be needed to prepare for such a trial. This Court is keenly aware of the pleadings being filed and the work [*27] being done by the debtors and their professionals to reorganize the debtors' remaining assets.

46  Upon review of the docket, the Court notes that a Joint Plan of Liquidation of The Fairchild Corporation and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code has been filed on October 7, 2009. D.I. 718. At present the Debtor is seeking approval of the disclosure statement on November 9, 2009. D.I. 719 and 720.

The Court notes that OCWD's claims related to the California action will, at some point in time, need to be liquidated. The Court also recognizes that such liquidation of OCWD's claim will either result from continuation of the California action (whether through completion of a trial or settlement). Although, at this time, the Court finds that the prejudice to the Debtor of having the California action proceed against the Debtor outweighs the prejudice to OCWD of having the matter stayed; however, the Court notes at sometime in the future this balance will shift.

### b. Balance of Hardship

OCWD asserts that the stay of the California action will necessitate OCWD litigating its causes of action

2009 Bankr. LEXIS 3815, *27; 52 Bankr. Ct. Dec. 142

Page 12

numerous times. Furthermore, OCWD argues that the continuation of the California action **[*28]** is the exclusive way to determine the identity of the financially responsible parties. These hardships must be weighed against the Debtor's scarce human resources; the turnover of the Debtor's management; and the need for the Debtor's principals to monitor the California action and direct its counsel.

The California court has stayed the California action in its entirety. Continuation of the California action against non-debtors may have ramifications on the Debtor's estates. The Court appreciates that if OCWD is permitted to proceed against the non-debtor defendants the Debtor will have to review and monitor the California action and proposed settlements filed therein. But, such expenditure is limited and slight compared to the prejudice to OCWD of not being able to proceeding or present such settlements for approval. Thus, the balance of hardships weighs in favor of modifying the automatic stay solely to allow OCWD to pursue its claims against the non-debtor defendants.

### c. The Probability of the Success on the Merits.

There is no evidence before the Court regarding the probability of success on the merits of the California action. [47]

> 47 There is evidence on the record concerning the contamination **[*29]** at the site and the remediation of the site. However, there is no evidence on the record concerning the Debtor's (alleged) contribution to the contaminants. Therefore, although the OCWD has established evidence of contamination on the record before the Court, there is no evidence of a causal link between the Debtor's actions (if any) and the contamination. These factual issues are left to the experts and the ultimate trier-of-fact.

### d. Conclusion

The Court finds that the California action against the Debtor shall continue to be stayed. Nonetheless, the automatic stay is modified to allow the action to continue against the non-debtor defendants, including consideration and/or approval of settlements.

### III. Application of the Stay to Other Parties

OCWD further requests entry of an order stating that the automatic stay does not apply to non-debtor defendants in the California action. The Debtor responds by requesting the automatic stay be extended to the other defendants in the California action. Both requests will be denied.

The Court finds that neither party has properly brought this issue before the Court. OCWD's request is essentially an *ex parte* request for declaratory judgment as the other **[*30]** defendants in the California action, including Alcoa, were not served with the pending motion. OCWD should file the appropriate adversary action. [48] In the alternative, OCWD may request a determination from the state court of whether the stay is applicable to the non-debtor defendants. [49]

> 48 *Fed.R.Bankr.P. 7001(9)*.
> 49 *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig., 140 B.R. 969, 972 (N.D. Ill. 1992)* ("Any court has jurisdiction to determine its own jurisdiction, and this court unquestionably has the authority to determine what effect the bankruptcy stay has on the litigation.").

The Debtor is also requesting an

Page 13

2009 Bankr. LEXIS 3815, *30; 52 Bankr. Ct. Dec. 142

injunction. Entry of such relief in this instance requires initiation of an adversary proceeding. Thus, the Court will not extend the automatic stay to the non-debtor co-defendants.

**CONCLUSION**

OCWD's motion is denied as the California action is not exempt from the automatic stay pursuant to § 362(b)(4) since the OCWD is not enforcing a police or regulatory power. Further, the motion is denied in part and granted in part as to whether the automatic stay is modified "for cause" pursuant to § 362(d) in that OCWD may continue to pursue its claims against the non-debtor [*31] defendants. Finally, the Court denies OCWD's request for declaratory relief on whether the stay is extended to non-debtor defendants in the California action.

An order will be issued.