IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF WISCONSIN,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>NCR Corporation, *et al.*,<br><br>　　　　　　　Defendants. | No. 1:10-cv-00910-WCG |

# **DEFENDANT P.H. GLATFELTER COMPANY'S STATEMENT OF UNDISPUTED FACTS**

Pursuant to Fed. R. Civ. P. 56 and Civ. L. R. 56(b)(1)(C) of the United States District Court for the Eastern District of Wisconsin, P.H. Glatfelter Company ("Glatfelter") respectfully submits the following statement of undisputed facts in support of its motion for summary judgment on the United States' Fifth Claim for Relief.

## I. BACKGROUND

1. Glatfelter is a Pennsylvania corporation with its principal place of business in York, Pennsylvania. Dkt. No. 225 [United States' Answer to P.H. Glatfelter Company's Counterclaims] ¶ 1.

2. Glatfelter and its predecessor, Bergstrom Paper Company ("Bergstrom"), owned and operated a paper recycling mill in Neenah, Wisconsin at certain times. Dkt. No. 60 [Defendant P.H. Glatfelter Company's Answer, Affirmative Defenses, and Counterclaims to Plaintiffs' First Amended Complaint] ¶ 90.

## II. THE UAO

3. In November 2007, the United States Environmental Protection Agency ("EPA") issued the Administrative Order for Remedial Action, In re Lower Fox River and Green Bay Superfund Site, Green Bay, WI, Operable Units 2-5, U.S. EPA Docket No. V-W-'08-C-885 (November 2007) (the "UAO") to Appleton Papers Inc. ("API"), CBC Coating, Inc. ("CBC"), Georgia-Pacific Consumer Products, LP ("GP"), Glatfelter, Menasha Corporation ("Menasha"), NCR Corporation ("NCR"), U.S. Paper Mills Corporation ("USPM"), and WTM I Company ("WTM I"). Dkt. No. 30-1 [UAO]; Dkt. No. 225 [United States' Answer to P.H. Glatfelter Company's Counterclaims] ¶ 96.

4. The UAO "directs Respondents to implement the remedial action for [OU2-5], as set forth in the Records of Decision and Record of Decision Amendment addressing those portions of the Site." Dkt. No. 30-1 [UAO] ¶ 1.

5. At the time EPA issued the UAO, Glatfelter, WTM I, and Menasha were engaged in implementing the OU1 remedy. *Id.* ¶ 39.

6. At the time EPA issued the UAO, NCR and USPM had undertaken "Phase 1" of the OU2-5 remedy near the USPM DePere mill, *Id.* ¶ 42, and NCR and GP had begun certain remedial design work for the remainder of the OU2-5 project ("Phase 2"), *id*. ¶ 40.

7. The UAO divided work into "Phase 2A" to be completed in 2008 and "Phase 2B" to follow. *Id*. ¶¶ 46-47, Appendix A-B; Dkt. No. 125 [Declaration of Lawrence Schmitt in Support of Motion for Preliminary Injunction ("Schmitt Dec.")] ¶ 11.

8. The UAO Respondents other than Glatfelter, WTM I, and Menasha were directed to begin work on Phase 2A in late December 2007, while no obligation to begin work on Phase 2B arose until August 2008. Dkt. No. 30-1. [UAO] ¶¶ 46-47.

9. The UAO Respondents were directed to select a single Project Coordinator for each part of Phase 2, *id*. ¶ 67, and to select a single set of construction contractors for Phase 2B, *id.* ¶ 68.

10. In January 2008, shortly after issuance of the UAO, NCR and API commenced the *Whiting* litigation to establish shares of responsibility for implementing the UAO and for other purposes. *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 2:08-cv-16-WCG ("*Whiting*"), Dkt. No. 1 [Complaint], dated January 7, 2008.

11. By August 2008, when Glatfelter, WTM I, and Menasha Corporation were directed to participate in the Phase 2B work under the UAO, Glatfelter had no unilateral ability to select the contractors nor the unilateral ability to determine for what portion of the work it would pay. Dkt. No. 30-1 [UAO] ¶¶ 67-68.

12. On August 1, 2008, in compliance with the terms of the UAO, Glatfelter provided notice to the United States that it intended to comply with the UAO, but that Glatfelter's only vehicle for doing so was answering a judgment in *Whiting*. Declaration of David G. Mandelbaum in Support of the Memorandum of Defendant P.H. Glatfelter Company in Support of its Motion to Dismiss the United States' Fifth Claim for Relief for Lack of Subject Matter Jurisdiction or for Summary Judgment on the Fifth Claim for Relief ("DGM Dec."), Ex. 1 [Aug. 1, 2008 Letter from David G. Mandelbaum to James Hanenberg, Remedial Project Mgr., Superfund Div. EPA & Gregory Hill, Project Coordinator, WDNR ("8/12/08 Letter from DGM to EPA and WDNR")].

13. NCR and API organized their cleanup effort through Lower Fox River Remediation LLC. Dkt. No. 172 [July 5, 2011 Decision and Order] at 1-2. NCR, API, and the LLC retained Tetra Tech as the Project Coordinator and a set of construction contractors. Dkt. No. 125 [Schmitt Dec.] ¶¶ 24, 25. All of these contractors were approved by EPA. *Id.* ¶ 30, 34. EPA having approved, no other person may take any other action through any other Project Coordinator or any other contractor under the UAO. Dkt. No. 30-1 [UAO] ¶ 67-68.

14. After the Court's rulings on the United States' motions for a preliminary injunction, EPA directed NCR to take individual control over the Project Coordinator and the construction contractors. DGM Dec., Ex. 2 [August 12, 2011 Letter from Thomas R. Short,

Remedial Response Branch #2, Region 5, EPA to API & NCR ("8/12/11 Letter from EPA to API and NCR")].

15.  The UAO does impose certain obligations that individual UAO Respondents may satisfy unilaterally. The UAO obligates the UAO Respondents to reimburse the United States for its oversight costs. Dkt. No. 30-1 [UAO] § XIX..

16.  On February 2, 2009, the United States Environmental Protection Agency ("EPA") sent a letter to Glatfelter, in which it demanded reimbursement of oversight costs, totaling $31,880.13, in connection with the remedial action in OU2-5. This letter was sent to each of the respondents to the UAO, excluding WTM I. *Whiting*, Dkt. No. 875 [Declaration of David G. Mandelbaum in Support of the Memorandum of Defendants P.H. Glatfelter Company and WTM I Company in Support of Their Motion for Summary Judgment on Counterclaims] Exs. 62 & 63.

17.  On February 13, 2009 at Glatfelter's direction, counsel for Glatfelter sent a letter to EPA, in which counsel stated Glatfelter would satisfy the demand of $31,880.13 in full. Glatfelter subsequently paid $31,880.13 to EPA by wire transfer, which satisfied the demand in full. *Whiting*, Dkt. No. 861, Ex. 2 [Affidavit of Caroll L. Misimer] ¶¶ 8-9.

18.  Glatfelter has no option to do the same with respect to any obligation to do Phase 2B work, and it is only those obligations that are the subject of Count V. Dkt. No. 30-1 [UAO] ¶¶ 67-68.

## III. THE *WHITING* LITIGATION

19. In January 2008 NCR and API commenced the *Whiting* allocation litigation against what ultimately became two dozen parties, including Glatfelter. *Whiting*, Dkt. No. 1 [Complaint], dated January 7, 2008.

20. The Court has decided the relative shares of Glatfelter and NCR in any future costs of cleaning up OU2-5. On December 16, 2009, the Court held that NCR may not recover from Glatfelter (or any other party) in contribution for any costs that NCR may incur cleaning up OU2-5. *Whiting*, Dkt. No. 795 [December 16, 2009 Decision and Order]. On February 28, 2011, the Court held that Glatfelter may recover "full contribution" from NCR for any costs that Glatfelter may incur cleaning up OU2-5. *Whiting*, Dkt. No. 1080 [March 1, 2011 Decision and Order]. The Court further reinforced that ruling on September 30, 2011, when it held that it applied also to natural resource damages ("NRDs") that Glatfelter may have to pay in OU2-5. *Whiting*, Dkt. No. 1191 [September 30, 2011 Decision and Order]. These rulings together determine that, as between NCR and Glatfelter, Glatfelter's fair share of the costs of implementing the OU2-5 UAO is zero. *Whiting*, Dkt. Nos. 795, 1080 & 1191.

21. NCR and API currently have control over implementation of the remedy in OU2-5. Mandelbaum Dec., Ex. 2 [8/12/11 Letter from EPA to API and NCR]. EPA has approved that arrangement. Dkt. No. 125, at ¶¶ 31, 34.

## IV. "FULL CREDIT" UNDER THE OU1 CONSENT DECREE

22. In August 2003, Glatfelter, WTM I, and plaintiffs entered into a consent decree for the purpose of implementing the remedy in OU1. *United States v. P.H. Glatfelter Co.*, No.

2:03-cv-949-LA (E.D. Wis. April 12, 2004), Dkt. No. 4 [OU1 Consent Decree]. Judge Adelman entered that decree the next year. *Id*, Dkt. No. 22 [April 12 2004 Decision and Order].

23. As Judge Adelman explained:

> [Glatfelter and WTM I] will pay for the remedial action work using a specially-dedicated fund to be established by defendants. That fund will ultimately hold more than $60 million, including $50 million from defendants, and an additional $10 million available from a prior EPA/WDNR settlement with Appleton Papers Inc. and NCR Corporation, and all interest earned on the money placed in the fund. If the dedicated fund is not sufficient to finance the completion of the work, the proposed consent decree reserves plaintiffs' rights to require defendants to perform or pay for the continuation and completion of the work. The settlement would not resolve defendants' potential liability for response activities and response costs relating to areas of this site other than OU1.

*Id.* at 2.

24. Because the OU1 consent decree left open multiple categories of claims that might be brought among the parties or involving NCR and API, the consent decree contained a non-standard provision:

> The Parties agree and acknowledge that the Plaintiffs shall recognize that the Settling Defendants are entitled to full credit, applied against their liabilities for response costs and natural resource damages at the Site, for [cash payments under the consent decree to the governments and certain design costs incurred by WTM I]; and (vii) the Allowable RD/RA Costs paid or reimbursed from the Escrow Account under Paragraph 11 of this Consent Decree and Appendix C; provided, however, that the credit ultimately recognized shall take into account and shall not include the amount of any recoveries by Settling Defendants of any portion of such payments from other liable persons, such as through a recovery under Section 107 and 113 of CERCA, 42 U.S.C. §§ 9607 and 9613.

*Id.*, Dkt. No. 4 [OU1 Consent Decree] ¶ 102.a.

7

25. This "full credit" applies to Glatfelter's liabilities at the "Site." *Id*. The consent decree defines the "Site" to include the entire Lower Fox River and Green Bay site. *Id.,* § I.B.

26. The consent decree provided a parallel "credit" to NCR and API for the $10 million contributed from their earlier settlement fund as called for by their consent decree. *Id.* [OU1 Consent Decree] ¶ 102.b; *United States v. Appleton Papers Inc.*, No. 01-c-0186, Dkt. No. 13 [Dec. 12, 2001 Consent Decree], *available at http://www.epa.gov/Region5/cleanup/foxriver/pdf/foxriver_cd_200108.pdf* (last visited Dec. 15, 2011).

27. Judge Adelman pointed out that the original OU1 consent decree limited Glatfelter's and WTM I's obligations to an agreed budget. *United States v. P.H. Glatfelter Co.*, No. 2:03-cv-949-LA (E.D. Wis. April 12, 2004), Dkt. No. 22 at 2. That money was posted on a defined schedule. *Id.*, Dkt. No. 4 [OU1 Consent Decree] ¶¶ 50-55. Once the costs of the project exhausted the budget, Glatfelter and WTM I had the option of providing further funding and retaining the benefits of the consent decree or of leaving the United States to its enforcement remedies. *Id*. ¶¶ 96-99.

28. In March 2007, Glatfelter and WTM I agreed to provide additional funding under an "agreed supplement" to the consent decree. *Id*, Dkt. No. 23 [Agreed Supplement to Consent Decree (Mar. 28, 2007)]**.**

29. In November 2007, Menasha Corporation provided $7 million toward the project in a Second Agreed Supplement. *Id.*, Dkt. No. 26 [Second Agreed Supplement to Consent Decree (Nov. 6, 2007)].

30. Finally, in 2008, Glatfelter, WTM I, and plaintiffs entered into an Amended Consent Decree under which Glatfelter and WTM I agreed to complete the remedy in OU1 without budgetary limitation. *Id.*, Dkt. No. 35 [Amended Consent Decree]. Judge Adelman entered that consent decree on August 13, 2008. *Id.*, Dkt. No. 37 [Order Entering Amended Consent Decree]. Throughout these amendments, paragraph 102 of the consent decree remained unchanged.

31. EPA and the Department of Justice use a model document to settle CERCLA cases. Paragraph 102 is not a model provision. *See, e.g.,* EPA and DOJ Memorandum on the Issuance of 2009 Revised CERCLA Model Remedial Design/Remedial Action Consent Decree (Oct. 1, 2009), *available at* http://www.epa.gov/compliance/resources/policies/cleanup/superfund/rev-rdra-2009-mem.pdf (last visited Dec. 15, 2011) (appending the 2009 Model Consent Decree and a marked up version of the 2001 Model Consent Decree).

32. Glatfelter has contributed $41,750,000 to the OU1 Escrow Account. *See Whiting*, Dkt. No. 889 [Declaration of Rachel A. Schneider ("Schneider Dec.")] ¶ 25. That amount has earned interest. *Id.* Because Glatfelter and WTM I contributed funds at different times under the First Agreed Supplement and the Amended Consent Decree, they have maintained separate sub-accounts in the Escrow Account to keep track of the different interest each has earned. *Id.*, Ex. C [Agreed Supplement to Consent Decree] ¶ 5. All of the money originally contributed to the Escrow Account has been paid out, with accrued interest, toward Allowable RD/RA Costs and other purposes enumerated in Paragraph 102.a. *Id..*, [Schneider Dec.] ¶¶ 13, 22. In total, Glatfelter was responsible for $37,932,385.20 being disbursed from the OU1 Escrow Account as of February 28, 2010, the amount of Glatfelter's credit at that time. *Id.* ¶ 25. Interest continues

9

to be earned on those contributions, and additional disbursements have been made from the OU1 Escrow Account. Therefore, the amount of Glatfelter's total credit now likely exceeds $38 million.

33. No provision of the UAO reflects any "credit" to any of the UAO Respondents under paragraph 102 of the OU1 Amended Consent Decree. *See* UAO. Neither does the First Amended Complaint in this case allege any mechanism by which the United States or the State will recognize any of those "credits." *See* Dkt. No. 1 [Complaint].

## V. GLATFELTER'S OVERPAYMENT IN OU1

34. This Court in *Whiting* has held that Glatfelter's and WTM I's fair share of costs in OU1 would be zero if the sale by NCR of its "broke" for recycling at Glatfelter's former Bergstrom mill makes NCR liable as an "arranger" under section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3). *Whiting*, Dkt. No. 1080 [March 1, 2011 Decision and Order]. A trial on that issue is scheduled in *Whiting* to begin February 21, 2012. *Id.*, Dkt. No. 1115 [April 12, 2011 Scheduling Order].

35. While a dispute exists in *Whiting*, in *this* case the United States seeks to enforce the UAO that the United States drafted. *See* Dkt. No. 1 [Complaint]. The UAO makes a determination that NCR is an "arranger." Dkt. No. 30-1, ¶ 7. The plaintiffs make the same allegation in the First Amended Complaint. Dkt. No. 30, ¶ 52.

Dated:  December 15, 2011				Respectfully submitted,


						s/ David G. Mandelbaum
						David G. Mandelbaum
						Marc E. Davies
						Monique M. Mooney
						Sabrina Mizrachi
						Caleb J. Holmes
						Adam B. Silverman
						GREENBERG TRAURIG, LLP
						Two Commerce Square, Suite 2700
						2001 Market Street
						Philadelphia, PA  19103
						215.988.7800
						mandelbaumd@gtlaw.com

						**Attorneys for Defendant P.H. Glatfelter Company**

## CERTIFICATE OF SERVICE

I hereby certify that, on this 15th day of December 2011, a true and correct copy of the foregoing was filed electronically via the Electronic Court Filing system and is available for viewing and downloading.

/s/ David G. Mandelbaum
David G. Mandelbaum

Greenberg Traurig LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 988-7800
Facsimile: (215) 988-7801
mandelbaumd@gtlaw.com