Taft Stettinius & Hollister LLP

# Draftsmen Beware: CERCLA Can Impose Liability on Buyers under Asset Purchase Agreements, Says Wisconsin Federal Court

**January 4, 2012**

On December 19, 2011, the United States District Court for the Eastern District of Wisconsin denied defendant Appleton Paper's Motion for Summary Judgment that sought a determination that Appleton was not liable to the United States pursuant to the cost-recovery provisions of CERCLA Section 107(a). Appleton had acquired certain assets from NCR under an asset purchase agreement (APA). In what might be described as a chilling decision rightfully criticized as a fundamental misunderstanding by the court of CERCLA, the court held that CERCLA Section 107(a) (cost-recovery) could impose direct liability to the United States on a purchaser of assets (Appleton), even though the seller (NCR) continued in existence, because CERCLA strict liability under Section 107(a) is a "violation of law" as set forth in the APA. The court's holding is baffling: not only does Section 107(a) not speak to violations of law, but the court's holding is contrary to the legislative history of CERCLA[1], and to those provisions of CERCLA that describe violations of law and their penalties.[2]

The same court had held earlier in 2011 that Appleton was not liable under CERCLA pursuant to the government's theory of "successor liability." The court correctly found that because NCR continued in existence, and the APA sought to shift limited liabilities, the traditional elements of successor liability designed to thwart efforts to "shirk" liability were absent. Therefore, the court found that there was no successor liability on the part of Appleton.[3]

After the court had found no successor liability in response to the Justice Department's Motion for a Preliminary Injunction, Appleton moved for summary judgment on liability under CERCLA Section 107(a). The United States argued that the language of CERCLA Section 107(e) barred transfers among private parties of CERCLA Section 107(a) liability, but that Section 107(e) did not bar agreements, like the APA, from creating CERCLA Section 107(a) liability. The United States argued that Appleton was directly liable to the United States under CERCLA Section 107(a) because Appleton had assumed liabilities under the APA for certain violations of law. The district court agreed with DOJ. In reaching this conclusion, the court bought the Justice Department's argument that CERCLA's cost reimbursement mechanism under Section 107(a) was the equivalent of a violation by Appleton of environmental law. In so holding, the court ignored the many Justice Department briefs and the Congressional history of CERCLA discussing the legislative intent of CERCLA: to shift financial responsibility to those most capable of controlling it, namely, the three categories of liable persons under CERCLA Section 107(a), of which Appleton was not one.

The APA provision in question shifted liability between NCR and Appleton for

RELATED ITEMS

**Practices »**

Environmental

**Attorneys »**

Kim K. Burke

**Contact Us »**

"compliance of the Property…with all applicable federal, state and local and other governmental environmental and pollution control laws, ordinances, regulations, rules and standards." APA, Section 1.4.9.

The court could not have been more wrong in finding that this APA provision imposed direct liability on the buyer, Appleton, for "violations" of CERCLA Section 107(a). First, CERCLA imposes civil liability on three categories of parties, and Appleton is not one of them. Second, NCR, as the court noted, was one of those liable parties, had the requisite financial resources, and remained liable under CERCLA Section 107(a). Third, the APA shifted liability only among the contracting parties, and conferred no rights on third parties, like the United States. Finally, CERCLA Section 107(a) is a cost-reimbursement provision; it does not concern violations of law. The disingenuous arguments of the United States to expand CERCLA liability by calling the cost-recovery mechanism of Section 107(a) a violation of law is akin to finding a doctor against whom issues a jury verdict for medical malpractice, ipso facto, criminally liable for battery on the patient. There are provisions of CERCLA that impose liability for violations of or noncompliance with law, but Section 107(a) is not one of them.[4]

The court swallowed the Justice Department's argument that not only was the United States a third-party beneficiary of the APA, but that the APA imposed direct CERCLA liability on a party not listed as a liable person in CERCLA Section 107(a) because Appleton "violated" Section 107(a). In so doing, the district court held that CERCLA Section 107(e), which prohibits the transfer of CERCLA liability from those already liable, did not preclude the "creation" of statutory CERCLA Section 107(a) liability under an APA.[5] The court missed this one badly: an APA cannot "create" statutory liability under CERCLA Section 107(a)[6]. This decision nevertheless must be taken seriously by all attorneys drafting APA's to ensure that precise language is used to exclude any liability not expressly assumed. This case bears watching if appealed or cited with approval by other courts.

[1] See, Needham and Menefee, Superfund, A Legislative History, Vol. I at pp. 163-181 (Environmental Law Institute 1982). The title to Section 107(a): Liability, refers to "covered persons" and "recoverable costs and damages," and not to violations of law. The Section's strict liability scheme was patterned after Section 311 of the Clean Water Act. Many disposal sites for which Section 107(a) cost-recovery liability attaches ("facilities") were recommended for use by private companies by U.S. EPA, other federal agencies, and their state counterparts. Section 107(b) does not make EPA's approval to use a disposal site a defense to Section 107(a) cost-recovery liability.

[2] See, e.g. CERCLA Section 109, 42 U.S.C. § 9609 (Civil Penalties) for "violations" of Sections 103 (notification of releases of hazardous substances; destruction of records); 108 (financial responsibility); and 122 (violation of a consent decree, administrative agreement, or settlement agreement). Likewise, CERCLA established a citizen suit provision that allows citizens to commence civil actions against any person "in *violation* of any standard, regulation, condition, requirement, or order..". Section 301(a), 42 U.S.C. § 9659(a) (emphasis added). No court has ever interpreted the CERCLA citizens suit provision to allow claims to be brought for liability under Section 107(a), namely because that Section cannot be violated. Congress knew when, and when not, to use the word "violation" in CERCLA. There are other prohibitions and

prescriptions in CERCLA and its amendments that can be violated, but Section 107(a) is not one of them.

[3] United States v. NCR Corp., et al, 2011 WL 2634262, at **9-12 ( July 5, 2011, E.D. Wis.).

[4] See footnote 2 above for examples. The Justice Department has repeatedly argued, and the courts have consistently agreed, that there is no right to a jury trial under Section 107(a) because it is a provision allow ing only equitable relief in the w ay of restitution, namely, reimbursement for response costs incurred by the United States. The Justice Department's overzealous and legally incorrect arguments may have the inadvertent and unw elcome result of conferring a right to a jury trial for "violations" of Section 107(a).

[5] The bar in Section 107(e) against transferring a person's existing CERCLA Section 107(a) liability to impecunious defendants makes sense. How the court construed the Section 107(e) transfer bar to somehow allow the creation of Section 107(a) liability does not.

[6] In its prior decision denying the request of the United States to issue a preliminary injunction against Appleton under CERCLA, the court correctly held that "private agreements betw een companies cannot create or shift liability to the government under CERCLA." 2011 WL 2634262 at *12. Inexplicably, the court stated it w as not rejecting this prior holding w hen it reversed course and held Appleton liable four months later.

SHARE