IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and<br>STATE OF WISCONSIN,<br><br>      Plaintiffs,<br><br>    v.<br><br>NCR CORPORATION, *et al.*,<br><br>      Defendants. | No. 1:10-cv-00910-WCG |

**REPLY MEMORANDUM OF DEFENDANT P.H. GLATFELTER COMPANY IN
SUPPORT OF ITS MOTION TO DISMISS THE UNITED STATES' FIFTH CLAIM
FOR RELIEF FOR LACK OF SUBJECT MATTER JURISDICTION
OR FOR SUMMARY JUDGMENT ON THE FIFTH CLAIM FOR RELIEF**

The United States' response to Defendant P.H. Glatfelter Company's ("Glatfelter's") motion to dismiss or for summary judgment is an effort to change the subject. Glatfelter posed a simple question: if the United States were to prevail against Glatfelter on the United States' Fifth Claim for Relief ("Count V"), how would that change what would reasonably be expected of Glatfelter? The United States offers no answer to that simple question. Glatfelter should pay zero toward the ongoing costs of the remedy in OU2-5 now. If the United States were to prevail on Count V against Glatfelter, Glatfelter should continue to pay zero toward the ongoing costs of the remedy in OU2-5. Accordingly, Glatfelter's motion should be granted.

The United States and Glatfelter each agree that the situation might change. The Court's allocation decisions in *United States v. George A. Whiting Paper Co.*, No. 2:08-cv-16-WCG (E.D. Wis.) ("*Whiting*"), might be modified. NCR Corp. might become unavailable to discharge its obligation to pay the full costs of implementing the OU2-5 Unilateral Administrative Order ("UAO"). Something else might occur that we cannot now anticipate. But none of those events is likely to occur, let alone likely to occur soon, and the United States does not offer any evidence to suggest otherwise. Therefore, one cannot now say that Count V will *ever* make a difference to what Glatfelter would actually have to do. The work under the UAO will not last forever, and there is every reason to believe that the work will be completed before Count V becomes relevant to what Glatfelter must actually do. The United States cannot identify anything that adjudication of Count V against Glatfelter would change in the way the remedy in OU2-5 is implemented. It cannot specify what it wants from Glatfelter. Therefore, adjudication of Count V against Glatfelter should await another day when it would matter, a day that may never come.

### 1. Disagreement Alone Does Not Make a "Case of Actual Controversy."

The United States correctly points out that Glatfelter and the United States disagree over a large number of issues potentially implicated by this case. The United States also correctly points out that Glatfelter unsuccessfully sought to litigate some of those disputes four years ago in *United States v. P.H. Glatfelter Co.*, No. 2:03-cv-949-LA (E.D. Wis.). But the fact of disagreements or the fact that they once might have made a difference does not mean that they amount to a "case of actual controversy" for purposes of the Declaratory Judgment Act now.

Every reported decision in which a court, particularly an appellate court, finds the ***absence*** of a Constitutional "case or controversy" or a statutory "case of actual controversy" involved an active *disagreement*. The parties to any such case never would have litigated had they not had a disagreement, and indeed a disagreement about which they felt strongly. The litigants in *Bauer v. Shepard*, 620 F.3d 704 (7th Cir. 2010), surely cared a good bit about whether judicial candidates could be prohibited from responding to questionnaires on controversial topics, in that case on abortion. Nevertheless, the actual lawsuit did not present a justiciable controversy. Similarly, the owner of utility assets and a municipality surely disagreed over whether the municipality's ordinance under which it *might* have acquired the assets was proper, but that did not make the lawsuit a "case of actual controversy" in *Rock Energy Coop. v. Vill. of Rockton*, 614 F.3d 745 (7th Cir. 2010). In each case, the parties not only pursued a claim in the district court, but also pursued an appeal. They cared. The claim just did not have the requisite immediate import to warrant its adjudication.

The United States surely cares about its positions. Glatfelter disagrees. But Count V is not about vindication. It is about affecting how a clean up gets done, or does not get done, in OU2-5 under the UAO. Adjudicating Count V against Glatfelter will make no

difference to how that clean up gets done for so long as circumstances give Glatfelter a share of zero in the costs of the project.

### 2. *Whiting* Does Not Affect Glatfelter's Liability to the United States, But it <u>Does</u> Affect Whether Adjudicating that Liability Matters.

The United States confuses two notions: (a) whether Glatfelter is liable under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-75, to implement the OU2-5 UAO, and (b) whether deciding that Glatfelter is liable would make a difference to how the OU2-5 UAO is implemented. The Environmental Protection Agency ("EPA") has issued the UAO to Glatfelter and others. Glatfelter denies a present obligation to perform. The United States disagrees. However, even if the United States were correct, Glatfelter would only be obligated to cooperate with the other financially solvent UAO Recipients to implement their joint obligations. In practical terms, and indeed in legal terms, that means joining in the payment for the job. For so long as the current rulings in *Whiting* govern the allocation of responsibility among the UAO respondents, and for so long as NCR can discharge its 100 percent share of the obligations, deciding whether Glatfelter does or does not have a present obligation makes no difference. In either case, Glatfelter pays nothing and does nothing.

If the United States cannot answer the question of what it wants Glatfelter to do differently, then there is no reason to adjudicate whether the United States is entitled to "a judgment . . . that [Glatfelter] is required to comply with all provisions of the UAO applicable to [Glatfelter.]" The United States would have to convert that judgment into a specific mandatory injunction in order to identify the obligations that Glatfelter would have. NCR, another UAO Recipient, would be obligated to provide Glatfelter full contribution for whatever Glatfelter would be required to do. Glatfelter would do nothing on its own account; everything would be

for NCR's account. NCR is in control of the cleanup. Glatfelter can do nothing other than contribute its zero, even if the United States were to obtain the judgment it wants. The United States offers no help to the Court or to Glatfelter in figuring out what the United States wants, and therefore this is not a justiciable claim. Other claims against Glatfelter in the United States' Amended Complaint may be justiciable, but Count V is not.

The United States does correctly observe that Glatfelter has participated in implementation of the remedy in OU1 and that Glatfelter has helped to fund other projects in the Fox River. Glatfelter does not contend that it is incapable in the right circumstances of hiring expert contractors and having them do clean up work. Glatfelter contends that there is only one clean up in OU2-5, NCR has put itself in charge of that clean up (and properly so), and the United States has directed NCR to be in sole charge of that clean up. Glatfelter cannot do anything in OU2-5 except through that structure, and that means that Glatfelter can do nothing but pay. For all the words in the United States' brief, there is no contrary suggestion.

The United States points out that there is now no approved Project Coordinator for the OU2-5 project. United States' Brief at 11. The United States does not explain how any work can occur without a Project Coordinator. In any event, the United States agrees that by letter dated August 12, 2011, EPA disapproved the prior Project Coordinator and directed **NCR** to appoint a new one. The United States quotes much of that letter, but it never quotes the operative language: "EPA is directing NCR to designate a replacement Project Coordinator who is directly accountable to NCR within 15 days, as required by UAO Section XV." Dkt 273-2 at 1. No one but NCR can do that. Once NCR does that, that Project Coordinator "directly accountable to NCR" will coordinate the project.

Ironically, in 2009 Glatfelter specifically offered to make available to NCR and API for the OU2-5 project the services of the Project Coordinator for the OU1 project at

-4-

Glatfelter's expense. At the time, the OU1 Project Coordinator was a full-time Glatfelter employee who had been seconded to GW Partners, the entity that implemented the OU1 clean up on behalf of WTM I Company and Glatfelter.[1] That offer was denied flat. *See* Supplemental Declaration of David G. Mandelbaum (Feb. 3, 2012), Exs. 1-5. The only thing Glatfelter could do then, and the only thing it can do now, is to pay.

### 3. The United States Cannot Be Heard to Attack *Whiting*.

Because all Glatfelter can do is to pay, *Whiting* holds that all Glatfelter should pay, for so long as NCR can satisfy its obligations, is zero. The United States makes clear that it does not agree with the Court's allocation decisions in *Whiting*; otherwise, pursuing Count V against Glatfelter now would make no sense. For example, the United States quotes its letter to NCR in which the United States states its intention to achieve "'more active involvement by other UAO recipients[.]'" United States' Brief at 10 (emphasis removed). The United States goes on to say that "[i]n prior settlements for this Site, the United States and the State have taken the position that the direct dischargers [like Glatfelter] deserve discounted shares -- **but not zero shares** -- because the dischargers and the arrangers [like NCR] share responsibility for the PCBs that ended up in the River." United States' Brief at 15 n.11 (emphasis added).

The United States in its defensive capacity sought and obtained summary judgment in *Whiting* on the same basis as did Glatfelter and the other "Certain Defendants." *Whiting*, Dkt No. 1080 at 29-31. The United States sought the allocation decision in *Whiting* imposing full liability on NCR. It cannot run away from that and argue that maybe parties like Glatfelter ought to "participate." "Participate" means pay. *Whiting* means is that what Glatfelter *or the United States* ought to pay for so long as NCR can satisfy the UAO is zero. Therefore, Count V does not state a "case of actual controversy."

---

[1] That individual is now no longer a full-time employee of Glatfelter.

### 4. Count V Seeks a Declaration, Not a Mandatory Injunction.

The United States surprised Glatfelter by asserting in its brief that Count V seeks a mandatory injunction.[2] If the United States legitimately intended to plead a claim for a mandatory injunction, it failed to do so in the First Amended Complaint.

Paragraph 131 of the First Amended Complaint sets out the source of Glatfelter's alleged obligations to clean up OU2-5:

> The UAO orders the UAO Recipients identified in Paragraph 25 of this Complaint to take specified actions with respect to OUs 2-5 of the Site that the EPA determined may be necessary to protect public health and welfare and the environment.

Dkt 30, ¶ 131. Paragraph 132 goes on to describe the relief the United States seeks:

> The United States hereby seeks a judicial determination that each UAO Recipient is required to comply with all provisions of the UAO applicable to such UAO Recipient, other than the provisions of UAO Section XIX (Reimbursement of Response Costs). The United States seeks such relief pursuant to CERCLA § 106, 42 U.S.C. § 9606, and the Declaratory Judgment Act, 28 U.S.C. § 2201-2202. An actual controversy exists regarding the United States' rights and the UAO Recipients' legal obligations under the UAO, as evidenced by several sets of written objections that UAO Recipients sent the Plaintiffs after issuance of the UAO. The United States is seeking to have its cost recovery rights determined separately under this Complaint's First Claim for Relief and Second Claim for Relief.

*Id.*, ¶ 132. In its demand for relief, the United States requests that the Court "[e]nter a judgment in favor of the United States and against each of the UAO Recipients, that each UAO Recipient is required to comply with all provisions of the UAO applicable to such UAO Recipient, other than the provisions of UAO Section XIX (Reimbursement of Response Costs)."

Paragraph 132 pleads the elements of a claim for declaratory relief, not the elements of a claim for a mandatory injunction. In addition, the demand for relief uses the

---

[2] The Court should be able to take notice that Glatfelter has a leading role in a joint defense group involving many of the other defendants in this case. No other member of that joint defense group seems to have divined that the United States intended Count V to state a claim for a mandatory injunction either.

wrong form of words if it seeks an injunction.  Every enumerated item in Plaintiffs' demand for relief is a judgment "for" something, other than the demand for relief on Count V.  There, the United States demands a judgment "*that* each UAO Recipient *is required* to comply."  (emphasis added).  A judgment "that" a defendant "is required" is not a judgment "that requires" the defendant to do anything.  The complaint alleges that the UAO establishes the requirement, and that the United States now seeks a declaration that the requirement exists.

That is not a distinction with a difference for purposes of this motion.  Call it an injunction or a declaration, Count V still seeks relief that will not affect what Glatfelter should do.  Therefore, Count V does not state a "case or controversy."

In fairness, Count V does not provide fair notice that it is a claim for a mandatory injunction, and different defenses would be appropriate to that claim.  For example, the equitable balancing required before entering an injunction cannot favor the United States against Glatfelter when Glatfelter's fair share of any work is zero and NCR is available to do its full share.  If the United States wishes to replead Count V, it should seek leave to do so, but it has not pleaded a claim for injunctive relief yet.

### 5. Paragraph 102.a of the OU1 Consent Decree Assures Glatfelter "Full Credit" for OU1 Expenditures, Even in This Case.

The United States contends that paragraph 102.a of the OU1 Consent Decree, the decree in *United States v. P.H. Glatfelter Co.*, No. 2:03-cv-949-LA (E.D. Wis.), has nothing to do with this case.  That paragraph is an agreement among the parties to the OU1 Consent Decree that the United States and the State would assure Glatfelter and WTM I "full credit" for their contributions to the OU1 remedial action.  It is not a promise to apply that "full credit" only in a settlement.  It is not a promise to apply that "full credit" only in actions having to do with OU1.  It is a promise to assure that "full credit."

The United States seeks to argue that paragraph 102.a cannot mean anything because the United States reserved its rights to prove Glatfelter's liability for response actions in OU2-5.  Paragraph 102.a does not address whether Glatfelter is liable for costs or work in OU2-5.  Paragraph 102.a merely assures that *if* Glatfelter were to be liable, $38 million of that liability would have been satisfied by virtue of what Glatfelter did in OU1.  All Glatfelter can do to comply with the UAO is to pay.  Glatfelter's fair share is $0 of the costs of implementing the UAO for so long as NCR is able to perform.  Glatfelter is assured a credit of $38 million.  Therefore, it is not likely that a declaration could reasonably be expected to result in any difference in how Glatfelter participates in the OU2-5 project.

The United States also ascribes some significance to the entry of the Amended Consent Decree in *United States v. Glatfelter* after commencement of *Whiting* and after issuance of the UAO.  Apparently, the United States wanted Glatfelter to have insisted on adding some additional language to paragraph 102.a.  But no additional language was necessary.  All parties knew the facts.  The United States restated its agreement to the original language.  That language is not model language, so Glatfelter reasonably assumed that it had been given individual attention by the United States.  Judge Adelman reissued his approval of it.  It is all the *more* effective, not less, because the Consent Decree was amended in 2008.

### 6. The Number of Movants Does Not Affect the Merits of the Motion.

The United States seeks to draw some implication from the undisputed fact that Glatfelter made this motion alone, without other defendants.  Glatfelter is the only public corporation among the defendants, other than NCR which cannot make this motion.  All other defendants are not publicly traded, have no disclosure obligations, and therefore have different interests.  The United States repeatedly calls out WTM I Company as not joining with Glatfelter.

- 8 -
Case 1:10-cv-00910-WCG   Filed 02/03/12   Page 9 of 12   Document 303

WTM I Company is bankrupt and has no continuing operations. Glatfelter has thousands of employees and continuing operations in the United States and around the world. On this issue, Glatfelter's interests diverge just enough from others' that Glatfelter made this motion. The United States' effort to draw an adverse inference from the fact that Glatfelter did not join with others is not appropriate.

### 7. The United States is Tilting at a Section 113(g)(2) Straw Man.

Glatfelter pointed out in its brief that there is only one situation where CERCLA *requires* a court to issue a declaratory judgment if the plaintiff requests it: in an initial action for recovery of costs. 42 U.S.C. § 9613(g)(2). This is not such an action. Glatfelter does not contend that a declaration is not permitted in other circumstances. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, the action must present "a case of actual controversy," and Count V does not present one now against Glatfelter.

### 8. Adjectives Do Not Create a "Case of Actual Controversy."

The United States has not said what it wants Glatfelter to do to comply with the UAO. The only thing Glatfelter could do would be to pay for work in OU2-5. *Whiting* has established that the amount Glatfelter must pay is zero. Therefore, adjudicating whether Glatfelter does or does not have an obligation to pay nothing is not a proper use of this Court's or the parties' resources. It is not a "case of actual controversy." Glatfelter is entitled to judgment on that claim.

The United States calls that point "absurd." United States' Brief at 1. Glatfelter is "dead wrong." *Id.* at 8. Glatfelter "trumps up a far-fetched argument." *Id.* at 12. Glatfelter's earlier litigation was "ill-founded" and an "end-around." *Id.* at 12, 13. Glatfelter's arguments are "newfound," "dubious," and based on "twisted logic." *Id.* at 14, 16, 17. All these adjectives

establish a disagreement. They do not establish a "case of actual controversy."

The United States does not explain how a declaration of Glatfelter's joint and several liability to implement the UAO along with NCR would affect how that project actually proceeds. The United States does not explain what it wants Glatfelter to do. The United States does not explain how Glatfelter could go about doing it when NCR is in control of the project and Glatfelter owes NCR nothing.

There may come a time when an adjudication of Glatfelter's liability for work in OU2-5 makes a difference. That time is not now, and that time may never come. Accordingly, Glatfelter's motion to dismiss Count V for lack of subject matter jurisdiction or for summary judgment on Count V for failure to assert a "case of actual controversy" should be granted.


Dated: February 3, 2012                Respectfully submitted,


                                       s/ David G. Mandelbaum
                                       David G. Mandelbaum
                                       Francis A. Citera
                                       Marc E. Davies
                                       Monique M. Mooney
                                       Caleb J. Holmes
                                       Adam B. Silverman
                                       GREENBERG TRAURIG, LLP
                                       Two Commerce Square, Suite 2700
                                       2001 Market Street
                                       Philadelphia, PA  19103
                                       215.988.7800
                                       mandelbaumd@gtlaw.com

                                       **Attorneys for Defendant P.H. Glatfelter Company**

## CERTIFICATE OF SERVICE

I hereby certify that, on this 3rd day of February 2012, a true and correct copy of the foregoing was filed electronically via the Electronic Court Filing system and is available for viewing and downloading.

/s/ David G. Mandelbaum
David G. Mandelbaum

Greenberg Traurig LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 988-7800
Facsimile: (215) 988-7801
mandelbaumd@gtlaw.com