UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN, GREEN BAY DIVISION

UNITED STATES, et al.,

                Plaintiffs,

            v.                  Case No. 10-C-910

NCR Corporation et al.,

                Defendants.

## CERTAIN DEFENDANTS'[1] BRIEF IN OPPOSITION TO DEFENDANT APPLETON PAPERS INC.'S MOTION TO RECONSIDER THE COURT'S DECISION AND ORDER OF DECEMBER 19, 2011

### INTRODUCTION

Defendant Appleton Papers Inc. ("API") asks the Court to revisit its denial of API's motion for summary judgment based on the same factual record, and primarily the same legal arguments, considered by the Court in its decision on December 19, 2011. For the reasons set forth below, the Court should decline to do so.

API's only new argument is a third party beneficiary disclaimer argument that would render nearly five pages of the 1978 Purchase Agreement relating to its assumption of liabilities (Dkt. 139-3, pp. 17-22) and the entire Assumption

---

[1] "Certain Defendants" are U.S. Paper Mills Corp., Georgia Pacific Consumer Products LP, Fort James Corporation, Georgia Pacific LLC, Neenah-Menasha Sewerage Commission, Menasha Corporation, City of Appleton, WTM1 Company, and CBC Coating Inc.

Agreement (Dkt. 203-3) mere surplusage—contrary to the rules of contract construction.

API also confuses assumption of liability with indemnity throughout its brief, arguing that assumption of liability only makes the buyer liable to the seller. That is wrong. A buyer who assumes liability stands in the shoes of the seller and is directly liable to third parties. The 1978 Purchase Agreement recognizes the distinction between those two legal principles by including separate provisions for the assumption of liabilities and for indemnification of the seller (Dkt. 139-4 at pp. 35–36).

API also completely sidesteps the Court's conclusion regarding the impact of the 2005 arbitration award. The Court did not find, as API asserts, that the 1998 settlement agreement imposed Fox River CERCLA liability upon API. Rather, the Court concluded that the Arbitration Panel's decision, which the Court noted was to "settle the question of liability for clean-up expenses once and for all," was what mattered (Dkt. 279 at p. 11). As the Court correctly concluded, the "entirety of the [1978] agreement is thus the product of the arbitration, *which imposed liability upon API.*" (*Id.*) (emphasis added).

Finally, the Court should not reconsider its decision denying API's summary judgment motion, particularly when no discovery has occurred in this case relating to the 1978 Purchase Agreement or the intent of the parties relating to the assumption of liabilities.

2
Case 1:10-cv-00910-WCG   Filed 02/03/12   Page 2 of 11   Document 304

## ARGUMENT

As shown in Certain Defendants' Response to Motion for Summary Judgment of Defendant Appleton Papers Inc. (Dkt. 206), API is collaterally estopped from denying CERLA liability because it litigated that issue to a final arbitration award that allocated to API 60% of that liability and that arbitration award was confirmed by the U.S. District Court for the Southern District of New York. As the Court found, API's assumption of CERCLA liabilities is precluded neither by CERCLA section 107(e)(1) nor by the continued existence and viability of NCR. The Court correctly held that API could be found to have assumed all environmental liability, including CERCLA liability, arising from the facilities and operations it purchased in 1978.

API incorrectly argues that the Court erred in finding that API could be found to have assumed CERCLA liability for the Fox River site because: (1) a disclaimer in the 1978 agreement precludes third party beneficiary claims; (2) the Court disregarded Seventh Circuit precedent on successor liability; and, (3) the Court incorrectly rested assumption of liability on a 1998 Settlement Agreement that says no one conceded liability. API's arguments fail as shown next.

### I. THE 1978 AGREEMENT'S THIRD PARTY BENEFICIARY DISCLAIMER DOES NOT PRECLUDE A DIRECT CERCLA ACTION AGAINST API.

API argues for the first time that it cannot be sued by the Government because the 1978 Purchase Agreement expressly disclaims that the Agreement confers any rights on third parties. Although the 1978 Purchase Agreement does

include a general clause that states that the agreement is not intended to confer rights or remedies on any person not a party to the agreement, the Government is not seeking to enforce a right or remedy directly under the contract. Instead, it is enforcing a remedy under CERCLA that API assumed under that agreement.[2]

When API assumed liabilities, it stepped into the shoes of NCR with respect to the obligations and liabilities assumed. *Bouton v. Litton Inds. Inc.*, 423 F.2d 643, 651 (3d Cir. 1970) (Under New York law, "one who assumes a liability, as distinguished from one who agrees to indemnify against it, takes the obligation of the transferor unto himself."). *See also Hatco Corp v. W.R. Grace & Co.*, 59 F.3d 400, 406 (3d Cir. 1995) (CERCLA case decided under New York law). API therefore can be sued directly for the CERCLA liability it assumed.

Courts have held in CERCLA cases that "[w]hen a buyer expressly assumes **liabilities** of a **seller**, it becomes **directly liable** therefore, regardless of any language in the sale agreement otherwise purporting generally to disclaim third-party beneficiary rights." (Emphasis in original). *Clean Harbors, Inc. v. Safety-Kleen Corp. (In re Safely-Kleen Corp.)*, 380 B.R. 716, 740 (Bankr. D. Del. 2008). *See also Caldwell Trucking PRP v. Rexon Tech. Corp.*, 421 F.3d 234, 245 (3d Cir. 2005). New York law also requires that the assumption provisions of the 1978 Purchase Agreement and Assumption Agreement control over the general "catch all" disclaimer in the purchase agreement. *See Hejna v. Reilly*, 931

---

[2] The separate Assumption Agreement (Dkt. 203-3), signed on the same day as the 1978 Purchase Agreement, assumes all the same liabilities but does not contain any disclaimers.

N.Y.S.2d 192 (App. Div. 2011) (A specific commitment to pay tuition expenses until children graduate from college was held to control over a more general "catch all" list of termination events that included termination when the children reached the age of 22 and, since both children turned 22 before graduating, a contrary reading would have impermissibly rendered the promise to pay college expenses meaningless).

API's attempt to limit any assumed liability solely to a claim belonging to NCR would improperly transform the assumption provisions into a mere agreement to indemnify NCR. But, the 1978 Purchase Agreement already has an indemnification provision (Dkt. 139-4, Section 9.2 at 35-36). The Court should not render the entire assumption provision of the 1978 Purchase Agreement, as well as the separate Assumption Agreement, mere surplusage by adopting API's interpretation of the disclaimer clause. *FCI Group Inc. v. City of New York*, 862 N.Y.S.2d 352 (App. Div. 2008) (a court should not adopt an interpretation which will leave a provision in a contract without force and effect). Therefore, API cannot avoid the liability it assumed by relying on the third-party beneficiary disclaimer clause.

## II. THE COURT DID NOT DISREGARD SEVENTH CIRCUIT PRECEDENT.

The only language API cites to support its argument that the Court ignored Seventh Circuit precedent is a general proposition from the *North Shore Gas* case[3] that successor liability should be determined based on the facts of each case. API then attempts to resurrect its argument that API cannot be held liable as long as NCR remains viable. The Court rejected that argument in its December 19, 2011 decision and it continues to ring hollow the second time around. API still has cited no case in which an assumption of liability by a buyer was ignored because the seller remained viable.

As shown in Certain Defendants' opposition to API's original summary judgment motion, a seller's viability is only relevant "in the absence of an express or implied assumption of debts or obligations." 15 Fletcher Encyclopedia of the Law of Corporations, section 7123.10 (2008). When an express or implied assumption of liability exists, as it does here, buyers have been found to have assumed the liabilities even when the seller remained viable after the sale. *U.S. v. Chrysler Corp. and Knotts Inc.*, No. Civ. 88-341- CMW, 1990 WL 127160 (D. Del. Aug. 28, 1990); *U.S. v. Lan*g, 864 F. Supp. 610, 612-14 (E.D. Tex. 1994).

API's additional argument that a buyer who expressly assumes liability can be liable only to the seller is also wrong. API could cite no case supporting that

---

[3] *N. Shore Gas Co. v. Saloman, Inc.*, 152 F.3d 642 (7th Cir., 1998), overruled on other grounds, in *Envision Healthcare, Inc. v. PreferredOne Insurance Company*, 604 F.3d 983 (7th Cir. 2010)

6
Case 1:10-cv-00910-WCG   Filed 02/03/12   Page 6 of 11   Document 304

proposition. Instead, API mistakenly attempts to analogize its situation to that of an insurer. (*see* Dkt. 287 at 6). An agreement to insure is an agreement to indemnify another party, and runs only to the insured. By contrast, an assumption of liability is much broader and requires the buyer to stand in the shoes of the seller with respect to the assumed obligations and liabilities. Significantly, the language API quotes from *Port Allen Marine Services, Inc. v. Chotin*, 765 F. Supp. 887 (M.D. La. 1991), to support its misguided analogy recognizes the distinction between indemnifying the seller against liabilities as opposed to assuming the seller's liabilities. The language API quotes from *Port Allen* says that the insurers could not be responsible for their insured's CERCLA liability because they merely provided insurance coverage and "<u>have not assumed the contractual obligations</u> of Chotin under the facts of this case." (emphasis added) *Id*. at 888 – 89. By implication, had the insurers in *Port Allen* assumed the liabilities rather than merely insured (i.e. indemnified) against them, the Court would have found they were responsible for the insured's CERCLA liabilities. That is just what API did here. API assumed NCR's environmental liabilities, making it liable under CERCLA.

### III. THE COURT CORRECTLY FOUND THAT THE 1978 PURCHASE AGREEMENT, AS INTERPRETED AND APPLIED BY THE ARBITRATION PANEL, COULD IMPOSE CERCLA LIABILITY ON API.

As shown by the Government (Dkt. 205 at pp. 9-14) and Certain Defendants (Dkt. 206 at pp 18-23), API assumed CERCLA liability under the

1978 Purchase Agreement. In denying API's original motion for summary judgment, the Court found that the 1978 Purchase Agreement language was itself broad enough for API to potentially have assumed that liability.

API's arguments in this regard are the same, and based on the same factual record, that the Court considered and rejected when it rendered its December 19, 2011 Decision. Nothing has changed. The Court could not find as a matter of law that API is not liable under CERCLA based on the record for API's original summary judgment motion. It should not do so on a motion to reconsider based on the same record (and same old arguments).[4]

The Court's analysis, however, did not stop with the language of the 1978 agreement. While stating that it might be able to reach its conclusion that API had assumed liability from the asset agreement alone, the agreement need "no longer be read in a vacuum" because of API and NCR's subsequent arbitration (Dkt. 279 at 10). In discussing the proceedings following NCR's 1995 lawsuit against API, API focuses entirely, and conveniently, on the 1998 settlement agreement resolving that lawsuit. But, the Court has already rejected API's repeated argument that it is not appropriate to find liability based on the 1998 Settlement Agreement when API and NCR stated in that agreement that they were not conceding liability.

---

[4] If the Court cannot find as a matter of law that API assumed Fox River CERCLA liability, then more discovery is needed to determine the intent of the parties. *See* Certain Defendants brief (Dkt. 206 at pp. 23-26) and the Rule 56(d) Declaration of Steven P. Bogart (Dkt. 208). Even API asserts that a "vastly superior record" exists that it has not shared in this case with the Government, Certain Defendants or the Court. (Dkt. 287 at p. 10).

Moreover, API's argument misses the point. The Court's focus was not on the 1998 settlement agreement, but on the effect of the 2005 arbitration award. For the reasons discussed in Certain Defendants' opposition, the 2005 arbitration decision and its prelude fully support the Court's decision. This is so apart from any analysis of the terms of the 1978 agreement. Certain Defendants have already addressed this issue in our earlier filing, and we make only a few additional observations directed to the significance of that arbitration.

The 2005 arbitration was a requirement of the 1998 Settlement Agreement among NCR, API and BAT which resulted in the dismissal of NCR's 1995 lawsuit. In that arbitration, the Panel was tasked to address the exact same issue that API seeks to relitigate here: API's liability for the Fox River environmental response costs. As this Court noted in its ruling, the Arbitration Panel did not base its decision solely on the 1978 contract (Dkt. 279 at 11). Rather, the Panel considered the contract language in light of all of the circumstances leading up to and surrounding the contract's execution in reaching its conclusion assigning API a 60% share.[5] (The Panel specifically noted the "express limitations on . . . the authority of the arbitrators" (Dkt. 124-2 at 8, Par. 4) one of which restricted them

---

[5] For example, the Panel found that "both parties" had knowledge that PCBs were a growing environmental concern and that NCR had already engaged in a cleanup of sediments contaminated with PCBs in Japan and that BAT (through Wiggins Teape) was aware of concerns associated with PCB discharges in the Bristol Channel." (11/29/05 Arbitration Award, Dkt. 124-2 at 8, Par. 3). The panel further "considered the disclosures made in Schedule A" finding them "sufficient to create the potential for some kind of environmental risk relative to the Appleton Papers Division operation." (*Id*.) The Panel also considered "API/BAT's conduct of due diligence and the opportunity to conduct due diligence in relation to the terms of the 1978 Agreement and finds that something was done but it appears that API/BAT's business interests predominated in consummating the transaction." (*Id*.)

to a range of 25-75%). In considering the impact of the arbitration decision, the Court concluded: " . . . I am satisfied that the purchase agreement, as interpreted by the arbitration panel, could impose liability upon API." (Dkt. 279 at 11).

Since no later than 1995 (when litigation over the 1978 Purchase Agreement began), API has argued for at least 17 years that it assumed no CERCLA liability whatsoever for the Fox River Site. All of the arguments API persists in making to this Court regarding the effect of the 1978 agreement, most recently in its pending motion for reconsideration, it has made, or should have made, before or during the arbitration. Years ago, rather than continue the 1995 federal litigation to see if one or more of its arguments would carry the day, API chose to litigate its liability instead in an arbitration forum. While Certain Defendants continue to believe that API has had its kick at this cat and that the arbitration award is preclusive as to this issue, at the very least API's tangential arguments regarding the 1998 settlement agreement are irrelevant and should be rejected.

## CONCLUSION

API's request that the Court revisit its December 19, 2011 Decision based on the same arguments and the same record fails. API has provided no valid basis

10

on which the Court should reconsider its decision.  Its motion should be denied.

Dated this 3rd day of February, 2012.

s/Steven P. Bogart
Scott W. Hansen
WI State Bar ID No. 1017206
shansen@reinhartlaw.com
Steven P. Bogart
WI State Bar ID No. 1005758
sbogart@reinhartlaw.com
Attorneys for U.S. Paper Mills
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone:  414-298-1000
Facsimile:  414-298-8097

REINHART\8302142