IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

UNITED STATES OF AMERICA and )
)
STATE OF WISCONSIN, )
)
                    Plaintiffs, )
) No. 1:10-cv-00910-WCG
          v. )
)
NCR Corporation, *et al.*, )
)
                   Defendants. )

**P.H. GLATFELTER COMPANY'S RESPONSE TO THE UNITED STATES'
STATEMENT OF ADDITIONAL FACTS IN OPPOSITION TO ITS MOTION TO
DISMISS THE UNITED STATES' FIFTH CLAIM FOR RELIEF FOR LACK OF
SUBJECT MATTER JURISDICTION OR FOR SUMMARY JUDGMENT
ON THE FIFTH CLAIM FOR RELIEF**

Pursuant to Civil L.R. 56.2(b) of the United States District Court for the Eastern District of Wisconsin, Defendant P.H. Glatfelter Company ("Glatfelter") responds to the United States' Statement of Additional Facts, Dkt. 295 ("SUF"):

36. The OU1 remedy implementation work was performed by a team of contractors identified and directed by Glatfelter, WTM I, and the limited liability company that they formed. Dkt. 293-3. That contractor team included J.F. Brennan Company, Inc.; Foth & Van Dyke (later known as Foth Infrastructure & Environment, LLC); STS Consultants, Ltd.; and CH2M HILL. Dkt. 293-3. J.F. Brennan Company served as the contractor for dredging and cap and sand cover placement work in OU1. Dkt. 293-3.

**RESPONSE TO SUF 36:** Undisputed.

37. CH2M HILL served as the Supervising Contractor for the OU1 remediation project through the 2005 remedial action work and J.F. Brennan Company replaced CH2M HILL as the Supervising Contract [*sic* for "Contractor"] for the OU1 remediation project starting in 2006. Dkt 293 at 4.

**RESPONSE TO SUF 37:** Undisputed.

38. Initial remediation work in Sediment Management Unit 56/57 in OU4 was organized by the Fox River Group of Companies, with funding and participation by Glatfelter. Dkt. 60 at 34; Dkt. 293-12 at 5; Dkt. 276-12 at 2. The removal action in that area was completed under arrangements made by GP's corporate predecessor. Dkt. 293-12 at 5.

**RESPONSE TO SUF 38:** Disputed. The initial work performed at Sediment Management Unit 56/57 was performed as required by the Agreement Between the State of Wisconsin and Certain Companies Concerning the Fox River dated January 31, 1997. Dkt. 60-2. The work was not "initial" in the sense that other work had been done to study SMU 56/57 prior to that time. It was not "remediation," but was instead a demonstration sediment restoration project. Organization of that project included, among others, the Wisconsin Department of Natural Resources as set forth in that agreement. It is undisputed that a removal action in that area was completed under arrangements made by GP's corporate predecessor.

39. Remedial design work for OUs 2-5 was begun under arrangements made by GP and NCR. Dkt. 125 at 6.

**RESPONSE TO SUF 39:** Undisputed

40. NCR and USPM arranged for performance of Phase 1 of the remedial action in OU4. Dkt. 276-17; Dkt. 293-11.

**RESPONSE TO SUF 40:** Undisputed.

41. The Work Plan for Phase 2A of the remedial action in OUs 2-5 was prepared for API, GP, NCR, and USPM. Dkt. 293-13 at 1.

**RESPONSE TO SUF 41:** Undisputed.

42. The initial designation of an employee of Tetra Tech EC, Inc. as the Project Coordinator for the Phase 2B Work was made by API, NCR, and GP. Dkt. 293-14 at 1.

**RESPONSE TO SUF 42:** Undisputed.

43. More than 720,000 cubic yards of contaminated sediment was dredged from OUs 2-5 at the Site in 2010. Dkt. 123 at 3; Dkt. 293-2 at 1. Less than 240,000 cubic yards of contaminated sediment was dredged from OUs 2-5 at the Site in 2011. Dkt. 178 at 2-3; Dkt. 293-2 at 1.

**RESPONSE TO SUF 43:** Undisputed.

44. The UAO does not provide for contractor "approval" by EPA; it says that "the Affected Respondents shall identify a proposed construction contractor and notify U.S. EPA and WDNR in writing of the name, title, and qualifications of the construction contractor proposed to be used in carrying out Phase 2B Work under this Order." Dkt. 30-1 at 29.

**RESPONSE TO SUF 44:** Disputed. The UAO describes the construction contractor as "proposed." Affected Respondents are required to "demonstrate that the proposed construction contractor has a quality system" that complies with certain requirements. EPA and WDNR must be afforded a minimum of 15 days to disapprove the contractor. The distinction between this process and "approval" is merely semantic.

45. EPA retains the right under the UAO "to disapprove of the Project Coordinator and any contractor, including but not limited to construction contractors retained by the Affected Respondents." Dkt. 30-1 at 30. In an August 12, 2011 letter, EPA exercised that authority and disproved the Phase 2B Project Coordinator designation and contractor designation that had been made under the UAO. Dkt. 273-2 at 2-3. No replacement Project Coordinator or contractor has been designated. Dkt. 293 at 3; Dkt. 293-9.

**RESPONSE TO SUF 45:** Glatfelter does not dispute that the documents cited state what they state. Glatfelter does not know whether a replacement Project Coordinator or contractor has been designated.

46. In both the original Consent Decree and the Amended Consent Decree for OU1, the United States expressly reserved "all rights against Settling Defendants with respect to all other matters" including for potential "liability for operable units at the Site other than OU1." Dkt. 276-13 at 84.

**RESPONSE TO SUF 46:** Disputed. Paragraph 89 of the Amended Consent Decree speaks for itself and must be read in conjunction with all other provisions of the Amended Consent Decree.

47. In his April 12, 2004 Decision and Order approving the original Decree, Judge Adelman indicated that "[t]he settlement would not resolve defendants' potential liability for response activities or response costs relating to areas of the site other than OU1." US v. Glatfelter, E.D. Wis. No. 03-C-949, Dkt. 22 at 2.

**RESPONSE TO SUF 47:** It is undisputed that Judge Adelman issued a Decision Order which, in conjunction with the language of the Consent Decree, explains his ruling.

48. The United States' claim for liability under section 106(a) of CERCLA to abate threats downstream of OU1 was not settled by the OU1 Consent Decree. Dkt. 293-8 at 13.

**RESPONSE TO SUF 48:** Disputed. The United States has not asserted a claim under section 106(a) of CERCLA to abate threats downstream of OU1.

49. In its briefs filed in support of its motion for a case management order in the US v. Glatfelter case, Glatfelter never argued that Paragraph 102 of the OU1 Consent Decree limits the United States' ability to pursue any claims for OUs 2-5. Dkt. 293-7; Dkt. 293-8. Instead, the company avowed that "Glatfelter does not intend . . . to use any judgment in [the US v. Glatfelter case] as a 'sword' against the government's enforcement actions." Dkt. 293-8 at 7.

**RESPONSE TO SUF 49:** It is undisputed that Glatfelter's briefs did not rely on paragraph 102 of the OU1 Consent Decree. Paragraph 102 is a "shield," not a "sword."

50. The Amended Consent Decree for OU1 was agreed to and entered in 2008, after Glatfelter received the UAO and after Glatfelter's motion for a case management order in

the *US v. Glatfelter* case was denied. Dkt. 30-1; *US v. Glatfelter*, E.D. Wis. No. 03-C-949, Dkt. 33 (February 13, 2008 Decision and Order denying Motion for a Case Management Order), Dkt. 35 (June 20, 2008 Notice of Lodging of Amended Consent Decree). Dkt. 37 (August 13, 2008 Order Entering Amended Consent Decree). The Amended Consent Decree does not mention the UAO at all. Dkt. 276-13. It did not add any new covenants not to sue or take administrative action concerning OUs 2-5. Dkt. 276-13. It did not alter the explicit reservation of Plaintiffs' rights "for operable units at the Site other than OU1." Dkt. 276-13 at 84.

**RESPONSE TO SUF 50:** Disputed. The Amended Consent Decree is a new consent decree. Each of its provisions was new in 2008. It includes paragraph 102.a.

51. Glatfelter has paid a minority share of the amount committed under the OU1 Consent Decree to date. Dkt. 276-12 at 2; Dkt. 276-13 at 21; Dkt. 276-14 at 2. A total of approximately $107 million has been paid under that Decree, including about $45 million by WTM, about $44 million by Glatfelter, $7 million by Menasha, and $10 million by NCR and API. Dkt. 276-12 at 2; Dkt. 276-13 at 21; Dkt. 276-14 at 2.

**RESPONSE TO SUF 51:** Glatfelter does not dispute the rough characterization of the amounts committed by WTM, Glatfelter, and Menasha, although the amounts are not precise. The $10 million to which SUF 51 refers was not paid by NCR and API under the Decree. That amount was paid by NCR and API into a fund pursuant to another consent decree for other purposes, and then taken by the United States and the State and placed into the OU1 Escrow Account for use in the OU1 project.

52. The original Consent Decree and the Amended Consent Decree for OU1 both contained the following provision:

> In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case.

Dkt. 276-13 at 91.

**RESPONSE TO SUF 52:** Undisputed.

53. Glatfelter contends that it has sufficient cause to refuse to comply with the UAO. Dkt. 293-1 at 2. The United States disagrees, as evidenced by the UAO and the Fifth Claim for Relief in this case. Dkt 30; Dkt. 30-1.

**RESPONSE TO SUF 53:** Glatfelter does not dispute that it and the United States disagree. The UAO does not evidence this disagreement.

54. Glatfelter contends that it is not jointly and severally liable for any of the work in OUs 2-5. Dkt. 293-1 at 2; Dkt. 60 at 13. The United States disagrees, as evidenced by the UAO and the Fifth Claim for Relief in this case. Dkt 30; Dkt. 30-1.

**RESPONSE TO SUF 54:** Glatfelter does not dispute that it and the United States disagree.

55. Glatfelter contends that the remedy for OUs 2-5 was selected arbitrarily and capriciously. Dkt. 272 at 23. The United States disagrees, as evidenced by the UAO and the Fifth Claim for Relief in this case. Dkt 30; Dkt. 30-1.

**RESPONSE TO SUF 55:** Glatfelter does not dispute that it and the United States disagree.

56. Glatfelter contends that the remedy for OUs 2-5 is arbitrary and capricious and an abuse of discretion. Dkt. 293-1 at 2. The United States disagrees, as evidenced by the UAO and the Fifth Claim for Relief in this case. Dkt 30; Dkt. 30-1.

**RESPONSE TO SUF 56:** Glatfelter does not dispute that it and the United States disagree.

57. Glatfelter contends that the administrative record for the Site supports no remedy selection for OUs 2-5. Dkt. 272 at 23. The United States disagrees, as evidenced by the UAO and the Fifth Claim for Relief in this case. Dkt 30; Dkt. 30-1.

**RESPONSE TO SUF 57:** Glatfelter does not dispute that it and the United States disagree.

58. Glatfelter contends that the remedy selection processes followed by EPA and WNDR resulted in the selection of remedial actions that were not necessary and were inconsistent with the National Contingency Plan. Dkt. 60 at 37. The United States disagrees, as

evidenced by the UAO, the Fifth Claim for Relief in this case, and the United States' Answer to Glatfelter's Counterclaims. Dkt 30; Dkt. 30-1; Dkt. 225 at 15.

**RESPONSE TO SUF 58:** Glatfelter does not dispute that it and the United States disagree.

59. Glatfelter contends that EPA and WDNR failed properly to consider the placement of a sand cover or other methods of "capping" the bed of the Fox River as an appropriate remedial alternative for some or all portions of the Site. Dkt. 60 at 37. The United States disagrees, as evidenced by the UAO, the Fifth Claim for Relief in this case, and the United States' Answer to Glatfelter's Counterclaims. Dkt 30; Dkt. 30-1; Dkt. 225 at 15.

**RESPONSE TO SUF 59:** Glatfelter does not dispute that it and the United States disagree.

60. Glatfelter contends that EPA and WDNR failed properly to consider "no further action" as an appropriate remedial alternative for some or all portions of the Site. Dkt. 60 at 3. The United States disagrees, as evidenced by the UAO, the Fifth Claim for Relief in this case, and the United States' Answer to Glatfelter's Counterclaims. Dkt 30; Dkt. 30-1; Dkt. 225 at 15.

**RESPONSE TO SUF 60:** Glatfelter does not dispute that it and the United States disagree.

61. Glatfelter contends that the discharges in Little Lake Butte des Morts (including the discharge from Glatfelter's former Bergstrom mill) cannot have caused the need for cleanup in OUs 2-5 and so the upstream dischargers are not proper respondents on the UAO. Dkt. 272 at 23; Dkt. 60 at 22. The United States disagrees, as evidenced by the UAO, the Fifth Claim for Relief in this case, and the United States' Answer to Glatfelter's Counterclaims. Dkt 30; Dkt. 30-1; Dkt. 225 at 15.

**RESPONSE TO SUF 61:** Glatfelter does not dispute that it and the United States disagree.

62. The photograph that is reproduced on the third page of Exhibit 15 to the January 17, 2012 Declaration of Randall M. Stone (Dkt. 293-15 at 3) fairly and accurately depicts Little Lake Butte des Morts and the surrounding areas in May 1970, as photographed from an airplane at an altitude of approximately 7,000 feet.

**RESPONSE TO SUF 62:** Glatfelter objects to the inclusion of SUF 62 in the United States' Statement of Additional Undisputed Facts because the United States does not cite or refer to the image to which this SUF refers or to SUF 62. Glatfelter disputes that page 3 of Dkt. 293-15 fairly and accurately depicts anything because it is not properly authenticated. However, Glatfelter does not dispute that on some days in or about 1970 Little Lake Butte des Morts displayed some of the features depicted in the cited image.

63. Among other things, the photograph that is reproduced on the third page of Exhibit 15 to the January 17, 2012 Declaration of Randall M. Stone (Dkt. 293-15 at 3) fairly and

10

accurately depicts the discharge of suspended solids into Little Lake Butte des Morts from the Bergstrom Mill in May 1970.

**RESPONSE TO SUF 63:** Glatfelter objects to the inclusion of SUF 63 in the United States' Statement of Additional Undisputed Facts because the United States does not cite or refer to the image to which this SUF refers or to SUF 63. Glatfelter disputes that page 3 of Dkt. 293-15 fairly and accurately depicts anything because it is not properly authenticated. However, Glatfelter does not dispute that on some days in or about 1970 Little Lake Butte des Morts displayed some of the features depicted in the cited image. If the image were a fair and accurate depiction of Little Lake Butte des Morts, it appears to depict discharges of suspended solids from several locations. One of those locations appears to be the Bergstrom Mill and that discharge appears to be colored a brighter white than nearby discharges because of the presence in the discharge of titanium dioxide, a nontoxic pigment used for the purpose of whitening paper and other products, such as toothpaste. Titanium dioxide discharges would be atypical, but not uncommon, in Little Lake Butte des Morts in or about 1970.

64. Among other things, the photograph that is reproduced on the third page of Exhibit 15 to the January 17, 2012 Declaration of Randall M. Stone (Dkt. 293-15 at 3) fairly and accurately depicts the release of suspended solids into Little Lake Butte des Morts from the Bergstrom Mill's adjacent paper mill sludge landfill in May 1970.

**RESPONSE TO SUF 64:** Glatfelter objects to the inclusion of SUF 64 in the United States' Statement of Additional Undisputed Facts because the United States does not cite or refer to the image to which this SUF refers or to SUF 64. Glatfelter disputes that page 3 of Dkt. 293-15 fairly and accurately depicts anything because it is not properly authenticated.

However, Glatfelter does not dispute that on some days in or about 1970 Little Lake Butte des Morts displayed some of the features depicted in the cited image. Even if the image were a fair and accurate depiction of Little Lake Butte des Morts, it does not depict a discharge from the Bergstrom Mill's adjacent paper mill sludge landfill, and, in fact, depicts that the landfill was not the source of a discharge.

Dated: February 3, 2012                          Respectfully submitted,

                                                               s/ David G. Mandelbaum
                                                                David G. Mandelbaum
                                                                Francis A. Citera
                                                                Marc E. Davies
                                                                Monique M. Mooney
                                                                Caleb J. Holmes
                                                                Adam B. Silverman
                                                                GREENBERG TRAURIG, LLP
                                                                Two Commerce Square, Suite 2700
                                                                2001 Market Street
                                                                Philadelphia, PA 19103
                                                                215.988.7800
                                                                mandelbaumd@gtlaw.com

                                                                **Attorneys for Defendant P.H. Glatfelter Company**

## CERTIFICATE OF SERVICE

I hereby certify that, on this 3rd day of February 2012, a true and correct copy of the foregoing was filed electronically via the Electronic Court Filing system and is available for viewing and downloading.

/s/ David G. Mandelbaum
David G. Mandelbaum

Greenberg Traurig LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 988-7800
Facsimile: (215) 988-7801
mandelbaumd@gtlaw.com