Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA and
THE STATE OF WISCONSIN,

        Plaintiffs,

        v.                              Case No. 10-C-910

NCR CORPORATION, *et al.*,

        Defendants.

---

**[MODIFIED PROPOSED] TERMS OF PRELIMINARY INJUNCTION
UNDER FED. R. CIV. P. 65(d)**

---

Brief Background

The United States has moved for a preliminary injunction in its favor and against

Defendants NCR Corporation ("NCR") and Appleton Papers Inc. ("API") pending litigation of

the merits of the United States' claim for enforcement of certain requirements under a November

2007 Unilateral Administrative Order ("UAO") that the Environmental Protection Agency

("EPA") issued under Section 106 of the Comprehensive Environmental Response,

Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9606.

The UAO requires performance of specified environmental cleanup work in portions of

the Lower Fox River and Green Bay Superfund Site (the "Site") from the outlet of Little Lake

Butte des Morts to the Bay of Green Bay – *i.e.*, Operable Units 2 though 5 ("OUs 2-5") at the

Site. Among other things, the UAO requires remediation of sediment that is contaminated with

polychlorinated bipheyls ("PCBs") in accordance with Records of Decision ("RODs") issued by

EPA and the Wisconsin Department of Natural Resources ("WDNR"). The RODs specify that dredging must be used as the primary remedial approach for sediment with PCB concentrations exceeding a 1.0 part per million Remedial Action Level, but also set specific criteria for allowing use of specially engineered, in-water caps and sand covers as alternative remedial approaches in certain areas. Under the RODs and EPA regulations issued under the Toxic Substances Control Act ("TSCA"), sediment with a PCB concentration equal to or greater than 50 parts per million must be disposed of in a TSCA-approved landfill.

Dredges can be used for at least two different purposes at the Site. First, dredges can perform "Production Dredging," which involves high-rate sediment removal in an area before the more precise work needed to complete the dredging in that area. Second, dredges can do "Final Dredging," which performs the more precise work to finish the dredging in that area. Simultaneous Production Dredging and Final Dredging with different dredges can help ensure the full and efficient utilization of the Sediment Processing Facility at the Site. Final Dredging must ultimately be performed in all designated dredge areas, which have generally been assigned an area number with a "D" prefix, such as area "D24."

Since at least April 2009, NCR and API have arranged for performance of cleanup work required by the UAO through a set of contracts and arrangements put in place by NCR and API and an entity they formed called the Lower Fox River Remediation LLC (the "LLC"). Another entity known as Arjo Wiggins Appleton (Bermuda) Limited ("AWAB") is an additional member of the LLC. There are 100 voting shares in the LLC, including 40 held by NCR, 45 held by API, and 15 held by AWAB. On August 6, 2009, API granted AWAB its proxy to vote its shares, so AWAB has in the past voted 60 of the 100 shares in the LLC, including 15 of its own shares and 45 shares held by API. AWAB is an affiliate of another entity, Windward Prospects Ltd., that in

2

2001 agreed to indemnify API against claims related to the Site.

On March 19, 2012, EPA issued a Modified Work Plan specifying the remediation work to be performed at the Site in 2012, pursuant to EPA's authority under Paragraph 49 of the UAO. The Modified Work Plan requires the removal of at least 660,000 cubic yards of sediment from the Site by dredging in specified areas between the De Pere Dam and the Canadian National Railroad Bridge near the Sediment Processing Facility. This Order requires NCR and API to ensure performance of the 2012 remediation work in accordance with that Modified Work Plan, as detailed below.

<u>Terms of Preliminary Injunction</u>

**NOW, THEREFORE**, in light of the Plaintiffs' Motion and the responses thereto, and good cause appearing, **IT IS HEREBY ORDERED**:

1.      NCR and API shall comply with the following requirements relating to the performance of remedial action work at the Site in 2012:

a.      If full-scale sediment remediation has not commenced at the Site before issuance of this Order, NCR and API shall ensure the commencement of full-scale sediment remediation as described below within one day after issuance of this Order. NCR and API shall ensure the continuation of full-scale sediment remediation work as described below through at least November 9, 2012.

b.      Subject to the dredging requirements set forth in Paragraph 1.c below, NCR and API shall ensure that three or more dredges are used simultaneously to perform Production Dredging and/or Final Dredging 24 hours per day, five days per week (except during particular holiday-shortened weeks listed in the Modified Work Plan), throughout the construction season, subject only to bona fide operational limitations (of the LLC's

3

contractor, Tetra Tech EC, Inc., and its subcontractors), and with the goal of maintaining the efficiency of the Sediment Processing Facility. (During startup of operations, the dredges may be operated 16 hours per day, pending confirmation that all systems and processes are functioning as planned.)

      c.      NCR and API shall ensure the performance of remediation work at the Site as specified by EPA's Modified Work Plan for 2012 (as filed with the Court and incorporated herein by this reference), including removing a minimum of 660,000 cubic yards of sediment from the following Eligible Dredging Areas:

| 2012 Eligible Dredging Areas | Estimated Total Volume | Estimated Total TSCA Volume |
|---|---|---|
| D 114-TBD | 4,173 cy | |
| D 118A-TBD | 1,828 cy | |
| D118B-TBD | 2,890 cy | |
| D23 | 205,861 cy | 19,389 cy |
| D23B | 715 cy | |
| D23C | 84 cy | |
| D24 | 68,013 cy | |
| D25C | 194 cy | |
| D26A | 1,467 cy | 160 cy |
| D26B/D61 | 6,901 cy | |
| D26C | 1,644 cy | |
| D27A | 71,772 cy | 347 cy |
| D28 | 109 cy | |
| D29 | 1,215 cy | |
| DPhase1 | uncertain cy | |
| D27B | 31,040 cy | |
| D27D | 4,022 cy | |
| D27E | 468 cy | |

4

| | | |
|---|---|---|
| D27F | 3,638 cy | |
| D30A North | 7,806 cy | |
| D30A South | 5,362 cy | |
| D91 | 1,169 cy | |
| D119A-TBD | 11,649 cy | |
| D119B-TBD | 3,162 cy | |
| D119C-TBD | 3,126 cy | |
| D27C-TBD | 3,457 cy | |
| D30B South | 136,889 cy | |
| D30C-TBD | 7,630 cy | |
| D30D | 1,518 cy | |
| D30E | 2,316 cy | |
| D31 South | 55,487 cy | |
| D32 South | 153,977 cy | |
| D32A | 228 cy | |
| D32B | 167 cy | |
| D141C | 161 cy | |
| D30B North | 72,210 cy | |
| D30B North | 21,549 cy | |
| D31 North | 14,772 cy | |
| D31 North | 8,947 cy | |
| D32 North | 81,288 cy | |
| D32 North | 27,167 cy | |
| D34 | 5,310 cy | 3,643 cy |
| D35A | 310,631 cy | 21,667 cy |
| D35Q | 55,206 cy | 9,263 cy |
| D37 | 17,845 cy | |
| **Total** | **1,415,063 cy** | **54,468 cy** |

Case 1:10-cv-00910-WCG   Filed 04/06/12   Page 6 of 9   Document 342-1

d. NCR and API shall ensure the performance of all infill sampling work required by EPA's Modified Work Plan (including the modified 2012 OU4 Infill Sampling Plan that comprises Appendix E of the Modified Work Plan).

2. In their capacity as members of the LLC, NCR and API shall take all necessary actions to ensure compliance with the terms of this Order, including but not limited to API and NCR voting their shares in the LLC to direct the LLC to comply with all requirements of this Order. API and NCR shall also: (i) take any administrative steps within the LLC as needed to ensure compliance with this injunction; (ii) vote their shares to cause the LLC to issue cash calls to its members in support of the LLC's compliance with this injunction; and (iii) ensure payment of all cash calls made by the LLC in support of compliance with all requirements of this Order.

3. NCR and API shall provide actual notice of this Order to the following persons and entities so that they will be bound by its terms pursuant to Fed. R. Civ. P. 65(d)(2):

a. all officers, agents, servants, employees, and attorneys of NCR and API who are involved in decision-making concerning the performance or direction of remediation work at the Site or contractual arrangements or funding arrangements for remediation work at the Site;

b. all other persons who are in active participation or concert with NCR and API, or any person described in the preceding Subparagraph, concerning the performance or direction of remediation work at the Site or contractual arrangements or funding arrangements for remediation work at the Site, including but not limited to: (i) the Lower Fox River Remediation LLC; (ii) Windward Prospects Ltd. (formerly known as Arjo Wiggins Appleton Ltd.); and (iii) Arjo Wiggins Appleton (Bermuda) Ltd.

6

4.      All response action work required by this Order shall be subject to oversight by EPA, with supervision by the Court.

5.      NCR and API shall not be held in contempt of this Order or otherwise held responsible for any failure to carry out their respective obligations under this Order if such failure is attributable to a "*force majeure*."  For purposes of this Order, a "*force majeure*" is defined as any event arising from causes beyond the control of NCR or API or any entity controlled by NCR or API, or any contractors or subcontractors of NCR or API, that delays or prevents the performance of any obligation under this Order despite NCR's and API's best efforts to fulfill the obligation.

   a.      The requirement that NCR and API exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential *force majeure* and best efforts to address the effects of any potential *force majeure*.

   b.      If any event occurs or has occurred that may delay the performance of any obligation under this Order for which NCR and API intend or may intend to assert a claim of *force majeure*, NCR and API shall notify EPA within seven days of learning of such an event and provide sufficient explanation of the reasons for delay and the actions to be taken.  If EPA agrees that the delay or anticipated delay is attributable to a *force majeure*, the provisions of this Order shall be adjusted as necessary to enable NCR and API to fulfill their obligations.  If EPA disagrees that the delay or anticipated delay is attributable to a *force majeure*, then the Court shall determine whether the requirement of this Order should be adjusted.

6.      The terms of this Order may be modified by a subsequent written agreement signed by appropriate representatives of the United States, the State of Wisconsin, NCR, and

7

API, although no such modification shall take effect until it is approved by the Court. Nothing in this Order shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Order.

7.      The Court shall terminate this preliminary injunction in response to a motion showing that all requirements of Paragraph 1 have been satisfied.

**SO ORDERED** this _____ day of _____, 2012.

Case 1:10-cv-00910-WCG   Filed 04/06/12   Page 9 of 9   Document 342-1