UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA and <br> THE STATE OF WISCONSIN <br><br> Plaintiffs, <br><br> v. <br><br> NCR CORPORATION, *et al.* <br><br> Defendants. | Civil Action No. 10-C-910 <br><br> The Honorable William C. Griesbach |

BRIEF IN SUPPORT OF PLAINTIFF THE UNITED STATES' MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS ON AFFIRMATIVE DEFENSES BASED ON
ALLEGED FEDERAL LIABILITY UNDER CERCLA

Even if proven, an allegation that the federal government has liability for a contaminated site under CERCLA does not relieve any other potentially responsible party ("PRP") of an obligation to comply with a Unilateral Administrative Order ("UAO") for cleanup issued by EPA under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") Section 106, 42 U.S.C. § 9606. The United States' Motion for Partial Judgment on the Pleading targets particular affirmative defenses that ignore that truism, and it seeks a determination that those defenses are legally insufficient even if all allegations in the pleadings are accepted as true for the purpose of the motion. Granting the motion would narrow the issues that are to be tried in this case in December and avoid the unnecessary introduction of evidence on federal liability questions that have no bearing on the UAO Defendants' own obligation to ensure the completion of the cleanup at the Lower Fox River and Green Bay Superfund Site. Judgments about what each PRP should pay toward that cleanup effort – including whether or what the United States should pay as a PRP – would be reserved and resolved through the

parties' contribution claims under CERCLA Section 113, 42 U.S.C. § 9613, as intended under CERCLA.

Each of the six UAO Defendants has pled one or more affirmative defenses asserting that the United States can obtain no relief in this case due to the government's own alleged liability at this Site under CERCLA.[1] For example, Glatfelter and three of the other UAO Defendants have asserted the following affirmative defense in their answers:

> The United States, and specifically EPA, is a party responsible for the Site pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Accordingly, EPA is not permitted to issue a unilateral order for remedial action with respect to this Site because EPA may not unilaterally determine the allocation of liability among responsible parties of which it is one. Further, neither the United States nor the State may seek enforcement of such a unilateral administrative order.

*See* Dkt. 60 at 14 (Glatfelter's "Fifth Separate Defense"); Dkt. 51 at 18, ¶ 156 (U.S. Paper's "Nineteenth Separate Defense"); *see also* Dkt. 57 at 15, ¶ 17 (CBC Coating); Dkt. 62 at 11 (WTM's "Fifth Separate Defense"). All of the UAO Defendants also have asserted that the United States cannot obtain relief due to its "unclean hands," as typified by this affirmative defense asserted by NCR:

> Plaintiffs' claims, to the extent they are equitable in nature, are barred in whole or in part by the doctrine of unclean hands because of Plaintiffs' dredging and/or other activities that contributed to the release or circulation of PCBs at the Lower Fox River site.

*See* Dkt. 82 at 44, ¶ 26 (NCR); *see also* Dkt. 48 at 20, ¶ 143 (Menasha's "Sixth Separate Defense"); Dkt. 51 at 15-16, ¶ 144 (U.S. Paper's "Seventh Separate Defense"); Dkt. 57 at 14, ¶ 7 (CBC Coating); Dkt. 60 at 15 (Glatfelter's "Eighth Separate Defense"); Dkt. 62 at 12 (WTM's

---

[1] The Court has granted summary judgment to Appleton Papers Inc. (Dkt. 349) and entered a Consent Decree that resolves the Plaintiffs' claims against Georgia-Pacific on specified terms and conditions (Dkt. 2-1; Dkt. 130), so the motion and this brief address affirmative defenses asserted by the six remaining UAO recipients – *i.e.*, NCR Corporation, P.H. Glatfelter Company, WTM I Company, Menasha Corporation, U.S. Paper Mills Corp., and CBC Coating, Inc. (collectively the "UAO Defendants").

2

"Eighth Separate Defense"). Those are not legally cognizable defenses to the United States' claim for enforcement of the UAO under CERCLA Section 106, the Fifth Claim for Relief in the Plaintiffs' Complaint. *See* Dkt. 30 at 30. For that reason, those affirmative defenses should be dismissed in response to the United States' Motion for Partial Judgment on the Pleadings.

## Argument

### 1. Faulty Affirmative Defenses Can Be Dismissed Under Fed. R. Civ. P. 12(c)

A plaintiff can file a motion for partial judgment on the pleadings under Fed. R. Civ. P. 12(c) to obtain dismissal of legally insufficient affirmative defenses. *See Bradley v. Fontaine Trailer Co., Inc.*, No. 3:06-cv-62, 2009 WL 763548, at *3 (D. Conn. Mar. 20, 1999) (finding that modern interpretation of Rule 12(c) permits motion for partial judgment on the pleadings to obtain dismissal of affirmative defenses); *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 842, 844 (N.D. Ill. 2008).[2] Motions targeting affirmative defenses under Rule 12(c) are handled much like offensive counterparts to motions to dismiss affirmative claims under Rule 12(b)(6). *See Joliet v. Mid-City Nat'l Bank of Chi.*, No. 05 C 6746, 2012 WL 638735, at *1 (N.D. Ill. Feb. 22, 2012) (applying same standard of review of 12(b)(6) to motion for partial judgment on the pleadings to dismiss affirmative defenses). In both instances, the motion tests the viability of the non-movant's claim or defense with the Court and the parties accepting as true all factual allegations in the pleadings. *See Bradley*, 2009 WL 763548, at *2; *Gillman v. Burlington N. R. Co.*, 878 F.2d 1020, 1022 (7th Cir. 1989) ("In ruling on the . . . [Rule 12(b)(6) motion], or alternatively, for judgment on the pleadings . . . the district court was required to accept as true all facts alleged in the appellant's second amended complaint . . . ."). Thus, for the purpose of

---

[2] Alternatively, the Court may treat the motion as a request to strike the affirmative defenses under Fed. R. Civ. P. 12(f). *See, e.g.*, *Bradshaw v. Hilco Receivables, LLC*, 725 F. Supp. 2d 532 (D. Md. 2010) (electing to treat a motion under Rules 12(c) and 12(f) as a request to strike affirmative defenses under Rule 12(f)); *United States v. Kramer*, 757 F. Supp. 397 (D.N.J. 1991) (CERCLA case striking legally deficient affirmative defenses under Rule 12(f)).

this motion, the United States does not contest the Defendants factual assertions in their pleadings that: (1) the U.S. Army Corps of Engineers re-suspended and re-deposited PCB-containing sediment at the Site though navigational dredging and dam operation activities at the Site; and (2) other agencies of the federal government, including EPA, generated PCB-containing wastepaper that was recycled by one or more paper mills in the Fox River Valley. *See* Dkt. 48 at 23-78 (Menasha); Dkt. 51 at 18-22 (U.S. Paper); Dkt. 57 at 16-19 (CBC Coating); Dkt. 60 at 19-41 (Glatfelter); Dkt. 62 at 16-21 (WTM); Dkt. 82 at 47-54 (NCR). But, even taking Defendants' allegations as true, federal liability under CERCLA establishes no legal defense to a claim by the United States under CERCLA Section 106, as shown below.

> 2. **Federal Liability Is Not a Defense Under CERCLA**

Federal liability under CERCLA has no impact on the liability of other PRPs. In finding that CERCLA generally imposes joint and several liability to the United States, the early decisions under the original 1980 statute also found that PRPs had an implied right to sue each other for contribution to obtain an equitable allocation of the associated costs. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 162 (2004) (discussing cases finding implied right of contribution); *Walls v. Waste Res. Corp.*, 761 F.2d 311, 318 (6th Cir. 1985). Congress clarified and codified that right to pursue contribution in the Superfund Amendments and Reauthorization Act of 1986, which added the contribution provisions to Section 113. 42 U.S.C. § 9613(f) (added by Pub. L. 99-499, § 113(f); 100 Stat. 1613, 1647). The same set of statutory amendments added language to confirm that the government itself can qualify as a liable party under CERCLA, but also to emphasize that federal liability would not "affect the liability of any [other] person or entity under sections 9606 and 9607," as follows:

> Each department, agency, and instrumentality of the United States (including the executive, legislative, and judicial branches of government) shall be subject to, and comply with, this chapter in the same manner and to the same extent, both

4

> procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title. ***Nothing in this section shall be construed to affect the liability of any person or entity under sections 9606 and 9607 of this title.***

42 U.S.C. § 9620(a) (statutory language added by Pub. L. 99-499, § 120, 100 Stat. 1613, 1666) (emphasis added). The legislative history of the 1986 Amendments reinforced that point, stating that "[t]he right of the United States to proceed under section 106 or 107 is unaffected by its status as an owner or operator of a facility or a generator of waste at the site." H.R. Rep. 99-253, Pt. III, at 20, *reprinted in* 1986 U.S.C.C.A.N. 2835, 3043.[3] Under the plain language of the statute, federal liability shall not "be construed to affect the liability of any [other] person or entity under sections 9606 and 9607." 42 U.S.C. § 9620(a). In a governmental enforcement action like this under CERCLA Sections 106 and 107, the statute precludes putative defenses based on alleged federal liability.

Several other provisions of the statute buttress that conclusion.

First, CERCLA Section 106 imposes no limits on EPA's authority to issue cleanup orders and to institute actions to address conditions that may present "an imminent and substantial endangerment to the public health or . . . the environment."[4] 42 U.S.C. § 9606(a). The statute does not constrain EPA's authority when a federal agency, as in this case, may fall within the classes of PRPs defined by Section 107(a). *See* 42 U.S.C. § 9607(a). Although EPA has broad authority to issue cleanup orders, Section 106 does provide for reimbursement from the EPA Hazardous Substance Superfund to a PRP that receives and complies with a UAO: (1) if the

---

[3] *Accord United States v. Friedland*, 152 F. Supp. 2d 1234, 1249 (D. Colo. 2001) (citing legislative history and holding that "the presence of a federal PRP does not preclude the United States, as a matter of law, from pursuing joint and several liability against private potentially responsible parties."); *United States v. Hunter*, 70 F. Supp. 2d 1100, 1108 (C.D. Cal. 1999) (same).

[4] There are only two preconditions to issuing an order under Section 106. First, there must be a finding of an imminent and substantial endangerment to public health or welfare from the actual or threatened release of hazardous substances from a facility. 42 U.S.C. § 9606(a). Second, the United States must notify the affected State. *Id.*

5

response action that EPA required under the UAO was arbitrary, capricious, or otherwise not in accordance with law; or (2) if the UAO recipient can demonstrate that it was not among the classes of liable parties defined by Section 107(a). *Id.* at § 9606(b); *see* H.R. Rep. No. 99-253, Pt. 1, at 139-40 *reprinted in* 1986 U.S.C.C.A.N. 2835, 2921-22 (reimbursement provision allows parties who comply with an order and clean up a site to preserve all defenses to liability and the appropriateness of the response action). Federal PRP involvement does not make EPA action under Section 106(a) improper and it does not give rise to any corresponding right of reimbursement from the Superfund under Section 106(b). It may support a contribution counterclaim against the United States where, as here, the government sues under 106, but that would be an affirmative claim for money, not a defense to the government's claim for performance of particular cleanup work.[5]

Second, it is quite clear that federal PRP involvement does not negate other PRPs' status as liable parties under Section 107(a). Consistent with CERCLA's broad liability scheme and Congress' overriding goal of ensuring that hazardous wastes are cleaned up, Section 107(a) liability is strict and imposed "notwithstanding any other provision or rule of law, and subject *only* to the defenses set forth in Subsection (b) of this section." 42 U.S.C. § 9607(a) (emphasis added); *see Harley Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341 (7th Cir. 1994) (CERCLA liability is strict and does not require proof of negligence or wrongdoing).[6] CERCLA Section

---

[5] There is no legal requirement that a cleanup mandate under Section 106 target all PRPs at the Site. Again, claims for contribution under Section 113 are a PRP's primary remedy if the United States pursues less than all of the PRPs in an action to compel a cleanup under Section 106. *See Raytheon Aircraft Co. v. United States*, 501 F. Supp. 2d 1323 (D. Kan 2007); *see also United States v. Dickerson*, 640 F. Supp. 448, 450 (D. Md. 1986) ("The courts have consistently rejected attempts by CERCLA defendants to compel the government to round up every other available defendant.").

[6] Each responsible party is jointly and severally liable to the government unless the responsible party can bear the burden of proving that a reasonable basis for apportionment exists. *Burlington N. & Santa Fe Ry. Co. v. United States*, 129 S. Ct. 1870, 1881 (2009). Although the United States does not believe that the Defendants can make that showing, the current motion for partial judgment on the

6

107(b) allows an otherwise liable party to avoid liability for costs or damages under Section 107(a) only by showing that the release of hazardous substances was caused solely by: (1) an act of God; (2) an act of war; (3) an act or omission of an unrelated third party, if the defendant also demonstrates that it took due care as to the hazardous substance and took precautions against foreseeable acts or omissions of such unrelated third party and the consequences of such acts or omissions; or (4) any combination thereof. 42 U.S.C. § 9607(b). In light of the restrictive statutory language quoted above, "[e]very court of appeals that has considered the precise question of whether § 9607 permits equitable defenses has concluded that it does not, as the statutory defenses are exclusive." *CA Dept of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 672 (9th Cir. 2004). *Accord Muenster, Ind. v. Sherwin-Williams, Co.*, 27 F.3d 1268, 1273 (7th Cir. 1994) ("The plain language of § 107 explicitly limits the defenses to liability under CERCLA to those enumerated in the statute, none of which mention or even imply that equitable defenses are available."). Thus, courts routinely dismiss or strike equitable and fault-based affirmative defenses – such as claims of "unclean hands" – as legally insufficient defenses to a CERCLA enforcement action brought by the government.[7] That dictate for CERCLA cases follows the general rule that "the equitable doctrine of unclean hands may not be asserted against the United States when it acts in its sovereign capacity to protect the public welfare." *United States v. Vineland Chem. Co., Inc.*, 692 F. Supp. 415, 423 (D.N.J. 1988)

---

pleadings does not target Defendants' divisibility and apportionment arguments for the imposition of several liability, rather than joint and several liability.

[7]   *See, e.g., United States v. Saporito*, 684 F. Supp. 2d 1043, 1062 (N.D. Ill. 2010) (unclean hands defense unavailable under CERCLA); *United States v. Rohm & Haas Co.*, 939 F. Supp. 1142, 1152 (D.N.J. 1999) (same); *United States v. Martell*, 887 F. Supp. 1183, 1193 (N.D. Ind. 1995) (same); *Kramer*, 757 F. Supp. at 424-428 (same); *United States v. Western Processing Co., Inc.*, 734 F. Supp. 930, 939 (W.D. Wash. 1990) ("[I]n summary, the better reasoned decisions and the majority of cases have held that the limited defenses of Section 107(b) are exclusive and that equitable defenses such as unclean hands cannot be asserted because of the clear statutory language and because they would thwart the public interest").

7

(CERCLA case). *Accord United States v. Philip-Morris Inc.*, 300 F. Supp. 2d 61, 75 (D.D.C. 2004) (civil RICO case holding that when "the Government acts in the public interest the unclean hands doctrine is unavailable as a matter of law."). Federal PRP involvement, whether asserted in a straightforward fashion or portrayed as the basis for a traditional equitable defense, cannot establish a defense to liability under CERCLA.

A finding that federal PRP involvement prevents EPA from issuing a valid UAO would have drastic consequences for the entire CERCLA cleanup program. In essence, EPA would need to front the money to undertake a Superfund-financed cleanup and seek later reimbursement from the private PRPs whenever a federal PRP is implicated at a site. This would significantly slow down the cleanup of contaminated sites due to the limited funds available in the Superfund. Quite plainly, that is not what Congress intended.[8]

The Defendants in this case are not the first to argue that federal liability either invalidates a UAO or relieves a PRP of its own liability to comply with a UAO. In *Raytheon Aircraft Co. v. United States*, Raytheon received a UAO from EPA ordering the removal of contaminated soils at the Tri-County Public Airport Superfund Site, a site at which the United States Army was alleged to be a PRP. 501 F. Supp. 2d at 1326. Raytheon sought, among other things, to declare unconstitutional the United States' practice of issuing UAOs when the United States is a PRP. *Id.* at 1328. Raytheon argued that:

> [T]he United States' "dual role" in this case as both the enforcer of CERCLA and a potentially responsible party at the Site violates due process because the United States, by issuing a section 106 administrative order only to Raytheon, has ignored its own liability and has shifted that liability to Raytheon.

---

[8] *See Solid State Circuits, Inc. v. EPA*, 812 F.2d 383, 388 (8th Cir. 1987) ("Since Superfund money is limited, Congress clearly intended private parties to assume cleanup responsibility."); *United States v. Conservation Chemical Co.*, 628 F.Supp. 391, 403 (W.D. Mo. 1985) ("CERCLA contemplates that hazardous waste sites will be cleaned up in the most cost-effective manner; spending precious Superfund monies on a site when there are responsible parties ready and willing to spend private monies to accomplish the same result would hardly be an efficient use of government resources.").

8

*Id.* at 1328. The Defendants in this case make much the same argument when they assert that "EPA is not permitted to issue a unilateral order for remedial action with respect to this Site because EPA may not unilaterally determine the allocation of liability among responsible parties of which it is one." Dkt. 60 at 14; Dkt. 51 at 18, ¶ 156; Dkt. 57 at 15, ¶ 17; Dkt. 62 at 11. The *Raytheon* court correctly rejected such contentions:

> Nothing in the CERCLA framework relieves private party PRPs from liability when a federal agency is also a PRP . . . [m]oreover, under the CERCLA scheme, there is nothing "illegal" about directing Raytheon-undisputedly a PRP-to bear the costs of the cleanup and then permitting Raytheon to seek reimbursement for those costs for which it is not responsible costs [sic]. Finally, it is undisputed that the EPA is not required to issue a section 106 order to each and every PRP.

*Raytheon Aircraft Co.*, 501 F. Supp. 2d at 1335-36. The Court also noted that the United States did not "extinguish" its own liability by issuing the UAO because Raytheon would have the opportunity to pursue a contribution claim against the United States. *Id.* at 1336 n.11. Although Raytheon's challenge to the UAO was framed as a due process argument, the underlying premise of Raytheon's argument was the same as the affirmative defenses raised by Defendants in this case – federal liability precludes the United States from issuing a UAO to private parties. Similarly, this Court should find that the Defendants are not relieved from complying with the UAO simply because the United States is also an alleged PRP at the Site.

### 3. Defendants Can Seek Contribution from the United States or Their Liability Will Be Reduced By the Amount of Any Settlement of Federal Liability

Although federal liability is not a defense to compliance with a UAO under CERCLA, the United States acknowledges that its own potential liability is relevant for purposes of determining each PRP's equitable share of costs. As in *Raytheon*, the issuance of a UAO does not foreclose the Defendants' ability to seek contribution from the United States or any other

9

PRP, or their right to have their liability reduced by the amount of any settlement resolving the alleged federal liability, as provided by the statute. 42 U.S.C. § 9613(f)(1), (f)(2).

Recognizing that compliance with a UAO may result in costs to a PRP beyond its equitable share of response costs, Congress provided PRPs with a mechanism to seek contribution from others responsible for the harm. *See Metro. Water Reclamation Dist. v. N. Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824, 828 (7th Cir. 2007). Pursuant to subsection 113(f), a PRP sued under Section 106 or 107(a) may seek contribution from other responsible parties, including the United States, to the extent that the party has paid more than its equitable share. *See United States v. Atl. Research Corp.*, 551 U.S. 128, 138 (2007); *see also Western Processing*, 734 F. Supp. at 939-40 ("The fact that the United States is a former site operator of the Western Processing site does not bar a finding of liability against the defendants nor bar recovery in this action. At a future proceeding in the contribution and counterclaims action . . . , the United States may be found liable as a former site operator and responsible for some portion of response costs incurred at the site."). This Court has affirmed that a contribution action is the appropriate venue for determining the proportionate share of costs attributable to each PRP. *See Appleton Papers, Inc. v. George A. Whiting Paper Co.*, 572 F. Supp. 2d 1034, 1043-44 (E.D. Wis. 2008). ("[NCR and API] allege that they paid more than their proportionate share of such liability and thus are entitled to recover the excess they paid from those [PRPs] who have failed to pay their proportionate share. This is a claim for contribution specifically authorized under § 113(f).").

The UAO does not "unilaterally determine the allocation of liability among responsible parties," as asserted in many of the affirmative defenses targeted by this motion. *See* Dkt. 60 at 14; Dkt. 51 at 18, ¶ 156; Dkt. 57 at 15, ¶ 17; Dkt. 62 at 11. A UAO is an order to commence a response action. 42 U.S.C. § 9606(a). A UAO is not a dispositive determination of liability and

10

Case 1:10-cv-00910-WCG    Filed 05/30/12    Page 10 of 14    Document 431

it need not be issued to all PRPs at a site, as noted above. Thus, it is simply not possible that a UAO is also a binding allocation of liability, and thus costs. Because Section 106 orders are not and do not purport to be an allocation and because the Defendants are in no way deprived of the statutory right to seek contribution from the United States, the argument that the United States has allocated liability through the UAO is without merit. That will occur through resolution of the contribution claims.

## Conclusion

For the reasons discussed above, there is no legal basis supporting the Defendants' arguments that the United States' claims are barred, in whole or in part, by its own alleged PRP status. Granting this motion will narrow the issues to be tried and allow the parties to avoid unnecessary discovery into questions of federal liability which are not relevant to the Defendants' obligation to comply with the UAO. The United States respectfully requests that this Court grant judgment on the pleadings with respect to all defenses premised on alleged federal liability or unclean hands, including Menasha's Sixth Separate Defense, U.S. Paper's Seventh and Nineteenth Separate Defenses, CBC Coating's Seventh and Seventeenth Separate Defenses, Glatfelter's Fifth and Eighth Separate Defenses, WTM's Fifth and Separate Eighth Defenses, and NCR's Twenty-Sixth Separate Defense. Dkt. 48 at 20; Dkt. 51 at 15, 18; Dkt. 57 at 14, 15; Dkt. 60 at 14, 15; Dkt. 62 at 11, 12; Dkt. 82 at 44.

Brief in Support of Plaintiff United States' Motion for Partial Judgment on the Pleadings on Affirmative Defenses Based on Alleged Federal Liability Under CERCLA in *United States and the State of Wisconsin v. NCR Corp., et al.*, No 10-C-910 (E.D. Wis.)

Respectfully submitted,

For Plaintiff United States of America

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

Dated:  May 30, 2012  */s/ Sumona N. Majumdar*
SUMONA N. MAJUMDAR
RANDALL M. STONE
JEFFREY A. SPECTOR
KRISTIN M. FURRIE
SEAN CARMAN
MAYA S. ABELA
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Telephone:     202-514-3581
Facsimile:     202-616-6584
E-Mail:        Sumona.majumdar@usdoj.gov


GREGORY J. HAANSTAD
Attorney for the United States, Acting
Under Authority Conferred by 28 U.S.C. § 515

SUSAN M. KNEPEL
Assistant United States Attorney
Office of the United States Attorney
517 E. Wisconsin Avenue, Room 530
Milwaukee, WI  53202

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that, on this day, the foregoing Brief was filed electronically with the Clerk of the Court using the Court's Electronic Court Filing System, which sent notification of such filing to the following counsel:

**Mary Rose Alexander**
Latham & Watkins LLP
mary.rose.alexander@lw.com

**Thomas Armstrong**
von Briesen & Roper SC
tarmstro@vonbriesen.com

**Paul Bargren**
Foley & Lardner LLP
pbargren@foley.com

**Linda E. Benfield**
Foley & Lardner LLP
lbenfield@foley.com

**Dennis P. Birke**
DeWitt Ross & Stevens SC
db@dewittross.com

**Steven P. Bogart**
Reinhart Boerner Van Deuren SC
sbogart@reinhartlaw.com

**Michael P. Carlton**
von Briesen & Roper SC
mcarlton@vonbriesen.com

**Evan R. Chesler**
Cravath Swaine & Moore LLP
echesler@cravath.com

**Marc E. Davies**
Greenberg Traurig LLP
daviesm@gtlaw.com

**Brandon J. Evans**
Hermes Law Ltd.
bje@hermeslawltd.com

**S. Todd Farris**
Friebert Finerty & St. John SC
stf@ffsj.com

**Patrick J. Ferguson**
Latham & Watkins LLP
patrick.ferguson@lw.com

**Sandra C. Goldstein**
Cravath Swaine & Moore LLP
sgoldstein@cravath.com

**Thomas R. Gottshall**
Haynsworth Sinkler Boyd PA
lgantt@hsblawfirm.com

**Eric W. Ha**
Sidley Austin LLP
eha@sidley.com

**Scott W. Hansen**
Reinhart Boerner Van Deuren SC
shansen@reinhartlaw.com

**William H. Harbeck**
Quarles & Brady LLP
william.harbeck@quarles.com

**Michael L. Hermes**
Hermes Law Ltd.
mlh@hermeslawltd.com

**Cynthia R. Hirsch**
Wisconsin Department of Justice
hirschcr@doj.state.wi.us

**Caleb J. Holmes**
Greenberg Traurig LLP
holmesc@gtlaw.com

**Philip C. Hunsucker**
Hunsucker Goodstein & Nelson PC
phunsucker@hgnlaw.com

**Peter C. Karegeannes**
Quarles & Brady LLP
peter.karegeannes@quarles.com

**Gregory A. Krauss**
Gregory Krauss pllc
gkrauss@krausspllc.com

**Paul G. Kent**
Stafford Rosenbaum LLP
pkent@staffordlaw.com

**Ericka L. Krumrie**
Hermes Law Ltd
elk@hermeslawltd.com

**Linda R. Larson**
Marten Law PLLC
llarson@martenlaw.com

**Vanessa A. Lavely**
Cravath Swaine & Moore LLP
vlavely@cravath.com

**Susan E. Lovern**
von Briesen & Roper SC
slovern@vonbriesen.com

**Kevin J. Lyons**
Davis & Kuelthau SC
klyons@dkattorneys.com

**Karl S. Lytz**
Latham & Watkins LLP
karl.lytz@lw.com

**Meline G. MacCurdy**
Marten Law
mmaccurdy@martenlaw.com

**David G. Mandelbaum**
Greenberg Traurig LLP
mandelbaumd@gtlaw.com

**Bradley M. Marten**
Marten Law
bmarten@martenlaw.com

**Tara M. Mathison**
Davis & Kuelthau SC
tmathison@dkattorneys.com

**Darin P. McAtee**
Cravath Swaine & Moore LLP
dmcatee@cravath.com

**Stephen F. McKinney**
Haynsworth Sinkler Boyd PA
smckinney@hsblawfirm.com

**Heidi D. Melzer**
Hermes Law Ltd.
hdm@hermeslawltd.com

**Elizabeth K. Miles**
Davis & Kuelthau SC
emiles@dkattorneys.com

**Sabrina Mizrachi**
Greenberg Traurig LLP
mizrachis@gtlaw.com

**Monique M. Mooney**
Greenberg Traurig LLP
mooneym@gtlaw.com

**William J. Mulligan**
Davis & Kuelthau SC
wmulligan@dkattorneys.com

**Daniel C. Murray**
Johnson & Bell Ltd.
murrayd@jbltd.com

**Omid H. Nasab**
Cravath Swaine & Moore LLP
onasab@cravath.com

**Kelly J. Noyes**
von Briesen & Roper SC
knoyes@vonbriesen.com

**Nancy K. Peterson**
Quarles & Brady LLP
nancy.peterson@quarles.com

**Thomas M. Phillips**
Reinhart Boerner Van Deuren SC
tphillip@reinhartlaw.com

**Ian A.J. Pitz**
Michael Best & Friedrich LLP
iapitz@michaelbest.com

**David A. Rabbino**
Hunsucker Goodstein & Nelson PC
drabbino@hgnlaw.com

**Joan Radovich**
Sidley Austin LLP
jradovich@sidley.com

**Ronald R. Ragatz**
DeWitt Ross & Stevens SC
rrr@dewittross.com

**Alexandra Reeve Givens**
Cravath Swaine & Moore LLP
agivens@cravath.com

**Kathleen L. Roach**
Sidley Austin LLP
kroach@sidley.com

**Megan A. Senatori**
DeWitt Ross & Stevens SC
ms@dewittross.com

**Adam B. Silverman**
Greenberg Traurig LLP
silvermana@gtlaw.com

**Sarah A. Slack**
Foley & Lardner LLP
sslack@foley.com

**Margaret R. Sobota**
Sidley Austin LLP
msobota@sidley.com

**Anthony S. Wachewicz, III**
City of Green Bay
tonywa@ci.green-bay.wi.us

**James P. Walsh**
Appleton City Attorney
jim.walsh@appleton.org

**Ted A. Warpinski**
Friebert Finerty & St John SC
taw@ffsj.com

**Ted Waskowski**
Stafford Rosenbaum LLP
twaskowski@staffordlaw.com

**Evan B. Westerfield**
Sidley Austin LLP
evanwesterfield@sidley.com

**Richard C. Yde**
Stafford Rosenbaum LLP
ryde@staffordlaw.com

Dated:  May 30, 2012                                   */s/ Sumona N. Majumdar*