IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN, <br><br> Plaintiffs, <br><br> v. <br><br> NCR CORPORATION, *et al.*, <br><br> Defendants. | No. 10-CV-910-WCG |

**MEMORANDUM OF DEFENDANT APPLETON PAPERS INC.
IN OPPOSITION TO MOTIONS TO DISMISS CROSS CLAIMS**

Defendant Appleton Papers Inc. ("API"), by its undersigned counsel, respectfully submits this Memorandum in opposition to motions to dismiss its cross claims filed by P.H. Glatfelter Company and other Certain Defendants. Dkts. 411 & 418.

## INTRODUCTION

API was named in a Unilateral Administrative Order ("106 Order") and incurred over $165 million in response costs complying with that Order before this Court ruled on April 10, 2012 that it is not liable under CERCLA. Dkt. 349 ("No Liability Decision"). The issue presented by the motions to dismiss filed by P.H. Glatfelter and Certain Defendants is what claim (or claims) API may properly plead to seek relief from parties who are liable under CERCLA.

The issue before the Court is one of first impression. API is not aware of any other case where a party was issued a 106 Order and sued by the Government, but those claims were subsequently dismissed on the merits and the non-liable party sought relief from parties liable under CERCLA for the response costs the non-liable party spent

before the claims were dismissed. This situation does not fall cleanly within existing precedent.

In *United States v. Atlantic Research Corp.,* 551 U.S. 128 (2007), the United States Supreme Court acknowledged that there is overlap between CERCLA §§ 107 and 113, but generally held that a party that has been sued by the Government has a claim in contribution under § 113, while a party that has not been sued has a claim for cost recovery under § 107. The Supreme Court did not consider the appropriate claim where, like here, a party has been sued by the Government but the Court found that there was no basis for that suit and the Government's claims were dismissed. Consequently, we are in uncharted waters. Since one cannot know with certainty how the United States Court of Appeals for the Seventh Circuit (or the Supreme Court) would rule on this issue, the proper course at this pleading stage is to allow API to pursue claims both under CERCLA § 107 and, in the alternative, under § 113.

API is mindful that this Court has previously dismissed § 107 claims asserted by API in this action against Georgia-Pacific ("GP") and against the United States and the State of Wisconsin ("Government"). API is respectful of the time the Court spent in making those rulings. However, Glatfelter and Certain Defendants have now brought this issue to the forefront again, when the case is in a different posture as a result of the No Liability Decision. It is thus appropriate for the Court to consider the pending motions to dismiss in light of the current circumstances, which are not definitively addressed by existing precedent.

**STATEMENT OF FACTS**

API incorporates by reference the detailed Statement of Facts set forth in its brief in opposition to the motion to dismiss addressed in the July Decision. Dkt. 96 at 4-11. The following facts are most germane to the pending motions:

In November 2007, the United States issued a 106 Order to API and seven other parties. Dkt. 1 at ¶ 1. In January 2008, API and NCR commenced a contribution action (the *Whiting* action), asserting claims under both §§ 107 and 113, to recover the sums that they were expending due to the 106 Order. *Whiting*, Dkt. 1. In October 2010, the Government commenced this action in which they have asserted claims under CERCLA §§ 106 and 107. Dkt. 1. Pursuant to a stipulation agreed to by all defendants except GP, the Court entered an order deferring the deadline for filing of cross claims. Dkts. 70 & 72.

In its initial responsive pleading, API asserted counterclaims against the United States and the State of Wisconsin, alleging that each was liable to API under CERCLA § 107(a), or, in the alternative, § 113, for response costs API had incurred. Dkt. 65 at 40-52. API asserted similar alternative cross claims against GP. *Id*. at 53-58. In its responsive pleadings, NCR asserted § 107 claims against the United States and GP. Dkt. 82.

GP moved to dismiss NCR and API's § 107(a) cross claims. Dkts. 83 & 84. NCR and API filed separate briefs in opposition. NCR asserted that if the Court ultimately determined that the liability was divisible (as NCR alleged), its remedy under CERCLA would be cost recovery under § 107(a), and not contribution under § 113(f). Dkt. 97 at 8-11 of 22. In its opposition brief, API asserted the same argument (Dkt. 96 at

21-22), but also asserted that it would be entitled to sue under § 107(a) if the Court ultimately ruled that API was not liable under CERCLA, as it had alleged:

> API has alleged in its crossclaim against GP (as well as in its answer and affirmative defenses against the Government's claims) that API has no liability under CERCLA for PCB contamination in the LFR. For purposes of GP's motion to dismiss, the Court must accept these allegations as true. *Versatile Plastics*, *Inc.*, 247 F. Supp. 2d at 1103. If the Government is unable to prove at trial that API is liable under CERCLA, API will not share common liability with parties such as GP who are liable under CERCLA. Without common liability, API cannot assert an action under § 113(f). *Atlantic Research*, 551 U.S. at 139 ("[A] PRP's right to contribution under § 113(f)(1) is contingent upon an inequitable distribution of common liability **among liable parties**.") (emphasis added).
>
> In such a scenario, this Court has ruled that a party in API's situation "must" be allowed recovery under § 107(a):
>
>> . . . [P]arties who do not have access to § 113(a) [sic] . . . because they are completely innocent and do not share common liability with any PRPs . . . must be allowed to recover under § 107(a) if injustice is to be avoided.
>
> *Appleton Papers Inc.*, 572 F. Supp. 2d at 1043.

Dkt. 96 at 19 (footnote omitted).

In its decision rendered on July 5, 2011 ("July Decision"), the Court granted GP's motion to dismiss, ruling that "§ 107 does not provide recourse" here because "§ 113 has already been employed by AP and NCR in their contribution action." Dkt. 171 at 2-3. The Court further stated:

> AP goes so far as to suggest that it is a "completely innocent" party that does not share liability with any other PRPs. (Dkt. # 96 at 2.) I have addressed and rejected this argument at length elsewhere, concluding that a judgment of joint and several liability is not a precursor to a § 113 claim.

*Id*. at 3.

On May 12, 2011, API filed cross claims against all of the remaining defendants. Dkt. 163. These cross claims are identical to the cross claims that API earlier asserted against GP (*i.e.*, they assert claims under § 107(a) or, in the alternative, § 113(f)). *Id*. at 10-13. The parties stipulated that the responses to API's cross-claims would not be due

until 30 days after the Court ruled on API's pending motions relating to its liability under CERCLA. Dkt. 166 & 296.

On April 10, 2012, this Court held that API was not liable under CERCLA. Dkt. 349.

On May 8, 2012, Glatfelter and Certain Defendants filed separate motions to dismiss API's cross-claims. Dkt. 411 & 417.

## ARGUMENT

### I. API'S CROSS CLAIMS UNDER SECTION 107 SHOULD NOT BE DISMISSED.

#### A. The No Liability Decision May Have Undermined API's Ability To Obtain CERCLA Relief Under § 113(f).

The Government wrongfully named API as a respondent in the 106 Order and then later wrongfully sued API to enforce the 106 Order. API incurred more than $165 million to comply with that Order before it was found to have no CERCLA liability. API now seeks to recover the response costs it incurred from parties who are liable under CERCLA to the extent permitted by CERCLA.

The issue before this Court is one of first impression. API is aware of no other case where a party was named in a UAO and sued by the Government, was subsequently found to have no liability, and sought to recover the costs expended from liable parties. Unfortunately, the guidance from the Supreme Court does not answer the precise question. The interplay between §§ 107 and 113 can be difficult to navigate, as other courts have aptly recognized:

> Despite this clarification [from Atlantic Research], navigating the interplay between sec. 107(a) and 113(f) remains a deeply difficult task. *See New York v. Solvent Chem. Co., Inc.*, No. 83-CV-1401-JTC, 685 F.Supp.2d 357, 425, 2010 WL 376328, at *67 (W.D.N.Y. Jan. 26, 2010) ("[R]ecent rulings have done little to provide the lower courts with useful guidance in determining which subsection of CERCLA provides a cause of action for parties seeking reimbursement of response costs in differing situations."); *see also id.* at 422, 2010 WL 376328 at *64 ("Perhaps most perplexing is the interplay between the two cost recovery provisions which this court must apply in resolving the difficult factual and legal issues."). The sometimes blurry relationship between sec. 107(a) cost recovery claims and sec. 113(f) contribution claims is a there to which we will return repeatedly in this opinion.

*Agere Systems, Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 218 (3rd Cir. 2010), *cert. denied*, 131 S. Ct. 646 (U.S. Nov. 29, 2010). Doing so here, where the facts are so unique, adds an additional layer of complexity.

In its July Decision, issued before the No Liability Decision, the Court appears to have concluded that API had no right of action under § 107 because it had "already . . . employed" § 113 in the *Whiting* action. Dkt. 171 at 2. Similarly, in an earlier ruling in *Whiting*, the Court reasoned:

> Plaintiffs were subject to a § 106 administrative order. That order triggered their right under § 113 to bring a contribution action and seek payment from other PRPs for any costs they incurred that they allege were more than their fair share.

Dkt. 751 (*Whiting*) at 6. The Court further stated: "The relevant 'procedural circumstances' are whether the party's incurred costs resulted from a government action under § 106 or 107. If they did, the party must use § 113." *Id*. at 8. In another earlier decision, the Court ruled that § 113 was the appropriate avenue for API to pursue:

> Whatever payments [it] made in excess of [its] proportionate share. This would include not only payments made pursuant to the consent decree filed in the civil action instituted against [API and NCR] on August 21, 2001, but also any other payments they made to discharge their common liability under §107(a) before or after time. Thus, they have no need to resort to § 107(a). Whatever amounts they are entitled to recover must be recovered under § 113(f).

Dkt. 227 (*Whiting*) at 14.

API respects the Court's rulings and it will continue to pursue relief under its § 113(f) claim in *Whiting* if the Court decides that is the appropriate avenue. In view of the No Liability Decision, however, the logic underlying the Court's prior § 107 rulings is now strained. In the July Decision, the Court held that API has "incurred costs [that] resulted from a government action under §§ 106 or 107," (Dkt. 171 at 2) because it apparently concluded that issuance of a § 106 Order is a "civil action" under § 113(f)(1). However, the Court has now ruled that API was never liable under CERCLA. Therefore, API never shared common liability under CERCLA with other parties named in the 106 Order or in this enforcement action and should never have been issued the 106 Order.

Common liability under CERCLA is a prerequisite to relief under § 113(f). *Atlantic Research Corp.*, 551 U.S. at 139 ("[The] right to contribution under § 113(f)(1) is contingent upon … common liability among liable parties."). Typically when a party has been sued, it can pursue a contribution claim under § 113 even though its liability has not been determined. This is analogous to the procedure in a multi-defendant tort case. The mere allegation of liability is sufficient to allow a cross claim for contribution even before liability has been determined. However, once a defendant has been determined to have no liability, he/she then has a claim for indemnity against the co-defendant for any costs paid to the injured plaintiff. Similarly, in this case, once API was determined to have no liability, it should be able to pursue cost recovery under § 107.

### B. API Must Be Allowed To Sue Under § 107(a) If It Cannot Obtain Relief Under § 113(f).

If API cannot obtain relief under § 113(f), then it must be able to sue under § 107(a).[1] This Court has so ruled. *Appleton Papers Inc. v. George A. Whiting Paper Co.*, 572 F. Supp. 2d 1034, 1043 (E.D. Wis. 2008) ("[P]arties who do not have access to § 113(a) [sic] . . . because they are completely innocent and do not share common liability with any PRPs . . . must be allowed to recover under § 107(a) if injustice is to be avoided.").

The Third Circuit likewise has held that parties who incur response costs, but who cannot sue under § 113(f), must be permitted to assert a claim under § 107(a). *Agere Systems*, 602 F.3d 204. In *Agere Systems*, there were two consent decrees. The first consent decree was signed by three parties (Cytec, Ford, SPS) and the second was signed by the same three parties plus TI. The signatories to the first consent decree (Cytec, Ford, SPS) later entered into a cost sharing agreement with TI and Agere. *Id.* at 212. The signatories to the second decree (Cytec, Ford, SPS and TI) also entered into a separate cost sharing agreement with Agere. *Id.* at 212-13.

All five of these parties (Cytec, Ford, SPS, TI and Agere) then sued numerous other parties. *Id.* at 213-14. Agere and TI sued under § 107(a) for the costs they incurred under the cost-sharing agreements, while the consent decree signatories (including TI on the second decree), sued under § 113(f). The question presented was whether TI (for the first decree, which it did not sign) and Agere (for both decrees) could sue under § 107(a) where they were signatories to a private cost sharing agreement with respect to the first

---

[1] Certain Defendants suggest that API's proper claim is one in subrogation. Dkt. 412 at 9. Accordingly, it may also be appropriate for API to assert an equitable subrogation claim in *Whiting*.

decree in the case of TI, and both decrees in the case of *Agere*. *Id.* at 224. The Third Circuit held that they could.

The court of appeals first rejected the argument that permitting the § 107(a) claim was contrary to the holding in *Atlantic Research*, stating:

> [W]hile the Court [in *Atlantic Research*] indicated that parties seeking reimbursement for settlement payments do not have a § 107(a) claim, a basic premise of that holding was that those parties do have a § 113(f) contribution claim for their settlement amounts. We do not believe the Court intended its holding to reach a circumstance like this, where Agere and TI do not have § 113(f) contribution claims for the settlement sums because those parties were never themselves sued for those amounts by the EPA or by other PRPs.

*Id.* at 225.

The court further held that allowing a § 107(a) claim where § 113(f) was unavailable is consistent with CERCLA's goal of encouraging cleanups:

> If we were to hold that Agere and TI cannot pursue § 107(a) claims for their settlement payments, they would be completely barred from recovering those payments under CERCLA. To accept that outcome, one must imagine that Congress intended to penalize cooperative cleanup efforts by excluding from CERCLA's broad recovery provisions all PRPs who, like Agere and TI, agree to come forward and assist in a cleanup even though they have not been subjected to a cost recovery suit. Such an intent is extremely unlikely, since the goal of CERCLA is "to encourage private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others." *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 n.13 (1994). . . .
>
> . . . To encourage participation in environmental cleanup, the statute should be read in a way that assures PRPs like Agere and TI that they can later bring a § 107(a) cost recovery claim for the amounts they pay to help with the cleanup, even if those costs are related to a settlement obligation.

*Id.* at 225-26.

*Agere Systems* is instructive for two reasons. *First*, it affirms the principle this Court enunciated in its 2008 decision (Dkt. 227) that a party who has incurred response costs, but cannot sue under § 113(f), must be permitted to sue under § 107(a). Other courts also have recognized this principle. *See Solutia, Inc. v. McWane, Inc.*, 726 F. Supp. 2d 1316, 1341 (N.D. Ala. 2010) ("[C]osts may be recovered under § 107(a)

notwithstanding that they may have been 'compelled' under an administrative order or settlement with the government where that order or settlement does not give rise to contribution rights under § 113(f)(3)(B)"), *aff'd*, 672 F.3d 1230 (11th Cir. 2012); *Morrison Enterprises, LLC v. Dravo Corp.*, No. 08-CV-3142, 2009 WL 4330224 (D. Neb. Nov. 24, 2009) ("[A] PRP can bring a claim under § 107(a) if it is foreclosed from bringing a claim under § 113(f)."), *aff'd*, 638 F.3d 594 (8th Cir. 2011), *cert. denied*, 132 S. Ct. 244 (U.S. Oct. 3, 2011); *W.R. Grace & Co. – Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 92-93 (2nd Cir. 2009); *Ford Motor Co. v. Mich. Consol. Gas Co.*, No. 08-CV-13503, 2009 WL 3190418, *6-9 (E.D. Mich. Sept. 29, 2009).[2]

Second, *Agere Systems* holds that a party that directly incurs response costs pursuant to private contractual obligations can still sue other PRPs under § 107(a). *Agere Systems* squarely rejects the argument advanced by Certain Defendants — for which they cite no authority — that API cannot recover response costs that fall within the scope of its cost sharing agreement with NCR. Dkt. 412 at 6 ("API has no incremental CERCLA payments to recover because it paid only what its indemnity obligation required it to pay.") The court in *Agere Systems* allowed Agere (with respect to both consent decrees) and TI (with respect to the first consent decree) "to recoup [under § 107(a)] costs that each paid pursuant to private settlement agreements." 602 F.3d at 225. The court of appeals reasoned that allowing such a recovery is consistent with CERCLA's goals because it "assures PRPs like Agere and TI that they can later bring a § 107(a) cost

---

[2] In *Solutia, Inc.* and *Morrison Enterprises, LLC*, the courts ultimately concluded that the claimants had a remedy under § 113(f) because they had been parties to CERCLA enforcement actions in which their liability was unquestioned. In *W.R. Grace & Co.* and *Ford Motor Co.*, the parties asserting CERCLA § 107(a) claims had incurred costs in response to state administrative cleanup orders, but the courts found that the orders did not give rise to contribution claims under § 113(f). In both cases, the courts held that the response costs were recoverable under § 107(a).

recovery claim for the amounts they pay to help with the cleanup, even if those costs are related to a settlement obligation." 602 F.3d at 226.

Accordingly, because API may no longer be able to obtain relief under its § 113(f) claim in *Whiting* even if the Court's decision of December 16, 2009 is reversed on appeal, API should be permitted to pursue the § 107(a) cross claims asserted in this action. API is not seeking a double-recovery. It simply wants legal recourse under § 107(a) in the event of a future decision holding that the No Liability Decision left API without a remedy under § 113(f).

## II. CERTAIN DEFENDANTS' OTHER GROUNDS FOR SEEKING DISMISSAL SHOULD BE REJECTED.

Certain Defendants' other grounds for seeking dismissal of API's § 107(a) claims warrant only brief comment.

The assertion that "contractual indemnitors like API lack standing to recover their payments under sections 107 or 113(f) of CERCLA" (Dkt. 412 at 8) is without merit. API is seeking to recover costs that it directly incurred to satisfy obligations arising under a 106 Order in which it had been erroneously named as a respondent. *Agere Systems* demonstrates that a party has standing to sue under § 107(a) for costs it paid under a contractual cost sharing arrangement where such amounts directly funded a cleanup:

> Agere and TI put their money in the pot right along with the money from the signers of the consent decrees. The costs they paid for were incurred at the same time as the costs incurred by the signers of the consent decrees and for the same work. Those costs were incurred in the ordinary sense that a bill one obligates oneself to pay comes due as a job gets done.

602 F.3d at 225. API did precisely the same thing.

The decisions cited by Certain Defendants are distinguishable. In both cases, insurers were suing under CERCLA to recover amounts they paid to their insureds to reimburse response costs previously incurred. Unlike API, the insurers had not been issued a 106 Order. Further, unlike API and the parties in *Agere Systems*, the insurers themselves had not incurred any response costs. *Cal. Dep't of Toxic Substances Control v. City of Chico,* 297 F. Supp. 2d 1227, 1232 (E.D. Cal. 2004) ("Century has not incurred any response costs; rather, it has indemnified Noret for Noret's response costs. Its involvement with the Central Plume Site is exclusively in its capacity as Noret's insurer."); *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.,* 788 F. Supp. 2d 1017, 1020 (N.D. Cal. 2011) ("In July 2008, after the remediation was completed, Taube-Koret made a claim [against its insurer, Chubb] for the reimbursement of all of its response costs.").

For similar reasons, there is no merit to the contention that API, as NCR's indemnitor, stands in NCR's shoes and since the Court has ruled that NCR cannot recover under § 107(a) or § 113(f), neither can API. Dkt. 412 at 9. With respect to response costs API incurred to satisfy the 106 Order prior to the No Liability Decision, API is not standing in NCR's shoes. Because it paid those costs directly, it has standing to sue under § 107(a) on its own behalf, as *Agere Systems* holds.

Finally, there is no merit to the contention that "API has failed to allege that it made any payments for which it was not reimbursed by its own indemnitors and insurers." Dkt. 412 at 6. If, as Certain Defendants appear to contend, a party seeking recovery under CERCLA must expressly allege in its pleading that its costs exceed its insurance and other recoveries, then the Court should summarily dismiss Certain Defendants' pending CERCLA counterclaims in *Whiting* because none of their pleadings

contain the allegations that Certain Defendants now claim are essential to survive a motion to dismiss. Of course, there is no such pleading requirement. Certain Defendants tacitly base their argument on the application of *Friedland v. TIC-The Indus. Co.*, 566 F.3d 1203 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1080 (U.S. Jan. 11, 2010). The application of *Friedland*, if any, to API's § 107(a) claim is an issue to be decided before a final judgment is entered — not at the pleadings stage.

### III. API'S CROSS CLAIMS SHOULD NOT BE DISMISSED ON THE BASIS OF THE "PRIOR PENDING ACTION" DOCTRINE.

Glatfelter's contention that API's cross claims should be dismissed because identical claims are pending in *Whiting* should be rejected. Dkt. 418 at 4-5. The "prior pending action" doctrine comes into play only when identical claims are pending in another action and will be decided there. *See* 5C Wright & Miller, *Federal Practice & Procedure* § 1360 at 89 (3rd ed. 2004) ("[S]ome federal courts also have allowed motions to dismiss because of the pendency of a prior action, provided that an identity of issues exists and the controlling issues in the dismissed action will be determined in the other lawsuit.") (footnotes omitted).

Here, API has asserted § 107(a) cross-claims against the moving Defendants which are viable in light of the No Liability Decision. There are no § 107 claims pending in the *Whiting* action. The § 107 claims that were asserted in *Whiting* were dismissed long before the No Liability Decision. Accordingly, the controlling issue with respect to API's § 107 claims was not decided and will not be decided in *Whiting*. Under these circumstances, the "prior pending action" doctrine has no application.

## CONCLUSION

For the foregoing reasons, Defendant Appleton Papers Inc. respectfully requests that the Court deny the motions to dismiss its cross claims filed by P.H. Glatfelter Company and other Certain Defendants.

Dated this 1st day of June, 2012.

>Respectfully submitted,
>
>APPLETON PAPERS INC.
>
>
>By: /s/ Ronald R. Ragatz
>       One of Its Attorneys

Counsel for Appleton Papers Inc.:

| | |
|---|---|
| Michael L. Hermes (#1019623) | Ronald R. Ragatz (#1017501) |
| Heidi D. Melzer (#1076125) | Dennis P. Birke (#1018345) |
| Hermes Law, Ltd. | Megan A. Senatori (#1037314) |
| 333 Main Street, Suite 601 | DeWitt Ross & Stevens S.C. |
| Green Bay, WI 54301 | Two East Mifflin Street |
| (920) 436-9870 | Madison, WI 53703 |
| Fax: (920)436-9871 | (608) 255-8891 |
| | Fax: (608) 252-9243 |
| | |
| | Gregory A. Krauss |
| | Gregory A. Krauss PLLC |
| | 1629 K St. NW |
| | Suite 300 |
| | Washington, DC 20006 |
| | (202) 355-6430 |