UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

UNITED STATES OF AMERICA
AND THE STATE OF WISCONSIN,

                Plaintiffs,

     v.

NCR CORPORATION, et al.,

                Defendants.

Case No. 10-C-910

## CERTAIN DEFENDANTS[1] REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS API'S CROSSCLAIMS[2]

## INTRODUCTION

API has paid 60% of NCR's CERCLA obligations and now seeks reimbursement from parties that have no obligation for any of those payments. When API moved for summary judgment in this civil action, it told this Court:

> "The sole obligation of API regarding the Fox River Contamination is as a partial indemnitor (jointly and severally with BAT) to NCR pursuant to the 1998 Settlement Agreement, which does not impose CERCLA liability on API or make API liable to the Government at all." Dkt 197 at p. 16-17.

In the accompanying footnote, API also stated:

> "A ruling by this Court that API did not assume NCR's CERCLA liabilities will not affect API's indemnification obligations to NCR. Those obligations arise under the 1998 Settlement Agreement . . . ." *Id.* at n. 6.

---

[1] "Certain Defendants" are U.S. Paper Mills Corp., WTM I Company, CBC Coating, Inc., Menasha Corporation, City of Appleton and Neenah-Menasha Sewerage Commission.

[2] Certain Defendants also join in the reply brief filed by Glatfelter and incorporate it by reference.

As NCR's indemnitor, API stands in NCR's shoes and cannot recover from parties that have no obligation to NCR.  API mistakenly invokes CERCLA to circumvent this common law principle, calling it necessary to avoid injustice.  To the contrary, it would be unjust – and would give API an enormous windfall – if API could use CERCLA to shift its own indemnity obligations to innocent parties who were among the casualties of NCR's culpable behavior.

If API did have a claim, it would be under CERCLA Section 113, not Section 107.  Although API asserts *it incurred over $165 million in response costs complying with the 106 Order* before this Court ruled on April 10, 2012 that it is not liable under CERCLA**,** API's cross-claims in this civil action were brought in response to claims for relief of the Governments under both CERCLA Section 107 *and* CERCLA Section 106 (Dkt. 1).  Given that procedural posture, under *Atlantic Research*,[3] if API has any claim it is limited to a claim under CERCLA Section 113(f).  Because Section 113 claims were available to API as a potentially responsible party ("PRP") at the Fox River Site and it exercised those claims in *Whiting*, API has no right to bring a Section 107 claim in this action.

## ARGUMENT

### I. API, AS NCR'S INDEMNITOR, HAS NO CERCLA CLAIMS.

API's crossclaims should be dismissed because it has no recoverable CERCLA costs or damages under *either* CERCLA Section 107 or CERCLA Section 113(f).  API is out of pocket nothing beyond what it contractually obligated itself to pay, and that obligation was reduced to a final, binding judgment nine months before the government even issued its Section 106 Order.  The federal judgment confirmed an arbitration panel's 2005 decision that API owes 60% of NCR's environmental obligations arising from PCB contamination of the Lower Fox River under

---

[3] *United States v. Atlantic Research Corp.,* 551 U.S. 128 (2007).

its 1998 Settlement Agreement with NCR. Dkt. 197 at 7; Dkt. 144-3. Because this Court has already determined that NCR must bear 100% of the remedial costs and natural resources damages at the site and has no right to reimbursement from Certain Defendants (Whiting, Dkt. 795), API owes 60% of whatever that sum turns out to be. API has no incremental CERCLA payments to recover because it paid only what its indemnity obligation required it to pay. API cannot shift that contractual obligation to Certain Defendants.[4]

API quotes this Court's summary of the state of the law to argue that it must allow API to recover under § 107(a) "if injustice is to be avoided." (Dkt. 432 at p. 8.) API is wrong. It would be unjust to let API use CERCLA to shift its own contractual indemnity obligations to Certain Defendants. API offered no authority that allowed an indemnitor like API, whose indemnitee had no right to contribution under CERCLA, to assert a claim under either Section 107 or 113(f) of CERCLA.

API mistakenly relies on *Agere Systems, Inc. v. Advanced Environmental Technology Corporation*, 602 F.3d 204 (3rd Cir. 2010). Agere was a PRP that the government did not sue or issue a clean-up order but recognized its own CERCLA liability and settled with other PRPs that had signed CERCLA consent decrees after the government sued them. Based on its private settlement agreement, Agere contributed its agreed share into the pot used to pay for the remediation. Because the government had neither sued it nor ordered it to clean up, Agere had no contribution claim under Section 113(f) of CERCLA, so it invoked Section 107 to recover

---

[4] API also incurred no CERCLA costs for the additional reason that it has been reimbursed for everything it paid. API misses the point when it argues that it is not required to plead how much of its alleged incurred costs have not been reimbursed by its insurers and indemnitors. Public records submitted with this motion, which the Court can consider in a motion to dismiss, show API has been reimbursed in excess of its actual payments. API makes no effort in its opposition brief to deny it. To be consistent with this Court's ruling in *Whiting*, API cannot recover costs for which it has already been reimbursed. *See* Certain Defendants' Memorandum in Support of this motion, Dkt. 412, p. 7, as clarified by footnote 5.

from the overwhelmingly culpable PRP - Carpenter. Carpenter argued that Agere had no Section 107 claim because it did not pay the remediation bills directly but rather reimbursed the PRPs who entered into the consent decree. The Court had no trouble holding that Agere could use Section 107 to recover from the far more culpable Carpenter because Agere had paid into the same pot as the other PRPs and its money was used in the same manner to pay the bills. To hold otherwise would have been unjust, and recognizing Agere's claim avoided that injustice.

*Agere Systems* is distinguishable in at least three key ways. First, Agere had no Section 113(f) claim because the government had not compelled it to act through a Section 106 order or filed a civil action under Sections 106 and 107. The U.S. Government invoked both of those sections against API. Second, Agere was paying to settle its **own** CERCLA liability. In contrast, API maintains that its sole liability at the Fox River site has been to pay 60% of **NCR's** CERCLA liability. API cited no case in which the indemnitor of a 100% liable PRP was allowed to sue under Section 107 of CERCLA. Third, the court found it necessary to let *Agere* sue under Section 107 to avoid injustice. Otherwise, the overwhelmingly culpable PRP, Carpenter, might have gained an undeserved windfall. As NCR's indemnitor, API paid 60% of NCR's CERCLA liabilities and seeks to shift that contractual obligation to the comparatively innocent PRPs even though, as indemnitor, API has no contribution or indemnification claim against them because it stands in the shoes of a vastly more culpable PRP. Allowing API to use Section 107 in that manner would create injustice, not avoid it.

API argues that it paid because of the Section 106 Order, not because of its indemnity obligation and the federal judgment that required those payments. API is not being candid, and its argument is a red herring. API did not receive the Section 106 Order until November of 2007. By that time, API already knew that its settlement with NCR required it to pay 60% of NCR's

4

CERCLA obligations, and it already had begun paying them. By the time it received the Section 106 Order, API had already:

- Paid response costs and natural resource damages ("NRDs") through its agreement with the State of Wisconsin in January 1997 (Compl., Dkt. 1 at ¶¶ 14-15).

- Paid response costs and NRDs under its 2001 consent decree with NCR and the government.

- Extended its obligations under the 2001 Consent Decree through a December 2005 consent decree (Dkt. 1 at ¶ 16).

- Contributed funds for remedial work under the March 2004 consent decree among Georgia-Pacific, NCR and the government (Dkt. 1 at ¶ 19).

- Contributed funds for remedial work under the 2006 Phase I consent decree signed only by NCR and U.S. Paper (Dkt. 1, ¶ 20).

All of that work was done and all of those payments were made prior to the November 2007 Section 106 Order that API now claims compelled it to incur those costs. In the end, the argument is a red herring because API was obligated to pay 60% of NCR's CERCLA liability in any event, and it never has claimed to have paid a penny more. It cannot recover any of those payments because it stands in NCR's shoes and NCR cannot recover any of it due to its overwhelming culpability.

As NCR's contractual indemnitor, API lacks standing to recover its payments under either Sections 107 or 113 of CERCLA. *See Calif. Dept. of Toxic Substances Control v. City of Chico*, 297 F. Supp. 2d 1227, 1233 (E.D. Cal. 2004); *Chubb Customer Ins. Co. v. Space Sys./Loral, Inc.*, 788 F. Supp. 2d 1017, 1023-23 (W.D. Cal. 2011). In *City of Chico* the Court dismissed an

insurer's CERCLA Section 107 and 113 claims because it was not a PRP and "[the insurer] did not incur any response costs; rather it has indemnified [a PRP] for [its] response costs. Its involvement with the . . . Site is exclusively in its capacity as [the PRP's] insurer." *Id*. at 1232. Because API's sole obligation regarding the Fox River contamination was in its capacity as NCR's indemnitor, API is not a "person" who incurred response costs under CERCLA Section 107. So, like any other insurer or indemnitor, API has no CERCLA claims.

API's argument that it does not stand in NCR's shoes as its indemnitor is disingenuous. API took great pains to align itself as NCR's indemnitor when it sought to avoid CERCLA Section 107 liability. API asserted in its brief in support of its motion for summary judgment that the "**sole obligation** of API regarding the Fox River contamination is as a **partial indemnitor** (jointly and severally with BAT) to NCR pursuant to the 1998 Settlement Agreement." (Dkt. 197 at pp. 16-17, emphasis added.) *See also* Dkt. 138-1 at p. 9 ("API's obligations to NCR under the 1998 Settlement Agreement are, therefore, analogous to those of an indemnitor. As a matter of law, an agreement to indemnify does not render the indemnitor a liable party under CERCLA in its own right.") API also pointed to Judge Zuidmulder's decision in *Columbia Casualty v. Appleton Papers, Inc.*, Brown County Case No. 05-CV-36, to say that it had already been judicially determined that the 1998 Settlement Agreement and 2005 arbitration decision were not an assumption of liability, but rather a cost-sharing arrangement between NCR and API, in the event that **either of them** was, eventually, determined to be liable parties under CERCLA" (Dkt. 143 at p. 21, emphasis added). API repeatedly assured this Court that any ruling by the Court that API did not assume NCR's liability would not affect its **indemnification obligations** to NCR since those obligations arose under the 1998 Settlement Agreement (Dkt. 124-1 at pp. 16-18; Dkt. 197, p. 16 n.6). Having represented itself to this Court as NCR's

indemnitor to avoid Section 107 liability, API cannot now say otherwise. *See, New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (A party that succeeds in maintaining a certain position in a legal proceeding may not, simply because its interests have changed, assume a contrary position in the same case or in a separate lawsuit, particularly where it would prejudice the other party involved. This rule of judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") So, API must be held to its prior position--its "sole obligation" regarding the Fox River contamination is and always has been as NCR's indemnitor.

An indemnitor stands in the shoes and therefore has no greater rights than its indemnitee. *Fidelity & Casualty Co. v. Federal Express Inc.,* 136 F.2d 35, 38 (6th Cir. 1943); *Advanced Ground Systems Engineering Inc. v. RTW Industr. Inc.,* 388 F.3d 1036, 1042 (7th Cir. 2004). Because NCR has been determined to be 100% liable and has no right of recovery against Certain Defendants, *see Whiting* Dkt. 795, API has no right of recovery against Certain Defendants either. It is not true, as API argues, that it has no recourse if it cannot pass its obligations onto Certain Defendants. Like Certain Defendants, API's recourse is against the party that was found 100% responsible for the ensuing PCB pollution--NCR. But API settled its claims against NCR years ago, and, as NCR's indemnitor, it has no claims against Certain Defendants. It would be inequitable to allow API to recover from Certain Defendants in these circumstances. The Court should grant Certain Defendants' motion and dismiss API's crossclaims against them.

7
Case 1:10-cv-00910-WCG   Filed 06/15/12   Page 7 of 10   Document 435

## II. EVEN IF API HAD A CERCLA CLAIM, IT WOULD BE LIMITED TO A SECTION 113(f) CLAIM AND ITS SECTION 107 CLAIM MUST BE DISMISSED.

Even if API could invoke CERCLA in an effort to circumvent its obstacles as NCR's indemnitor, its recourse should be solely under Section 113(f), which directs the Court to allocate shares equitably. This result is in keeping with Supreme Court precedent, statutory language and the equitable role that Section 113(f) plays in CERCLA cases.

The remedies available under CERCLA Sections 113 and 107 complement each other by providing causes of action to parties in different procedural circumstances. *United States v. Atlantic Research Corp.*, 551 U.S. 128, 139 (2007). Section 113(f)(1) provides contribution to PRPs that have been subjected to government compulsion under Section 106 or Section 107.[5] A PRP who is eligible to seek contribution under Section 113(f)(1) "cannot simultaneously seek to recover the same expenses under § 107(a)." *Id.* "[A] PRP could not avoid § 113(f)'s equitable distribution of reimbursement costs among PRPs by instead choosing to impose joint and several liability on another PRP in an action under § 107(a)." *Id.* at 140.

As a PRP for the Fox River contamination, API twice found itself in the very procedural circumstance that limits it to a Section 113 claim under *Atlantic Research*.

First, API had a Section 113(f) contribution claim because it was a defendant in an action under CERCLA Sections 106 and 107(a) when it settled with the Governments and entered into a consent decree in 2001. In *United States v. Appleton Papers, Inc.*, Case No. 01-C-0816 (E.D. Wis.), API entered into a Consent Decree with the Governments ("2001 Consent Decree"). *See, e.g.* Whiting Litigation, Dkt. 163 at 11, API's Cross-claims ¶ 71. The money API paid pursuant

---

[5] CERCLA Section 113(f) states in relevant part: "Any person may seek contribution from any other person who is liable or potentially liable under section 907(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f)(1).

to the 2001 Consent Decree was for "partial reimbursement of past natural resource damage assessment costs" for the Lower Fox River and Green Bay Site. *Id.*; 2001 Consent Decree ¶ 5. API had a Section 113(f)(3)(B) contribution claim because API incurred costs pursuant to the 2001 Consent Decree to resolve API's liability to the Governments "for some or all of a response action . . . in an administratively or judicially approved settlement." 42 U.S.C. § 9613(f)(3)(B).

Second, API had a Section 113(f) contribution claim once the government compelled it to remediate under a Section 106 Order. The plain language of Section 113(f)(1) grants contribution rights to "any person" who is "potentially liable," and allows contribution lawsuits long before a PRP's actual liability is determined, *Atl. Research,* 551 US. at 138-39, so it is irrelevant whether API ends up liable under CERCLA Section 107(a). API in fact asserted its Section 113(f) claim and litigated it to conclusion in *Whiting*. Because API had a claim under Section 113(f), and litigated it, API has no claim under Section 107.

So if API were to have a viable claim for reimbursement under CERCLA despite its pre-existing obligation as NCR's indemnitor, its recourse would be to try to resurrect its Section 113(f) claim in *Whiting*[6] and its Section 107 claim should be dismissed in any event.

## CONCLUSION

API has incurred no recoverable CERCLA costs and therefore has no CERCLA claims against Certain Defendants. API's payments were required as NCR's indemnitor, regardless of its own CERCLA liability. Because API stands in NCR's shoes and NCR has no claim against

---

[6] API's has also taken advantage of its only other recourse -- petition the U.S. EPA for reimbursement of costs from the Superfund under CERCLA Section 106(b)(2)(c) (42 U.S.C. § 9606 (b)(2)(c)). API submitted its petition on June 8, 2012. *See* Declaration of Steven P. Bogart, Exhibit 1.

Certain Defendants under either Sections 107 or 113, API has no such claims either and its crossclaims should be dismissed.

If API did have a claim, it would be limited to a Section 113 contribution claim. So, at minimum, its Section 107 claims should be dismissed.

Dated this 15th day of June, 2012.

/s/Steven P. Bogart
Scott W. Hansen
WI State Bar ID No. 1017206
shansen@reinhartlaw.com
Steven P. Bogart
WI State Bar ID No. 1005758
sbogart@reinhartlaw.com
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone: 414-298-1000
Facsimile: 414-298-8097

Thomas R. Gottshall
Haynsworth Sinkler Boyd, P.A.
1201 Main Street, Suite 2200
Columbia, SC 29201
Telephone: 803-779-3080
Facsimile: 803-765-1243
tgottshall@hsblawfirm.com

**Attorneys for U.S. Paper Mills Corp.**

Reinhart\8718257