IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA and<br>THE STATE OF WISCONSIN,<br><br>                    Plaintiffs,<br><br>v.<br><br>NCR CORPORATION, *et al.*,<br><br>                    Defendants. | Civil Action No. 10-C-910<br><br>Hon. William C. Griesbach |

### REPLY BRIEF IN SUPPORT OF PLAINTIFF THE UNITED STATES' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS ON AFFIRMATIVE DEFENSES BASED ON ALLEGED FEDERAL LIABILITY UNDER CERCLA

The scheduled trial of Count V of Plaintiffs' Complaint *should* focus on a straightforward question under CERCLA Section 106: are the recipients of EPA's Unilateral Administrative Order for cleanup at the Lower Fox River and Green Bay Superfund Site liable for continuing and completing the remediation work required by the UAO? In setting the trial for December 2012, the Court specifically rejected some Defendants' request that the trial be deferred until 2013 as well as their demand that this trial also resolve contribution claims for an allocation "among liable parties using such equitable factors as the court determines are appropriate" pursuant to CERCLA Section 113(f)(1), 42 U.SC. § 9613(f)(1). Dkt. 377; Dkt. 401. Those Defendants still want to delay the trial and turn it into an incredibly complicated, multi-party fault-weighing exercise, where any and all "equitable" arguments must be heard. They claim that the United States cannot enforce the UAO until all issues concerning the government's own alleged liability and culpability are aired, as shown by their response to the current motion. Their strategy is confirmed by their recent approach to discovery in this case, where they have pressed inquires such as:

> Admit that the opening spillways or floodgates on dams and locks by the [U.S. Army Corps of Engineers] caused the sluicing of previously impounded reservoir sediments, including PCB-contaminated sediments, downstream.

Menasha's 314th Request for Admission to the United States (May 16, 2012).

> Produce all guidance documents or manuals issued by any agency or department of the United States that applied to the dredging activities performed by or on behalf of the United States at the Site from the time period 1954 to the present.

Menasha's 51st request for production of documents to the United States (May 7, 2012).

> Describe all measures that you considered or could have taken, but did not take, to prevent or mitigate exposure of predators to PCBs in fish at the Site, and for each action identify why you did not take it.

Glatfelter's 13th Interrogatory to the United States (June 1, 2012).

The ability to require environmental remediation under CERCLA Section 106, 42 U.S.C. § 9606, is one of the most important tools that Congress gave EPA. It "both provides a mechanism for cleaning up hazardous-waste sites and imposes the costs of the cleanup on those responsible for the contamination."[1] When EPA pursues such relief CERCLA imposes strict liability to the government – without regard to whether a potentially-responsible party ("PRP") deserves blame or fault for its liability-creating conduct – as this Court has noted.[2] Section 120 of the statute confirms that the federal government can be a PRP itself, and potentially liable to other PRPs in an action for contribution under Section 113(f), but the plain language of the law also says that shall not "be construed to affect the liability of any person or entity under sections

---

[1] *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 7 (1989) (citations omitted). See H.R. Rep. No. 99-253, pt. 3, at 15 (1st Sess. 1985) ("CERCLA has two goals: (1) to provide for clean-up if a hazardous substance is released into the environment or if such release is threatened, and (2) to hold responsible parties liable for the costs of these clean-ups.").

[2] *See Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-cv-16, 2009 WL 5064049, at * 25 (E.D. Wis. Dec. 16, 2009) ("this case is not about blame or the imposition of liability per se – the result does not, for example, mean that the Defendants are 'innocent' or not liable to the government, as liability under CERCLA is strict and all parties to this action are all potentially liable under that statute.").

2

9606 and 9607." 42 U.S.C. § 9620(a)(1). CERCLA was designed to induce PRPs "to clean up the site quickly" and then pursue contribution claims "to sort out the specifics of who should pay."[3] That provides the "'inevitable handful of PRPs selected by the government to remediate a site or reimburse the government's cleanup costs [with] powerful incentives to invest their resources in spreading the costs to other PRPs rather than fighting a losing battle against the government.'"[4]

Defendants ignore those truths.

First, they do not even cite or address the key language in CERCLA Section 120 and its legislative history indicating that federal PRP involvement has no impact on the government's rights under CERCLA Sections 106 and 107.

Second, they do not cite or discuss the cases holding that "unclean hands" and related equitable defenses cannot be invoked as a defense to a government action to protect the public interest, other than to point out that one case cited in our opening brief involved civil RICO claims brought by the United States (Dkt. 443 at 21). Multiple CERCLA cases have enforced the same rule, as shown below.

Third, while claiming that the government has acted unfairly by "reserving nothing for itself" (Dkt. 443 at 12) and "omitting itself" from the UAO (Dkt. 443 at 17), the Defendants relegate any discussion of contribution remedies under Section 113 to a brief footnote (Dkt. 443 at 13 n.6).

Finally, the Defendants' arguments, if accepted, would yield results contrary to the obvious intent of the statute. If the Defendants are right then EPA cannot obtain an injunction enforcing compliance with a UAO addressed to multiple recipients so long as "the defendants

---

[3] *Kalamazoo River Study Grp. v. Menasha Corp.*, 228 F.3d 648, 657 (6th Cir. 2000).

[4] *Id.* (*quoting* Lemuel M. Srolovic & Pamela R. Esterman, Fold or Fight: The Changing Settlement Calculus in CERCLA Enforcement Actions, 9 Fordham Envtl. L.J. 469, 469-70 (1998)).

3

have been unable to agree on how to fund [the] clean up." Dkt. 443 at 22. In addition, if the Defendants are right then EPA cannot enforce compliance with a UAO whenever the federal government is a PRP at the site. That is the thrust of their affirmative defenses asserting that:

> EPA is not permitted to issue a unilateral administrative order for remedial action with respect to this Site because EPA may not unilaterally determine the allocation of liability among responsible parties of which it is one. Further, neither the United States nor the State may seek enforcement of such a unilateral administrative order.

Dkt. 60 at 14 (Glatfelter's Fifth Separate Defense). Defendants are wrong on both counts. Congress clearly intended that disagreements over cleanup funding and the equitable allocation of costs should be decided through litigation of contribution claims under Section 113(f), not by the limitation or denial of injunctive relief under Section 106.

By granting the United States' motion targeting affirmative defenses based on alleged government liability and "unclean hands," the Court should clarify that the upcoming trial will *not* focus on arguments about government liability or fault cloaked in equitable terms.[5] Consistent with the litigation phasing plan adopted by the Court, any such arguments should instead be addressed if and when the Court needs to resolve any remaining contribution claims under Section 113(f). The Court should grant the United States' motion and strike or dismiss the affirmative defenses based on alleged government liability and "unclean hands."

## Argument

1. **CERCLA's Language Precludes Affirmative Defenses Based on Alleged Federal Liability**

The statutory language and the supporting legislative history dispose of Defendants' arguments. CERCLA Section 107(a), which has remained largely unchanged since its original

---

[5] To be clear, the United States' motion does not seek a pre-trial adjudication of Defendants' affirmative defenses alleging divisibility and apportionment of harm. Those are not equitable defenses. "Equitable considerations play no role in the apportionment analysis," as the Supreme Court has emphasized. *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 615 n.9 (2009).

4

enactment in 1980, defines the classes of PRPs that can be held liable under the statute with an introductory clause stating that liability should be imposed "[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section." 42 U.S.C. § 9607(a). Section 107(b) has always included a limited list of defenses to CERCLA liability (*see id.* at 9607(b)), although later legislative amendments have tacked-on added statutory defenses and liability exclusions elsewhere in the statute, including the ones listed in a footnote in Certain Defendants' brief (*see* Dkt. 443 at 19 n.7). The addition of those other statutory defenses and exclusions (none of which is relevant here) has never been construed as opening the door to other *non-statutory* defenses or as negating the longstanding indication in Section 107(a) that CERCLA liability to the government should be imposed "[n]otwithstanding any other provision or rule of law." The Seventh Circuit has pointed out that Section 107 "governs liability" under CERCLA and the court of appeals cited that introductory clause in Section 107(a) as its main reason for joining "the majority of courts . . . in holding that CERCLA does not permit equitable defenses to § 107 liability, although . . . equitable factors may be considered in the allocation of contribution shares." *Town of Munster v. Sherwin-Williams Co., Inc.*, 27 F.3d 1268, 1270 (7th Cir. 1994).[6]

As noted in our opening brief (Dkt. 431 at 4-5), the 1986 Superfund Amendments and Reauthorization Act ("SARA") added the statutory cause of action for contribution to Section 113(f) as well as an explicit waiver of federal sovereign immunity for CERCLA liability in

---

[6] *Accord United States v. Saporito*, 684 F. Supp. 2d 1043, 1062 (N.D. Ill. 2010) (unclean hands defense unavailable under CERCLA); *United States v. Rohm & Haas Co.*, 939 F. Supp. 1142, 1152 (D.N.J. 1996) (same); *United States v. Martell*, 887 F. Supp. 1183, 1193 (N.D. Ind. 1995) (same); *United States v. Pretty Products, Inc.*, 780 F. Supp. 1488, 1501 (S.D. Ohio 1991); *United States v. Kramer*, 757 F Supp. 397, 404, 427 (D.N.J. 1991); *United States v. Shaner*, No. 85-1372, 1990 WL 115085 at *9 (E.D. Pa. June 25, 1990); *United States v. Western Processing Co., Inc.*, 734 F. Supp. 930, 939 (W.D. Wash. 1990); *Kelley v. Thomas Solvent Co.*, 714 F. Supp. 1439, 1451-52 (W.D. Mich. 1989); *United States v. Vineland Chem. Co.*, 692 F. Supp. 415, 423 (D.N.J. 1988); *United States v. Stringfellow*, 661 F. Supp. 1053, 1062 (C.D. Cal. 1987).

Section 120(a). *See* 42 U.S.C. §§ 9613(f), 9620(a) (added by Pub. L. No. 99-499 (§§ 113(f) and 120(a)), 100 Stat. 1613, 1647, 1666). The language added by SARA confirms that alleged federal liability is no defense under CERCLA and that it does not otherwise "affect the liability of any person or entity under sections 9606 and 9607." 42 U.S.C. § 9620(a)(1). A seminal House Report explained that "[t]he right of the United States to proceed under section 106 or 107 is unaffected by its status as an owner or operator of a facility or a generator of waste at the site." H.R. Rep. 99-253, pt. III, at 20 (1985), *reprinted in* 1986 U.S.C.C.A.N. 3038, 3043. And a primary sponsor of SARA, Representative Eckart, emphasized that:

> The listed defenses are the only defenses which are available to avoid liability under section 107(a). *There should be no other defenses, including equitable defenses, that defeat liability under sections 106 and 107 of the act.*

131 Cong. Rec., H11069-01 (daily ed. Dec. 5, 1985) (emphasis added); *see Western Processing Co.*, 734 F. Supp. 930, 939 (W.D. Wash. 1990) (quoting legislative history). Under the scheme established by SARA, issues concerning federal PRP involvement and other PRPs' involvement can and should be addressed in an equitable allocation proceeding to resolve contribution claims, without affecting the government's ability to pursue its claims for the imposition of strict liability under CERCLA Sections 106 and 107.

### 2. Equitable Defenses Such as "Unclean Hands" Are Not Permitted When the Government Acts to Protect the Public Welfare

Although the point was highlighted in our opening brief (Dkt. 431 at 7-8), the Defendants ignore the well-settled principle that "the equitable doctrine of unclean hands may not be asserted against the United States when it acts in its sovereign capacity to protect the public welfare." *United States v. Vineland Chem. Co.*, 692 F. Supp. 415, 423 (D.N.J. 1988) (CERCLA case). That rule has been cited as a legal justification for striking equitable defenses in multiple government enforcement actions under CERCLA. *See id.*; *City of Colton v. American*

*Promotional Events, Inc.*, No. EDCV 09-1864 PSG, 2012 WL 32606, at *4 (C.D. Cal. Jan. 15, 2012); *United States v. Pretty Products, Inc.*, 780 F. Supp. 1488, 1501 (S.D. Ohio 1991); *United States v. Kramer*, 757 F. Supp. 397, 427 (D.N.J. 1991); *Shaner*, 1990 WL 115085 at *9; *Kelley v. Thomas Solvent Co.*, 714 F. Supp. 1439, 1451 (W.D. Mich. 1989); *United States v. Stringfellow*, 661 F. Supp. 1053, 1062 (C.D. Cal. 1987).[7]

There is no question that the United States' claim for enforcement of the UAO seeks to protect the public welfare. The UAO recites formal findings by EPA under Section 106 that an imminent and substantial endangerment exists at the Site and that the actions required by the UAO are necessary to abate the danger.[8] In light of the established body of case law holding equitable defenses to liability unavailable in cases like this, the Court should strike or dismiss the Defendants' affirmative defenses premised on alleged government CERCLA liability, including the "unclean hands" defenses.

### 3.  CERCLA Section 106 Does Not Require the Courts to Entertain All Arguments Couched in Equitable Terms

Section 106 authorizes injunctive relief while Section 107 authorizes cost recovery as a form of restitution; both are equitable remedies. *See Town of Munster*, 27 F.3d at 1270-71 ("a cost recovery action is equitable in nature"). And the language of Section 120 and the

---

[7] As noted in our opening brief, the same rule applies in other types of government actions to protect the public interest. *See United States v. PhilipMorris Inc.*, 300 F. Supp. 2d 61, 75 (D.D.C. 2004) (civil RICO case holding that when "the Government acts in the public interest the unclean hands doctrine is unavailable as a matter of law."); *United States v. Cushman & Wakefield, Inc.*, 275 F. Supp. 2d 763, 773-774 (N.D. Tex. 2002) (False Claims Act case); *United States v. Production Plated Plastics, Inc.*, 742 F. Supp. 956, 961 n.4 (W.D. Mich. 1990) (EPA enforcement action under the Resource Conservation and Recovery Act); *Donovan v. Robbins*, 99 F.R.D. 593, 600 (N. D. Ill. 1983) (striking defenses of unclean hands and laches against the Secretary of Labor), *rev'd on other grounds*, 752 F.2d 1170 (7th Cir. 1985); *SEC v. Gulf & Western Indus., Inc.*, 502 F. Supp. 343, 348 (D.D.C. 1980) (striking unclean hands defense from an SEC enforcement action); *see also Pan-American Petroleum & Transp. Co. v. United States*, 273 U.S. 456, 506 (1927) ("[general principles of equity] will not be applied to frustrate the purpose of its laws or to thwart public policy.").

[8] The UAO is attached to the Plaintiffs' First Amended Complaint. Dkt. 30-1.

7

legislative history quoted above make clear that equitable defenses or other arguments based on federal PRP involvement should not affect the government's pursuit of claims under *either* CERCLA Section 106 or Section 107. Defendants ignore that completely when they argue that "[e]quitable defenses may be asserted to a section 106(a) claim" (Dkt. 443 at 2). They cite two sources of support for that contention: (1) a handful of cases that have spoken to the question directly or in passing, especially the 1987 Northern District of Oklahoma decision in *United States v. Hardage*, 116 F.R.D. 460 (W.D. Okla. 1987); and (2) the language of Section 106, which says that courts should "grant such relief as the public interest and *the equities of the case* may require," 42 U.S.C. § 9606(a) (emphasis added). Neither lends persuasive support to the Defendants' assertion, as demonstrated below.

None of the cases cited by Defendants actually *holds* that federal PRP involvement or "unclean hands" is relevant to the adjudication of a claim under Section 106, aside from the decision in *Hardage*, 116 F.R.D. at 460. The *Kramer* case cited in both opposing briefs (Dkt. 443 at 10; Dkt. 444 at 3) speculated that "it *may* be logical to permit equitable defenses in an inherently equitable proceeding, and sections 106 and 113 both permit equitable considerations," 757 F. Supp. at 404, 427 (emphasis added), but that was *dictum* because *Kramer* only involved a cost recovery claim under Section 107, *id.* at 404. The *Velsicol* and *Davis* decisions cited by the Defendants merely quote that *dictum* from *Kramer* in other cases that did not confront or decide the question. *Velsicol Chemical Corp. v. Enenco, Inc.*, 9 F.3d 524, 530 (6th Cir. 1993) (quoting *Kramer*, 757 F. Supp. at 427); *United States v. Davis*, 794 F. Supp. 67, 70-71 (D.R.I. 1992) (same). And *Kramer* is one of the CERCLA cases that recognized that "equitable defenses 'cannot be asserted against the government when it acts in its sovereign capacity to protect the public health and safety.'" 757 F. Supp. at 427 (quoting *Stringfellow*, 661 F. Supp. at 1062).

8

The 1987 decision in *Hardage* held that equitable defenses would not be stricken from a case involving a *de novo* claim for injunctive relief under Section 106 (as opposed to a claim for UAO enforcement) and a claim for reimbursement of government costs under Section 107, 116 F.R.D. at 464-65, but the reasoning and result in that case have been questioned and rejected by other courts. *See, e.g., United States v. Wedzeb Enters., Inc.*, 809 F. Supp. 646, 658 n.18 (S.D. Ind. 1992); *City of Colton*, 2012 WL 32606, at *4 n.1; *see also United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1425 (6th Cir. 1991) (rejecting the holding in *Hardage* that *de novo* review applies to EPA's selection of a remedy contained in a consent decree and instead applying an arbitrary and capricious standard to remedial action requested by EPA). And *Hardage* deserves little weight today because the 1986 SARA Amendments to CERCLA – which added the language in Section 120 saying that alleged federal liability should not "be construed to affect the liability of any person or entity under sections 9606 and 9607" – were not even considered in that case.[9] Another more recent case cited by the Defendants reached the opposite result as *Hardage*, striking equitable defenses in a government enforcement action under Sections 106 and 107 and holding that that equitable considerations should instead be assessed "in determining the proper allocation of contribution shares" under Section 113(f). *United States v. DWC Trust Holding Co.*, No. 93-2859, 1994 WL 395730, at *3 (D. Md. 1994). Unlike the older *Hardage* decision, the outcome in *DWC Trust* comports with the language and structure of CERCLA, as amended by the 1986 SARA Amendments, for the reasons outlined above.

---

[9]  *See United States v. Hardage*, 663 F. Supp. 1280, 1283 (W.D. Okla. 1987) (holding that the 1986 SARA Amendments did not apply to the case because it was filed before their enactment). Other courts also disagreed with that ruling in *Hardage* and held that the SARA Amendments were meant to apply to all pending CERCLA cases, even if filed before enactment. *See, e.g., In re Acushnet & New Bedford Harbor: Proceedings re Alleged PCB Pollution*, 722 F. Supp. 888, 891 (D. Mass. 1989); *Kelley v. Thomas Solvent Co.*, 790 F. Supp. 719, 724 (W.D. Mich. 1990); *United States v. Rohm & Haas Co., Inc.*, 669 F. Supp. 672, 677 (D.N.J. 1987).

9

The indication in Section 106 that this Court should "grant such relief as the public interest and *the equities of the case* may require" should not be read as inviting arguments for limiting or denying relief entirely due to federal PRP involvement. The statutory reference to the "equities of the case" merely confirms that any injunction under Section 106 should satisfy the traditional equitable test:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citing *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 311-13 (1982)). That test does not *demand* consideration of every possible argument couched in equitable terms, especially where the law that is involved imposes strict liability without fault and where it specifies that the particular argument being advanced should not "be construed to affect the liability of any person," 42 U.S.C. § 9620(a)(1).[10]

### 4. Alleged Federal Liability Has No Bearing on Whether Enforcement of the UAO is "Necessary to Abate [the] Danger or Threat" Under Section 106(a).

Without citing any supporting legal authority aside from the word "necessary" in Section 106(a), some of the Defendants assert that "an injunction against the Certain Defendants or some of them would not be *necessary* to abate the danger or threat in OU4 because the United States should bear that obligation instead." Dkt. 443 at 15-16. The Third Circuit rejected a similar misreading of the statute in another CERCLA case, saying:

---

[10] Contrary to the suggestion made in *Hardage*, *Romero-Barcelo* did not hold that "the full array of traditional equitable defenses was available under the [Clean Water Act's] injunctive provision." *Hardage,* 116 F.R.D. at 465. The Supreme Court's decision in *Romero-Barcelo* did not discuss or depend on the sort of "equitable defenses" asserted here, such as claimed "unclean hands." It held that the district court had equitable discretion to order relief other than a complete prohibitory injunction to achieve compliance with the Clean Water Act in that case. 456 U.S. 305.

10

> Reading § 106(a) as a whole, it seems clear that the question of whether an order may be necessary to protect public health, welfare, and the environment goes to the status of the contamination at the site, not to who is, or who is not, obligated to address it . . . . Here, the EPA's Order appropriately documented the presence of hazardous substances at the site and their likelihood of endangering public health, thereby satisfying the "necessity" requirement of § 106(a).

*United States v. Occidental Chem. Corp.*, 200 F.3d 143, 151 (3d Cir. 1999) (footnote omitted).

As shown above, there is no legal basis for relieving a Defendant's obligation to comply with a UAO based on a showing that "the United States should bear that obligation instead," as argued by Certain Defendants. Dkt. 443 at 15-16. After the government commences an enforcement action like this, the costs of compliance with UAO obligations can instead be allocated through the resolution of contribution claims.

### 5. The UAO is not "Irrelevant" to Count V, as Argued by Certain Defendants.

Certain Defendants also advance the novel argument – once again, unsupported by any authority – that "section 106(a) of CERCLA is not the enforcement mechanism for administrative orders" and that the *only* "mechanism by which the government may enforce a UAO . . . [is] by civil fines" under section 106(b)(1). Dkt. 443 at 17. They therefore contend that the UAO is "irrelevant" to the claim to be tried in December (Dkt. 443 at 18), even though the Complaint seeks "a judicial determination that each UAO Recipient is required to comply with all provisions of the UAO applicable to such UAO Recipient . . . pursuant to CERCLA § 106, 42 U.S.C. § 9606, and the Declaratory Judgment Act, 28 U.S.C. § 2201-2202" (Dkt. 30 at 30). NCR does not join Certain Defendants in making that argument.

The Complaint makes clear that the United States is seeking a permanent injunction under Section 106 to enforce compliance with the UAO, just as the United States sought and

11

obtained a preliminary injunction for that purpose earlier this year.[11]  Section 106 authorizes suits by the United States "to secure such relief as may be necessary" when EPA has determined that there "may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance." 42 U.S.C. § 9606(a).  It grants district courts "jurisdiction to grant such relief as the public interest and the equities of the case may require."  *Id.*  It also recognizes that defenses to a UAO can be litigated "in an action brought in the appropriate United States district court to enforce such order."  *Id.* at § 9606(b)(1).  And remedy challenge arguments may be raised in "[a]n action to enforce an order issued under section [106(a)] or to recover a penalty for violation of such order."  *Id.* at § 9613(h)(2).

The last quoted provision of the statute disposes of Certain Defendants' argument that the United States' *only* judicial remedy for UAO enforcement is an action for penalties.  It recognizes two UAO enforcement action options:  "An action to enforce an order issued under section [106(a)] *or* to recover a penalty for violation of such order."  *Id.* at § 9613(h)(2) (emphasis added).  Other courts have had no trouble concluding that "§ 106(a) authorizes suits to enforce administrative orders."  *Occidental Chem.*, 200 F.3d at 149 n.6.  After all, CERCLA is a remedial statute that should be construed liberally to effectuate its goals.  *United States v. Navistar Int'l Transp. Corp.*; 152 F.3d 702, 707 (7th Cir. 1998); *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 258 (3d Cir. 1992).

"The use of alternative nonexclusive methods of securing a remedy is a familiar feature of federal environmental law. . . ."  *United States v. Charles George Trucking Co.*, 682 F. Supp.

---

[11]     A claim to compel compliance with an order issued by a federal administrative agency is a traditional claim for injunctive relief.  *See, e.g., NLRB v. Wyman-Gordon Co.*, 394 U.S. 759 (1969) (injunction enforcing an NLRB order); *St. Regis Paper Co. v. United States*, 368 U.S. 208 (1961) (injunction compelling compliance with Federal Trade Commission orders); *United States v. Ruzicka*, 329 U.S. 287 (1946) (injunction commanding compliance with a Department of Agriculture order).

12

1260, 1269 (D. Mass. 1988) (citing CERCLA Section 106 and Clean Water Act Section 309 as primary examples). Much like CERCLA Section 106, Clean Water Act Section 309 authorizes EPA to issue administrative compliance orders, 33 U.S.C. § 1319(a), and to institute civil actions "for appropriate relief, including a permanent or temporary injunction, for any violation for which [EPA] is authorized to issue a compliance order," *id.* at 1319(b). A well-established body of case law recognizes that the United States can seek an injunction enforcing an administrative compliance order as "appropriate relief" under that statute. *See, e.g., United States v. Bailey*, 571 F.3d 791 (8th Cir. 2009) (affirming an injunction enforcing a Clean Water Act compliance order); *see also Hoffman Grp., Inc. v. EPA*, 902 F.2d 567, 568 (7th Cir. 1990) ("If an alleged violator . . . does not abide by a compliance order, the EPA may seek to enforce the order in a federal district court under Section 309(b) of the Act" and "the court may issue an injunction requiring compliance.").

"Plaintiffs are masters of their complaints" and the law affords them leeway concerning the type of relief sought on their claims. *Webster v. Reproductive Health Servs.*, 492 U.S. 490, 512 (1989). Here, the United States seeks an injunction and a declaratory judgment that the Defendants are obliged to comply with the UAO, consistent with CERCLA Section 106. Simply stated, the Defendants cannot write the UAO out of the equation and deem it "irrelevant" to the resolution of Count V.

## Conclusion

For the reasons discussed above and in the United States' principal brief, the Court should strike or grant partial judgment on the pleadings on the affirmative defenses premised on alleged federal liability under CERCLA, including the affirmative defenses based on alleged unclean hands.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

Dated: July 12, 2012

*s/ Sumona N. Majumdar*
RANDALL M. STONE
JEFFREY A. SPECTOR
KRISTIN M. FURRIE
SUMONA N. MAJUMDAR
SEAN CARMAN
MAYA S. ABELA
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone: 202-514-3581
Facsimile: 202-616-6584
sumona.majumdar@usdoj.gov


GREGORY J. HAANSTAD
Attorney for the United States, Acting
Under Authority Conferred by 28 U.S.C. § 515

SUSAN M. KNEPEL
Assistant United States Attorney
Office of the United States Attorney
517 E. Wisconsin Avenue, Room 530
Milwaukee, WI 53202

CERTIFICATE OF SERVICE

 The undersigned hereby certifies that, on this day, the foregoing Reply Brief was filed electronically with the Clerk of the Court using the Court's Electronic Court Filing System, which sent notification of such filing to the following counsel:

**Mary Rose Alexander**
Latham & Watkins LLP
mary.rose.alexander@lw.com

**Thomas Armstrong**
von Briesen & Roper SC
tarmstro@vonbriesen.com

**Paul Bargren**
Foley & Lardner LLP
pbargren@foley.com

**Linda E. Benfield**
Foley & Lardner LLP
lbenfield@foley.com

**Dennis P. Birke**
DeWitt Ross & Stevens SC
db@dewittross.com

**Steven P. Bogart**
Reinhart Boerner Van Deuren SC
sbogart@reinhartlaw.com

**Michael P. Carlton**
von Briesen & Roper SC
mcarlton@vonbriesen.com

**Evan R. Chesler**
Cravath Swaine & Moore LLP
echesler@cravath.com

**Marc E. Davies**
Greenberg Traurig LLP
daviesm@gtlaw.com

**Brandon J. Evans**
Hermes Law Ltd.
bje@hermeslawltd.com

**S. Todd Farris**
Friebert Finerty & St. John SC
stf@ffsj.com

**Patrick J. Ferguson**
Latham & Watkins LLP
patrick.ferguson@lw.com

**Sandra C. Goldstein**
Cravath Swaine & Moore LLP
sgoldstein@cravath.com

**Thomas R. Gottshall**
Haynsworth Sinkler Boyd PA
lgantt@hsblawfirm.com

**Eric W. Ha**
Sidley Austin LLP
eha@sidley.com

**Scott W. Hansen**
Reinhart Boerner Van Deuren SC
shansen@reinhartlaw.com

**William H. Harbeck**
Quarles & Brady LLP
william.harbeck@quarles.com

**Michael L. Hermes**
Hermes Law Ltd.
mlh@hermeslawltd.com

**Cynthia R. Hirsch**
Wisconsin Department of Justice
hirschcr@doj.state.wi.us

**Caleb J. Holmes**
Greenberg Traurig LLP
holmesc@gtlaw.com

**Philip C. Hunsucker**
Hunsucker Goodstein & Nelson PC
phunsucker@hgnlaw.com

**Peter C. Karegeannes**
Quarles & Brady LLP
peter.karegeannes@quarles.com

**Gregory A. Krauss**
Gregory Krauss PllC
gkrauss@krausspllc.com

**Paul G. Kent**
Stafford Rosenbaum LLP
pkent@staffordlaw.com

**Ericka L. Krumrie**
Hermes Law Ltd
elk@hermeslawltd.com

**Linda R. Larson**
Marten Law PLLC
llarson@martenlaw.com

**Vanessa A. Lavely**
Cravath Swaine & Moore LLP
vlavely@cravath.com

**Susan E. Lovern**
von Briesen & Roper SC
slovern@vonbriesen.com

**Kevin J. Lyons**
Davis & Kuelthau SC
klyons@dkattorneys.com

**Karl S. Lytz**
Latham & Watkins LLP
karl.lytz@lw.com

**Meline G. MacCurdy**
Marten Law
mmaccurdy@martenlaw.com

**David G. Mandelbaum**
Greenberg Traurig LLP
mandelbaumd@gtlaw.com

**Bradley M. Marten**
Marten Law
bmarten@martenlaw.com

**Tara M. Mathison**
Davis & Kuelthau SC
tmathison@dkattorneys.com

**Darin P. McAtee**
Cravath Swaine & Moore LLP
dmcatee@cravath.com

**Stephen F. McKinney**
Haynsworth Sinkler Boyd PA
smckinney@hsblawfirm.com

**Heidi D. Melzer**
Hermes Law Ltd.
hdm@hermeslawltd.com

**Elizabeth K. Miles**
Davis & Kuelthau SC
emiles@dkattorneys.com

**Sabrina Mizrachi**
Greenberg Traurig LLP
mizrachis@gtlaw.com

**Monique M. Mooney**
Greenberg Traurig LLP
mooneym@gtlaw.com

**William J. Mulligan**
Davis & Kuelthau SC
wmulligan@dkattorneys.com

**Daniel C. Murray**
Johnson & Bell Ltd.
murrayd@jbltd.com

**Omid H. Nasab**
Cravath Swaine & Moore LLP
onasab@cravath.com

**Kelly J. Noyes**
von Briesen & Roper SC
knoyes@vonbriesen.com

**Nancy K. Peterson**
Quarles & Brady LLP
nancy.peterson@quarles.com

**Thomas M. Phillips**
Reinhart Boerner Van Deuren SC
tphillip@reinhartlaw.com

**Ian A.J. Pitz**
Michael Best & Friedrich LLP
iapitz@michaelbest.com

**David A. Rabbino**
Hunsucker Goodstein & Nelson PC
drabbino@hgnlaw.com

**Joan Radovich**
Sidley Austin LLP
jradovich@sidley.com

**Ronald R. Ragatz**
DeWitt Ross & Stevens SC
rrr@dewittross.com

**Alexandra Reeve Givens**
Cravath Swaine & Moore LLP
agivens@cravath.com

**Kathleen L. Roach**
Sidley Austin LLP
kroach@sidley.com

**Megan A. Senatori**
DeWitt Ross & Stevens SC
ms@dewittross.com

**Adam B. Silverman**
Greenberg Traurig LLP
silvermana@gtlaw.com

**Sarah A. Slack**
Foley & Lardner LLP
sslack@foley.com

**Margaret R. Sobota**
Sidley Austin LLP
msobota@sidley.com

**Anthony S. Wachewicz, III**
City of Green Bay
tonywa@ci.green-bay.wi.us

**James P. Walsh**
Appleton City Attorney
jim.walsh@appleton.org

**Ted A. Warpinski**
Friebert Finerty & St John SC
taw@ffsj.com

**Ted Waskowski**
Stafford Rosenbaum LLP
twaskowski@staffordlaw.com

**Evan B. Westerfield**
Sidley Austin LLP
evanwesterfield@sidley.com

**Richard C. Yde**
Stafford Rosenbaum LLP
ryde@staffordlaw.com

Dated:  July 12, 2012                               s/ *Sumona N. Majumdar*