IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **UNITED STATES OF AMERICA AND THE STATE OF WISCONSIN** | : : : : |
| Plaintiffs, | : : No. 10-CV-00910-WCG |
| v. | : : |
| **NCR CORPORATION,** *et al.,* | : : |
| Defendants. | : |

**MEMORANDUM OF CERTAIN DEFENDANTS[1] IN SUPPORT OF
THEIR MOTION *IN LIMINE* TO ESTABLISH THE ELEMENTS OF
PLAINTIFF UNITED STATES' *PRIMA FACIE* CASE
ON ITS FIFTH CLAIM FOR RELIEF**

---

[1] This Memorandum Of Certain Defendants In Support Of Their Motion *In Limine* To Establish The Elements Of Plaintiff United States' *Prima Facie* Case On Its Fifth Claim For Relief is filed on behalf of CBC Coating, Inc., Menasha Corporation, Neenah Menasha Sewerage Commission, P.H. Glatfelter Co., and WTM I Company.

**I.     INTRODUCTION**

The December 3, 2012, trial concerns only the United States' Fifth Claim For Relief ("Count V").  Certain Defendants seek by this motion *in limine* to clarify the elements of the United States' *prima facie* case on Count V.  At the telephonic hearing on August 24, 2012, Certain Defendants suggested this motion as a way to narrow disputes and to increase the efficiency of the upcoming trial; the Court agreed to receive it.  Dkt. 497 [Transcript] at 35-37.[2]

The United States seeks two types of relief in Count V.  Explicitly, Count V seeks a declaration of liability against the Count V defendants.  Declaratory relief would allow the United States to resolve defenses and to determine from whom injunctive relief may be sought.  In addition, while not stated explicitly in Count V itself, the United States has announced its intention to seek injunctive relief compelling each of the defendants to complete the cleanup of OU4 in this part of this trial as well.  Dkt. 294 [U.S. Brief in Opposition to Glatfelter Motion to Dismiss or for Summary Judgment on Fifth Claim for Relief] at 3.  As we discuss below, in the December 3 trial, the United States must prove the elements of a claim under the first sentence of section 106(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") which include some elements incorporated from section 107(a).

A declaration of liability under section 107(a) may be a predicate for an injunction under section 106(a), but it is not sufficient by itself for the Court to grant the government relief on Count V.  CERCLA section 106(a) requires the United States to prove three things to obtain an injunction: (a) that the specific injunction is *necessary* to abate an imminent and substantial danger to public health or welfare, (b) that the relief is what *the public interest* requires and (c) that *the equities of the case require* the *particular injunction being sought*.

---

[2] Record citations to materials in the district court docket are referenced in this brief by the docket number and page number applied by the district court's Electronic Case Filing system ("Dkt. at").

Section 106(a) provides:

> In addition to any other action taken by a State or local government, when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure ***such relief as may be necessary to abate such danger or threat***, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant ***such relief as the public interest and the equities of the case may require***. The President may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and welfare and the environment.

42 U.S.C. § 9606(a) (emphasis added). The United States itself has invoked the first sentence of section 106(a) as its basis for injunctive relief against NCR in this case. *See* Dkt. 126 [U.S. Brief in Support of Motion for Preliminary Injunction] at 5, Dkt. 314 [U.S. Brief in Support of Motion for Preliminary Injunction] at 5[3] and 7th Cir. Dkt.[4] 34 [U.S. Answering Brief on Appeal] at 1. According to the United States,

> CERCLA § 106 gives this Court broad authority "***to grant such relief as the public interest and the equities of the case may require***," 42 U.S.C. § 9606(a), so there is no question that the Court can enter a preliminary injunction to ensure that NCR and API continue performing cleanup work at full pace this year while the parties litigate the merits of the UAO enforcement claim.

Dkt. 126 at 5 (emphasis added). The emphasized language in the quote above is from the first sentence of section 106(a).

Similarly, proof that EPA selected a remedy for this site and issued a unilateral administrative order ("UAO") is not all that the United States must prove to recover an

---

[3] The United States' 2012 preliminary injunction motion against NCR relied on Dkt. 126.
[4] Citations to documents filed the Court of Appeal are referenced by the docket number and page number applied by the Court of Appeals' Electronic Case Filing system ("7th Cir. Dkt. at ")

- 2 -

injunction, even if neither the remedy selection nor the UAO were arbitrary or capricious. EPA issued its UAO in 2007 to implement a remedy that EPA selected even earlier under the nine criteria of section 121 of CERCLA, 42 U.S.C. § 9621. A lot has happened since 2007: five seasons of in-water work have improved understanding of the impacts of dredging, capping, and covering; five seasons of in-water work have improved understanding of costs; five seasons of in-water work have changed conditions in the river; infrastructure has been constructed; contractors have been hired; Lower Fox River Remediation LLC has been put in place to administer the work; *Appleton Papers Inc. v. Geo. A. Whiting Paper Co.*, No. 2:08-cv-16-WCG (E.D. Wis.)("*Whiting*"), has been litigated to several results; the United States has experienced the worst economic downturn since the Great Depression; and the individual financial position of each defendant has changed. Count V requires proof of each element of the governments' claim under the first sentence of section 106(a) – necessity, public interest, and equities – against each defendant as of the time of trial, not as of 2007.

The propriety of injunctive relief against any defendant at trial is a separate issue from whether the remedy selection in 2007 was not arbitrary or capricious. Injunctive relief depends on whether the United States can prove the prerequisites for that relief set out in CERCLA section 106(a). The text of section 106(a) is clear. SUSAN M. COOKE, THE LAW OF HAZARDOUS WASTE § 14.02[5][a] (Matthew Bender) ("[a]lthough essentially no cases have yet reached [types and extent of relief that may be granted] in the context of a Section 106 action, this is one of the few issues on which the language of Section 106 provides some assistance"). The United States cannot ignore the statutory text, even if it is inconvenient. *Cf. Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004).

## II. IF THE UNITED STATES SEEKS A MANDATORY INJUNCTION, IT MUST PROVE THE ELEMENTS OF A CLAIM UNDER THE FIRST SENTENCE OF SECTION 106(a) OF CERCLA.

### A. The Meaning of CERCLA Section 106(a) is Plain, and the United States Must Prove the Elements Required by that Section.

The United States characterizes Count V as a claim for a mandatory injunction. Dkt. 456 [Reply Brief in Support of Plaintiff United States' Motion for Partial Judgment on the Pleadings on Affirmative Defenses Based on Alleged Federal Liability Under CERCLA] at 11. Therefore, the claim that the United States has made can only arise under the first sentence of section 106(a) of CERCLA; that sentence is the only part of section 106 authorizing mandatory injunctive relief. Accordingly, the United States must establish the elements of its entitlement to relief under the first sentence of Section 106(a) if it wishes to obtain a mandatory injunction.

The Supreme Court has consistently looked to the plain meaning of the language of CERCLA. *Burlington Northern & Santa Fe Railway Co. v. United States*, 556 U.S. 599, 609-11 (2009) ("To determine whether Shell may be held liable as an arranger, we begin with the language of the statute. . . . [U]nder the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance."); *see also United States v. Atlantic Research Corp.*, 551 U.S. 128, 136 (2007); *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 166 (2004). Under the first sentence of CERCLA section 106(a), the *only* administrative determination is whether through EPA, "the President has determined that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility." Under the plain meaning of the statute, the Court, not EPA, must make every other finding or conclusion called for by that first sentence.

Because of the plain meaning of the first sentence of section 106(a), the United States must demonstrate:

- that the order the United States seeks is "such relief as may be necessary to abate such danger or threat;" and,

- that that order is "such relief as the public interest and the equities of the case may require."

42 U.S.C. § 9606(a). *See also B.F. Goodrich Co. v. Murtha*, 697 F. Supp. 89, 94 (D. Conn. 1988); *United States v. A & F Materials Co.*, 578 F. Supp. 1249, 1258 (S.D. Ill. 1984) (court must be guided by "the equities of the case" in deciding whether to grant injunction). The United States has the burden of proof – both of production and of persuasion – on these elements of its claim.

### B. For a Mandatory Injunction to Issue, CERCLA Section 106(a) Requires a Trial of These Elements, Not Just a Deferential Review of EPA's Chosen Remedy.

The language of CERCLA requires a trial of the elements of the first sentence of section 106(a), not just a deferential review of the chosen remedy, for at least three reasons. First, the governments' selection of the remedy was made under the different criteria of section 121 rather than the standard for a mandatory injunction set out in the first sentence of section 106(a). Second, EPA's administrative decisions to select this remedy and to issue the UAO were made at a different time when the facts were different. Third, the express language of the first sentence of CERCLA section 106(a) calls for specific determinations *by the Court*, not simply a review on a challenge to an administrative decision. *See United States v. Ottati & Goss, Inc.*, 900 F.2d 429, 433-34 (1st Cir. 1990) (Breyer, J.) (holding that for § 106 injunction actions the court is not

- 5 -

required to review EPA's chosen remedy under an "arbitrary and capricious" standard, but may select the remedy using its equitable powers); *United States v. Hardage*, 663 F. Supp. 1280, 1284 (W.D. Okla. 1987) and 750 F. Supp. 1460, 1520–21 (W.D. Okla. 1990), *judgment aff'd*, 982 F.2d 1436 (10th Cir. 1992) (court reviews remedy *de novo*, using equitable powers); *United States v. Conservation Chem. Co.*, 661 F. Supp. 1416, 1428-29 (W.D. Mo. 1987); *but see United States v. Seymour Recycling Corp.*, 679 F. Supp. 859, 863 (S.D. Ind. 1987) (EPA selects remedy which court reviews based on administrative record and arbitrary and capricious standard); *Acushnet River & New Bedford Harbor: Proceedings re In re Acushnet River & New Bedford Harbor*, 722 F. Supp. 888, 891-92 (D. Mass. 1989) (in dictum, approving *Seymour Recycling*, but in section 107 cost recovery action); *United States v. Bell Petroleum Servs., Inc.*, 718 F. Supp. 588, 591 (W.D. Tex. 1989) (section 107 cost recovery action); *see also* COOKE, THE LAW OF HAZARDOUS WASTE § 14.02[1][c] ("unlike Section 104 government cleanups or Section 106 administrative orders, a federal judge rather than the EPA determines what remedy is 'necessary' and appropriate under the circumstances, which could yield remedies inconsistent with the EPA's policies and objectives") and § 14.02[5][i] ("as noted by most courts to consider the issue, a government request for injunctive relief under Section 106 (rather than enforcement of a previously issued order) is reviewed de novo, and thus the court is not bound by an arbitrary and capricious standard of review"); 4 WILLIAM H. RODGERS, JR., RODGERS' ENVTL. L. § 8:3[C][3][d][1] (West).

CERCLA section 106(a) provides two alternative ways in which the government may take action in the face of an endangerment or threat. The Attorney General may apply to a court for relief, or EPA (as the President's delegate) may issue a UAO. *Ottati & Goss*, 900 F.2d at 433

(holding that under section 106, EPA's options include seeking an injunction under section 106(a)'s first sentence *or* issuing an order under section 106(a)'s second sentence and enforcing the order under section 106(b)).  Because the United States seeks an injunction pursuant to section 106(a), the United States' path to relief is through the Court's equitable authority under the first sentence of section 106(a).  42 U.S.C. § 9606(a); s*ee also Ottati & Goss*, 900 F.2d at 433; *City of Rialto v. W. Coast Loading Corp.*, 581 F.3d 865, 870, n.2 (9th Cir. 2009); *Hardage*, 663 F. Supp. at 1284.

Moreover, the governments' remedy decision documents do not pre-determine the shape of a mandatory injunction to be issued by the Court under CERCLA section 106(a).  Section 121 requires EPA to consider nine criteria.  42 U.S.C. § 9621; 40 C.F.R. § 300.435(e)(9)(iii).[5]  The elements of the claim under section 106(a) are simply not the same.

The governments' decision documents were issued at a different time, under different circumstances.  As noted above, a lot has happened since.  The United States cannot ask this Court to find that conditions, knowledge, and finances are the same now as they were in 2007.  If the government claims that changes to conditions, knowledge, and finances since 2007 do not matter to the relief, there has to be some evidence from 2012 to prove that.  *Cf. Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 487 (1996) (holding that, under Resource Conservation and Recovery Act section 7003, determination of whether "imminent and substantial endangerment" exists must be made at present time); *United States v. Price*, 688 F.2d 204, 212-14 (3d Cir. 1982) (discussing the nature of equitable relief, which requires a showing of the elements at time of the

---

[5] The nine criteria are:  (A) overall protection of human health and the environment; (B) compliance with ARARs; (C) long-term effectiveness and permanence; (D) reduction of toxicity, mobility, or volume through treatment; (E) short-term effectiveness; (F) implementability; (G) cost; (H) state acceptance; and (I) community acceptance.  The statute and regulation include hundreds of words of additional gloss on these nine.

hearing); *see also* 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FED. PRAC. & PROC. CIV. § 2942 (2d ed.).  Otherwise the Court cannot possibly have a basis for any injunction.

Moreover, as to Certain Defendants, the upcoming trial is not simply the permanent injunction version of the preliminary injunction granted in 2012 *against NCR*.  Dkt. 370 [Order Granting Preliminary Injunction], *aff'd*, No. 12-2069 (7th Cir. Aug. 3, 2012).  First and most importantly, the equities and public interest as they apply to each of the Certain Defendants are different from the equities and public interest as applied to NCR (or any other of the Certain Defendants).  As the Court said in granting the preliminary injunction against NCR: "In the parallel contribution action, I have concluded that NCR knew or should have known that its carbonless copy paper would pose a serious risk to the environment and public health, whereas the other PRPs had no idea that PCBs were toxic.  This view was shared by the government."  Dkt. 370 at 14.

In *Whiting*, the United States compared the relative equities and public interest of all the parties to NCR and Appleton Papers Inc. ("API") as follows:

> [A]ny party – which includes the United States – that lacked knowledge of [NCR's and API's] actions relating to the knowing deposit of PCBs into the Fox River and their knowledge of the resulting potential harmful effect on the river during the production Period, or otherwise is not alleged to have deposited PCBs into the river during that period, should be accorded a zero percent allocation, given the fact that the post-Production Period involved a very small fraction (approximately 2%) of the total contamination.  Under the circumstances of this case, equity argues in favor of an early determination that parties meeting one of these criteria should not be dragged through a multi-year, costly litigation in order to assess whether they should contribute respective portions of approximately 2% of the costs for remediation of a problem created and perpetuated, nearly in all respects, by [NCR and API].

*Whiting* Dkt.[6] 649 [Brief of United States in Response to Certain Defendants' Three Separate Motions for Summary Judgment] at 5. The United States made similar statements to the Court of Appeals in seeking affirmance of this Court's order granting a preliminary injunction against NCR. 7th Cir. Dkt. 34 at 15. Furthermore, according to the United States in its 7th Circuit brief: "By taking control of the cleanup process through the LLC [API and NCR] formed and suing the other UAO recipients for contribution in the *Whiting* case, NCR and API effectively discouraged Georgia-Pacific and all of the other UAO recipients from becoming involved in a coordinated cleanup effort for the Site. Dkt. 2-1 at 14; Dkt. 203-4 at 2." 7th Cir. Dkt. 34 at 14; *see also* Dkt. 2-1 [Consent Decree with Georgia Pacific] at 14; Dkt. 203-4 [Aug. 12, 2011 Letter from EPA re Replacement of Project Coordinator, and 2011 and 2012 RAWP] at 2. Accordingly, proof that any one of the Certain Defendants is a "liable party" for Operable Units 2-5 (the subject of the UAO) and that the remedy selection was not arbitrary or capricious does not without more determine whether the Court should grant an injunction under the first sentence of CERCLA section 106(a) against any one of the Certain Defendants. The United States must prove that the public interest and the equities require that that specific defendant be enjoined.

### III. THE UNITED STATES ALSO MUST PROVE THE ELEMENTS OF LIABILITY UNDER CERCLA SECTION 107(a) AGAINST EACH DEFENDANT.

In addition to meeting the requirements of the first sentence of CERCLA section 106(a), as to each of the defendants, the United States must prove that that defendant is a "liable person" under section 107(a), 42 U.S.C. § 9607(a). *United States v. A & F Materials Co.*, 578 F. Supp. 1249, 1257 (S.D. Ill. 1984); *United States v. Outboard Marine Corp.*, 556 F. Supp. 54, 57 (N.D.

---

[6] Record citations to materials in the district court docket in the parallel *Whiting* case are referenced in this brief by the docket number and page number applied by the district court's Electronic Case Filing system in the *Whiting* case ("*Whiting* Dkt. at").

Ill. 1982); EPA, OSWER D<small>IR</small>. N<small>O</small>. 9835.7, G<small>UIDANCE ON</small> CERCLA S<small>ECTION</small> 106 J<small>UDICIAL</small> A<small>CTIONS</small> (1989) at 4 ("[i]n a judicial action brought under Section 106, EPA must also be able to prove that, because of a release or threat of a release of a hazardous substance from a facility, an imminent and substantial endangerment may exist at that facility"); *see also Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994).

To be liable under CERCLA section 106(a), a defendant must be a "covered person" under section 107(a) of CERCLA. Under CERCLA section 107(a) the United States must prove:

- that defendant has a relationship enumerated in section 107(a)(1)-(4) with a facility;[7]

- that the facility with which the defendant has that relationship is one from which there was a release of a hazardous substance;[8] and,

- that release caused the incurrence of response costs.

42 U.S.C. § 9607(a).

At trial, the United States must specify a facility on which it focuses for each defendant, and then must show a release from that facility with a causal connection to the response action at issue. Accordingly, the specification of the facility, the defendant's relationship to the facility, the release, and the response that that release caused are all part of the United States' *prima facie* case.

---

[7] That is, the United States must prove that that defendant is (1) a current owner or operator of the facility, (2) an owner or operator of the facility at the time of disposal, (3) an "arranger" for disposal, or (4) a transporter for disposal that participated in selection of the facility.

[8] Section 107(a) of CERCLA contains a printer's error that has not been corrected. A carriage return was omitted prior to the phrase "from which there is a release" in subsection 107(a)(4), and from that phrase to the dash should have been carried to the left margin. In that way, that phrase and subsections 107(a)(1-4)(A)-(E) apply to each of subsections 107(a)(1)-(4), and not just to subsection 107(a)(4). *See New York v. Shore Realty Co*, 759 F.2d 1032, 1043 n.16 (2d Cir. 1985).

- 10 -

## IV. CONCLUSION.

For the foregoing reasons, Certain Defendants respectfully request that the Court enter an order *in limine* establishing that among the elements of Plaintiff United States' Fifth Claim for Relief as against each defendant are:

- that the requested relief is "such relief as may be necessary to abate [the] danger or harm [to public health or welfare or the environment found by the President]";

- that the requested relief is "such relief as the public interest and the equities of the case may require";

- that the defendant has a relationship enumerated in section 107(a)(1)-(4) of CERCLA with a "facility"; and,

- that there is a release, or a threatened release, which causes the incurrence of response costs at issue, of a hazardous substance from that facility.

Further, Certain Defendants respectfully request that the Court enter an order *in limine* that the United States has the burden of proof on each of the elements listed above.

*PHI 316,949,180v7*

Dated: September 24, 2012                                   Respectfully submitted,

/s/ Nancy K. Peterson
Nancy K. Peterson (Wis. Bar No. 1000197)
Peter C. Karegeannes (Wis. Bar No. 1015025)
William H. Harbeck (Wis. Bar No. 1007004)
Quarles & Brady LLP
411 E. Wisconsin Avenue
Milwaukee, WI 53202
Telephone: 414-277-5000
nancy.peterson@quarles.com

**Attorneys for Defendant WTM I Company**

/s/ David G. Mandelbaum
David G. Mandelbaum
Francis A. Citera
Marc E. Davies
Caleb J. Holmes
Adam B. Silverman
GREENBERG TRAURIG, LLP
Two Commerce Square, Suite 2700
2001 Market Street
Philadelphia, PA  19103
215.988.7800
mandelbaumd@gtlaw.com

**Attorneys for Defendant P.H. Glatfelter Company**

/s/ Susan E. Lovern
Susan E. Lovern (#1025632)
Michael P. Carlton (#1016037)
Thomas Armstrong (#1016529)
Kelly J. Noyes (#1064809)
von Briesen & Roper, s.c.
411 East Wisconsin Avenue, Suite 700
Milwaukee, WI 53202
Telephone: (414) 276-1122
Fax: (414) 276-6281
slovern@vonbriesen.com
mcarlton@vonbriesen.com
tarmstro@vonbriesen.com
knoyes@vonbriesen.com

**Attorneys for Defendant CBC Coating, Inc.**

/s/ Philip C. Hunsucker
Philip C. Hunsucker
David A. Rabbino
Hunsucker Goodstein & Nelson PC
3717 Mt. Diablo Blvd., Suite 200
Lafayette, CA 94549
Telephone:  925-284-0840
Email:  phunsucker@hgnlaw.com

**Attorneys for Defendant Menasha Corporation**

- 12 -

*PHI 316,949,180v7*
Case 1:10-cv-00910-WCG   Filed 09/24/12   Page 13 of 15   Document 521

/s/ William J. Mulligan
William J. Mulligan
Kevin J. Lyons
Elizabeth K. Miles
Davis & Kuelthau, s.c.
111 E. Kilbourn Avenue, Suite 1400
Milwaukee, WI 53202
Telephone: (414) 276-0200
Facsimile: (414) 276-9369
Email: wmulligan@dkattorneys.com
klyons@dkattorneys.com
emiles@dkattorneys.com

**Attorneys for Defendant Neenah Menasha Sewerage Commission**

## CERTIFICATE OF SERVICE

I hereby certify that, on this 24th day of September 2012, a true and correct copy of the foregoing was filed electronically via the Electronic Court Filing system and is available for viewing and downloading.

/s/ David G. Mandelbaum
David G. Mandelbaum
Greenberg Traurig LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 988-7800
Facsimile: (215) 988-7801
mandelbaumd@gtlaw.com