IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

UNITED STATES OF AMERICA and
THE STATE OF WISCONSIN,

        Plaintiffs,

v.

NCR CORPORATION, *et al.*,

        Defendants.

Civil Case Action No.: 1:10-CV-00910
Hon. William C. Griesbach

**CERTAIN DEFENDANTS'[1] REPLY BRIEF ON MOTION TO COMPEL PRODUCTION
OF DOCUMENTS BY THE UNITED STATES AND THE STATE OF WISCONSIN**

---

[1] "Certain Defendants" include CBC Coating, Inc., Menasha Corporation, Neenah Menasha Sewerage Commission, P.H. Glatfelter Company, and WTM I Company.

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Introduction. | 1 |
| II. | The ESI Sought by Certain Defendants is Relevant Both to Plaintiffs' Phase 1 Case in Chief *and* to Divisibility. | 6 |
| | A. ESI Concerning Sediment Movement and Modeling Is Relevant to the United States' Phase 1 Case In Chief | 6 |
| | B. ESI Concerning Sediment Movement and Modeling Is Relevant to the Divisibility Defense | 7 |
| | C. Documents Concerning the USACE's Dredging Activities Are Relevant to the Injunction Being Sought By the United States in Phase 1 | 8 |
| | D. Plaintiffs Admit, and Recently Produced Documents Prove, Relevant ESI Exists But Has Not Been Produced. | 10 |
| III. | The ESI Requested by Certain Defendants is Not Disproportionately Burdensome in this $1 Billion Lawsuit. | 13 |
| IV. | Plaintiffs *Have* Produced Thousands of Pages of Useless Documents. | 14 |
| V. | Plaintiffs' Arguments Regarding the Balancing of the NARA Burdens Are Wrong. | 15 |
| VI. | Conclusion. | 15 |

## I. INTRODUCTION.

This Motion to Compel is *not* about moving the December 3, 2012 trial date or extending the already-passed discovery deadline. This Motion also is *not only* about dredging documents, as the United States Government (the "United States") and the State of Wisconsin ("the State") (collectively, "Plaintiffs") now would have the Court believe. Rather, this Motion is about Plaintiffs' refusal to produce documents – specifically electronically stored information ("ESI") – that Plaintiffs have *admitted* are relevant to both their case in chief and the divisibility issues to be tried in December.

As discussed below, Certain Defendants obtained key evidence from the United States' Rule 30(b)(6) depositions during the last week of fact discovery about dredging upstream of the DePere Dam in the 1950s and 1960s, so they are withdrawing their motion as to the NARA documents for this Phase 1. Accordingly, this reply brief focuses on the failure of the Plaintiffs to produce ESI relevant to:

- The United States' elements of proof under CERCLA Sections 106 and 107;
- The equities of the case for an injunction under the express language of the first sentence of CERCLA Section 106(a); and,
- The divisibility defense.

The information sought by Certain Defendants, including the documents sought in the Requests, was understood by Plaintiffs to encompass sediment movement and modeling, as evidenced by Plaintiffs' production of modeling-related documents in response to the Requests. *See* Dkt. 529-2 at 2 [Randall Stone June 1, 2012 letter]. Now, in an effort to distract the Court from the key issues on which Certain Defendants seek discovery, Plaintiffs' brief in opposition focuses only on dredging-related documents. However, during the August 24, 2012 telephonic

1

conference, Plaintiffs admitted that the discovery disputes were not limited to dredging and *correctly* stated:

> We made clear in June that we would not be making a full computer to computer search of every employee's computer of things like emails and other disorganized electronic files. ***That seems to be what the discovery disputes are about as far as defendants are concerned by and large right now.***

Supplemental Declaration of David A. Rabbino ("Rabbino Supp. Decl."), ¶ 3, Exhibit A at 5:20-22 and 7:2-7 [August 24, 2012 Transcript] (emphasis added). In light of the requirements of the Federal Rules of Civil Procedure and the Joint Discovery Plan adopted by the Court (Dkt. 260), Plaintiffs' refusal cannot be justified.

Furthermore, the Plaintiffs wrongly claim that the Court's denial of Certain Defendants' motion to supplement the Administrative Record (Dkt. 498) eliminates the need for discovery on the models. One recent example demonstrates why this is wrong. Plaintiffs responded to interrogatories from WTM I Company seeking information about whether Plaintiffs contend that releases from WTM I in OU 1 would cause the incurrence of response costs in OU 4 in the future, the subject of the injunction being sought in this Phase 1. Rabbino Supp. Decl., ¶ 5, Exhibit B at 6 [United States' Responses to WTM I's Interrogatory No. 1]. The Plaintiffs responded that they ***do contend*** releases from OU 1 will cause response costs in OU 4 in the future, then listed the evidence that they assert supports that contention. *Id.* at 6-7. According to the Plaintiffs, this evidence includes "***documents produced in this case*** . . . [that] ***reference or reflect communications concerning the transport of PCBs or sediments at the Site, including***:"

> (ii) ***documents concerning the Whole Lower Fox River Model ("wLFRM"), which is described and documented in the Final Model Documentation Report in the Administrative Record*** . . .; (iv) ***documents concerning Technical Memorandum 2g***: Quantification of Lower Fox River Sediment Bed Elevation Dynamics through Direct Observations ("Technical Memorandum 2g"), which is included in the Final Documentation Report in the Administrative Record; and (v) ***other documents concerning the remedial investigation for the Site***, including the Draft Remedial Investigation Report and the Final Remedial Investigation Report in the Administrative Record.

*Id.* (emphasis added). Thus, it is clear that the Plaintiffs intend to use the wLFRM model (the "Model") and other documents related to the transport of PCBs or sediments at the Site in an effort – not only to justify the remedy – but also to prove that sediments from OU 1 moved more than 30 miles down the Lower Fox River to OU 4 in sufficient concentrations to cause response costs to be incurred in OU 4. Thus, this evidence is relevant to the elements of Plaintiffs' case in chief *and* to the divisibility defense. Since Phase 1 includes Certain Defendants' divisibility defenses (Dkt. 491-2 at 16:24-20:24 [May 3, 2012 Hearing Transcript]), this information should be produced.

To be sure, Certain Defendants *did* seek discovery of information related to the dredging activities conducted by the USACE at the Site. This information is relevant to the equities of Plaintiffs seeking injunctive relief against other PRPs in Phase 1 because it shows that the USACE is also a PRP (as the United States conceded during the August 24, 2012 conference), because its dredging and disposal activities spread PCB contaminated sediment within the OU4 (Dkt. 518 at 10), thereby increasing the cleanup costs. Indeed, Plaintiffs admit that their "dredging and disposal of contaminated sediments at the Site . . . resuspended and moved PCBs." Dkt. 224, ¶ 70. The Plaintiffs' opposition brief itself demonstrates where the USACE made the problem *worse in both OU 4 and OU 5*. Dkt. 518 at 8-10.

In addition, the dredging information is relevant to the divisibility defense, as the United States has admitted. In its Responses to Menasha's Requests for Admissions, the United States repeatedly admits: "Pursuant to the Court's Order allowing discovery by the defendants on the issue of divisibility of the harm, the United States recently began preparing its discovery under the civil procedure rules regarding, among other things, dredging activities at the Site." Rabbino Supp. Decl., ¶ 7, Exhibit C [United States Response to Requests for Admission 119 to 309].

In order to avoid further production of clearly-relevant information, the Plaintiffs claim they cannot possibly complete production of ESI by the trial date and, for that reason, they should not have to produce it. However, none of the six declarations submitted by Plaintiffs to oppose this motion details any *future* burden on the Plaintiffs, so should they be ordered to respond fully to the Requests. *See* Dkt. 512, 513, 514, 515, 516, and 517. And, Plaintiffs admit they refused to look for ESI while responding to discovery served in May 2012. Rabbino Supp. Decl., ¶ 3, Exhibit A at 5:20-22 [August 24, 2012 Transcript]. Nothing in the Federal Rules of Civil Procedure justifies Plaintiffs' refusal. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 34(a). Indeed, the Plaintiffs understood they had a duty to produce ESI because the Joint Discovery Plan they entered into requires it. Dkt. 260. Plaintiffs also claim undue burden in this phase of the lawsuit *they brought* in which they seek to hold Certain Defendants (and others) liable to perform a $1 billion cleanup. However, balancing any potential burden facing Plaintiffs with that facing Certain Defendants should they be held liable in Phase 1 justifies the discovery sought by Certain Defendants. "[T]he importance of the issues at stake in the litigation," require a response from Plaintiffs. *See* Fed. R. Civ. P. 26 advisory committee notes.

Finally, as expected, Plaintiffs repeatedly point to the "millions of pages of documents" they have already produced and the hundreds of requests for admissions to which they have responded. Dkt. 518 at 3-4, 17. That Plaintiffs already have produced voluminous documents in this lawsuit does not minimize their obligation to produce additional responsive and relevant documents, especially where – as here – *they still have not searched for ESI generated by their own agencies*. Plaintiffs attempt to ridicule Certain Defendants for requesting a group of presentation slides containing admittedly relevant information, by pointing to one slide within that group of a "Batman photo" meant as a joke by the presenter. Dkt. 518 at 12. More important is

4

the fact that the millions of pages produced by the Plaintiffs include large quantities of clearly non-relevant and non-responsive documents, as well as many repetitive documents produced over and over. Rabbino Supp. Decl., ¶ 10, Exhibit D, and ¶ 11. Plaintiffs also ignore that a great many of the requests for admissions they point to were document authentication requests, which do not "narrow the scope" of the issues remaining, as asserted by Plaintiffs to the Court. Rabbino Supp. Decl., ¶ 8. Of the 314 Requests for Admissions served on the United States, only 49 (or 16%) were not requests for document authentication or requests to admit that a document contained a certain statement. *Id.*

Plaintiffs claim discovery has reached the point of diminishing returns. Dkt. 518 at 2. That argument cannot apply to entire categories of ESI sought by Certain Defendants that have been omitted from production, including but not limited to, EPA comments on the Model and dredging performed by the USACE. The Federal Rules as amended take "an expansive approach toward discovery of ESI." *Mirbeau of Geneva Lake LLC v. City of Lake Geneva*, No. 08-CV-693, 2009 WL 3347101 *1 (E.D. Wis. 2009), citing Fed. R. Civ. P. 34(a) advisory notes. The Eastern District has recognized that, after the amendments, "discovery of [ESI] stands on *equal* footing with discovery of paper documents." *Id.* (emphasis added). Plaintiffs agreed to produce ESI and they are required to under the Federal Rules, nonetheless they refuse to comply.

Plaintiffs cannot reasonably claim that ESI maintained by their own custodians is not "reasonably accessible." *See* Fed. R. Civ. P. 26(b)(2). Certain Defendants seek relevant ESI related to their claims and defenses in this action and the Plaintiffs – who admit that "Department of Justice is the world's largest law office, employing more than 10,000 attorneys nationwide -"[2] should be ordered to produce it.

---

[2] http://www.justice.gov/oarm/.

## II. THE ESI SOUGHT BY CERTAIN DEFENDANTS IS RELEVANT BOTH TO PLAINTIFFS' PHASE 1 CASE IN CHIEF *AND* TO DIVISIBILITY.

### A. ESI Concerning Sediment Movement and Modeling Is Relevant to the United States' Phase 1 Case In Chief.

The United States' Count V is a request for a mandatory injunction, so Phase 1 includes all the elements of that claim. *See* Dkt. 520, 521. Specifically, the United States must establish all of the required elements of CERCLA sections 106 and 107. *Id.* at 5, 10. As part of their case in chief for Phase 1, Plaintiffs must prove the elements of both CERCLA sections 106 and 107 as to the Certain Defendants. *See* Dkt. 521. These include:

- That the order the United States seeks is "such relief as may be necessary to abate such danger or threat;"
- That the order is "such relief as the public interest and the equities of the case may require;"
- That defendant has a relationship enumerated in CERCLA section 107(a)(1)-(4) with a facility;
- That the facility with which the defendant has that relationship is one from which there was a release of a hazardous substance; and,
- That a release caused the incurrence of response costs.

*Id.* at 5, 10.

For the last element, in order to obtain an injunction for the remaining cleanup, the United States must demonstrate that a release from upstream parties will cause the incurrence of response costs in OU 4, since that is the only place where more cleanup under the UAO is to occur. Dkt. 521. Certain Defendants' requests for documents concerning modeling and sediment movement go directly to these elements because, as Plaintiffs admit, documents supporting their contention that Certain Defendants will cause response costs to be incurred pursuant to the UAO in the future include "***documents produced in this case*** . . . [that] ***reference or reflect communications concerning the transport of PCBs or sediments at the Site, including***:"

6

(ii) ***documents concerning the Whole Lower Fox River Model ("wLFRM")***, which is described and documented in the Final Model Documentation Report in the Administrative Record . . .; (iv) ***documents concerning Technical Memorandum 2g***: Quantification of Lower Fox River Sediment Bed Elevation Dynamics through Direct Observations ("Technical Memorandum 2g"), which is included in the Final Documentation Report in the Administrative Record; and (v) ***other documents concerning the remedial investigation for the Site***, including the Draft Remedial Investigation Report and the Final Remedial Investigation Report in the Administrative Record.

*See, e.g.,* Rabbino Supp. Decl., Exhibit B at 6-7 [United States' Responses to WTM I's Interrogatory No. 1] (emphasis added). Thus, the documents sought by Certain Defendants in this phase of discovery are ***not only*** about dredging as Plaintiffs claim. Rather, the United States is relying on evidence about sediment movement and modeling to prove its own case at trial in December 2012 and Certain Defendants are entitled to discover this evidence. As a result, Certain Defendants are entitled to ESI discovery about the elements of Plaintiffs' case in chief.

**B.  ESI Concerning Sediment Movement and Modeling Is Relevant to the Divisibility Defense.**

The trial starting on December 3, 2012 is limited to Phase 1 issues and the United States seeks an injunction under CERCLA section 106(a) for the remaining OU 4 cleanup. For the divisibility defense, dredging is important as a pathway for PCB contaminated sediment movement from OU 5 to OU 4 and within OU 4. *See* Dkt. 224, ¶ 70; Dkt. 518 at 8-10. Over 300 million pounds per year of new sediment enters the river from Lake Winnebago and the watershed for the river. Rabbino Supp. Decl., ¶ 14, Exhibit G at 32 [Total Maximum Daily Load and Watershed Management Plan for Total Phosphorus and Total Suspended Solids in the Lower Fox River Basin and Lower Green Bay (Dec. 2011)]. In the face of the dilution caused by the 300 million pounds of new sediment every year, transportation of dredge spoils by the USACE from upstream of OU 4 into OU 4 is a ***potential*** pathway for movement of PCB contaminated sediment. Before the present Motion was filed, it was not resolved whether the USACE transported sediments from

above the DePere Dam (OUs 1-3) to below the DePere Dam (OU 4 or OU 5). Deposition testimony obtained after this Motion was filed establish that upstream of the DePere Dam:

- Dredging by the USACE was considered a different project than that below the DePere Dam;

- Dredge spoils were disposed of adjacent to where they were dredged; and,

- Spoils of dredging were not transported by the USACE to anywhere below the DePere Dam.

Rabbino Supp. Dec., ¶ 15, Exhibit H at 178:2-18, 188:16-20, 202:2-13 and 220:10-16 [Jan Miller Depo.]. As a result of the Rule 30(b)(6) deposition of the United States taken the last week of fact discovery it is now clear that the USACE did not transport sediment from OU 1, OU 2 or OU 3 to OU 4. Accordingly, transportation of dredge spoils by the USACE remains important for sediment movement from OU 5 into OU 4 and within OU 4, but not from above the DePere Dam into OU 4.

### C. Documents Concerning the USACE's Dredging Activities Are Relevant to the Injunction Being Sought By the United States in Phase 1.

Pursuant to CERCLA Section 106(a), "the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require." 42 U.S.C. § 9606(a). Discovery of dredging activities by the USACE is relevant to the equities of the case at issue in Phase 1 because:

- The United States admits that, by January 1975, at the latest, sampling conducted on behalf of the USACE confirmed that the contaminants in at least some of the sediments in the river included PCBs. Rabbino Supp. Decl., ¶ 9, Exhibit C at 160-161 [United States Response to Request for Admission 308].

- Despite knowing about PCB contamination in sediments in the river and despite knowing that its dredging operations would spread PCBs, the USACE made no changes in its operations up until the present day. Rabbino Supp. Decl., ¶ 13, Exhibit F at 37:18-22 [Deposition of James Bumford] ("Q: Did the exist – did the knowledge of the existence of PCBs in the dredged materials cause you to change any of your dredging or captainsy practices on the river? A: *Not a bit. It hasn't changed to this day.*" (emphasis added)).

- As demonstrated in Plaintiffs' opposition, the USACE's navigational dredging made the cleanup of PCBs at the Site more difficult and costly. Dkt. 518 at 8-10; *see also* Dkt. 224, ¶ 70.

The following graphic is an example from the Plaintiffs' opposition brief showing OU 4B sediments were moved by the USACE to OU 4A:



Dkt. 518 at 8. When the Court asked counsel for the United States during the August 24, 2012 hearing whether the USACE could be liable under CERCLA for the cleanup, this was the response:

> ***That defendants may well have decent arguments that the Army Corps – and therefore the federal government is itself a potentially responsible party at this site, and that things like open water disposal made the Army Corps, and therefore the federal government, a potentially responsible party.*** The question is how is that dealt with in a case like this? ***Our answer*** is that gives rise to a potential claim for contribution. That is not to be dealt with in this phase of the case.

Rabbino Supp. Decl., ¶ 4, Exhibit A at 23:4 – 24:11 [August 24, 2012 Transcript] (emphasis added). Indeed, the act of redistributing contaminated soil has long been deemed an "act of

disposal" under CERCLA.[3] This concept applies to dredging by the USACE. *United States v. Washington Dept. of Transp.*, 665 F. Supp. 2d 1233 (W.D. Wash. 2009) (State of Washington has a valid claim under CERCLA against the United States on the basis of its dredging the Foss Waterway that increased the cost of the remedy). As the United States also admitted at the August 24, 2012 hearing:

> In the 250 admissions to the initial wave of requests for admission that we received, the Army Corps admitted that it disposed of material in open water in the river until at least 1966, that it disposed of material in open water in Green Bay until at least 1974, that when Army Corps dredging is conducted with a bucket dredge that it disturbs (indiscernible) sediment.

Rabbino Supp. Decl., ¶ 4, Exhibit A at 22:4-14 [August 24, 2012 Transcript]. Significantly, the United States' "answer" that its own acts that increased the cost of the remedy only should be considered in a contribution case ignores the language of the first sentence of CERCLA Section 106(a), which requires that the equities be considered for the injunction being sought by the United States in this Phase 1.

### D. Plaintiffs Admit, and Recently Produced Documents Prove, Relevant ESI Exists But Has Not Been Produced.

Documents produced in this action to date indicate that additional ESI concerning sediment movement, the models and dredging performed by the USACE exists and is likely to be in the possession of EPA, USACE, U.S. Fish & Wildlife and WDNR. Indeed, the United States admits

---

[3] *See United States v. Honeywell Intern., Inc.*, 542 F. Supp. 2d 1188, 1199 (E.D. Cal. 2008) (Developers could be held liable under CERCLA notwithstanding the fact they did not introduce the hazardous substances into the environment in the first place.); *Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.*, 976 F.2d 1338, 1342 (9th Cir. 1992) ("Disposal" should be broadly construed to include the "subsequent 'move[ment], dispers[al], or release ... [of such substances] during landfill excavations and fillings'"), quoting *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1573 (5th Cir. 1988); and, *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489 (11th Cir. 1996) (CERCLA's definition of "disposal" was not limited to instances where a hazardous substance is initially introduced into the environment at a facility); s*ee also City of Waukegan v. Nat'l Gypsum*, 560 F. Supp. 2d 636, (N.D. Ill. 2008), vacated on other grounds, 2008 WL 4201680 (N.D. Ill. 2008).

"EPA has identified and sequestered – but has not collected, reviewed, or produced – *more than 60,000 emails that may reference or relate to this Site*, as well as an additional 28 gigabytes of other electronic information." Dkt. 518 at 18 (emphasis added). In their "Written Response" to Menasha's Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6), the Plaintiffs admitted the following:

- "EPA has identified over 60,000 emails, many of which contain attachments, and electronic documents . . . *The United States dos [sic] not intend to review and produce these documents because it would be unduly burdensome*. The United States has not conducted and does not intend to conduct any electronic searches for responsive documents;"

- From 22 custodians, the USACE "Detroit District identified 73,598 electronic files, totaling approximately 881,884 pages, which were responsive to Menasha's several document production requests . . . Notwithstanding our use of search terms proposed by Menasha, an initial review of the documents indicates that a substantial number of these documents are not responsive to any of the Defendants' requests. The United States does not intend to produce this electronically stored information due to the burdensome nature of this process compared to the potential relevance of the documents;"

- "While at least some of the custodians at the [USACE] Headquarters have [ESI], that information will not be searched for or produced;"

- ESI at Fish and Wildlife was not searched or produced; and,

- ESI from only two custodians at WDNR – Edward Lynch and Xiaochun Zhang – was produced and WDNR relied on the custodians' own self-collection for the production.

Rabbino Decl., ¶ 17, Exhibit J at 10, 15, 16, 22-23 and 34-35 (emphasis added) [Plaintiffs' Written Rule 30(b)(6) Responses]. The United States designated James Hahnenberg from EPA, and Dr. Joseph Gailani and Jan Miller from the USACE, as its Rule 30(b)(6) designees on modeling and USACE dredging. Rabbino Supp. Decl., ¶ 16, Exhibit I at 4-5.

The United States has produced *no* ESI from EPA, USACE or U.S. Fish & Wildlife. *At a minimum, the United States should have produced the ESI generated by those custodians at EPA, USACE and U.S. Fish & Wildlife who worked on the Models, who analyzed the dredging at the Site, or who were designated as Rule 30(b)(6) witnesses.* The State of Wisconsin produced

11

*some* ESI only from two custodians, Edward Lynch and Xiaochun Zhang. Mr. Lynch's emails only were gathered because he changed roles at WDNR – not in connection with this lawsuit – so there was no review to ensure the collection was comprehensive. Furthermore, for Dr. Zhang, none of her emails were identified through a search for ESI; rather, they were self-collected by Dr. Zhang and then provided to WDNR. At a minimum, the State should have produced ESI for its deposed current and former employees who worked on modeling and dredging issues.

Mark Velleux, the former WDNR employee who worked on the model, testified WDNR utilized email the entire time he worked there. Rabbino Supp. Decl., ¶ 18 at 46:17-22, 64:22-65:8 [Velleux Depo.]. Certain Defendants' review of documents produced by Plaintiffs since June 1, 2012 demonstrates WDNR was communicating with EPA and U.S. Fish & Wildlife about the models, including whether or not the Model was properly calibrated as required by Technical Memorandum 1. *See* Dkt. 529 at ¶¶ 49 *et seq.* [Hunsucker Decl.]. As Certain Defendants' Motion for Reconsideration demonstrates, several recently-produced emails evidence communications between EPA, U.S. Fish & Wildlife and WDNR regarding issues key to Phase 1. Dkt. 528, 529. Notwithstanding these highly relevant and clearly non-privileged communications, both the United States and the State have refused to undertake any review for additional ESI.

Certain Defendants do not understand why the Plaintiffs should be permitted to self-select what information will be made public and provided in this action. Under the Federal Rules, litigants are supposed to be subject to the same standards regardless of who they are. Plaintiffs should not be the ones to decide what is relevant and important to the claims and defenses – Certain Defendants should get a say as well and did that through the discovery in this action.

### III. THE ESI REQUESTED BY CERTAIN DEFENDANTS IS NOT DISPROPORTIONATELY BURDENSOME IN THIS $1 BILLION LAWSUIT.

Through Count V to be determined in Phase 1 in December, Plaintiffs seek an injunction ordering the defendants to perform under the UAO. It is estimated that the costs for this Phase alone are likely to be hundreds of millions of dollars. Yet, while Plaintiffs acknowledge that the "discovery process has been extraordinarily time-consuming and resource-intensive for all involved," they claim the balancing of the ESI burden analysis weighs in their favor." Dkt. 518 at 2. Plaintiffs' burden allegations should not tip the scales when balanced with the magnitude of their own claims against Certain Defendants, and, as discussed below, the balance favors Certain Defendants instead.

First, Plaintiffs admit that they *already* have gathered, or at least identified and segregated, much of the responsive ESI which Certain Defendants seek: "***EPA has identified and sequestered*** – but has not collected, reviewed, or produced – ***more than 60,000 emails that my reference or relate to this Site*** . . ." Dkt. 518 at 18. There is no reason the United States cannot produce these emails without further review, therefore, there should be minimal actual burden in producing these documents. Plaintiffs already have availed themselves of the privilege claw-back procedures afforded by Federal Rule of Civil Procedure 26(b)(5)(B) and the Joint Discovery Plan (Dkt. 260) at least three times recently in this action. Rabbino Supp. Decl., ¶ 19, Exhibit K [Randall Stone July 12, September 19 and September 26, 2012 claw-back letters]. Certain Defendants have complied with each of these claw-back requests. ***At a minimum***, EPA should produce the 60,000 Site-related emails and other electronic documents it has identified and WDNR should produce the "133,000 additional e-mails, plus an untold amount of other electronic documents possessed by at least 25 custodians." Dkt. 518 at 18-19.

13

Further, Plaintiffs' claim that "[t]here is no reason to believe that production of additional ESI would be illuminating, even if record review principles were ignored," is wrong for all the reasons discussed above as to the relevancy of the information sought by Certain Defendants. Dkt. 518 at 19. The ESI recently produced proves not only that additional relevant and responsive ESI exists, but also that the ESI not being provided is likely to contain "illuminating" information damaging to Plaintiffs' positions.

Finally, Plaintiffs have provided no evidence of future burden to support their claim that they cannot complete production in time for the December trial. Not one of the six declarations filed by the Plaintiffs even discusses the burden of producing ESI. This failure alone should be fatal to the Plaintiffs' burden claim. Furthermore, the ESI being sought through this Motion was requested *five months ago* and the United States is represented by the United States Department of Justice – which admits it is the "*world's largest law office, employing more than 10,000 attorneys nationwide*" (Rabbino Supp. Decl., ¶ 12, Exhibit E) – so the claim of undue burden is really just a run-out-the-clock tactic.

## IV. PLAINTIFFS *HAVE* PRODUCED THOUSANDS OF PAGES OF USELESS DOCUMENTS.

As they have throughout the discovery period, Plaintiffs complain again about the *quantity* of documents they have had to produce, but Certain Defendants are concerned with the *quality* of the production. Certainly, a lot of information has been produced, some of which Certain Defendants have identified as relevant, responsive and important to the issues to be tried. *See, e.g,* Dkt. 528, 529. However, many of the same documents were produced multiple times and a great deal of other documents in the production can only be characterized as unsegregated junk. A few examples include documents relating to EPA's Black History Month events, a photograph of WDNR employees out to dinner, and George Berken's lifestyle and nutrition assessment. Rabbino

Supp. Decl., ¶ 10, Exhibit D. In light of Plaintiffs' production of these clearly non-responsive documents, their repeated assertions that they must actually review *all* of the ESI they have already segregated before production ring hollow.

## V. PLAINTIFFS' ARGUMENTS REGARDING THE BALANCING OF THE NARA BURDENS ARE WRONG.

Plaintiffs' claims that documents at NARA are as equally accessible to Menasha as they are to the USACE are both unbelievable and wrong. However, as to the NARA documents, the practical realities at this time are:

1) Certain Defendants finally obtained key evidence regarding the USACE's operations in the 1950s and 1960s above the DePere Dam for Phase 1 during the final week of fact discovery;

2) NARA documents were being sought because they covered the USACE's operations in the 1950s and 1960s; and,

3) Certain Defendants prefer to allocate their remaining resources before the upcoming trial to other efforts.

Accordingly, Certain Defendants withdraw their Motion to Compel as to the NARA documents, for this Phase 1 of the action.

## VI. CONCLUSION.

For all of the reasons discussed above and in the Motion to Compel, Plaintiffs should be ordered to produce relevant and responsive ESI.

| | |
|---|---|
| Dated: October 4, 2012 | Respectfully submitted, |

/s/ Philip C. Hunsucker

Philip C. Hunsucker
David A. Rabbino
Hunsucker Goodstein PC
3717 Mt. Diablo Blvd., Suite 200
Lafayette, CA 94549
Telephone: (925) 284-0840
Fax: (925) 284-0870
phunsucker@hgnlaw.com
drabbino@hgnlaw.com

Anne E. Lynch
Hunsucker Goodstein PC
5335 Wisconsin Avenue NW, Suite 360
Washington, DC 20015
Telephone: (202) 895-5380
Fax: (202) 895-5390
alynch@hgnlaw.com

**Counsel for Menasha Corporation**

 s/ Susan E. Lovern
Susan E. Lovern (#1025632)
Michael P. Carlton (#1016037)
Thomas Armstrong (#1016529)
Kelly J. Noyes (#1064809)
von Briesen & Roper, s.c.
411 East Wisconsin Avenue, Suite 700
Milwaukee, WI 53202
Telephone: (414) 276-1122
Fax: (414) 276-6281
slovern@vonbriesen.com
mcarlton@vonbriesen.com
tarmstro@vonbriesen.com
knoyes@vonbriesen.com

**Attorneys for Defendant CBC Coating, Inc.**

s/ William J. Mulligan
William J. Mulligan (WI Bar No. 1008465)
Kevin J. Lyons (WI Bar No. 1013826)
Elizabeth K. Miles (WI Bar No. 1064284)
Davis & Kuelthau, s.c.
111 E. Kilbourn Avenue, Suite 1400
Milwaukee, WI 53202
Telephone: (414) 276-0200
Fax: (414) 276-9369
wmulligan@dkattorneys.com
klyons@dkattorneys.com
emiles@dkattorneys.com

**Attorneys for Defendant
Neenah-Menasha Sewerage Commission**

 s/ Nancy K. Peterson
Nancy K. Peterson (Wis. Bar No. 1000197)
Peter C. Karegeannes (Wis. Bar No. 1015025)
Arthur A. Vogel, Jr. (Wis. Bar No. 1010425)
William H. Harbeck (Wis. Bar No. 1007004)
QUARLES & BRADY LLP
411 East Wisconsin A venue
Milwaukee, WI 53202
Telephone: 414-277-5000
E-mail: nancy.peterson@quarles.com

**Counsel for Defendant WTM I Company**

s/ David G. Mandelbaum
David G. Mandelbaum
Francis A. Citera
Marc E. Davies
Caleb J. Holmes
Adam B. Silverman
GREENBERG TRAURIG, LLP
Two Commerce Square, Suite 2700
2001 Market Street
Philadelphia, PA  19103
215.988.7800
mandelbaumd@gtlaw.com

**Counsel for Defendant P.H. Glatfelter Co.**