IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA and THE STATE OF WISCONSIN<br><br>　　　　Plaintiffs,<br><br>　　　v.<br><br>NCR CORPORATION, et al.<br><br>　　　　Defendants. | Civil Action No. 10-C-910 |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT THAT
DEFENDANTS ARE LIABLE PARTIES UNDER CERCLA SECTION 107(a)**

**General Facts**

　　　1.　　The Lower Fox River and Green Bay Site is a "facility" within the meaning of 42 U.S.C. § 9601(21). Declaration of Jeffrey A. Spector ("Spector Decl."), Ex. 1 (CBC Answer) at ¶ 43; Ex. 2 (CBC RFA) at 8; Ex. 3 (Glatfelter Answer) at ¶ 43; Ex. 4 (Menasha RFA) at 11; Ex. 5 (NCR Answer) at ¶ 43; Ex. 6 (NCR RFA) at 10; Ex. 7 (WTM RFA) at 5; Ex. 8 (WTM Answer) at ¶ 43.

　　　2.　　The Site is contaminated with PCBs. Spector Decl., Ex. 1 at ¶ 4; Ex. 2 at 10; Ex. 4 at 16; Ex. 6 at 14; Ex. 7 at 7; Ex. 8 at ¶ 4; Ex. 9 (Glatfelter RFA) at 12; Ex. 10 (Menasha Answer) at ¶ 4; Ex. 11 (NCR Amended Answer) at ¶ 4.

　　　3.　　PCBs are a "hazardous substance" within the meaning of CERCLA §§ 101(14) and 107(a), 42 U.S.C. §§ 9601(14) and 9607(a). Spector Decl., Ex. 1 at ¶ 44; Ex. 2 at 8; Ex. 3 at ¶ 44; Ex. 4 at 11; Ex. 6 at 10; Ex. 8 at ¶ 44; Ex. 9 at 9; Ex. 10 at ¶ 44; Ex. 11 at ¶ 44.

4. The United States and the State of Wisconsin incurred response costs at the Site. Spector Decl., Ex. 1 at ¶ 14; Ex. 6 at 11; Ex. 7 at 5-6; Ex. 8 at ¶ 14; Ex. 9 at 10; Ex. 10 at ¶ 14; Ex. 11 at ¶ 14.

5. The United States and the State of Wisconsin incurred response costs relating to each Defendant, including costs spent investigating PCB releases by each Defendant. Spector Decl., Ex. 19 (Tech Memo 2d, excerpts at Appendix B, Appendix C); Ex. 21 (Administrative Order for Remedial Action, Appendix 1).

**CBC Coatings Inc.**

6. CBC (formerly known as Riverside Paper Corporation) is a corporation that owned and operated a paper production facility at 800 South Lawe Street in Appleton, Wisconsin (the "Riverside Facility") from at least 1954 until 2005. Spector Decl., Ex. 2 at 4.

7. CBC owned and operated the Riverside Facility when the United States filed the Complaint. Spector Decl., Ex. 2 at 9.

8. CBC is a "person" as defined by 42 U.S.C. § 9601(21). Spector Decl., Ex. 2 at 4.

9. CBC processed waste paper and other secondary fiber, some of which contained PCB-containing carbonless copy paper, at the Riverside Facility. Spector Decl., Ex. 2 at 4; Ex. 12 (Burzynski Dep., Aug. 17, 2009) at 38:4- 43:21, 54:3-61:17; Ex. 13 (R. J. Farley and H. Bressers Letter).

10. Between 1954 and 1980, the Riverside Facility discharged wastewater, some of which contained PCBs, through an outfall to the Lower Fox River. Spector Decl., Ex. 2 at 5-7; Ex. 14 (Holzknecht Dep., April 16, 2009) at 67:8-71:4, 74:11-75:6, 77:21-79:19; Ex. 15 (Farnum Dep., March 27, 2009) at 70:4-73:8; Ex. 16 (Kerwin Paper Application); Ex. 17 (Riverside Paper

2

Identification Form) at CBCFOX00003496; Ex. 18 (PCB Data Synopsis); Ex. 19 at CBCFOX00003888; Ex. 20 (Kerwin Paper Co. Lab. Analysis).

11. The Riverside Facility is a "facility" within the meaning of 42 U.S.C. §§ 9601(9) and 9607(a). Spector Decl., Ex. 1 at ¶ 43; Ex. 2 at 8.

12. Between 1973 and 1980, the Riverside Facility discharged a portion of its process wastewater, some of which contained PCBs, to the City of Appleton POTW for disposal or treatment. Spector Decl., Ex. 2 at 10; Ex. 19 at CBCFOX00003888; Ex. 17 at CBCFOX00003493; Ex. 22 (Riverside Paper Co., Report of Effluent Analysis) at CBCFOX00003499; Ex. 23 (Riverside Paper Corp. Lab. Analysis); Ex. 24 (D. Buser, Expert Report) at 3-4.

13. The City of Appleton POTW discharged wastewater containing PCBs to the Lower Fox River. Spector Decl., Ex. 2 at 7; Ex. 25 (WSLOH Reports) at WDNR109000843, WDNR109000846, WDNR109000866; Ex. 28 (PCBs in Major WI Industrial and Municipal WWTP Facilities).

14. The City of Appleton POTW is a "facility" within the meaning of 42 U.S.C. §§ 9601(9) and 9607(a). Spector Decl., Ex. 1 at ¶ 43; Ex. 2 at 8.

**P.H. Glatfelter Company**

15. The Bergstrom Paper Company was a Wisconsin corporation that owned and operated the Bergstrom Mill, a paper recycling mill located at 225 West Wisconsin Avenue in Neenah, Wisconsin from at least 1954 to 1979. Spector Decl., Ex. 9 at 4; Ex. 3 at ¶ 90.

16. In 1979, the Bergstrom Paper Company merged into the P.H. Glatfelter Company and Glatfelter thereafter owned and operated the Bergstrom Mill until it was closed and sold. Spector Decl., Ex. 9 at 5.

17. Following Glatfelter's merger with the Bergstrom Paper Company in 1979, Glatfelter was the surviving corporation. Spector Decl., Ex. 9 at 5.

18. The Bergstrom Paper Company operated the Arrowhead Park Landfill, located adjacent to the Bergstrom Mill, from at least 1954 to 1976. Spector Decl., Ex. 9 at 4.

19. The Bergstrom Paper Company was a "person" within the meaning of CERCLA Sections 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a). Spector Decl., Ex. 9 at 5.

20. Glatfelter is a "person" within the meaning of CERCLA Sections 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a). Spector Decl., Ex. 3 at ¶ 39; Ex. 9 at 5.

21. At times between at least 1954 and 1980, the Bergstrom Mill processed waste paper, some of which contained PCBs, including post-consumer, PCB-containing, carbonless copy paper. Spector Decl., Ex. 3 at ¶ 91; Ex. 9 at 6.

22. At times between at least 1954 to 1980, the Bergstrom Mill discharged treated wastewater containing some PCBs into the Little Lake Butte des Morts portion of the Lower Fox River. Spector Decl., Ex. 3 at ¶ 92; Ex. 9 at 6; Ex. 29 (IPC Report to Bergstrom Paper Co., Oct. 17, 1973); Ex. 30 (IPC Report to Bergstrom Paper Co., Feb. 3, 1975); Ex. 31 (Memo re: Chlorinated Organics - PCBs); Ex. 32 (IPC PCB Results Report, April 15, 1977); Ex. 33 (WDNR Letter to Leon Acierto); Ex. 28 at NCR-FOX-0104798-800; Ex. 35 (Memo to WPC Directors) at NCR-FOX-0279940-41, 55; Ex. 36 (1973 PCB Discharges by Facility); Ex. 47 (PCBs in the US Industrial Use and Env. Dist.).

23. There have been "releases" of PCBs from the Bergstrom Mill to the Little Lake Butte des Morts portion of the Lower Fox River within the meaning of CERCLA Sections 101(22) and 107(a), 42 U.S.C. §§ 9601(22) and 9607(a). Spector Decl., Ex. 9 at 7.

24. Glatfelter's discharge of PCB-containing wastewater from the Bergstrom Mill to OU-1 of the Lower Fox River was a "disposal" in OU-1 of a hazardous substance within the meaning of CERCLA Sections 101(14), 101(29), and 107(a), 42 U.S.C. §§ 9601(14), 9601(29), and 9607(a)." Spector Decl., Ex. 9 at 8.

25. PCBs in the wastewater discharged from the Bergstrom Mill were deposited or otherwise came to be located in sediment in OU-1 of the Site. Spector Decl., Ex. 9 at 8.

26. Some amount of PCBs released into OU-1 were subsequently deposited in OU-2, OU-3, OU-4, and OU-5. Spector Decl., Ex. 37 (Glatfelter 2nd Interrogatory Response) at 9, Ex. 38 (V. Magar Expert Report) at 11.

27. The Bergstrom Mill was a "facility" within the meaning of CERCLA §§ 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a). Spector Decl., Ex. 3 at ¶ 40; Ex. 9 at 10.

28. The wastewater treatment plant at the Bergstrom Mill generated paper mill sludge that at times contained PCBs. Spector Decl., Ex. 9 at 7.

29. Between at least 1954 and 1976, the Bergstrom Paper Company placed PCB-containing sludge from the Bergstrom Mill's wastewater treatment plant into the adjacent Arrowhead Park Landfill. Spector Decl., Ex. 3 at ¶ 93; Ex. 9 at 7.

30. At least some portion of the PCB-containing sludge from the Bergstrom Mill that was placed in the Arrowhead Park Landfill by the Bergstrom Paper company eroded, leaked, or discharged from the Arrowhead Park Landfill into the Little Lake Butte des Morts portion of the Lower Fox River. Spector Decl., Ex. 39 (Shimek Expert Report) at NCR-FOX-0622730; Dkt. 352-3 at 7 ("there were not likely *significant* losses of sludges containing PCBs via erosion from the landfill to the Fox River") (emphasis added); Spector Decl., Ex. 45 at EPA052170-79.

31. The Bergstrom Paper Company's placing of PCB-containing sludge from the Bergstrom Mill into the Arrowhead Park Landfill was a "disposal" of a hazardous substance within the meaning of CERCLA Sections 101(14), 101(29), and 107(a), 42 U.S.C. §§ 9601(14), 9601(29), and 9607(a). Spector Decl., Ex. 9 at 9.

32. The Arrowhead Park Landfill is a "facility" within the meaning of CERCLA §§ 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a). Spector Decl., Ex. 3 at ¶ 42; Ex. 9 at 10.

**Menasha Corporation**

33. The John Strange Paper Company was a corporation that owned and operated the John Strange Paper Mill ("John Strange Mill"), a paperboard mill located at 69 Washington Street in Menasha, Wisconsin from at least 1954 to 1971. Spector Decl., Ex. 4 at 4-5; Ex. 10 at ¶ 80.

34. In 1971, the John Strange Paper Company merged into the Menasha Corporation ("Menasha") and Menasha thereafter owned and operated the John Strange Mill until 1983, when it was sold to U.S. Paper Mills Corp. Spector Decl., Ex. 4 at 5; Ex. 10 at ¶ 80.

35. Menasha is the successor by merger to the John Strange Paper Company. Spector Decl., Ex. 4 at 5; Ex. 10 at ¶ 80.

36. The John Strange Paper Company was a "person" within the meaning of CERCLA Sections 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a). Spector Decl., Ex. 4 at 5.

37. Menasha is a "person" within the meaning of CERCLA Sections 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a). Spector Decl., Ex. 4 at 5.

38. Menasha and its predecessor, the John Strange Paper Company, recycled paper at the John Strange Mill to make paperboard products, using as part of its furnish mixed paper which included PCB-containing carbonless copy paper. Spector Decl., Ex. 10 at ¶ 81; Ex. 41 (Morris Dep.) at 26:1-6, 20-23; Ex. 42 (IPC PCB Results Report, Dec. 13, 1971); Ex. 43 (John Strange Lab Analysis, May 19, 1976); Ex. 44 (John Strange Lab Analysis, Feb. 20, 1976); Ex. 53 (John Strange Lab Analysis, Mar. 27, 1972); Ex. 54 (John Strange Lab Analysis, April 4, 1972); Ex. 45 (Evaluation of PCB Loading from JSPM to LFR) at EPA052114.

39. While owned and operated by Menasha or its predecessor, the John Strange Paper Company, the John Strange Mill discharged white water, some of which contained PCBs, to the Menasha Channel of the Lower Fox River. Spector Decl., Ex. 10 at ¶ 83; Ex. 19 at CBCFOX00003887-88; Ex. 33; Ex. 35 at NCR-FOX-0279940-41, 55; Ex. 36 (NCR-FOX-0328207-24); Ex. 47 (EPAAR060007-9); Ex. 55 (Menasha Letter re PCB Flare-Up).

40. There have been "releases" of PCBs at and from the John Strange Mill within the meaning of CERCLA Sections 101(22) and 107(a), 42 U.S.C. §§ 9601(22) and 9607(a). Spector Decl., Ex. 10 at ¶ 83; Ex. 19 at CBCFOX00003887-88; Ex. 28; Ex. 35 at NCR-FOX-0279940-41, 55; Ex. 47.

41. Menasha's discharge of PCBs in white water from the John Strange Mill to the Menasha Channel of the Lower Fox River constituted a "disposal" of a hazardous substance within the meaning of CERCLA Sections 101(14), 101(29), and 107(a), 42 U.S.C. §§ 9601(14), 9601(29), and 9607(a). Spector Decl., Ex. 4 at 9.

42. The John Strange Mill is a "facility" within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a). Spector Decl., Ex. 4 at 11.

43. Menasha or its predecessor, the John Strange Paper Company, discharged wastewater from the John Strange Mill to the Neenah-Menasha POTW for treatment. Spector Decl., Ex. 4 at 9-10; Ex. 48 (WDNR letter to W. Allan Schenck); Ex. 49 (Sugden Dep.) at 70:8-12; Ex. 56 (Versar Inc. Letter re PCB Model Generation) at MENFOX00001944.

44. The Neenah-Menasha POTW received wastewater from many sources, including Menasha, and discharged that wastewater into OU-1 at the Site. Spector Decl., Ex. 4 at 9-10.

45. Menasha or its predecessor, the John Strange Paper Company, arranged with the Neenah-Menasha POTW for the treatment or disposal of wastewater from the John Strange Mill containing PCBs. Spector Decl., Ex. 4 at 9-10; Ex. 10 at ¶ 83.

46. Some amount of PCBs released into OU-1 were subsequently deposited in OU-2, OU-3, OU-4, and OU-5. Spector Decl., Ex. 38 at 11.

47. The Neenah-Menasha POTW is a "facility" within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a). Spector Decl., Ex. 4 at 11.

48. Menasha admits that it "is liable to the Plaintiffs under CERCLA section 107(a)(2) and CERCLA section 107(a)(3)." Spector Decl., Ex. 10 at ¶ 84.

**NCR Corporation**

49. NCR and its corporate predecessors owned and operated a paper coating facility located at 825 East Wisconsin in Appleton, Wisconsin ("Appleton Facility") between 1954 and June 30, 1978. Spector Decl., Ex. 6 at 5; Ex. 11 at ¶ 46.

50. NCR and its corporate predecessors owned and operated a papermaking and coating facility located at 540 Prospect Street in Combined Locks, Wisconsin ("Combined Locks Facility") between 1954 and June 30, 1978. Spector Decl., Ex. 6 at 5; Ex. 11 at ¶ 46

51. NCR is a "person" within the meaning of CERCLA Sections 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a). Spector Decl., Ex. 6 at 5; Ex. 11 at ¶ 39.

52. Appleton Coated Paper Company ("ACPC") was a corporation that owned and operated the Appleton Facility from at least 1954 to 1970. Spector Decl., Ex. 6 at 5.

53. In 1970, NCR acquired ACPC. Spector Decl., Ex. 6 at 5.

54. ACPC was a "person" within the meaning of CERCLA Sections 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a). Spector Decl., Ex. 6 at 5.

55. Combined Paper Mills, Inc. ("Combined Paper") was a corporation that owned and operated the Combined Locks Facility from at least 1954 to 1969. Spector Decl., Ex. 6 at 6.

56. In 1969, NCR acquired Combined Paper and Combined Paper became a wholly owned subsidiary of NCR. Spector Decl., Ex. 5 at ¶ 46; Ex. 6 at 6.

57. Combined Paper was a "person" within the meaning of CERCLA Sections 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a). Spector Decl., Ex. 6 at 6.

58. In 1971, NCR merged ACPC and Combined Paper into a single entity named Appleton Papers, Inc. ("Appleton Papers"). Spector Decl., Ex. 6 at 6; Ex. 11 at ¶ 45.

59. After the 1971 merger, Appleton Papers owned and operated the Appleton Facility and the Combined Locks Facility. Spector Decl., Ex. 6 at 6; Ex. 11 at ¶ 45.

60. Appleton Papers was a "person" within the meaning of CERCLA Sections 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a). Spector Decl., Ex. 6 at 6.

61. In 1973, Appleton Papers merged into NCR and became an operating division known as the NCR Appleton Papers Division. Spector Decl., Ex. 6 at 6; Ex. 11 at ¶ 45.

62. NCR Appleton Papers Division owned and operated the Appleton Facility and the Combined Locks Facility until 1978. Spector Decl., Ex. 5 at ¶ 46; Ex. 6 at 6.

63. Between 1954 and April 1971, the Appleton Facility produced CCP using an emulsion containing PCBs. Spector Decl., Ex. 6 at 6; Ex. 11 at ¶ 47; Ex. 50 (Analyses of Wastepaper Received by FH in '75 & '76).

64. Between 1954 and April 1971, while the Appleton Facility was owned and operated by NCR and its predecessor ACPC, the Appleton Facility discharged wastewater containing PCBs to the City of Appleton POTW. Spector Decl., Ex. 6 at 7; Ex. 11 at ¶ 51.

65. The City of Appleton POTW discharged wastewater containing PCBs to the Lower Fox River. Spector Decl., Ex. 6 at 7; Ex. 11 at ¶ 51.

66. There have been "releases of PCBs" at and from the City of Appleton POTW within the meaning of CERCLA Sections 101(22) and 107(a), 42 U.S.C. §§ 9601(22) and 9607(a). Spector Decl., Ex. 6 at 7.

67. Between 1954 and April 1971, PCBs from the City of Appleton POTW were deposited, discharged to, or otherwise came to be located at the Site. Spector Decl., Ex. 6 at 7-8.

68. The Appleton Facility is a "facility" within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a). Spector Decl., Ex. 6 at 10; Ex. 11 at ¶ 40.

69. The City of Appleton POTW is a "facility" within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a). Spector Decl., Ex. 6 at 10.

70. Between 1969 and April 1971, the Combined Locks Facility produced CCP using an emulsion containing PCBs. Spector Decl., Ex. 6 at 8; Ex. 11 at ¶ 50; Ex. 50.

71. Between at least 1969 and April 1971, the Combined Locks Facility, while owned and operated by NCR and its predecessor Combined Paper, discharged wastewater containing PCBs into a clarifier, which then discharged to the Lower Fox River. Spector Decl., Ex. 6 at 8-9; Ex. 11 at ¶ 50.

72. Between at least 1969 and April 1971, PCBs from the Combined Locks Facility were deposited, discharged to, or otherwise came to be located in sediment at the Site. Spector Decl., Ex. 6 at 9.

73. Some amount of PCBs released into OU-2 were subsequently deposited in OU-3, OU-4, and OU-5. Spector Decl., Ex. 51 (Simon Expert Report).

74. The Combined Locks Facility is a "facility" within the meaning of CERCA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a). Spector Decl., Ex. 6 at 10; Ex. 11 at ¶ 40.

75. Aroclor 1242 is a "hazardous substance" within the meaning of CERCLA Sections 101(14) and 107(a), 42 U.S.C. §§ 9601(14) and 9607(a). Spector Decl., Ex. 6 at 10.

**WTM I Company**

76. WTM I Company ("WTM") (formerly known as Wisconsin Tissue Mills Inc. and WTM Corp.) and at least one of its corporate predecessors – including another company called Wisconsin Tissue Mills Inc – have owned and/or operated a paper production facility on Tayco Street in Menasha, Wisconsin ("WTM Facility"). Spector Decl., Ex. 7 at 1-2; Ex. 8 at ¶ 104.

77. WTM is a corporate successor by merger to a Wisconsin corporation called Wisconsin Tissue Mills Inc., which owned and operated the WTM Facility until at least 1977. Spector Decl., Ex. 7 at 2; Ex. 8 at ¶ 104.

78. Wisconsin Tissue Mills Inc. was a "person" within the meaning of CERCLA Sections 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a). Spector Decl., Ex. 7 at 2.

79. WTM is a "person" within the meaning of CERCLA Sections 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a). Spector Decl., Ex. 7 at 2; Ex. 8 at ¶ 39.

80. Between at least 1954 and 1977, while the WTM Facility was owned and operated by WTM and its predecessors, the WTM Facility processed waste paper, some of which contained PCBs. Spector Decl., Ex. 7 at 2; Ex. 8 at ¶ 105; Ex. 52 (WTM Response to Information Request) at NCR-FOX-479017.

81. During WTM's ownership and operation of the WTM Facility, in connection with its recycling of waste paper, some PCBs were released into Little Lake Butte des Morts, the southernmost portion of the Lower Fox River designated as OU-1, either directly from the WTM Facility or through the Neenah-Menasha POTW. Spector Decl., Ex. 8 at ¶ 106; Ex. 19 at CBCFOX00003886; Ex. 26 (WTM letter re Effluent PCB Data Since 1973); Ex. 27 (WTM letter re PCB Levels); Ex. 33 at NCR-FOX-0033047; Ex. 34 (Discharges with Net Increases in PCB to LFR Basin) at NCR-FOX-0025174; Ex. 40 (PCB Data to Date – 1976); Ex. 46 (DNR's NR 101 Report 1983 Print-Out) at NCR-FOX-0096695-96.

82. From at least 1954 until May 12, 1976, WTM discharged its process wastewater from the WTM Facility to the Neenah-Menasha POTW, which in turn discharged to the Lower Fox River. Spector Decl., Ex. 52 at NCR-FOX-479030.

83. Some of WTM's process wastewater was also discharged directly to the Site through a sewer bypass line prior to September 1972. Spector Decl., Ex. 52 at NCR-FOX-479030; Ex. 57 (M. Jury Expert Report) at 1, 3-4; Ex. 58 (WTM Letter, Oct. 4, 1972); Ex. 59 (Statement for Presentation at DNR Hearing).

84. Beginning on May 12, 1976, WTM began discharging effluent from the WTM Facility directly to the Lower Fox River through an outfall at the facility. Spector Decl., Ex. 52 at NCR-FOX-479030.

85. There have been "releases" of PCBs at and from the WTM Facility within the meaning of CERCLA Sections 101(22) and 107(a), 42 U.S.C. §§ 9601(22) and 9607(a). Spector Decl., Ex. 7 at 3; Ex. 8 at ¶ 107.

86. WTM's and its corporate predecessors' discharges of PCB-containing wastewater from the WTM Facility were "disposals" of a hazardous substance within the meaning of CERCLA Sections 101(14), 101(29), and 107(a), 42 U.S.C. §§ 9601(14), 9601(29), 9607(a). Spector Decl., Ex. 7 at 4.

87. PCBs in wastewater discharged from the WTM Facility were deposited or otherwise came to be located in sediment in OU-1 at the Site. Spector Decl., Ex. 7 at 3.

88. Between at least 1954 and 1976, while the WTM Facility was owned and operated by WTM and its predecessors, the WTM Facility discharged its wastewater, which at times contained PCBs, to the Neenah-Menasha POTW for treatment and disposal. Spector Decl., Ex. 7 at 3.

89. The Neenah-Menasha POTW discharged wastewater which at times contained PCBs from the WTM Facility to the Little Lake Butte des Morts portion of the Lower Fox River. Spector Decl., Ex. 7 at 3.

90. Some amount of PCBs released into OU-1 were subsequently deposited in OU-2, OU-3, OU-4, and OU-5. Spector Decl., Ex. 38 at 11.

91. There have been "releases" of PCBs at and from the Neenah-Menasha POTW within the meaning of CERCLA Sections 101(22) and 107(a), 42 U.S.C. §§ 9601(22) and 9607(a). Spector Decl., Ex. 7 at 4.

92. The WTM Facility is a "facility" within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a). Spector Decl., Ex. 7 at 5; Ex. 8 at ¶ 40.

93. The Neenah-Menasha POTW is a "facility" within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a). Spector Decl., Ex. 7 at 5; Ex. 8 at ¶ 41.

94. WTM and its corporate predecessors, by contract, agreement, or otherwise, arranged for disposal or treatment of its wastewater, which at times contained PCBs, that it owned or possessed at a facility owned or operated by another party or entity, and there were releases of wastewater containing PCBs from that facility to OU1 of the Site. Spector Decl., Ex. 7 at 7.

Respectfully submitted,

For Plaintiff United States of America

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

Dated: October 12, 2012       s/*Jeffrey A. Spector*
JEFFREY A. SPECTOR
MAYA S. ABELA
SUMONA N. MAJUMDAR
RANDALL M. STONE
KRISTIN M. FURRIE
SEAN CARMAN
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 514-4432
Facsimile: (202) 616-6584
E-Mail: Jeffrey.Spector@usdoj.gov


GREGORY J. HAANSTAD
Attorney for the United States, Acting
Under Authority Conferred by 28 U.S.C. § 515

SUSAN M. KNEPEL
Assistant United States Attorney
Office of the United States Attorney
517 E. Wisconsin Avenue, Room 530
Milwaukee, WI  53202



For the State of Wisconsin:


Dated:   October 12, 2012              s/*Cynthia R.  Hirsch*
                                       CYNTHIA R. HIRSCH
                                       Assistant Attorney General
                                       Wisconsin Department of Justice
                                       17 West Main Street
                                       P.O. Box 7857
                                       Madison, Wisconsin  53707-785
                                       hirschcr@doj.state.wi.us

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this day, the foregoing *Statement of Undisputed Facts in Support of Plaintiffs' Motion for Partial Summary Judgment That Defendants Are Liable Parties under CERCLA Section 107(a)* was filed electronically with the Clerk of the Court using the Court's Electronic Court Filing System, which sent notification of such filing to the following counsel:

**Mary Rose Alexander**
Latham & Watkins LLP
mary.rose.alexander@lw.com

**Thomas Armstrong**
von Briesen & Roper SC
tarmstro@vonbriesen.com

**Paul Bargren**
Foley & Lardner LLP
pbargren@foley.com

**Linda E. Benfield**
Foley & Lardner LLP
lbenfield@foley.com

**Dennis P. Birke**
DeWitt Ross & Stevens SC
db@dewittross.com

**Steven P. Bogart**
Reinhart Boerner Van Deuren SC
sbogart@reinhartlaw.com

**Michael P. Carlton**
von Briesen & Roper SC
mcarlton@vonbriesen.com

**Evan R. Chesler**
Cravath Swaine & Moore LLP
echesler@cravath.com

**Marc E. Davies**
Greenberg Traurig LLP
daviesm@gtlaw.com

**Brandon J. Evans**
Hermes Law Ltd.
bje@hermeslawltd.com

**S. Todd Farris**
Friebert Finerty & St. John SC
stf@ffsj.com

**Patrick J. Ferguson**
Latham & Watkins LLP
patrick.ferguson@lw.com

**Sandra C. Goldstein**
Cravath Swaine & Moore LLP
sgoldstein@cravath.com

**Thomas R. Gottshall**
Haynsworth Sinkler Boyd PA
lgantt@hsblawfirm.com

**Eric W. Ha**
Sidley Austin LLP
eha@sidley.com

**Scott W. Hansen**
Reinhart Boerner Van Deuren SC
shansen@reinhartlaw.com

**William H. Harbeck**
Quarles & Brady LLP
william.harbeck@quarles.com

**Michael L. Hermes**
Hermes Law Ltd.
mlh@hermeslawltd.com

**Cynthia R. Hirsch**
Wisconsin Department of Justice
hirschcr@doj.state.wi.us

**Caleb J. Holmes**
Greenberg Traurig LLP
holmesc@gtlaw.com

**Philip C. Hunsucker**
Hunsucker Goodstein & Nelson PC
phunsucker@hgnlaw.com

**Peter C. Karegeannes**
Quarles & Brady LLP
peter.karegeannes@quarles.com

**Gregory A. Krauss**
Gregory Krauss PllC
gkrauss@krausspllc.com

**Paul G. Kent**
Stafford Rosenbaum LLP
pkent@staffordlaw.com

**Ericka L. Krumrie**
Hermes Law Ltd
elk@hermeslawltd.com

**Linda R. Larson**
Marten Law PLLC
llarson@martenlaw.com

**Vanessa A. Lavely**
Cravath Swaine & Moore LLP
vlavely@cravath.com

**Susan E. Lovern**
von Briesen & Roper SC
slovern@vonbriesen.com

**Kevin J. Lyons**  
Davis & Kuelthau SC  
klyons@dkattorneys.com

**Karl S. Lytz**  
Latham & Watkins LLP  
karl.lytz@lw.com

**Meline G. MacCurdy**  
Marten Law  
mmaccurdy@martenlaw.com

**David G. Mandelbaum**  
Greenberg Traurig LLP  
mandelbaumd@gtlaw.com

**Bradley M. Marten**  
Marten Law  
bmarten@martenlaw.com

**Tara M. Mathison**  
Davis & Kuelthau SC  
tmathison@dkattorneys.com

**Darin P. McAtee**  
Cravath Swaine & Moore LLP  
dmcatee@cravath.com

**Stephen F. McKinney**  
Haynsworth Sinkler Boyd PA  
smckinney@hsblawfirm.com

**Heidi D. Melzer**  
Hermes Law Ltd.  
hdm@hermeslawltd.com

**Elizabeth K. Miles**  
Davis & Kuelthau SC  
emiles@dkattorneys.com

**Sabrina Mizrachi**  
Greenberg Traurig LLP  
mizrachis@gtlaw.com

**Monique M. Mooney**  
Greenberg Traurig LLP  
mooneym@gtlaw.com

**William J. Mulligan**  
Davis & Kuelthau SC  
wmulligan@dkattorneys.com

**Daniel C. Murray**  
Johnson & Bell Ltd.  
murrayd@jbltd.com

**Omid H. Nasab**  
Cravath Swaine & Moore LLP  
onasab@cravath.com

**Kelly J. Noyes**  
von Briesen & Roper SC  
knoyes@vonbriesen.com

**Nancy K. Peterson**  
Quarles & Brady LLP  
nancy.peterson@quarles.com

**Thomas M. Phillips**  
Reinhart Boerner Van Deuren SC  
tphillip@reinhartlaw.com

**Ian A.J. Pitz**  
Michael Best & Friedrich LLP  
iapitz@michaelbest.com

**David A. Rabbino**  
Hunsucker Goodstein & Nelson PC  
drabbino@hgnlaw.com

**Joan Radovich**  
Sidley Austin LLP  
jradovich@sidley.com

**Ronald R. Ragatz**  
DeWitt Ross & Stevens SC  
rrr@dewittross.com

**Alexandra Reeve Givens**  
Cravath Swaine & Moore LLP  
agivens@cravath.com

**Kathleen L. Roach**  
Sidley Austin LLP  
kroach@sidley.com

**Megan A. Senatori**  
DeWitt Ross & Stevens SC  
ms@dewittross.com

**Adam B. Silverman**  
Greenberg Traurig LLP  
silvermana@gtlaw.com

**Sarah A. Slack**  
Foley & Lardner LLP  
sslack@foley.com

**Margaret R. Sobota**  
Sidley Austin LLP  
msobota@sidley.com

**Anthony S. Wachewicz, III**  
City of Green Bay  
tonywa@ci.green-bay.wi.us

**James P. Walsh**  
Appleton City Attorney  
jim.walsh@appleton.org

**Ted A. Warpinski**  
Friebert Finerty & St John SC  
taw@ffsj.com

**Ted Waskowski**  
Stafford Rosenbaum LLP  
twaskowski@staffordlaw.com

**Evan B. Westerfield**  
Sidley Austin LLP  
evanwesterfield@sidley.com

**Richard C. Yde**  
Stafford Rosenbaum LLP  
ryde@staffordlaw.com

Dated:  October 12, 2012                              s/*Jeffrey A. Spector*