IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN, )<br><br>Plaintiffs, )<br><br>v. )<br><br>NCR CORPORATION, *et al.*, )<br><br>Defendants. ) | Civil Action No. 10-C-910<br><br>Hon. William C. Griesbach |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT THAT DEFENDANTS ARE <u>LIABLE PARTIES UNDER CERCLA SECTION 107(a)</u>

# I.    INTRODUCTION

At the close of the April 12, 2012 hearing on the *United States' Motion for Preliminary Injunction*, the Court took up the question of setting this matter for trial.  In seeking to set the scope of such trial, the Court asked:

> THE COURT:  What issues as to liability really are out there?  I mean, I know API had strong arguments as to liability, but in terms of whether or not there was discharge by other parties . . . what are we dealing with here?
>
> * * *
>
> [D]o we have significant liability issues in this case or is it primarily the defensive matters of divisibility versus apportionment as well as the remedial issue?
>
> MR. McATEE:  I think those are the primary issues for NCR.  . . .

Dkt. 365 at 147-48.  The answer to the Court's question is that there are ***not*** significant CERCLA liability issues here – not only with regard to NCR, but as to the other Defendants as well.[1]

Each of the Defendants participating in Phase I of this action either: (1) released polychlorinated biphenyls ("PCBs") directly to the Lower Fox River and Green Bay Superfund Site or (2) discharged PCB-contaminated wastewater to a publicly-owned treatment works ("POTW"), which then released PCBs to the Site.  Each Defendant, therefore, is liable as the owner / operator of a facility at the time of disposal of a hazardous substance there (CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2)), and some also are liable as parties who arranged for the disposal of a hazardous substance (CERCLA Section 107(a)(3), 42 U.S.C. § 9607(a)(3)).

---

[1]  This motion is brought against NCR Corporation, Menasha Corporation, P.H. Glatfelter Co., WTM I Company, and CBC Coating, Inc. ("Defendants").  In an ill-fitting effort to duplicate API's position, U.S. Paper has now likewise raised successor liability issues.  While Plaintiffs do not believe this raises a significant issue as to U.S. Paper's liability, it is an individualized argument that will require separate briefing and for that reason the current motion is not directed at U.S. Paper.

Each Defendant has either outright admitted CERCLA Section 107(a) liability or admitted the elements of such liability in their pleadings and/or discovery responses.

Plaintiffs anticipate, however, that Defendants may argue that they should not be found liable since their PCB releases allegedly do not independently warrant a clean-up of the River. CERCLA Section 107(a), however, does not include a *de minimis* defense or quantitative limit for releases of hazardous substances. Even if the quantity of PCBs contributed by each Defendant is actually limited to the small amounts they admit, that would not relieve them from liability or make the Lower Fox River cleanup particularly different from many other contaminated sites. As the court in *United States v. Western Processing Co., Inc.* explained:

> [I]t is entirely possible for a hazardous waste facility to be comprised entirely of small amounts from many contributors. If each PRP could make [the defendant's] argument, *i.e.*, that its particular contribution did not warrant remediation and thus that it should not be liable for any costs, *no* party would be liable, despite the fact that the site, as a whole, needed to be cleaned up and the government incurred costs in doing so.

734 F. Supp. 930, 937 (W.D. Wash. 1990) (emphasis in original). Any arguments regarding quantities of PCBs released by individual Defendants relate to equitable allocation in contribution, but not primary liability to the Plaintiffs. The Court should grant Plaintiffs' motion, finding that each Defendant is a liable party under CERCLA Section 107(a).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper under Federal Rule of Civil Procedure 56 where the court finds that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Although evidence must be viewed in the light most favorable to the non-moving party, the non-moving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 257.

Because CERCLA imposes strict liability and provides only limited defenses, courts recognize that summary judgment affords a precise scalpel for eliminating issues over which there is no substantial controversy. Courts routinely use partial summary judgment to resolve CERCLA liability issues, while leaving other issues -- such as determination of the amount recoverable on a cost recovery claim -- for later resolution. *See, e.g., Am. Nat. Bank & Trust of Chicago v. Harcros Chems., Inc.,* No. 95C3750, 1997 WL 281295 at *6 (N.D. Ill. May 20, 1997); *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 667-68 (5th Cir. 1989). Furthering the goals of both the Federal Rules of Civil Procedure and CERCLA, summary judgment is utilized by the courts as "an appropriate avenue for the just, speedy, and inexpensive determination" of liability under CERCLA Section 107. *United States v. Taylor*, 1993 WL 760996 at *4 (W.D. Mich. 1993) (citations and internal quotations omitted). To be clear, this motion seeks partial summary judgment on liability alone, not joint and several liability, so divisibility and apportionment issues are not implicated here.

### III.    STATUTORY BACKGROUND

**A.    The Interrelationship Between CERCLA Section 106 Injunctive Relief and Section 107 Liability.**

In its Fifth Claim for Relief, the United States seeks a judicial determination that each Defendant-recipient of the 2007 Unilateral Administrative Order ("UAO") is required to comply with all provisions of the UAO applicable to that recipient, other than the provisions relating to

Case 1:10-cv-00910-WCG   Filed 10/12/12   Page 4 of 24   Document 551

reimbursement of response costs. Dkt. 30 at 30. The United States seeks such relief pursuant to CERCLA Section 106, 42 U.S.C. § 9606, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. CERCLA's UAO regime was specially devised "to promote prompt cleanup of hazardous waste sites and to ensure that responsible parties foot the bill." *General Elec. Co. v. Jackson*, 610 F.3d 110, 114 (D.C. Cir. 2010).

CERCLA Section 106 does not *per se* require a showing that the recipient of a UAO be a liable party, as determined under CERCLA Section 107(a), 42 U.S.C. § 9607(a). Where the recipient complies with the UAO, however, it can seek and obtain cost reimbursement from the Superfund if it can "establish by a preponderance of the evidence that it is not liable for response costs under section 9607(a) . . . ." 42 U.S.C. § 9606(b)(2)(c). Similarly, a non-compliant UAO recipient's proof that it is not a CERCLA Section 107(a) liable party may establish a viable "sufficient cause" defense under CERCLA Section 106(b)(1) and avoid civil penalties for failing to comply with the UAO.[2] As such, non-liability under Section 107(a) effectively may operate as a defense under CERCLA Section 106.

In light of the general understanding regarding Defendants' liability, Plaintiffs sought simple stipulations from them to establish such liability and streamline the upcoming trial by eliminating this issue. Defendants, however, declined and Plaintiffs now request that the Court grant partial summary judgment that Defendants cannot prove they are not CERCLA Section 107(a) liable parties.

**B.     Elements of Liability under CERCLA Section 107(a)**

Liability is imposed under CERCLA Section 107(a), where there has been:

---

[2]  Non-liability would also allow a party to proceed under CERCLA Section 113, pursuant to which parties may seek contribution to recoup costs spent beyond any individual party's fair share. *Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648, 657 (6th Cir. 2000).

1. a "release" or a "threatened release" of a "hazardous substance";

2. from a "facility";

3. by a person that is among the four classes of covered persons under CERCLA Section 107(a); and

4. the release or threatened release caused the incurrence of "response" costs.

*See* 42 U.S.C. § 9607(a); *Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 325 (7th Cir. 1994). As detailed below, the undisputed facts demonstrate that each Defendant is a liable party under Section 107(a) and, therefore, Plaintiffs are entitled to summary judgment on liability.

### 1. Release of a hazardous substance.

CERCLA Section 101(22) broadly defines "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment . . . " 42 U.S.C. § 9601(22); *see also NutraSweet Co. v. X-L Eng'g Corp.*, 933 F. Supp 1409, 1419 (N.D. Ill. 1996) ("Federal courts should construe CERCLA's definition of 'release' broadly."). The term "hazardous substance" includes all compounds designated as such by EPA pursuant to CERCLA Section 102, as well as substances listed under certain other federal statutes. *See* 42 U.S.C. §§ 9601(14), 9602. A comprehensive listing of CERCLA hazardous substances is found at 40 C.F.R. § 302.4, App. A.

Each Defendant has admitted that PCBs are a CERCLA "hazardous substance." Dkt. 550, *Statement of Undisputed Facts in Support of Plaintiffs' Motion for Partial Summary Judgment That Defendants Are Liable Parties under CERCLA Section 107(a)*, at ¶ 3 ("SOF"). As specified below, the facts are undisputed that there have been PCB releases to the Site either

by each Defendant directly or from a POTW to which the Defendant sent its PCB-contaminated wastewater. While most Defendants downplay the quantity of PCBs they released, CERCLA does not require a minimum threshold release, concentration, or reportable quantity of hazardous substances to create liability. *See, e.g., B.F. Goodrich Co. v. Betkoski*, 99 F.3d 505, 516-17 (2d Cir. 1996) ("quantity 'is not a factor' when determining CERCLA liability" because "the Act's 'hazardous substance' definition includes even minimal amounts").

## 2. From a facility.

CERCLA Section 101(9) provides an expansive definition of "facility":

> The term "facility" means (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling, stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located . . . .

42 U.S.C. § 9601(9). Each Defendant has admitted that the Site, their individual paper production and/or reprocessing plants, landfills, and each POTW constitute a CERCLA "facility." SOF at ¶¶ 1, 11, 14, 27, 32, 42, 47, 68, 69, 74, 92, 93.

## 3. By a person that is among the four classes of covered persons under CERCLA Section 107.

CERCLA Section 107(a) defines four categories of covered persons. The first category -- "the owner and operator of a . . . facility" -- applies to all current owners or operators of facilities that have released hazardous substances. 42 U.S.C. § 9607(a)(1). *See CMC Heartland Partners v. Union Pac. R.R.*, 78 F.3d 285, 289-90 (7th Cir. 1996) (CERCLA "unequivocally imposes strict liability on the current owner of a facility from which there is a release or threat of release, without regard to causation.") (citation omitted).

CERCLA Section 107(a)(2) encompasses certain past owners and operators -- i.e. "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of[.]"  42 U.S.C. § 9607(a)(2); *see also Taylor Farm Ltd. Liab. Co. v. Viacom, Inc.*, 234 F. Supp. 2d 950, 959-60 (S.D. Ind. 2002).  For past owner/operator liability, "the dispersal of contaminants need not reach a particular threshold level in order to constitute 'disposal.'" *United States v. CDMG Realty Co.*, 96 F.3d, 706, 719 (3d Cir. 1996).

The third category at issue here addresses those who "by contract, agreement, or otherwise arranged for disposal or treatment . . . of hazardous substances owned or possessed by such person . . . at any facility . . . owned or operated by another party or entity and containing such hazardous substances[.]"  42 U.S.C. § 9607(a)(3).  To establish arranger liability, a plaintiff need not prove that the specific hazardous substances found, released, or cleaned up at the site came from a particular party, *i.e.* there is no need to "fingerprint" the wastes.  Rather, a plaintiff must only prove that the arranger's wastes were destined for the site and that "like substances" were found there.  *See Tosco Corp. v. Koch Indus. Inc.*, 216 F.3d 886, 892 (10th Cir. 2000); *United States v. TIC Inv. Corp.*, 68 F.3d 1082, 1088 (8th Cir. 1995), *cert denied*, 519 U.S. 808 (1996); *Redwing Carriers Inc. v. Saraland Apartments*, 94 F.3d 1489, 1512 (11th Cir. 1996).[3]

---

[3]  After trial in the Whiting case, the Court found that the sale of paper broke did not amount to an arrangement for disposal under CERCLA Section 107(a)(3).  A*ppleton Papers Inc. v. George A. Whiting Paper Co., Inc.*, 2012 WL 2704920 (E.D. Wis. July 3, 2012).  But an agreement to pay sewer authorities for the right to discharge *industrial wastewater* to a municipal *wastewater treatment plant* certainly qualifies as an arrangement for disposal or treatment.  In any event, each party that discharged to a POTW also is liable as an owner and operator at the time of disposal under CERCLA Section 107(a)(2).  An owner or operator can be liable under CERCLA for contamination of its own "facility."  In addition, an owner or operator can be liable for releases "from" its "facility" (such as a "building," "installation," "pipe," or "storage container") that result in contamination at another "facility" (such as a site or area where a hazardous substance has been deposited . . . or otherwise come to be located").  *See* 42 U.S.C. §§ 9601(9), 9067(a); *see also Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 750-51 (7th Cir. 1993) ("Each of the tanker trucks owned by Detrex . . . constituted prima facie a 'facility' within the meaning of the Superfund law" and "Detrex was liable under the Superfund statute for the spillage from its own trucks" at Plaintiff's plant); *NutraSweet Co.*, 227 F.3d at 784 n.l (Defendant's machine shop was a "facility . . . from which there [was] a release" that migrated and contaminated Plaintiff's property); *Westfarm Assoc. L.P. v. Intern. Fabricare Inst.*, 846 F. Supp. 422

8

Each Defendant has admitted that either it or its corporate predecessor is a CERCLA "person."  SOF at ¶¶ 8, 19, 20, 36, 37, 51, 54, 57, 60, 78, 79.  The undisputed facts show that each Defendant is likewise either a current owner/operator, an owner/operator at the time of disposal, and/or an arranger for disposal or treatment of PCB-contaminated wastewater through a POTW.  Each Defendant thus falls within one or more of the categories of covered persons under CERCLA Section 107(a).

### 4. A Release Caused the Incurrence of "Response" Costs.

The final element of CERCLA Section 107(a) liability is whether a release of hazardous substances "cause[d] the incurrence of response costs" at the Site.  42 U.S.C. § 9607(a)(4).  CERCLA defines "response" to encompass any "removal" activities, including "enforcement activities relating thereto."  42 U.S.C. § 9601(25).  CERCLA in turn defines "removal" activities as including "the cleanup or removal of released hazardous substances from the environment, . . . such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances," and "such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release."  *Id.* at § 9601(23).

This element is satisfied merely by showing that *some* amount of response costs has been incurred.  *See Kerr-McGee*, 14 F.3d at 325; *United States v. Kramer*, 757 F. Supp. 397, 420 (D.N.J. 1991).  It does not require proof that a particular defendant caused the release leading to the incurrence of response costs.  *United States v. Hercules, Inc.*, 247 F.3d 706, 716 n.8 (8th Cir. 2001) ("The argument that the government must prove a direct causal link between the incurrence of response costs and an actual release caused by a particular defendant has been

---

(D. Md. 1993) (facility owner/operator liable for hazardous substances that were discharged to a municipal sewer and then released to groundwater under neighboring land), *aff'd on other grounds sub nom. Westfarm Assoc. L.P. v. Washington Suburban Sanitary Comm'n*, 66 F.3d 669 (4th Cir 1995).

rejected by 'virtually every court,' that has directly considered the issue.")(citation omitted).

Each Defendant admits that the United States has incurred response costs relating to this Site.

SOF at ¶ 4. For example, Plaintiffs have incurred investigatory costs relating to each Defendant,

in addition to response costs relating to oversight of the cleanup efforts.[4] SOF at ¶¶ 4-5.

## C. Limited Defenses to CERCLA Section 107 Liability

Consistent with CERCLA's broad liability scheme and Congress' overriding goal of

ensuring that hazardous wastes are cleaned up, CERCLA Section 107(a) liability is strict and

imposed "notwithstanding any other provision or rule of law, and subject *only* to the defenses set

forth in Subsection (b) of this section." 42 U.S.C. § 9607(a) (emphasis added); *see Harley-*

*Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 343 (7th Cir. 1994) (CERCLA liability is strict and

does not require proof of negligence or wrongdoing); *Farmland Indus., Inc. v. Morrison-Quirk*

*Grain Corp.*, 987 F.2d 1335, 1339 (8th Cir. 1993) (liability to the government under CERCLA is

strict, and not dependant upon any showing of causation or fault).

The enumerated defenses of CERCLA Section 107(b) are limited to where an otherwise

liable party can establish that:

> [T]he release of a hazardous substance and the damages resulting
> therefrom were caused solely by –
>
>> (1) an act of God;
>>
>> (2) an act of war;
>>
>> (3) an act or omission of a third party other than . . . one whose act or
>> omission occurs in connection with a contractual relationship . . . with the
>> defendant . . .; or
>>
>> (4) any combination thereof.

---

[4]  Additionally, CERCLA explicitly defines "response" to encompass any "enforcement activities relating thereto."
42 U.S.C. § 9601(25). Thus, this litigation itself constitutes response costs incurred by the Plaintiffs as a result of
the release of hazardous substances.

42 U.S.C. § 9607(b).[5]

Here, much has been made of the relative volume of PCBs discharged to the Site by each Defendant. But in determining each Defendant's liability under CERCLA Section 107, the Court only needs to know but one thing regarding the quantity of PCBs discharged by each Defendant: it is ***immaterial***. There is no minimal contribution defense to CERCLA Section 107 liability.

That question was addressed and answered definitively in *United States v. Alcan Aluminum Corp.*, 964 F.2d 252 (3d Cir. 1992). There, the United States sought to recover response costs incurred in cleaning up the Susquehanna River, following a release of hazardous substances from the neighboring Butler Tunnel Site. The Mahler Companies disposed of third-party liquid wastes by pouring them into a borehole at the Butler Tunnel Site, a network of underground mines. Although Mahler apparently thought the wastes would be contained within the Site, in September 1985, approximately 100,000 gallons of water containing various hazardous substances were released from the Butler Tunnel Site to the Susquehanna River. *Id.* at 255-56.

Alcan Aluminum was one of a number of Mahler clients whose wastes had been disposed of at the Butler Tunnel Site. Alcan contracted with Mahler to dispose of its used emulsion, which despite being filtered following use, still contained fragments of various hazardous substances (aluminum, copper, chromium, cadmium, lead, and zinc). Although acknowledging that its wastes had eventually been released to the Susquehanna River, Alcan contended that it

---

[5] Responsible parties are jointly and severally liable to the government unless they can bear the burden of proving that a reasonable basis for apportionment exists. *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 1881 (2009); *United States v. Capital Tax Corp.*, 545 F.3d 525, 534 (7th Cir. 2008); *United States v. NCR Corp*, 688 F.3d 833 (7th Cir. 2012). Apportionment only avoids joint and several liability; it does not exclude a defendant from the classes of liable parties under CERCLA Section 107(a).

should not be held liable under CERCLA, because "the level of hazardous substances in its emulsion was below that which naturally occurs and thus could not have contributed to the environmental injury." *Id.* at 259.

The Third Circuit rejected this argument. After examining the plain meaning of CERCLA's definition of "hazardous substance," the legislative history of the statute, and the relevant jurisprudence on the issue, the court held that a defendant's liability under CERCLA does not depend on the defendant releasing any threshold quantity of hazardous substance to the site. *Id.* at 259-61. The Second Circuit reached the same conclusion in a parallel appeal that Alcan brought for another site. *United States v. Alcan Alum. Corp.*, 990 F.2d 711, 720-721 (2d Cir. 1993). *See also United States v. Atlas Minerals and Chems., Inc.*, 797 F. Supp. 411, 415 n.6 (E.D. Pa. 1992) ("It is clear that there is no '*de minimis*' defense to liability under § 9607(a)."). Moreover, the Third Circuit in its *Alcan* decision found its construction of the statute furthered important environmental goals:

> [T]he fact that a single generator's waste would not in itself justify a response is irrelevant in the multi-generator context, as this would permit a generator to escape liability where the amount of harm it engendered to the environment was minimal, though it was significant when added to other generators' waste.

*Alcan Alum.*, 964 F.2d at 264. That court's logic applies with equal force here.[6] Defendants'

---

[6] A multitude of other courts have also held that CERCLA does not afford defendants that contributed minimal amounts of hazardous substances relief from liability. *Accord B.F. Goodrich*, 99 F.3d at 516-17; *Cose v. Getty Oil Co.*, 4 F.3d 700, 708-09 (9th Cir. 1993); *City of New York v. Exxon Corp.*, 766 F. Supp. 177, 190 (S.D.N.Y. 1991); *Kramer*, 757 F. Supp. 397 at 423; *Acushnet Co. v. Mohasco Corp.*, 191 F.3d 69, 76 (1st Cir. 1999).

attempts to caveat their admissions by stating that they only released minimal quantities of PCBs to the Lower Fox River avail them not.[7]

The Supreme Court has stated that "the remedy that Congress felt it needed in CERCLA is sweeping: everyone who is potentially responsible for hazardous-waste contamination may be forced to contribute to the costs of cleanup." *United States v. Bestfoods*, 524 U.S. 51, 56 n.1 (1998); *see also Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 131 (2d Cir. 2010) ("even a minimal amount of hazardous waste brings a party under the purview of the statute as a PRP"). After liability is determined for entities contributing any amount of hazardous substances, "fairness" considerations may be addressed through contribution claims under CERCLA Section 113. As set forth below, here it is undisputed that each Defendant contributed *some* amount of PCBs to the Site. *See*, *infra* at Sections IV. A. 1-5. Therefore, each Defendant may be found liable under CERCLA 107(a).

## IV.    ARGUMENT

### A.    The Undisputed Facts Establish the Defendants' Liability Under CERCLA Section 107(a).

Through the Defendants' admissions, testimony, and documents, all elements of liability can be established under CERCLA Section 107(a). As mentioned above, each Defendant has admitted that:

---

[7]  The *Alcan* court likewise found that establishing liability under CERCLA Section 107(a) does not require showing a specific causal relationship between the defendant's *hazardous substance* and the incurrence of response costs. Rather, it is a *release* or *threatened release* which must cause the incurrence of response costs. *See Alcan*, 964 F.2d at 265; *see also Alcan,* 990 F.2d at 721 ("in addition to imposing a strict liability scheme, CERCLA does away with a causation requirement); *Hercules*, 247 F.3d at 716 n.8 ("the argument that the government must prove a direct causal link between the incurrence of response costs and an actual release caused by a particular defendant has been rejected by 'virtually every court,' that has directly considered the issue"); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1152 (1st Cir. 1989) (CERCLA's only causation requirement is that the release or threatened release cause the response costs; plaintiff need not establish that the defendant's waste caused or contributed to the response costs). PCBs were released to the Site, causing the incurrence of response costs. Each Defendant admits disposing of PCBs; that is enough to establish liability.

1. It and/or its predecessor is a "person" within the meaning of CERCLA Sections 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a) (SOF at ¶¶ 8, 19, 20, 36, 37, 51, 54, 57, 60, 78, 79);

2. PCBs are CERCLA "hazardous substances" (SOF at ¶ 3);

3. The Site, the individual paper production or reprocessing plants, landfills, and the POTWs all constitute "facilities" within the meaning of CERCLA Sections 101(9) and 107(a) (SOF at ¶¶ 1, 11, 14, 27, 32, 42, 47, 68, 69, 74, 92, 93); and

4. The United States has incurred response costs at the Site (SOF at ¶ 4).[8]

The remaining elements of Section 107 liability are established individually for each Defendant below.

**1. NCR Corporation is Liable Under CERCLA Section 107(a).**

As this Court has already recognized, there is no question that NCR Corporation is a liable party under Section 107 of CERCLA. *See*, *e.g.*, Dkt. 370 at 13, *citing Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-C-16, 2011 WL 806411, at *8 (E.D. Wis. Mar. 1, 2011) ("With respect to OU2-5, [NCR's and API's] own pollution caused a significant part of the environmental damage . . . ."). NCR is a successor by merger to two predecessor companies that discharged PCBs to the Fox River during their production of PCB-containing carbonless copy paper at facilities in Appleton (the "Appleton Facility") and Combined Locks (the "Combined Locks Facility"). *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-C-16, 2009 WL 5064049, at *1 (E.D. Wis. Dec. 16, 2009). *Accord NCR*, 688 F.3d at 836 ("NCR

---

[8] Although not a necessary element for establishing liability under Section 107(a), it is quite clear that response costs were incurred in addressing each Defendant's release of PCBs to the Site. SOF at ¶ 5.

admits that it is a liable party under CERCLA, because of PCB discharges from two plants located alongside the River's second operable unit").

NCR admits that between 1954 and April 1971, the Appleton Facility produced carbonless copy paper using an emulsion containing PCBs.  SOF at ¶ 63.  NCR further admits that, as a result of producing carbonless copy paper at the Appleton Facility, it generated and discharged PCB-containing wastewater to the City of Appleton POTW for disposal or treatment.  SOF at ¶ 64.  In turn, the City of Appleton POTW discharged wastewater containing PCBs to the Site -- which NCR admits were "releases of PCBs within the meaning of CERCLA Sections 101(22) and 107(a), 42 U.S.C. §§ 9601(22) and 9607(a)."  SOF at ¶¶ 65, 66, 67.  Consequently, NCR's admissions establish that NCR is liable as a past owner/operator under Section 107(a)(2) and as an arranger under Section 107(a)(3) for discharges to the Site from the Appleton Facility.

NCR also is liable as a past owner/operator under Section 107(a)(2) for discharges of PCBs from the Combined Locks Facility.  NCR admits that between at least 1969 and April 1971, the Combined Locks Facility was owned and operated by NCR and its predecessor Combined Paper.  SOF at ¶ 71.  During this time period, the Combined Locks Facility produced carbonless copy paper containing PCBs and generated PCB-containing wastewater.  SOF at ¶¶ 70, 71.  NCR admits that between 1969 and April 1971, the Combined Locks Facility discharged PCB-contaminated wastewater to a clarifier and then to the Site.  SOF at ¶¶ 71, 72.  Accordingly, during the years that NCR owned and operated the Combined Locks Facility there were releases of PCBs from the Combined Locks Facility to the Site.  SOF at ¶¶ 72, 73.  Thus, based on its past ownership and operation of the Combined Locks Facility, NCR is a liable party under Section 107(a)(2).

### 2. Menasha Corporation is Liable Under CERCLA Section 107(a)

Menasha Corporation admitted in its Answer that it is "liable to Plaintiffs under CERCLA section 107(a)(2) and CERCLA section 107(a)(3)." SOF at ¶ 48. Menasha (as an admitted successor by merger to the John Strange Paper Company) owned and operated a paperboard mill (the "John Strange Mill") in Menasha from at least 1954 to 1983. SOF at ¶¶ 33, 34, 35. Menasha recycled paper to make paperboard products at the John Strange Mill and its paper furnish included, among other things, some amount of PCB-containing carbonless copy paper as an element of "mixed office waste." SOF at ¶ 38.

As a result of Menasha's operations, the John Strange Mill generated PCB-contaminated wastewater, which it discharged both directly to the Site and to the Neenah-Menasha Sewerage Commission POTW, from which Menasha's wastewater was subsequently released to the Site. SOF at ¶¶ 39-41, 43-45. Although admitting to liability under CERCLA Sections 107(a)(2) and 107(a)(3), Menasha's Answer also included the caveat that such liability is "subject to . . . good faith defenses to CERCLA liability for OUs 2-5." Dkt. 48 at ¶ 84. It is unclear what Menasha meant by that statement when it answered the Complaint. What is clear, however, is that Menasha (along with Glatfelter and WTM) has now submitted an expert report admitting that PCB-contaminated sediments from OU1 would have been transported downstream and "settled out in OU2 through OU5 . . . ." SOF at ¶ 46. Thus, there is no question that Menasha's admission of CERCLA Section 107(a) liability is equally applicable to OUs 2-5.

### 3. P.H. Glatfelter Company is Liable Under CERCLA Section 107(a).

P.H. Glatfelter Company's admissions and documents establish that Glatfelter is a liable party under CERCLA Section 107(a)(2). Glatfelter (as an admitted successor to the Bergstrom Paper Company) owned and operated a paper recycling mill (the "Bergstrom Mill") adjacent to

the Site for many years. SOF at ¶¶ 15-17. Glatfelter also operated a landfill located adjacent to the Bergstrom Mill (the "Arrowhead Park Landfill") from at least 1954 to 1976. SOF at ¶ 18. At the Bergstrom Mill, Glatfelter processed waste paper, some of which contained PCBs, including post-consumer carbonless copy paper. SOF at ¶ 21. As a result of Glatfelter's operations, the Bergstrom Mill generated wastewater and sludge. SOF at ¶¶ 22, 28.

Between 1954 and 1980, Glatfelter discharged its wastewater from the Bergstrom Mill directly to the Site. SOF at ¶ 22. Glatfelter's admissions and documents establish that this wastewater contained some PCBs. SOF at ¶¶ 22, 23. Glatfelter admits that its discharge of PCB-containing wastewater from the Bergstrom Mill to the Site was a "disposal" of a hazardous substance within the meaning of CERCLA.[9] SOF at ¶ 24. Accordingly, there were releases of PCBs from the Bergstrom Mill to the Site during the years that Glatfelter and its admitted corporate predecessor owned and operated the Bergstrom Mill. Thus, Glatfelter is a liable party under CERCLA Section 107(a)(2), 42 U.S.C. § 9706(a)(2). Furthermore, Glatfelter has admitted that at least some portion of its PCB releases would have come to rest throughout OUs 2-5, as reaffirmed by its expert. SOF at ¶ 26.

### 4. WTM I Company is Liable under CERCLA Section 107(a).

WTM I Company's admissions, testimony, and documents establish that WTM is a liable party under CERCLA Sections 107(a)(2) and 107(a)(3), 42 U.S.C. § 9607(a)(2) and (a)(3). WTM and at least one of its corporate predecessors owned and operated a paper production facility (the "WTM Facility") adjacent to the Site from at least 1954 until at least 1977. SOF at

---

[9] Between at least 1954 and 1976, Glatfelter also placed PCB-containing sludge from the Bergstrom Mill in the adjacent Arrowhead Park Landfill. SOF at ¶ 29. Glatfelter admits that placing PCB-containing sludge from the Bergstrom Mill into the Arrowhead Park Landfill was a "disposal" of a hazardous substance within the meaning of CERCLA. SOF at ¶ 31. Steven Shimek, Glatfelter's expert witness in the *Whiting* litigation, acknowledged that sludge losses from the Arrowhead Park Landfill occurred, but were only in the range of less than 1-2%. SOF at ¶ 30. Thus, it is not disputed that there was at least *some* sludge that escaped or leaked from the Arrowhead Park Landfill to the River following Bergstrom's disposal of PCB-containing sludge at the landfill. Accordingly, disposals at Arrowhead Park Landfill constitute another basis of CERCLA Section 107(a)(2) liability for Glatfelter.

17

¶¶ 76, 77.  At the WTM Facility, WTM processed waste paper, some of which contained PCBs.

SOF at ¶ 80.  As a result of WTM's operations, the WTM Facility generated wastewater.  SOF at

¶¶ 81-84.

From at least 1954 until May 12, 1976, WTM discharged at least a portion of its process

wastewater from the WTM Facility to the Neenah-Menasha POTW, which in turn discharged to

the Site.  SOF at ¶ 82.  Some of WTM's wastewater also was discharged directly to the Site

through a sewer bypass line, as confirmed by WTM's own expert.  SOF at ¶ 83.  After May 12,

1976, WTM began discharging effluent from the WTM Facility directly to the Site through an

outfall at the facility.  SOF at ¶ 84.  Effluent testing results document "releases" of PCBs from

the WTM Facility to the Site and WTM admits that its discharge of PCB-containing wastewater

to the River was a "disposal" of a hazardous substance.  SOF at ¶¶ 81, 86.  WTM also admits

that wastewater containing PCBs from the WTM Facility was discharged to the Neenah-

Menasha POTW for treatment and disposal, and that the Neenah-Menasha POTW discharged

wastewater containing PCBs from the WTM Facility to the Site.  SOF at ¶¶ 88, 89, 91.

As with Glatfelter and Menasha, an expert report prepared for WTM acknowledges that

some PCBs released in OU1 would have come to rest throughout OU2 through OU5.  SOF at

¶ 90.  Accordingly, as there were releases of PCBs from the WTM Facility to the Site during the

years that WTM owned and operated the WTM Facility, WTM is a liable party under CERCLA

Section 107(a)(2), 42 U.S.C. § 9607(a)(2).  Similarly, WTM's admissions regarding its

arrangement for disposal or treatment of PCB wastewater through the Neenah-Menasha POTW

are also sufficient to establish that WTM is liable as an "arranger" under CERCLA

Section 107(a)(3), 42 U.S.C. § 9607(a)(3).

### 5. CBC Coating, Inc. is a Liable Party under CERCLA Section 107(a).

CBC Coating, Inc.'s admissions, testimony, and documents establish that CBC is a liable party under Sections 107(a)(2) and 107(a)(3). CBC (formerly known as Riverside Paper Corporation) owned and operated a paper production facility (the "Riverside Facility") adjacent to the Site from at least 1954 until 2010. SOF at ¶¶ 6, 7. At the Riverside Facility, CBC processed waste paper and other secondary fiber, including PCB-containing carbonless copy paper. SOF at ¶ 9. As a result of CBC's operations, the Riverside Facility generated wastewater. SOF at ¶¶ 10, 12.

Between 1954 and 1980, CBC discharged a portion of its wastewater through an outfall directly to the Site. SOF at ¶ 10. CBC documents and employee testimony establish that the company's wastewater at various times contained PCBs. SOF at ¶ 10. Accordingly, there were releases of PCBs from the Riverside Facility to the Site during the years that CBC owned and operated the Riverside Facility. Thus, CBC is a liable party under Section 107(a)(2).[10]

CBC also admits that, between 1973 and 1980, the Riverside Facility discharged a portion of its process wastewater, some of which contained PCBs, to the City of Appleton POTW for disposal or treatment. SOF at ¶ 12. In turn, the Appleton POTW discharged wastewater containing PCBs to the Site between the years 1973 and 1980. SOF at ¶ 13. CBC may argue that it does not know whether PCBs released from the City of Appleton's POTW originated from the Riverside Facility. This argument, however, does not defeat liability under Section 107(a)(3). Arranger liability lies where CBC both has admitted that PCBs were discharged to the Appleton POTW for disposal or treatment and that the Appleton POTW

---

[10] CBC also admits that it owned the Riverside Facility when the United States filed its Complaint in this case. SOF at ¶ 7. Because CBC was the current owner at that time and there had been releases of PCBs from the Riverside Facility to the Site previously, CBC also is liable as a current owner and operator under Section 107(a)(1).

released PCBs -- a "like substance[]" -- to the Site.  *See, e.g., Tosco Corp.*, 216 F.3d at 892 (the

United States is only required to show that an arranger's wastes were shipped to a site and that

"like substances" were found, released, or cleaned up at the site).  CBC's admissions, therefore,

are sufficient to establish that CBC is liable as an arranger under Section 107(a)(3).

## V.    CONCLUSION

For the foregoing reasons, the Court should grant the Plaintiffs' Motion for Partial

Summary Judgment, holding Defendants liable under CERCLA Section 107(a).

Respectfully submitted,


For Plaintiff United States of America

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division



Dated:   October 12, 2012                    s/*Jeffrey A. Spector*
                                             JEFFREY A. SPECTOR
                                             MAYA S. ABELA
                                             SUMONA N. MAJUMDAR
                                             RANDALL M. STONE
                                             KRISTIN M. FURRIE
                                             SEAN CARMAN
                                             Environmental Enforcement Section
                                             Environment and Natural Resources Division
                                             U.S. Department of Justice
                                             P.O. Box 7611
                                             Washington, DC  20044-7611
                                             Telephone:  (202) 514-4432
                                             Facsimile:  (202) 616-6584
                                             E-Mail:  Jeffrey.Spector@usdoj.gov

                                             GREGORY J. HAANSTAD
                                             Attorney for the United States, Acting
                                             Under Authority Conferred by 28 U.S.C. § 515

SUSAN M. KNEPEL
Assistant United States Attorney
Office of the United States Attorney
517 E. Wisconsin Avenue, Room 530
Milwaukee, WI  53202


For the State of Wisconsin:


Dated:   October 12, 2012                    s/*Cynthia R.  Hirsch*
                                             CYNTHIA R. HIRSCH
                                             Assistant Attorney General
                                             Wisconsin Department of Justice
                                             17 West Main Street
                                             P.O. Box 7857
                                             Madison, Wisconsin  53707-785
                                             hirschcr@doj.state.wi.us

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this day, the foregoing *Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment That Defendants Are Liable Parties under CERCLA Section 107(a)* was filed electronically with the Clerk of the Court using the Court's Electronic Court Filing System, which sent notification of such filing to the following counsel:

**Mary Rose Alexander**
Latham & Watkins LLP
mary.rose.alexander@lw.com

**Thomas Armstrong**
von Briesen & Roper SC
tarmstro@vonbriesen.com

**Paul Bargren**
Foley & Lardner LLP
pbargren@foley.com

**Linda E. Benfield**
Foley & Lardner LLP
lbenfield@foley.com

**Dennis P. Birke**
DeWitt Ross & Stevens SC
db@dewittross.com

**Steven P. Bogart**
Reinhart Boerner Van Deuren SC
sbogart@reinhartlaw.com

**Michael P. Carlton**
von Briesen & Roper SC
mcarlton@vonbriesen.com

**Evan R. Chesler**
Cravath Swaine & Moore LLP
echesler@cravath.com

**Marc E. Davies**
Greenberg Traurig LLP
daviesm@gtlaw.com

**Brandon J. Evans**
Hermes Law Ltd.
bje@hermeslawltd.com

**S. Todd Farris**
Friebert Finerty & St. John SC
stf@ffsj.com

**Patrick J. Ferguson**
Latham & Watkins LLP
patrick.ferguson@lw.com

**Sandra C. Goldstein**
Cravath Swaine & Moore LLP
sgoldstein@cravath.com

**Thomas R. Gottshall**
Haynsworth Sinkler Boyd PA
lgantt@hsblawfirm.com

**Eric W. Ha**
Sidley Austin LLP
eha@sidley.com

**Scott W. Hansen**
Reinhart Boerner Van Deuren SC
shansen@reinhartlaw.com

**William H. Harbeck**
Quarles & Brady LLP
william.harbeck@quarles.com

**Michael L. Hermes**
Hermes Law Ltd.
mlh@hermeslawltd.com

**Cynthia R. Hirsch**
Wisconsin Department of Justice
hirschcr@doj.state.wi.us

**Caleb J. Holmes**
Greenberg Traurig LLP
holmesc@gtlaw.com

**Philip C. Hunsucker**
Hunsucker Goodstein & Nelson PC
phunsucker@hgnlaw.com

**Peter C. Karegeannes**
Quarles & Brady LLP
peter.karegeannes@quarles.com

**Gregory A. Krauss**
Gregory Krauss Pllc
gkrauss@krausspllc.com

**Paul G. Kent**
Stafford Rosenbaum LLP
pkent@staffordlaw.com

**Ericka L. Krumrie**
Hermes Law Ltd
elk@hermeslawltd.com

**Linda R. Larson**
Marten Law PLLC
llarson@martenlaw.com

**Vanessa A. Lavely**
Cravath Swaine & Moore LLP
vlavely@cravath.com

**Susan E. Lovern**
von Briesen & Roper SC
slovern@vonbriesen.com

1

**Kevin J. Lyons**
Davis & Kuelthau SC
klyons@dkattorneys.com

**Karl S. Lytz**
Latham & Watkins LLP
karl.lytz@lw.com

**Meline G. MacCurdy**
Marten Law
mmaccurdy@martenlaw.com

**David G. Mandelbaum**
Greenberg Traurig LLP
mandelbaumd@gtlaw.com

**Bradley M. Marten**
Marten Law
bmarten@martenlaw.com

**Tara M. Mathison**
Davis & Kuelthau SC
tmathison@dkattorneys.com

**Darin P. McAtee**
Cravath Swaine & Moore LLP
dmcatee@cravath.com

**Stephen F. McKinney**
Haynsworth Sinkler Boyd PA
smckinney@hsblawfirm.com

**Heidi D. Melzer**
Hermes Law Ltd.
hdm@hermeslawltd.com

**Elizabeth K. Miles**
Davis & Kuelthau SC
emiles@dkattorneys.com

**Sabrina Mizrachi**
Greenberg Traurig LLP
mizrachis@gtlaw.com

**Monique M. Mooney**
Greenberg Traurig LLP
mooneym@gtlaw.com

**William J. Mulligan**
Davis & Kuelthau SC
wmulligan@dkattorneys.com

**Daniel C. Murray**
Johnson & Bell Ltd.
murrayd@jbltd.com

**Omid H. Nasab**
Cravath Swaine & Moore LLP
onasab@cravath.com

**Kelly J. Noyes**
von Briesen & Roper SC
knoyes@vonbriesen.com

**Nancy K. Peterson**
Quarles & Brady LLP
nancy.peterson@quarles.com

**Thomas M. Phillips**
Reinhart Boerner Van Deuren SC
tphillip@reinhartlaw.com

**Ian A.J. Pitz**
Michael Best & Friedrich LLP
iapitz@michaelbest.com

**David A. Rabbino**
Hunsucker Goodstein & Nelson PC
drabbino@hgnlaw.com

**Joan Radovich**
Sidley Austin LLP
jradovich@sidley.com

**Ronald R. Ragatz**
DeWitt Ross & Stevens SC
rrr@dewittross.com

**Alexandra Reeve Givens**
Cravath Swaine & Moore LLP
agivens@cravath.com

**Kathleen L. Roach**
Sidley Austin LLP
kroach@sidley.com

**Megan A. Senatori**
DeWitt Ross & Stevens SC
ms@dewittross.com

**Adam B. Silverman**
Greenberg Traurig LLP
silvermana@gtlaw.com

**Sarah A. Slack**
Foley & Lardner LLP
sslack@foley.com

**Margaret R. Sobota**
Sidley Austin LLP
msobota@sidley.com

**Anthony S. Wachewicz, III**
City of Green Bay
tonywa@ci.green-bay.wi.us

**James P. Walsh**
Appleton City Attorney
jim.walsh@appleton.org

**Ted A. Warpinski**
Friebert Finerty & St John SC
taw@ffsj.com

**Ted Waskowski**
Stafford Rosenbaum LLP
twaskowski@staffordlaw.com

**Evan B. Westerfield**
Sidley Austin LLP
evanwesterfield@sidley.com

**Richard C. Yde**
Stafford Rosenbaum LLP
ryde@staffordlaw.com

2

Dated:  October 12, 2012                              s/*Jeffrey A. Spector*