UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA and
STATE OF WISCONSIN,

        Plaintiffs,

v.                                                         Case No. 10-C-910

NCR CORP. and APPLETON PAPERS INC. et al.,

        Defendant.

## ORDER DENYING MOTION TO COMPEL

        Certain Defendants in this CERCLA enforcement action, led by Defendant Menasha Corporation, have filed a motion to compel production of documents from Plaintiffs. Despite the fact that this is what the Defendants describe as a $1.5 billion CERCLA action, the Plaintiffs refuse to turn over, or even search, thousands of electronically stored documents ("ESI," with the "I" standing for "information") that are responsive to the Defendants' discovery requests. Defendants also sought documents from the National Archives containing responsive information that has not been searched by the Plaintiffs, but this aspect of the motion to compel has now been dropped.

        As is common in such disputes, the parties opposing discovery argue that producing the documents in question would be unduly burdensome and expensive, especially in light of their limited level of relevance. Moreover, it is not just a matter of turning over documents known to be responsive to the Defendants' request; the very act of searching for such documents is itself costly and burdensome. The governments have already produced a staggering four million pages of documents from 25 government offices, devoting some 2,500 hours of attorney and paralegal time to privilege review. They note that they have identified hundreds of thousands of potentially

responsive emails from state, federal and contractor sources, which total in the millions of pages. Review of all of these documents would take a colossal effort lasting years and requiring thousands of man-hours.

The Defendants scoff at the governments' claims of burden and expense, noting that the Department of Justice is the largest organization of lawyers in the world and surely has the staffing capability to handle such a chore. Given the fact that this is a massive Superfund action involving more than a billion dollars (an action the governments started), they should not be heard to complain about burden or expense.

I am satisfied that it would indeed be a major, almost prohibitive, undertaking if the governments were ordered to review and produce all of the ESI responsive to the Defendants' discovery requests. But more importantly, I am also satisfied that the information sought would be of limited relevance to the issues in this action. The Defendants' initial brief does not explain in much detail why such information would be relevant to the upcoming trial, but in a reply brief they state that the documents are relevant for a few key purposes. I address these below.

First, the Defendants argue that the ESI speaks to the question of whether releases in OU1 caused the incurrence of response costs in OU4, the portion of the River now subject to the cleanup action. This is, in essence, a liability issue. This Court denied the Defendants' motion to expand the administrative record on the grounds that review of the remedy is to be limited to the record itself. Here, the Defendants argue that they are not so much challenging the remedy as they are challenging liability in the first place. That is, if the governments are going to be using this type of evidence to establish liability by showing movement of PCBs in the river, then the Defendants should be entitled to discover this evidence as well. Although ostensibly a reasonable request, the Defendants do not explain what more any *further* discovery could possibly provide on liability. As

2

noted elsewhere, the voluminous administrative record stands on its own and is replete with data that was the subject of public comment and input from some of the Defendants themselves. The Defendants vaguely argue that the governments will be using such data in their case-in-chief, but nowhere do they suggest that the governments will be using data that has been kept secret and hidden from discovery. If there is any indication of such prejudice during the trial, the matter may be taken up at that point.

The Defendants also argue that the information regarding sediment movement is relevant to their divisibility defense. To recall, the Defendants believe that the harm at the Site is capable of being divided in such a manner that joint and several liability need not apply. They note that the dredging activities of the Army Corps of Engineers in OU4 and OU5 are relevant to demonstrating the locations and quantities of various PCB deposits in the riverbed. Even if that is true, however, there has already been extensive discovery on these points, including 23 depositions of current and former Corps employees, and the Defendants have not explained what any additional information would bring to bear on these issues. As noted elsewhere, the divisibility question is a messy one involving deposits of PCBs by multiple entities into a dynamic riverbed. The Corps dredged shipping channels in the Site and disposed of that sediment in the River until the 1960s. It is difficult to envision how documents or ESI (e.g., emails from the 1990's) would be able to shed much useful light on those activities, especially given that much of the information about dredging is already known through other discovery and FOIA requests.

Finally, the Defendants believe that the information is relevant to the equities of the case. To grant the injunction the governments request, that relief must be in the public interest and must be required by the equities of the case. 42 U.S.C. § 9606(a). Because the Army Corps' activities of dredging and dispersing the riverbed sediment may render the Corps liable itself, the Defendants

3

argue they need to conduct discovery on the dredging issues to determine the Corps' own culpability in this action. Once again, however, the relevance of such discovery is left to the imagination. No one has credibly suggested that there is any strong *equitable* reason to find the Corps liable for the cleanup here; if anything, its potential liability is (like some other Defendants') simply a matter of happenstance. After all, it was simply doing its job of dredging shipping channels, and the dredged material happened to have toxic PCBs in it, a fact which was not known until later. There are suggestions that the government knew at some point that open water disposal of dredged sediment was questionable (e.g. Dkt. # 519, Ex. 2 at 2) but I have not seen anything that would suggest that the Corps has some sort of culpability here, at least in the sense that would undermine the federal government's ability to get an injunction. More importantly, there is no suggestion that such an argument requires additional discovery. The facts underlying the equitable argument are already before us, and the Defendants have not adequately explained what *additional* discovery would yield. Accordingly, I cannot envision how electronic documents regarding long-ago dredging and dispersing activities would be relevant to the equities in this action.

For these reasons, the motion to compel is **DENIED**. The Defendants remain free to object on an *ad hoc* basis to the use of any evidence that they had no opportunity to consider in preparing their defense.

**SO ORDERED** this   17th   day of October, 2012.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge