IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 10-C-910 |
| v. | ) ) ) | Hon. William C. Griesbach |
| NCR CORPORATION, et al. | ) ) | |
| Defendants. | ) ) | |

**UNITED STATES' BRIEF IN OPPOSITION TO CERTAIN DEFENDANTS'
MOTION IN LIMINE TO ESTABLISH THE ELEMENTS OF THE UNITED STATES'
PRIMA FACIE CASE ON ITS FIFTH CLAIM FOR RELIEF**

# UNITED STATES' BRIEF IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION IN LIMINE TO ESTABLISH THE ELEMENTS OF THE UNITED STATES' PRIMA FACIE CASE ON ITS FIFTH CLAIM FOR RELIEF

There is so much mess to untangle in Certain Defendants' Motion In Limine, which purports to outline the prima facie elements that the United States needs to prove at the upcoming trial. Key provisions of CERCLA are not even mentioned. Case law is twisted and misapplied. Burdens of proof are flipped. And the core assertion is truly absurd. In essence, the Movants contend that the cleanup remedy selected in the EPA's Records of Decision and the Unilateral Administrative Order that required performance of that remedy became *irrelevant* when the United States filed suit and uttered the word "injunction."[1]

Because they believe that the "UAO is fairly well irrelevant" at this point (Dkt. 443 at 24), the Movants view any and all "equities" as fair game for trial. They have designated no less than 13 testifying experts in the expert discovery phase that is underway now. Many of those experts would support arguments that it isn't fair to make the Movants do any cleanup work covered by the UAO because: (i) NCR can afford to pay for all of it (one expert); (ii) others have overestimated the amount of PCBs they discharged (four experts); (iii) the Army Corps moved contaminated sediment at the Site, so the United States has unclean hands (two experts);[2] and (iv) the remedy is flawed and/or unnecessary (four experts).[3]

---

[1] Although the UAO and the Fifth Claim for Relief also target NCR and U.S. Paper, they elected not to join Certain Defendants' motion in limine. In this brief, we will refer to those who joined the motion as the "Movants."

[2] The United States has moved for judgment on the pleadings on the Movants' unclean hands defenses. Dkt. 430.

[3] The Court has already decided that there is no need for evidence from two of the Movants' remedy challenge experts in its August 30, 2012 Decision and Order denying defendants' motions to supplement the administrative record with expert testimony (Dkt. 498). The Movants have sought reconsideration of that ruling (Dkt. 527), so those two computer modeling experts (Messrs. Annear and Susilo) are due to be deposed in the coming weeks. Despite the Court's record review ruling, the Movants also designated another "rebuttal" remedy challenge expert in late September (Mr. Travers). The United States has filed a separate motion to preclude his testimony (Dkt. 533).

But the United States' Fifth Claim for Relief seeks a very specific form of relief – i.e., "a judicial determination that each UAO Recipient is required to comply with all provisions of the UAO applicable to such UAO Recipient . . . pursuant to CERCLA § 106, 42 U.S.C. § 9606, and the Declaratory Judgment Act, 28 U.S.C. § 2201-2202." Dkt. 30 at 30. In an action like this to enforce a UAO for performance of a remedy selected by EPA, the UAO matters and CERCLA's limitations on judicial review of remedy challenges matter.

Section 1 of this brief explains the standards that apply to remedy review in an action like this to enforce a UAO. Section 2 clarifies the relationship between CERCLA Section 106 (entitled "Abatement actions") and Section 107 (entitled "Liability") and the role of causation.

**1.      Remedy Review in an Action to Enforce a UAO**

The Movants' entire argument focuses on a few words from the original language of CERCLA Section 106. More specifically, they hang their hat on the first sentence of Section 106(a), which references the fact that district courts can "grant such relief as the public interest and the equities of the case may require." 42 U.S.C. § 9606(a). In doing so, they completely ignore harmonizing and clarifying provisions of the law that were added to CERCLA by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), as discussed below.

CERCLA was enacted in the waning days of the 96th Congress. Pub. L. No. 96-510 (Dec. 11, 1980). The resulting statute was "not a model of legislative draftsmanship." *Exxon Corp. v. Hunt*, 475 U.S. 355, 363 (1986). *Accord Developments in the Law – Toxic Waste Litigation*, 99 Harv. L. Rev. 1458, 1485 (1986) ("the procedural framework of CERCLA is difficult to decipher"). As originally enacted, CERCLA Section 106(a) authorized the United States to file suit to abate dangers or threats posed by releases of hazardous substances. Pub. L.

No. 96-510, § 106(a), 94 Stat. 2767, 2780 (1980) (now codified at 42 U.S.C. § 9606(a)).[4] It also empowered EPA to issue UAOs "as may be necessary to protect public health and welfare and the environment," although it said nothing about how EPA should determine what was "necessary." *Id.* Section 106(b) referenced the fact that an action could be "brought in the appropriate United States District court to enforce such order," yet it did not specify any standards for judicial review of the UAO at issue. *Id.* at § 106(b), 94 Stat. 2767, 2780 (now codified as amended at 42 U.S.C. § 9606(b)(1)).

Some courts have viewed the United States' right to sue for enforcement of UAO as arising under Section 106(a) alone.[5] Other courts and commentators have said that right stems from both Section 106(a) and Section 106(b).[6] In any case, those courts have uniformly acknowledged the United States' ability to obtain judicial enforcement of a UAO, as sought here. That leaves the questions that Section 106 does not answer about the rules of decision for a UAO enforcement claim.

SARA supplied those answers. Among other things, SARA added CERCLA Section 121(a), providing that "[EPA] shall select appropriate remedial actions *determined to be necessary* to be carried out under section 9604 of this title or *secured under section 9606 of this title* which are in accordance with this section and, to the extent practicable, the national

---

[4] Like many provisions of CERCLA, Section 106 refers to the "President" rather than to "EPA," but the pertinent functions have been delegated to EPA by Executive Order. *See* Exec. Order No. 12,580, 52 Fed. Reg. 2,923 (Jan. 29, 1987).

[5] *See Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 661 (7th Cir. 1995) (Posner, J.) (noting that if a UAO recipient refuses to comply with the order, the United States can "seek a mandatory injunction against the refuser [under] § 9606(a)"); *City of Rialto v. W. Coast Loading Corp.*, 581 F.3d 865, 870-71 (9th Cir. 2009) (indicating that EPA may obtain compliance with the UAO through "an enforcement action under § 9606(a)").

[6] *See United States v. Ottati & Goss, Inc.*, 900 F.2d 429, 433 (1st Cir. 1990) (Breyer, J.) (describing the process as "EPA order/court enforcement [under] 42 U.S.C § 9606(a) (second sentence) and § 9606(b)"); 99 Harv. L. Rev. at 1494 (reasoning that after issuing a UAO under 106(a), EPA "can seek to enforce the order in federal district court under section 106(b)").

3

contingency plan . . . ." 42 U.S.C § 9621(a) (emphasis added). SARA also added important provisions governing judicial review of EPA remedy selection decisions under Section 121(a) and administrative orders under Section 106. Section 113 limits the timing for judicial review of "any challenges to removal or remedial action" selected by EPA or "any order issued under section 9606(a)." 42 U.S.C. § 9613(h). Review of such challenges is allowed in an action like this "to enforce an order issued under section 9606(a)." *Id.* But CERCLA Section 113 also specifies the scope and standard of review for such challenges. "[J]udicial review of any issues concerning the adequacy of any response action taken or *ordered by* [EPA] shall be limited to the administrative record." *Id.* at § 9613(j)(1) (emphasis added). And "[i]n considering objections raised in any judicial action under this chapter, the court shall uphold [EPA's] decision in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law." *Id.* at § 9613(j)(2).

Here, EPA developed and documented the remedy "*determined to be necessary*" through an involved process prescribed by the National Contingency Plan, which included preparation of a supporting administrative record. 40 C.F.R. Part 300, Subpart E and Subpart I; Dkt. 474-2 (Administrative Record Index). EPA then took two important steps to ensure that the performance of that remedy would be "*secured under section 9606*." First, EPA issued the UAO for performance of the remedy in Operable Units 2-5, exercising its authority under CERCLA Section 106. Dkt. 30-1 (UAO). Second, EPA asked the Department of Justice to file this district court action to enforce compliance with the UAO under Section 106. Dkt. 30 at 30 (Fifth Claim for Relief for enforcement of the UAO). Because those steps have been taken, the adequacy of the response action *ordered by* EPA must be reviewed based on the administrative record, using the arbitrary and capricious standard. *See* 42 U.S.C. § 9613(j); *see also Employers Ins. of*

4

*Wausau*, 52 F.3d at 666-67 (EPA's construction of the scope and requirements of a UAO must be upheld unless arbitrary and capricious); *United States v. E.I. du Pont de Nemours & Co., Inc.*, 341 F. Supp. 2d 215, 246-53 (W.D.N.Y. 2004) (when EPA has selected a remedy in a Record of Decision and then issued a UAO mandating performance of that remedy, the UAO recipient "bears the burden of establishing that the EPA's decision to issue the UAO was arbitrary and capricious.").

The Movants cite an array of old cases to support their argument for a freewheeling de novo trial in December. In nearly all of those cases, suit was originally filed: (i) before the enactment of SARA; (ii) before EPA had made any sort of formal remedy selection decision; and (iii) *only* under the first sentence of Section 106(a), the general hazard abatement provision.[7] And, most importantly, *none* of the cited cases sought enforcement of a UAO. That is a critical distinction, as emphasized by many of the authorities cited by the Movants. For example, *Ottati & Goss* made clear that CERCLA's remedy review limitations apply when a court is asked to enforce a UAO:

> [T]he specific legal issue before us is *not* whether the courts, in some general or abstract sense, can overturn EPA decisions where they are not arbitrary, capricious, an abuse of discretion, or otherwise unlawful; obviously, the answer to this general question is "generally no." **When the EPA asks a court, for example, to enforce a lawful (nonarbitrary) EPA order, the court must enforce it.**

900 F.2d at 434 (bolded emphasis added) (citing *Hardage*, 663 F. Supp. at 1284 and *In re Acushnet & New Bedford Harbor: Proceedings re Alleged PCB Pollution*, 722 F. Supp. 888,

---

[7] *See, e.g.*, *Ottati & Goss*, 900 F.2d at 433 (emphasizing that the United States' request for an injunction in that case rested "solely . . . upon the authority of the first sentence of § 9606(a)"); *United States v. Hardage*, 663 F. Supp. 1280, 1283 (W.D. Okla. 1987) (when suit was filed, "the government had only a vague conception of what type of remedy it might seek in the case"); *United States v. Conservation Chem. Corp.*, 661 F. Supp. 1416, 1431 (W.D. Mo. 1987) ("It is impossible to utilize an arbitrary and capricious standard of review when no action on an administrative decision exists"); *United States v. A & F Materials Co., Inc.*, 578 F. Supp. 1249, 1259 (S.D. Ill. 1984) ("The government . . . is presently involved in a study to determine what dangers remain").

5

892 (D. Mass. 1989)).

As noted above, the Movants rely entirely on language in the first sentence of Section 106(a). But *Ottati & Goss* reasoned that that the first sentence of Section 106(a) does not even come into play in an action like this to enforce a UAO. 900 F.2d at 433-34. Even if that sentence were viewed as the vehicle for obtaining enforcement of a UAO, the remedy review provisions added by SARA limit the remedy inquiry in a UAO enforcement action. If that were not true, then the language that SARA added about "judicial review of any issues concerning the adequacy of any response action taken or *ordered by* [EPA]" would have no meaning. 42 U.S.C. § 9613(j)(1) (emphasis added).

By definition, administrative record review involves judicial review of a prior agency decision based on "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Thus, for judicial review purposes, it is inconsequential that "[t]he government's decision documents were issued at a different time, under different circumstances," as asserted by Movants. Dkt. 521 at 8. In any event, EPA has revised and updated its remedy selection decision for this Site using the record supplementation procedures established by the National Contingency Plan regulations and EPA guidance. *See* 40 C.F.R. § 300.825; Dkt. 147-1 (2010 Explanation of Significant Differences); Dkt. 439-10 (June 2012 Design Memorandum).

The United States rarely has to sue to compel compliance with a Section 106 order issued by EPA. *See, e.g.*, *United States v. Occidental Chem. Corp.*, 200 F.3d 143 (3d Cir. 1999).[8]

---

[8] The Third Circuit's decision in *Occidental Chemical* rejects one of the main arguments advanced by the Movants – i.e., their assertion that the United States must prove the need to enforce the UAO against each recipient separately and their related suggestion that they cannot be compelled to comply when NCR can satisfy the UAO requirements on its own. Dkt. 521 at 9-10. The district court in *Occidental Chemical* accepted a similar argument; it ruled that a UAO issued to Occidental was not "necessary" under Section 106 because another PRP agreed to do the cleanup under a separate consent decree with the government. 200 F.3d at 151. The Third Circuit reversed and remanded for reinstatement

In most instances, UAO recipients comply with the order due to the risk of sanctions for violating it, which can include penalties of up to $37,500 per day. 42 U.S.C. § 9606(b); 40 C.F.R. § 19.4. But the experience here shows the risk of slightly more than $1 million per month in penalties may not deter noncompliance in a case like this, where the costs of complying with the UAO may approach or exceed *$10 million* per month between March and November. The United States' Fifth Claim for relief therefore seeks enforcement of EPA's order that the Movants (and others) perform a particular cleanup remedy selected by EPA. Nothing in CERCLA forfeits the deference that the statute accords those EPA decisions when the United States must sue to enforce EPA's mandate to perform its remedy.

> 2. **The Relationship Between CERCLA Section 106 and Section 107 and the Role of Causation.**

CERCLA Section 106 (entitled "Abatement actions") does not specify the parties to whom a UAO can be issued. On the other hand, CERCLA Section 107 (entitled "Liability") defines four classes of parties potentially liable for costs and damages that arise from a release or threatened release of a hazardous substance:

> (1) the owner and operator of a vessel or a facility, (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment . . . of hazardous substances . . ., and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person . . . .

---

of the United States' UAO enforcement claim, holding that "the question of whether an order may be necessary to protect public health, welfare, and the environment goes to the status of the contamination at the site, not to who is, or who is not, obligated to address it." *Id.* at 151, 153-54. And the Movants' reliance on events in the *Whiting* case is misplaced. In *Whiting*, the Court emphasized that although NCR might not be able to recover from them in contribution, the Movants should not be viewed as "'innocent' or not liable to the government, as liability under CERCLA is strict and all parties to this action are all potentially liable under that statute." *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-cv-16, 2009 WL 5064049, at * 25 (E.D. Wis. Dec. 16, 2009).

7

42 U.S.C. § 9607(a)(1)-(4). Some early decisions cited by the Movants found that liability in a suit brought under the first sentence of Section 106(a) "is dependent upon the substantive provisions explaining liability outlined in § 107." *United States v. Price*, 577 F. Supp. 1103, 1113 (D.N.J. 1983); *A & F Materials*, 578 F. Supp. at 1259 (quoting *Price*); *United States v. Outboard Marine Corp.*, 556 F. Supp. 54, 55-57 (N.D. Ill. 1982). But SARA added clarifying provisions to Section 106 that were not so limiting, as explained below. Thus, EPA's longstanding policy is that:

> In appropriate cases, unilateral orders may be issued to parties other than those specified in section 107(a), if actions by such parties are necessary to protect the public health, welfare, or the environment. For example, a Unilateral order may be issued to the owner of land adjoining the site, to obtain site access. A unilateral order also may be issued to prevent a non-PRP from interfering with a response action.

EPA, OSWER Dir. 9833.0-1a, Guidance on CERCLA Section 106(a) Unilateral Administrative Orders for Remedial Designs and Remedial Actions, at 12 (Mar. 7, 1990) (posted at http://www.epa.gov/compliance/resources/policies/cleanup/superfund/cerc106-uao-rpt.pdf).

After SARA's additions to Section 106, non-liability under Section 107(a) effectively operates as a defense under CERCLA Section 106 (or at least a basis for cost reimbursement and penalty avoidance if certain conditions are satisfied). If a UAO recipient complies with the order and completes the work, it can seek and obtain cost reimbursement from the Superfund if it can "establish by a preponderance of the evidence that it is not liable for response costs under section 9607(a) . . . ." 42 U.S.C. § 9606(b)(2)(c).[9] In addition, a non-compliant UAO recipient's proof that it is not a CERCLA Section 107(a) liable party may establish a viable "sufficient cause"

---

[9] *See Employers Ins. of Wausau*, 52 F.3d at 662 (noting that a UAO recipient "can obey and then when it has completed the clean-up required by the order sue for the return of its expenses on the ground that it was not a responsible party within the meaning of the statute after all").

8

defense under CERCLA Section 106(b)(1) and avoid civil penalties for failing to comply with the UAO.

The nuanced interplay between Section 106 and Section 107(a) is largely academic in this case. As detailed in a recently-filed motion for partial summary judgment that the Movants (and NCR) are liable parties under CERCLA Section 107(a) (Dkt. 549), the Movants have basically admitted that they owned and operated paper mill "facilities" and that there were "releases" of PCBs from those facilities to the Lower Fox River and Green Bay Superfund Site. That motion also shows that releases of PCBs at the Site have caused "the incurrence of response costs," although proof of that element under Section 107(a) is not required to obtain enforcement of the UAO against the Movants. Even the old pre-SARA cases that looked to Section 107(a) for context did not demand proof of the incurrence of response costs in actions to compel a cleanup under Section 106. *See Outboard Marine*, 556 F. Supp. at 56; *Price*, 577 F. Supp. at 1110-14.

The Movants invent one more element of proof from whole cloth:

> At trial, the United States must specify a facility on which it focuses for each defendant, and then must show a release from that facility with a causal connection to the response action at issue.

Dkt. 521 at 11. Their brief cites no legal support for imposing that "causal connection" requirement. That is because none exists.

The original 1980 House bill that evolved to become CERCLA might have required the type of demonstration demanded by the Movants. It would have imposed liability only on "any person who caused or contributed to the release or threatened release." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 889 F.2d 1146, 1152 (1st Cir. 1989) (quoting H.R. 7020, 96th Cong, 2d Sess § 3071(a)(1)(C) (1980), 126 Cong. Rec. 26, 799)). The House Committee Report on that original bill stated: "for liability to attach . . . , the plaintiff must demonstrate a causal or contributory nexus between the acts of the defendant and the conditions which necessitated

9

response action . . . ." *Id.* at 1153 (quoting H.R. Rep. No. 1016, 96th Cong., 2d Sess. 33 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6119, 6136-37). But that causation language was deleted from the final bill that was passed. Thus, the courts have reached a clear consensus in construing and applying the final statutory text:

> [A]t least at the liability stage, the language of the statute does not require the government to prove as part of its *prima facie* case that the defendant caused any harm to the environment. [*Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 935 (8th Cir. 1995.]  Rather, once the requisite connection between the defendant and a hazardous waste site has been established (because the defendant fits into one of the four categories of responsible parties), it is enough that response costs resulted from "a" release or threatened release – not necessarily the defendant's release or threatened release.  42 U.S.C. § 9607(a)(4).
>
> \*   \*   \*
>
> The argument that the government must prove a direct causal link between the incurrence of response costs and an actual release caused by a particular defendant has been rejected by "virtually every court" that has directly considered the issue.  *United States v. Alcan Alum. Corp. (Alcan I)*, 964 F.2d 711, 721 (3d Cir. 1993) (citing cases); *see* 42 U.S.C. § 9607(a)(4).

*United States v. Hercules, Inc.*, 247 F.3d 706, 716 & n.8 (8th Cir. 2001). That set of rules applies to cost recovery claims against all classes of liable parties defined by CERCLA. *See, e.g.*, *id.* at 711-16 (past owner/operator); *Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 891 (10th Cir. 2000) (past owner/operator); *Alcan I*, 964 F.2d at 264-66 (arranger); *United States v. Alcan Alum. Corp. (Alcan II)*, 990 F.2d 711, 721 (2d Cir. 1993) (arranger); *United States v. Monsanto Co.*, 858 F.2d 160, 169-70 (4th Cir. 1988) (arrangers).[10]

---

[10]  Where the case turns on only a *threatened* release, rather than an *actual* release, courts have required a cost recovery plaintiff to prove that a threatened release from a particular facility caused the plaintiff to incur at least some response costs. *See, e.g.*, *Dedham Water Co., Inc. v. Cumberland Farms Dairy, Inc.,* 972 F.2d 453 (1st Cir. 1992). The need for some linkage between a particular facility and the costs in a threatened release case stems from the punctuation used in Section 107(a) – i.e., it references a facility "from which there is a release [*comma*] or a threatened release which causes the incurrence of response costs [*comma*] of a hazardous substance." 42 U.S.C. § 9607(a)(4) (emphasis added). Thus, "only in the case of threatened releases does it appear that a plaintiff must demonstrate any degree of causation." *Westfarm Assoc. Ltd. P'ship v. Int'l Fabricare Inst.*, 846 F. Supp. 422, 431-33 (D. Md. 1993), *aff'd on other grounds sub nom. Westfarm Assoc. L.P. v. Washington Suburban Sanitary Comm'n*, 66 F.3d 669 (4th Cir 1995). *Accord City of New York v. Exxon Corp.*, 766 F. Supp. 177, 193 (S.D.N.Y. 1991).

10

Here and in other circumstances, "releases" from several "facilities" can prompt a response action at another "facility."[11] In a similar vein, "releases" by multiple parties at the same "facility" may necessitate a response action. In either situation, a CERCLA plaintiff does not bear the burden of proving a causal connection between each defendant's releases, the need for particular cleanup measures, or the incurrence of specific response costs. *See Hercules*, 247 F.3d at 716; *Tosco*, 216 F.3d at 891; *Westfarm*, 846 F. Supp. at 431-33. The government therefore does not need to show as part of its prima facie case that releases from each defendant's facility have "a causal connection to the response action at issue" or "cause[d] the incurrence of response costs at issue," as suggested by the Movants. Dkt. 521 at 11, 12.

Each defendant in this case undoubtedly caused some contamination at the Site, though each tries to minimize its contribution. Even if it is required proof for a cost recovery claim under Section 107(a), we do not believe that the government needs to prove a particular defendant's "releases" have caused "the incurrence of response costs" to obtain enforcement of a UAO under Section 106. Our pending motion for partial summary judgment nonetheless establishes that fact for each UAO recipient. Dkt. 549.

But there also is another answer. Any points that the Movants want to make about their "causal connection to the response action at issue" (Dkt. 521 at 11) can and should be treated as divisibility and apportionment arguments, not elements of the government's prima facie case. "[A]pportionment is proper when 'there is a reasonable basis for determining the contribution of each cause to a single harm.'" *Burlington N. & Santa Fe. Ry., Co. v. United States*, 556 U.S. 599, 614 (2009) (quoting Restatement (Second) of Torts § 433(1)(b), p. 434 (1963-1964)). Thus, the leading cases cited in *Burlington Northern* recognize that causation principles are "brought

---

[11] *See* 42 U.S.C. § 9061(9) (defining as "facility" to include not only potential sources such as a "building," "pipe," or "storage container," but also "any site or area where a hazardous substance has been deposited . . .or otherwise come to be located").

11

back into the case – through the backdoor, after being denied entry at the frontdoor – at the apportionment stage." *Alcan II*, 990 F.2d at 722; *Hercules*, 247 F.3d at 716 (quoting *Alcan II*). There is, however, one very important caveat to consider for this motion in limine. Unlike an element of the government's prima facie case, "CERCLA defendants seeking to avoid joint and several liability bear the burden of proving that a reasonable basis for apportionment exists." *Burlington N.*, 556 U.S. at 614. The Movants obscure that fact. At trial, the Movants (and the other UAO recipients) will bear the burden of establishing any causation-based justifications that might limit their UAO compliance obligations, just as NCR bore that burden at the preliminary injunction stage. *See United States v. NCR Corp.*, 688 F.3d 833, 835 (7th Cir. 2012) ("we agree with the district court that NCR has not met its burden of showing that the harm caused by pollution in the Lower Fox River is capable of apportionment.").

## Conclusion

For the foregoing reasons, the Court should deny the motion in limine.

                        Respectfully Submitted,

                        **For the United States of America**

                        IGNACIA S. MORENO
                        Assistant Attorney General
                        Environment and Natural Resources Division

Dated: October 18, 2012      s/ *Randall M. Stone*
                        RANDALL M. STONE
                        JEFFREY A. SPECTOR
                        KRISTIN M. FURRIE
                        SUMONA N. MAJUMDAR
                        SEAN CARMAN
                        MAYA S. ABELA
                        Environmental Enforcement Section
                        Environment and Natural Resources Division
                        U.S. Department of Justice
                        P.O. Box 7611
                        Washington, DC  20044-7611
                        Telephone:    202-414-1308
                        Facsimile:     202-616-6584
                        E-Mail:        randall.stone@usdoj.gov


                        GREGORY J. HAANSTAD
                        Attorney for the United States, Acting
                        Under Authority Conferred by 28 U.S.C. § 515

                        SUSAN M. KNEPEL
                        Assistant United States Attorney
                        Office of the United States Attorney
                        517 E. Wisconsin Avenue, Room 530
                        Milwaukee, WI  53202

# CERTIFICATE OF SERVICE

I hereby certify that on this date I caused true and correct copies of the foregoing Opposition Brief to be served on the following counsel of record by the Court's Electronic Case Filing system:

**Mary Rose Alexander**
Latham & Watkins LLP
mary.rose.alexander@lw.com

**Thomas Armstrong**
von Briesen & Roper SC
tarmstro@vonbriesen.com

**Paul Bargren**
Foley & Lardner LLP
pbargren@foley.com

**Linda E. Benfield**
Foley & Lardner LLP
lbenfield@foley.com

**Dennis P. Birke**
DeWitt Ross & Stevens SC
db@dewittross.com

**Steven P. Bogart**
Reinhart Boerner Van Deuren SC
sbogart@reinhartlaw.com

**Michael P. Carlton**
von Briesen & Roper SC
mcarlton@vonbriesen.com

**Evan R. Chesler**
Cravath Swaine & Moore LLP
echesler@cravath.com

**Francis A. Citera**
Greenberg Traurig LLP
citeraf@gtlaw.com

**Marc E. Davies**
Greenberg Traurig LLP
daviesm@gtlaw.com

**David R. Erickson**
Shook Hardy & Bacon LLP
derickson@shb.com

**S. Todd Farris**
Friebert Finerty & St. John SC
stf@ffsj.com

**Patrick J. Ferguson**
Latham & Watkins LLP
patrick.ferguson@lw.com

**Charles Fried**
fried@law.harvard.edu

**Sandra C. Goldstein**
Cravath Swaine & Moore LLP
sgoldstein@cravath.com

**Thomas R. Gottshall**
Haynsworth Sinkler Boyd PA
lgantt@hsblawfirm.com

**Eric W. Ha**
Sidley Austin LLP
eha@sidley.com

**Scott W. Hansen**
Reinhart Boerner Van Deuren SC
shansen@reinhartlaw.com

**William H. Harbeck**
Quarles & Brady LLP
william.harbeck@quarles.com

**Cynthia R. Hirsch**
Wisconsin Department of Justice
hirschcr@doj.state.wi.us

**Margaret I. Hoefer**
Stafford Rosenbaum LLP
mhoefer@staffordlaw.com

**Caleb J. Holmes**
Greenberg Traurig LLP
holmesc@gtlaw.com

**Philip C. Hunsucker**
Hunsucker Goodstein PC
phunsucker@hgnlaw.com

**Peter C. Karegeannes**
Quarles & Brady LLP
peter.karegeannes@quarles.com

**Paul G. Kent**
Stafford Rosenbaum LLP
pkent@staffordlaw.com

**Gregory A. Krauss**
Gregory Krauss pllc
gkrauss@krausspllc.com

**Linda R. Larson**
Marten Law PLLC
llarson@martenlaw.com

**Vanessa A. Lavely**
Cravath Swaine & Moore LLP
vlavely@cravath.com

**Susan E. Lovern**
von Briesen & Roper SC
slovern@vonbriesen.com

**Anne E. Lynch**
Hunsucker Goodstein PC
alynch@hgnlaw.com

**Kevin J. Lyons**
Davis & Kuelthau SC
klyons@dkattorneys.com

**Karl S. Lytz**
Latham & Watkins LLP
karl.lytz@lw.com

**Meline G. MacCurdy**
Marten Law
mmaccurdy@martenlaw.com

**David G. Mandelbaum**
Greenberg Traurig LLP
mandelbaumd@gtlaw.com

**Bradley M. Marten**
Marten Law
bmarten@martenlaw.com

**Tara M. Mathison**
Davis & Kuelthau SC
tmathison@dkattorneys.com

i

| | | |
|---|---|---|
| **Allison E. McAdam**<br>Hunsucker Goodstein PC<br>amcadam@hgnlaw.com | **Nancy K. Peterson**<br>Quarles & Brady LLP<br>nancy.peterson@quarles.com | **Sarah A. Slack**<br>Foley & Lardner LLP<br>sslack@foley.com |
| **Darin P. McAtee**<br>Cravath Swaine & Moore LLP<br>dmcatee@cravath.com | **Thomas M. Phillips**<br>Reinhart Boerner Van Deuren SC<br>tphillip@reinhartlaw.com | **Margaret R. Sobota**<br>Sidley Austin LLP<br>msobota@sidley.com |
| **Stephen F. McKinney**<br>Haynsworth Sinkler Boyd PA<br>smckinney@hsblawfirm.com | **Ian A.J. Pitz**<br>Michael Best & Friedrich LLP<br>iapitz@michaelbest.com | **Arthur A. Vogel, Jr.**<br>Quarles & Brady LLP<br>arthur.vogel@quarles.com |
| **Heidi D. Melzer**<br>Melzer Law, LLC<br>hmelzer@melzerlaw.com | **David A. Rabbino**<br>Hunsucker Goodstein PC<br>drabbino@hgnlaw.com | **Anthony S. Wachewicz, III**<br>City of Green Bay<br>tonywa@ci.green-bay.wi.us |
| **Elizabeth K. Miles**<br>Davis & Kuelthau SC<br>emiles@dkattorneys.com | **Ronald R. Ragatz**<br>DeWitt Ross & Stevens SC<br>rrr@dewittross.com | **James P. Walsh**<br>Appleton City Attorney<br>jim.walsh@appleton.org |
| **William J. Mulligan**<br>Davis & Kuelthau SC<br>wmulligan@dkattorneys.com | **Kathleen L. Roach**<br>Sidley Austin LLP<br>kroach@sidley.com | **Ted A. Warpinski**<br>Friebert Finerty & St John SC<br>taw@ffsj.com |
| **Daniel C. Murray**<br>Johnson & Bell Ltd.<br>murrayd@jbltd.com | **Megan A. Senatori**<br>DeWitt Ross & Stevens SC<br>ms@dewittross.com | **Ted Waskowski**<br>Stafford Rosenbaum LLP<br>twaskowski@staffordlaw.com |
| **Omid H. Nasab**<br>Cravath Swaine & Moore LLP<br>onasab@cravath.com | **Adam B. Silverman**<br>Greenberg Traurig LLP<br>silvermana@gtlaw.com | **Evan B. Westerfield**<br>Sidley Austin LLP<br>evanwesterfield@sidley.com |
| **Kelly J. Noyes**<br>von Briesen & Roper SC<br>knoyes@vonbriesen.com | **M. Andrew Skierawski**<br>Friebert Finerty & St. John SC<br>mas@ffsj.com | **Richard C. Yde**<br>Stafford Rosenbaum LLP<br>ryde@staffordlaw.com |

Dated: October 18, 2012                                                             s/ *Randall M. Stone*