**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| NCR CORPORATION, APPLETON PAPERS INC., BROWN COUNTY, CITY OF APPLETON, CITY OF GREEN BAY, CBC COATING, INC., GEORGIA-PACIFIC CONSUMER PRODUCTS LP, KIMBERLY-CLARK CORPORATION, MENASHA CORP., NEENAH-MENASHA SEWERAGE COMMISSION, NEWPAGE WISCONSIN SYSTEMS, INC., P.H. GLATFELTER CO., U.S. PAPER MILLS CORP. and WTM I COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Civil Action No. 10-C-910

_____

**NCR CORPORATION'S RESPONSE TO CERTAIN DEFENDANTS'
MOTION *IN LIMINE* TO ESTABLISH THE ELEMENTS OF PLAINTIFF
UNITED STATES' *PRIMA FACIE* CASE ON ITS FIFTH CLAIM FOR RELIEF**
_____

NCR Corporation ("NCR") respectfully submits this Response to Certain Defendants' Motion *in Limine* to Establish the Elements of Plaintiff United States' *Prima Facie* Case on Its Fifth Claim for Relief (the "Motion").

**ARGUMENT**

NCR submits this Response for the limited purpose of addressing the Certain Defendants' arguments concerning the equities that should be considered by the Court in an enforcement action under §106 of CERCLA.[1] The Certain Defendants' Motion purports to be a straightforward request that the Court enter an order clarifying the elements that the Government must establish to prove its Fifth Claim for Relief.[2] But, in fact, the Motion is directed to the merits of the Certain Defendants' case, and includes a purported defense that the Certain Defendants have repeatedly advanced, in various forms, without success: that the Certain Defendants are "innocent" relative to NCR and thus cannot be compelled to perform or fund remediation under §106 (the "Relative Equities Defense"). For example, the Certain Defendants have asserted that "NCR should be first in line to implement the remedy; that much is already decided in *Whiting*". (Dkt. #443 at 15.) This argument was also a key theme of Glatfelter's motion to dismiss the Government's Fifth Claim for Relief for lack of subject matter jurisdiction. (Dkt. #272.) Finally, in the pending Motion, the Certain Defendants emphasize that "the equities and public interest as they apply to each of the Certain Defendants

---

[1] NCR does not address the Certain Defendants' arguments concerning the elements of the Government's Fifth Claim for Relief, except to the extent that those elements bear on the scope of equitable considerations in a §106 case. NCR also does not address its own defenses to the Government's Fifth Claim for Relief, including but not limited to its divisibility defense. NCR reserves its right to address these issues in its pre-trial and post-trial briefs.

[2] The Government's Fifth Claim for Relief seeks a mandatory injunction under §106 and "a judicial determination that each UAO Recipient is required to comply with all provisions of the UAO applicable to such UAO Recipient, other than the provisions of UAO Section XIX (Reimbursement of Response Costs)". (Dkt. #30 ¶ 132; Dkt. #294 at 8.)

1

are different from the equities and public interest as applied to NCR". (Dkt. #521 at 8.) For the reasons discussed below, the Court should deny the Certain Defendants' Motion to the extent it seeks to obtain advisory rulings in advance of trial relating to the Relative Equities Defense, or similar equitable considerations.

As a threshold matter, the Court has already rejected—implicitly and expressly—the Certain Defendants' attempts to introduce the Relative Equities Defense into the Government's Enforcement Action. In the December 2009 summary judgment ruling in *Whiting*, the Court cautioned that "this case is not about blame or the imposition of liability per se – the result does not, for example, mean that the Defendants are 'innocent' or not liable to the government, as liability under CERCLA is strict and all parties to this action are all potentially liable under that statute". (No. 08-cv-16, Dkt. #795 at 47.) Notably, each of the Certain Defendants contaminated the Lower Fox River Site. Finally, as discussed further below, the Court expressly rejected the Relative Equities Defense in denying Glatfelter's motion to dismiss the Government's Fifth Claim for Relief in this action. (Dkt. #371.)

The Relative Equities Defense has also been rejected by the Government—the party seeking the relief in this action. For example, in opposing Glatfelter's motion to dismiss, the Government argued the "the contribution claims that Glatfelter and the other Defendants may have do not affect the Plaintiffs' claims in this case, including [the Fifth Claim for Relief]". (Dkt. #294 at 8.) The Government has also stated that it "intends to continue to press its legal claims for UAO enforcement against . . . UAO recipients [other than NCR and API]". (Dkt. #273-2 at 2; Dkt. #294 at 10.) Given these repeated rejections of the Relative Equities Defense, the Certain Defendants should not be permitted to introduce it at trial, let alone obtain a purported "*in limine*" ruling in advance of trial.

2

Even if the Court had not already decided this issue (which it has), there are numerous reasons why NCR should not be "first in line" for the injunction being sought. Taken together, these reasons demonstrate that it would *undercut*, rather than promote equity, to continue to allow Certain Defendants' potential liability to the Government to be ignored.

*First*, allowing the Relative Equities Defense to be used in this case would punish NCR for its early cooperation with the Government (and expenditure of substantial cleanup costs), thereby creating perverse incentives for PRPs at other remediation sites. Prosecuting a permanent injunction against only the party that complies with a UAO (here, NCR) while rewarding recalcitrant parties (here, the Certain Defendants) would strongly discourage future PRPs from taking any initiative to advance cleanup efforts. The message would be clear: if you do not provide the EPA with a vehicle for accomplishing the work, then it may look to another PRP that provides a path of less resistance. Moreover, contrary to what the Certain Defendants suggest, having more PRPs available to assist with remediation efforts helps ensure that those efforts will continue uninterrupted in the event that one PRP is no longer required to perform the remediation or otherwise does not continue it. Public interest could thus be undermined if only NCR is enjoined following the December trial.[3]

*Second*, and relatedly, selective prosecution against only NCR—when there are six other PRPs named on the UAO[4]—would have adverse policy implications. Even setting aside the unfairness to NCR, this tactic would increase the risk that the cleanup would not be

---

[3] As noted above, this Response does not address NCR's defenses to the issuance of a permanent injunction. But NCR intends to show at trial that no injunction can issue because, among other reasons, NCR has already far exceeded its divisible share of work at the Site.

[4] The remaining UAO recipients are: NCR; Glatfelter; Menasha; U.S. Paper Mills Corp.; WTM I Company; and CBC Coating. (Dkt. #1-1.) GP (also a UAO recipient) could be required to perform the work in Lower OU4 pursuant to its Consent Decree with the Government. API (also a UAO recipient) is no longer liable to the Government under CERCLA as a result of the April 2012 Order.

3

completed in a timely way. By forcing the Government to put all of its eggs in one basket, the Government may be compelled to seek some form of expedited relief if, for whatever reason, the participation of additional parties becomes necessary to perform the work.

*Third*, the Certain Defendants' concerns about whether the remediation could be accomplished by multiple PRPs are entirely unfounded. (Dkt. #443 at 16; Dkt. #521 at 9.) The Certain Defendants have argued, without explanation, that an injunction cannot issue against all of the UAO recipients because it would "just generate confusion, conflict, and litigation that would impede the work". (Dkt. #443 at 16.) Thus, in the Certain Defendants' view, the PRPs purported inability to work cooperatively provides support for their Relative Equities Defense. (*Id*.) As an initial matter, the Certain Defendants do not explain why the six remaining UAO recipients (plus GP) could not work efficiently together in the Lower Fox River Remediation LLC (the "LLC"), which is the vehicle through which the work is currently being performed. NCR has emphasized that it "is willing to work with EPA to facilitate the involvement of others, which could be accomplished through the current LLC structure or other arrangements". (Dkt. #293-9 at 2.) Moreover, the LLC is by no means the Certain Defendants' only option for performing work in the event that an injunction issues. For example, as the Government has noted, "we know of nothing that would prevent Glatfelter from entering into contracts or arrangements to accelerate the cleanup work under the UAO, either on its own or with others". (Dkt. #294 at 11.) One thing is clear: the possibility that some disagreements may arise during a multi-PRP cleanup is not a defense to an injunction under § 106. (*See* Dkt. #294 at 9.)

*Fourth*, the Relative Equities Defense is predicated almost entirely on the Court's equitable rulings in *Whiting*. (Dkt. #443 at 15; Dkt. #521 at 8-9.) The Certain Defendants contend that it would be futile to enjoin them because "NCR bears all of the

4

liability for OU2-5". (Dkt. #272 at 2.) This argument is flawed for a number of reasons, as the Court itself has articulated. In denying Glatfelter's motion to dismiss the Government's Fifth Claim for Relief, the Court stated:

> "Glatfelter's motion is premised on the fact that NCR continues to be available to pay its share of the OU2-5 cleanup costs and Glatfelter's share has been deemed to be zero. . . . Although [Glatfelter] concedes that things could change—NCR could stop paying, or this Court could revisit its allocation decision (or be reversed on appeal)—for the time being a government victory on Claim 5 would have no effect. . . . This Court's decision on allocation is a non-final ruling in an open civil action, and is vigorously protested by NCR and API. ***It is difficult to conclude that such a ruling in a case between PRPs should have any impact on the government's own claim for compliance with the UAO***. . . . The government's claim against [Glatfelter] thus remains live."

(Dkt. #371 at 2 (emphasis added).) Moreover, as noted above, the equitable standard in a contribution case does not readily translate to an enforcement action. (*See* No. 08-cv-16, Dkt. #795 (December 2009 Order).)

The importance of distinguishing between equitable rulings in a contribution context and an equitable injunction in an enforcement context is best illustrated by a CERCLA case that transpires in the typical order—first an enforcement action, followed by a contribution action. *See Kalamazoo River Study Grp. v. Menasha Corp.*, 228 F.3d 648, 657 (6th Cir. 2000) ("CERCLA's [statutory] scheme . . . serves to encourage parties to clean up the site quickly and then litigate later to sort out the specifics of who should pay."). If *Whiting* had not yet taken place, the use of the Relative Equities Defense by the Certain Defendants in the Enforcement Action would be particularly impractical. For example, based on their rationale for why this defense applies, the Certain Defendants might insist on bringing all of the evidence that was presented during the first phase of *Whiting* (which would not yet have happened).

5

The Government's Enforcement Action would be delayed by months, if not years. That delay would undermine CERCLA's goal of an expedient cleanup.

*Fifth*, the Relative Equities Defense, if permitted, could render pre-trial and trial proceedings in this matter (or future matters) far more expensive for the parties and more burdensome and inefficient for the Court. In addition to the type of evidence typically presented in a contribution case, the parties likely would also want to submit expert testimony and other evidence regarding each party's ability to pay—among other evidence needed to show why one party should be required to perform the work alone. This is precisely what is happening in this phase. For example, the Certain Defendants served a 48-page, single-spaced expert report on the topic of NCR's ability to pay future anticipated remediation costs at the Lower Fox River Site.[5] If similar reports were prepared for every party (many of whom are not public companies), it would require extensive discovery and trial time addressing an issue that has nothing to do with liability to the Government under CERCLA.

*Sixth*, Certain Defendants' preferred equitable approach, if applied in this case (or a future case with other PRPs), would substantially decrease settlement prospects. If only one party is compelled to comply with a UAO, then the other parties will have little incentive to settle with the Government because it would be more prudent for them to raise a Relative Equities Defense. This would undermine CERCLA's goal of encouraging settlements. *See Rumpke of Ind., Inc. v. Cummins Engine Co.*, 107 F.3d 1235, 1236 (7th Cir. 1997).

---

[5] NCR reserves the right to challenge the Certain Defendants' presentation of this expert, Gary Kleinrichert, either at or before trial.

## CONCLUSION

For the foregoing reasons, NCR respectfully requests that the Court deny Certain Defendants' Motion to the extent that it seeks to advance the Relative Equities Defense.

Dated: October 18, 2012                                      Respectfully submitted,


                                                             /s/ Darin P. McAtee

                                                             CRAVATH, SWAINE & MOORE LLP
                                                             Evan R. Chesler
                                                             Darin P. McAtee
                                                             Yonatan Even
                                                             Worldwide Plaza, 825 Eighth Avenue
                                                             New York, New York 10019
                                                             Phone: (212) 474-1000
                                                             Fax: (212) 474-3700
                                                             dmcatee@cravath.com

                                                             SIDLEY AUSTIN LLP
                                                             Evan B. Westerfield
                                                             One South Dearborn Street
                                                             Chicago, Illinois 60603
                                                             Phone: (312) 853-7000
                                                             Fax: (312) 853-7036

                                                             MARTEN LAW PLLC
                                                             Linda R. Larson
                                                             Bradley M. Marten
                                                             1191 Second Avenue
                                                             Suite 2200
                                                             Seattle, Washington 98101
                                                             Phone: (206) 292-2600
                                                             Fax: (206) 292-2601

                                                             *Attorneys for NCR Corporation*