IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA AND THE STATE OF WISCONSIN | : : : : |
| Plaintiffs, | : : |
| v. | No. 10-CV-00910-WCG : : |
| NCR CORPORATION, *et al.*, | : : |
| Defendants. | : : |

REPLY MEMORANDUM OF CERTAIN DEFENDANTS[1] IN SUPPORT
OF THEIR MOTION *IN LIMINE* TO ESTABLISH THE ELEMENTS OF
PLAINTIFF UNITED STATES' *PRIMA FACIE* CASE
ON ITS FIFTH CLAIM FOR RELIEF

---

[1] This Memorandum Of Certain Defendants In Support Of Their Motion *In Limine* To Establish The Elements Of Plaintiff United States' *Prima Facie* Case On Its Fifth Claim For Relief is filed on behalf of CBC Coating, Inc., Menasha Corporation, Neenah Menasha Sewerage Commission, P.H. Glatfelter Co., and WTM I Company.

CERCLA section 106(a)[2] does not make this Court a rubber stamp for a unilateral administrative order ("UAO") issued by the Environmental Protection Agency ("EPA"). Instead, section 106(a) makes clear that *only* this Court has the power to grant relief "as the public interest and the equities of the case may require."  42 U.S.C. § 9606(a).  The government's position is that if the EPA issues a UAO that was not arbitrary and capricious when issued, then even years later the United States may obtain an injunction to require compliance with that UAO, on record review alone.  That is not what section 106(a) says.

Congress gave the enforcement power to *the Court* under section 106(a), not EPA.  The government wants to skip a step and to take away the Court's power to determine liability under the statute.  Skipping that step would not be consistent with the statute or be constitutional. *General Electric Co. v. Jackson*, 610 F.3d 110 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 2959 (2011) (section 106 is constitutional only because of opportunities to litigate certain issues before imposition of sanctions); *Kelley v. Envt'l Protection Agency*, 15 F.3d 1100 (D.C. Cir. 1994), *cert. denied*, 513 U.S. 1110 (1995) (Lender Liability Rule invalid); *Reardon v. United States*, 947 F.2d 1509 (1st Cir. 1991) (imposition of windfall lien without hearing is unconstitutional).

1. **Section 106(a) remains part of the statute.**

The United States complains that Certain Defendants rely only on the language of the first sentence of section 106(a), which the United States characterizes as an "old" part of CERCLA.  Whether it is "old" or "new," section 106(a) is the portion of CERCLA upon which the United States is proceeding.  Section 106(a) says (to repeat our principal memorandum):

---

[2] CERCLA is the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601-75. All references to "section" are to sections of CERCLA.  Section 106(a) is 42 U.S.C. § 9606(a).

> [W]hen the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States *to secure such relief as may be necessary to abate such danger or threat*, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant *such relief as the public interest and the equities of the case may require*.

42 U.S.C. § 9606(a) (emphasis added).

The italicized phrases in the foregoing quotation are in the present tense. Thus, the plain language of the statute requires a present determination, not a deferral to EPA's UAO. Necessity, public interest, and equities are determined at the time of trial, by the *Court*, based on the proof at trial. No language in section 106(a) authorizes, much less requires, a deferral to a UAO issued by EPA.

### 2. Section 121(a) is not to the contrary.

The United States relies on section 121(a) of CERCLA, 42 U.S.C. § 9621(a), added by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (1986). Section 121(a) provides in pertinent part:

> The *President* shall select appropriate remedial actions determined to be necessary to be carried out under section [104] or secured under section [106] which are in accordance with this section and, to the extent practicable, the national contingency plan, and which provide for cost-effective response.

The United States points out that section 121(a) of CERCLA says that remedial actions "secured" under section 106 should be in accordance with section 121 and the regulations, and be cost-effective. The obligations of section 121(a) are imposed on "the President" – that is,

EPA. Nothing in section 121(a) has anything to do with whether a *court* must find that a particular order is necessary to abate the endangerment or required by the public interest or the equities of the case. Section 121(a) does not amend section 106(a). The United States must comply with section 121(a), and the Court's decision is guided by section 106(a).

### 3. Count V must have a textual basis in the statute.

The United States expresses frustration that Certain Defendants seek a more complicated proceeding than the trial the United States had in mind. The United States can only pursue a claim authorized by CERCLA.

The United States at times complains that it must have the ability to obtain an injunction without *de novo* proof of the elements of the first sentence of section 106(a) – that is, necessity, public interest, and equities of the case – because any other outcome would impair enforcement efforts under CERCLA. However, the United States does not base its Count V on section 106(b) of CERCLA, 42 U.S.C. § 9606(b). Section 106(b) authorizes a claim to "enforce" a UAO through an action seeking penalties for non-compliance. Moreover, enforcement under section 106(b) is only appropriate when the defendant "without sufficient cause, willfully violates, or fails or refuses to comply with" the UAO. There is no present violation of the 2007 UAO, and therefore no claim under section 106(b) is appropriate now.

Accordingly, the United States has to base its claim on section 106(a). The elements of that claim are set forth in the statute. And, indeed, the paucity of reported cases involving section 106(a) claims over the past three decades suggests that section 106(a) claims are difficult and therefore disfavored by the government.

**4. The government improperly asks this Court to act as a rubber stamp.**

The United States insists that this Court cannot inquire into whether the remaining remedy in OU4 is necessary, what the public interest requires, or what the equities of the case require because the United States has already issued the UAO. The United States insists that the Court may *only* inquire into whether the UAO was issued arbitrarily, capriciously, or otherwise not in accordance with law.

The UAO was issued in November 2007. The United States asks the Court to issue an injunction in December 2012 or in the early months of 2013. Even if EPA's UAO were based on proper findings in 2007, without additional evidence, the Court cannot possibly know whether the UAO remains necessary five years later.

The United States does not limit its position to those findings in the UAO and those determinations in the remedy selection that were ***correct*** in 2007. Even if the Court were to find that decisions made by the United States in 2007 were incorrect, the United States believes that this Court must issue an injunction, despite those incorrect decisions, if those decisions were not arbitrary and capricious. That means that even if it were true that the UAO is ***not*** necessary to abate the endangerment, the United States believes that this Court must exercise its equitable powers to turn that UAO into an injunction, so long as the UAO was not arbitrary in 2007. The United States insists that the Court adopt wrong, but not wrong enough to be arbitrary, decisions by EPA as to what should be ordered.

- 4 -

The United States also seeks to constrain the Court's consideration of what the public interest and the equities of the case require. The government insists that EPA's determination that the UAO in the form it was issued in 2007 was proper determines for the Court what is in the public interest or what the equities of the case require. But that ignores all that has happened since November 2007.

Notably, the Court's decisions in *Whiting* were made after EPA issued the November 2007 UAO. The Court has made rulings concerning the public interest and the equities of this case that EPA could not have had before it in November 2007. The United States must offer evidence to show that notwithstanding the Court's rulings in *Whiting*, an injunction in the form the government requests would be appropriate here.

For example, this Court previously concluded in *Whiting* that denying contribution to NCR was the surest way to protect the public from parties that deliberately accept a large amount of risk to the environment and public health, as NCR did. "If manufacturers of a toxin are allowed to recover from innocent processors of that toxin, their own risky behavior is at least partially insulated from financial consequences. Such a result would encourage the taking and assumption of undue risks in an area where society would prefer extreme caution." Whiting Dkt. No. 795 at 37-38. To be sure, the liability questions in this case are not entirely the same as those in *Whiting*. Nevertheless, section 106(a) requires the Court to consider the public policy ramifications of an injunction issued to defendants who do not share the same relative culpability. The message of caution sent to the manufacturing world by the December 2009 *Whiting* decision would be seriously diluted if the "innocent processors" of the PCBs – the

- 5 -

Certain Defendants – were ordered to perform the very UAO work that this Court has already decided NCR should do, and has the financial capacity to do, alone.[3] Section 106(a) requires the United States to prove that the public interest *requires* such an injunction before the Court can grant that relief.

Considering further the equities as between the parties, the UAO was issued to particular respondents. Even if EPA determined that it was equitable to issue the UAO to each of those respondents in 2007, the Court has since decided in *Whiting* that as between NCR and each of the Certain Defendants NCR ought to bear 100 percent of the liability because of NCR's culpability, a factor that EPA did not consider. Based on evidence that only fully came to light in the *Whiting* case (and after 2007), this Court concluded: "it is [NCR's] own production of the CCP that is the *sine qua non* not just of the environmental damage, but of the entire cleanup effort and its attendant costs[,]" Whiting Dkt. No. 795 at 46, and "the equities here are driven by the fact that [NCR] created, mobilized and profited from the PCBs at issue in this case." Whiting Dkt. No. 1080 at 18-19. The Court may not issue an injunction unless that injunction is what "the equities of the case may require." 42 U.S.C. § 9606(a). Given this Court's rulings in *Whiting* about some of those equities, rulings made after the November 2007 UAO based on facts that EPA did not have, the United States must prove that the injunction it seeks nevertheless is what those equities require.

Instead of proceeding now against NCR alone, as at the preliminary injunction stage, the United States ignores the equitable rulings in *Whiting* and contends that the equities do not

---

[3] As will be shown at trial, NCR is financially able to perform the remaining response work specified in the UAO by itself, without even considering its indemnitors' obligations to contribute to the cleanup costs.

- 6 -

matter under section 106. There is no precedent for this position.[4] The plain language of the statute does not support the United States' effort to dictate the form of relief to the Court. Under section 106(a), this Court is to consider the public interest and the equities, both of which weigh against issuance of a mandatory injunction against Certain Defendants when the United States can obtain the relief it seeks from NCR, the culpable party.

Likewise, similar efforts by EPA to dictate liability determinations to courts have been rejected. In *General Electric Co. v. Jackson*, the court of appeals rejected General Electric's facial challenge to EPA's UAO authority specifically because "EPA's liability determination warrants no judicial deference," and ultimately held that section 106 is constitutional solely because of opportunities to litigate prior to imposition of sanctions. 610 F.3d at 118; s*ee also Kelley v. Envt'l Protection Agency*, 15 F.3d 1100, 1107 (D.C. Cir. 1994), *cert. denied*, 513 U.S. 1110 (1995) (holding that, although EPA had authority to interpret certain language in CERCLA, "*liability issues are to be decided by the court* . . . it cannot be argued that Congress intended EPA, to have authority to, by regulation, define liability for a class of potential defendants") (*emphasis added*); *Reardon v. United States*, 947 F.2d 1509, 1520 (1st Cir. 1991) (holding that

---

[4] The United States asserts that *United States v. Occidental Chem. Corp.*, 200 F.3d 143 (3d Cir. 1999), rejects Certain Defendants' argument that they should not be compelled to comply when NCR can satisfy the UAO requirements on its own. Dkt. No. 562 at 6, n.8. *Occidental Chemical* is completely inapposite to this case. *Occidental Chemical* involved two equally liable parties, one of which settled with EPA and one of which did not and was later issued a UAO to perform the cleanup with the settling party. The party that did not settle asserted that the United States was precluded from issuing the UAO because the order was not "necessary" under section 106(a) due to the fact that the other party had settled and agreed to perform the cleanup. The Third Circuit disagreed, but in so ruling did not consider the relative culpability of the two parties, the public interest or the equities. None of these issues were even raised in the case. Further, Certain Defendants do not contend that NCR's performance of the cleanup precludes issuance of an injunction against others as a matter of law; our argument is that the public interest and equities support a mandatory injunction against NCR alone as a matter of *fact* in this case because of NCR's relative culpability, because NCR is financially capable of performing the remaining cleanup work, among other reasons. The United States must prove the contrary to the Court's satisfaction before the Court may issue an injunction to any of the Certain Defendants under section 106(a).

- 7 -

PHI 316,985,057v7
Case 1:10-cv-00910-WCG    Filed 11/05/12    Page 8 of 12    Document 577

EPA's determination of liability and attachment of defendants' property without prior hearing under CERCLA's lien provisions violated Constitutional Due Process).  Similarly, this Court has to make the section 106(a) findings *de novo*; this Court must decide based upon the evidence at trial whether the injunction that the United States seeks is necessary and what the public interest and the equities of the case require.  EPA's November 2007 findings do not determine the issues.

**5.  Plaintiffs must also prove Defendants are liable parties under section 107(a).**

The Plaintiffs must also establish liability under CERCLA section 107(a), 42 U.S.C. § 9607(a).  *United States v. A & F Materials Co.*, 578 F. Supp. 1249, 1257 (S.D. Ill. 1984); *United States v. Outboard Marine Corp.*, 556 F. Supp. 54, 57 (N.D. Ill. 1982); EPA, OSWER Dir. No. 9835.7, Guidance on CERCLA Section 106 Judicial Actions (1989) at 4 ("In a judicial action brought under Section 106, EPA must also be able to prove that, because of a release or threat of a release of a hazardous substance from a facility, an imminent and substantial endangerment may exist at that facility."); *see also Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994).  Plaintiffs have acknowledged as much in their Motion for Partial Summary Judgment That Defendants Are Liable Parties Under CERCLA Section 107(a).  Dkt. No. 549.  These arguments are more fully briefed in Plaintiffs Memorandum in Support of its Motion, Dkt. No. 551, and the Defendants' responses thereto.

For the reasons set forth above and in Certain Defendant's Motion *In Limine* To Establish the Elements of Plaintiff United States' Prima Facie Case On Its Fifth Claim For Relief, Dkt. Nos. 520-21, the Court should grant the motion.

*PHI 316,985,057v7*

Dated:  November 5, 2012                              Respectfully submitted,

/s/ Nancy K. Peterson                                 /s/ David G. Mandelbaum
Nancy K. Peterson (Wis. Bar No. 1000197)              David G. Mandelbaum
Peter C. Karegeannes (Wis. Bar No. 1015025)           Francis A. Citera
William H. Harbeck (Wis. Bar No. 1007004)             Marc E. Davies
Quarles & Brady LLP                                   Caleb J. Holmes
411 E. Wisconsin Avenue                               Adam B. Silverman
Milwaukee, WI 53202                                   GREENBERG TRAURIG, LLP
Telephone: 414-277-5000                               Two Commerce Square, Suite 2700
nancy.peterson@quarles.com                            2001 Market Street
                                                      Philadelphia, PA  19103
**Attorneys for Defendant WTM I Company**             215.988.7800
                                                      mandelbaumd@gtlaw.com

                                                      **Attorneys for Defendant P.H. Glatfelter Company**

/s/ Susan E. Lovern                                   /s/ Philip C. Hunsucker
Susan E. Lovern (#1025632)                            Philip C. Hunsucker
Michael P. Carlton (#1016037)                         David A. Rabbino
Thomas Armstrong (#1016529)                           Hunsucker Goodstein PC
Kelly J. Noyes (#1064809)                             3717 Mt. Diablo Blvd., Suite 200
von Briesen & Roper, s.c.                             Lafayette, CA 94549
411 East Wisconsin Avenue, Suite 700                  Telephone:  925-284-0840
Milwaukee, WI 53202                                   Email:  phunsucker@hgnlaw.com
Telephone: (414) 276-1122
Fax: (414) 276-6281                                   **Attorneys for Defendant Menasha Corporation**
slovern@vonbriesen.com
mcarlton@vonbriesen.com
tarmstro@vonbriesen.com
knoyes@vonbriesen.com

**Attorneys for Defendant CBC Coating, Inc.**

- 9 -

/s/ William J. Mulligan
William J. Mulligan
Kevin J. Lyons
Elizabeth K. Miles
Davis & Kuelthau, s.c.
111 E. Kilbourn Avenue, Suite 1400
Milwaukee, WI 53202
Telephone: (414) 276-0200
Facsimile: (414) 276-9369
Email: wmulligan@dkattorneys.com
klyons@dkattorneys.com
emiles@dkattorneys.com

**Attorneys for Defendant Neenah Menasha Sewerage Commission**

- 10 -

## CERTIFICATE OF SERVICE

I hereby certify that, on this 5th day of November 2012, a true and correct copy of the foregoing was filed electronically via the Electronic Court Filing system and is available for viewing and downloading.

/s/ David G. Mandelbaum
David G. Mandelbaum
Greenberg Traurig LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 988-7800
Facsimile: (215) 988-7801
mandelbaumd@gtlaw.com
