IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN, | Case Action No. 1:10-CV-00910 |
| Plaintiffs, | Hon. William C. Griesbach |
| v. | |
| NCR CORPORATION, et al., | |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF CERTAIN DEFENDANTS'[1] MOTION TO RECONSIDER THE ORDER DENYING MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO SUPPLEMENT THE ADMINISTRATIVE RECORD IN CONNECTION WITH THE REMEDY SELECTED FOR OUs 2-5**

---

[1] "Certain Defendants" include CBC Coating, Inc., Menasha Corporation and P.H. Glatfelter Company.

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................. 1 | |
| II. | THE COURT SHOULD EXERCISE ITS DISCRETION AND RECONSIDER THE ORDER TO ALLOW *LIMITED* TESTIMONY TO EXPLAIN COMPLEX AND TECHNICAL MATERIAL REGARDING CALIBRATION OF THE MODEL ................................................................................................................. 7 | |
| | A. The Order Improperly Incorporated Extra-Record Evidence to Conclude the Model Was Calibrated ....................................................................... 7 | |
| | B. Plaintiffs' Opposition Demonstrates the Complexity of the Dispute Regarding Whether the Model Was Calibrated ........................................ 7 | |
| | C. Certain Defendants' Proposed *Limited* Record Supplementation Would Not Delay the Trial Date .......................................................................... 8 | |
| III. | RECENTLY DISCOVERED EVIDENCE *IGNORED* BY PLAINTIFFS IS CONCLUSIVE, OR AT A MINIMUM CREATES AN ISSUE OF FACT, THAT THE MODEL WAS NOT CALIBRATED ........................................................ 9 | |
| | A. Plaintiffs' Arguments about the Standards Set in Tech Memo 1 are Misleading and Wrong............................................................................. 9 | |
| | B. Deposition Evidence about the Calibration of the Model That Did Not Exist at the Time of the Motion for Summary Judgment Demonstrates the Model Was Not Calibrated ..................................................................... 10 | |
| | C. Certain Defendants Reasonably Had Not Reviewed the Documentary Evidence Submitted In Support of the Motion Before Filing the Reply on Record Supplementation ......................................................................... 11 | |
| | D. At a Minimum, There is An Issue of Fact to Be Resolved and Certain Defendants Should be Allowed to Offer Limited Evidence Regarding the Model Calibration ................................................................................... 13 | |
| IV. | CONCLUSION................................................................................................... 13 | |

**I.  INTRODUCTION**

The Court now has nearly a dozen briefs before it on issues concerning the propriety of the remedy selected for this Site.  In all of their briefs, Plaintiffs take a very flexible position about record review.  When it suits them, they insist that the Court may not consider anything other than documents specifically included in the Administrative Record and the argument of counsel.  However, when that restriction is inconvenient for them, Plaintiffs insist that the Court may consider declarations prepared by witnesses in this case or documents not included in the Administrative Record.

Plaintiffs attempt to prejudice the Court's fair consideration of this Motion by wrongly claiming the Motion is an attempt to derail the trial set to begin on December 3, 2012.  Dkt. 579 at 2.  Certain Defendants will be prepared to begin trial on December 3 – period, end of story.  Whether the trial can be completed by December 21, 2012 is a different question driven by the yet-to-be-determined scope and length of the trial.  Plaintiffs alone have listed fifteen live witnesses -- including three experts unrelated to modeling for their affirmative case and nine potential rebuttal witnesses, several more of whom are experts[2] -- and over fifty witnesses whose deposition testimony they intend to offer.  Declaration of Allison E. McAdam ("McAdam

---

[2] Despite Plaintiffs' complaints about the addition of modeling experts, Plaintiffs have designated their own rebuttal expert, Hector Bravo,  to testify in the upcoming trial:

> ***[O]n the sufficiency of the calibration and validation of the wLFRM*** for the limited purpose of comparatively demonstrating that the calibration and validation of the ATS model is inadequate.  Thus Dr. Bravo's testimony will be offered for the limited purpose of discrediting the ATS report and the model it presents, and not for the purpose of supplementing the Administrative Record in aid of the court's decision on the remedy selected for the site.

McAdam Decl. ¶ 4 (emphasis added).

Decl.") ¶ 2. Further, among all the parties, twenty-five expert witnesses have been designated. McAdam Decl. ¶ 7.

In an attempt to dissuade the Court from allowing testimony based on the Reports, Plaintiffs also claim that should the Motion be granted, it would dramatically expand the scope of trial. Dkt. 570 at 2. As Certain Defendants indicated in the Motion, they ask only that the Expert Reports of Robert L. Annear, Jr., Ph.D. and Ken Susilo (the "Reports") be considered on the *limited* question of the Model calibration.[3] McAdam Decl. ¶ 3. The Reports and Dr. Annear's and Mr. Susilo's testimony are being offered *only* to the extent their opinions cover the calibration of the Model. Their inclusion would not significantly alter or expand the scope of trial.

This is a case about work that costs an astronomical amount of money. It poses an existential threat to some of the defendants. There are very real questions about whether spending all that money – or at least the part of it devoted to removing enormous volumes of sediment from the bed of the river – will do any good at all. The Model is the tool the Agencies used to answer the question whether spending all that money and threatening the existence of the defendants would be a good thing. The decision as to whether that tool – the Model – was good enough for the purpose was delegated to a single employee of the Wisconsin Department of Natural Resources ("WDNR"), Mark Velleux. Dr. Velleux faced all sorts of pressures that caused him to declare the Model "calibrated" even though it failed to achieve the quantitative standards that he, himself, had insisted upon. The United States Environmental Protection

---

[3] That the Reports were submitted in their entirety is a factor of the compressed pre-trial schedule. Certain Defendants simply ran out of time to narrow the opinions down to cover only Model calibration issues.

Agency ("EPA") treated that Model as a "black box" and depended entirely on WDNR and Dr. Velleux for that tool.

With all this at stake, the Court should not deprive itself of expert opinion on whether the Model was calibrated in a real sense, or just "calibrated" by WDNR's *ipse dixit*. This Court is not a rubber stamp. Understanding whether an agency really did its job, rather than just said it did its job, is exactly what this Court ought to do in a record review case. The Court cannot perform that function without expert help. It would be unreasonable to expect a person trained in law to be able to read the modeling documents without guidance. If the United States were confident in its position, it would not be so vehement about excluding Certain Defendants' experts' opinions, while offering Dr. Zhang's declaration at the same time.

Plaintiffs have offered more than seventeen (17) pages of lawyer argument of what the evidence relied on by Certain Defendants to support the Motion really means in order to correct Defendants' "incomplete account." *See* Dkt. 570 at 5-22. All the lawyer argument in Plaintiffs' Opposition establishes is that, based on the documents contained in the Administrative Record and those recently produced by the United States, there is at least a genuine issue of material fact whether the Model was, in fact, calibrated. Furthermore, Plaintiffs' Opposition demonstrates precisely ***why*** expert testimony and extra-Record evidence is necessary to understand whether the Model was calibrated. This is precisely the type of "complex or technical material" which should justify supplementation of the Administrative Record. Plaintiffs continue to rely on the extra-Record evidence in Dr. Zhang's declaration, but seek to exclude the Certain Defendants' experts and other extra-Record evidence that contradicts Dr. Zhang. That evidence includes the testimony of Dr. Zhang herself and of Dr. Velleux – each of whom admitted in deposition that the Model did not meet all the quantitative standards for calibration set out in Tech Memo 1.

3

Such a dichotomy is neither fair nor consistent with the record review limitation Plaintiffs seek to enforce.

Tellingly, Plaintiffs do not cite *any* of the deposition testimony of Dr. Velleux, the person who developed the Model and determined it was calibrated, to support their own interpretation. That is because, as discussed in detail in the Motion, Dr. Velleux's testimony establishes that Certain Defendants' interpretation is the correct one. His testimony confirmed that the Model was *not* calibrated to the standards he set, which were adopted in Tech Memo 1:

- The quantitative measures of model performance in Tech Memo 1 were to apply to all models, including the wLFRM Model (Dkt. 529 at 13);
- The quantitative measures for Model performance stated mean predicted concentrations for TSS and PCBs should be within plus or minus 30 percent for water and sediment (Dkt. 529 at 14);
- Dr. Velleux was the person charged with deciding whether the Model was calibrated ("that was left to me to decide if the model was good enough for use and to certify it") (Dkt. 529 at 31); and,
- The sediment metrics did not meet the plus or minus 30 percent for sediment ("But not 30.") (Dkt. 529 at 32).

Dr. Velleux's deposition testimony is not subject to the interpretation Plaintiffs suggest, so they just ignore it. Instead, Plaintiffs rely only on their own interpretation of the documentary evidence submitted by Certain Defendants in support of the Motion, Tech Memo 1, the Model Documentation Report, and the extra-Record declaration of Dr. Zhang – the person whose declaration the Court relied on to the find the Model was calibrated – as support for their interpretation of the documents submitted by Certain Defendants.

4

Plaintiffs claim the Court must deny the Motion because *some* of the recently produced evidence Certain Defendants rely on was available at the time they filed their reply brief on the Motion for Summary Judgment. Dkt. 570 at 2-3. However, Dr. Zhang's and Dr. Velleux's depositions certainly were not available when the reply was filed. Similarly, the more than 100,000 documents produced by the United States several weeks earlier reasonably had not been reviewed. Even *if* they could have reviewed the voluminous information in time for the reply, Defendants could not properly have submitted volumes of *new* evidence *on reply*. Moreover, as discussed in detail in the Motion, it was not until Certain Defendants had the benefit of the corresponding deposition testimony from the persons involved in the actual correspondence at issue that the full picture of the inadequacy of the calibration of the Model became clear.

Plaintiffs also claim that the fact the proffered Reports do not rely on any of the newly produced evidence is support that the new evidence is not meaningful to the understanding of the calibration of the Model. Dkt. 570 at 3. Plaintiffs entirely ignore Dr. Annear's Supplemental Declaration filed in support of the Motion, which offers actual scientific opinion on the newly produced evidence. *See* Dkt. 530. In fact, Certain Defendants purposely prepared the Reports without reference to extra-Record documents because the Court already ordered there would be no extra-Record evidence. Dkt. 498. Certain Defendants rely on the extra-Record evidence now *only* to show they should be allowed to present the Reports because there is a genuine issue of material fact.

In an attempt to dissuade the Court from allowing testimony based on the Reports, Plaintiffs also claim that should the Motion be granted, it would dramatically expand the scope of trial. Dkt. 570 at 2. As Certain Defendants indicated in the Motion, they ask only that the

5

Reports be considered on the *limited* question of the Model calibration.[4] The Reports and Dr. Annear's and Mr. Susilo's testimony are being offered *only* to the extent their opinions cover the calibration of the Model. Their inclusion would not significantly alter or expand the scope of trial.

Plaintiffs' complaints about the evidence being offered by Certain Defendants and the rapidly approaching trial date highlight the degree to which Plaintiffs miscalculated how involved this Phase would be. In April 2012, the United States represented it would need only four days to try its case-in-chief. McAdam Decl. ¶ 8. Six months and twenty-five experts later, Plaintiffs have now told Certain Defendants they need more than seven days, and proposed Certain Defendants each would get less than a day to put on its defense. McAdam Decl. ¶ 9.

There are real problems with how the United States and the State of Wisconsin selected the remedy. Certain Defendants respectfully request that the Court reconsider its August 30, 2012 Order and permit them to present evidence that the Model was not calibrated. Regardless of the Court's decision on the Motion, it is clear that the United States is not entitled to summary judgment as to the propriety of the remedy (*See* Dkt. 509 & Dkt. 555) because there are significant issues of fact about the Model's calibration.

---

[4] That the Reports were submitted in their entirety is a factor of the compressed pre-trial schedule. Certain Defendants simply ran out of time to narrow the opinions down to cover only Model calibration issues.

6

## II. THE COURT SHOULD EXERCISE ITS DISCRETION AND RECONSIDER THE ORDER TO ALLOW *LIMITED* TESTIMONY TO EXPLAIN COMPLEX AND TECHNICAL MATERIAL REGARDING CALIBRATION OF THE MODEL

### A. The Order Improperly Incorporated Extra-Record Evidence to Conclude the Model Was Calibrated

Plaintiffs acknowledge the Court may grant a motion to reconsider where there is a manifest error of law. Dkt. 550 at 2, citing *Burney v. Thorn Americas, Inc.*, 970 F. Supp. 668, 671 (E.D. Wis. 1997). Plaintiffs also acknowledge the Court's August 30, 2012 Order indicates the Court found the Model was calibrated. *See* Dkt. 570 at 5 ("this Court correctly noted that 'the models were . . . calibrated based on known data . . .'"). Statements in the Court's August 31, 2012 Order about Model calibration were adopted from Dr. Zhang's declaration submitted by Plaintiffs in support of the summary judgment briefing. *See* Dkt. 498 at 3. As Dr. Zhang's declaration is not part of the Administrative Record, it should not have been relied on by the Court to determine the Model was calibrated.[5] Certain Defendants request the Court's statements be reconsidered or that Certain Defendants' proffered expert testimony be weighed in the dispute over the Model calibration.

### B. Plaintiffs' Opposition Demonstrates the Complexity of the Dispute Regarding Whether the Model Was Calibrated

Courts are justified to go beyond the Administrative Record to ascertain "whether the agency considered all relevant factors or fully explicated its course of conduct or grounds of decision." *United States v. Akzo Coating*, 949 F.2d 1409, 1426 (9th Cir. 1991), citing *Lile v. University of Iowa Hosp. & Clinics*, 886 F.2d 157 (8th Cir. 1989). Supplementation is specifically authorized where it is necessary to explain technical terms or complex subject

---

[5] Moreover, as discussed in detail in Certain Defendants' Cross-Motion for Summary Judgment as to the Propriety of the Remedy, there is evidence in the Administrative Record that the Model was ***not*** calibrated. Dkt. 555 at 20.

matter. *Miami Nation of Indians of Indiana v. Babbitt*, 55 F. Supp. 2d 921, 924 (N.D. Ind. 1999). Based on Plaintiffs' 17-page discussion about the meaning of Tech Memo 1 and whether the Model was calibrated, which is based only on USDOJ's *own* interpretation of the documents submitted by Certain Defendants in support of the Motion and excludes any analysis of Dr. Velleux's or Dr. Zhang's deposition testimony, the Court should exercise its own discretion to reconsider the Order finding the Model was calibrated or clarify the Order does not preclude Certain Defendants from submitting evidence that the Model was not calibrated. *See Acme Printing Ink Co. v. Menard, Inc.*, 891 F. Supp. 1289, 1294 (E.D. Wis. 1995) (the decision "to reconsider an interlocutory order is within the sound discretion of the district court").

**C.     Certain Defendants' Proposed *Limited* Record Supplementation Would Not Delay the Trial Date**

Plaintiffs' complaints that allowing Certain Defendants to proffer expert testimony as to the Model calibration would "significantly" impact trial are overstated. *See* Dkt. 570 at 1-2. This is especially true when one considers Plaintiffs plan to have Hector Bravo testify about the validation and calibration of the Model, even if they win this Motion. *See* McAdam Decl. ¶ 4. Plaintiffs misconstrue the relief Certain Defendants seek. As Certain Defendants made clear at the very beginning of the Motion, they are offering ***only*** those sections of the Reports which pertain to Model calibration. Dr. Annear's deposition has already been completed and the scope included his Model calibration opinions. McAdam Decl. ¶ 10. Mr. Susilo's deposition is scheduled for November 14, 2012 and will include his calibration opinions. McAdam Decl. ¶ 11. Further, the United States designated two experts to rebut the calibration testimony by Dr. Annear and Mr. Susilo. McAdam Decl. ¶¶ 4 & 6. One expert, Dr. Zhang, already has been deposed. The other expert, Dr. Bravo, already is a witness on NCR's model and is scheduled for deposition on November 15, 2012, including on the topic of the validation and calibration of the

Model. McAdam Decl. ¶¶ 12 & 13. Dr. Annear already is a witness expected to testify at trial on NCR's model, so Mr. Susilo and Dr. Zhang would be the only additions to the trial witness list. McAdam Decl. ¶ 14. Twenty-five expert witnesses have already been designated; the addition of two expert witnesses will not "significantly" impact the trial.

### III. RECENTLY DISCOVERED EVIDENCE *IGNORED* BY PLAINTIFFS IS CONCLUSIVE, OR AT A MINIMUM CREATES AN ISSUE OF FACT, THAT THE MODEL WAS NOT CALIBRATED

#### A. Plaintiffs' Arguments about the Standards Set in Tech Memo 1 are Misleading and Wrong

Plaintiffs argue, "What it Means to 'Calibrate' a Model," based only on attorney argument. *See* Dkt. 570 at 6. Without any legal or factual citation, Plaintiffs provide their explanation of the model calibration "process," including "[t]he point of model calibration," "[t]he goal of model calibration," and conclusions drawn from Tech Memo 1. *Id.* at 6-7. What makes USDOJ attorneys experts in model calibration, without any support for their analysis?

Citing to the Model Documentation Report, Plaintiffs argue: "The report concluded, therefore, that the model had been properly calibrated for its chosen application." Dkt. 570 at 10. Plaintiffs further indicate, "the Agencies judged the model to meet the *quality* objective set forth in Tech Memo 1." *Id.* at 11 (emphasis added). What Plaintiffs' lawyers can *never* claim is that the Model met the all the *quantitative* standards set in Tech Memo 1. That is because they know that the Model failed the quantitative standard for PCBs in sediment for at least three reasons:

- The Model Documentation Report says the Model did not meet the quantitative standard for sediment, but tries to gloss over it. *See* Dkt. 529, Ex. 11 at DOJEPAN062326 [Final Model Documentation Report, Appendix B1];

- Dr. Velleux admitted the Model did not meet the quantitative standard for sediment. Dkt. 529 ¶ 105 & Ex. 5 at 201:14-204:20; and,

9

- Dr. Zhang, testifying as the Rule 30(b)(6) witness for the State of Wisconsin on modeling, admitted the Model could not have met the quantitative standard because there was not enough data to make reliable conclusions about PCBs in sediment. Dkt. 529, ¶ 106 & Ex. 3 at 101:20-102:16. The statistical analysis done by the WDNR comes to the same conclusion. Dkt. 529 ¶ 101 & Ex. 34.

The argument of Plaintiffs' lawyers amounts to post hoc rationalization, but it is not evidence. *See Williams v. Voss*, 2011 WL 4340851, *7 (D. Minn. 2011) (attorney argument is not evidence).

**B.  Deposition Evidence about the Calibration of the Model That Did Not Exist at the Time of the Motion for Summary Judgment Demonstrates the Model Was Not Calibrated**

Plaintiffs spend more than 17 pages trying to explain, based only on attorney argument, the meaning of the emails submitted by Certain Defendants in support of the Motion for the proposition that the Model is calibrated. *See* Dkt. 570 at 5-22. There are no citations other than to Tech Memo 1, the Model Documentation Report, and the emails themselves. *See* Dkt. 570 at 5-7. Plaintiffs entirely fail to incorporate the deposition testimony relied on by Certain Defendants in the Motion which established that the Model was not calibrated to the standards laid out in Tech Memo 1. *See* Dkt. 529 ¶¶ 103-106.

Specifically, Dr. Velleux, the person who developed the Model and declared it calibrated, admitted during his deposition that the Model ***did not*** meet the ± 30 percent standard specified in Tech Memo 1:

> Q:  So in the – in the model evaluation that you ended up doing using the Tech Memo 1 plus or minus standard, it didn't – the sediment metrics didn't satisfy that standard, right?
>
> A:  I don't recall. You might need to clar – to clarify that. And it might be helpful to look at that report to see what was – to see what was done. Given all the heterogeneity – I mean, is it ok to –

> Q: Yeah, just keep talking, because I want you to give a complete answer, and we can look at the report too.
>
> A: Given that sediment PCB concentrations differ from place to place and may change differently at those points in space over time, to point to any one subset of the model where measurements have been collected, or more measurements collected, and say that, aha, I've met performance standard there, it's not completely as informative as to other locations. So that's what I meant by saying it's hard to be unequivocal.
>
> . . .
>
> Q: Okay. So what have you figured out in reference to my question?
>
> A: Your question, to the extent that I recall it, was what were the quantitative value of the metrics for the sediment in the model data comparisons there. And I'm looking at some of the text.
>
> . . .
>
> ***While not – maybe not exactly 30 percent differences, the one – the model values in the range of the one data set, and certainly within 50 percent of the other.***
>
> Q: For sediments.
>
> A: For sediments.
>
> Q: ***But not 30.***
>
> A: ***But not 30. The best that could be achieved, that's the intent of it.***

Dkt. 529 ¶ 105 & Ex. 5 at 201:14-204:20 (emphasis added).

Plaintiffs cannot explain away Dr. Velleux's testimony and do not even try, for good reason. When combined with the newly produced emails, it is clear the Model did not meet the Tech Memo 1 standards adopted by WDNR.

**C.  Certain Defendants Reasonably Had Not Reviewed the Documentary Evidence Submitted In Support of the Motion Before Filing the Reply on Record Supplementation**

Plaintiffs acknowledge a trial court may grant a motion to reconsider where there is newly discovered evidence. Dkt. 550 at 2, citing *Burney v. Thorn Americas, Inc.*, 970 F. Supp. 668, 671 (E.D. Wis. 1997). Plaintiffs complain the Motion is inappropriate because Defendants

admittedly had in their physical possession some of the documents relied on in the Motion at the time they filed their Reply on July 9, 2012. Dkt. 550 at 2.

As part of the support for their Motion, Certain Defendants presented (many) examples culled from the documents produced by Plaintiffs which demonstrate there is an issue of fact as to whether the Model was actually calibrated as represented by Dr. Zhang. Dkt. 529. Defendants were clear in the Motion that, although they had physical possession of some of the emails relied upon, they had not been reviewed (in part because of the volume produced), and that, even if the emails had been reviewed, their context could not be fully understood until the authors' deposition testimony was obtained. *Id.* at ¶¶ 46-48. Specifically, Certain Defendants explained:

- These documents were not reasonably available to Certain Defendants at the time they filed their Original Motion on May 4, 2012, and despite reasonable diligence, had not been reviewed and identified at the time Certain Defendants filed their Reply brief on July 9, 2012 (Dkt. 529 ¶ 46);

- Notwithstanding reasonable diligence, the evidence developed through deposition testimony since July 9, 2012, could not have been discovered before Certain Defendants' Original Motion was filed on May 4, 2012. This deposition testimony was also necessary to understand and explain the documents produced by the Governments after the Original Motion was filed (Dkt. 529 ¶ 47); and,

- It was not until after the Governments completed their document production on September 7, 2012 that Certain Defendants understood the deficiencies in the development, calibration, and documentation of the Model discussed below (Dkt. 529 ¶ 48).

Thus, contrary to Plaintiffs' assertions, the newly produced evidence relied on in the Motion is not evidence that Certain Defendants could have presented on July 9, 2012.

Plaintiffs also assign great importance to the fact that neither of the expert reports offered by Dr. Annear or Ken Susilo rely on the newly-discovered evidence as to the calibration of the Model, "as further evidence that Defendants aren't really seeking reconsideration of the Court's

prior order." Dkt. 570 at 3. The Court ordered that Defendants could not supplement the Administrative Record. Dkt. 498. Therefore, Certain Defendants' proposed expert reports are based solely on evidence in the Administrative Record. *See* Dkt. 529-22 & 529-23. Certain Defendants rely on extra-Record evidence only to demonstrate *why* those expert reports should be admitted.

### D. At a Minimum, There is An Issue of Fact to Be Resolved and Certain Defendants Should be Allowed to Offer Limited Evidence Regarding the Model Calibration

Calibration of the Model is the subject of several pending Motions for Summary Judgment and Cross-Motions for Summary Judgment. *See* Dkt. 509 & Dkt. 555. Pursuant to the Court's August 30, 2012 Order precluding any extra-Record evidence, these summary judgment motions were briefed (with the exception of additional submissions **by Plaintiffs** of Dr. Zhang's extra-Record Declaration) entirely on information contained within the Administrative Record. In light of all of the information submitted in the Motion for Reconsideration and the foregoing, including Plaintiffs' admissions regarding the dispute over the interpretation of whether the Model is calibrated, the Court should allow limited supplementation as to this issue, in order to help it understand the complex and technical materials surrounding the Model calibration.

## IV. CONCLUSION

For the reasons discussed in the opening brief and above, this Motion should be granted. Certain Defendants respectfully request that the Court:

1. Make clear that by quoting Dr. Zhang on calibration (Dkt. 498 at 3 & 6), the Court did not mean to decide that the Certain Defendants cannot challenge whether the Model actually was calibrated, using information contained the Administrative Record.

2. Allow expert testimony on the lack of calibration of the Model, and its impact on the decision to approve the remedy. Specifically, expert testimony would be helpful to the Court in assessing the impact of the failure to calibrate the Model.

Dated: November 13, 2012

s/ Philip C. Hunsucker

Philip C. Hunsucker
David A. Rabbino
Hunsucker Goodstein & Nelson PC
3717 Mt. Diablo Blvd., Suite 200
Lafayette, CA 94549
Telephone: (925) 284-0840
Fax: (925) 284-0870
phunsucker@hgnlaw.com
drabbino@hgnlaw.com

Anne E. Lynch
Hunsucker Goodstein & Nelson PC
5335 Wisconsin Avenue NW, Suite 360
Washington, DC 20015
Telephone: (202) 895-5380
Fax: (202) 895-5390
alynch@hgnlaw.com

**Counsel for Menasha Corporation**


s/ David G. Mandelbaum
David G. Mandelbaum
Francis A. Citera
Marc E. Davies
Caleb J. Holmes
Adam B. Silverman
GREENBERG TRAURIG, LLP
Two Commerce Square, Suite 2700
2001 Market Street
Philadelphia, PA 19103
215.988.7800
mandelbaumd@gtlaw.com

**Counsel for Defendant P.H. Glatfelter Co.**

Respectfully submitted,

s/ Susan E. Lovern
Susan E. Lovern (#1025632)
Michael P. Carlton (#1016037)
Thomas Armstrong (#1016529)
Kelly J. Noyes (#1064809)
von Briesen & Roper, s.c.
411 East Wisconsin Avenue, Suite 700
Milwaukee, WI 53202
Telephone: (414) 276-1122
Fax: (414) 276-6281
slovern@vonbriesen.com
mcarlton@vonbriesen.com
tarmstro@vonbriesen.com
knoyes@vonbriesen.com

**Attorneys for Defendant CBC Coating, Inc.**