UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA and
STATE OF WISCONSIN,

        Plaintiffs,

v.                                       Case No. 10-C-910

NCR CORP. and APPLETON PAPERS INC. et al.,

        Defendant.

**DECISION AND ORDER GRANTING PARTIAL JUDGMENT ON THE PLEADINGS AND DENYING MOTION *IN LIMINE***

The United States has moved for partial judgment on the pleadings in order to obtain dismissal of several of the Defendants' affirmative defenses. Other Defendants have filed a somewhat related motion *in limine* asking for a pretrial ruling that the government must prove certain "elements" in order to obtain the injunctive relief it seeks. For the reasons given below, the United States' motion will be granted and the motion *in limine* will be denied.

**I. Dismissal of Affirmative Defenses**

The Defendants have alleged a number of affirmative defenses positing that because the United State Army Corps of Engineers is itself a PRP in this action, the United States is precluded from issuing a Unilateral Administrative Order ("UAO") or obtaining specific performance or an injunction due to its own "unclean hands." For decades the Army Corps dredged the navigational channel in the Fox River, which disturbed sediments on the river bottom and resulted in the dispersal of PCB-containing sediment that then moved into other areas of the river and into Green

Bay. The United States has apparently conceded that this activity qualifies as a discharge of pollutants under CERCLA. In addition, some of the defendants allege that some of the PCB-containing paper received and recycled by recycling mills in the River came from federal agency office recycling programs and federal printing shop recycling operations. These defendants allege that EPA itself was therefore one of the agencies that recycled paper containing PCBs at mills that discharged wastewater to the Site.

The United States, in its role as the enforcer of the nation's environmental laws, seeks enforcement of its 2007 UAO. CERCLA § 106(a) provides that "the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require." 42 U.S.C. § 9606(a). The Defendants argue that these clauses require the United States to prove certain "elements," including that an injunction would be in the public interest and would be consistent with the "equities" of the case. Given the language of § 106(a), the Defendants argue, their affirmative defenses involving the government's own activities speak directly to the equities of the case and should not be dismissed.

There are several problems with this approach. First, as discussed in Section II below, this is not a § 106(a) case in which the government comes to court seeking emergency relief. Instead, it is seeking to enforce the UAO. Although the first sentence of § 106(a) uses the word "equities," that section is reserved for cases in which the government comes *directly* to court seeking emergency relief. By contrast, the *second* sentence of § 106(a) states that "The President may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and welfare and the environment."

2

That is what happened here. The EPA issued an order and is now seeking to enforce it after the administrative process has been completed. Section (b) provides the mechanism for an "action brought in the appropriate United States district court to enforce such order," and that is what this action is. 42 U.S.C. § 9606(b). This is thus not a direct action to obtain injunctive relief of an "independent" nature but an action to enforce an existing UAO that was the result of an extensive administrative process. There is no basis to conclude that "equities" would play a role in a situation like this, where the review is limited to the administrative record.

Second, CERCLA § 120 indicates that although the government may indeed be a liable party itself under CERCLA, that does not "affect the liability of any person or entity under sections 9606 and 9607." 42 U.S.C. § 9620(a)(1). In other words, even if the government is itself a PRP, that does not give rise to a "defense" (equitable or otherwise) under the statute. And § 107(b) makes that perfectly clear, stating that liability is "subject only to the defenses set forth in subsection(b) of this section," which include "(1) an act of God; (2) an act of war; [and] (3) an act or omission of a third party." 42 U.S.C. § 9607(b)(1)-(3). Thus, § 107 excludes any kind of equitable defense along the lines of what the Defendants are now proposing. "CERCLA does not permit equitable defenses to § 107 liability," *Town of Munster, Ind. v. Sherwin-Williams Co., Inc.,* 27 F.3d 1268, 1270 (7th Cir. 1994). "[W]e conclude that the three statutory defenses are the only ones available, and that traditional equitable defenses are not." *California ex rel. California Dept. of Toxic Substances Control v. Neville Chemical Co.,* 358 F.3d 661, 672 (9th Cir. 2004). Thus, although the government's conduct as a polluter might play a role in the equitable apportionment of expenses through contribution, it does not on its own provide some sort of "defense" to liability in the first place.

3

The Defendants suggest that these restrictions do not apply because the government is seeking equitable relief under § 106(a) which, as noted above, indicates that relief should be granted only when the equities of the case may require. 42 U.S.C. § 9606(a). Although they have cited a district court case on the subject, the case is from the Jurassic period (in CERCLA years) and has not been followed elsewhere. *United States v. Hardage,* 116 F.R.D. 460 (W.D. Okl. 1987). Moreover, the *Hardage* decision did not consider the 1986 amendments to CERCLA, which added the clause from § 120 indicating that even if there is federal liability, that does not affect the liability of any other entity. Thus, I agree with the United States that the entire enforcement system of CERCLA is premised on the government's ability to enforce its orders in appropriate cases, regardless of its own liability. Its own contribution to a polluted site plays a role in other aspects of the case (contribution), but it does not impact any defendant's liability or provide an affirmative defense to the issuance of injunctive relief. And of course none of this matters if the government is indeed proceeding under the second sentence of § 106(a), not the first. That kind of relief, as discussed in Section II below, does not involve equitable factors at all.

Finally, some of the Defendants also suggest that § 106 is not the proper enforcement mechanism for administrative orders. Defendants rely on § 106(b)(1), which provides that the government may obtain a fine of as much as $25,000 or more per day upon a showing that a defendant has willfully violated an administrative order. This, they argue, is the extent of the government's right to obtain compliance with its UAO. But § 106(b)(1) merely lists the elements required for the government to obtain a civil fine; it does not suggest that a civil fine is the *only* remedy the government has at its disposal. The United States has not even alleged that the Defendants are "willfully" violating the UAO. Instead, as discussed below, the United States is

4

merely attempting to enforce an order. As such, even if § 106(a) involves the sorts of equitable considerations discussed above, that is not relevant to an enforcement proceeding like this one.

For the reasons given above, I conclude that the United States' motion to dismiss the Defendants' affirmative defenses should be granted.

**II. The "Elements" of Injunctive Relief**

Relatedly, some of the Defendants have filed a motion *in limine* seeking to clarify exactly what the United States must prove in the upcoming trial to obtain injunctive relief. They argue that although liability is a predicate to such relief, liability *per se* is not enough. Instead, the United States must demonstrate the § 106 factors discussed above. CERCLA § 106(a) provides as follows:

> when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require. The President may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and welfare and the environment.

42 U.S.C. § 9606(a).

The clause just cited contains essentially two sections. First, it states that when the President determines that there is a danger to public health, he may direct the Attorney General to "secure such relief as may be necessary." *Id.* Second, it states that the district court shall have jurisdiction to grant such relief if the relief is in the public interest and "the equities of the case" require the particular injunction being sought. As noted in Section I, the Defendants argue that the United States will be required to prove each of these "elements" against each Defendant and that this Court

5

is not to act as a "rubber stamp" on the government's remedy selection. They also argue that the United States must prove these elements as of the present day rather than as of the issuance of the UAO in 2007. They note that much has changed since 2007 (including the economic downturn), which has dramatically shifted the equitable considerations that come into play.

The United States strongly opposes the Defendants' attempt to turn the upcoming trial into a series of equitable mini-trials. In its view, what's important is whether the remedy selected passes muster under the arbitrary-and-capricious level of judicial review. If it does, then the UAO will be enforced. After all, the UAO was issued following an extensive investigation into the problem and the remedy. If the remedy is deemed to be appropriate, then it does not make sense to have a whole secondary trial just to see if *enforcing* the remedy is also appropriate. In other words, if the remedy is appropriate, then it is *ipso facto* appropriate to enforce it.

The government's position accurately reflects the policies underlying CERCLA and the language of the statute itself. Section 113 governs the timing and means of judicial review of UAOs, and it makes clear that review of response actions or orders "shall be limited to the administrative record." 42 U.S.C. § 9613(j)(1). As has been noted extensively throughout this action, that review is limited to an arbitrary-and-capricious standard. *Id.* at (j)(2). It would not make sense to undertake this level of review of the administrative record, which is "fixed" in both time and evidence, and then have a wholly separate inquiry into the "equities" of the situation as they might happen to exist at the time of trial. The challenge allowed to a PRP does not say that the PRP will win if it can show that the remedy is arbitrary and capricious *or* that the equities do not warrant it; the statute simply says it may challenge the remedy imposed by arguing that it is arbitrary and capricious. The Defendants have cited no precedent suggesting that equitable considerations

6

are to be considered in such review.

In 1990, then-Judge Breyer explained that there were essentially four paths the EPA could choose to get a site cleaned up. *United States v. Ottati & Goss, Inc.,* 900 F.2d 429, 433 (1st Cir. 1990). Among them are a direct action in federal district court, under the first sentence of § 106(a), where the EPA seeks an injunction. In that event, the "district court ... shall have jurisdiction to grant such relief as the public interest and the equities of the case shall require." 42 U.S.C. § 9606(a). Another option, based on the *second* sentence of § 106(a), gives EPA "the power to 'take other action ... including ... issuing such orders as may be necessary to protect public health and welfare and the environment.' Subsection (b) provides that EPA may bring an action in 'district court to enforce such order' (and to obtain a fine for its violation)." 900 F.2d at 433 (quoting 42 U.S.C. § 9606(a)).

In the *Ottati & Goss* case, the EPA brought an action in district court seeking an injunction, and then, while the case was pending, it commenced administrative proceedings that resulted in a remedy selection and a UAO. The government argued that once the UAO was issued, the district judge in the pending civil action was bound to order compliance with the UAO unless he found it arbitrary and capricious. The First Circuit disagreed. In doing so, it noted that the EPA had "expressly said that it had not issued an 'order;' and, in asking the court to model its injunctive remedy on EPA's 'Record of Decision,' it was not asking the court to 'enforce an order.'" *Id.* Thus, the EPA in that case was proceeding solely under the *first* sentence of § 106(a), which allows only "such relief as the public interest and the equities of the case shall require." The fact that an ROD had issued during the pendency of the case did not mean that the district judge was left only to either enforce the ROD or to find it arbitrary and capricious. Instead, because the case was brought under

7

the first sentence of § 106(a), the judge was free to consider equitable and other considerations.

Here, by contrast, the government is specifically asking that this Court enforce the UAO, which was issued prior to the filing of this action. The *Ottati & Goss* court observed that in such circumstances, the court's options are indeed more limited: "When the EPA asks a court . . . to enforce a lawful (nonarbitrary) EPA order, the court must enforce it." *Id.* at 434. The question in a case where the government asks the court to enforce an order is simply whether the remedy is arbitrary and capricious, and as such it does not make sense to import principles of equity into the analysis. Judge Breyer observed this disconnect:

> The first sentence of § 9606(a) does not foresee a court reviewing, say, "final agency action." Cf. 5 U.S.C. § 704. It seems more plausibly applicable to an emergency situation, where the agency has not yet had time to compile a thorough record and to issue an "order." In such a case, the court is not a "reviewing court," as, ordinarily, there would not be much of an agency decision or record to "review." Indeed, how would an "arbitrary/capricious" standard work under the first sentence of § 9606(a)? Precisely what, in the ordinary case, would a court be expected to review? EPA's decision to ask the Attorney General to bring the action? The Attorney General's decision to file suit? Is EPA supposed to win automatically as long as its decision to bring the action was reasonable? These questions suggest why it does not make much sense to apply standards for APA-type review of an agency's final decisions in the context of the first sentence of § 9606(a).

*Id.*

This case does not present the "emergency situation" in which the government runs to court to show an immediate risk of harm to the public health under § 106(a). Instead, this is a case where there is a fully developed administrative record establishing the remedy and a UAO. The government is not asking for emergency injunctive relief under § 106(a), it is simply asking the Court to enforce its UAO. Accordingly, the equitable and other "elements" the Defendants have identified have no role in these proceedings.

8

For the reasons given above, the United States' motion for partial judgment on the pleadings (ECF No. 430) is **GRANTED**. The Defendants' motion *in limine* on the elements of the Fifth Claim (ECF No. 520) is **DENIED**.

**SO ORDERED** this 16th day of November, 2012.

 s/ William C. Griesbach  
William C. Griesbach  
United States District Judge
