UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN, <br><br> Plaintiffs, <br><br> v. <br><br> NCR CORPORATION, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 10-C-910 <br><br> The Honorable William C. Griesbach |

**PLAINTIFFS' CONSOLIDATED BRIEF IN RESPONSE TO
ALL MOTIONS *IN LIMINE* FILED BY DEFENDANTS**

This single, consolidated brief by Plaintiffs responds to six motions *in limine* filed by the Defendants.[1] In Plaintiffs' view, some of the motions are well-founded and others are not, as set forth in separate sections below.

1. *Certain Defendants' Motion In Limine to Exclude Undisclosed Expert Opinions* (Dkt. 641).

Dr. Craig Jones is the main architect of an elaborate computer model that purports to reconstruct the movement of PCBs from particular Fox River discharge sources to particular sediment deposition locations between 1954 and 1981. His model is an integral part of an "apportionment" theory advanced by a team of NCR experts led by Mr. Philip Simon. As we understand the motion targeting Dr. Jones, it does not argue that he should be excluded completely; it simply seeks to preclude him from testifying at trial about any recent

---

[1] Additionally, *United States' Civil L.R. 7(h) Expedited Non-Dispositive Motion to Strike Expert Disclosure of Mark Travers* (Dkt. 533) remains pending before the Court. Although designated by Menasha Corporation and P.H. Glatfelter Company as a "rebuttal" witness to the report of Dr. Michelle Watters, the entirety of Mr. Travers' report addressed the propriety of the proposed remedy, specifically whether capping was a superior remedy to dredging. *See* Dkt 533-1. Subsequent to the Court's ruling granting partial summary judgment on the propriety of the remedy (Dkt. 666), Plaintiffs requested that Menasha and Glatfelter withdraw Mr. Travers from their witness list. Defendants have declined to do so.

"improvements" or "fixes" to his model. Certain Defendants believe – and Plaintiffs' concur – that major problems with Dr. Jones' approach were brought to light at his November 12, 2012 deposition. Additional work by Dr. Jones or Mr. Simon to refine or rehabilitate the previously disclosed opinions would be untimely.

With that understanding, the Plaintiffs believe this motion *in limine* is well-founded. There is a clear, foreseeable, and non-hypothetical risk that Dr. Jones would try to unveil newly-manufactured support for his opinions at trial, as shown by his deposition testimony quoted in the brief supporting the motion. That should not be allowed.

> 2. *Certain Defendants' Motion in Limine Regarding the Proposed Expert Testimony of John Butler on Behalf of NCR Corporation* (Dkt. 636).

Mr. Butler is an NCR expert who attempts to "apportion" the estimated costs of remediating Operable Unit 4 of the Site using certain economic principles, together with a computer model and reliance on some questionable work by other NCR experts. The motion by some of NCR's co-defendants highlights Mr. Butler's admitted lack of expertise in computer modeling and the fact that the computer modeling work used for his analysis was done for him behind the scenes by others. In our view, that may offer fertile territory for cross-examination and it may expose serious weaknesses in the specific conclusions reached by Mr. Butler.

The upcoming trial, however, is a bench trial, rather than one presented to a jury. Thus, we see little need for the Court, as a *Daubert* gatekeeper, to exclude Mr. Butler outright.

> The primary purpose of the *Daubert* filter is to protect juries from being bamboozled by technical evidence of dubious merit, as is implicit in the courts' insistence that the *Daubert* inquiry performs a 'gatekeeper' function. . . . *Daubert* requires a binary choice – admit or exclude – and a judge in a bench trial should have discretion to admit questionable technical evidence, though of course he must not give it more weight than it deserves.

*Smithkline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003) (Posner, J., sitting by designation) (citations omitted). *Accord United States v. Brown*, 415 F.3d 1257,

1269 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."); *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) (citing *Brown*).

> 3. *Defendants NCR Corporation and P.H. Glatfelter Company's Motion in Limine to Preclude Georgia-Pacific from Offering Expert Testimony of John R. Wolfe* (Dkt. 658).

Dr. John Wolfe is a hydrodynamic modeling consultant who has been involved in studies of PCBs in the Lower Fox River and Green Bay since 1997. Dr. Wolfe submitted an expert report in this action and was deposed on November 8, 2012. Glatfelter and NCR jointly moved to exclude him entirely, because he sheds doubt on the opinions expressed by some of their experts. Plaintiffs expect Georgia-Pacific to make its case for offering Dr. Wolfe's testimony in the company's own response to this motion, but Plaintiffs wish to highlight two points.

First, Plaintiffs believe that Georgia-Pacific has a legitimate interest in the proceedings due to unique features of that company's settlement with the governments. For the downstream portion of OU 4 and OU 5, Georgia-Pacific's Consent Decree neither waived its claims against the other Defendants nor gave it protection against the claims of others. For that reason, the key liability stipulation in its Consent Decree addressed not only Georgia-Pacific's own liability as a UAO recipient, but also the potential liability of the other UAO recipients:

> The Settling Defendant is liable to the United States under CERCLA Section 106, 42 U.S.C. § 9606, for performance of all response actions that the UAO requires for Lower OU 4 and OU 5. The Parties contend that other recipients of the UAO also are liable to the United States for performance of all response actions that the UAO requires for Lower OU 4 and OU 5.

Dkt. 2-1 at 13.

Second, Plaintiffs believe that Dr. Wolfe's testimony would be valuable and informative. It would not be cumulative, as suggested in the motion. For those reasons, we have included Dr. Wolfe on our own witness list and Plaintiffs anticipate potentially adopting defined portions

of his expert testimony as added support for *Plaintiffs'* position, consistent with case law in the Seventh Circuit. *See S.E.C. v. Koenig*, 557 F.3d 736 (7th Cir. 2009); *United States v. Schaudt*, No. 07 C 0895, 2009 WL 1218605 (N.D. Ill. Apr. 30, 2009). Georgia-Pacific has indicated that Dr. Wolfe's direct testimony could be presented in less than two hours. If necessary, Plaintiffs would be willing to cede up to two hours of their trial time allotment to Georgia-Pacific so that Dr. Wolfe can testify. That would eliminate any timing prejudice to others, as suggested in the brief filed by Glatfelter and NCR. Dkt. 659 at 7 n.4 ("In the event that Dr. Wolfe is permitted to testify, his time on direct examination should be allocated to the Government and not any of the Defendants.").

    4.    *Menasha Corporation's Motion to Exclude Speculative Testimony that the John Strange Paper Mill Purchased Pre-Consumer NCR Paper Broke*
(Dkt. 653)

Menasha Corporation's motion *in limine* to exclude "speculative" testimony regarding the use of NCR broke as furnish at the John Strange Paper Mill should be denied because it offers little more than a one-sided preview of a battle of experts that should be played out at trial. Menasha's paper furnish expert, Mr. David Ruby, opines that the John Strange Paper Mill would not have purchased NCR broke as furnish and that the Mill would have avoided purchasing mixed paper furnish with NCR paper content. NCR's paper furnish expert, Mr. William Moore, disagrees with Mr. Ruby and opines that all mixed paper during the relevant period would have contained significant quantities of NCR carbonless copy paper. Additionally, NCR's team of experts led by Mr. Simon theorize that the John Strange Paper Mill would have used a certain quantity of NCR broke as furnish based on the Mill's production capacity.

As stated above, the necessity for the Court to serve as a pre-trial gatekeeper is significantly diminished in a bench trial. The Court is well equipped to determine what weight, if any, to give what Menasha self-servingly deems "speculative" evidence. Moreover, there is no

4

Case 1:10-cv-00910-WCG Filed 11/27/12 Page 4 of 11 Document 682

question that the John Strange Paper Mill utilized at least some PCB-containing furnish in its processes. Historic test results show remarkably high levels of PCBs in paperboard products manufactured at the John Strange Paper Mill in the early 1970s and in effluent discharged from the Mill to the Site. *See, e.g.,* Dkt. 552-5 at 21 (effluent results); Dkt. 552-6 at 24, 26 (paperboard results); Dkt. 552-3 at 240-247 (paperboard results).[2] And, of course, this Court recently held that Menasha is liable to Plaintiffs under CERCLA Sections 107(a)(2) and (a)(3) for its discharge of PCBs to the Site. Dkt. 668.

This Court could certainly conclude that test results indicating high PCB content in Menasha's finished product support an assumption that NCR broke was used as a furnish by the Mill and that incidental NCR paper alone would not give rise to such findings. Additionally, the deposition testimony of former John Strange Paper Mill employees regarding operations at the Mill is not as one-sided on this issue as indicated in Menasha's brief. *See*, *e.g.*, Ex. 1 to Decl. of M. Abela (attached hereto as Ex. 1) at EPAAR066274 (color of sludge produced at the Mill "depends on what they were running that day. If they were running corrugated it would be brown. If they were running mixed paper it would [sic] gray, and if they were running the carbon paper it would be blue").

But the Court has already indicated that self-serving guesstimates of PCB discharges decades ago will not establish divisibility or a reasonable basis for apportionment (Dkt. 172 at 6-11; Dkt. 370 at 3-12) and that should remain true even if those theories are dressed up in new packaging. Thus, though Menasha's motion should be denied for the reasons stated above, granting the motion would likely have little or no bearing on the main issues for trial.

---

[2] Indeed, one of the documents considered by Menasha's expert, Mr. Ruby, in writing his report shows as much as 37 parts per million of PCBs found in boxboard manufactured at the John Strange Paper Mill. See Ex. 2 to Decl. of M. Abela at MENFOX00000156.

5. *Defendant NCR Corporation's Motion in Limine to Preclude Certain Defendants from Offering Expert Testimony of Gary Kleinrichert* (Dkt. 656)

The expert testimony of Mr. Gary Kleinrichert was offered as support for the argument by Glatfelter and others that equities such as NCR's ability to pay for the full cleanup should control and constrain the enforcement of the UAO. The Court's recent decision rejected that theory. Dkt. 627. As Mr. Kleinrichert's opinions were limited to the question of whether NCR is financially able to bear the entirety of the cost of Site remediation, his testimony is now completely unnecessary. Plaintiffs support granting this motion.

6. *NCR Corporation's Motion to Strike the Phase 1 Pre-Trial Stipulations Between the Plaintiffs and Defendant U.S. Paper Mills Corp.* (Dkt. 660)

Finally, this Court should deny NCR's Motion to Strike the Pre-Trial Stipulations between Plaintiffs and U.S. Paper. First, the stipulation does not constitute a compromise of the Plaintiffs' substantive legal rights and therefore is not a settlement subject to the requirements of CERCLA Section 122(d)(1)(A), 42 U.S.C. § 9622(d)(1)(A). In accordance with the language of the stipulation, the United States may, at any time and for any reason, seek full performance of the UAO from U.S. Paper individually or collectively with other defendants. *See* Dkt. 619 at 3-4 ("The United States reserves the right to seek injunctive relief against U.S. Paper through future proceedings if the United States determines, in the *unreviewable exercise of its enforcement discretion*, that such relief has become necessary.") (italics added).

As noted in U.S. Paper's separate response to NCR's motion, the liability stipulation eliminates a potentially-significant successor liability issue. Dkt. 671 at 3 (according to U.S. Paper, it "did not purchase the De Pere facility until after the Production Period ended and only acquired those liabilities that existed in 1971, long before CERCLA was enacted."). In exchange for U.S. Paper's liability stipulation and a waiver of all defenses, the Plaintiffs simply

state that "in the exercise of its enforcement discretion, the United States will initially seek performance . . . from NCR and its delegates, and/or from other defendants in this action." Dkt. 619 at 3.  But nothing in this sentence precludes the United States from seeking to enforce its claims against U.S. Paper.  NCR's characterization of the stipulation as a settlement that provides a "permanent pass" to U.S. Paper from enforcement of the UAO is simply not true and does not warrant granting NCR's motion.  *See* Dkt. 661 at 4-5.

    Second, the stipulation does not affect the rights of NCR and should not be subject to NCR's review.  The stipulation addresses U.S. Paper's liability to the Plaintiffs under CERCLA Section 107(a) and states the United States' present intentions with respect to enforcement of the UAO.  As a private party, NCR has no legal right to enforce or require the enforcement of the UAO against U.S. Paper or any other PRP.  *See* 42 U.S.C. § 9606(a).  Although NCR -- like any UAO recipient -- might *prefer* that the United States enforce the UAO against another PRP in the first instance, NCR may not demand this from the United States.  And because the stipulation is not a settlement under Section 122 of CERCLA, NCR retains all of its rights to seek contribution from U.S. Paper pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613(f).  *See* 42 U.S.C. §§ 9622(c) and 9613(f)(2).  In fact, the stipulation places U.S. Paper squarely within the universe of parties from which NCR may seek contribution.  *See* 42 U.S.C. § 9613(f) ("Any person may seek contribution from any other person who is liable or potentially liable under Section 9607(a) of this title . . . .").  Therefore, this Court should deny *NCR Corporation's Motion to Strike the Phase 1 Pre-Trial Stipulations Between the Plaintiffs and Defendant U.S. Paper*.

## Conclusion

Defendants' motions *in limine* address a hodgepodge of issues. While this Court should prevent trial by surprise and preclude testimony on resolved issues, the upcoming bench trial is an appropriate forum for the Court to evaluate contested expert opinions. Docket Nos.641 and 656 should be granted, while Plaintiffs' request that Docket Nos. 636, 653, 658, and 660 be denied.

Plaintiffs' Consolidated Brief in Response to Defendants' Motions *in Limine* in *United States and the State of Wisconsin v. NCR Corp., et al.*, No. 10-C-910 (E.D. Wis.)

                                        Respectfully submitted,

                                        FOR THE UNITED STATES OF AMERICA

                                        IGNACIA S. MORENO
                                        Assistant Attorney General
                                        Environment and Natural Resources Division

Dated:   November 27, 2012              s/ *Jeffrey A. Spector*
                                        RANDALL M. STONE
                                        JEFFREY A. SPECTOR
                                        KRISTIN FURRIE
                                        SEAN CARMAN
                                        MAYA ABELA
                                        SUMONA MAJUMDAR
                                        Environmental Enforcement Section
                                        Environment and Natural Resources Division
                                        U.S. Department of Justice
                                        P.O. Box 7611
                                        Washington, DC  20044-7611
                                        Telephone:    202-514-4432
                                        Facsimile:     202-616-6584
                                        E-Mail:         jeffrey.spector@usdoj.gov

                                        GREGORY J. HAANSTAD
                                        Attorney for the United States, Acting
                                        Under Authority Conferred by 28 U.S.C. § 515

                                        SUSAN M. KNEPEL
                                        Assistant United States Attorney
                                        Office of the United States Attorney
                                        517 E. Wisconsin Avenue, Room 530
                                        Milwaukee, WI  53202


                                        FOR THE STATE OF WISCONSIN

Dated:   November 27, 2012              s/ *Cynthia R. Hirsch*
                                        CYNTHIA R. HIRSCH
                                        Assistant Attorney General
                                        Wisconsin Department of Justice
                                        17 West Main Street
                                        P.O. Box 7857
                                        Madison, WI  53707-785
                                        E-Mail:         hirschcr@doj.state.wi.us

# CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing Brief to be served on the following counsel of record by the Court's Electronic Case Filing system:

**Mary Rose Alexander**
Latham & Watkins LLP
mary.rose.alexander@lw.com

**Thomas Armstrong**
von Briesen & Roper SC
tarmstro@vonbriesen.com

**Paul Bargren**
Foley & Lardner LLP
pbargren@foley.com

**Linda E. Benfield**
Foley & Lardner LLP
lbenfield@foley.com

**Dennis P. Birke**
DeWitt Ross & Stevens SC
db@dewittross.com

**Steven P. Bogart**
Reinhart Boerner Van Deuren SC
sbogart@reinhartlaw.com

**Michael P. Carlton**
von Briesen & Roper SC
mcarlton@vonbriesen.com

**Evan R. Chesler**
Cravath Swaine & Moore LLP
echesler@cravath.com

**Francis A. Citera**
Greenberg Traurig LLP
citeraf@gtlaw.com

**Marc E. Davies**
Greenberg Traurig LLP
daviesm@gtlaw.com

**David R. Erickson**
Shook Hardy & Bacon LLP
derickson@shb.com

**S. Todd Farris**
Friebert Finerty & St. John SC
stf@ffsj.com

**Patrick J. Ferguson**
Latham & Watkins LLP
patrick.ferguson@lw.com

**Charles Fried**
fried@law.harvard.edu

**Sandra C. Goldstein**
Cravath Swaine & Moore LLP
sgoldstein@cravath.com

**Thomas R. Gottshall**
Haynsworth Sinkler Boyd PA
lgantt@hsblawfirm.com

**Eric W. Ha**
Sidley Austin LLP
eha@sidley.com

**Scott W. Hansen**
Reinhart Boerner Van Deuren SC
shansen@reinhartlaw.com

**William H. Harbeck**
Quarles & Brady LLP
william.harbeck@quarles.com

**Cynthia R. Hirsch**
Wisconsin Department of Justice
hirschcr@doj.state.wi.us

**Margaret I. Hoefer**
Stafford Rosenbaum LLP
mhoefer@staffordlaw.com

**Caleb J. Holmes**
Greenberg Traurig LLP
holmesc@gtlaw.com

**Philip C. Hunsucker**
Hunsucker Goodstein PC
phunsucker@hgnlaw.com

**Peter C. Karegeannes**
Quarles & Brady LLP
peter.karegeannes@quarles.com

**Paul G. Kent**
Stafford Rosenbaum LLP
pkent@staffordlaw.com

**Gregory A. Krauss**
Gregory Krauss pllc
gkrauss@krausspllc.com

**Linda R. Larson**
Marten Law PLLC
llarson@martenlaw.com

**Vanessa A. Lavely**
Cravath Swaine & Moore LLP
vlavely@cravath.com

**Susan E. Lovern**
von Briesen & Roper SC
slovern@vonbriesen.com

**Anne E. Lynch**
Hunsucker Goodstein PC
alynch@hgnlaw.com

**Kevin J. Lyons**
Davis & Kuelthau SC
klyons@dkattorneys.com

**Karl S. Lytz**
Latham & Watkins LLP
karl.lytz@lw.com

**Meline G. MacCurdy**
Marten Law
mmaccurdy@martenlaw.com

**David G. Mandelbaum**
Greenberg Traurig LLP
mandelbaumd@gtlaw.com

**Bradley M. Marten**
Marten Law
bmarten@martenlaw.com

**Tara M. Mathison**
Davis & Kuelthau SC
tmathison@dkattorneys.com

| | | |
|---|---|---|
| **Allison E. McAdam**<br>Hunsucker Goodstein PC<br>amcadam@hgnlaw.com | **Nancy K. Peterson**<br>Quarles & Brady LLP<br>nancy.peterson@quarles.com | **Sarah A. Slack**<br>Foley & Lardner LLP<br>sslack@foley.com |
| **Darin P. McAtee**<br>Cravath Swaine & Moore LLP<br>dmcatee@cravath.com | **Thomas M. Phillips**<br>Reinhart Boerner Van Deuren SC<br>tphillip@reinhartlaw.com | **Margaret R. Sobota**<br>Sidley Austin LLP<br>msobota@sidley.com |
| **Stephen F. McKinney**<br>Haynsworth Sinkler Boyd PA<br>smckinney@hsblawfirm.com | **Ian A.J. Pitz**<br>Michael Best & Friedrich LLP<br>iapitz@michaelbest.com | **Arthur A. Vogel, Jr.**<br>Quarles & Brady LLP<br>arthur.vogel@quarles.com |
| **Heidi D. Melzer**<br>Melzer Law, LLC<br>hmelzer@melzerlaw.com | **David A. Rabbino**<br>Hunsucker Goodstein PC<br>drabbino@hgnlaw.com | **Anthony S. Wachewicz, III**<br>City of Green Bay<br>tonywa@ci.green-bay.wi.us |
| **Elizabeth K. Miles**<br>Davis & Kuelthau SC<br>emiles@dkattorneys.com | **Ronald R. Ragatz**<br>DeWitt Ross & Stevens SC<br>rrr@dewittross.com | **James P. Walsh**<br>Appleton City Attorney<br>jim.walsh@appleton.org |
| **William J. Mulligan**<br>Davis & Kuelthau SC<br>wmulligan@dkattorneys.com | **Kathleen L. Roach**<br>Sidley Austin LLP<br>kroach@sidley.com | **Ted A. Warpinski**<br>Friebert Finerty & St John SC<br>taw@ffsj.com |
| **Daniel C. Murray**<br>Johnson & Bell Ltd.<br>murrayd@jbltd.com | **Megan A. Senatori**<br>DeWitt Ross & Stevens SC<br>ms@dewittross.com | **Ted Waskowski**<br>Stafford Rosenbaum LLP<br>twaskowski@staffordlaw.com |
| **Omid H. Nasab**<br>Cravath Swaine & Moore LLP<br>onasab@cravath.com | **Adam B. Silverman**<br>Greenberg Traurig LLP<br>silvermana@gtlaw.com | **Evan B. Westerfield**<br>Sidley Austin LLP<br>evanwesterfield@sidley.com |
| **Kelly J. Noyes**<br>von Briesen & Roper SC<br>knoyes@vonbriesen.com | **M. Andrew Skierawski**<br>Friebert Finerty & St. John SC<br>mas@ffsj.com | **Richard C. Yde**<br>Stafford Rosenbaum LLP<br>ryde@staffordlaw.com |

Dated: November 27, 2012                                    s/ *Jeffrey A. Spector*