UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA and
STATE OF WISCONSIN,

        Plaintiffs,

v.                                          Case No. 10-C-910

NCR CORP. et al.,

        Defendant.

**DECISION AND ORDER ON RECONSIDERATION**

Some Defendants have moved for partial reconsideration of my Decision and Order denying their motion to supplement the administrative record. (ECF No. 527.) A recent decision granting summary judgment to the Plaintiffs (ECF No. 666) has essentially mooted this motion, but I explain herein why the motion is denied.

The Defendants first ask that they be allowed to offer limited evidence from within the administrative record itself to argue that the models were not calibrated. I considered and rejected these arguments, based on the administrative record, in granting the Plaintiffs' motion for summary judgment. Accordingly, this request is moot. They further argue that Plaintiffs misrepresented the fact that the model was calibrated. Again, this turns on what the definition of "calibrated" is, a question I addressed in granting the Plaintiffs' motion for summary judgment. (ECF No. 666 at 23-26.)

1

Defendants also note that I cited extra-Record evidence in Dr. Zhang's declaration in my order denying their motion to supplement the record and suggest that this is inconsistent with the rejection of the extra-Record evidence they seek to offer. But I cited Dr. Zhang's declaration to explain what the record contains and why it is sufficient; not to add material that is not already part of the record. I likewise cited the arguments and evidence of Defendants' experts as to what the record was missing and why they thought supplementation was needed. (ECF No. 428 at 5.) Indeed, in an earlier order, I granted NCR's motion for reconsideration of the same decision and agreed to consider the expert opinion for the limited purpose of evaluating whether the U.S. Environmental Protection Agency and the Wisconsin Department of Natural Resources considered all relevant factors when they made their remedy decisions. (ECF No. 522.)

Finally, the crux of the Defendants' assertion is that the governments *knew* that the model was imperfect but went forward with it anyway. They have cited extensive amounts of emails among the key players that discuss, in sometimes frank terms, the model's strengths and shortcomings. The emails suggest that creating a complex model is a lot like making sausage, but ultimately they merely underscore what the administrative record already shows, which is that the model was an admittedly imperfect predictor of sediment. The documents *in* the administrative record explained these shortcomings, however. More importantly, the record also makes clear that calibration of the model was not a pass-fail type of arrangement. The Model Development Report explains in some detail how the calibration process was viewed and concluded that the model was deemed satisfactory despite the shortcomings the Defendants highlight. (ECF No. 569-2 at 86.) That there are some extra-record exchanges among the various scientists involved does not change any of these facts. For example, the Defendants cite a portion of the emails in which Mark Vellaux,

2

of the DNR, states that calibration of the model was "poor," but they leave out the portion indicating ways to improve it and indicating optimism about the model as a whole. (ECF No. 529-14 at 7.) Moreover, Vellaux' statement was not a final opinion about the model but merely a status update during the development process.

The rest of the emails evidence a thorough review of the problem by the DNR scientists and, if anything, underscore just how complex this entire process actually was. There is no suggestion that data are being fudged or covered up; instead, one gets the impression that this kind of decision is exactly the sort of technical, scientific decision to which courts are to defer. The scientific experts hashed out solutions to the various problems and even "harangued" each other. (*Id.* at 19.) As discussed in the Decision and Order granting the Plaintiffs' motion for summary judgment, the process was open and frank, and the limitations of the model with respect to sediment were not deemed to be a significant enough problem to hold up the calibration. Vellaux admitted that the "river model is not a perfect representation," and that subsequent analysis will "focus on those aspects of the model where performance is least strong." (*Id.* at 18.) But he believed the present model was a "good step forward" from previous efforts ands was usable for its intended purposes. (*Id.* at 19.) Snippets of private emails removed from their context in the development stage of the process do not overcome the whole picture, which shows that the key players were satisfied that the model was adequate despite the obvious challenges it faced. Their reasons for reaching that conclusion were neither arbitrary nor capricious.

In sum, although the emails are (naturally) more candid and casual in tone than the public documents, there are no "smoking guns" in the emails or other evidence now cited that suggest the result was the product of an arbitrary or capricious decision. Instead, the impression is that the

3

senders and recipients of the emails took the matter extremely seriously (the opposite of arbitrary) and engaged in extensive and deliberate efforts (the opposite of capricious). Accordingly, I conclude that there is no basis to supplement the record with any of the information or additional expert testimony the Defendants now propose. The motion for reconsideration [527] is therefore **DENIED**.

    **SO ORDERED** this   27th   day of November, 2012.

                              s/ William C. Griesbach
                              William C. Griesbach, Chief Judge
                              United States District Court