UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA and
STATE OF WISCONSIN,

        Plaintiffs,

  v.                                        Case No. 10-C-910

NCR CORP. et al.,

        Defendant.

**DECISION AND ORDER ON MOTIONS IN LIMINE**

**1. Motion to Exclude Testimony of Mark Travers [533]**

The Defendants named Mark Travers as a rebuttal expert to counter the expert testimony offered by the government's witness, Michelle Watters. The topic of testimony appears to be the dangers of PCBs to the environment and public health and involves means of abating that problem. These are largely questions of the proper remedy, a topic that has already been addressed through summary judgment. Accordingly, it appears that much this motion is now moot because the testimony which Travers would have rebutted will likely not be relevant (or will be less relevant). The government has not indicated that Watters will not testify, however, so I will reserve ruling until the scope of the testimony and rebuttal is more clear.[1]

---

[1] As I have noted already in another context, these rulings are subject to change in the event circumstances warrant revisiting the matters involved.

1

**2. Motion to Exclude Testimony of John Butler [636]**

Some Defendants have moved to exclude the testimony of NCR's expert John Butler on the grounds that his opinions are improperly based on the scientific work of others. They assert that Butler, who is not an expert in geostatistical modeling, used a geostatistical model to calculate the remediation that would have been required had NCR been the only discharger of PCBs. This model was crafted by a consulting firm whose employees are not disclosed experts in this litigation.

The Defendants argue that parties cannot incorporate scientific testimony into a case through the testimony of someone who is not an expert in that scientific field. In *Dura Automotive Sys. of Ind., Inc. v. CTS Corp.,* the Seventh Circuit held that the Supreme Court's *Daubert* test cannot be satisfied by one who is purporting to be "the mouthpiece of a scientist of a different specialty." 285 F.3d 609, 614 (7th Cir. 2002) (citing *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993)). It is common for an expert to incorporate the work of other experts into his own opinions (for example, a surgeon relying on a radiologist's opinion), but the testifying expert must limit himself to his own area of expertise. Thus, while the surgeon could use a radiologist's opinion in forming his own opinion, the surgeon could not testify about whether a radiologist committed malpractice; the substance and methods of the radiologist are outside the surgeon's area of expertise. *Id.*

In *Dura Automotive,* the proposed expert sought to testify that a facility was within the "capture zone" of a contaminated well field. Although the expert was a hydrogeologist, he admitted that he was not an expert in mathematical modeling, and the models upon which he relied for his opinion were created by other employees of his consulting firm. *Id.* at 611-612. Those employees were not disclosed as experts in a timely fashion, and thus their opinions were stricken. The Seventh Circuit found that it was obvious from the stricken affidavits that the models involved

2

Case 1:10-cv-00910-WCG    Filed 11/28/12    Page 2 of 6    Document 696

significant technical expertise—expertise that the proposed expert lacked. Because the expert was not competent to opine about the model, and because the model was crucial to his opinion, he could not testify about his conclusions either. The court noted that the underlying models involved significant amounts of professional discretion and "tinkering," and so without testimony from the model-makers themselves, the expert's opinion would have "rested on air." *Id.* at 615.

NCR argues that the assistance Butler received was more ministerial than expert. The consulting firm's employees simply used existing data and software to produce a geostatistical map. I am satisfied that the matters raised in the motion *in limine* can be raised through cross-examination and are not sufficient to warrant exclusion of an expert outright, at least at this point, which would be a drastic remedy under the circumstances. This is a bench trial, and thus danger of prejudicing the jury is not present. I may either exclude the testimony based upon a more complete record or apply any objections to the expert's testimony in deciding the proper weight to give it. The motion will therefore be denied.

**3. Motion to Exclude Undisclosed Expert Opinions of Dr. Craig Jones [641]**

Some of the Defendants object in advance to what they fear will be new testimony offered by NCR's expert, Dr. Craig Jones. During a recent deposition, Jones indicated several times that, in response to the rebuttal report, he and his team had been continuing to modify his opinions and had been running additional tests to bolster his expert opinion. The Defendants argue that it would be unfair to allow surprise expert testimony offered so long after the expert reports were filed. And even though we are on the eve of trial, they still do not know what Jones' new work and / or testimony will comprise.

Although these objections are no doubt based on real concerns, I will refrain from ruling in

3

advance that any portion of this expert's testimony should be excluded. If it becomes clear that the expert is changing his opinions in a way that prejudices the other parties, the objection may be renewed at such time. For now, however, the motion is denied.

**4. Motion as to the Admissibility of Certain Exhibits [645]**

Plaintiffs seek admission of certain exhibits in advance of trial, but it appears that the parties are continuing to work together to produce an exhibit list and explore any objections that have arisen. Accordingly, I will deny the motion as premature.

**5. Motion to Exclude Testimony Regarding John Strange Paper Mill [653]**

Menasha has moved to exclude what it describes as speculative testimony regarding its mill's use of NCR paper in its production efforts. It states that it has substantial amounts of testimony from live witnesses who will explain that the mill never used NCR broke in its production process, and in fact it would not have made sense to do so. In contrast, the experts who have suggested otherwise are relying merely on speculation and have no inside knowledge of the John Strange mill's internal operations.

Once again, I am satisfied that the objection raised goes to the weight of the evidence rather than its admissibility. If the evidence is truly "speculative," that can be the subject of cross-examination, particularly in a bench trial. NCR is correct that the relief sought essentially seeks a ruling on the merits of the issue, and I conclude that such relief would be premature. The motion will therefore be denied.

**6. Motion to Exclude Expert Testimony of Gary Kleinrichert [656]**

NCR moves to exclude the testimony of an expert proffered by other Defendants on the question of NCR's ability to pay any remediation required by the Unilateral Administrative Order.

This line of testimony is potentially relevant in the context of the granting of a permanent injunction. Although I have ruled that equitable factors do not play the same role in an enforcement proceeding as they might in a traditional equitable action, even the United States has conceded that equitable factors do play a role to the extent that enforcement of the UAO involves a permanent injunction. Accordingly, the motion to exclude Kleinrichert's testimony will be denied.

**7. Motion to Exclude the Testimony of Dr. John Wolfe [658]**

NCR and Glatfelter move to exclude the testimony of Georgia-Pacific's expert, Dr. John Wolfe. They argue that because GP has settled with the Plaintiffs (waiving all defenses and accepting full liability), it no longer has a role to play in the upcoming trial on divisibility.

Although GP may have settled with the government, the divisibility question—whether and how to divide the environmental harm— involves all of the PRPs, including GP. I am satisfied that it retains a legal interest in this action, and its proposed expert will take only two hours, which will come out of the governments' time allotment. I therefore see no reason to exclude his testimony.

**8. Motion to Strike Phase I Pre-Trial Stipulations Between the Plaintiffs and U.S. Paper [660]**

Finally, NCR has moved to strike the pre-trial stipulations between the Plaintiffs and U.S. Paper Mills Corp. In the stipulation, U.S. Paper admitted its liability under CERCLA and waived all defenses. In exchange, the governments promised to seek performance of the UAO from NCR or other parties, but not from U.S. Paper. NCR argues that this stipulation is, in effect, a settlement between the government and U.S. Paper, and, as such, a consent decree needed to be filed and formal approval procedures need to be followed.

U.S. Paper suggests that NCR's objection is much ado about nothing. The stipulation is simply a mechanism of streamlining issues prior to trial and is not a functional consent decree.

5

Importantly, the stipulation contains a clause allowing the government to seek injunctive relief against U.S. Paper in the event circumstances warrant it. In sum, the stipulation is not the kind of formal settlement that requires additional procedures, and as such it will not be stricken.

In sum, all of the motions *in limine* [636, 641, 645, 653, 656, 658, 660] are **DENIED**, with the exception that I will reserve ruling on the motion to exclude the testimony of Mark Travers [533].

**SO ORDERED** this 28th day of November, 2012.

                                               s/ William C. Griesbach
                                               William C. Griesbach
                                               United States District Judge