**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 10-C-910 |
| NCR CORPORATION, APPLETON PAPERS INC., BROWN COUNTY, CITY OF APPLETON, CITY OF GREEN BAY, CBC COATING, INC., GEORGIA-PACIFIC CONSUMER PRODUCTS LP, KIMBERLY-CLARK CORPORATION, MENASHA CORP., NEENAH-MENASHA SEWERAGE COMMISSION, NEWPAGE WISCONSIN SYSTEMS, INC., P.H. GLATFELTER CO., U.S. PAPER MILLS CORP., and WTM I COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**NCR CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION ON CERTAIN EVIDENTIARY ISSUES**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.      THE TESTIMONY OF DR. JILL SINGER SHOULD BE EXCLUDED .............. 1

      A.      Dr. Singer's Testimony About STA Is Inadmissible Because She
            Did Not Perform the Analysis Herself and Impermissibly Testified
            as to the Judgments of the Non-Testifying Consultant Who Did ................ 1

      B.      Dr. Singer's Testimony Regarding STA Is Unreliable ................................ 3

II.     THE TESTIMONY OF DR. CAMERON CONCERNING
       MR. BRAITHWAITE'S ANALYSIS SHOULD BE EXCLUDED
       BECAUSE IT WAS NOT PREVIOUSLY DISCLOSED ....................................... 5

III.    SEVERAL DEMONSTRATIVE EXHIBITS SHOULD BE ADMITTED
       AS SUBSTANTIVE EVIDENCE ........................................................................ 9

CONCLUSION ................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Daubert v. Merrell Dow Pharm., Inc.*,
　　509 U.S. 579 (1993) ................................................................................................3, 4

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*,
　　285 F.3d 609 (7th Cir. 2002) ................................................................................1, 2, 3

*Finley v. Marathon Oil Co.*,
　　75 F.3d 1225 (7th Cir. 1996) ...........................................................................................5

*Gorby v. Schneider Tank Lines Inc.*,
　　741 F.2d 1015 (7th Cir. 1984) .........................................................................................5

*Loeffel Steel Prods. v. Delta Brands, Inc.*,
　　387 F. Supp. 2d 794 (N.D. Ill. 2005) ..............................................................................2

*Tribble v. Evangelides*,
　　670 F.3d 753 (7th Cir. 2012) ......................................................................................6, 7

**Statutes & Rules**

Fed. R. Civ. P. 26 ..................................................................................................................5

Fed. R. Civ. P. 37 ..................................................................................................................5

Fed. R. Evid. 1006 ................................................................................................................9

In conjunction with its Post-Trial Brief, NCR Corporation ("NCR") respectfully submits this Memorandum of Law in Support of Its Motion on Certain Evidentiary Issues addressing three issues relating to the trial that took place from December 3 to December 19, 2012. This brief does not address those evidentiary issues and objections reserved by the parties for later briefing, as approved by the Court. (*See* Dkt. #718, Jan. 15, 2013 Text Order.)

## I. THE TESTIMONY OF DR. JILL SINGER SHOULD BE EXCLUDED

The Government proffered the testimony of Dr. Jill Singer to bolster its arguments against divisibility. But as NCR demonstrated at trial, Dr. Singer's testimony is both inadmissible and unreliable, and therefore should not be credited by the Court.

### A. Dr. Singer's Testimony About STA Is Inadmissible Because She Did Not Perform the Analysis Herself and Impermissibly Testified as to the Judgments of the Non-Testifying Consultant Who Did

Dr. Singer's opinions are all based on a "Sediment Trend Analysis" ("STA") performed entirely by Dr. Patrick McLaren. Because Dr. Singer did not perform this analysis herself, but rather testified to an analysis performed by a non-testifying consultant, her testimony is inadmissible.

In *Dura Automotive*, the Seventh Circuit clarified the extent to which one expert may testify concerning the work of another expert. *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613-15 (7th Cir. 2002). As Judge Posner explained, an expert may rely upon "gofers or data gatherers", "assistants [who] merely collect data", or assistants who "perform routine procedures". *Id*. at 613, 615. However, experts may not testify to the "discretionary expert judgments" of another expert. *Id*. at 615. Where a testifying expert "lacks the necessary expertise to determine whether the techniques were appropriately chosen and applied", or where the "study raised questions that only [the

non-testifying expert] could answer", such testimony is improper because an expert witness "is not permitted to be the mouthpiece of a scientist in a different specialty". *Id.* at 614-15. This distinction has been followed by subsequent cases within this Circuit. *See, e.g.*, *Loeffel Steel Prods. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 824 (N.D. Ill. 2005) (non-testifying experts impermissibly "provided [the testifying expert] with the very theory on which he relied and which admittedly was 'beyond his' ken.' In short, *they* were the experts, not he, and he was unable 'to testify to the veracity of their conclusions'" (quoting *Dura*, 285 F.3d at 612)).

Under *Dura* and *Loeffel*, Dr. Singer's testimony is inadmissible. STA, a complex methodology that purports to explain sediment transport patterns, was the backbone of Dr. Singer's opinions, including her conclusion that the specific origin of PCBs in OU4 cannot be determined. (Singer, Tr. 174:16-175:24.) Dr. Patrick McLaren developed and authored the seminal articles promulgating the theory of STA. (Singer, Tr. 181:25-182:9.) *Loeffel*, 387 F. Supp. 2d at 824. By contrast, Dr. Singer is not an expert in STA, nor did she conduct the STA analysis for this case. (Singer, Tr. 86:10-87:22, 122:17-21, 187:18-188:1, 191:18-22, 193:23-25.) Indeed, she was not even present when the STA analysis on which she relied at trial was actually performed. (Singer, Tr. 192:20-24.)

Instead, as Dr. Singer admitted, Dr. McLaren conducted every important step of the STA underlying her conclusions:

- Dr. McLaren created the grid of sample sites based upon his expert judgment on what he believed would generate statistically significant results (Singer, Tr. 183:6-24, 185:18-186:14), and Dr. Singer admitted that any questions about the professional judgments exercised in selecting the grid must be directed to Dr. McLaren and not to her (Singer, Tr. 186:15-187:2);

2

- Dr. McLaren ran his proprietary software code to determine the statistical relationships between the grain size distributions (Singer, Tr. 175:15-19, 177:24-178:1);

- Dr. McLaren "applied his experience with STA and his judgment to go through and map out the pathways" that Dr. Singer presented at trial (Singer, Tr. 190:2-23);

- Dr. McLaren "identif[ied] the different dynamic processes" associated with those pathways (Singer, Tr. 192:5-11); and

- Dr. McLaren "defined all th[e] transport environments" Dr. Singer referred to as the basis of her opinions (Singer, Tr. 175:20-24, 192:12-16).

Thus, Dr. McLaren was not a "gofer", a "data gatherer", or an "assistant". If anything, Dr. Singer's testimony makes clear that she was the assistant to Dr. McLaren insofar as she merely collected the samples that he actually analyzed. (Singer, Tr. 182:10-183:5.) She made "absolutely no changes" "of any kind" to his analysis. (Singer, Tr. 187:11-17, 191:18-192:19.) And as Dr. Singer admitted, she could not answer any questions about the judgments that Dr. McLaren made in performing his analysis. (Singer, Tr. 186:15-187:2, 191:4-7.) Because it was Dr. McLaren who conducted the analysis by applying his "discretionary expert judgments", he was the proper witness to testify at trial. *Dura*, 285 F.3d at 615. Dr. Singer should not be "permitted to be [Dr. McLaren's] mouthpiece" and her testimony should therefore be excluded. *Id*. at 614.

### B. Dr. Singer's Testimony Regarding STA Is Unreliable

Even if Dr. Singer were permitted to offer testimony as to Dr. McLaren's work, her testimony should not be credited because it is not based on a scientifically valid and reliable methodology. *See Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 593-94 (1993). The hallmarks of reliability under *Daubert* include whether the expert's methodology can be tested, whether it is generally accepted in the relevant scientific

3

community and whether its results are prone to error. *See id*. Dr. McLaren's STA analysis does not satisfy any of these *Daubert* factors.

*First*, Dr. McLaren's STA analysis cannot be replicated. (Singer, Tr. 188:24-189:19.) To run the STA analysis, Dr. McLaren used proprietary software code that was not provided to the other parties during discovery, even though it was requested. (Singer, Tr. 188:2-23; 10/15/2012 Email from J. Spector to V. Lavely (stating that the STA "proprietary software does not constitute 'considered data' for Dr. Singer, is not in our possession or control, and will not be produced").) Moreover, because it is proprietary, not only can the parties here not test it, *no* third party can. (Singer, Tr. 188:24-189:24.)

*Second*, STA is not a widely accepted scientific methodology. Many experts and reputable scientists, including Mr. Fox and other experts retained by the EPA, have opined that STA's results are not credible and that STA cannot be relied upon for analysis of sediment transport because it fails to account for cohesive sediment behavior. (Singer, Tr. 198:2-22, 200:12-201:23, 203:21-205:10, 206:4-10; TX 4654 (Lick, Comments on STA), TX 7779 (Hayter Memo re: STA).)

*Third*, Dr. McLaren's STA analysis did not produce reliable results. As the Government's expert, Mr. Fox, testified, the STA at this Site does not account for dynamic changes to the sediments over time; rather, it simply measures sediment as it exists at the time of sampling. (Fox, Tr. 363:12-365:1; Singer, 211:20-24.) Indeed, Dr. Singer's cross-examination revealed several possible scenarios where the samples analyzed would produce entirely different results depending on when they were collected. (Singer, Tr. 208:14-209:10.) And the Government's other experts contradicted the

4

conclusions of the STA analysis in other ways as well. (Fox, Tr. 362:17-365:1 (disagreeing with Dr. Singer's conclusion that "the fundamental processes have not changed");[1] Kern, Tr. 2471:24-2472:2 ("Q: She's got the arrows exactly opposite to what you wrote in your report about the influence in this section of the river, right? A. Yes.").) Thus, Dr. Singer's testimony is both inadmissible and unreliable.

## II. THE TESTIMONY OF DR. CAMERON CONCERNING MR. BRAITHWAITE'S ANALYSIS SHOULD BE EXCLUDED BECAUSE IT WAS NOT PREVIOUSLY DISCLOSED

The opinions of the Government's expert, Dr. Cameron, criticizing Mr. Braithwaite's PCB discharge determinations should be stricken because Dr. Cameron failed to include those opinions in his expert report and only disclosed them for the first time while on the witness stand at trial.

The expert witness discovery rules are designed to allow both sides to prepare adequately and to prevent surprise tactics from affecting the outcome of the case. *Gorby v. Schneider Tank Lines Inc.*, 741 F.2d 1015, 1019 (7th Cir. 1984). Thus, an expert must disclose "a complete statement of all opinions the witness will express and the basis and reasons for them", and timely supplement or amend these disclosures if they are incomplete. Fed. R. Civ. P. 26(a)(2)(B)(i), 26(e)(2). Rule 37(c)(1) mandates automatic exclusion of undisclosed expert testimony unless the non-disclosure was either justified or harmless. *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996). Four factors determine whether non-disclosure of expert testimony is harmless: (1) prejudice or surprise to the opposing party; (2) the ability to cure the prejudice;

---

[1] Although Mr. Fox had "a different appreciation for the sediment trends analysis" at trial than at his deposition, he stated at his deposition that he "didn't believe" the sediment pathways portrayed in Dr. Singer's report. (Fox, Tr. 359:21-25, 360:20-361:5.)

5

(3) likelihood of disruption to the trial; and (4) bad faith or willfulness in the party's failure to timely disclose. *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012). In this case, the factors mandate the exclusion of Dr. Cameron's testimony.

In an opening expert report dated September 28, 2012, Mr. Braithwaite disclosed in detail the PCB discharge analysis and determinations to which he testified at trial. (TX 4000 at 1.) Dr. Cameron never submitted a rebuttal report. Nor did Dr. Cameron disclose at his deposition any criticisms of Mr. Braithwaite's analysis. (Cameron, Tr. 2531:10-2532:13; Cameron Dep. Tr., TX 6102 at 13:1-25, 131:8-11.) In fact, Dr. Cameron admitted that he had not even read Mr. Braithwaite's analysis (*id*.) or the Government reports—Tech Memo 2d and the Amendola Report—that are key sources for Mr. Braithwaite's analysis. (Cameron, Tr. 2531:23-2532:3.) Nor did Dr. Cameron submit any supplemental report after his deposition. (Cameron, Tr. 2532:20-25.) As Dr. Cameron admitted on cross-examination, his "opinions specifically about Mr. Amendola's work and Mr. Braithwaite's work were not disclosed in any way before this morning." (Cameron, Tr. 2533:7-10.) The first *Tribble* factor—prejudice and surprise—was conclusively established by Dr. Cameron himself: NCR heard this opinion for the first time during the second-to-last day of trial. (Cameron, Tr. 2533:7-10.)

At trial, Government Counsel defended its failure to disclose Dr. Cameron's opinion of Mr. Braithwaite's work by claiming it merely reaffirmed Dr. Cameron's Opinion 6 after Mr. Braithwaite challenged Opinion 6 in a rebuttal expert report and purportedly in his testimony at trial. (Cameron, Tr. 2533:15-19.) But at Dr. Cameron's deposition, which took place nearly three weeks after Mr. Braithwaite's

6

rebuttal report was submitted, Dr. Cameron testified that he *had not even read* Mr. Braithwaite's original or rebuttal reports, and that he did not intend to offer any opinion on them at trial. (Cameron Dep. Tr., TX 6102 at 13:1-25, 131:8-11.) In fact, Dr. Cameron's Opinion 6 did not mention Mr. Braithwaite at all, and Dr. Cameron confirmed at his deposition that Opinion 6 was directed only at the opinions of Dr. Magar. (Cameron, Tr. 2531:17-19; 2353:5-6; Cameron Dep. Tr., TX 6102 at 147:2-4, 149:14-17 ("what I'm doing is I'm assessing Magar's report"), 150:3-4.) Accordingly, Mr. Braithwaite did not mention Opinion 6—or Dr. Cameron at all—in his trial testimony. (*See* Braithwaite, Tr. 690:15-917:2; TX 2194 at 13 (Expert Report of John Cameron).) Thus, the Government's claim that Dr. Cameron was merely responding to Mr. Braithwaite's trial testimony is without merit.

Had Dr. Cameron wished to respond to Mr. Braithwaite's rebuttal report, he needed to have read that report prior to his deposition, or at least submitted a supplemental report thereafter. Having failed to do either, his testimony was prejudicial to NCR and constituted unfair surprise. As the Seventh Circuit noted in *Tribble*, willful non-disclosure can prejudice the disadvantaged party by limiting the scope and depth of cross-examination. *See* 670 F.3d at 760. NCR could not probe Dr. Cameron's opinion at his deposition because he had not read Mr. Braithwaite's expert reports—and NCR's ability to thoroughly cross-examine Dr. Cameron at trial was impeded as a result.

The next two factors—ability to cure the prejudice and likelihood of disruption—also require that Cameron's testimony be excluded. Insofar as Dr. Cameron testified with only one day remaining in the trial, NCR had no meaningful opportunity to review his new opinions, consult with Mr. Braithwaite, re-depose or re-examine

7

Dr. Cameron.  Moreover, there was no feasible opportunity for NCR to cure or even limit the prejudice suffered from the Government's Rule 26 violation without disruption to trial.  Given the difficulty of recalling Mr. Braithwaite from across the country to return and testify, the prejudice simply could not have been cured, especially since the trial concluded the very next day.

The final factor—bad faith or willfulness—also supports exclusion.  The Government was fully apprised of Mr. Braithwaite's opinions by his deposition on October 23.  Given that time frame, there is simply no excuse for the Government's failure to comply with the expert disclosure rules by disclosing Dr. Cameron's new rebuttal opinion before he testified on December 18.  Indeed, other experts submitted supplemental reports in the days leading up to trial, and one as late as December 11.  (*See* TX 8335 at 1 (Revised Supplemental Rebuttal Report of Dr. Annear).)

In hindsight, it appears that Dr. Cameron's opinions were not disclosed, at least in part, because they would not withstand scrutiny.  (Cameron, Tr. 2537:17-23, 2538:2-4, 2538:11-2539:3 (Dr. Cameron has never attempted to conduct a historical mass balance study).)  But the Government cannot avoid scrutiny altogether by presenting undisclosed opinions concerning Mr. Braithwaite under the veil of bolstering an opinion expressly directed to another party's expert, Dr. Magar.  Because the Government's failure to disclose Dr. Cameron's opinions violated Rule 26 and was neither justified nor harmless, his testimony relating to Mr. Braithwaite should be excluded.

## III. SEVERAL DEMONSTRATIVE EXHIBITS SHOULD BE ADMITTED AS SUBSTANTIVE EVIDENCE

At trial, NCR offered into evidence demonstrative exhibits 5011 to 5015, which were used during Ms. O'Connell's testimony on cost issues. The Court postponed its ruling on those exhibits until this post-trial briefing. (*See* Tr. 534:17-19.) Because those exhibits summarize information from numerous detailed cost records (Tr. 533:9-11; *see* TXs 4448-49, 4451, 4465, 4537-38, 4648-50), they constitute "voluminous writings . . . that cannot be conveniently examined in court", and should be admitted under Federal Rule of Evidence 1006.

During the course of trial, several witnesses also gave testimony that was supplemented by numerical figures on demonstrative exhibits. (Tr. 1089:2-5.) To ensure the efficient presentation of the evidence, to spare the time of reading cumbersome figures into the record, and for the convenience of the Court, each was incorporated by reference into the relevant witness's testimony at trial. Accordingly, the following demonstrative exhibits should now be formally admitted in evidence: TXs 5016, 5021, 5025, 5028-30, 5044, 5046-51, 5053, 5068-70, 5091, 5092C-D, 5094-95, 5097A-B, 5098-5103, 5104B, 5123-24 and 5127, 5209, 5216.[2]

## CONCLUSION

For the reasons set forth above, NCR respectfully requests that the relief requested in this Motion on Certain Evidentiary Issues be granted.

---

[2] If any party objects to the admission of any of these exhibits, NCR will address those objections in accordance with the briefing schedule agreed to by the parties. (*See* Dkt. #718.)

9

Dated: February 4, 2013         Respectfully submitted,

NCR CORPORATION

/s/   Evan R. Chesler
*Counsel for NCR Corporation*
CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Darin P. McAtee
Yonatan Even
Worldwide Plaza, 825 Eighth Avenue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474-3700
echesler@cravath.com

SIDLEY AUSTIN LLP
Evan B. Westerfield
Eric W. Ha
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

MARTEN LAW PLLC
Linda R. Larson
Bradley M. Marten
1191 Second Avenue, Suite 2200
Seattle, Washington 98101
Phone: (206) 292-2600
Fax: (206) 292-2601