UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and <br> THE STATE OF WISCONSIN, <br><br> Plaintiffs, <br><br> v. <br><br> NCR CORPORATION, et al. <br><br> Defendants. | Civil Action No. 10-C-910 <br><br> Hon. William C. Griesbach |

### CERTIFICATION AND DECLARATION OF JAMES KILLIAN

I, James Killian, declare as follows:

**Introduction**

1. I am employed by the Wisconsin Department of Natural Resources ("WDNR") at its office in Madison, WI. I currently serve as a Sediment Remediation Specialist for the Lower Fox River and Green Bay Superfund Site (the "Site") and have been involved in matters relating to polychlorinated biphenyl ("PCB") contamination at the Site since at least 1993.

2. I am familiar with the collection of documents concerning the Site that WDNR has compiled, indexed, and maintained for the Administrative Record for the Site. I am also familiar with the regular business practices, document creation practices, and document retention practices of WDNR. I make this declaration based on personal knowledge, my review of pertinent records, and my consultations with other WDNR employees involved with the Site.

3. I make this Certification and Declaration to establish that the documents described in and appended to this Certification are: (1) "public records" within the meaning of Federal Rules of Evidence ("FRE") 803(8), 901(b)(7), and 902(4) and/or "records of regularly conducted activity" within the meaning of FRE 803(6) and FRE 902(11); (2) that the documents are authentic under FRE 901(b)(7), (8), 902(4), (11); and (3) that the documents and statements therein may therefore be offered as evidence of the truth of the matter stated at any trial or hearing in this matter or in a related proceeding under FRE 803(6) and 803(8).

**General Certifications**

4. WDNR is a "public office" within the meaning of FRE 901(b)(7), a "public office or agency" within the meaning of FRE 803(8), an "agency" of the State of Wisconsin within the meaning of FRE 902(1)(A), and a "business" or "organization" within the meaning of FRE 803(6)(B).

5. WDNR took the lead role in preparing the Remedial Investigation and Feasibility Study for the Site with funding and assistance from the U.S. Environmental Protection Agency ("EPA"). As part of that effort, WDNR compiled and maintained Administrative Record materials as required by the National Contingency Plan ("NCP") regulations, 40 C.F.R. §§ 300.800-300.825.

6. Appended to this declaration is a list of documents that were compiled in the creation of the exhibit list in the above-captioned case.

7. Each of the documents included in Appendix A was created at or near the time of the activities giving rise to the site investigation and cleanup efforts at the Site, and was created by, or from information transmitted by, someone with knowledge of those activities.

2

8. The documents referenced in this Certification and Declaration that fall within exhibit range 1-1376 were compiled by WDNR in the creation of the Administrative Record in this case. The maintenance of such documents and the generation of an administrative record based on such documents is the regular practice of WDNR when WDNR takes the lead role on response activities under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

9. The documents referenced in this Certification and Declaration that fall within exhibit range 1-1376 have been stored and maintained in a collection of indexed paper Administrative Record files maintained by WDNR staff at WDNR's office in Madison, Wisconsin and at EPA's Region 5 offices in Chicago. In 2008, Administrative Record files maintained by WDNR and other WDNR documents concerning the Site were scanned and electronic copies of the documents were produced with added page numbers using a "WDNR" numbering prefix. The documents described herein and listed in the accompanying appendices are true and correct copies regenerated from that electronic document collection. Among other things, the accompanying records document the basis for the remedy at the Site that was jointly selected by WDNR and EPA.

10. The documents listed in Appendix B are documents either filed or recorded with WDNR as required by law, or are public records of WDNR that are from WDNR offices where documents of this kind are kept.

11. The documents listed in Appendix C are true and correct copies of official records, or correct copies of documents recorded or filed with WDNR as authorized by law.

12. The documents listed in Appendix D are documents that are in a condition that creates no suspicion as to their authenticity, were in a place where, if authentic, the documents would likely be, and are at least 20 years old.

13. The documents listed in Appendix E are true and correct copies of records of acts, events, conditions, or opinions that were made at or near the time by, or with information transmitted by, people with knowledge of the acts, events, conditions, or opinions, that were prepared and kept in the course of regularly conducted activity of EPA, and making a record is a regular practice of that activity at WDNR.

14. I have no evidence that the source of, or the method or circumstances of preparation of, the originals or copies of the documents listed herein and in the accompanying appendices indicate a lack of trustworthiness.

**Specific Certifications**

15. Exhibit 2 is a true and correct copy of the Final Feasibility Study report for the Site, Appendices A through H, dated December 2002 and prepared by The RETEC Group, Inc., a contractor of WDNR. Exhibit 2 is a record of WDNR that sets out factual findings from an investigation of the Site, legally authorized by 40 C.F.R. § 300.430(e). Exhibit 2 was prepared and kept in the course of a Superfund site Feasibility Study, an activity regularly conducted by WDNR and its contractors, and making a record of the Feasibility Study is a regular practice of that activity. Exhibit 2 is a record of conditions, events, and opinions constituting a portion of the Feasibility Study, made at or near the time of the investigation from information transmitted by WDNR employees and contractors with knowledge of the investigation. Exhibit 2 was kept in the normal course of WDNR's feasibility study work at a Superfund site, a regularly conducted activity of WDNR, and was placed in the Administrative Record for the Site in the

4

normal course of WDNR's work at the Site. It is the regular practice of WDNR and its contractors to create a record of the findings of the feasibility study in a formal Final Feasibility Study report when WDNR has assumed the lead role in performing the feasibility study, pursuant to 40 C.F.R. § 300.430(e).

16. Exhibit 3 is a true and correct copy of the Remedial Investigation Report for the Site, dated December 2002 and prepared by The RETEC Group, Inc., a contractor of WDNR. Exhibit 3 is a record of WDNR that sets out factual findings from an investigation of the Site, legally authorized by 40 C.F.R. § 300.430(d). Exhibit 3 was kept in the course of a Superfund site Remedial Investigation, an activity regularly conducted by WDNR and its contractors, and making a record of the Remedial Investigation is a regular practice of that activity. Exhibit 3 is a record of conditions, events, and opinions constituting the Remedial Investigation, made at or near the time of the investigation from information transmitted by WDNR employees and contractors with knowledge of the investigation. Exhibit 3 was prepared and kept in the normal course of WDNR's remedial investigation work at a Superfund site, a regularly conducted activity of WDNR, and was placed in the Administrative Record for the Site in the normal course of WDNR's work at the Site. It is the regular practice of WDNR and its contractors to create a record of the findings of the remedial investigation in a formal Remedial Investigation report when WDNR has assumed the lead role in performing the remedial investigation, pursuant to 40 C.F.R. § 300.430(d).

17. Exhibit 5 is a true and correct copy of the Final Baseline Human Health and Ecological Risk Assessment for the Site dated December 2002 and prepared on behalf of WDNR by The RETEC Group, Inc., a contractor of WDNR. Exhibit 5 is a record of WDNR that sets forth the factual findings of the human health and ecological risk assessment conducted the Site

by WDNR and its contractors as part of the Remedial Investigation, pursuant to 40 C.F.R. § 300.430(d)(1). Exhibit 5 was prepared and kept in the course of a human health and ecological risk assessment for a Superfund site, an activity regularly conducted by WDNR and its contractors, and making a record of the human health and ecological assessment through a formal Baseline Human Health and Ecological Risk Assessment is a regular practice of that activity. Exhibit 5 is a record of conditions, events, and opinions constituting the human health and ecological risk assessment for the Site, made at or near the time of the assessment from information transmitted by WDNR employees and contractors with knowledge of the assessment. Exhibit 5 was kept in the normal course of WDNR's remedial investigation work at a Superfund site, a regularly conducted activity of WDNR, and was placed in the Administrative Record for the Site in the normal course of WDNR's work at the Site. It is the regular practice of WDNR and its contractors to create a record of the final baseline human health and ecological assessment when WDNR has assumed the lead role in performing the remedial investigation, pursuant to 40 C.F.R. § 300.430(d)(1).

18. Exhibit 9 is a true and correct copy of the Record of Decision ("ROD") for Operable Units ("OUs") 1-2 at the Site, dated December 2002 and prepared by WDNR and EPA. Exhibit 9925 is a duplicate copy of that ROD without its associated Responsiveness Summary and White Papers. Exhibit 9 is a record of WDNR that applies the information from the Site investigations to analyze and document WDNR's and EPA's findings that the remedy selected for OUs 1-2 at the Site meets the criteria required by CERCLA and the NCP, including 40 C.F.R. § 300.430(a)(1)(i). Exhibit 9 was kept in the course of a remedy selection process for a Superfund site, an activity regularly conducted by WDNR and its contractors, and making a record of the remedial decision through a formal ROD is a regular practice of that activity.

Exhibit 9 is a record of conditions, events, and opinions constituting the ROD for OUs 1-2 at the Site, made near the time of the decision from information transmitted by WDNR and EPA employees and contractors with knowledge of the decision. Exhibit 9 was kept in the normal course of WDNR's involvement in the remedy selection work at a Superfund site, a regularly conducted activity of WDNR, and was placed in the Administrative Record for the Site in the normal course of WDNR's work at the Site. It is the regular practice of WDNR to maintain a copy of a ROD that WDNR has helped prepare to document the remedy selection process and decision for a Superfund site through a ROD, pursuant to 40 C.F.R. § 300.430(f)(5).

19.  Exhibit 51 is a true and correct copy of the WDNR/EPA Fall 1989 Predator Fish PCB Sampling Summary of Results, Raw Data, and QA/QC, retrieved on April 22, 1991. Exhibit 51 is referenced as an underlying source in Exhibit 460 (EPA's Hazard Ranking System Report), and is a record of WDNR that sets forth factual findings (sampling data) from predatory fish sampling conducted by WDNR and EPA in the Fox River and Green Bay as part of the Green Bay Mass Balance Study, a legally authorized investigation. Exhibit 51 is a record of acts and events, fish sampling, made near the time of the sampling by WDNR and EPA employees with knowledge of the investigation. Exhibit 51 was kept in the course of environmental sampling activities, a regularly conducted activity of WDNR, and making a record of the sampling is a regular practice of that activity. The fish sampling data was stored in an electronic database, and Exhibit 51 is a computer generated database record that was placed in the Administrative Record for the Site as authorized by law. Exhibit 51 is a true and correct copy of a document that is over 20 years old and was maintained by WDNR in accordance with its legal and document retention obligations.

20. Exhibit 52 is a true and correct copy of the WDNR/EPA 1989 Predator Fish PCB Fillet Sampling, Summary of Results, Raw Data, and QA/QC, retrieved on April 2, 1993. Exhibit 52 is referenced as an underlying source in Exhibit 460 (EPA's Hazard Ranking System Report), and is a record of WDNR that sets forth factual findings (sampling data) from predatory fish sampling conducted by WDNR and EPA in the Fox River and Green Bay as part of the Green Bay Mass Balance Study, a legally authorized investigation. Exhibit 52 is a record of acts and events, fish sampling, made near the time of the sampling by WDNR and EPA employees with knowledge of the sampling. Exhibit 52 was kept in the course of environmental sampling activities, a regularly conducted activity of WDNR, and making a record of the sampling is a regular practice of that activity. The fish sampling data was stored in an electronic database, and Exhibit 52 is a computer generated database record that was placed in the Administrative Record for the Site as authorized by law.

21. Exhibit 274 is a true and correct copy of a computer generated record of WDNR's Automated License Issuance System ("ALIS") showing total WDNR hunting and fishing license approvals by county, documenting sales as of December 14, 2000, for years 1999 and 2000. Exhibit 274 is a record of WDNR that sets forth factual information (license issuances) that WDNR is legally obligated to track and maintain. Exhibit 274 is also a record of events, issuances of fishing and hunting licenses, generated from records made at the time the licenses were issued from information stored in ALIS, and making records of hunting and fishing license issuances is a regular practice of WDNR. Exhibit 274 is the compilation of records kept in the normal course of WDNR's issuance of hunting and fishing licenses and was generated in support of WDNR's assessment of the Site, both regularly conducted activities of WDNR, and was

8

placed in the Administrative Record for the Site in the normal course of WDNR's work regarding the Site.

22.     Exhibit 279 is a true and correct copy of the Baseline Human Health and Ecological Risk Assessment for the Site dated February 24, 1999, and prepared on behalf of WDNR by ThermoRetec Consulting Corporation, a contractor of WDNR. Exhibit 279 is a record of WDNR that sets forth the factual findings of the human health and ecological risk assessment conducted at the Site by WDNR and its contractors as part of the Remedial Investigation, pursuant to 40 C.F.R. § 300.430(d)(1). Exhibit 279 was prepared and kept in the course of a human health and ecological risk assessment for a Superfund site, an activity regularly conducted by WDNR and its contractors, and making a record of the human health and ecological assessment through a formal Baseline Human Health and Ecological Risk Assessment is a regular practice of that activity. Exhibit 279 is a record of conditions, events, and opinions constituting the human health and ecological risk assessment for the Site, made at or near the time of the assessment from information transmitted by WDNR employees and contractors with knowledge of the assessment. Exhibit 279 was kept in the normal course of WDNR's remedial investigation work at a Superfund site, a regularly conducted activity of WDNR, and was placed in the Administrative Record for the Site in the normal course of WDNR's work at the Site. It is the regular practice of WDNR and its contractors to create a record of the baseline human health and ecological assessment when WDNR has assumed the lead role in performing the remedial investigation, pursuant to 40 C.F.R. § 300.430(d)(1).

23.     Exhibit 322 is a true and correct copy of the ROD for Operable Units 3-5 at the Site, dated June 2003 and prepared by WDNR and EPA. Exhibit 322 is a WDNR record that applies the information from the Site investigations to analyze and document WDNR's and

9

Case 1:10-cv-00910-WCG    Filed 03/12/13    Page 9 of 20    Document 779

EPA's findings that the remedy selected for OUs 3-5 at the Site will meet the criteria required by CERCLA and the NCP, including 40 C.F.R. § 300.430(a)(1)(i). Exhibit 322 was kept in the course of a remedy selection process for a Superfund site, an activity regularly conducted by WDNR, and making a record of the remedial decision through a formal ROD is a regular practice of that activity. Exhibit 322 is a record of conditions, events, and opinions constituting the ROD for OUs 3-5 at the Site, made at or near the time of the decision from information transmitted by WDNR and EPA employees with knowledge of the decision. Exhibit 322 was kept in the normal course of WDNR's involvement in the remedy selection work at a Superfund site, a regularly conducted activity of WDNR, and was placed in the Site's Administrative Record in the normal course of WDNR's work at the Site. It is the regular practice of WDNR to maintain a copy of a ROD that WDNR has helped prepare to document the remedy selection process and decision for a Superfund site through a ROD, pursuant to 40 C.F.R. § 300.430(f)(5).

24. Exhibit 1156 is a true and correct copy of the report entitled "Arrowhead Park Landfill Evaluation" prepared by Environmental Resources Management on behalf of the P.H. Glatfelter Company, dated April 1999. As documented in Exhibit 1025, a letter from C.L. Missimer, Corporate Environmental Director for Glatfelter to Mark Velleux of WDNR dated April 19, 1999, Glatfelter requested that the "Arrowhead Park Landfill Evaluation" attached to the letter, which is the same evaluation as Exhibit 1156, be placed in the Administrative Record for the Site. Exhibit 1156 is a true and correct copy of the "Arrowhead Park Landfill Evaluation" that was filed with WDNR and placed in the Administrative Record for the Site as authorized by law.

25. Exhibit 2315 is a true and correct copy of the report entitled "Distribution and Transport of Polychlorinated Biphenyls in Little Lake Butte des Morts, Fox River, Wisconsin,

10

April 1987-October 1988," prepared by the U.S. Geological Survey ("USGS") in cooperation with WDNR and dated 1995. Exhibit 409, which is a near duplicate of Exhibit 2315, is a version of the same document from WDNR's files that is missing page 39 and two pages from the Appendix, but is otherwise a true and correct copy of the same document. Exhibits 409 and 2315 are records of WDNR and USGS that set forth the factual findings of the legally authorized investigation into the distribution and transport of PCBs in Little Lake Butte des Morts. Exhibits 409 and 2315 are also records of conditions and opinions that constitute the investigation, made near the time of the investigation, by information transmitted by USGS and WDNR employees with knowledge of the investigation. Exhibits 409 and 2315 were kept in the course of USGS and WDNR's scientific study, a regularly conducted activity of USGS and WDNR, and making a record of such a scientific study is the regular practice of such activity. Exhibit 409 was filed with WDNR and placed in the Administrative Record for the Site as authorized by law, subsequently transferred into EPA's document management system for Superfund sites and sent to the U.S. Department of Justice, where it was bates stamped as part of the document collection efforts in discovery on the above-captioned case.

26. Exhibit 414 is a true and correct copy of the WDNR Fish/Sediment Contaminants System Database Printout of PCB in Fish from the Lower Fox River and Green Bay, retrieved on October 26, 1995. Exhibit 414 is referenced as an underlying source in Exhibit 460 (EPA's Hazard Ranking System Report), and is a record of WDNR that sets out factual findings regarding contaminants in fish tissue samples from WDNR's legally authorized investigation into PCBs in the Lower Fox River and Green Bay. Exhibit 414 is a record of events and conditions, fish sampling and results, made near the time of the investigation by WDNR employees with knowledge of the investigation. Exhibit 414 was kept in the course of WDNR

environmental sampling, a regular activity of WDNR, and an activity for which WDNR regularly makes records. Exhibit 414 was filed with WDNR and placed into the Administrative Record for the Site as authorized by law.

27. Exhibit 416 is a true and correct copy of the WDNR/EPA Spring 1989 Predator Fish PCB Sampling, Summary of Results, Raw Data, and QA/QC, retrieved on April 19, 1991. Exhibit 416 is referenced as an underlying source in Exhibit 460 (EPA's Hazard Ranking System Report), and is a record of WDNR that sets forth factual findings (sampling data) from predatory fish sampling conducted by WDNR and EPA in the Fox River and Green Bay as part of the Green Bay Mass Balance Study, a legally authorized investigation. Exhibit 416 is a record of events and conditions, fish sampling and results, made near the time of the investigation by WDNR and EPA employees with knowledge of the investigation. Exhibit 416 was kept in the course of environmental sampling activities, a regularly conducted activity of WDNR for which records are regularly made. The fish sampling data was stored in an electronic database and Exhibit 416 is a computer generated database record that was placed in the Administrative Record for the Site as authorized by law. Exhibit 416 also was uploaded into EPA's document management system for Superfund sites and sent to the U.S. Department of Justice where it was bates stamped as part of the document collection efforts in discovery on the above-captioned case. Exhibit 416 is a true and correct copy of a document that is over 20 years old and was maintained by WDNR in accordance with its legal and document retention obligations.

28. Exhibit 547 is a true and correct copy of Technical Memorandum 2g: Quantification of Lower Fox River Sediment Bed Elevation Dynamics through Direct Observations, prepared by WDNR and dated July 23, 1999 ("Technical Memorandum 2g"). Exhibit 547 also includes a cover sheet added by EPA. Exhibits 6341 and 9946 are duplicate

versions of Technical Memorandum 2g with a different cover sheet. Technical Memorandum 2g also is contained within the December 2002 Final Model Documentation Report for the Lower Fox River and Green Bay, Wisconsin, which is Exhibit 7 and is in the Administrative Record for the Site. Exhibit 547 is a record of WDNR that sets forth the factual findings of a WDNR investigation into the quantification of spatial and temporal dynamics of elevation changes in the Lower Fox River sediment bed as part of the Remedial Investigation and Feasibility Study for the Site. I was personally involved in the creation of Technical Memorandum 2g. Exhibit 547 is a record of an act, WDNR's study and quantification of spatial and temporal dynamics of elevation changes in the sediment bed of the Lower Fox River, made near the time of the study by WDNR employees with knowledge of the study, including myself. Exhibit 547 was kept in the course of WDNR's study of a Superfund site, a regularly conducted activity of WDNR for which WDNR regularly creates such technical memoranda. Exhibit 547 was filed with WDNR and placed into the Administrative Record for the Site as authorized by law, subsequently transferred into EPA's document management system for Superfund sites, and later bates stamped.

29. Exhibit 6519 is a true and correct copy of Technical Memorandum 2d: Compilation and Estimation of Historical Discharges of Total Suspended Solids and Polychlorinated Biphenyls from Lower Fox River Point Sources, prepared by WDNR and dated February 23, 1999 ("Technical Memorandum 2d"). Exhibit 6519 also includes a "Note to Reader" cover sheet and a transmittal letter for the report. Exhibits 2127, 9849, and 9924 are duplicate or near duplicate versions of Technical Memorandum 2d which do not differ materially from Exhibit 6519. Technical Memorandum 2d also is contained within the December 2002 Final Model Documentation Report for the Lower Fox River and Green Bay, Wisconsin, which

13

is Exhibit 7 and is part of the Administrative Record for the Site. Exhibit 6519 is a record of WDNR that sets forth the factual findings of a WDNR investigation into historical discharges of total suspended solids and PCBs from Lower Fox River point sources as part of the Remedial Investigation and Feasibility Study for the Site. Exhibit 6519 is a record of an act, WDNR investigation into historical discharges of total suspended solids and PCBs from Lower Fox River point sources, made near the time of the study by WDNR employees with knowledge of the study. Exhibit 6519 was kept in the course of WDNR's study of a Superfund site, a regularly conducted activity of WDNR for which WDNR regularly creates such technical memoranda. A copy of Technical Memorandum 2d was filed with WDNR and placed into the Administrative Record for the Site as part of the December 2002 Final Model Documentation Report, as authorized by law.

30. Exhibit 660 is a true and correct copy of the report prepared by WDNR entitled "Creel Survey of the Wisconsin Waters of Lake Michigan." Exhibit 660 is a record of WDNR that sets forth the factual findings of its legally authorized investigation of fishing habits in Green Bay and Lake Michigan. Exhibit 660 is a record of conditions, fishing habits, that was made near the time of the investigation by WDNR employees with knowledge of the investigation. Exhibit 660 was kept in the course of WDNR's investigation, a regularly conducted activity of WDNR, and it is WDNR's regular practice to make reports of such investigations. Exhibit 660 was filed with WDNR and placed into the Administrative Record for the Site as authorized by law, subsequently transferred into EPA's document management system for Superfund sites, and later bates stamped.

Pursuant to 28 U.S.C. § 1746, I certify and declare under penalty of perjury that the foregoing is true and correct.

Executed on: March  11 , 2013

                                                                                         JAMES KILLIAN

# APPENDIX A

Documents that were created at or near the time of the activities giving rise to the site investigation and cleanup efforts at the Site, and were created by, or from information transmitted by, someone with knowledge of those activities:

1. Exhibit 2;
2. Exhibit 3;
3. Exhibit 5;
4. Exhibit 9;
5. Exhibit 51;
6. Exhibit 52;
7. Exhibit 274;
8. Exhibit 279;
9. Exhibit 322;
10. Exhibit 409;
11. Exhibit 414;
12. Exhibit 416;
13. Exhibit 547;
14. Exhibit 660.

## APPENDIX B

Documents either filed or recorded with WDNR as required by law, or are public records of WDNR that are from WDNR offices where documents of this kind are kept:

1. Exhibit 2;
2. Exhibit 3;
3. Exhibit 5;
4. Exhibit 9;
5. Exhibit 51;
6. Exhibit 52;
7. Exhibit 274;
8. Exhibit 279;
9. Exhibit 322;
10. Exhibit 1156;
11. Exhibit 409;
12. Exhibit 414;
13. Exhibit 416;
14. Exhibit 547;
15. Exhibit 660.

## APPENDIX C

Documents that are true and correct copies of official records, or copies of documents that were recorded or filed with WDNR as authorized by law:

1. Exhibit 2;
2. Exhibit 3;
3. Exhibit 5;
4. Exhibit 9;
5. Exhibit 51;
6. Exhibit 52;
7. Exhibit 274;
8. Exhibit 279;
9. Exhibit 322;
10. Exhibit 1156;
11. Exhibit 414;
12. Exhibit 416;
13. Exhibit 547;
14. Exhibit 660.

## APPENDIX D

Documents that are in a condition that creates no suspicion as to their authenticity, were in a place where, if authentic, the documents would likely be, and are at least 20 years old:

1. Exhibit 51;
2. Exhibit 416.

**APPENDIX E**

Documents that are true and correct copies of records of acts, events, conditions, or opinions that were made at or near the time by, or with information transmitted by, people with knowledge of the acts, events, conditions, or opinions, that were prepared and kept in the course of the regularly conducted activity of WDNR, and making a record is a regular practice of that activity:

1. Exhibit 2;
2. Exhibit 3;
3. Exhibit 5;
4. Exhibit 9;
5. Exhibit 51;
6. Exhibit 52;
7. Exhibit 274;
8. Exhibit 279;
9. Exhibit 322;
10. Exhibit 414;
11. Exhibit 416;
12. Exhibit 547;
13. Exhibit 660.