UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN<br><br>　　　　Plaintiffs,<br><br>　　　　　v.<br><br>NCR CORPORATION, *et al.*<br><br>　　　　Defendants. | Civil Action No. 10-C-910<br><br>The Honorable William C. Griesbach |

**PLAINTIFFS' RESPONSE TO NCR CORPORATION'S AND THE CERTAIN DEFENDANTS' OBJECTIONS TO THE ADMISSION OF CERTAIN TRIAL EXHIBITS**

**Table of Contents**

I.  The Key Administrative Record Exhibits Are Admissible ................................................... 1

II. Remaining Issues Concerning Other Exhibits ................................................................ 10

 A.  The Certain Defendants Misstate the Plaintiffs' Position
   Regarding Evidence that is Offered for Impeachment Purposes ........................... 10

 B.  Exhibit 2349 is an Admission of a Party Opponent and
   Admissible for Impeachment Purposes ................................................................. 11

 C.  Exhibit 2285 is Admissible for Impeachment and Notice Purposes ...................... 11

 D.  The Certain Defendants Waived their Authenticity Objections to
   Many Exhibits ........................................................................................................ 11

Conclusion ................................................................................................................................ 13

# I. The Key Administrative Record Exhibits Are Admissible

In contrast to the Plaintiffs' clear statements at trial that the Administrative Record exhibits were admitted for all purposes, NCR and the Certain Defendants do not explain why they never expressed disagreement during trial.[1] This omission is telling. It can only be that a strategic decision has been made to complicate the post-trial briefing.[2] While the Plaintiffs maintain that the Administrative Record exhibits are admissible for all purposes, as shown in our prior brief (Dkt. 761 at 4-10), we have focused our arguments here on the most relevant Administrative Record exhibits. The Defendants continue to press baseless objections to some of those exhibits.

Even if a document-by-document assessment of the Administrative Record exhibits is required at the post-trial stage, as the Defendants contend, the key Administrative Record exhibits are admissible.

First, all of the following Administrative Record exhibits are admitted by stipulation because they were cited by Plaintiffs with no objections by Defendants.[3]

---

[1] NCR continues to assert that it did disagree during trial, but the record demonstrates otherwise. *See* Tr. 869.

[2] The Certain Defendants' argument that the Parties could not have agreed to allow the admission of the Administrative Record exhibits because it would alter the terms of the Order re: Pretrial and Trial Procedures is a red herring. The Order re: Pretrial and Trial Procedures merely preserved the Parties' right to object and, if no objection was asserted, the Administrative Record would be admitted for all purposes. Dkt. 610 at 7-8; Dkt. 761 at 7-8. The Parties could (and did) agree to forgo raising additional objections during trial to Administrative Record exhibits and they would have been admitted for all purposes since there was no objection. Such an arrangement is entirely consistent with the Order re: Pretrial and Trial Procedures (Dkt. 610). In fact, Courts have enforced agreements to waive hearsay objections. *See United States v. Mezzanatto*, 513 U.S. 196, 202 (1995).

[3] While the Parties agreed to disagree after trial about whether *all* Administrative Record exhibits were admitted for all purposes, all agreed that any Administrative Record exhibit cited in a post-trial submission would be admitted by stipulation unless an objection was raised and substantiated in this round of post-trial evidentiary briefing. *See* Order re: Pretrial and Trial Procedures, Dkt. 610 at 7-8; Stipulation and Proposed Order Regarding Exhibits for the December 2012 Trial, Dkt. 718 at 2; Order Approving Stipulation, *United States v. NCR Corp.*, No. 10-cv-910 (E.D. Wis. Jan. 15, 2013).

1

| Administrative Record Exhibits That Have Been Admitted Into Evidence For All Purposes Without Objection | | |
|---|---|---|
| **Exhibit Number** | **Description** | **Citation by Plaintiffs** |
| 7 | Final Model Documentation Report – Lower Fox River and Green Bay, Wisconsin, Remedial Investigation and Feasibility Study, Volume 2 | Dkt. 738 at 54, 55, 56, 76.[4] |
| 288 | Protocol for a Uniform Great Lakes Sport Fish Consumption Advisory | Dkt. 756 at 37.[5] |
| 364 | Investigation of Chlorinated and Nonchlorinated Compounds in the Lower Fox River Watershed; EPA-905/3-78-004 | Dkt. 756 at 6, 7. |
| 382 | Lower Fox River and Green Bay Harbor PCB Sediment Sampling Data; WDNR, June 1988 (near duplicate of Exhibit 597) | Dkt. 756 at 7. |
| 409 | Distribution and Transportation of Polychlorinated Biphenyls in Little Lake Butte Des Morts, Fox River, Wisconsin, April 1987 - October 1988 | Dkt. 756 at 6, 7. |
| 460 | Hazard Ranking System Report for Fox River NRDA PCB Releases, Winnebago, Oconto, and Brown Counties, Wisconsin | Dkt. 756 at 36. |
| 597 | Lower Fox River and Green Bay Harbor PCB Sediment Sampling Data; WDNR, June 1988 (near duplicate of Exhibit 382) | Dkt. 756 at 6. |
| 751 | Final Basis of Design Report for the Lower Fox River and Green Bay Site, Volumes 1 and 2 | Dkt. 738 at 43, 77; Dkt. 756 at 18. |

---

[4] Exhibit 7, the Model Documentation Report, contains copies of various modeling reports prepared as part of the remedial investigation and feasibility study ("RI/FS") process, including copies of Technical Memorandum 2d and Technical Memorandum 2g. Because the Model Documentation report has been admitted without objection by stipulation, the Defendants' objections to separate versions of Technical Memorandum 2d and Technical Memorandum 2g are groundless and moot. *See* Dkt. 751 at 15 (Certain Defendants' objection to Exhibits 2127 and 9924 (Technical Memorandum 2d)); Dkt. 751 at 19 (Certain Defendants' objection to Exhibit 547 (Technical Memorandum 2g)). Moreover, separate versions of Technical Memorandum 2g have already been stipulated into evidence as Exhibits 6341 and 9946. Dkt. 716 at 111, 210. And the Certain Defendants themselves have cited to other versions of Technical Memorandum 2d, despite their stated objections. *See* Dkt. 769 at 41 (citing the version marked as Exhibit 9849); Dkt 739 at 5 (citing the version marked as Exhibit 6519).

[5] While Plaintiffs cited to Exhibit 289, the associated text identified the document by name as the "Protocol for a Uniform Great Lakes Sport Fish Consumption Advisory," which is properly labeled Exhibit 288. Dkt. 756 at 37.

| | | |
|---|---|---|
| 771 | Criteria Analysis Memorandum for Operable Unit 2, Operable Unit 3, Operable Unit 4 and Operable Unit 5 (River Mouth) at the Lower Fox River and Green Bay Superfund Site | Dkt. 738 at 32, 88. |
| 1025 | Arrowhead Park Landfill Evaluation report; Environmental Resources Management, April 1999 (near duplicate of Exhibits 1156 and 2349) | Dkt. 756 at 17. |
| 1063 | Consent Decree with P.H. Glatfelter and WTM I for Remedial Action at OU 1 of the Lower Fox River and Green Bay Site | Dkt. 756 at 33. |
| 1115 | Agreed Supplement to OU 1 Consent Decree with P.H. Glatfelter and WTM I | Dkt. 756 at 33. |
| 1126 | Second Agreed Supplement to OU 1 Consent Decree with P.H. Glatfelter and WTM I | Dkt. 756 at 33. |
| 1130 | Record of Decision Amendment: Operable Unit 1, Lower Fox River and Green Bay Superfund Site | Dkt. 738 at 8, 50, 51, 88. |
| 1131 | Amended Consent Decree with P.H. Glatfelter and WTM I | Dkt. 756 at 33. |
| 1145 | Record of Decision – Lower Fox River & Green Bay Operable Unit 1 & Operable Unit 2 - Volume 2 (White Papers & Administrative Record Index) | Dkt. 756 at 7. |

Second, the following Administrative Record exhibits were offered by Plaintiffs for impeachment and notice purposes only. Thus, the Court does not need to rule on their admissibility for other purposes:

| Administrative Record Documents Offered for Impeachment and Notice Purposes Only | | |
|---|---|---|
| **Exhibit Number** | **Description** | **Offered to Impeach** |
| 294 | Transmittal letter for "Preliminary Estimate of PCB Discharges to the Fox River – 1954 to 1985" with accompanying copy of referenced May 2000 report by Amendola Engineering | Braithwaite. *See* Dkt. 738 at 36-38, 55, 56, 57. |
| 295 | Transmittal letter for "Preliminary Estimate of PCB Discharges to the Fox River – 1954 to 1985" (without copy of referenced report) | Braithwaite. *See* Dkt. 738 at 36, 55. |
| 296 | Transmittal letter for "Preliminary Estimate of PCB Discharges to the Fox River – 1954 to 1985" (without copy of referenced report) | Braithwaite. *See* Dkt. 738 at 36, 55. |
| 297 | Transmittal letter for "Preliminary Estimate of PCB Discharges to the Fox River – 1954 to 1985" (without copy of referenced report) | Braithwaite. *See* Dkt. 738 at 36, 55. |

| 298 | Transmittal letter for "Preliminary Estimate of PCB Discharges to the Fox River – 1954 to 1985" (without copy of referenced report) | Braithwaite. See Dkt. 738 at 36, 55. |
|---|---|---|
| 299 | Transmittal letter for "Preliminary Estimate of PCB Discharges to the Fox River – 1954 to 1985" (without copy of referenced report) | Braithwaite. See Dkt. 738 at 36, 55. |
| 300 | Transmittal letter for "Preliminary Estimate of PCB Discharges to the Fox River – 1954 to 1985" (without copy of referenced report) | Braithwaite. See Dkt. 738 at 36, 55. |
| 301 | Transmittal letter for "Preliminary Estimate of PCB Discharges to the Fox River – 1954 to 1985" (without copy of referenced report) | Braithwaite. See Dkt. 738 at 36, 55. |
| 302 | Transmittal letter for "Preliminary Estimate of PCB Discharges to the Fox River – 1954 to 1985" (without copy of referenced report) | Braithwaite. See Dkt. 738 at 36, 55. |
| 303 | Transmittal letter for "Preliminary Estimate of PCB Discharges to the Fox River – 1954 to 1985" (without copy of referenced report) | Braithwaite. See Dkt. 738 at 36, 55. |
| 1308 | Riverside Paper Response to Request for Information under CERCLA Section 104(e) | Braithwaite. See Dkt. 756 at 16-17.[6] |

Third, the Plaintiffs seek the admission of the following exhibits over the Defendants' baseless hearsay and authenticity objections for the reasons argued here and in Plaintiffs' Response to NCR Corporation's and the Certain Defendants' Objections to the Admission of Certain Trial Exhibits (Dkt. 761).

---

[6] NCR has objected to Exhibit 1308 although NCR acknowledges that Plaintiffs have offered it to impeach the credibility of Mr. Braithwaite's PCB discharge assessment. *See* Ex. 1308; Dkt. 774 at 3. More specifically, he was aware of that document and other documents indicating that CBC/Riverside only recycled NCR Paper broke in 1970 and 1971, but he made contrary assumptions for his own assessment. Dkt. 774 at 3; Dkt. 756 at 16. Exhibit 1308 is clearly admissible for this impeachment purpose and for the fact that Mr. Braithwaite was aware of information that contradicted his analysis but chose to ignore it. *See Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 468 (7th Cir. 2008) (proof of notice is a non-hearsay purpose); *Cook v. Navistar Intern. Transp. Corp.*, 940 F.2d 207, 213 (7th Cir. 1991) (accord). Ironically, NCR itself has argued for admission of the 2000 Amendola report, which contains the same information about CBC/Riverside's use of NCR Paper broke and cites to Exhibit 1308 as the underlying source of that information. *See* Exhibit 4329 at 4 (referencing "104(e) response letter; Bates at 482963-482970 (07/29/98)); Ex. 1308 (July 29, 1998 Letter in response to an information request with Bates numbers 482963-482970). Thus, Exhibits 1308 and 4329 both demonstrate that Mr. Braithwaite inflated the mass of PCBs attributable to CBC/Riverside by assuming with no supporting justification that CBC/Riverside took broke for longer than suggested by the documents he supposedly considered. Dkt. 756 at 16-17.

| Administrative Record Exhibits that Are Admissible Over the Defendants' Objections ||| 
|---|---|---|
| **Exhibit Number** | **Description** | **Hearsay Exception** |
| 2 | Final Feasibility Study – Lower Fox River and Green Bay, Wisconsin, Remedial Investigation and Feasibility Study, Volume 2 Appendices A through H | Public Document and Business Record. Dkt. 761 at 14-18. |
| 3 | Final Remedial Investigation Report – Lower Fox River and Green Bay, Wisconsin | Public Document and Business Record. Dkt. 761 at 14-18. |
| 5 | Final Baseline Human Health and Ecological Risk Assessment – Lower Fox River and Green Bay, Wisconsin, Remedial Investigation and Feasibility Study, Volume 1 - Sections 1 through 8, December 2002 | Public Document and Business Record. *See infra*. |
| 9 | Record of Decision for Operable Units 1 and 2, Lower Fox River and Green Bay, Wisconsin; Consists of Responsiveness Summary, Administrative Record Index and White Papers, December 2002 | Public Document and Business Record. Dkt. 761 at 14-18.[7] |
| 51 | Hazard Ranking System Report Reference 39d – 1991 report of Fall 1989 Predator Fish Sampling, Summary of Results, Raw Data and QA/QC | Ancient Document and Business Record. Dkt. 761 at 31-32. |
| 52 | Hazard Ranking System Report Reference 39e – 1993 report of 1989 Predator Fish PCB Fillet Sampling, Summary of Results, Raw Data and QA/QC | Public Document and Business Record.[8] |
| 274 | Automated License Issuance System (ALIS) County Approval Totals Report 1999 License Year, Sales as of 12-14-2000 | Ancient Document and Business Record. Dkt. 761 at 31-32. |
| 279 | Baseline Human Health and Ecological Risk Assessment: Lower Fox River, Wisconsin, February 1999 | Public Document and Business Record. Dkt. 761 at 14-18. |

---

[7] NCR's objection to the cited portions of Exhibit 9 – the Administrative Record version of the 2002 ROD – is baseless and moot. Another version of the cited portions of the 2002 ROD has already been admitted by stipulation as Exhibit 9925. Dkt. 716 at 209.

[8] Exhibit 52 sets forth the factual findings of fish sampling conducted by EPA and WDNR (public agencies) as part of the Green Bay Mass Balance Study, a legally authorized investigation. Therefore, Exhibit 52 fits with the public records exception to the hearsay rule. Fed. R. Evid. 803(8). Further, Exhibit 51 is a record of acts, and events made near the time of sampling by WDNR and EPA employees with knowledge of the investigation. Exhibit 52 was kept in the course of WDNR's regular fish sampling activities and was incorporated into the Administrative Record. Therefore, Exhibit 52 is also admissible under the business records exception to the hearsay rule. Fed. R. Evid. 803(6).

| 322 | Record of Decision for Operable Unit 3, Operable Unit 4, and Operable Unit 5, Lower Fox River and Green Bay, Wisconsin; Attachments: Responsiveness Summary & White Papers, June 2003 | Public Document and Business Record. Dkt. 761 at 14-18. |
|---|---|---|
| 414 | PCB in Fish from the Lower Fox River and Green Bay | Ancient Document and Business Record. Dkt. 761 at 31-32. |
| 416 | Predator Fish Data Summary for Spring 1989 | Ancient Document and Business Record. Dkt. 761 at 31-32. |
| 421 | Important Health Information for People Eating Fish from Wisconsin Waters | Ancient Document and Business Record. Dkt. 761 at 31-32. |
| 547 | Model Evaluation Technical Memorandum 2g: Quantification of Lower River Sediment Bed Elevation | Duplicates or near duplicates admitted as Exhibits 6341 and 9946. Dkt. 761 at 12. |
| 660 | Report: Creel Survey of the Wisconsin Waters of Lake Michigan | Ancient Document and Business Record. Dkt. 761 at 31-32. |
| 758 | Record of Decision Amendment for Operable Unit 2 (Deposit DD), Operable Unit 3, Operable Unit 4 and Operable Unit 5 (River Mouth) | Public Document and Business Record. Dkt. 761 at 14-18.[9] |
| 772 | Explanation of Significant Differences for Operable Unit 2, Operable Unit 3, Operable Unit 4 and Operable Unit 5 (River Mouth) at the Lower Fox River and Green Bay Superfund Site | Public Document and Business Record. Dkt. 761 at 14-18. |
| 883 | Final Report: Injuries to Avian Resources, Lower Fox River/Green Bay Natural Resource Damage Assessment | Public Document and Business Record. Dkt. 761 at 20-22. |
| 891 | Injuries to Fisheries Resources, Lower Fox River/Green Bay Natural Resource Damage Assessment | Public Document and Business Record. Dkt. 761 at 20-22. |
| 1127 | Administrative Order for Remedial Action ("UAO") | Public Document and Business Record. Dkt. 761 at 14.[10] |

---

[9] While NCR initially objected to the admission of one version of the 2007 ROD Amendment (Exhibit 758) as hearsay, *see* Dkt. 752 at 6, NCR has since cited to a different version of the 2007 ROD Amendment (Exhibit 1147) to demonstrate high PCB concentrations near U.S. Paper's facility, *see* Dkt. 764 at 26. NCR's objection to Exhibit 758 therefore is moot. In any case, the 2007 ROD Amendment clearly falls within the public document and business record exceptions to the hearsay rule. *See* Dkt. 761 at 14, 16-18.

[10] The Plaintiffs have argued that the UAO (Exhibit 1127) is admissible because the Defendants failed to object to its admissibility when it was used at trial as part of Plaintiffs' case in chief and asserted that the UAO fits within an exception to the hearsay rule. Dkt. 761 at 11, 14. For the sake of clarity, the UAO is

| 1142 | Memorandum re: Minor Change to the Selected Remedy for the Lower Fox River and Green Bay Superfund Site | Public Document and Business Record. Dkt. 761 at 14-18. |
|---|---|---|
| 1149 | Report: Injuries to Surface Water Resources, Lower Fox River/Green Bay natural Resources Damages Assessment | Public Document and Business Record. Dkt. 761 at 20-22. |
| 1156 | Arrowhead Park Landfill Evaluation report; Environmental Resources Management, April 1999 (near duplicates of Exhibits 1025 and 2349) | Admission of a Party Opponent. Dkt. 761 at 29.[11] |
| 1286 (pages 427 to 469 only) | Institute of Paper Chemistry report concerning the distribution of PCBs in pulp and paper mills and related correspondence between the Institute of Paper Chemistry and the Bergstrom Paper Company in 1976 and 1977 (bates stamped by Glatfelter GN4001680 – GN4001759) | Ancient Document. Dkt. 761 at 28-29. |

There is no basis for NCR's hearsay objection to many of these documents prepared by government agencies as part of the RI/FS and remedy selection process. While NCR argues (correctly) that Technical Memorandum 2d is admissible under the public document exception to the hearsay rule, NCR still contends that related documents prepared as part of the RI/FS and remedy selection process are hearsay, including the RI/FS reports (Exhibits 2 and 3) and the 1999 and 2002 Baseline Human Health and Ecological Risk Assessment reports (Exhibits 5 and

---

admissible under the public document and business record exceptions to the hearsay rule. EPA, a public agency, issues a UAO pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), to document its factual findings of the existence of imminent and substantial endangerment and to order the relief required to abate the imminent and substantial endangerment. 42 U.S.C. § 9606(a). Therefore, the UAO clearly fits within the public document exception to the hearsay rule. Fed. R. Evid. 803(8). Further, the UAO is a record of acts, events, conditions, or opinions regarding the Site made at or near the time by, or from information transmitted by, someone with knowledge of those acts, events, conditions, or opinions. The UAO was made and kept in the course of the regularly conducted activity of EPA and has been included in the Administrative Record. Therefore, the UAO clearly fits within the business record exception to the hearsay rule. Fed. R. Evid. 803(6).

[11] As noted above, a near duplicate of the Arrowhead Landfill Evaluation report has been admitted by stipulation as Exhibit 1025. The document plainly is admissible for the purposes for which it was used, as shown below. Thus, the objections to the admission of two other versions of the document, Exhibits 1156 and 2349, are baseless and moot.

279). Dkt. 766 at 16; Dkt. 774 at 3. All of those documents fall within the public document and business record exceptions to the hearsay rule, as shown in our prior brief. Dkt. 761 at 13-18.[12]

NCR has made a special effort to knock out all evidence of harm to human health and the environment at this Site, so it has trained its sights on Exhibit 5 in particular – the 2002 Baseline Human Health and Ecological Risk Assessment report (the "Risk Assessment") – claiming that it was created merely for "advocacy purposes." Dkt. 774 at 3. The 2002 Risk Assessment, just like an earlier version from 1999 (Exhibit 279), was prepared for WDNR pursuant to the requirements of the National Contingency Plan. *See* 40 C.F.R. § 300.430(d)-(e). The RI/FS is a formal agency investigation that requires assessment of site conditions and evaluation of alternatives to the extent necessary to select a remedy. 40 C.F.R. § 300.430(a)(2). A risk assessment is explicitly required as part of the remedial investigation. *See* 40 C.F.R. § 300.430(d) ("To characterize the site, the lead agency shall, as appropriate, conduct field investigations, including treatability studies, and conduct a baseline risk assessment.").

The Risk Assessment falls within the public record exception to the hearsay rule, as it is a record of WDNR, a public office, which sets forth factual findings of an investigation legally

---

[12] Unlike NCR, the Certain Defendants apparently contend that versions of Technical Memorandum 2d cited by Plaintiffs are inadmissible as hearsay (Exhibits 2127 and 9924), although, as noted above, they themselves cite other versions of that report (Exhibits 6519 and 9849) and it has been admitted by stipulation as part of the larger Model Documentation Report (Exhibit 7 at 319-440). Even on its own, Technical Memorandum 2d is admissible under the public document and business record exceptions to the hearsay rule. It is a record of WDNR that sets forth the factual findings of a WDNR investigation into historical discharges of total suspended solids and PCBs from Lower Fox River point sources as part of the RI/FS for the Site. It is therefore admissible under the public records exception to the hearsay rule. Fed. R. Evid. 803(8). Technical Memorandum 2d also is the record of an act, a WDNR investigation into historical discharges of total suspended solids and PCBs from Lower Fox River point sources, made near the time of the study by WDNR employees with knowledge of the study. It was kept in the course of WDNR's study of a Superfund site, a regularly conducted activity of WDNR for which WDNR regularly creates such technical memoranda. A copy of Technical Memorandum 2d was filed with WDNR and placed into the Administrative Record for the Site as part of the Model Documentation Report, as authorized by law. Therefore, Technical Memorandum 2d also is admissible under the business records exception to the hearsay rule. Fed. R. Evid. 803(6).

authorized by CERCLA and its implementing regulations.  Courts have ruled remedial investigation reports prepared by or for the government *by a contractor* admissible under the public record exception to the hearsay rule.  *United States v. Davis*, 826 F. Supp. 617, 612-22 (D.R.I. 1993) (holding Remedial Investigation Report prepared by a contractor on behalf of EPA admissible under the public document exception to the hearsay rule. Fed. R. Evid. 803(8)); *accord United States v. Tyson*, No. 84-2663, 1986 WL 9250, at *8 (E.D. Pa. Aug. 22, 1986).

In any event, the Risk Assessment also is admissible under the business records exception to the hearsay rule.  The Risk Assessment is a record of acts, events, conditions, or opinions regarding the Site made at or near the time by, or from information transmitted by, someone with knowledge of those acts, events, conditions, or opinions.  The Risk Assessment was made and kept in the course of the regularly conducted activity of WDNR, which is required by law to make a record of such activities and maintain such records as part of the Administrative Record for this Superfund Site.  40 C.F.R. §§ 300.800-300.825.  Therefore, the Risk Assessment is admissible under the business records exception to the hearsay rule.  Fed. R. Evid. 803(6).

Simultaneously with the filing of this responsive brief, Plaintiffs are filing the declarations of James Killian (a WDNR employee), James Hahnenberg (an EPA employee), and David Warburton (a Fish and Wildlife Service employee).  *See* Dkt. 777; Dkt. 778; Dkt. 779. The Plaintiffs decided to file these declarations to dispense with any concerns regarding the admissibility of certain Administrative Record exhibits.  *See* Dkt. 761 at 32-33.  Notwithstanding those supplemental filings, the Plaintiffs believe that the admissibility of the cited exhibits is clear from the face of the documents and the Defendants' belated objections should not preclude the admission of this evidence.

## II. Remaining Issues Concerning Other Exhibits

### A. The Certain Defendants Misstate the Plaintiffs' Position Regarding Evidence that is Offered for Impeachment Purposes

The Certain Defendants repeatedly state that the Plaintiffs have conceded that certain exhibits are inadmissible because they were used for impeachment purposes. Dkt. 772 at 9. The Plaintiffs have done no such thing. By clarifying that they were offering certain exhibits for impeachment purposes, the Plaintiffs have not conceded that those exhibits are inadmissible. The Court need not decide whether an exhibit offered *solely* for impeachment purposes is or is not admissible for other purposes because no party has offered it for another purpose. But, as Plaintiffs have already argued, many of the cited exhibits are admissible for non-impeachment purposes as well.

For example, as Plaintiffs previously argued, Exhibit 2310 is an admission of a party opponent, namely NCR. Dkt. 761 at 27. Exhibit 2310 is a report for NCR prepared by RMT, Inc. entitled "Estimate of Emulsion Loss to the Appleton POTW From the Appleton Coated Paper Facility," which estimated the amount of PCBs that were lost from the Appleton Coated Paper Facility to the Appleton Publicly Owned Treatment Works. Ex. 2310 at 5. The Plaintiffs offered the report by NCR's contractors against NCR and, therefore, it qualifies as an admission of a party opponent. Dkt. 761 at 26-27. The Certain Defendants have offered no argument refuting its admissibility against NCR pursuant to Fed. R. Evid. 801(d)(2)(C) and (D).

### B. Exhibit 2349 is an Admission of a Party Opponent and Admissible for Impeachment Purposes

NCR's objection to Exhibit 2349 is meritless for the reasons previously explained by Plaintiffs and not disputed by NCR. Exhibit 2349 – which is a near duplicate of Exhibit 1025 and Exhibit 1156 – is the 1999 Arrowhead Park Landfill Evaluation report prepared for Glatfelter by Environmental Resources Management. Plaintiffs have already argued that Exhibit 2349 is admissible to impeach the credibility of Dr. Victor Magar. Dkt. 761 at 29. Further, Plaintiffs have already demonstrated that Exhibit 1156 (and therefore Exhibit 2349) is an admission of a party opponent pursuant to Fed. R. Evid. 801(d)(2)(B), (C), and (D). Dkt. 761 at 29. NCR has offered no argument to contradict the Plaintiffs' prior arguments. Finally, another version of the same report has now been admitted by stipulation as Exhibit 1025, as noted above, so the Court should properly admit Exhibits 1156 and 2349.

### C. Exhibit 2285 is Admissible for Impeachment and Notice Purposes

Exhibit 2285 is a letter from John Hanson, counsel for Fort James Corporation (now Georgia-Pacific), attaching an 18 page critique of the 2000 Amendola report and the 2001 Amendola report. Ex. 2285. NCR's hearsay objection fails to address the Plaintiffs' arguments (and the Certain Defendants' inherent agreement) that the document is admissible for impeachment and notice purposes against Mr. Braithwaite. *See* Dkt. 761 at 24-25; Dkt. 772 at 9. Therefore, Exhibit 2285 should be admitted for those impeachment and notice purposes.

### D. The Certain Defendants Waived their Authenticity Objections to Many Exhibits

The Certain Defendants wrongly attempt to bootstrap many of their reserved hearsay challenges into added authenticity challenges that they seek to assert now for the first time. The hearsay rules do not provide a separate means to authenticate documents. The authenticity rules

11
Case 1:10-cv-00910-WCG   Filed 03/12/13   Page 13 of 18   Document 780

are set forth in Fed. R. Evid. 901-903 and the Certain Defendants waived all authenticity objections that were not reserved specifically. The Certain Defendants should not be permitted to circumvent the requirement of Fed. R. Civ. P. 26(a)(3)(B), requiring that objections be reserved prior to trial, merely by claiming that their hearsay objections *impliedly* reserved unstated authenticity objections. Their own conduct negates that implication: in a number of instances the Certain Defendants *expressly* reserved both authenticity objections and hearsay objections for the same exhibit. *See* Dkt. 716.

Moreover, the Certain Defendants stretch the hearsay rules beyond their limits. The public records exception to the hearsay rule contains no reference to an authenticity requirement. Fed. R. Evid. 803(8). While the Rule requires that "neither the source of information nor other circumstances indicate a lack of trustworthiness," Courts have interpreted that phrase to be completely separate from authenticity. *Compare Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 n.11 (1988) (noting that the Advisory Committee notes to Rule 803(8) provide that trustworthiness is evaluated by looking at "(1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation") *with* Fed. R. Evid. 901 (defining authenticity as "a finding that the item is what the proponent claims"). In any event, the Certain Defendants' mere notation of "AU," "AP," or "EX" in a chart (Dkt. 751 at 19-26) is insufficient to sustain their burden of showing that the document is untrustworthy. *See, e.g.*, *Wielgus v. Ryobi Techs., Inc.*, No. 08 CV 1597, 2012 WL 3614642, at *3 (N.D. Ill. Aug. 21, 2012) ("trustworthiness is presumed, and the burden is on the party opposing admission to show a lack of trustworthiness"); *United States v. Northernaire Plating Co.*, 670 F. Supp. 742, 744 (W.D. Mich. 1987) (same).

Similarly, the ancient document exception to the hearsay rule does not provide a separate means for authentication, but merely notes that the exception will apply to old, authentic documents. Fed. R. Evid. 803(16). When a pre-trial objection has been properly reserved, the only method for authenticating a contested ancient document is through Rules 901 to 903. The Certain Defendants essentially concede that point by arguing that their newly-minted objection code "AD" for "Ancient Document Authenticity" meant that Plaintiffs failed to satisfy Fed. R. Evid. 901(b)(8), which requires that it "was in a place where, if authentic, it would likely be." Dkt. 751 at 12. But the Certain Defendants preserved no authenticity objection to many of the documents under Rules 901 to 903 and, therefore waived their right to do so now. Fed. R. Civ. P. 26(a)(3)(B). For example, for Exhibit 2218 – a 1983 Master of Science thesis that was used at trial – Certain Defendants' only reserved pre-trial objection was "HEARSAY." Dkt. 716 at 40. They cannot assert new objections to the "Authenticity" and "Ancient Document Authenticity" of Exhibit 2218 in post-trial briefing, as they have attempted. Dkt. 751 at 20.

## Conclusion

For the foregoing reasons, this Court should overrule the objections of NCR and the Certain Defendants.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

Dated: March 12, 2013		s/*Kristin M. Furrie*
RANDALL M. STONE
JEFFREY A. SPECTOR
KRISTIN FURRIE
SEAN CARMAN
MAYA ABELA
SUMONA MAJUMDAR
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone:	202-616-6515
Facsimile:	202-616-6584
E-Mail:		kristin.furrie@usdoj.gov


GREGORY J. HAANSTAD
Attorney for the United States, Acting
Under Authority Conferred by 28 U.S.C. § 515

SUSAN M. KNEPEL
Assistant United States Attorney
Office of the United States Attorney
517 E. Wisconsin Avenue, Room 530
Milwaukee, WI 53202


FOR THE STATE OF WISCONSIN

Dated: March 12, 2013		s/ *Cynthia R. Hirsch*
CYNTHIA R. HIRSCH
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
P.O. Box 7857
Madison, WI 53707-785
E-Mail:		hirschcr@doj.state.wi.us

CERTIFICATE OF SERVICE

        I hereby certify that on this date I caused a true and correct copy of the foregoing Brief to be served on the following counsel of record by the Court's Electronic Case Filing system:

**Mary Rose Alexander**
Latham & Watkins LLP
mary.rose.alexander@lw.com

**Thomas Armstrong**
von Briesen & Roper SC
tarmstro@vonbriesen.com

**Paul Bargren**
Foley & Lardner LLP
pbargren@foley.com

**Linda E. Benfield**
Foley & Lardner LLP
lbenfield@foley.com

**Dennis P. Birke**
DeWitt Ross & Stevens SC
db@dewittross.com

**Steven P. Bogart**
Reinhart Boerner Van Deuren SC
sbogart@reinhartlaw.com

**Michael P. Carlton**
von Briesen & Roper SC
mcarlton@vonbriesen.com

**Evan R. Chesler**
Cravath Swaine & Moore LLP
echesler@cravath.com

**Francis A. Citera**
Greenberg Traurig LLP
citeraf@gtlaw.com

**Marc E. Davies**
Greenberg Traurig LLP
daviesm@gtlaw.com

**David R. Erickson**
Shook Hardy & Bacon LLP
derickson@shb.com

**S. Todd Farris**
Friebert Finerty & St. John SC
stf@ffsj.com

**Patrick J. Ferguson**
Latham & Watkins LLP
patrick.ferguson@lw.com

**Charles Fried**
fried@law.harvard.edu

**Sandra C. Goldstein**
Cravath Swaine & Moore LLP
sgoldstein@cravath.com

**Thomas R. Gottshall**
Haynsworth Sinkler Boyd PA
lgantt@hsblawfirm.com

**Eric W. Ha**
Sidley Austin LLP
eha@sidley.com

**Scott W. Hansen**
Reinhart Boerner Van Deuren SC
shansen@reinhartlaw.com

**William H. Harbeck**
Quarles & Brady LLP
william.harbeck@quarles.com

**Cynthia R. Hirsch**
Wisconsin Department of Justice
hirschcr@doj.state.wi.us

**Margaret I. Hoefer**
Stafford Rosenbaum LLP
mhoefer@staffordlaw.com

**Caleb J. Holmes**
Greenberg Traurig LLP
holmesc@gtlaw.com

**Philip C. Hunsucker**
Hunsucker Goodstein PC
phunsucker@hgnlaw.com

**Peter C. Karegeannes**
Quarles & Brady LLP
peter.karegeannes@quarles.com

**Paul G. Kent**
Stafford Rosenbaum LLP
pkent@staffordlaw.com

**Gregory A. Krauss**
Gregory Krauss pllc
gkrauss@krausspllc.com

**Linda R. Larson**
Marten Law PLLC
llarson@martenlaw.com

**Vanessa A. Lavely**
Cravath Swaine & Moore LLP
vlavely@cravath.com

**Susan E. Lovern**
von Briesen & Roper SC
slovern@vonbriesen.com

**Anne E. Lynch**
Hunsucker Goodstein PC
alynch@hgnlaw.com

**Kevin J. Lyons**
Davis & Kuelthau SC
klyons@dkattorneys.com

**Karl S. Lytz**
Latham & Watkins LLP
karl.lytz@lw.com

**Meline G. MacCurdy**
Marten Law
mmaccurdy@martenlaw.com

**David G. Mandelbaum**
Greenberg Traurig LLP
mandelbaumd@gtlaw.com

**Bradley M. Marten**
Marten Law
bmarten@martenlaw.com

**Tara M. Mathison**
Davis & Kuelthau SC
tmathison@dkattorneys.com

i

| | | |
|---|---|---|
| **Allison E. McAdam**<br>Hunsucker Goodstein PC<br>amcadam@hgnlaw.com | **Nancy K. Peterson**<br>Quarles & Brady LLP<br>nancy.peterson@quarles.com | **Sarah A. Slack**<br>Foley & Lardner LLP<br>sslack@foley.com |
| **Darin P. McAtee**<br>Cravath Swaine & Moore LLP<br>dmcatee@cravath.com | **Thomas M. Phillips**<br>Reinhart Boerner Van Deuren SC<br>tphillip@reinhartlaw.com | **Margaret R. Sobota**<br>Sidley Austin LLP<br>msobota@sidley.com |
| **Stephen F. McKinney**<br>Haynsworth Sinkler Boyd PA<br>smckinney@hsblawfirm.com | **Ian A.J. Pitz**<br>Michael Best & Friedrich LLP<br>iapitz@michaelbest.com | **Arthur A. Vogel, Jr.**<br>Quarles & Brady LLP<br>arthur.vogel@quarles.com |
| **Heidi D. Melzer**<br>Melzer Law, LLC<br>hmelzer@melzerlaw.com | **David A. Rabbino**<br>Hunsucker Goodstein PC<br>drabbino@hgnlaw.com | **Anthony S. Wachewicz, III**<br>City of Green Bay<br>tonywa@ci.green-bay.wi.us |
| **Elizabeth K. Miles**<br>Davis & Kuelthau SC<br>emiles@dkattorneys.com | **Ronald R. Ragatz**<br>DeWitt Ross & Stevens SC<br>rrr@dewittross.com | **James P. Walsh**<br>Appleton City Attorney<br>jim.walsh@appleton.org |
| **William J. Mulligan**<br>Davis & Kuelthau SC<br>wmulligan@dkattorneys.com | **Kathleen L. Roach**<br>Sidley Austin LLP<br>kroach@sidley.com | **Ted A. Warpinski**<br>Friebert Finerty & St John SC<br>taw@ffsj.com |
| **Daniel C. Murray**<br>Johnson & Bell Ltd.<br>murrayd@jbltd.com | **Megan A. Senatori**<br>DeWitt Ross & Stevens SC<br>ms@dewittross.com | **Ted Waskowski**<br>Stafford Rosenbaum LLP<br>twaskowski@staffordlaw.com |
| **Omid H. Nasab**<br>Cravath Swaine & Moore LLP<br>onasab@cravath.com | **Adam B. Silverman**<br>Greenberg Traurig LLP<br>silvermana@gtlaw.com | **Evan B. Westerfield**<br>Sidley Austin LLP<br>evanwesterfield@sidley.com |
| **Kelly J. Noyes**<br>von Briesen & Roper SC<br>knoyes@vonbriesen.com | **M. Andrew Skierawski**<br>Friebert Finerty & St. John SC<br>mas@ffsj.com | **Richard C. Yde**<br>Stafford Rosenbaum LLP<br>ryde@staffordlaw.com |

Dated: March 12, 2013                                       s/ *Kristin M. Furrie*