# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# GREEN BAY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WISCONSIN, ) ) ) ) Plaintiffs, ) ) ) v. ) ) NCR CORPORATION, ) APPLETON PAPERS INC., ) BROWN COUNTY, ) CITY OF APPLETON, ) CITY OF GREEN BAY, ) CBC COATING, INC., ) GEORGIA-PACIFIC CONSUMER PRODUCTS LP, ) KIMBERLY-CLARK CORPORATION, ) MENASHA CORP., ) NEENAH-MENASHA SEWERAGE COMMISSION, ) NEWPAGE WISCONSIN SYSTEMS, INC., ) P.H. GLATFELTER CO., ) U.S. PAPER MILLS CORP., and ) WTM I COMPANY, ) ) Defendants. | Civil Action No. 10-C-910 |

_____

### NCR CORPORATION'S RESPONSE
### TO THE OTHER PARTIES' MARCH 6, 2013,
### OBJECTIONS TO THE ADMISSION OF CERTAIN EVIDENCE
_____

NCR Corporation ("NCR") respectfully submits its Response to the Other Parties' March 6, 2013, Objections to the Admission of Certain Evidence.[1]

## ARGUMENT

### I. MR. BERKEN'S TESTIMONY IS ADMISSIBLE

The Government again asserts the same objections to the sworn testimony of its own Rule 30(b)(6) witness, Mr. George Berken. (Dkt. #771 at 4-6.) Specifically, the Government wants to avoid the admission Mr. Berken made when asked whether NCR's PCB discharges alone would have caused approximately the same harm to OU4 as was caused from the discharges of all Defendants—an issue at the heart of NCR's divisibility defense. Mr. Berken responded:

> "Assuming, if I understand the question correctly, that the only contamination that would be in OU4 would be from [NCR's discharges], there wouldn't be any other contamination at all, the probability of needing remediation in OU4 *would probably be next to nothing*. It may have been just to monitor natural recovery area."

(Berken Dep. Tr., TX 4031 at 188:21-189:2 (emphasis added).)

As NCR demonstrated in its prior briefing (*see* Dkt. #766 at 2-6), Mr. Berken's testimony is a critical admission. For several reasons, this testimony should not be excluded. *First*, the Government did not object at the deposition that the testimony was beyond the scope of the 30(b)(6) topics; therefore, that objection was waived. (*See* Dkt. #766 at 3.) *Second*, Mr. Berken's testimony was fairly within the scope of the deposition notice because the question asked him to explain how the remedy costs would be affected by different levels of PCB contamination. (*See id*. at 3-4.) The Government contends that NCR

---

[1] In this brief, NCR responds to the objections filed by the other parties on March 6, 2013. (Dkt. #771, #772.) NCR restates and incorporates by reference the exhibit objections and responses it has asserted in its prior post-trial exhibit briefs. (Dkt. #752, #766, #774.)

is trying "to squeeze the cited testimony to within the scope of the Rule 30(b)(6) Notice" (Dkt. #771 at 5 n.2), but it is the Government itself that is trying to reshape the testimony now that the implications are clear. The Government's narrow interpretation of the 30(b)(6) topics—for which the Government offers no support—should be rejected.

*Third*, even if the question were beyond the scope of the notice—which it was not—the testimony would still be admissible under Federal Rule of Civil Procedure 32(a)(3). *See Emp'rs Ins. Co. of Wausau v. Nationwide Mut. Fire Ins. Co.*, No. CV 2005-0620, 2006 WL 1120632, at *1 (E.D.N.Y. Apr. 26, 2006) ("[A] notice of deposition cannot be used to limit what is asked of the designated witness, but rather, it constitutes the minimum, not the maximum, about which a deponent must be prepared to speak.") (alteration and internal quotation marks omitted). *Fourth*, Mr. Berken was well-qualified to answer the question based on his knowledge and experience, not mere speculation. As the *only* person who "deals with cost estimates" for the Agency/Oversight Team (*see* Berken Dep. Tr., TX 4031, at 18:8-19:8), Mr. Berken was certainly able to testify to cost estimates based on his "great expertise". (Grosskopf, Tr. 453:7-19.) *Finally*, the testimony is independently admissible as a party admission under Federal Rule of Evidence ("FRE") 801(d)(2)(D). Mr. Berken serves as the "cost estimating resource" for the Agency/Oversight Team, which works "on behalf of the Government" to "oversee the remedial activities that are being done in the river". (Grosskopf, Tr. 404:22-405:13.) Thus, Mr. Berken's testimony falls squarely within the scope of his relationship with the United States and is therefore admissible as a party admission. (*See* Dkt. #766 at 5-6.)

The Government's renewed objection to the admission of Mr. Berken's testimony is merely a restatement of its initial objection. Because the Government has not—

2

Case 1:10-cv-00910-WCG   Filed 03/12/13   Page 3 of 6   Document 782

is trying "to squeeze the cited testimony to within the scope of the Rule 30(b)(6) Notice" (Dkt. #771 at 5 n.2), but it is the Government itself that is trying to reshape the testimony now that the implications are clear. The Government's narrow interpretation of the 30(b)(6) topics—for which the Government offers no support—should be rejected.

*Third*, even if the question were beyond the scope of the notice—which it was not—the testimony would still be admissible under Federal Rule of Civil Procedure 32(a)(3). *See Emp'rs Ins. Co. of Wausau v. Nationwide Mut. Fire Ins. Co.*, No. CV 2005-0620, 2006 WL 1120632, at *1 (E.D.N.Y. Apr. 26, 2006) ("[A] notice of deposition cannot be used to limit what is asked of the designated witness, but rather, it constitutes the minimum, not the maximum, about which a deponent must be prepared to speak.") (alteration and internal quotation marks omitted). *Fourth*, Mr. Berken was well-qualified to answer the question based on his knowledge and experience, not mere speculation. As the *only* person who "deals with cost estimates" for the Agency/Oversight Team (*see* Berken Dep. Tr., TX 4031, at 18:8-19:8), Mr. Berken was certainly able to testify to cost estimates based on his "great expertise". (Grosskopf, Tr. 453:7-19.) *Finally*, the testimony is independently admissible as a party admission under Federal Rule of Evidence ("FRE") 801(d)(2)(D). Mr. Berken serves as the "cost estimating resource" for the Agency/Oversight Team, which works "on behalf of the Government" to "oversee the remedial activities that are being done in the river". (Grosskopf, Tr. 404:22-405:13.) Thus, Mr. Berken's testimony falls squarely within the scope of his relationship with the United States and is therefore admissible as a party admission. (*See* Dkt. #766 at 5-6.)

The Government's renewed objection to the admission of Mr. Berken's testimony is merely a restatement of its initial objection. Because the Government has not—

and cannot—overcome the reasons compelling admission of the testimony, the Government's objection should be rejected.

## II. THE OTHER PARTIES' OBJECTIONS TO CERTAIN EXHIBITS ARE MISPLACED

The Government and Certain Defendants also object to Exhibits 4207, 4322, 4327 and 4328 (witness interviews) and Certain Defendants alone object to Exhibit 2310 (RMT Study).[2] These exhibits were not cited by NCR for the truth of the matters asserted. They were cited to illustrate the reasonable basis for Mr. Braithwaite's discharge estimates which the Government had challenged. (*See, e.g.*, Dkt. #764 at 17-19 ("[T]he criticisms of Mr. Braithwaite's individual mill estimates are based on marginal disagreements or misreadings of the evidence and fall far short of suggesting his overall estimates were somehow unreasonable.").) Under FRE 703, experts may rely on otherwise inadmissible materials. Thus, NCR permissibly cited to those exhibits, in conjunction with citations to the accompanying testimony in the trial transcript (*see* Dkt. #764 at 17 (citing Braithwaite, Tr. 730:7-11)), to illustrate the broad range of relevant materials that Mr. Braithwaite considered when conducting his analysis and to demonstrate the sound basis for his conclusions.[3]

The Government's objection to Exhibit 4282 is misplaced. It erroneously identifies that document as "notes of interviews", when in fact it is the 104(e) Supplemental Response of U.S. Paper, which is a party admission. (*See* Dkt. #771 at 1 n.1; TX 4282.)

---

[2] The Government also objected to several other exhibits that were not cited by NCR in its Post-Trial Response Brief.

[3] Mr. Braithwaite also considered other exhibits, the admissibility of which is uncontested by the Government. (*See, e.g.*, TX 2127 at 20 (citing broke production rates of 10%-15%); TX 8555 at NCR-FOX-498215 (citing broke production rates between 9.17%-12.32%); TX 9929 at APIFOX00094078 (determining broke production rate to be 10.6%).) These exhibits provide additional support for Mr. Braithwaite's conclusion that ACPC's broke production rate was 10.6%.

3

Exhibit 4282 was offered to demonstrate that, based on its own admission, U.S. Paper recycled large quantities of CCP. (*See* Dkt. #746-1 at 6-7; #764 at 21-22.) For that purpose, it is admissible. Additionally, NCR cited to Exhibit 4282 as an example of evidence relied upon by Mr. Braithwaite under FRE 703 and to demonstrate the sound basis for his conclusion that the Amendola Report underestimated the amount of PCBs that U.S. Paper discharged from its De Pere mill.

## CONCLUSION

For the reasons stated above, NCR respectfully requests that the Court overrule the other parties' objections.

4

Dated: March 12, 2013

Respectfully submitted,

NCR CORPORATION

/s/   Darin P. McAtee

*Counsel for NCR Corporation*
CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Darin P. McAtee
Yonatan Even
Worldwide Plaza, 825 Eighth Avenue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474-3700
dmcatee@cravath.com

SIDLEY AUSTIN LLP
Evan B. Westerfield
Eric W. Ha
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

MARTEN LAW PLLC
Linda R. Larson
Bradley M. Marten
1191 Second Avenue, Suite 2200
Seattle, Washington 98101
Phone: (206) 292-2600
Fax: (206) 292-2601