UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                           Case No. 10-C-910

NCR CORP. and APPLETON PAPERS INC.,

    Defendants.

## DECISION AND ORDER

The Plaintiffs ("the government") have entered into a number of settlements with several parties. Generally, these settlements allocated payments in different amounts to the State of Wisconsin, the Superfund, and the Natural Resource Damage Assessment and Restoration (NRDAR) fund. (See, e.g., ECF No. 20 at 24-25.) In the upcoming trial, Defendant Glatfelter proposes to establish that the allocations set forth in these settlements, and approved by this court, over-allocated funds to natural resource damages ("NRDs") and under-allocated funds to help pay for contamination cleanup. In its view, this means the settlements that have been reached do not reduce the remaining liability by the proper amount. The government has filed a motion *in limine* seeking to exclude evidence on that score, arguing that the allocation of NRDs has already been made in the settlements. In its view, Glatfelter should not get the opportunity to litigate matters that have already been decided. For the reasons given below, the motion will be granted.

Section 113(f)(2) of CERCLA provides as follows:

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

42 U.S.C. § 9613(f)(2).

Glatfelter's argument relies on the last clause of that subsection. In its view, any settlement with the United States "reduces the potential liability of the others by the amount of the settlement." *Id.* So far, this is not controversial. What the government disputes, however, is Glatfelter's belief that it may probe beneath the terms of the settlements reached to determine exactly how the settlement funds *should* have been allocated.

As noted above, Glatfelter believes the settlements over-allocated funds to natural resource damages and under-allocated funds to help pay for contamination cleanup. This is a costly error to Glatfelter's detriment because the funds allocated to natural resource damages do not "count" in reducing the potential liability of non-settling parties under § 113(f)(2). Glatfelter therefore believes the remaining share of potential liability is artificially large, meaning that Glatfelter (and others, though they do not join in its motion) could be on the hook for more than their fair share of costs. Glatfelter does not believe it should be bound by the settling parties' allocation decisions, which it views as somewhat arbitrary, and so a large part of its case is devoted to unpacking the settlements and providing other evidence, including expert evidence, as to what the *actual* or *true* natural resource damages should have been. It is *that* amount that should be used to reduce Glatfelter's liability, rather than the actual figure the settling parties reached. In support of this argument, Glatfelter relies on CERCLA § 107(f)(1), which provides that "[t]here shall be no double recovery

2

under this chapter for natural resources damages . . ." 42 U.S.C. § 9607(f)(1). In Glatfelter's view, recovering more for natural resource damages would result in a double recovery. At trial, therefore, Glatfelter proposes to ensure that the government does not receive a double recovery by demonstrating the proper amount of natural resource damages.

The government argues that its motion should be granted because otherwise Glatfelter would be allowed to undo the consent decrees the court approved by re-litigating the "proper" allocation for natural resource damages. It further argues that such arguments are barred by *res judicata* principles. The government's analysis is correct. First, in 2014 Glatfelter itself appeared to have recognized that funds allocated to NRDs would be forever "lost," rather than subject to some further reallocation proceeding. It wrote: "Glatfelter maintains its belief that the payments of NRDs under the consent decrees may very well result in an overpayment of NRD recoveries. That overpayment will effectively be lost to the remaining defendants; it will not offset any costs or damages for which those remaining defendants might be liable." (ECF No. 938 at 4.) It continued, "However, Glatfelter expects its fair share of those costs and damages ultimately to be relatively low, so Glatfelter's likely share of the overpayment is probably small relative to the likely high cost to Glatfelter of litigating the NRD claim. Further, Glatfelter generally shares Plaintiffs' interest in getting to a final judgment in this case promptly and efficiently. Accordingly, Glatfelter will not oppose the entry of the consent decrees." (*Id.*) Glatfelter's present position appears to be sharply at odds with these sentiments.

Regardless of its past litigation position, there is no precedent for Glatfelter's view that settlement allocations are subject to re-litigation after the fact. If the question of the "proper" allocation of natural resource damages were subject to a later trial, there would seem to be little

3

point in allocating those damages as part of any settlement. The exercise in allocation is made by the settling parties, with the non-settling parties able to provide comments (which Glatfelter did). The settlement must then be approved by the court. The time for allocating settlement funds has long passed.

Third, the statutory hook on which Glatfelter relies does not resurrect the allocation issue. It is true that the statute says there shall be no double recoveries for natural resource damages. 42 U.S.C. § 9607(f)(1). But all this means is that the different government trustees may not go after the same parties to recover the same natural resources damages. "If there is a later disagreement between the co-trustees, that disagreement would have to be resolved by successive litigation between the trustees, but it could in no way affect the liability of the responsible party or parties." *United States v. Asarco Inc.,* 471 F. Supp. 2d 1063, 1068 (D. Idaho 2005). This means a defendant is protected from being sued twice for the same natural resource damages; it does not suggest that a defendant may litigate the allocation of natural resource damages following a settlement that allocated those same damages. In short, even if more funds are allocated to NRDs than might otherwise be warranted, that does not mean the government has obtained a double recovery.

Finally, Glatfelter's expansive reading of the double-recovery bar ignores the plain language of § 113(f)(2), which provides that settlements "reduce[] the potential liability of the others by the amount of the settlement." The language of 113(f)(2) thus links any reduction in Glatfelter's liability to "the amount of the settlement," which can only mean the actual dollar value of the settlement, not some abstract amount that could be litigated later. The amount of the settlement is the amount of the settlement. *Akzo Nobel Coatings, Inc. v. Aigner Corp.,* 197 F.3d 302, 308 (7th Cir. 1999) (section 113(f)(2) "reduces third-party claims by the actual cash value of settlements

4

reached with governmental bodies.")  Moreover, by definition, settlements are compromises that do not necessarily reflect a "correct" allocation of funds; instead, they are the product of a number of judgments, or guesses, about what the evidence might eventually show and how a judge might rule.  By linking the liability reduction to a "settlement," Congress was acknowledging that fact and cutting off any notion that parties were entitled to obtain a liability reduction through some more searching inquiry or separate trial about the "true" value of NRDs, as opposed to the negotiated valuation.  The settlement is the definitive fact that governs any reduction in liability Glatfelter might ultimately enjoy.  This does not mean that settling parties and the government have the ability to concoct settlement allocations out of thin air.  Settlements are subject to public comment and court approval.  What it means, simply, is that a non-settler's liability is reduced by the amount of the settlement, not the amount that party *thinks* the settlement should have been.

The motion to exclude evidence pertaining to any overpayment of natural resource damages is therefore **GRANTED**.

**SO ORDERED** this 3rd day of January, 2017.

    /s William C. Griesbach  
    William C. Griesbach, Chief Judge  
    United States District Court